## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

---

| | |
|---|---|
| CORI ANN GINSBERG, NOAH MALGERI, ) | Civil Action No.: |
| KALYN WOLF, BILL WILSON, SHANNON ) | |
| HOOD, and ROBERT MCKEOWN, on behalf ) | **CLASS ACTION COMPLAINT** |
| of themselves and all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **JURY TRIAL DEMANDED** |
| ) | |
| VITAMINS BECAUSE LLC, CT HEALTH ) | |
| SOLUTIONS LLC, WE LIKE VITAMINS ) | |
| LLC, GMAX CENTRAL LLC, and ) | |
| ASQUARED BRANDS LLC, ) | |
| ) | |
| Defendants. | |

---

Plaintiffs, Cori Ann Ginsberg, Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, and Robert McKeown (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their undersigned counsel, allege against Defendants, Vitamins Because LLC ("Vitamins Because"), CT Health Solutions LLC ("CT Health"), We Like Vitamins LLC ("We Like Vitamins"), Gmax Central LLC ("Gmax Central" or "NusaPure"), and aSquared Brands LLC ("aSquared") (collectively, "Defendants"), the following upon personal knowledge as to their own acts, and based on the investigation conducted by their counsel, as to all other allegations:

### SUMMARY OF THE ACTION

1.    Plaintiffs bring this class action on behalf of themselves and all other persons who were damaged by Vitamins Because's and/or CT Health's deceptive labeling of their non-coated S-adenosylmethionine ("s-adenosyl-methionine" or "SAMe," "SAM-e," "SAME," "sam-e,"

"same," or "samee") dietary supplement capsules (the "product" or the "subject product") which are fraudulently labeled and defectively manufactured.

2.     Vitamins Because and/or CT Health ("Defendant manufacturers") manufacture and provide the subject product for sale directly to consumers at their vitamin stores in Florida and through their retail websites https://vitaminsbecause.biz/[1] and http://doctorvitaminstore.com/[2] (*see* Exhibit A), as well as through third party retail sellers[3] who distribute the product under their own brand names online, through Amazon.com and ebay.com, and in stores throughout the country (*see e.g.* Exhibits B-D). In all consumer venues, the subject product is fraudulently labeled representing to consumers that the SAMe product contains a particular amount of SAMe per serving, when, in reality, the product contains only approximately 12-18% of the claimed amount of active SAMe. The subject product labels' false claims concerning the amount of SAMe included in their capsule pills, along with the products' lower-than-market retail prices mislead consumers into purchasing the non-coated SAMe dietary supplement capsules manufactured by Vitamins Because and/or CT Health under false pretenses. The product's misleading labeling may also lead to significant injury or health concerns to unknowing purchasers who rely on the accuracy of the advertised amount of SAMe to make informed purchasing decisions and consume a proper dosage of the dietary supplements.

3.     As alleged in detail below, Vitamins Because and/or CT Health's non-coated SAMe dietary supplement capsules are also defectively manufactured without the necessary

---

[1] https://vitaminsbecause.biz/products/buy-1-get-2-free-sam-e-1500mg-90-or-180-capsules. The non-coated SAMe capsule dietary supplements are sold under two product numbers and sizes: 1) 90ct #10438 and 2) 180ct #11718.
[2] *See* http://www.doctorvitaminstore.com/10438_SamEPg1.html.   The non-coated SAM-e capsule dietary supplements are sold under two product numbers and sizes: 1) product # 10438 (90 capsules) and 2) product # 11718 (180 capsules).
[3] Third party retail sellers and brands of Vitamins Because and/or CT Health's SAMe product include (but may not be limited to): We Like Vitamins, Gmax Central LLC (under the brand "NusaPure"), and aSquared Brands LLC.

coating for consumer sale and consumption. Due to its defective production in non-coated capsule form, the product lacks the industry-standard protective coating designed to protect the consumer's upper gastrointestinal ("upper GI") tract during the product's digestion.

4.      Unlike many other SAMe supplements sold in the U.S. consumer market, the subject product manufactured by Vitamins Because and/or CT Health is not packaged in blister packs. The subject product, Vitamins Because and/or CT Health's non-coated SAMe capsules, is packaged in blue plastic bottles, with 90 or 180 capsules filling each bottle, and sealed with white bottle caps.

5.      Because of Defendants Vitamins Because's, CT Health's, We Like Vitamins', NusaPure's, and aSquared's (collectively, "Defendant manufacturers and retailers") scientific knowledge of the SAMe amino acid derivative, its biological functions, and its tosylate disulfate salt form; knowledge of the SAMe controlled manufacturing process and the consumer dietary supplement industry; knowledge regarding the manufacturing and packaging of the specific subject product; its laboratory testing, capsule weight, and consumer complaints and feedback; Defendant manufacturers and retailers were on notice, or should have reasonably been on notice, that the subject product was falsely labeled to the consumer public and defectively manufactured, and thus not fit for its intended dietary supplement purpose and claimed SAMe supplementation. At the time of order and purchase Defendant manufacturers and retailers actively misrepresented the amount of active SAMe contained in the product's non-coated capsules, and concealed the existence and nature of the above-described manufacturing defects.

6.      Plaintiffs allege that Defendants Vitamins Because, CT Health, and independent private-label retailers, including Defendants We Like Vitamins, NusaPure, and aSquared, are

liable to Plaintiffs and putative class members for the cost of purchase of the subject product under their respective false labels.

## PARTIES

7.      Plaintiff Cori Ann Ginsberg brings this action in an individual capacity and on behalf of all others similarly situated. Plaintiff Ginsberg is an adult individual who at all relevant times has resided in North Miami, Florida, in the Southern District of Florida. On or about June 22, 2016, Plaintiff Ginsberg purchased one bottle of the subject product as it was available for sale by and under the retail name of We Like Vitamins on Amazon.com for a purchase price of $39.99.[4] On or about September 20, 2018, Plaintiff Ginsberg purchased one bottle of the subject product as it was available for sale under the brand retail name of "NusaPure" on Amazon.com for a purchase price of $34.99.[5] The products were all shipped by Amazon to her residence in North Miami, Florida.

8.      Plaintiff Noah Malgeri brings this action in an individual capacity and on behalf of all others similarly situated. Plaintiff Malgeri is an adult individual who at all relevant times has resided in Las Vegas, Nevada. On or about December 8, 2017, Plaintiff Malgeri purchased one bottle of the subject product as it was available for sale by and under the private label brand We Like Vitamins, through his Amazon Prime account on Amazon.com for a purchase price of $29.99.[6] The product purchased was listed by Amazon as an "Amazon choice" item. The product was shipped by Amazon to his residence in Las Vegas, Nevada.

---

[4] The purchased product from We Like Vitamins is currently listed on Amazon.com as Sam-e 500mg, 90 capsules, SAM e S-Adenosyl Methionine Supplement – Max Strength with an ASIN # of B01F9IR35M. *See* Exhibit B.
[5] The purchased NusaPure product is currently listed on Amazon.com as Sam-e 1500mg, 180 capsules, SAMe S-Adenosyl Methionine Supplement with an ASIN # of B077GKCHPP. *See* Exhibit C.
[6] The purchased product from We Like Vitamins is currently listed on Amazon.com as Sam-e 500mg, 90 capsules, SAM e S-Adenosyl Methionine Supplement – Max Strength with an ASIN # of B01F9IR35M. *See* Exhibit B.

9.      Plaintiff Kalyn Wolf brings this action in an individual capacity and on behalf of all others similarly situated. Plaintiff Wolf is an adult individual who at all relevant times has resided in Tucson, Arizona. On or about October 2, 2017, Plaintiff Wolf purchased one bottle of the subject product as it was available for sale by and under the private label brand aSquared on Amazon.com for a purchase price of $29.99.[7] The product was shipped by Amazon to her in Tucson, Arizona.

10.     Plaintiff Bill Wilson brings this action in an individual capacity and on behalf of all others similarly situated. Plaintiff Wilson is an adult individual who at all relevant times has resided in La Mesa, California. On or about May 15, 2018, Plaintiff Wilson purchased one bottle of the subject product as it was available for sale by and under the retail name of We Like Vitamins on Amazon.com for a purchase price of $27.99.[8] On or about July 16, 2018, Plaintiff Wilson purchased one bottle of the subject product as it was available for sale by and under the retail name of We Like Vitamins on Amazon.com for a purchase price of $27.99.[9] On or about October 27, 2018, Plaintiff Wilson purchased one bottle of the subject product as it was available for sale by and under the retail name of "NusaPure" on Amazon.com for a purchase price of $34.99.[10] The product orders were shipped by Amazon to his residence in La Mesa, California.

11.     Plaintiff Shannon Hood brings this action in an individual capacity and on behalf of all others similarly situated. Plaintiff Hood is an adult individual who at all relevant times has resided in Phoenix, New York. On or about February 5, 2018, Plaintiff Hood purchased one bottle

---

[7] The purchased product from aSquared is currently listed on Amazon.com as Pure Sam-e 400mg supplement, 90 capsules, Same S-Adenosyl Methionine with an ASIN =B072NDRFB1. *See* Exhibit D.

[8] The purchased product from We Like Vitamins was is currently listed on Amazon.com as Sam-e 500mg, 90 capsules, SAM e S-Adenosyl Methionine Supplement – Max Strength with an ASIN # of B01F9IR35M. *See* Exhibit B.

[9] The purchased product from We Like Vitamins was is currently listed on Amazon.com as Sam-e 500mg, 90 capsules, SAM e S-Adenosyl Methionine Supplement – Max Strength with an ASIN # of B01F9IR35M. *See* Exhibit B.

[10] The purchased NusaPure product is currently listed on Amazon.com as Sam-e 1500mg, 180 capsules, SAMe S-Adenosyl Methionine Supplement with an ASIN # of B077GKCHPP. *See* Exhibit C.

of the subject product as it was available for sale by and under the retail name of aSquared on Amazon.com for a purchase price of $29.99.[11] On or about May 14, 2018, Plaintiff Hood purchased one bottle of the subject product as it was available for sale by and under the retail name of aSquared on Amazon.com for a purchase price of $29.99.[12] On or about August 7, 2018, Plaintiff Hood purchased one bottle of the subject product as it was available for sale by and under the retail name of aSquared on Amazon.com for a purchase price of $34.99.[13] On or about December 12, 2018, Plaintiff Hood purchased one bottle of the subject product as it was available for sale by and under the retail name of aSquared on Amazon.com for a purchase price of $34.99.[14] On or about March 15, 2019, Plaintiff Hood purchased one bottle of the subject product as it was available for sale by and under the retail name of aSquared on Amazon.com for a purchase price of $39.99.[15] The product orders were shipped by Amazon to her residence in Phoenix, New York.

12.    Plaintiff Robert McKeown brings this action in an individual capacity and on behalf of all others similarly situated. Plaintiff McKeown is an adult individual who at all relevant times has resided in Cedar Park, Texas. On or about December 23, 2017, Plaintiff McKeown purchased one bottle of the subject product as it was available for sale by and under the retail name of aSquared on Amazon.com for a purchase price of $34.99.[16] The product was shipped by Amazon to his residence in Cedar Park, Texas.

---

[11] The purchased product from aSquared is currently listed on Amazon.com as Pure Sam-e 400mg supplement, 90 capsules, Same S-Adenosyl Methionine with an ASIN =B072NDRFB1. *See* Exhibit D.
[12] The purchased product from aSquared is currently listed on Amazon.com as Pure Sam-e 400mg supplement, 90 capsules, Same S-Adenosyl Methionine with an ASIN =B072NDRFB1. *See* Exhibit D.
[13] The purchased product from aSquared is currently listed on Amazon.com as Pure Sam-e 400mg supplement, 90 capsules, Same S-Adenosyl Methionine with an ASIN =B072NDRFB1. *See* Exhibit D.
[14] The purchased product from aSquared is currently listed on Amazon.com as Pure Sam-e 400mg supplement, 90 capsules, Same S-Adenosyl Methionine with an ASIN =B072NDRFB1. *See* Exhibit D.
[15] The purchased product from aSquared is currently listed on Amazon.com as Pure Sam-e 400mg supplement, 90 capsules, Same S-Adenosyl Methionine with an ASIN =B072NDRFB1. *See* Exhibit D.
[16] The purchased product from aSquared is currently was listed on Amazon.com as Pure Sam-e 400mg supplement, 90 capsules, Same S-Adenosyl Methionine with an ASIN =B072NDRFB1. See Exhibit D.

