**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO.: 1:19-CV-22702-KMW**

CORI ANN GINSBERG, NOAH
MALGERI, KALYN WOLF, BILL
WILSON, SHANNON HOOD, ERIC
FISHON, and ROBERT MCKEOWN on
behalf of themselves and all others similarly
situated,

      Plaintiffs,

  vs.

VITAMINS BECAUSE LLC, CT HEALTH
SOLUTIONS LLC, GMAX CENTRAL LLC,
ASQUARED BRANDS LLC, INSPIRE
NOW PTY LTD d/b/a BoostCeuticals,
HEALTHY WAY RX LLC, KHAKIWARE
INC, and JOLLY DOLLAR SUPPLY
COMPANY, LLC,

      Defendants.

_____

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS, VITAMINS BECAUSE LLC AND CT
HEALTH SOLUTIONS LLC'S MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT</u>**

Plaintiffs, Cori Ann Ginsberg, Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, Eric Fishon, and Robert McKeown (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, through undersigned counsel, hereby file their response in opposition to Defendant, Vitamins Because LLC and CT Health Solutions LLC (collectively, "VB" or "Defendant") Motion to Dismiss the Second Amended Complaint ("SAC" or "Complaint") and Memorandum of Law in Support [ECF No. 122], and state as follows:

## I.     INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs bring a class action lawsuit against the manufacturer of the subject product SAMe, VB, and a number of retailers who sold the subject product to Plaintiffs and putative class members. Plaintiffs' claims and allegations in their Complaint concern the non-coated SAMe dietary supplement capsules which are manufactured and deceptively labeled by VB. SAC ¶ 1.

The Complaint includes a consumer protection claim under the FDUTPA, which is asserted on behalf of a nationwide class, as well as several other consumer protection claims under the consumer protection law of other states, asserted on behalf of consumers living in those states. SAC, Counts 1-7. In support, Plaintiffs allege two basic, independent theories of consumer deception committed by the Defendants. Plaintiffs' primary theory of deception is that VB, in conjunction with the Private Label Brands, designed and created product labels that grossly and falsely overstate the amount of active SAMe contained in the subject product SAMe capsules manufactured by VB and sold to consumers under VB's private label and the various other Private Label Brands. *See e.g.* SAC ¶ 2. Plaintiffs' secondary theory of deception is that VB, in conjunction with the Private Label Brands, designed and created product labels that materially omit key facts regarding the defective nature and design of the subject product SAMe capsules manufactured by VB. *See e.g.* SAC ¶ 3.

Plaintiffs also assert claims for breach of implied warranty of merchantability, alleging that the purchased subject product was not of merchantable quality and/or fit for its intended use as a dietary supplement, SAC ¶ 224, and breach of express warranty, alleging that the purchased subject product did not conform to the description of SAMe made directly on the product labels affixed to the bottles, including falsely representing the amount of active SAMe contained in the subject SAMe capsules. SAC ¶ 243. Plaintiffs also assert claims under the Magnuson-Moss Warranty Act based on the alleged breach of the express and implied warranties, and for intentional and/or negligent misrepresentation based on the labels' false representations, as well as for injunctive relief.

The Complaint also makes allegations of a manufacturing and/or design defect contained in the subject product to support its secondary theory of deception, which is that Defendants made

material omissions on their product labels regarding the defective nature and quality of the contained SAMe. *See* SAC ¶¶ 3, 5, 29, 31, 32, 38, 45, 91, 97, 98, 100.[1] Like Plaintiffs' allegations of deception committed by Defendants regarding the amount of SAMe contained in the capsules, allegations of Defendants' nondisclosure of the defective design and poor quality of the SAMe are properly asserted to support Plaintiffs' consumer protection and warranty claims from which Plaintiffs suffered economic injury as explained in SAC ¶¶ 5, 93-102 and Counts 1-10. The injuries are economic in nature, and do not involve any claims of personal injury or adverse health effects.

Defendant's Motion to Dismiss ("MTD"), Doc. 122, while reasserting some of its earlier arguments from its prior motions on the pleadings and abandoning others, now devises a new strategy to avoid having to address the merits of Plaintiffs' factual allegations. While providing the Court with only a partial, undocumented estimate of one of multiple categories of damages sought by Plaintiffs (*see* Doc. 122-1), Defendant asks the Court to conclude with certainty that the present amount in controversy before the Court is below the $5 million CAFA jurisdiction threshold, and thus without subject matter jurisdiction. Defendant's new theory, along with its recycled arguments, should be denied.

## II.    ARGUMENT

### a)  The Court has Subject Matter Jurisdiction Under CAFA, 28 U.S.C. § 1332(d)

Defendant attacks this Court's subject matter jurisdiction on a single basis; namely, that Plaintiffs, who have asserted jurisdiction based on the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"),[2] SAC ¶ 22, have not established that more than $5 million is in controversy. MTD, at 4-11. Although unexplained by Defendant, by submitting an affidavit as evidence that the amount in controversy is below the jurisdictional threshold (MTD, at 4; Exh. 1), Defendant's motion can only be construed as a "factual," as opposed to a "facial," challenge to the Court's jurisdiction. "Facial attacks on the complaint require[] the court to merely look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for

---

[1] While Defendant takes issue with these allegations in its MTD, at 3, fn.4, Defendant does not challenge the legal sufficiency of Plaintiffs' primary theory of deception that Defendant mislabeled the subject product, grossly overstating the true amount of SAMe contained therein.

[2] "CAFA grants subject matter jurisdiction to federal district courts over class actions in which (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members. *See* 28 U.S.C. § 1332(d)(2), (5)-(6)." *S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F. 3d 1312, 1315 (11th Cir. 2014).

2

the purposes of the motion." *Lawrence v. Dunbar*, 919 F. 2d 1525, 1529 (11th Cir. 1990) (citations and quotations omitted). In contrast, a "factual" attack on the court's subject matter jurisdiction challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

"[W]here jurisdiction is based on a claim for indeterminate damages, the [Supreme Court's] 'legal certainty' test[3] gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F. 3d 805, 807 (11th Cir. 2003) (citation and quotation omitted). However, "this burden is not onerous. It merely requires that Plaintiff convince this Court that it is more likely than not that the pleading satisfies the jurisdictional minimum. Plaintiff is 'not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.'" *Co. Prop. & Cas. Ins. Co. v. Metal Roofing Sys.*, 2013 WL 5770730, at *3 (S.D. Fla. Oct. 24, 2013) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 754 (11th Cir. 2010)). "CAFA's language favors federal jurisdiction over class actions . . . with all doubts resolved "in favor of exercising jurisdiction over the case." *Evans v. Walter Indus., Inc.*, 449 F. 3d 1159, 1163 (11th Cir. 2006) (citation and quotation omitted.)