13.     Defendant Vitamins Because is a manufacturer and seller to consumers and companies of over 1300 vitamins and nutritional supplements with a business location at 1832 S Dimensions Terr, Homosassa, FL 34448. As part of their operations, Defendant Vitamins Because operates a manufacture facility and vitamin store in Homosassa, Florida, as well as the websites of https://vitaminsbecause.biz/ and https://vitaminsbecause.us/, in order to sell their vitamins and nutritional supplement products directly to consumers, as well as manufacture their products for hundreds of independent companies. As part of its private label business whereby Defendant Vitamins Because specifically markets, manufactures and sells its products in bulk to independent retail companies (who in turn resell the products to consumers via Amazon.com and/or other retail avenues), Defendant Vitamins Because also designs, prints, and places custom logos and labels (including all nutritional facts) for independent retailers on their purchased stock of product bottles so the subject product can then be sold to consumers under the independent companies' private label.   Defendant Vitamins Because works in conjunction with Defendant CT Health to manufacture and/or sell vitamins and nutritional supplements, and operates as the alter ego of Defendant CT Health.

14.     Defendant CT Health is a vitamin and nutritional supplement retail seller located at 3930 S Suncoast Blvd, Homosassa, FL 34448. The entity also sells vitamins and nutritional supplements to consumers on the internet through their owned and maintained website of http://www.doctorvitaminstore.com/. Defendant CT Health works in conjunction with Defendant Vitamins Because to manufacture and/or sell vitamins and nutritional supplements, and operates as the alter ego of Defendant Vitamins Because.

15.     Defendant We Like Vitamins is a private label independent company which sells vitamins and nutritional supplements, including the subject SAMe manufactured and labeled by

7

Defendants Vitamins Because and/or CT Health, to consumers through their website (https://www.welikevitamins.com/), Amazon.com and other retail venues. Defendant We Like Vitamins maintains a place of business at 7125 Headley St., Ada, MI 49301.

16.     Defendant Gmax Central is a private label independent company which sells vitamins and nutritional supplements under the brand name of NusaPure, including the subject SAMe manufactured and labeled by Defendants Vitamins Because and/or CT Health, to consumers through their website (https://www.nusapure.com/), Amazon.com, and other retail venues. Defendant Gmax Central maintains a place of business at 75 N Woodward Ave #80277, Tallahassee, FL 32313.

17.     Defendant aSquared is a private label independent company which sells vitamins and nutritional supplements, including the subject SAMe manufactured and labeled by Defendants Vitamins Because and/or CT Health, to consumers through their website (https://asquarednutrition.com/), Amazon.com, and other retail venues. Defendant aSquared maintains a place of business at 382 NE 191st Street, #98406, Miami, FL 33179.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and the number of putative class members are at least one hundred (100). This is a class action in which some of the Plaintiffs and class members are citizens of states different from some of the Defendants.

19.     This Court has personal jurisdiction over Defendants in that Defendants engage in business and actively place and/or facilitate the placement of products, including the subject product, into a stream of commerce in the State of Florida, including within the boundaries of this

judicial district, and have sufficient minimum contacts in Florida; and otherwise intentionally avail themselves of the markets within Florida through promotion, sale, marketing and/or distribution of products to render the exercise of jurisdiction by this Court proper and necessary. This Court has personal jurisdiction over Defendants as the manufacture and labeling of the subject product and substantial parts of the events giving rise to this action's claims occurred in Florida.

20.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff Ginsberg at all relevant times resided in this District and Defendants conduct relevant business and activities in this District. Moreover, a substantial part of the events giving rise to Plaintiff Ginsberg's claim, including her order and purchase of the subject product, occurred in this District.

## **FACTUAL BACKGROUND**

21.    SAMe is an amino acid derivative normally synthesized in the body that may become depleted with sickness or age. Supplementing one's diet with SAMe and other vitamins and supplements has been found to be an effective way to overcome this deficiency. Some people have received medical recommendations from doctors to take up to 1600 mg of SAMe a day in the form of over-the-counter SAMe supplements.

22.    SAMe in the human body is naturally concentrated in the liver and brain, and is a major methyl donor in the synthesis of hormones, nucleic acids, proteins, and phospholipids, and catecholamines and other neurotransmitters. SAMe is required for the synthesis of norepinephrine, dopamine, and serotonin, all important brain and body functions.[17] SAMe also facilitates

---

[17] SAMe's ability to boost brain cell methylation facilitates youthful DNA enzymatic actions which may help account for SAMe's mood-elevating properties. These enzymatic reactions are required for the healthy conversion of neurotransmitters such as serotonin and dopamine.

glutathione usage which improves the body's antioxidant defense, and helps maintain acetylcholine levels which are necessary for cognitive function.[18]

23.     Although SAMe has been available to consumers in the U.S. market since the 1990s as a dietary and/or nutritional supplement, researchers continue to discover impressive benefits of SAMe. Most basically, research has long shown that SAMe helps maintain stable mood[19] and joint function without side effects.[20] As a result, it is regularly recommended by doctors for treatment of serious conditions of depression and arthritis. Moreover, because aging people often suffer joint discomfort and immobilization, SAMe supplementation addresses multiple problems people face as they grow older.

24.     In addition, research has shown that SAMe has multiple mechanisms of action that are used throughout the body, especially in the liver, where it functions to help maintain liver health. In particular, SAMe has multimodal mechanisms of action that are used in the liver and other parts of the body. Moreover, in order to perform its detoxification role, the liver continually performs large numbers of complex enzymatic reactions. SAMe facilitates healthy methylation enzymatic processes and boosts hepatic levels of glutathione, a critical antioxidant. When liver function is compromised, glutathione is depleted, which leads to free radical damage. In addition, SAMe acts as a methyl donor in the synthesis and formation of phosphatidylcholine and L-cysteine, both necessary for maintaining liver health. Thus, although largely known for its facilitation of optimal moods, SAMe has also shown benefits for the liver, brain, and joints.

---

[18] A report published in Germany indicates that SAMe may help maintain healthy neurological function. The report revealed that: a) SAMe increased glutathionelevels by 50% and glutathione enzyme activity by 115%; b) SAMe decreased a measurement of free radical activity by 46%; and c) SAMe inhibited lipid peroxidation by 55% in culture.
[19] A recent study conducted at Harvard Medical School and Massachusetts General Hospital cited the benefits of SAMe for mood elevation.
[20] In 2002, an agency of the U.S. Department of Health and Human Services conducted a meticulous evaluation of SAMe. Its findings show the efficacy of SAMe in helping to maintain stable mood and joint function without any side effects.

25.     SAMe supplements sold in the U.S. market are typically manufactured in the form of enteric coated tablets, containing the active ingredient of SAMe as bound together in a stabilized salt form, known as s-adenosyl-methionine tosylate disulfate, and combined with non-active, stabilizing ingredients. The tablets are manufactured in a controlled environment and overlaid with enteric coating. The enteric coating is necessary both to protect the SAMe and slow its physical and chemical decomposition, and, more importantly, to protect the body's upper gastrointestinal tract during the supplements' digestion from an early release of the product's contained acid and ensure the SAMe's proper and intended absorption in the body's intestines.

## SUBSTANTIVE ALLEGATIONS

26.     Defendants Vitamins Because and/or CT Health manufacture and sell over 1,300 types of vitamins and nutritional supplements, including the subject product non-coated SAMe dietary supplement capsules. Vitamins Because and/or CT Health's websites tout the quality of their products and further represents that Vitamins Because guarantees every product that it sells. Vitamins Because and/or CT Health further guarantee that, upon return of the remainder of the product, they will provide refunds for the unused portion of the product within one year for any product they sell which customers are not completely satisfied.

27.     Unlike most other SAMe supplements sold in the U.S. consumer market, the subject product manufactured by Vitamins Because and/or CT Health is made in capsule form, combining s-adenosyl-methionine tosylate disulfate with gelatin[21] and rice powder[22]. The subject product capsules are defectively designed, manufactured, and/or processed in that they do not contain any outer coating. The product's defective design, manufacture, and/or processes include a lack of

[21] Gelatin can be used by manufacturers to form a capsule for dietary supplements.
[22] Rice powder can be used by manufacturers as a flow agent.

enteric coating customarily overlaid on SAMe supplement tablets throughout the industry in order to ensure against their early release of acid in the body's upper gastrointestinal tract during digestion and premature absorption until reaching the body's intestines. In fact, Vitamins Because and/or CT Health's websites claim that the capsule form was chosen over the more common tablet form in order to attain fast absorption.

28.     By pre-release data and laboratory examination and testing, company and industry-wide knowledge of the chemical nature of SAMe and design specifications in manufacturing its supplement form, company quality control operations and material reviews, and consumer complaints on Amazon.com webpages and other internet sites, Defendants Vitamins Because, CT Health, and independent retailers, including Defendants We Like Vitamins, Gmax Central and aSquared, have been on actual and/or constructive notice that the subject product lacks the represented amount of SAMe and SAMe potency; is defectively designed, manufactured, and processed; and not fit for its intended purpose for use as a SAMe dietary supplement. Despite their knowledge, Defendants Vitamins Because, CT Health, and independent retailers, including Defendants We Like Vitamins, Gmax Central, and aSquared, failed to disclose to Plaintiffs and their putative classes the true quality and quantity of the subject product and actively concealed the existence and nature of its defects and its substantially reduced SAMe potency at the time of manufacture, purchase, and thereafter. Defendants Vitamins Because, CT Health, and independent retailers, including Defendants We Like Vitamins, Gmax Central, and aSquared have not recalled the sold bottles of the subject product and continue to sell the subject product representing it to be a quality SAMe supplement fit for its intended health purposes while knowing of its substantially reduced SAMe potency.

Defendant Vitamins Because

29.     The subject product is manufactured by Vitamins Because and then sold to consumers for personal use as a dietary supplement under the Vitamins Because private label at their physical store locations in Florida, as well as through Vitamins Because's retail website -- https://vitaminsbecause.biz/. Consumers purchase the subject product from Vitamins Because's retail website in bottles with quantities of either 90 or 180 capsules. The purchased subject product is shipped to consumers in sealed blue bottles with white caps, each containing either 90 capsules at a price of $39.99, or 180 capsules at a price of $59.99.

30.     Consumers may purchase multiple bottles of the subject product from Vitamins Because's and/or CT Health's retail websites. Many independent companies and stores also purchase large bulk quantities of bottles of the subject product with Vitamins Because's private label from the Vitamins Because and/or CT Health websites at what the websites represent to be wholesale prices in order to resell the bottles individually to consumers at higher retail prices.

31.     The bottles of the subject product sold by Vitamins Because and/or CT Health from their retail websites contain Vitamins Because's own private label. The front of the label includes Vitamins Because's private logo (with the words "VITAMINS BECAUSE YOU ARE WORTH IT"), and states in large print "SAM-e," "S-Adenosyl-L-Methionine Disulfate Tosylate," "1500 mg," and the number of contained capsules. Depictions of the front side of the label for bottles of the subject product containing 90 and 180 capsules are displayed in Exhibit A. The back and/or sides of the label provide "Supplement Facts" representing that 1500 mg of SAM-e (as S-Adenosyl-L-Methionine Disulfate Tosylate) are included "Per Serving." Some Vitamins Because labels define a serving size as 3 capsules, while others may define a serving size as 4 capsules. Examples of the represented "Supplement Facts" on the back and/or sides of the Vitamins Because

labels are depicted in Exhibit A. The back and/or sides of the label also provide directions for usage, ingredient information, and a warning for pregnant or nursing women and those taking medications or planning a medical procedure. These representations on the back and/or sides of the Vitamins Because labels are also depicted in Exhibit A.

32.    At the time of purchase, Vitamins Because and/or CT Health, by and through their private label on bottles of the subject product and/or its retail website, have and continue to represent to consumers that the subject product capsules included in their subject product bottles with the Vitamins Because private label contain 1500 milligrams ("mg") of SAMe per serving, and 500 mg (where a serving size is defined as 3 capsules) or 375 mg (where a serving size is defined as 4 capsules) of SAMe per capsule. These representations are depicted in Exhibit A.

33.    At the time of purchase, Vitamins Because and/or CT Health, by and through their private label on bottles of the subject product and/or their retail website, have and continue to communicate to consumers that the subject product is in good condition and fit for its intended use as a dietary supplement as labeled. These representations are depicted in Exhibit A.

34.    The SAMe capsules included in the subject product bottles with the Vitamins Because private label have not and do not contain the stated amounts of milligrams of SAMe per serving and per capsule. In fact, the included subject product capsules have been manufactured to contain only approximately 12-18% of the represented amount of active SAMe milligrams per serving, and approximately 50-75 mg of active SAMe per capsule.[23] Accurate measures of the

---

[23] Representations of milligrams ("mg") of SAMe on SAMe supplement labels of brands throughout the industry represent the amount of *active* SAMe contained therein (usually per tablet), as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation. The "Supplement Facts" section on Vitamins Because's private label expressly states that the represented amount of 1500 mg is of SAMe (as S-Adenosyl-L-Methionine Disulfate Tosylate). Even assuming the stated amount of 1500 mg connotes the amount of S-Adenosyl-L-Methionine Disulfate Tosylate, the salt form containing within it active SAMe, and not the amount of active SAMe itself, the label is still grossly mislabeled. Under this reading of the label, the included subject product capsules contain only approximately 22-30% of the represented amount of S-Adenosyl-L-Methionine Disulfate Tosylate per serving,

amount of active SAMe contained in the subject product are not disclosed on the Vitamins Because private labels.