Moreover, at the jurisdictional stage, "the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka,* 608 F. 3d at 751 (quotation and emphasis omitted). "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *Id; see also S. Florida Wellness, Inc. v. Allstate Ins. Co.,* 745 F. 3d 1312, 1315 (11th Cir. 2014) ("the amount is not discounted by the chance that the plaintiffs will lose on the merits.").

   i)   **Opportunity for Further Discovery of Jurisdictional Facts Must be Provided**

Because Defendant's challenge to the Court's jurisdiction is "factual" as opposed to "facial," Plaintiffs are entitled to, and hereby request, an opportunity for jurisdictional discovery and a hearing prior to any ruling on the Defendant's Motion. *McElmurray v. Consol. Govt. of Augusta-Richmond County*, 501 F. 3d 1244, 1251 (11th Cir. 2007) ("'in a *factual challenge* the district court *must* give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." [citation omitted].). Particularly in this case, where much of the facts and information related to the

---

[3] *See Lowery v. Alabama Power Co.*, 483 F. 3d 1184, 1211 (11th Cir. 2007) (recognizing legal certainty standard in reviewing the jurisdictional amount set forth in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).

amount in controversy will emerge from sales data and purchaser identification information, which indicate class members' eligibility to recover restitution and state statutory and multiple damages,[4] discovery of jurisdictional facts is imperative. Plaintiffs have issued discovery requests for this information and documentation which is currently within the exclusive possession and control of Defendants and/or marketplace intermediaries, see Exhibit A, but, to date, no data has been produced.[5] Without this information, the parties cannot accurately calculate statutory and other categories of damages for particular subclasses which go directly to the amount in controversy. Any proper briefing of the jurisdictional issue as a factual matter will require at least some preceding period of discovery. *See also Pretka*, 608 F. 3d at 755-56 (11th Cir. 2010) (noting that many types of documentation and summary-judgment-type evidence, which can only be secured through discovery, are often relevant to determining the amount in controversy, including interrogatories, depositions, and expert affidavits. [citations omitted]).

For these reasons, Defendant's presentation of evidence, which is little more than its owner's subjective, unsupported estimation of one category of available damages (i.e., restitution of purchase price), can be given little weight. Plaintiffs seek damages for more than just reimbursement for the subject product SAMe that they purchased. By ignoring available sales data, much of which is currently held by Amazon and/or Defendant entities, Defendant makes no attempt to calculate (or even estimate) multiple categories of cognizable damages, including: 1) incidental and associated expenses (e.g. shipping costs); 2) statutory damages; 3) multiple or increased damages; 4) punitive damages; 5) injunctive relief; 6) attorneys' fees; 7) ongoing and future sales. Defendant's affidavit and analysis certainly cannot be said to establish by any standard of proof "that the amount in controversy is, in fact, less than the jurisdictional threshold." MTD, at 4.[6]

---

[4] For example, Plaintiffs Hood and Fishon assert N.Y. Gen. Bus. Law ("GBL") §§ 349 and 350 claims on behalf of a New York subclass. Their damages include statutory damages totaling $550 per violation, and multiple damages up to $1000 and $10,000. Prior to discovery production, Plaintiffs are unable determine the size of New York subclass size and their total amount of purchases which is necessary to estimate the aggregate amount of statutory and multiple damages due to the New York subclass. N.Y. GBL §§ 349(h) and 350-e.

[5] Ironically, Defendant faults Plaintiffs for making no effort to identify, or even estimate, the number of potential class members or their amount of damages. MTD, at 5. Of course, this identification and calculation can only be reasonably expected following Defendants' discovery productions.

[6] Defendant's calculation is also flawed and obviously under-estimated because it relies only on prices which Thomas Chapman has observed in the retail marketplace to determine the "highest prices" which Private Label Retailers have sold their SAMe. But even a quick browsing of the Amazon website as of August 3, 2020 shows retail listings at significantly higher prices than Chapman is "familiar with."

ii)      **Reasonable Inferences Support a Valuation of Over $5 Million in Recovery**

Plaintiffs' inability to accurately estimate many asserted categories of damages before discovery production notwithstanding, a showing that that it is more likely than not that the pleading satisfies the jurisdictional minimum can still be made, even at this stage. In making the amount in controversy calculation, the Eleventh Circuit has clarified that "[a] court may rely on evidence . . . as well as reasonable inferences and deductions drawn from that evidence." *S. Fla. Wellness*, 745 F. 3d at 1315. Thus, while this Court should not accept arguments based on "conjecture, speculation, or star gazing," estimates as to the amount in controversy do not demand "decimal-point precision" or "perfect knowledge." *Id.*, 1316-17. *See also Pretka*, 608 F. 3d at 751 (accepting reasonable deductions, inferences, or other extrapolations to support jurisdiction and amount in controversy showing).

To this end, Defendant concedes that restitution for the purchase price alone could set upwards of $3.9 million in class recovery into controversy.  Plaintiffs therefore need only show by evidence and reasonable inferences and extrapolations that they seek recovery of around upwards of $1 million in additional damages.[7]

**1) Incidental and associated expenses (e.g. shipping costs)**

A current browsing of the Amazon website (the primary platform for retail sales) shows an estimated $7.00 charge per retail order for shipping & handling on the website. Considering Thomas Chapman's testimony that Private Label Brand companies have sold up to a total of $3,701,586 in the subject product SAMe at prices ranging between $20-40 per bottle (Deft. Exh. 1, ¶¶ 7-8), an estimated range of 92,540 and 185,079 bottles sold can be reasonably inferred. Thus, estimated shipping and handling costs which Plaintiffs seek to recover on a classwide basis (SAC ¶ 262) would fall between $647,777.55 and $1,295,555.10.

**2) Statutory damages**

---

*See* Exh. B (BoostCeuticals selling at $36.99 (compared to Chapman's $33.99 for Inspire Now)); Exh. C (Healthy Way SAMe selling at $34.00 (compared to Chapman's $21.99 for Healthy Way)); Exh. D (NasaBe'Ahava SAMe selling at $29.00 (compared to Chapman's $21.99 for Healthy Way)); Deft. Exh. 1, ¶ 7(e) and (f). A true and accurate estimation of purchase price restitution for class members can only be made with the production of the sales data for the subject product.

[7] Importantly, for purposes of determining subject matter jurisdiction, Defendant is not permitted to dispute the merits of Plaintiffs' claims or their right to recover any particular category of damages under the circumstances. The Eleventh Circuit has made clear that, where a factual attack on jurisdiction is intertwined with the merits of the lawsuit, the district court should "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Lawrence v. Dunbar*, 919 F. 2d 1525, 1529 (11th Cir. 1990).