35.    The same subject non-coated SAMe dietary supplement capsules are sold by Vitamins Because and/or CT Health to independent private label companies through their private label website -- https://vitaminsbecause.us/. Private label companies purchase large wholesale quantities of the subject SAMe product from Vitamins Because and put their own private label on the product for further retail sale through outlets such as the Amazon.com website. Private label companies selling the subject product manufactured by Vitamins Because and/or CT Health on Amazon.com webpages include (but may not be limited to): We Like Vitamins, Gmax Central LLC (under the brand "NusaPure"), and aSquared Brands LLC. Vitamins Because and/or CT Health have and continue to sell the subject product to private label retailers with knowledge and/or intent that the subject product will reach U.S. consumers through online or in-store retail.

36.    Private label companies purchase the subject product from Vitamins Because's private label website in packages of 12, 100, or 500 bottles containing 90 or 180 capsules. The purchased subject product bottles are the same sealed blue bottles with white caps sold directly to consumers on Vitamins Because's and/or CT Health's retail website. Each bottle in the 12, 100, or 500 bottle packages contain either 90 or 180 capsules. The 12, 100, or 500 bottle packages containing 90 capsules per bottle are priced at $160.99, $1,323.99, and $6,615.99, respectively. The 12, 100, or 500 bottle packages containing 180 capsules per bottle are priced at $239.99, $1,999.99, and $9,948.99, respectively.

37.    The subject product bottles sold by Vitamins Because and/or CT Health from their private label websites are shipped to private label retailers containing the ordering companies' own

---

and approximately 100-150 mg of S-Adenosyl-L-Methionine Disulfate Tosylate per capsule.

private labels and logos. Upon information and belief, the private label retailers' "custom" labels and logos are selected, ordered, and purchased by each company from Vitamins Because's portfolio of stock labels and logos. Each "custom" label and logo design is available for sale on their private label website for a one-time charge of $49.99 per label and $49.99 per logo. In selecting a label and logo, Vitamins Because works with the private label companies to design and create the labels and logos according to their preferences, even allowing the companies to select up to five font choices and three revisions in the designing of their labels and logos. The private label companies are also in contact with Vitamins Because and/or CT Health to let them know what information should be included on their private labels.

38.     After the order and payment for a label and logo is remitted, the purchased label and logo are then removed from the website's listing and they become the exclusive possession of the private label company to be used by Vitamins Because for the labeling of wholesale stock of bottles of vitamins and dietary supplements purchased by that private label company from the Vitamins Because website. When fulfilling the private label company's orders, Vitamins Because then places the company's custom label they designed and made for them on their ordered bottles. Thus Vitamins Because designs, creates, manufactures, and attaches the labels to the private label bottles of independent companies selling vitamins and nutritional supplements manufactured by Vitamins Because and/or CT Health including the subject product. Vitamins Because and/or CT Health have and continue to design, create, manufacture, and attach the private labels of private label retail companies to the subject product bottles with knowledge and/or intent that those private labels will be viewed by U.S. consumers in the context of online and/or in-store retail consumer purchasing.

39.     At the time of purchase, Vitamins Because and/or CT Health and the private label companies[24], by and through each company's private label on bottles of the subject product which are designed, created, manufactured, and attached to the subject product bottles by Vitamins Because and/or CT Health in conjunction with the private label companies, and each company's retail webpages on Amazon.com and/or other websites, have and continue to represent to consumers that the subject product capsules included in the subject product bottles with the private labels contain 400, 500, or 1500 mg of SAMe per serving, and 375, 400, or 500 mg of SAMe per capsule. These representations are depicted in Exhibits B-D.

40.     At the time of purchase, Vitamins Because and/or CT Health and the private label companies, by and through each company's private label on bottles of the subject product which are designed, created, manufactured, and attached to the subject product bottles by Vitamins Because and/or CT Health in conjunction with the private label companies, and each company's retail webpages on Amazon.com and/or other websites, have and continue to represent to consumers that the subject product is merchantable, in good condition, and fit for its intended use as a dietary supplement as labeled. These representations are depicted in Exhibits A-D.

41.     The SAMe capsules included in the subject product bottles with private labels have not and do not contain the stated amounts of milligrams of SAMe per serving and per capsule. In fact, the included subject product capsules contain only approximately 12-18% of the represented amount of active SAMe milligrams per serving, and approximately 50-75 mg of active SAMe per capsule.[25] Accurate measures of the amounts of active SAMe contained in the subject product are not disclosed on the private labels.

---

[24] These companies include, but are not limited to: We Like Vitamins LLC, Gmax Central LLC (under the brand "NusaPure"), and aSquared Brands LLC.
[25] Representations of milligrams ("mg") of SAMe on SAMe Supplement labels of brands throughout the industry

<u>Online Sales</u>

42.     Private label companies, including We Like Vitamins LLC, Gmax Central LLC (under the brand name "NusaPure"), and aSquared Brands LLC ("private label companies" or "private label retailers" or "Defendant retailers"), sell bottles of the subject product with their own private labels (which they purchased from Vitamins Because and/or CT Health) to the consumer public through outlets such as Amazon.com.

43.     Pictures of the subject product labels and/or the information contained on the subject product labels are made available to consumers on Amazon.com webpages and all other online venues of sale prior to their online purchase of any of the privately labeled subject product. Consumers, including Plaintiffs and putative class members, in all circumstances of purchase, whether online or in a store, have and continue to view the contents of the subject product labels before making their purchase decision and payment for the subject product.

<u>We Like Vitamins</u>

44.     We Like Vitamins is a private label company that purchases large wholesale quantities of the subject product manufactured and sold by Vitamins Because and/or CT Health to We Like Vitamins in bottles containing We Like Vitamins' own private labels. We Like Vitamins then resells the subject product with its private We Like Vitamins label to consumers online

---

represent the amount of *active* SAMe contained therein (usually per tablet), as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation. The "Supplement Facts" section on private label bottles expressly state that the represented amount of 400, 500, or 1500 mg is of SAMe (as or from S-Adenosyl-L-Methionine Disulfate Tosylate). Even assuming the stated amounts of SAMe in milligrams connote the amount of S-Adenosyl-L-Methionine Disulfate Tosylate, the salt form containing active SAMe within, and not the amount of active SAMe itself, the private labels are still grossly mislabeled. Under this reading of the label, the included subject product capsules contain only approximately 22-30% of the represented amount of S-Adenosyl-L-Methionine Disulfate Tosylate per serving, and approximately 100-150 mg of S-Adenosyl-L-Methionine Disulfate Tosylate per capsule.

through its retail website -- https://www.welikevitamins.com/ -- or other online outlets such as Amazon.com, and stores throughout the country.

45.    We Like Vitamins selected, ordered, and/or purchased a "custom" label and logo from Vitamins Because and/or CT Health. In selecting its label and logo, Vitamins Because and/or CT Health worked with We Like Vitamins to design and create its private label according to We Like Vitamins' preferences. We Like Vitamins was also in contact with Vitamins Because and/or CT Health to let them know what information Vitamins Because and/or CT Health should include on its private labels. Vitamins Because and/or CT Health then fills We Like Vitamins wholesale purchase orders providing it with its purchased product in blue bottles with sealed white caps containing the We Like Vitamins own private label.

46.    The bottles of the subject product sold by We Like Vitamins to the consumer public contain We Like Vitamins' own private label. The front of the We Like Vitamins' private label includes We Like Vitamins' private logo (with the name "WE LIKE VITAMINS"), and states in large print "SAM-e," "500 mg," "Dietary Supplement," and "90 Capsules." The front of the label also states that the subject product "Helps to Support Emotional Health" and "Helps to Support Bone and Joint Health." Depictions of the front side of the label for bottles of the subject product with the We Like Vitamins private label are displayed in Exhibit B. The back and/or sides of the label provide "Supplement Facts" representing that 500 mg of SAM-e (from os-adenosyl-methionine disulfate tosylate) are contained "Per Serving," where a serving size is defined as 1 capsule. A depiction of the represented "Supplement Facts" on the back and/or sides of the We Like Vitamins private labels are depicted in Exhibit B. The back and/or sides of the label also provide directions for usage and warnings for those who are pregnant, nursing, taking medications,

have a medical condition, or have scheduled a medical procedure. These representations on the back and/or sides of the We Like Vitamins private labels are depicted in Exhibit B.

47.    The subject product sold by We Like Vitamins has not and does not contain the above stated amounts of milligrams of SAMe per serving and per capsule as indicated by We Like Vitamins' private label. In fact, the included subject product capsules contain only approximately 12-18% of the represented amount of active SAMe milligrams per serving, and approximately 50-75 mg of active SAMe per capsule.[26] Accurate measures of the amounts of active SAMe contained in the subject product are not disclosed on We Like Vitamins' private label.

48.    The subject product sold by We Like Vitamins under its private We Like Vitamins label have and continue to be manufactured and packaged by Vitamins Because and/or CT Health in the same manner in which Vitamins Because and/or CT Health manufacture and package the subject product sold under the Vitamins Because private label. Accordingly, the subject product sold by We Like Vitamins under its private We Like Vitamins label contains the same defects in its design, manufacture, and/or processing. The subject product sold by We Like Vitamins under its private We Like Vitamins label is similarly not properly manufactured with any industry-standard outer coating.

49.    By pre-release data and testing, company and industry-wide knowledge of the chemical nature of SAMe and design specifications in manufacturing its supplement form, and/or

---

[26] Representations of milligrams ("mg") of SAMe on SAMe Supplement labels of brands throughout the industry represent the amount of *active* SAMe contained therein (usually per tablet), as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation. The "Supplement Facts" section on We Like Vitamins' private label expressly states that the represented amount of 500 mg is of SAMe (from os-adenosyl-methionine disulfate tosylate). Even assuming the stated amount of 500 mg connotes the amount of os-adenosyl-methionine disulfate tosylate, the salt form containing within it active SAMe, and not the amount of active SAMe itself, the label is still grossly mislabeled. Under this reading of the label, the included subject product capsules contain only approximately 22-30% of the represented amount of s-adenosyl-methionine disulfate tosylate per serving, and approximately 100-150 mg of s-adenosyl-methionine disulfate tosylate per capsule.

by consumer complaints on the Amazon.com webpages and other internet sites, We Like Vitamins has been on actual and/or constructive notice that the subject product is defectively designed, manufactured, and processed, not fit for its intended purpose as a SAMe dietary supplement, and falsely labeled as detailed herein. Despite its knowledge, We Like Vitamins failed to disclose to the consumer public, including Plaintiffs and the putative classes, the defects described above and the true and accurate supplement facts regarding the amount and nature of the SAMe contained in its subject product. We Like Vitamins also has and continues to actively conceal the existence and nature of said defects and amount of SAMe at the time of purchase and thereafter. We Like Vitamins has not recalled the sold bottles of the subject product and continues to sell the subject product representing it to be a quality SAMe supplement fit for its intended health purposes as so represented by the We Like Vitamins private label.

Gmax Central

50.     Gmax Central is a private label company that purchases large wholesale quantities of the subject product manufactured and sold by Vitamins Because and/or CT Health to Gmax Central in bottles containing Gmax Central's own private labels with its brand name "NusaPure." Gmax Central then resells the subject product with its private "NusaPure" label to consumers online through its retail website -- https://www.nusapure.com/ -- or other online outlets such as Amazon.com, and stores throughout the country.

51.     Gmax Central selected, ordered, and/or purchased a "custom" label and logo from Vitamins Because and/or CT Health. In selecting its label and logo, Vitamins Because and/or CT Health worked with Gmax Central to design and create its "NusaPure" private label according to Gmax Central's preferences. Gmax Central was also in contact with Vitamins Because and/or CT Health to let them know what information Vitamins Because and/or CT Health should include on

21

its private label. Vitamins Because and/or CT Health then fills Gmax Central's wholesale purchase orders providing it with its purchased product in blue bottles with sealed white caps containing the "NusaPure" private label.