Plaintiffs Hood and Fishon seek statutory damages under N.Y. Gen. Bus. Law ("GBL") §§ 349 and 350 claims on behalf of their putative New York subclass which total $50 and $500 per violation, respectively. *See* GBL §§ 349(h) and 350-e. Thus, if sales data shows at least 1,819 putative New York class members, the additional $1 million threshold would be met through statutory damages alone. Considering an estimated range of 92,540 and 185,079 private label SAMe bottles were sold nationwide, it is likely there is well in excess of 1,819 putative New York class members.

### 3) Multiple or increased damages

GBL §§ 349(h) and 350-e also permit recovery of treble damages where a defendant willfully or knowingly violates the statute. As Plaintiffs have alleged intentional and knowing misrepresentations (*see* SAC ¶¶ 5, 32, 266-281), an increase in up to three times of actual damages (i.e. purchase price plus costs) for putative New York class members is also in controversy.

### 4) Punitive damages

Defendant concedes that punitive damages can, at least in theory, be included in the amount in controversy calculation, but argues that the damages "are far too speculative" to include in the Court's analysis.[8] MTD, at 9. But punitive damages would only have to be estimated at upwards of 25% of the purchase price to reach the additional $1 million in recovery needed to surpass the jurisdictional threshold. This is hardly an undue or speculative amount considering even just the already discovered evidence of the FDA's findings regarding Defendant's absolute disregard for any product specifications, component specifications for strength and composition, packaging and labeling specifications, and quality control in their supplement manufacturing processes. This evidence shows Defendant made no effort to ensure that its supplements contained the specified amount of the active ingredient as indicated on its product labels. *See* Exh. E. *See also McDaniel v. Fifth Third Bank*, 568 Fed. App'x 729, 732 (11th Cir. 2014) (unpublished) (reversing dismissal for lack of subject matter jurisdiction in CAFA case where compensatory damages totaled $2,989,335 but requested punitive damages was included to reach the $5 million threshold.).

---

[8] Defendant also suggests Plaintiffs' request for punitive damages should not be included in the Court's amount in controversy analysis because "Plaintiffs have failed to allege any conduct that could possibly give rise to an award of punitive damages." MTD, at 9, fn.6. This is absurd. The Complaint is replete with allegations of specific acts of knowing fraud and otherwise negligent behavior (e.g. material omissions and affirmative overstatements of the SAMe content and potency contained in subject product SAMe) which has injured consumers and deprived them of needed dosages of a dietary supplement. Ample basis in Plaintiffs' allegations for punitive damages exists. *See e.g.* SAC ¶¶ 5, 32, 266-296.

**5) Injunctive relief**

Defendant argues that any dollar amount attributed to injunctive relief would be too speculative for the Court to consider. This ignores the legal standard adopted by the Eleventh Circuit. "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Cohen v. Off. Depot, Inc.*, 204 F. 3d 1069, 1077-79 (11th Cir. 2000) (citation omitted.) "For CAFA purposes, we aggregate the claims of individual class members and consider the monetary value that would flow to the entire class if declaratory relief were granted." *S. Florida Wellness*, 745 F. 3d at 1316. In this case, the value of the injunctive relief (i.e. preventing putative class members and consumers from purchasing falsely labeled and defective SAMe) is easy to approximate based on past sales. If over the past five years since its inception in the market the subject product SAMe has accumulated a total of up to $3.9 million in fraudulently induced retail sales, if the injunctive relief were to be estimated to prevent even approximately 25% of those sales in the coming years, a value of the needed $1 million would be reached. *See Id.* (absolute certainty is not required in the valuation of injunctive relief.).

Moreover, it is simply not true that Plaintiffs here, like those in *Mann v. Unum Life Ins. Co. of Am.*, 505 Fed. App'x 854, 857 (11th Cir. 2013) and *Leonard v. Enterprise Rent a Car*, 279 F. 3d 967, 973 (11th Cir. 2002), can simply refuse to purchase Defendant's products in the future and thus would receive no value from the proposed injunction. Many bottles of the subject product SAMe are not recognizable to Plaintiffs and consumers as the SAMe manufactured by Defendant, and Plaintiffs are thus subject to the unknowing purchase of the subject product in the future. *See* SAC ¶¶ 7-13; 272 and section b) below.

**6) Attorneys' fees**

 "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Morrison v. Allstate Indem. Co.*, 228 F. 3d 1255, 1265 (11th Cir. 2000). Here the consumer statutes under which Plaintiffs assert claims permit the recovery of reasonable attorneys' fees. *See* Fla. Stat. § 501.2105; Nev. Rev. Stat. § 41.600(3)(b); Cal. Civ. Proc. Code § 1021.5; N.Y. Gen. Bus. Law §§ 349(h), 350-e(3); Tex. Bus. & Com. Code § 17.50(d). Based on experience in consumer protection class action matters, Plaintiffs' counsel reasonably estimates that reasonable attorneys' fees for this case through trial in March 2022 will likely well exceed $1 million. Exh. F. This includes time Plaintiffs' counsel has and will invest in pre-suit investigation, drafting

pleadings, pretrial motion practice for multiple motions, discovery, class certification briefing, trial, and other docket and case-related activities.

### 7) Ongoing and future sales

Lastly, Defendants' unfair and deceptive business practices are ongoing. Despite clear lab evidence that Defendant's SAMe is severely underfilled and mislabeled, Defendants show no sign of ceasing their sale of the subject product SAMe on Amazon.com. Thus, any calculation of the amount in controversy would have to take into consideration the continued estimated sales of the product through the scheduled trial in March 2022, over a year and half from now. As Defendant estimates retail sales over the past five years (since 2015) for the subject product SAMe approximate up to $3.9 million (approximately $ 780,000/year), it can be extrapolated that another approximately $1,170,000 in retail sales will be made before the conclusion of this case. This alone would push the amount in controversy above the $5 million CAFA threshold.

In sum, Plaintiffs' reasonable estimations of the additional forms of damages, when taken in the aggregate, clearly show by preponderance of evidence that the $5 million jurisdictional threshold is met. Even if the amount in controversy cannot be calculated with definitive precision, it cannot be disputed that any reasonable estimation of all recovery at issue would more likely than not greatly exceed the $5 million threshold.

### b) Plaintiffs Have Standing Under Article III to Seek Injunctive Relief

Count XIII asserts a cause of action for injunctive relief prohibiting Defendants from employing any false and deceptive SAMe labels and/or selling the subject SAMe on the grounds that this conduct is deceptive under various state consumer protection statutes[9] which provide for injunctive relief to prevent Defendants' ongoing and future illegal conduct. SAC ¶¶ 307-308. To establish standing under Article III, Defendant correctly points out that a plaintiff must demonstrate three things. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, that he or she has suffered an "injury-in-fact." *Id.* Second, the existence of a causal connection between the asserted injury-in-fact and the defendant's alleged improper conduct. *Id.* Third, that "the injury will be redressed by a favorable decision." *Id.* at 561.