52.     The bottles of the subject product sold by Gmax Central to the consumer public contain Gmax Central's own "NusaPure" private label. The front of the Gmax Central's private label includes Gmax Central's private logo with the name "NusaPure," and states in large print "SAM-e" and "1500 mg." It also states "Dietary Supplement," "180 Capsules," and "MAX STRENGTH." The front of the label further states that the subject product "Supports Well-Being & Healthy Mood," "Promotes Healthy Brain Function," and "Supports Joint & Liver Health." Depictions of the front side of the label for bottles of the subject product with the "NusaPure" private label are displayed in Exhibit C. The back and/or sides of the label provide "Supplement Facts" representing that 1500 mg of SAM-e (from os-adenosyl-methionine disulfate tosylate) are contained "Per Serving," where a serving size is defined as 3 capsules. A depiction of the represented "Supplement Facts" on the back and/or sides of the "NusaPure" private labels are depicted in Exhibit C.[27] The back and/or sides of the label also provide directions for usage and warnings for those who are pregnant, nursing, taking medications, or planning any medical procedure. These representations on the back and/or sides of the "NusaPure" private labels are depicted in Exhibit C.

53.     The subject product sold by Gmax Central has not and does not contain the above stated amounts of milligrams of SAMe per serving and per capsule as indicated by the "NusaPure" private label. In fact, the included subject product capsules contain only approximately 12-18% of

---

[27] Gmax Central also represents on its NusaPure website (https://www.nusapure.com/) that its SAMe dietary supplement has been "3rd party lab tested and verified for purity and safety."

the represented amount of active SAMe milligrams per serving, and approximately 50-75 mg of active SAMe per capsule.[28] Accurate measures of the amounts of active SAMe contained in the subject product are not disclosed on the "NusaPure" private label.

54.     The subject product sold by Gmax Central under its private "NusaPure" label have and continue to be manufactured and packaged by Vitamins Because and/or CT Health in the same manner in which Vitamins Because and/or CT Health manufactures and packages the subject product sold under the Vitamins Because private label. Accordingly, the subject product sold by Gmax Central under its private "NusaPure" label contains the same defects in its design, manufacture, and/or processing. The subject product sold by Gmax Central under its private "NusaPure" label is similarly without any industry-standard outer coating.

55.     By pre-release data and testing, company and industry-wide knowledge of the chemical nature of SAMe and design specifications in manufacturing its supplement form, and/or by consumer complaints on the Amazon.com webpages and other internet sites, Gmax Central has been on actual and/or constructive notice that the subject product is defectively designed, manufactured, and/or processed, not fit for its intended purpose as a SAMe dietary supplement, and falsely labeled as described above. Despite its knowledge, Gmax Central failed to disclose to the consumer public, including Plaintiffs and the putative classes, the defects detailed herein and the true and accurate supplement facts regarding the amounts and nature of the SAMe contained

---

[28] Representations of milligrams ("mg") of SAMe on SAMe Supplement labels of brands throughout the industry represent the amount of *active* SAMe contained therein (usually per tablet), as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation. The "Supplement Facts" section on the "NusaPure" private label expressly states that the represented amount of 1500 mg is of SAMe (as S-Adenosyl-L-Methionine Disulfate Tosylate). Even assuming the stated amount of 1500 mg connotes the amount of S-Adenosyl-L-Methionine Disulfate Tosylate, the salt form containing within it active SAMe, and not the amount of active SAMe itself, the label is still grossly mislabeled. Under this reading of the label, the included subject product capsules contain only approximately 22-30% of the represented amount of S-Adenosyl-L-Methionine Disulfate Tosylate per serving, and approximately 100-150 mg of S-Adenosyl-L-Methionine Disulfate Tosylate per capsule.

23

in its subject product. Gmax Central also has and continues to actively conceal the existence and nature of said defects and amount of SAMe at the time of purchase and thereafter. Gmax Central has not recalled the sold bottles of the subject product and continues to sell the subject product representing it to be a quality SAMe supplement fit for its intended health purposes and as represented by the "NusaPure" private label.

aSquared

56.     aSquared is a private label company that purchases large wholesale quantities of the subject product manufactured and sold by Vitamins Because and/or CT Health to aSquared in bottles containing aSquared's own private labels. aSquared then resells the subject product with its private aSquared label to consumers online, through its retail website -- https://asquarednutrition.com/ -- or other online outlets such as Amazon.com, and stores throughout the country.

57.     aSquared selected, ordered, and/or purchased a "custom" label and logo from Vitamins Because and/or CT Health. In selecting its label and logo, Vitamins Because and/or CT Health worked with aSquared to design and create its private label according to its preferences. aSquared was also in contact with Vitamins Because and/or CT Health to let them know what information Vitamins Because and/or CT Health should include on its private labels. Vitamins Because and/or CT Health then fills aSquared wholesale purchase orders providing it with its purchased product in blue bottles with sealed white caps containing aSquared's own private label.

58.     The bottles of the subject product sold by aSquared to the consumer public contain aSquared's own private label. The front of the aSquared's private label includes aSquared's private logo (with the name "aSquared NUTRITION"), and states in large print "SAM-e," "400 mg," "MAXIMUM STRENGTH." The front of the label also states that the subject product "Supports

24

Well-Being & Healthy Mood," "Promotes Healthy Brain Function," "Supports Joint & Liver Health," and contains "NO PRESERVATIVES." The front of the label also indicates that the bottle contains 90 capsules of dietary supplement. Depictions of the front side of the label for bottles of the subject product with the aSquared private label are displayed in Exhibit D. The back and/or sides of the label provide "Supplement Facts" representing that 400 mg of SAM-e (from S-Adenosyl Methionine Tosylate Disulfate) are contained "Per Serving," where a serving size is defined as 1 capsule. The "Supplement Facts" on the back and/or sides of the aSquared private labels are depicted in Exhibit D. The back and/or sides of the label also provide directions for usage and warnings regarding exceeding the recommended dose and its use by pregnant or nursing women, minors, those taking medications, those with a medical condition, and those planning a medical procedure.

59.    The subject product sold by aSquared has not and does not contain the above stated amounts of milligrams of SAMe per serving and per capsule as indicated by aSquared's private label. In fact, the included subject product capsules contain only approximately 12-18% of the represented amount of active SAMe milligrams per serving, and approximately 50-75 mg of active SAMe per capsule.[29] Accurate measures of the amounts of active SAMe contained in the subject product are not disclosed on aSquared's private label.

---

[29] Representations of milligrams ("mg") of SAMe on SAMe Supplement labels of brands throughout the industry represent the amount of *active* SAMe contained therein (usually per tablet), as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation. The "Supplement Facts" section on aSquared private label expressly states that the represented amount of 400 mg is of SAMe (from S-Adenosyl-L-Methionine Disulfate Tosylate). Even assuming the stated amount of 400 mg connotes the amount of S-Adenosyl-L-Methionine Tosylate Disulfate, the salt form containing within it active SAMe, and not the amount of active SAMe itself, the label is still grossly mislabeled. Under this reading of the label, the included subject product capsules contain only a fraction of the represented amount of S-Adenosyl-L-Methionine Disulfate Tosylate per serving, and approximately 100-150 mg of S-Adenosyl-L-Methionine Disulfate Tosylate per capsule.

60.    The subject product sold by aSquared under its private aSquared label have and continue to be manufactured and packaged by Vitamins Because and/or CT Health in the same manner in which Vitamins Because and/or CT Health manufactures and packages the subject product sold under the Vitamins Because private label. Accordingly, the subject product sold by aSquared under its private aSquared label contains the same defects in its design, manufacture, and/or processing. The subject product sold by aSquared under its private aSquared label is similarly without any industry-standard outer coating.

61.    By pre-release data and testing, company and industry-wide knowledge of the chemical nature of SAMe and design specifications in manufacturing its supplement form, and/or by consumer complaints on the Amazon.com webpages and other internet sites, Defendant aSquared, has been on actual and/or constructive notice that the subject product is defectively designed, manufactured, and/or processed, not fit for its intended purpose as a SAMe dietary supplement, and falsely labeled as described above. Despite its knowledge, aSquared failed to disclose to the consumer public, including Plaintiffs and the putative classes, the defects described above and the true and accurate supplement facts regarding the amount and nature of the SAMe contained in its subject product. aSquared also has and continues to actively conceal the existence and nature of said defects and amount of SAMe at the time of purchase and thereafter. aSquared has not recalled the sold bottles of the subject product and continues to sell the subject product representing it to be a quality SAMe supplement fit for its intended health purposes and as represented by the aSquared private label.

Deceptive Practices

62.    The acts, practices, and product labeling of Defendant manufacturers and retailers have and continue to be materially deceptive and misleading. The false product labeling of the

26

subject product has and continues to deceive and mislead consumers into believing that the subject product contains high amounts of SAMe which greatly exceed the subject products' actual SAMe content. The amount of SAMe contained in a SAMe supplement is its most distinguishing feature and a significant purchase motivator for purchasers of such supplements.

63.     Defendant manufacturers and retailers knew and know, or should know and should have known, that the subject product is and has not been accurately labeled and grossly overstates the amount of SAMe manufactured into the subject product's capsules and stated serving sizes. Knowledge of the false labeling and its gross overstatement of included SAMe was easily attained by Defendant manufacturers' and retailers' scientific knowledge of SAMe, its biological functions, and its tosylate disulfate salt form; knowledge of the SAMe controlled manufacturing process and consumer dietary supplement industry; knowledge regarding the manufacturing and ingredients included in the specific subject product, including capsule weight[30]; internal pre-release laboratory testing; and online consumer complaints and feedback.[31]

64.     Defendant manufacturers and retailers intentionally, recklessly, and/or negligently misrepresented to consumers the amount of active SAMe contained in the subject product by actively mislabeling the subject product with false and grossly overstated representations of the amount of SAMe included in the supplement's capsules and serving sizes.

65.     Because of the subject product's pricing below typical market, Defendant manufacturers and retailers intentionally, recklessly, and/or negligently misled consumers into

---

[30] The entity fill weight of the subject product capsules typically approximates only 500-600 mg, making the inclusion of the represented 375-500 mg of active SAMe per capsule (when considered along with the necessary amount of s-adenosyl-methionine tosylate disulfate needed to maintain that amount of active SAMe and the minimal amount of filler material (*e.g.,* gelatin and rice powder) necessary for capsule formation) a manufacturing/structural impossibility.

[31] Online consumer complaints on Amazon.com webpages and elsewhere include complaints of the subject product's ineffectiveness as a SAMe supplement, deceptive labeling, etc.

believing they were securing with their purchase of the subject product a value purchase of fully effective, non-defective SAMe supplement, containing the stated amounts of SAMe.

66.     Defendant manufacturers and retailers intentionally, recklessly, and/or negligently advertised and/or represented the subject product to consumers with material omissions and active concealment of material facts. The material omissions by Defendant manufacturers and retailers include failure to disclose on the subject product labels the accurate measure of active SAMe included in each included capsule, as is typically disclosed on product labels of SAMe supplement throughout the industry. An accurate measure of the amount of active SAMe included in each capsule is material information which any reasonable consumer would need to know in the context of purchasing SAMe supplements in order to make a reasonably informed purchase decision. Particularly with the subject product, where each included SAMe capsule contains significantly less active SAMe per capsule as compared with many SAMe supplement tablets available to U.S. consumers online and sold throughout the industry, accurate disclosure of the amount of included active SAMe is both material and necessary for consumers. In fact, many SAMe supplements sold in the consumer market contain 200 or 400 mg of active SAMe per tablet, and Defendant manufacturers' and retailers' nondisclosure of the accurate amount of active SAMe contained in the subject product (approximately between 50-75 mg of SAMe per capsule) has and continues to be materially deceptive to reasonable consumers expecting their purchased SAMe supplement to contain a higher amount per capsule. Moreover, because SAMe supplements sold in the consumer market contain labels which accurately disclose the amount of active SAMe contained within the labeled SAMe supplement, reasonable consumers expect accurate disclosure of this information, and have and continue to be deceived as to the quality and quantity of SAMe in the subject product purchased without such disclosure.   Moreover, clear and accurate disclosure of the amount of

active SAMe contained in each capsule is material and necessary to consumers as reasonable consumers purchase SAMe supplements in an effort to consume a prescribed or recommended amount of SAMe supplementation as prescribed by their doctors or medical professionals which can only be maintained with clear and accurate disclosure of SAMe amounts on the subject product labels and web retail postings.

67.     The material omissions by Defendant manufacturers and retailers also include their failure to disclose to consumers, including Plaintiffs and their putative classes, that the subject product was defectively designed, manufactured, and/or processed as detailed herein. Defendant manufacturers and retailers failed to disclose to consumers, including Plaintiffs and their putative classes, that the subject product lacks the proper enteric coating, a feature which is key to most SAMe supplement's proper bodily absorption.