Plaintiffs' Complaint easily meets the first requirement of Article III standing. The Complaint alleges that the plaintiffs have suffered economic injury in having purchased less valuable, if not

---

[9] The state consumer protection statutes include: Fla. Stat. § 501.21; Nev. Rev. Stat. §§ 41.600(3)(a), 598.0979; Ariz. Rev. Stat. § 44-1528; Cal. Bus. & Prof. Code § 17203; N.Y. Gen. Bus. Law § 349(b); Tex. Bus. & Com. Code § 17.47(a). *See* SAC ¶ 307.

entirely worthless, SAMe supplements which were unfit for their intended purpose as SAMe dietary supplements. SAC ¶¶ 95-96. Alternatively, Plaintiffs paid a premium price or inflated price per milligram of SAMe for what they believed was the represented amount of SAMe as indicated by the label. SAC ¶¶ 9-100. Therefore, the plaintiffs have pled an injury-in-fact. *See also* SAC ¶¶ 93-103. The Plaintiffs have also pled a causal connection between their injury and the Defendant's false and deceptive labeling. The Complaint alleges the Plaintiffs did not receive the benefit of the bargain they were promised, and selected and purchased the inferior, or even worthless, subject product specifically because of the deceptive labeling and material omissions made by Defendant. SAC ¶¶ 96-102. Lastly, Plaintiffs' complained-of economic injuries would likely be redressed by a favorable decision. On their state law consumer protection claims, Plaintiffs seek compensatory and statutory damages and injunctive relief to make them and the putative classes economically whole on the value of their purchases or provide restitution of their expended funds.[10] SAC ¶¶ 136-37; 146; 157; 166-67; 181; 194-96; 205-06; Prayer for Relief. A favorable decision would thereby redress the alleged injury suffered by the Plaintiffs.

The only issue raised by Defendant is whether Plaintiffs have the standing specifically necessary to seek injunctive relief. For this, Plaintiffs usually must show a real and immediate threat of future harm. *Shotz v. Cates*, 256 F. 3d 1077, 1081 (11th Cir. 2001); *Wooden v. Board of Regents of Univ. Sys. of Ga.*, 247 F. 3d 1262, 1284 (11th Cir. 2001) (a plaintiff seeking injunctive relief "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.").

Defendant contends that Plaintiffs lack standing for an injunction because there are no allegations that Plaintiffs will likely be harmed through the purchase the subject product again in the future. MTD, at 18. But this is untrue and ignores the clarifications made by Plaintiffs in their Complaint which allege precisely that. *See* SAC ¶¶ 7-13; 272. The Complaint alleges that:

> Plaintiffs and the putative classes have been injured by Defendants' actions and future consumers, including Plaintiffs, may continue to be injured absent the requested injunctive relief. **All individual Plaintiffs have and intend to continue to shop online, including the Amazon and Walmart websites, and various pharmacies and outlets that continue to sell the subject product, including for purposes of purchasing SAMe dietary supplements. Plaintiffs, in the course of shopping at such venues which sell the subject product in the present or future,** *will likely*, **as a reasonable consumer acting reasonably under the circumstances, be subject to the knowing or unknowing purchase of the defective and false and**

---

[10] Plaintiffs seek similar redress for their breach of warranty and misrepresentation claims, with the exception of the injunctive relief which is a form of relief particular to the state consumer protection statutory claims. SAC Counts VIII-XII, Prayer for Relief and ¶ 307.

**deceptively labeled subject product sold under one of numerous private labels which do not display on their label or disclose to consumers the identity of their SAMe manufacturer.** Even if Plaintiffs were to consciously avoid the respective private labels of their past subject product purchases, because of the existence of the numerous private labels selling the subject product in the market, Plaintiffs face a real and immediate threat of recurrent deception and consequent injury in their future purchases of SAMe.

SAC ¶ 308 (emphasis added).[11]

For example, the conduct of Plaintiff Ginsberg demonstrates the likelihood that Plaintiffs will continue to face the same alleged deception and unknowingly purchase the subject product again in the future. Plaintiff Ginsberg repeatedly purchased SAMe supplements sold on Amazon under the private label brand name of "Naturetition Supplements" between November 2016 and May 2018, but only learned in July 2020, weeks after the filling of the most recent iteration of the pleadings, that that brand of SAMe was also manufactured by Defendant, and thus falsely labeled like many of her prior SAMe purchases. *See* 1:20-cv-22329-CMA, S.D. Fla., First Amended Complaint, ¶ 8, Doc. 25, Exh. G and Declaration of Magdalena Rozio, Doc. 19-1, Exh. H.[12]

Thus, the likelihood of Plaintiffs suffering a repeated exposure to false labeling and consequent injury while making future SAMe purchases from one of dozens of private labels available online and in stores is not contingent upon events that are speculative.[13] *See Houston v. Marod Supermarkets, Inc.*,

---

[11] Moreover, each named Plaintiff also individually alleged that they intend to:

> continue to shop on online, the Amazon website, and various pharmacies and outlets, including for purposes of purchasing SAMe dietary supplements, and may in the present or future, as a reasonable consumer acting reasonably under the circumstances, knowingly or unknowingly, purchase the defective and false and deceptively labeled subject product from one of the numerous private labels who sell the subject product but do not display on their label or disclose to consumers the identity of their SAMe manufacturer.

SAC ¶¶ 7- 13.

[12] Notably, the "Naturetition" brand and other private labels are packaged in bottles that differ in appearance from most subject product SAMe, and like all subject product SAMe, make no indication on the product label as to the identity of the manufacturer.

[13] "It is true that the federal courts are generally ... unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury. However, the Supreme Court has held that such reluctance is not warranted when, for reasons beyond the plaintiff's control, he or she is unable to avoid repeating the conduct that led to the original injury at the hands of the defendant." *Church v. City of Huntsville*, 30 F. 3d 1332, 1337-38 (11th Cir. 1994) (citing *Honig v. Doe*, 484 U.S. 305, 320 (1988) and omitting quotations).

733 F. 3d 1323, 1337 (11th Cir. 2013). Plaintiffs plainly state that they plan to return to the same market places (e.g. Amazon website) to purchase SAMe supplements as needed, and, as reasonable consumers acting reasonably under circumstances, there is simply no reasonable way for them to identify and then avoid the fraudulent and defective SAMe manufactured by VB which is plentifully available in those commercial forums.[14] And while "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy," *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983), Plaintiffs' exposure to illegal conduct in the past is nonetheless "evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *Church v. City of Huntsville*, 30 F. 3d 1332, 1337 (11th Cir. 1994).