68.     Defendant manufacturers and retailers intentionally, recklessly, and/or negligently engaged in deceptive and misleading acts by devising misleading and deceptively manipulated serving sizes (i.e., x number of capsules per serving) whose true amounts of active SAMe do not correlate to proper dosages of SAMe which are typically recommended by the medical profession or used in the SAMe supplement industry. These manipulated serving sizes (i.e., ranging from 1 to 4 capsules) which are printed on the subject product labels in their "Supplement Facts" section are represented to consumers as typical serving sizes, and assumed to provide consumers with an amount of SAMe typically expected from a serving of a SAMe supplement in the supplement industry. In reality, the subject product labels grossly overstate the amount of active SAMe present in every serving. As a result, the actual amount of SAMe present in the printed serving sizes (i.e., x number of capsules per serving) bear no correlation to any recommended amount of SAMe to be supplemented in one's diet on a regular basis. Such manipulation of serving sizes misleads

consumers into believing that by consuming the stated serving size they are receiving a proper and typical dosage amount of SAMe, when they are, in fact, receiving a different (and far less) amount of the active SAMe they seek.

<u>Injury</u>

69.     Plaintiffs and their putative classes have been injured as a result of Defendant manufacturers' and retailers' deceptive acts, practices and false labeling. The subject product's deceptive labels, which Plaintiffs and the putative classes of consumers viewed online or in person prior to their purchase and which communicated false information and failed to disclose material information, caused them to decide to purchase the subject products over other available accurately labeled and non-defective SAMe supplements on the market.

70.     Plaintiffs and putative class members acted reasonably in relying on Defendant manufacturers' and retailers' misrepresentations and omissions, the truth of which they could not have reasonably discovered.

71.     Plaintiffs and putative class members have been injured by Defendant manufacturers' and retailers' illegal and deceptive acts in the entire amount of the purchase price they paid for the subject products which were worthless and unfit for their intended purpose as a SAMe supplement because the subject product capsules were defective, unsafe for consumption, and severely lacking in a requisite amount of active SAMe for a dietary supplement of its kind.

72.     As a result of Defendant manufacturers' and retailers' illegal and deceptive practices, Plaintiffs and putative class members did not receive the benefit of their bargain in their purchases of the subject product.

73.     Plaintiffs and putative class members relied upon Defendant manufacturers' and retailers' false and deceptive labeling and material omissions in choosing to purchase the subject

product. Had Plaintiffs and putative class members known that the subject product was falsely and deceptively labeled, and defective in its manufacturing, they would not have paid the purchase price and/or purchased the subject product. The Defendant manufacturers' and retailers' false and deceptive labeling and material omissions caused Plaintiffs and putative class members to purchase the subject product over other available SAMe supplements sold on the market. Had Plaintiffs and putative class members never viewed the subject products' deceptive and misleading labels, they would not have been misled to believe that the subject products contained 375-500 mg of SAMe per capsule, and would not have been injured as they were from having selected and purchased the subject products at any purchase price.

74.    Defendant manufacturers and retailers misled consumers, including Plaintiffs and putative class members, through their falsely stated SAMe quantities and low pricing of the subject product below typical SAMe supplement retail pricing, into purchasing the subject product with the false belief that they were securing a value purchase for industry standard and/or effective SAMe supplement containing the stated quantities of SAMe. In fact, far from receiving a value purchase with the amount of SAMe stated on the subject products' labels, consumers, including Plaintiffs and the putative classes, purchased a product which, because of its minimal quantity of active SAMe and defects, was without the stated quantities of SAMe and unfit for its intended use as a SAMe supplement. Moreover, far from receiving a purchase of the value stated, consumers, including Plaintiffs and the putative classes, were misled into purchasing a product whose use could lead to significant injury from its premature release of acid in the digestive track, as well as from the lack of proper SAMe dosage it provides, as purchasers rely on the accuracy of dietary supplement labelling to maintain a proper dosage of SAMe as recommended by their doctors and/or health professionals.

75.     The subject product's deceptive labels also caused Plaintiffs and the putative classes to pay a premium or inflated price per milligram of active SAMe included in the subject product as charged by Vitamins Because and/or CT Health and the private label retailers for the subject product over other accurately labeled SAMe supplements in the market which charge lower prices per milligram for non-defective and accurately labeled SAMe supplements.

76.     Thus, the subject products' deceptive labels caused Plaintiffs and the putative classes to pay the premium or inflated price to the private label seller for the subject product instead of purchasing another cheaper (as measured per milligram of active SAMe) and properly manufactured and packaged SAMe supplement. Had Plaintiffs and putative class members never viewed the subject products' deceptive and misleading label, they would not have been misled to believe that the subject product contained 375-500 mg of SAMe per capsule, and would not have been injured as they were from having paid a premium or increased price for that small amount of active SAMe. Moreover, had Plaintiffs and putative class members never viewed the subject products' deceptive and misleading label, they would not have been misled to believe that the subject product contained properly manufactured, non-defective SAMe supplement, and would not have been injured as they were from having paid a premium or increased price for a defective SAMe product.

77.     Defendant manufacturers' and retailers' false and deceptive labeling also caused Plaintiffs and putative class members to not receive the monetary value of their purchase. Plaintiffs and putative class members received only 12-18% of the amount of SAMe which the subject product labels represented would be included for the purchase price they paid.

78.     Defendant manufacturers' and retailers' false and deceptive labeling also caused Plaintiffs and putative class members to overpay for defective SAMe supplements. Had the subject

32

products' defects been revealed prior to the time of purchase, Plaintiffs and putative class members would not have purchased the subject product or would have paid a lower purchase price for the subject product.

79.     Defendant manufacturers' and retailers' false and deceptive labeling also caused Plaintiffs and putative class members to be deprived of the opportunity to buy and consume a proper dosage and/or recommended amount of SAMe. Because of the subject products' false and deceptive labels, Plaintiffs and putative class members were led to believe they were consuming 375-500 mg of SAMe per capsule. They did not realize they were only consuming 50-75 mg of SAMe when consuming capsules of the subject product, and were thus deprived of the health benefits of a full and proper dosage.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated, pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of classes consisting of all persons who purchased the subject product. Excluded from the classes are Defendants, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

81.     The classes which Plaintiff Ginsberg seeks to represent are defined as:

1)  All persons who purchased the subject product in or as a resident of the United States of America ("nationwide class").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

33

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

2) All persons who purchased the subject product in or as a resident of the state of Florida ("Florida Subclass").   The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

3) All persons who purchased the subject product from the private label company We Like Vitamins in or as a resident of the United States of America ("We Like Vitamins Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

4) All persons who purchased the subject product from the private label company Gmax Central in or as a resident of the United States of America ("Gmax Central Subclass" or "NusaPure Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

82.     The classes which Plaintiff Malgeri seeks to represent are defined as:

1)  All persons who purchased the subject product in or as a resident of the United States of America ("nationwide class").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

2)  All persons who purchased the subject product in or as a resident of the state of Nevada ("Nevada Subclass").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

3)  All persons who purchased the subject product from the private label company We Like Vitamins in or as a resident of the United States of America ("We Like Vitamins Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

83.     The classes which Plaintiff Wolf seeks to represent are defined as:

1)   All persons who purchased the subject product in or as a resident of the United States of America ("nationwide class").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

2)   All persons who purchased the subject product in or as a resident of the state of Arizona ("Arizona Subclass").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

3)   All persons who purchased the subject product from the private label company aSquared in or as a resident of the United States of America ("aSquared Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

84.    The classes which Plaintiff Wilson seeks to represent are defined as:

1)    All persons who purchased the subject product in or as a resident of the United States of America ("nationwide class"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

2)    All persons who purchased the subject product in or as a resident of the state of California ("California Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

3)    All persons who purchased the subject product from the private label company We Like Vitamins in or as a resident of the United States of America ("We Like Vitamins Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

<u>Excluded from this class</u> are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

4) All persons who purchased the subject product from the private label company Gmax Central in or as a resident of the United States of America ("Gmax Central Subclass" or "NusaPure Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

<u>Excluded from this class</u> are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

85. The classes which Plaintiff Hood seeks to represent are defined as:

1) All persons who purchased the subject product in or as a resident of the United States of America ("nationwide class").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

<u>Excluded from this class</u> are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

2) All persons who purchased the subject product in or as a resident of the state of New York ("New York Subclass").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

3) All persons who purchased the subject product from the private label company aSquared in or as a resident of the United States of America ("aSquared Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

86.   The classes which Plaintiff McKeown seeks to represent are defined as:

1) All persons who purchased the subject product in or as a resident of the United States of America ("nationwide class"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

2) All persons who purchased the subject product in or as a resident of the state of Texas ("Texas Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships,

joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

3) All persons who purchased the subject product from the private label company aSquared in or as a resident of the United States of America ("aSquared Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage against Defendants.

## NUMEROSITY

87.   The members of the Classes are so numerous that joinder of all members is impracticable.  The Classes are made up of thousands of consumers.  The precise number of Class members for the Classes can only be ascertained through discovery, which includes Defendants' sales records. The disposition of their claims through a class action will benefit all parties to this action and this Court.

## COMMON QUESTIONS OF LAW AND FACT

88.   There is a well-defined community of interest in the questions of law and fact involved which affect the Plaintiffs and members of the Classes.

89.     The questions of law and fact common to the Classes predominate over questions which may affect individual members, and include, but are not limited to, the following:

(a)    Whether the subject product labels contained false, deceptive and/or misleading representations regarding the amount of active SAMe contained in the subject product capsules;

(b)    Whether the subject product labels contained false, deceptive and/or misleading representations regarding the amount of active SAMe contained in the serving sizes noted on the labels;

(c)    Whether the subject product labels contained deceptive, misleading, and/or manipulated serving sizes which induced consumers to purchase the subject product;

(d)    Whether the subject product is defective and unfit for purposes of its intended use as a SAMe supplement;

(e)    Whether the subject product labels contained material omissions regarding the amount of active SAMe contained in the SAMe supplement contained therein;

(f)    Whether the subject product labels contained material omissions regarding the defective nature of the subject product, and specifically its lack of enteric coating;

(g)    Whether Defendant manufacturers and retailers made material omissions to Plaintiffs, putative class members, and  the public concerning the content and safety of the product;

(h)     Whether reasonable consumers would be and/or were in fact deceived by Defendant manufacturers' and retailers' alleged false, deceptive and/or misleading representations;

(i)     Whether Plaintiffs, putative class members, and reasonable consumers paid an inflated price and/or price premium for the subject product and/or the amount of SAMe they received in their purchase;

(j)     Whether Defendant manufacturers and retailers violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 through 501.213;

(k)     Whether Defendant manufacturers and retailers violated Nevada's Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903 through 598.0999;

(l)     Whether Defendant manufacturers and retailers violated Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 through 44-1534;

(m)     Whether Defendant manufacturers and retailers violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*., and California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

(n)     Whether Defendant manufacturers and retailers violated New York's Deceptive Trade Practices and False Advertising Acts, General Business Law §§ 349 & 350;

(o)     Whether Defendant manufacturers and retailers violated Texas' Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et seq*.;

(p)     Whether Defendant manufacturers and retailers breached the subject product's implied warranty of merchantability, including whether the subject

product contained sufficient amounts of SAMe pers serving and/or per capsule to qualify as a merchantable dietary supplement, fit for its intended purpose;

(q)   Whether the Defendant manufacturers' and retailers' representations online and on the subject product labels constitute express warranties and whether Defendant manufacturers and retailers breached such express warranties;

(r)   Whether Defendant manufacturers' and retailers' representations online and on the subject product labels constitute intentional or negligent misrepresentations;

(s)   Whether class members are entitled to actual, statutory, and/or punitive damages and if so, the appropriate amount thereof.

## TYPICALITY

90.   The claims of Plaintiffs, as the representative Plaintiffs, are typical of the claims of the classes because Plaintiffs and members of the Classes were all subject to Defendants' deceptive sales practice in their purchases of the subject product. Plaintiffs, like all class members, purchased bottles of the subject product which were intentionally falsely and deceptively labeled, defective, and unfit for their intended purposes as SAMe supplements.

## ADEQUACY OF REPRESENTATION

91.   Plaintiffs, as the representative Plaintiffs, will fairly and adequately assert and protect the interests of the Classes as:

(a)   Plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Classes; and

(b)     Plaintiffs have no conflict of interest that will interfere with the maintenance

of this class action.

## PREDOMINANCE

92.     With respect to the Classes, questions common to the classes predominate over

those which only affect individual purchasers of the subject product.  This case involves Defendant

manufacturers' and retailers' deceptive practices in labeling of the subject product and sale of

defective SAMe supplements.  Liability will primarily be predicated upon the jury's evaluation of

Defendant manufacturers' and retailers' sales, manufacturing, marketing, and labeling practices in

regards to the subject product.