Here, the cause of the injury (i.e., fraudulently labeled SAMe supplements) continues to exist in the same market which Plaintiffs plan to continue to shop in the future. The likelihood of Plaintiffs encountering the same and many other fraudulent labels produced by VB and distributed by other retailers, but not identified to the consumer as VB's SAMe, is very high. Plaintiffs' inability to avoid such future injury due to their inability to distinguish SAMe manufactured by VB is significant. This is a capability and knowledge which they, as reasonable consumers, do not have. *Honig v. Doe*, 484 U.S. 305, 320-21 (1988) (reluctant to find that a likelihood of repeated misconduct is not warranted where circumstances leading to the conflict are beyond plaintiff's control.); *Church*, 30 F. 3d at 1337–39 (finding standing for homeless plaintiffs to seek injunctive relief to stop certain police practices because their alleged exposure to harmful illegal conduct was significantly likely and due to circumstances beyond their control.).

In this regard, the circumstances of this case are highly distinguishable from the facts of the cases cited by Defendant. *See* MTD, at 17-19 (citing *Marty, Shotz*, and *Houston*). In those cases, the court determined there was little or no likelihood of future injury to the named plaintiffs where the plaintiffs intended to effectively stop purchasing the defective product at issue or otherwise avoid the cause of injury. *Marty*, at 1354 ("Because there are no allegations in the Amended Complaint that the plaintiffs would purchase [the product in question] in the future, the undersigned finds that the plaintiffs have failed to plead a real and immediate threat of future injury, . . . . and thus have failed to plead standing to seek injunctive relief." [citations and quotations omitted]); *Shotz*, at 1082 (finding that absent an allegation of the plaintiffs' intent to return to the subject forum in the future, the

---

[14] At this stage of the litigation, the Court must consider the allegations contained in the Plaintiff's' Complaint as true and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F. 3d 1531, 1534 (11th Cir.1994).

likelihood of repeat future misconduct (i.e. discrimination) remains "conjectural, hypothetical, or contingent," and not "real and immediate."); *Houston*, at 1337 (finding that the cause of the injury continues to exist, and a likelihood of the plaintiff encountering that cause in the future because he had been to the forum (i.e. store) in the past and intends to return.). Here, despite efforts to avoid the SAMe capsules in question, Plaintiffs reasonably expect to reencounter VB's SAMe supplements in the consumer marketplace because Defendant fraudulently manufactures and labels under different private label brand names which Plaintiffs don't recognize or know to avoid. And even if Plaintiffs try to avoid repurchasing the specific SAMe private label they purchased in the past, Plaintiffs themselves cannot reasonably avoid the likely harm of purchasing the same subject product manufactured and mislabeled by VB as sold under various other private labels.[15] An injunction is therefore necessary, not just for the protection of the consumer public generally, but for the named Plaintiffs as well.

Considering the totality of the facts alleged here, the threat of future injury to Plaintiffs is not mere self-serving speculation, or "conjectural" or "hypothetical." *Lyons*, 461 U.S. at 102. Plaintiffs experienced unknowing purchases of the falsely labeled subject product which they did not know was falsely labeled by Defendant, and it remains a "real and immediate" likelihood that they unknowingly purchase it again under some private label. This meets the "likelihood"[16] of future harm necessary to seek protections through injunctive relief. *See e.g. Wooden*, 247 F. 3d at 1284; *Church*, 30 F. 3d at 1337, 1339 (requiring allegations of "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury," and "a sufficient likelihood that [plaintiff] will again be wronged in a similar way." [citations and quotations omitted]).

Alternatively, it should also be noted that many courts throughout the country in product mislabeling cases have held that "plaintiffs have standing to seek injunctive relief based on the

---

[15] The Complaint makes clear that the subject product SAMe manufactured and labeled by VB are offered for sale by under many private label companies, beyond the specific brands previously purchased by Plaintiffs. SAC ¶¶ 40, 47-48. Plaintiffs, however, are not required to allege they will suffer the same exact harm from repurchasing the same particular brands of SAMe. Rather, they are only required to allege that there is a sufficient likelihood that they will again be wronged by Defendant's misconduct in a *similar* manner. *Church*, 30 F.3d at 1339. After returning to the same commercial forums (e.g. Amazon website) to purchase more SAMe, Plaintiffs will be exposed to offers to buy more of the same subject SAMe capsules as offered for sale under other private labels, and thereby face a likelihood of being harmed again in a similar manner.

[16] *See Segal v. Rickey's Rest. and Lounge, Inc.*, 2012 WL 2393769, at *5 (S.D. Fla. June 25, 2012) (denying summary judgment because record of evidence was sufficient for a factfinder to potentially conclude that the plaintiff has visited the subject forum before, would likely be returning there again, and *may* therefore suffer similar misconduct (i.e. discrimination) in the future.).

allegation that a product's labeling or marketing is misleading to a reasonable consumer." *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013). Even where a plaintiff admits that he does not intend to make another purchase of the product in question, plaintiff still maintains standing to sue for injunctive relief. *Id.* (citation omitted); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *6 (N.D. Cal. Dec.13, 2012). To hold otherwise would require that "a plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, [and] then injunctive relief would never be available in false advertising cases, a wholly unrealistic result" for the very harm which consumer protection statutes are designed to redress. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011); *Ackerman,* at *15. Accordingly, Plaintiffs maintain standing for injunctive relief regardless of their intention to repurchase the subject protect again in the future.

### c)  Plaintiffs' Class Claims Should Not be Dismissed or Stricken

Plaintiffs' Complaint asserts claims on behalf of Plaintiffs and their putative consumer classes who were subject to false and deceptive labeling in their purchase of the subject SAMe product capsules. To this end, Plaintiffs bring this class action pursuant to the procedural provisions of Rule 23 of the Federal Rules of Civil Procedure. SAC ¶ 104. Plaintiffs allege common questions of fact and law, as well as typicality of Plaintiffs' claims with the proposed classes as a whole. SAC ¶¶ 113-15, 117. In its MTD, VB moves to dismiss or strike all class allegations asserted in Plaintiffs' SAC on the ground that they contain individual issues requiring individualized adjudication, and thus not appropriate for class certification. MTD, at 11-16. Plaintiffs oppose dismissal on these grounds for the following reasons:

### i)      Examination of Class Certification Issues is Premature at this Stage

VB's motion to strike class allegations which it contends are not certifiable would require premature examination of class certification issues. "Class allegations are generally not tested at the pleading stage and instead are usually tested after one party has filed a motion for class certification." *Murphy v. Directv, Inc.*, 2011 WL 3328393, at *2 (C.D. Cal. Feb. 11, 2011) (citing cases following this procedure); *Semeran v. Blackberry Corp.*, 2016 WL 3647966, at *6 (D.N.J. July 6, 2016) ("[a]lthough the Court possesses the discretion to strike class allegations at the pleading stage, it is uncommon except for limited situations."). This is because, as the Supreme Court has noted, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (citations and quotations omitted.). Therefore, unless "the issues are plain enough from the pleadings to determine

whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim," it may be necessary for the court to look beyond the face of the pleadings in order to come to a proper conclusion on the certification question. *Id.*; *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question …." [citations and quotation marks omitted]); *Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, 458 Fed. App'x 793, 794 (11th Cir. 2012) (because the predominance inquiry in class determination must take into account the claims, defenses, relevant facts, and applicable substantive law, "the court may, and sometimes must, inquire into the merits in order to determine whether the requirements of Rule 23 have been satisfied....").