## SUPERIORITY

93.     A class action provides a fair and efficient method for the adjudication of this

controversy for the following reasons:

(a)     The common questions of law and fact set forth herein predominate over

any questions affecting only individual Class members;

(b)     The Classes are so numerous as to make joinder impracticable.  The Classes,

however, are not so numerous as to create manageability problems.  There

are no unusual legal or factual issues which would create manageability

problems;

(c)     Prosecution of a separate action by individual members of the Classes

would create a risk of inconsistent and varying adjudications against

Defendants when confronted with incompatible standards of conduct;

(d)     The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover; and

(e)     A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

**FIRST CAUSE OF ACTION**
**(Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"))**
**(Fla. Stat. §§ 501.201, et seq.)**
**(Brought on behalf of the Nationwide Class, Retail Subclasses, and Florida Subclass)**

94.     Plaintiffs Ginsberg, Malgeri, Wolf, Wilson, Hood, and McKeown ("Plaintiffs," for purposes of this Count) assert this cause of action on behalf of themselves and their classes.

95.     Plaintiff Ginsberg asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the NusaPure Subclass against Defendant Gmax Central. Alternatively, Plaintiff Ginsberg also asserts this cause of action on behalf of herself and the Florida Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central.

96.     Plaintiff Malgeri asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Malgeri asserts this cause of action on behalf of himself and the We Like Vitamins subclass against Defendant We Like Vitamins.

97.     Plaintiff Wolf asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wolf asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

98.     Plaintiff Wilson asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wilson asserts this cause of action on behalf of himself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Wilson asserts this cause of action on behalf of himself and the NusaPure Subclass against Defendant Gmax Central.

99.     Plaintiff Hood asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Hood asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

100.    Plaintiff McKeown asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff McKeown asserts this cause of action on behalf of himself and the aSquared subclass against Defendant aSquared.

101.    Plaintiffs assert this cause of action under Florida law.

102.     Plaintiffs and their classes repeat and allege the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

103.    Plaintiffs and class members who purchased the subject product are "consumers" under the FDUTPA.

104.    Defendant manufacturers' and retailers' practices, acts, policies and course of conduct violated FDUTPA in that:

(a)  Defendant manufacturers and retailers knowingly and willfully, negligently, and/or recklessly engaged in unfair, unconscionable, and deceptive acts and

46

practices in or affecting commerce, through their false and deceptive labeling of the subject product, material omissions regarding the subject product's manufacturing and packaging defects, and material omissions regarding the true amounts and serving sizes in contained in the subject product bottles. Such pattern of conduct was uniform in nature with respect to the marketing and sale of the subject product.

(b) Defendant manufacturers and retailers knowingly and willfully concealed, suppressed and consciously omitted material facts from Plaintiff and other members of the Classes knowing that consumers would rely on the subject product bottle labeling and marketing and Defendant manufacturers' and retailers' uniform misrepresentations concerning the amount of SAMe contained in subject product bottles and designated serving sizes.

105.    Defendant manufacturers' and retailers' acts and material omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

106.    Plaintiffs and class members relied upon Defendant manufacturers' and retailers' deceptive acts and material omissions in connection with their purchase of the subject product.

107.    To date, Defendant manufacturers and retailers have and continue to knowingly accept the benefits of their deception and improper conduct in the form of profits from the increased sale of the subject product.

108.    As a proximate result of the FDUTPA violations described herein, Plaintiffs and class members: (a) purchased and consumed the subject product when they would not otherwise have purchased and consumed; (b) suffered economic losses consisting of the purchase price of the subject product or, alternatively, the price premium they paid for the SAMe they received in

the subject product; and (c) suffered and will suffer the loss of diminished dosages of SAMe supplementation.

109.     As a direct and proximate result of these deceptive commercial practices, Plaintiff and the members of the Classes have been damaged and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

110.     Plaintiffs and class members seek actual damages, restitution of purchase costs, and civil penalties permitted by Fla. Stat. §§ 501.2075.

111.     Plaintiffs and class members also seek appropriate equitable relief, including an order requiring Defendant manufacturers and retailers to adequately disclose and/or remediate the subject product's defects, its true amount of active SAMe, accurate and reasonable supplement serving sizes as disclosed on supplement labels throughout the SAMe supplement industry, as well as an order enjoining Defendant manufacturers and retailers from further engaging in such mislabeling and material omissions in the future.  Plaintiffs and class members also seek attorneys' fees and any other just and proper relief available under FDUTPA.

**SECOND CAUSE OF ACTION**
**(Violation of Nevada's Trade Regulation and Practices Act)**
**(Nev. Rev. Stat. §§ 598.0903 through 598.0999 and Nev. Rev. Stat. § 41.600)**
**(Brought on behalf of the Nevada Subclass)**

112.     Plaintiff Noah Malgeri ("Plaintiff," for purposes of this Count) asserts this cause of action on behalf of himself and the Nevada Subclass against Defendants Vitamins Because, CT Health, and We Like Vitamins.

113.     Plaintiff asserts this cause of action under Nevada law.

114.     Plaintiff and Nevada Subclass Members repeat and allege the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

48

115.    Defendant manufacturers and retailers advertised, offered, and/or sold goods in Nevada and engaged in trade or commerce directly or indirectly affecting the residents of Nevada.

116.    Defendant manufacturers and retailers engaged in deceptive trade practices in the course of their business or occupation, in violation of Nev. Rev. Stat. §§ 598.0915 and 598.0923, including:

    (a) Knowingly making false representations as to the characteristics, uses, and benefits of goods for sale, in violation of Nev. Rev. Stat. § 598.0915(5);

    (b) Knowingly representing that goods for sale are in original and/or new condition when they were deteriorated and/or decayed in violation of Nev. Rev. Stat. § 598.0915(6).

    (c) Representing that goods or services for sale are of a particular standard, quality, or grade when Defendant manufacturers and retailers knew or should have known that they are of another standard, quality, or grade, in violation of Nev. Rev. Stat. § 598.0915(7);

    (d) Advertising goods with intent not to sell them as advertised in violation of Nev. Rev. Stat § 598.0915(9); and

    (e) Failing to disclose a material fact in connection with the sale of goods in violation of Nev. Rev. Stat. § 598.0923(2).

117.    Defendant manufacturers' and retailers' representations and omissions were material because they were likely to deceive reasonable consumers.

118.    Had Defendant manufacturers and retailers disclosed to Plaintiff and Nevada Subclass members that they mislabeled the subject product and omitted material information regarding the subject product's defects and true SAMe amounts and serving sizes, and were

otherwise engaged in deceptive, common business practices, Defendant manufacturers and retailers would have been unable to continue their SAMe business as currently constituted.

119.    Plaintiff and the Nevada Subclass members acted reasonably in relying on Defendant manufacturers' and retailers' misrepresentations and omissions, the truth of which they could not have discovered.

120.    Defendant manufacturers and retailers acted intentionally, knowingly, and maliciously to violate Nevada's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Nevada Subclass members' rights. Defendant manufacturers' and retailers' knowledge of SAMe supplements, the subject product, and/or their brand's particular labeling, put it on notice that the subject product was not as advertised.

121.    As a direct and proximate result of Defendant manufacturers' and retailers' deceptive trade practices, Plaintiff and Nevada Subclass members have suffered and will continue to suffer injury, ascertainable losses of money, and monetary and non-monetary damages, including not receiving the benefit of their bargain in purchasing the subject product, and the loss of proper dosages of SAMe supplements.

122.    Plaintiff and Nevada Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(Violation of Arizona's Consumer Fraud Act)**
**(Ariz. Rev. Stat. Ann. §§ 44-1521 through 44-1534)**
**(Brought on behalf of the Arizona Subclass)**

123.    Plaintiff Kalyn Wolf ("Plaintiff," for purposes of this Count) asserts this cause of action on behalf of herself and the Arizona Subclass against Defendants Vitamins Because, CT Health, and aSquared.

124.    Plaintiff asserts this cause of action under Arizona law.

125.     Plaintiff and Arizona Subclass Members repeat and allege the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

126.     Defendant manufacturers and retailers engaged in deceptive and unfair acts and practices, misrepresentations, and the concealment, suppression, and omission of material facts in connection with the sale, labeling, and marketing of "merchandise" in Arizona and/or to members of the Arizona Subclass (as defined in Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A), including, but not limited to, their false and misleading labeling of the subject product, their defective manufacturing of the subject product, and failure to disclose accurate measures and reasonable serving sizes of the subject product.

127.     The above unfair and deceptive practices and acts by Defendant manufacturers and retailers were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Arizona Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

128.     Defendant manufacturers and retailers knew or should have known that engaging in the above-named unfair practices and deceptive acts was negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Arizona Subclass.

129.     Defendant manufacturers and retailers intended that consumers, including Arizona Subclass members, rely on their concealment, suppression, and material omissions in purchasing the subject product, and Plaintiff and Arizona Subclass members were, in fact, misled, deceived or damaged thereby.

130.     As a direct and proximate result of Defendant manufacturers' and retailers' unlawful practices, Arizona Subclass members suffered injury and/or damages.

131.     Plaintiff and Arizona Subclass members seek relief under A.R.S. §§ 4421, *et seq*., including, but not limited to, compensatory damages, punitive damages, injunctive relief, and/or attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Violation of California's Unfair Competition Law)**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
**(Brought on behalf of California Subclass)**

132.     Plaintiff Bill Wilson ("Plaintiff," for purposes of this Count) asserts this cause of action on behalf of himself and the California Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins and Gmax Central.

133.     Plaintiff asserts this cause of action under California law.

134.     Plaintiff and California Subclass Members repeat and allege the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

135.     Defendant manufacturers' and retailers' acts and practices, as alleged in this complaint, constitute unfair, unlawful and fraudulent business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

136.     Defendant manufacturers and retailers have engaged and continue to engage in unfair business practices by falsely and deceptively labeling their subject product bottles, and by purposefully failing to disclose the subject product's defective manufacturing as well as its accurate measure of SAMe and reasonable serving sizes for consumer use.

137.     Defendants' business practices are unscrupulous, unethical, and substantially injurious to consumers.  There is no legitimate business reason for Defendants' false and deceptive labeling such that the utility of its business practice outweighs the harm to consumers. Furthermore, Defendants' business practice undermines California's fundamental policy against

unfair business practices that are likely to deceive or mislead consumers, and which undercut trust and fair competition in the consumer marketplace.

138.   Plaintiff and California Subclass Members relied upon Defendant manufacturers' and retailers' false and deceptive labeling and material omissions in deciding to make their purchase of the subject product. Had Plaintiff and California Subclass Members known the true quality and quantity of SAMe contained in the subject product, they would not have purchased their selected private label brand(s) the subject product.

139.   Plaintiff also has standing to challenge Defendants' unfair, unlawful and fraudulent business practices on behalf of the public pursuant to California Business and Professions Code § 17204, since, as a result of such practices, he has suffered injury in fact and lost money in the form of monies spent on the purchase of the subject product and/or a price premium paid for his purchased subject product.

140.   On behalf of the proposed California Subclass, Plaintiff hereby seeks money damages and restitution in an amount to be determined at trial.

141.   On behalf of the proposed California Subclass, Plaintiff also hereby seeks entry of appropriate equitable relief pursuant to California Business & Professions Code § 17203, including an injunction prohibiting Defendants from engaging in the same or similar unfair business practices in the future, civil penalties, restitution of money that may have been acquired by Defendants' unfair business practices, and attorney's fees and costs of litigation.  The entry of injunctive relief is of particular importance and necessary to secure a fair consumer marketplace.

**FIFTH CAUSE OF ACTION**
**(Violation of California's Consumers Legal Remedies Act)**
**(Cal. Civ. Code §§ 1750, *et seq*.)**
**(Brought on behalf of California Subclass)**

142.    Plaintiff Bill Wilson ("Plaintiff," for purposes of this Count) asserts this cause of action on behalf of himself and the California Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central.

143.    Plaintiff asserts this cause of action under California law.

144.    Plaintiff and California Subclass Members repeat and allege the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

145.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA") is a comprehensive statutory scheme that prohibits deceptive practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

146.    Defendant manufacturers and retailers are "persons" as defined by Civil Code § 1761(c) and they provides "goods" within the meaning of Civil code sections 1761(a) and 1770.

147.    Plaintiff and California Subclass Members are "consumers" within the meaning of Civil Code § 1761(d).

148.    Defendants' sales of goods to Plaintiff and California Subclass Members constitute "transactions" which were "intended to result or which result[ed]" in the sale of goods to consumers within the meaning of Civil Code §1761(e).

149.    Plaintiff has standing to pursue this claim as he has suffered injury in fact and has lost money as a result of Defendant manufacturers' and retailers' actions as set forth herein.

150.     Defendant manufacturers and retailers selling the subject product to residents of California have violated the CLRA by engaging in unlawful, unfair and deceptive practices as defined in Civil Code § 1770 with respect to the subject product provided to Plaintiff and the California Subclass, including, but not limited to, their failure to disclose (a) accurate measures of active SAMe contained in the subject product and/or (b) the defective nature and quality of the SAMe capsules contained in the subject product bottles.