For these reasons, "[t]he federal rules do not require certification motions to be filed with the class complaint, nor do they require or encourage premature certification determinations." *Hardy v. Toshiba Am. Info. Sys., Inc.*, 2013 WL 12306478, at *5 (C.D. Cal. Sept. 25, 2013) (citations and quotations omitted). Instead, "the class action process should be able to 'play out' according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues." *Id.* Thus, where, as in this case, there is not yet a factual record and it is not "clear from the complaint" that the class claims cannot be maintained, district courts will defer certification to a later stage so the parties can develop an adequate record through the discovery process and present the court with sufficient information necessary to support or deny an informed decision on certification. *Medina v. Homeolab U.S.A., Inc.*, 2015 WL 12867899, at *1 (S.D. Fla. Mar. 4, 2015). *See also Murphy*, 2011 WL 3328393 at *2 (finding class certification arguments premature and more appropriate for the class certification stage.); *Ehrhart v. Synthes (USA)*, 2007 WL 4591276, at *5 (D.N.J. Dec. 28, 2007) ("[D]ismissal of class allegations at [the motion to dismiss] stage should be done rarely and that the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.") (internal quotation marks omitted).

Moreover, early determination of class certification is particularly inappropriate in cases like the present where Defendant's motion asks the Court to consider the predominance of common issues pursuant to Rule 23(b)(3).[17] *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F. 3d 72, 93 (3d

---

[17] Defendant's arguments against class certification address the classwide vs. individual nature of Plaintiffs' claims and potential variation between class members in regard to the relevant facts and law. *See* MTD, at 11-16. Of course, as no motion for class certification has yet been filed, Defendant's arguments are simply guessing as to the basis for, and the parameters of potential putative classes, which Plaintiffs will move for certification when appropriate. It must also be noted that Plaintiffs intend to move for class certification on the basis of Rule 23(b)(2), in addition to Rule 23(b)(3).

Cir. 2011). A predominance analysis, by its very nature, necessarily requires the Court to venture into the territory of the claims' merits and evaluate the classwide nature of the evidence. *Id.* Because the relevant facts and defenses in the case have not yet emerged at this pre-discovery stage, the Court would be forced to predict what proof may be accumulated by Plaintiffs during the discovery process to prove the merits of their case, and speculate as to its classwide nature. For this reason, the Court's determination of class certification issues would be premature and more appropriate at the class certification stage. *Id.* (finding class certification premature and noting that "[i]n most cases, some level of discovery is essential" to an evaluation of class allegations.). *See also Coastal Neurology*, 458 Fed. App'x at 794.

### ii)   Plaintiffs' Allegations are Not Redundant, Immaterial, Impertinent, or Scandalous

While VB urges the Court to strike class allegations on account of its analysis of Rule 23 considerations, MTD, at 11-16, courts in this district have clarified that a proper analysis of a motion to strike class allegations at this stage of an action should instead "view the Rule 23 factors through the lens of the Rule 12(f) standard for motions to strike." *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 700 (S.D. Fla. 2014); *Desmond v. Citimortgage, Inc.*, 2015 WL 845571, at *5-6 (S.D. Fla Feb. 25, 2015); *Thompson v. Procter and Gamble Co.*, 2018 WL 5113052, at *5 (S.D. Fla. Oct. 19, 2018). Thus, the proper inquiry for Defendant's motion to strike "is whether Plaintiff's class-action allegations are 'redundant, immaterial, impertinent, or scandalous.' Fed. R. Civ. P. 12(f)." *Gill-Samuel,* at 700. Even from the onset, Defendant's analysis is flawed because it applies the wrong standard of law in requesting such a drastic remedy[18] as the striking of Plaintiffs' allegations. As Defendant does not, and cannot, demonstrate that Plaintiffs' class-action allegations are "redundant, immaterial, impertinent, or scandalous" as to Plaintiffs' claims in the Complaint, striking the class claims is improper.

### iii)   Common Issues of Fact Predominate and are Subject to Classwide Proof

Alternatively, Defendant's contention that common issues of fact do not predominate is simply unsupported by the factual allegations in the case, and, again, is woefully premature. Plaintiffs and all putative class members are alleged to have purchased the same subject product SAMe capsules, manufactured by the same Defendant manufacturer (i.e., VB), and were deceived by materially similar

---

[18] *Augustus v. Bd. of Pub. Instruction*, 306 F. 2d 862, 868 (5th Cir. 1962) (noting that "striking a pleading should be sparingly used by the courts ... [and] is a *drastic remedy* to be resorted to only when required for the purposes of justice …." [emphasis added]).

mislabeling which included the same key omissions and gross overstatements regarding the true amount of active SAMe contained in subject product capsules. Regardless of when, or how, or from whom they purchased their subject SAMe, all Plaintiffs and class members suffered from the same misconduct in the same manner (i.e., materially similar misrepresentations on the labels regarding the quality and quantity of SAMe contained therein), and therefore maintain overlapping claims. In this regard, "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. . . . When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations and quotations omitted). As such, even considering the limited amount individualized issues which may need to be considered, the vast majority and primary issues driving the resolution of this action are "common issues" subject to classwide proof. Class claims are therefore appropriate and should not be stricken at this stage. *Id.* (holding that predominance is not defeated merely because "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." [citations and quotations omitted]); *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F. 3d 32, 39–40 (1st Cir. 2003) ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.").