151.     The above unfair and deceptive practices and acts by Defendant manufacturers and retailers are immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and California Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

152.     Defendant manufacturers and retailers knew or should have known that their labeling of the subject product was materially false and misleading.

153.     Plaintiff and California Subclass Members relied upon Defendant manufacturers' and retailers' false and deceptive labeling and material omissions in choosing to purchase the subject product. Had Plaintiff and California Subclass Members known the quality and quantity of SAMe contained in the subject product, they would not have purchased the subject product and/or paid a price premium for the amount of SAMe they recieved.

154.     As a result of Defendants' acts and practices alleged herein, Plaintiff and California Subclass Members suffered actual damages.

155.     Plaintiff and California Subclass Members are entitled to equitable relief as consumers will continue to be deceived and damaged if Defendants' unfair and deceptive practices are permitted to continue.

156.     On or about June 28, 2019, Plaintiff's counsel, on behalf of Plaintiff and the California Subclass, sent demand letters to Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central by certified mail, return receipt requested, providing them with written notice of their alleged violations of the CLRA pursuant to California Civil Code section 1782(a), and a request that Defendants correct, or agree to correct, the violations enumerated and reimburse Plaintiff and the class for any damages suffered. If Defendants fail to do so, Plaintiff intends to amend the complaint as of right (or otherwise seek leave to amend the complaint) and seek compensatory, monetary damages and punitive damages pursuant to Cal. Civ. Code §§ 1750, *et seq.*, in addition to the injunctive and equitable relief that Plaintiff seeks now.

## SIXTH CAUSE OF ACTION
### (New York's Deceptive Trade Practices and False Advertising Acts)
### (Violation Of General Business Law §§ 349 & 350)
### (Brought on behalf of the New York Subclass)

157.     Plaintiff Shannon Hood asserts this cause of action on behalf of herself and the New York Subclass against Defendants Vitamins Because, CT Health, and aSquared.

158.     Plaintiff Shannon Hood ("Plaintiff," for purposes of this Count) assert this cause of action under New York law.

159.     Plaintiff and New York Subclass Members repeat and allege the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

160.     Defendant's practices, acts, policies and course of conduct, as described in this Complaint, were intended to induce, and did induce, Plaintiffs and the Class Members to purchase the subject product.

161.    Defendants manufactured and sold to consumers the subject product actively mislabeling the product bottles and knowingly concealing the quality and quantity of the SAMe contained therein.

162.    Defendants' practices, acts, policies and course of conduct are actionable in that:

(a) Defendants actively and knowingly misrepresented to Plaintiffs and Class Members at the time of purchase the amount of SAMe contained in the subject product capsules;

(b) Defendant failed to disclose to Plaintiffs and the Class Members at the time of purchase the true and accurate amount of SAMe contained in the subject product capsules;

(c) Defendant failed to disclose to Plaintiffs and the Class Members at the time of purchase that the subject product capsules were defectively manufactured.

163.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and/or constitutes an unconscionable commercial practice in that Defendants have, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true quality and quantity of the SAMe contained in the subject product.

164.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendants have misrepresented and/or knowingly and intentionally concealed material facts and breached their duty not to do so.

165.    Members of the public were deceived by and relied upon Defendants' affirmative misrepresentations and failures to disclose.

166.    Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the dietary supplement.  Said deceptive

acts and practices enumerated in this Complaint are material.  The sale and distribution in New York of the subject product was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law § 349 and § 350.

167.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and New York Subclass members have been damaged as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or treble damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

168.    As a result, Plaintiff and New York Subclass members seek restitution of all monies that Defendants received as a result of selling the subject product to Plaintiff and New York Subclass members.

169.    In addition, Plaintiff seeks punitive damages, costs of litigation, and reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (Violation of the Texas Deceptive Trade Practices Act ("TDTPA"))
### (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)
### (Brought on behalf of the Texas Subclass)

170.    Plaintiff Robert McKeown ("Plaintiff," for purposes of this Count) asserts this cause of action on behalf of himself and the Texas Subclass against Defendants Vitamins Because, CT Health, and aSquared.

171.    Plaintiff asserts this cause of action under Texas law.

172.    Plaintiff and Texas Subclass Members repeat and allege the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

173.    Plaintiff and class members who the subject product are "consumers" under the

TDTPA.

174.    Defendant manufacturers' and retailers' practices, acts, policies and course of conduct violated the TDTPA in that:

      (a) Defendants engaged in deceptive acts and practices in or affecting commerce, through their false and deceptive labeling of the subject product. Such pattern of conduct was uniform in nature with respect to the marketing and sale of the product.

      (b) Defendants also knowingly concealed, suppressed and consciously omitted material facts from Plaintiff and other members of the Texas Subclass regarding the quality and quantity of SAMe supplement contained in the subject product knowing that consumers would rely on the bottle labeling and Defendants' uniform representations concerning the subject product they manufactured and/or sold.

175.    Defendants' acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

176.    Until the present, Defendants knowingly accepted the benefits of their deception and improper conduct in the form of direct and/or indirect profits from the sales of the subject product.

177.    As a proximate result of the TDTPA violations described in this complaint, Plaintiff and members of the Texas Subclass purchased the subject product and suffered economic losses, including, but not limited to, the monies expended in purchasing a dietary supplement which is not merchantable and unfit for its intended purpose and/or the price premium paid for the minimal quantity of SAMe they received in their purchase of the subject product.

178.     As a direct and proximate result of these deceptive commercial practices, Plaintiff and the members of the Texas Subclass have been damaged and are entitled to recover actual damages to the extent permitted by law.

179.     Plaintiff and Texas Subclass Members also seek appropriate equitable relief, including an order requiring Defendants to cease selling the subject product with false and misleading labels.  Plaintiff and the Class also seek attorneys' fees and any other just and proper relief available under TDTPA.

180.     On or about June 28, 2019, Plaintiff's counsel, on behalf of Plaintiff and the Texas Subclass, served Defendants Vitamins Because, CT Health, and aSquared with notice of its alleged violations of the TDTPA relating to the subject product purchased by Plaintiff and the Texas Subclass Members, and demanded that Defendant correct or agree to correct the actions described therein. If Defendant fails to do so within the time required by the Texas consumer laws, Plaintiff will seek all damages and relief to which Plaintiff and the Texas Subclass are entitled to pursuant to Tex. Bus. Com. Code § 17.505.

**EIGHTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability and Fitness)**

181.     Plaintiffs Ginsberg, Malgeri, Wolf, Wilson, Hood, and McKeown ("Plaintiffs," for purposes of this Count) assert this cause of action on behalf of themselves and their classes.

182.     Plaintiff Ginsberg asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the NusaPure Subclass against Defendant Gmax Central. Alternatively, Plaintiff Ginsberg also asserts this cause

of action on behalf of herself and the Florida Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central.

183.    Plaintiff Malgeri asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Malgeri asserts this cause of action on behalf of himself and the We Like Vitamins subclass against Defendant We Like Vitamins.

184.    Plaintiff Wolf asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wolf asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

185.    Plaintiff Wilson asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wilson asserts this cause of action on behalf of himself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Wilson asserts this cause of action on behalf of himself and the NusaPure Subclass against Defendant Gmax Central.

186.    Plaintiff Hood asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Hood asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

187.    Plaintiff McKeown asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff McKeown asserts this cause of action on behalf of himself and the aSquared subclass against Defendant aSquared.

188.    Plaintiffs assert this cause of action under Florida law.

189.   Plaintiffs and their classes hereby incorporate by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

190.   Defendant manufacturers and retailers are "merchants" as defined under the Uniform Commercial Code ("UCC") and Fla. Stat. § 672.314.

191.   All bottles of subject product are "goods" as defined under the UCC.

192.   Defendant manufacturers and retailers impliedly warranted that the subject product is of a merchantable quality and fit for use as SAMe dietary supplement.

193.   Defendant manufacturers and retailers breached the implied warranty of merchantability because the subject product sold to Plaintiffs and putative classes has and continues to not be of a merchantable quality and/or fit for its intended use due its inherent manufacturing defects, and minimal and insufficient amounts of active SAMe contained in the subject product capsules and designated serving sizes.

194.   Plaintiffs' and Class members' interactions with Defendant retailers suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Defendant retailers, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third party beneficiaries of contracts (including implied warranties) between Defendant manufacturers and the Defendant retailers who sell the subject product to consumers. Defendant manufacturers' and retailers' implied warranty of merchantability and fitness is designed for the benefit of consumers who purchase(d) the subject product.

195.   As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are entitled to damages.

196.     Any attempt by Defendant manufacturers and retailers to disclaim or limit the implied warranty of merchantability *vis-à-vis* consumers is unconscionable and unenforceable. Specifically, Defendant manufacturers' and retailers' warranty limitations set forth online are unenforceable because Defendant manufacturers and retailers knowingly sold a defective and falsely and deceptively labeled product without informing consumers the subject product's defects and true amount of contained SAMe.

197.     Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant manufacturers' and retailers' conduct described herein.

198.     Defendant manufacturers and retailers were provided notice of these issues by complaints lodged by consumers and their knowledge regarding the subject product and its manufacturing.

<u>**NINTH CAUSE OF ACTION**</u>
<u>**(Breach of Express Warranty)**</u>

199.     Plaintiffs Ginsberg, Malgeri, Wolf, Wilson, Hood, and McKeown ("Plaintiffs," for purposes of this Count) assert this cause of action on behalf of themselves and their classes.

200.     Plaintiff Ginsberg asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the NusaPure Subclass against Defendant Gmax Central. Alternatively, Plaintiff Ginsberg also asserts this cause of action on behalf of herself and the Florida Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central.

63

201.    Plaintiff Malgeri asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Malgeri asserts this cause of action on behalf of himself and the We Like Vitamins subclass against Defendant We Like Vitamins.

202.    Plaintiff Wolf asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wolf asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

203.    Plaintiff Wilson asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wilson asserts this cause of action on behalf of himself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Wilson asserts this cause of action on behalf of himself and the NusaPure Subclass against Defendant Gmax Central.

204.    Plaintiff Hood asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Hood asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

205.    Plaintiff McKeown asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff McKeown asserts this cause of action on behalf of himself and the aSquared subclass against Defendant aSquared.

206.    Plaintiffs assert this cause of action under Florida law and Fla. Stat. § 672.313.

207.    Plaintiffs and their classes hereby incorporate by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

208.    Defendant manufacturers and retailers, directly or indirectly through their wholly owned agents or business partners, provided uniform affirmative misrepresentations about the subject product in their misleading advertising and marketing, including the false and deceptive labeling of the subject product.  The uniform capsules and the various affirmative descriptions made concerning the subject product, including its various retail labels (*see* Exhibits A-D), were made part of the basis of the bargain and thereby created an express warranty that the subject product conformed to the label descriptions pursuant to the UCC express warranty provisions adopted by Florida under Fla. Stat. § 672.313. Plaintiffs and the classes thereby relied upon such warranties. By law, Plaintiffs and their classes have entered into certain express warranty agreements with Defendant manufacturers and retailers.

209.    To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Defendant manufacturers' and retailers' representations alleged on the labels and online were not as represented.

210.    Had a Class member researched a Defendant retailer's SAMe brand online, he or she would have found the same or substantially similar false and/or deceptive supplement facts on private label websites and purchase webpages, which falsely reported inaccurate supplement information on par with the false and deceptive information printed on the subject product bottle labels.

211.    Despite the material affirmative misrepresentations and material omissions on all subject product label bottles, Defendant manufacturers and retailers breached their express warranties to Plaintiffs and their classes when they purchased the subject product consisting of uniformly defective and impotent SAMe supplement capsules that did not contain the represented

amount of SAMe and that did not conform to the description of the SAMe supplement provided to them on the label and other marketing sources.

212.    As a result of the foregoing, Plaintiffs and their classes are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because Defendant manufacturers and retailers acted in a manner contrary to public purpose and with intent to mislabel the subject product.

**TENTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSSON-MOSS WARRANTY ACT,**
**15 U.S.C. §§ 2301 et seq. ("MMWA")**

213.    Plaintiffs Ginsberg, Malgeri, Wolf, Wilson, Hood, and McKeown ("Plaintiffs," for purposes of this Count) assert this cause of action on behalf of themselves and their classes.

214.    Plaintiff Ginsberg asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the NusaPure Subclass against Defendant Gmax Central. Alternatively, Plaintiff Ginsberg also asserts this cause of action on behalf of herself and the Florida Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central.

215.    Plaintiff Malgeri asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Malgeri asserts this cause of action on behalf of himself and the We Like Vitamins subclass against Defendant We Like Vitamins.

216.    Plaintiff Wolf asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wolf asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

217.    Plaintiff Wilson asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wilson asserts this cause of action on behalf of himself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Wilson asserts this cause of action on behalf of himself and the NusaPure Subclass against Defendant Gmax Central.