　　To buttress their argument, Defendant greatly exaggerates the existence of individualized issues while listing seven issues it claims relate to the purchase of the mislabeled subject product. MTD, at 11. These include: 1) product identification (i.e., which private label brands sold the subject SAMe capsules manufactured by Defendant); 2) identification of false or misleading information seen by consumers (i.e., the overstated amount of SAMe represented on subject product labels); 3) reliance on the false and misleading statements; 4) causation of damages; 5) the existence of privity; and 6) conflicts of law; and 7) existence of damages. *Id.* This, however, mischaracterizes a number of questions of fact as individualized matters when, in fact, they can largely be determined through common evidence. Ultimately, common issues predominate because once the private label brands selling VB's manufactured SAMe capsules are identified in discovery, the same evidence needed to prove that Defendant made false representations and breached consumer warranties to Plaintiffs (e.g., lab reports and expert testimony showing the subject SAMe is deficient and/or defective) will also suffice to prove such claims as to all other consumer purchasers of the subject SAMe capsules. *See Tyson Foods v. Bouaphakeo*, 136 S. Ct. at 1045 (defining a common question as "one where the same

evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof."). This holds particularly true in the present case because all putative class members purchased the same subject SAMe capsules with same material attributes. SAC ¶¶ 1, 105-111, 261.[19]

iv)  <strong>Reliance and Causation and Breach of Warranties are Issues of Classwide Inquiry</strong>

Chief amongst the factual issues which Defendant contends are too individualized for class treatment is individual reliance. First, it must be noted that Defendant's contention regarding reliance is limited to only two of Plaintiffs' class claims. The FDUTPA claims under Florida law require no proof of individual reliance. *Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 697 (S.D. Fla. 2010). Plaintiffs are "only required to prove that [defendant's] conduct would deceive an objective reasonable consumer, and not that the deceptive act motivated their particular purchase decision." *Id.*; *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000). To this end, all putative class members can rely on the same pool of evidence to prove their FDUTPA claims. *Fitzpatrick*, at 697.

Second, even with regard to the specific causes of action that do require proof of individual reliance (e.g., intentional and negligent misrepresentation), Defendant's argument ignores the fact that Florida courts have recognized that plaintiffs can demonstrate reliance through circumstantial evidence that is common to the class. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 879 (Fla. 2d DCA 2006). Courts have noted that, particularly in consumer class actions concerning the mislabeling of products, the plaintiffs' purchases which come as a result of deceptive misrepresentations, if material, support providing the general inference of reliance and causation to all purchasers. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 391 (S.D.N.Y. 2016).

Here, contrary to Defendant's suggestion, MTD, at 13, Plaintiffs allege that all putative class members were all exposed to and viewed the primary label misrepresentations upon which this case lies. SAC ¶¶ 7-13, 48. All of the Defendants' false labels are materially similar and misstate the amount

---

[19] All subject SAMe capsules were manufactured with far less than the stated amount of active ingredient (SAC ¶¶ 39, 46); all subject SAMe capsules were sold in bottles with labels representing that they contained 200-500 mg of SAMe per capsule when they actually contained only a fraction of that amount (SAC ¶¶ 36, 44); all putative class members viewed and reasonably relied upon the false and deceptive mislabeling regarding the stated amount of SAMe (SAC ¶¶ 7-13, 48, 93-94, 97-98, 100); all putative class members consequently suffered economic injury in purchasing the subject SAMe because of the mislabeling (SAC ¶¶ 93-102); and all putative class members are in privity with their respective retailers and/or qualify as intended third parties with respect to VB, the defendant manufacturer (SAC ¶ 226).

17

of SAMe contained therein. SAC ¶¶ 39, 44-46. And regardless of the particular private label brand of subject SAMe which putative class members bought, all reasonable consumers must have viewed and relied upon the particular label's representation as to the amount of SAMe contained therein before purchasing. SAC ¶¶ 93-94. These misrepresentations, along with material omissions regarding the supplement's underlying quality, are key matters of obvious importance to every reasonable consumer purchasing a dietary supplement. An inference of reliance and causation is therefore appropriate for all class members.[20]

Failing to consider the possibility of a classwide inference available in these types of cases, Defendant, citing no federal law, even goes so far as to contend that any and all claims based on alleged misrepresentations are inherently inappropriate for class treatment. MTD, at 13. The state cases Defendant relies upon (*e.g. Lance v. Wade*, 457 So. 2d 1008 (Fla. 1984); *Humana, Inc., v. Castillo*, 728 So. 2d 261 (Fla. 2d DCA 1999); *Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2006)), however, are not relevant to federal law regarding class certification under Rule 23. Moreover, the cited cases deal with Florida common law fraud claims, a claim which has not been asserted in the present case. Lastly, as noted above, *Rollins* has distinguished away those cases from circumstances where, as here, reliance which is common to the class and can be demonstrated and inferred through circumstantial evidence. *Id.* at 879.

With regard to Plaintiffs' breach of warranty claims, Defendant similarly contends that the claims are based on individualized determinations. MTD, at 14. Here again, as with the consumer protection claims and misrepresentation claims, because all putative class members purchased the same subject SAMe capsules with misstated amounts of the supplement, common evidence showing the true amount of SAMe contained in the capsules and its quality will prove the underlying elements as to all putative class members. Even privity with VB, a requirement for breach of implied warranty claims, is a matter which can be dealt with on a classwide basis because all purchasing consumers are intended third party beneficiaries of the sales contract between VB and the various private label retailers for the subject SAMe. SAC ¶ 226; *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014) (permitting a plaintiff to pursue a claim of implied warranty through third-party beneficiary law.). *See also Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F. 3d 1022, 1032 (11th Cir.

---

[20] While there may be multiple reasons consumers choose to buy a particular supplement, all consumers, under all circumstances, rely on label representations which cut to the essence of the what the supplement product is, i.e., that the supplement is that represented type of supplement and that it provides the stated measure of that supplement.

2017) (noting that under Florida law, the privity requirement is satisfied where, as here, a manufacturer provides a warranty to a buyer who purchases from a third party.); SAC Counts IX, ¶¶ 231-244.[21]

> **v)      Varying Legal Requirements can be Most Efficiently Managed Through Sub-classing**

Defendant also places great emphasis on what it fears is the potential for significant differences in law to make management of a class impractical. MTD, at 15. This, however, ignores that a) Plaintiffs assert an all-encompassing, nationwide class covering all putative class members under the Florida claims (SAC, Counts I, VIII-XIII), and b) that Federal Rules recognize a court's subclassing power as a method to avoid variation problems between members of different states and thereby manage the case more efficiently. *See* Fed. R. Civ. Proc. 23; *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F. 2d 1106, 1129 (7th Cir. 1979) (noting that division of a class or potential class into subclasses to account for differences in proof is clearly permissible). Such subclassing schemes are commonly used in class actions, and Plaintiffs have accordingly asserted putative subclasses in their Complaint. SAC ¶¶ 105-111. *See also Piambino v. Bailey*, 610 F. 2d 1306, 1326 (5th Cir. 1980) (recognizing a district court's power to employ subclassing pursuant to former Rule 23(c)(4)(B)); *Betts v. Reliable Collection Agency, Ltd.*, 659 F. 2d 1000, 1005 (9th Cir. 1981); *Andrews v Am. Tel. & Tel. Co.*, 95 F. 3d 1014, 1027 (11th Cir 1996) (finding the use of subclassing pursuant to Rule 23 to be an appropriate mechanism to mitigate unmanageability due to individual factual and legal issues, such as reliance.).