218.    Plaintiff Hood asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Hood asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

219.    Plaintiff McKeown asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff McKeown asserts this cause of action on behalf of himself and the aSquared subclass against Defendant aSquared.

220.    Plaintiffs assert this cause of action under federal law and the MMWA, 15 U.S.C. § 2301(3).

221.    Plaintiffs and their classes hereby incorporate by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

222.    Plaintiffs and Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

223.    The subject product purchased by Plaintiffs and Class members under its various retail labels is considered a "consumer product" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

224.    Defendant manufacturers and retailers are "suppliers" and "warrantors" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

225.    This claim is being brought under Section 2310(d)(a) of the MMWA as a state cause of action over which this Court has supplemental jurisdiction which provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

226.    The subject products' implied warranties are accounted for under Section 2301(7) of the MMWA, and are warranties which Defendant manufacturers and retailers cannot disclaim, when they fail to provide merchantable goods.

227.    As set forth herein, Defendant manufacturers and retailers breached their implied and express warranties with Plaintiffs and Class members.

228.    The subject product sold under various retail labels share common manufacturing defects. Moreover, because of the common design and manufacture of the subject product as sold under various retail labels, including their impotent state and minimal amount of active SAMe, all subject product as sold under various retail labels are similarly mislabeled and deceptively advertised.

229.    Plaintiffs and class members hereby demand that Defendant manufacturers and retailers pay the expenses associated with the purchase and shipping of the subject product which were borne by consumers, including Plaintiffs and class members.

230.     As a direct and proximate result of Defendant manufacturers' and retailers' breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be proven at trial.

231.     The amount in controversy for each Plaintiffs' and Class members' individual claims meets or exceeds the sum of $25. The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

232.     Plaintiffs and Class members are entitled to recover damages as a result of Defendant manufacturers' and retailers' breach of warranties. Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## ELEVENTH CAUSE OF ACTION
### (Intentional Misrepresentation)

233.     Plaintiffs Ginsberg, Malgeri, Wolf, Wilson, Hood, and McKeown ("Plaintiffs," for purposes of this Count) assert this cause of action on behalf of themselves and their classes.

234.     Plaintiff Ginsberg asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the NusaPure Subclass against Defendant Gmax Central. Alternatively, Plaintiff Ginsberg also asserts this cause of action on behalf of herself and the Florida Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central.

235.    Plaintiff Malgeri asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Malgeri asserts this cause of action on behalf of himself and the We Like Vitamins subclass against Defendant We Like Vitamins.

236.    Plaintiff Wolf asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wolf asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

237.    Plaintiff Wilson asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wilson asserts this cause of action on behalf of himself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Wilson asserts this cause of action on behalf of himself and the NusaPure Subclass against Defendant Gmax Central.

238.    Plaintiff Hood asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Hood asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

239.    Plaintiff McKeown asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff McKeown asserts this cause of action on behalf of himself and the aSquared subclass against Defendant aSquared.

240.    Plaintiffs assert this cause of action under Florida law.

241.    Plaintiffs and their classes hereby incorporate by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

242.    Defendant manufacturers and retailers intentionally made and/or set forth to a market of consumers false representations regarding the nature of the subject product and the amount of active SAMe contained in the subject product which they knew was not accurate.

243.    Defendant manufacturers and retailers have and continue to know that the misrepresentations printed on the labels of the subject product bottles are false and misleading.

244.    Defendant manufacturers and retailers have and continue to intend that the misrepresentations printed on the labels of the subject product bottles induce consumers, including Plaintiffs and their class members, into relying on the misrepresentations in deciding to purchase the subject product and/or pay a price premium in order to obtain a prescribed or desired amount of active SAMe for dietary supplement and health purposes.

245.    Plaintiffs and their class members relied upon the misrepresentations printed on the labels of the subject product bottles in choosing to purchase the subject product.  Because of Plaintiffs' and their class members' reliance on the misrepresentations, Plaintiffs and their class members' were thereby caused harm in the form of having paid monies to purchase the subject product which is not of merchantable quality and/or not fit for its intended use, and/or paid a price premium for the amount of active SAMe contained in the subject product bottles.

246.    Plaintiff's and class members' reliance on the misrepresentations printed on the labels of the subject product bottles was justified because the represented amount of SAMe per serving was not, and is not, obviously false, as many SAMe dietary supplements sold in the consumer market contain those amounts of SAMe.  Moreover, Plaintiffs and class members acted as typical and reasonable consumers under the circumstances in relying upon the assumed accuracy of dietary supplement and vitamin labels in deciding what product to purchase.

247.    Plaintiffs and class members have, as a result of their reliance on the misrepresentations printed on the labels of the subject product bottles, suffered injury and pecuniary damages as set forth in this complaint, including monies paid for the purchase of the subject product and/or a price premium for the included amount of active SAMe.

## TWELFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

248.    Plaintiffs Ginsberg, Malgeri, Wolf, Wilson, Hood, and McKeown ("Plaintiffs," for purposes of this Count) assert this cause of action on behalf of themselves and their classes.

249.    Plaintiff Ginsberg asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the NusaPure Subclass against Defendant Gmax Central. Alternatively, Plaintiff Ginsberg also asserts this cause of action on behalf of herself and the Florida Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central.

250.    Plaintiff Malgeri asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Malgeri asserts this cause of action on behalf of himself and the We Like Vitamins subclass against Defendant We Like Vitamins.

251.    Plaintiff Wolf asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wolf asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

252.     Plaintiff Wilson asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wilson asserts this cause of action on behalf of himself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Wilson asserts this cause of action on behalf of himself and the NusaPure Subclass against Defendant Gmax Central.

253.     Plaintiff Hood asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Hood asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

254.     Plaintiff McKeown asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff McKeown asserts this cause of action on behalf of himself and the aSquared subclass against Defendant aSquared.

255.     Plaintiffs assert this cause of action under Florida law.

256.     Plaintiffs and their classes hereby incorporate by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

257.     Plaintiffs and putative class members, commercial consumers of the subject product, stood in a "special relationship" with Defendant manufacturers and retailers, the manufacturer, distributor, and/or retail sellers of the subject product, and justifiably relied upon their representations in purchasing and using the subject product.  In making the above false and deceptive representations regarding the subject product, Defendant manufacturers and retailers held or appeared to hold unique or special expertise regarding the chemical makeup of the product's SAMe contents and potency. Defendant manufacturers and retailers held themselves out as holding some type of special expertise regarding SAMe supplements, or at least some level of

73

medical or scientific backing for its claims regarding the included SAMe, the amount of SAMe contained therein and its health benefits.

258.   Plaintiff and putative class members also stood in a "special relationship" with Defendant manufacturers and retailers, because they, as manufacturers, distributors, and/or retailers of many types of vitamins and dietary supplements, maintained unique knowledge of the ingredient make-up of their products and their proper and safe constitution. Plaintiff and putative class members therefore reasonably placed their trust and confidence in the representations made by Defendant manufacturers and retailers regarding the subject product's amount of SAMe and manufacture.   Moreover, Defendant manufacturers and retailers, as the   manufacturers, distributors, and/or retailers of the subject product, were well aware that the subject product label's representations would cause a reasonable consumer to purchase and rely upon the product for maintaining their recommended dosages of SAMe supplementation; as well as to use the label's representations to evaluate the subject product in comparison to the numerous other SAMe brands and supplements placed for sale on the Amazon.com website and other retail venues.   Defendant manufacturers and retailers therefore owed a duty of care to consumers, including Plaintiffs and their class members, to accurately represent the quality and quantity of their vitamin and dietary supplement products, including the subject product.

259.   In breach of their duty of care, Defendant manufacturers and retailers negligently and/or recklessly made and/or set forth to a market of consumers false, deceptive, and misleading representations regarding the nature of the subject product and the amount of included active SAMe that they should have known was not fair and accurate.

260.     The information supplied in the subject product labels were known by Defendant manufacturers and retailers to be desired by the reasonable consumer for the purpose of selecting for purchase a SAMe supplement of sufficient SAMe and consumer value.

261.     Plaintiffs and class members were influenced by the subject product labels' deceptive and misleading representations and caused to select the subject product for purchase over other non-defective and accurately labeled SAMe supplements available for purchase on Amazon.com and in the rest of the market. This selection was to Plaintiffs and class members' detriment as the product was falsely labeled, defectively manufactured and packaged, and unfit for purposes of a SAMe supplement.

## THIRTEENTH CAUSE OF ACTION
### (Injunctive Relief)

262.     Plaintiffs Ginsberg, Malgeri, Wolf, Wilson, Hood, and McKeown ("Plaintiffs," for purposes of this Count) assert this cause of action on behalf of themselves and their classes.

263.     Plaintiff Ginsberg asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the NusaPure Subclass against Defendant Gmax Central. Alternatively, Plaintiff Ginsberg also asserts this cause of action on behalf of herself and the Florida Subclass against Defendants Vitamins Because, CT Health, We Like Vitamins, and Gmax Central.

264.     Plaintiff Malgeri asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Malgeri asserts this cause of

action on behalf of himself and the We Like Vitamins subclass against Defendant We Like Vitamins.

265.    Plaintiff Wolf asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wolf asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

266.    Plaintiff Wilson asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Wilson asserts this cause of action on behalf of himself and the We Like Vitamins Subclass against Defendant We Like Vitamins. Plaintiff Wilson asserts this cause of action on behalf of himself and the NusaPure Subclass against Defendant Gmax Central.

267.    Plaintiff Hood asserts this cause of action on behalf of herself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff Hood asserts this cause of action on behalf of herself and the aSquared subclass against Defendant aSquared.

268.    Plaintiff McKeown asserts this cause of action on behalf of himself and the nationwide class against Defendants Vitamins Because and CT Health. Plaintiff McKeown asserts this cause of action on behalf of himself and the aSquared subclass against Defendant aSquared.

269.    Plaintiffs assert this cause of action and request for injunctive relief under state law, including Florida, Nevada, Arizona, California, New York, and Texas law, as well as federal law.

270.    Plaintiffs repeat each and every allegation contained in the preceding and subsequent paragraphs of the complaint as if set forth at length herein.

271.    Defendants' conduct is improper and deceptive and has caused injury to Plaintiffs and the putative class members. The Florida, Nevada, Arizona, California, New York, and Texas consumer fraud statutes alleged herein provide for injunctive and declaratory relief.  *See* Fla. Stat.

Ann. § 501.21; Nev. Rev. Stat. §§ 41.600(3)(a), 598.0979; Ariz. Rev. Stat. § 44-1528; Cal. Bus. & Prof. Code § 17203; N.Y. Gen. Bus. Law § 349(b); Tex. Bus. & Com. Code § 17.47(a).

272.    The grounds for an injunction prohibiting Defendants from employing the currently used false and deceptive subject labels and/or selling the defective subject product are present therein.  The grounds for such an injunction also includes the fact that Plaintiffs and the putative classes have a likelihood of success on the merits; irreparable harm will be done to future purchasing consumers of the subject product if the injunction is denied; the balance of the equities is in favor of granting the injunction and Plaintiffs and the putative classes have been injured by Defendants actions and future consumers will continue to be injured absent the requested injunctive relief.  In addition, Defendants have refused to act on grounds that apply generally to the classes or have acted in a manner that applies generally to the classes and would continue a practice which is consumer oriented and in violation of the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendants as follows:

A.    For an order certifying the Classes, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

B.    For compensatory damages, including actual damages, sustained by Plaintiffs and the classes, or, alternatively, statutory damages and civil penalties as prescribed by the relevant statutes;

C.    For compensatory damages and/or restitution or refund of all funds acquired by Defendants from Plaintiffs and the classes, and the general public as a result of Defendants' unlawful, unjust, unfair, deceptive and unconscionable practices described herein;

D.      For punitive and all other damages available to the Classes;

E.      For payment of costs of suit herein incurred;

F.      For both pre-and post-judgment interest on any amounts awarded;

G.      For payment of reasonable attorneys' fees and expert fees;

H.      For injunctive relief as set forth herein;

I.      For equitable relief as the Court may deem proper; and

J.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: June 28, 2019

**ARONOVITZ LAW**

By:      */s/ Tod Aronovitz*
Tod Aronovitz (FBN 186430)
Barbara Perez (FBN 989304)
One Biscayne Tower, Suite 3700
2 South Biscayne Boulevard
Miami, FL 33131
Tel: 305-372-2772
Fax: 305-397-1886
ta@aronovitzlaw.com
bp@aronovitzlaw.com

Jay I. Brody
Gary S. Graifman
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
jbrody@kgglaw.com

Nicholas A. Migliaccio, Esq.
Jason S. Rathod, Esq.
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com

***Attorneys for Plaintiffs and the
Putative Classes***