Moreover, subclassing aside, as with all class actions, here proof of liability common evidence showing the true amount of SAMe contained in the capsules and its quality (e.g., lab reports and expert testimony) will be offered to prove the underlying elements as to all putative class members' statutory claims. Potential differences in law which may exist amongst some of the asserted state claims does not negate the predominance of common questions "where the same evidence will suffice for each [class] member to make prima facie showing" of liability. *Tyson Foods v. Bouaphakeo*, 136 S. Ct. at 1045. More specifically, Defendant also argues that, particularly in the realm of consumer protection statutes, some individual proof, such as reliance on the subject misrepresentations, may be required for each individual class member. MTD, at 15-16. Citing to various cases, Defendant suggests that individual

---

[21] Defendant disingenuously contends that Plaintiffs' breach of express warranty claims must fail because they fail to allege any express warranty from VB to the Plaintiffs. MTD, at 14-15. This simply ignores SAC ¶ 240 which explains that the subject labels' representations regarding the amount of SAMe contained therein served as "affirmations of fact" and/or "description of the goods" made part of the basis of the bargain which create express warranties by law that the goods will conform to the affirmation and/or description. *See* Fla. Stat. § 672.313.

reliance may be required for consumer protection claims under Texas, California, and even New York law. Defendant's position must be rejected for two reasons: 1) as explained above, reliance on a product's label indicating the amount of the dietary supplement contained therein can be presumed on a classwide basis; and 2) Defendant misstates these states' law. In New York, it is settled law that for claims brought under General Business Law 349-350 it does not matter whether consumers justifiably relied upon the subject deceptive representations. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y. 3d 940, 940–41 (2012). "To satisf[y] the causation requirement under the GBL, [n]othing more is required than that a plaintiff suffer a loss because of defendant['s] deceptive act." *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014) (quotation omitted). Under California statutes, although reliance is a required element, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). And in Texas, courts have concluded that, so long as economic damages are uniform, the need for evidence of reliance does not preclude class certification for TDTPA claims. *Vine v. PLS Fin. Services, Inc.*, 331 F.R.D. 325, 339 (E.D. Tex. 2019).

Ultimately, Defendant neither analyzes the Rule 23 predominance standard nor explains how this case differs from the countless of other consumer class actions with similar multi-state claims which courts have routinely certified for class treatment. *See e.g., Falco v. Nissan N. Am. Inc.*, CV-1300686-DDP-MANX, 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016).

## III.    CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss the Second Amended Complaint, together with such other and further relief this Court deems just and proper.

DATED:  August 4, 2020.

By:  _/s/ Barbara Perez_
    Tod Aronovitz (FBN 186430)
    Barbara Perez (FBN 989304)
    **ARONOVITZ LAW**
    Town Center One, Suite 2201
    8950 SW 74 Court
    Miami, FL 33156
    Tel: 305-372-2772
    Fax: 305-397-1886
    ta@aronovitzlaw.com
    bp@aronovitzlaw.com

    Jay I. Brody (Admitted _Pro Hac Vice_)
    Gary S. Graifman (Admitted _Pro Hac Vice_)
    **KANTROWITZ, GOLDHAMER &**
    **GRAIFMAN, P.C.**
    747 Chestnut Ridge Road
    Chestnut Ridge, New York 10977
    Tel: 845-356-2570
    ggraifman@kgglaw.com
    jbrody@kgglaw.com

    Nicholas A. Migliaccio
    Jason S. Rathod
    **MIGLIACCIO & RATHOD LLP**
    412 H Street N.E., Ste. 302
    Washington, DC 20002
    Tel: 202-470-3520
    nmigliaccio@classlawdc.com

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on August 4, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served on all counsel of record on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: <u>/s/ Barbara Perez</u>

**SERVICE LIST**
**Ginsberg, et al. vs. Vitamins Because, LLC, et al.**
**Case No.: 19-cv-022702-KMW**

Attorneys for **PLAINTIFFS**:

Tod Aronovitz (FBN 186430)
Barbara Perez (FBN 989304)
**ARONOVITZ LAW**
Town Center One, Suite 2201
8950 SW 74 Court
Miami, FL 33156
Tel: 305-372-2772
Fax: 305-397-1886
ta@aronovitzlaw.com
bp@aronovitzlaw.com

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER &**
**GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com

Attorneys for **DEFENDANTS**:

*Defendants*, VITAMIN BECAUSE LLC
and CT HEALTH SOLUTIONS LLC:

David S. Johnson (FBN 96423)
**JOHNSON DABOLL ANDERSON, PLLC**
2011 W. Cleveland Street, Suite F
Tampa, Florida 33606
Tel: 813-377-2499
Fax: 813-330-3156
djohnson@jdalegal.com

*Defendant*, GMAX CENTRAL LLC:

Leon N. Patricios (FBN 0012777)
Joseph I. Zumpano (FBN 0056091)
**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, FL 33134
Tel: 305-444-5565
Fax: 305-444-8588
lpatricios@zplaw.com
jzumpano@zplaw.com

Richard J. Oparil (Admitted *Pro Hac Vice*)
Kevin M. Bell (Admitted *Pro Hac Vice*)
**ARNALL GOLDEN GREGORY LLP**
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
Tel: 202-677-4030
richard.oparil@agg.com
kevin.bell@agg.com

*Defendant*, ASQUARED BRANDS LLC:

Alessandro A. Apolito (FBN 0084864)
**LIPPES MATHIAS WEXLER**
**FRIEDMAN LLP**
822 N. A1A, Suite 101
Ponte Vedra Beach, Florida 32082
Tel: 904-660-0020
Fax: 904-660-0029
aapolito@lippes.com

23

Brendan H. Little (Admitted *Pro Hac Vice*)
**LIPPES MATHIAS WEXLER
FRIEDMAN LLP**
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
Tel: 716-853-5100
blittle@lippes.com


*Defendants*, **HEALTHY WAY RX LLC,
KHAKIWARE INC:**
Joseph A. Sorce, Esq. (FBN 37288)
**JOSEPH A. SORCE & ASSOCIATES, PA**
999 Ponce de Leon Boulevard, Suite 1020
Coral Gables, FL 33134
Tel. 305-529-8544
jsorce@flconstructionlawyer.com


*Defendant*, **JOLLY DOLLAR SUPPLY
COMPANY:**

Joshua A. Migdal (FBN 19136)
Yaniv Adar (FBN 63804)
**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Tel: 305-374-0440
josh@markmigdal.com
yaniv@markmigdal.com
eservice@markmigdal.com