**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

---

CORI ANN GINSBERG, *et al*.

    Plaintiffs,

v.   No. 1:19-cv-22702-KMW

VITAMINS BECAUSE LLC, *et al*.,

    Defendants.

---

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT GMAX CENTRAL, LLC'S RENEWED MOTION TO COMPEL ARBITRATION AND FOR DISMISSAL OF CLASS ACTION CLAIMS AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

    The Court should grant the motion to compel arbitration and stay or dismiss the litigation against defendant, Gmax Central, LLC ("Gmax"). The opposition concedes that the claims against Gmax by the two named plaintiffs in the Second Amended Complaint ("SAC"), Cori Ann Ginsberg ("Ginsberg"), Bill Wilson ("Wilson"), and their related putative class members (collectively "Gmax Plaintiffs"), are based on purchases made from Amazon.com. SAC ¶¶ 7, 10. Without such purchases from Amazon plaintiffs would have no claim to assert against Gmax. There are no allegations in the SAC that plaintiffs actually purchased any Gmax SAMe product from some source other than Amazon. The Gmax Plaintiffs do not, because they cannot, deny that their agreement with Amazon requires arbitration of any claim related to the sale.

    Alternatively (and without waiving its arbitration rights), the SAC should be dismissed for the reasons set forth in the motion to dismiss and the reply memorandum filed by defendants

15412458

Vitamins Because, LLC and CT Health Solutions, LLC (collectively "Vitamins Because"). Dkt. Nos. 122, 130 (incorporated here by reference).

## ARGUMENT

### I. THE CLAIMS AGAINST GMAX ARE EXPRESSLY BASED ON PURCHASES OF THE ACCUSED PRODUCTS FROM AMAZON.

#### A. The SAC Only Contains Allegations Of Product Purchases From Amazon.

The SAC, the third pleading filed in this year old case, contains sparse and conclusory allegations against Gmax. Named plaintiffs Ginsberg and Wilson assert nine claims against Gmax based on the alleged purchases of a dietary supplement, known as SAMe, under the brand name NusaPure from Amazon.com. SAC ¶¶ 7, 10. Ginsberg allegedly viewed and purchased Gmax's product from Amazon on September 20, 2018 for $34.99. *Id*. ¶ 7 & Ex. C. Wilson allegedly also viewed on Amazon and purchased Gmax's product from Amazon on October 27, 2018 for $34.99. *Id*. ¶ 10 & Ex. C. Notably missing from the SAC or the Gmax Plaintiffs' opposition is any factual or other assertion that Ginsberg, Wilson, or other specific plaintiff purchased Gmax's product from any website or retail establishment other than Amazon. It is fair to say that the claims against Gmax at issue in this case, and plaintiffs standing to raise them, arise from Amazon purchases.

The SAC is devoid of any non-conclusory fact alleging that any person purchased the SAMe product at issue from Gmax's website or another unnamed non-Amazon retail source. For *Twombly* and *Iqbal* purposes, the only alleged facts are that the named plaintiffs and perhaps others purchased Gmax's product from Amazon. It is certainly true that but for Ginsberg's and Wilson's purchases from Amazon, they would lack standing to bring the claims at issue. Plaintiffs lack standing to sue, both individually and on behalf of other consumers, on claims related to Gmax products they did not buy. To establish standing under Article III, a plaintiff must have suffered

an injury in fact. *See, e.g.*, *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, No. 1:18-CV-63130-UU, 2019 WL 9093460, *3 (S.D. Fla. June 21, 2019). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016)). Further, "[m]any courts in this district have found that a plaintiff in a consumer class action lacks standing to challenge the marketing of a non-purchased product because the plaintiff has suffered no injury-in-fact." *Potter v. Potnetwork Holdings, Inc.*, No. 19-24017-CIV, 2020 WL 1516518, *2 (S.D. Fla. Mar. 30, 2020).

Plaintiffs Ginsberg and Wilson allege that they only "viewed the label of and purchased one bottle of the subject product as it was available for sale by and under the private label brand retail name of "NusaPure" on Amazon.com . . . ." SAC ¶¶ 7, 10. However, they allege that they "intend[] to continue to shop on online, the Amazon website, and various pharmacies and outlets, including for purposes of purchasing SAMe dietary supplements . . . ." *Id*. The SAC alleges no facts to support that the Plaintiffs actually purchased Gmax products from any source other than Amazon.com. Their allegation as to their future intent is mere conjecture and hypothetical as Plaintiffs have not, and could not, suffer injuries in fact from unpurchased products. Thus, Plaintiffs lack standing to bring claims, both individually and on behalf of class plaintiffs, related to purchases of Gmax products from sources other than Amazon.com.

Gmax Plaintiffs have had three attempts to plead facts showing purchases from retailers others other than Amazon and have failed to do so each time. As such, the claims at issue are

3

15412458

inextricably tied to Amazon purchases and the relevant agreements broadly requiring arbitration of disputes.

### B. Plaintiffs Concede They Were Parties To An Agreement With Amazon.

Plaintiffs' opposition concedes that they were parties to the agreement with Amazon, which included an arbitration clause. The opposition represents that the "arbitration agreements between Nonparty Amazon and Plaintiffs are included in the Nonparty Amazon's 'conditions of use' for consumers generally using the Amazon.com website, … and terms associated with Nonparty Amazon's Prime Membership offered to consumers." Dkt. No. 131 at 4 (citing Dkt. No. 126-1, Leyniers Decl. ¶¶ 4, 5, 7, 8). They also admit that Gmax was a party to Amazon's Services Business Solutions Agreement relating to Fulfillment by Amazon product sales. *Id*. (citing Leyniers Decl. ¶¶ 9-10).

The SAC relies on Amazon's website to support its factual claims. For example, the Gmax Plaintiffs allege that Gmax was on actual or constructive notice that its SAMe product lacked the represented amount of the active ingredient, was defectively designed and made, and was not fit for the intended use based on "consumer complaints on Amazon webpages…." SAC ¶ 32. Gmax Plaintiffs allege that Gmax had a special relationship with them because its label's representations would allow them to evaluate the SAMe product in comparison to other SAMe brands and supplements being sold on Amazon's website. *Id*. ¶ 293.

Gmax Plaintiffs SAC and opposition thus concede that they were parties to agreements with Amazon containing arbitration and class action waivers. There is no fact alleged in their operative pleading that they purchased Gmax's SAMe product from any other retailer.

## II. GMAX PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION PROVISIONS.

As shown in its renewed motion to compel arbitration, Gmax Plaintiffs' claims against Gmax are within the scope of the arbitration provisions by agreeing to arbitrate any dispute or claim relating in any way to products or services sold or distributed by Amazon. Dkt. No. 126. "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996); *see also Hermspherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1366 (11th Cir. 2008). The indicia of whether there is a relationship between the agreement and the disputes include "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties; whether an action could be maintained without reference to the contract or relationship at issue, whether the disputes have their origin or genesis in the contract; or whether the allegations underlying the claims touch matters covered by the contract." *Hermspherx*, 553 F.3d at 1366-67 (internal citations and quotations omitted).

There is a close relationship in this case. All of the factual claims alleged by Gmax Plaintiffs arise from and relate to the SAMe products sold through Amazon and the Fulfillment by Amazon program. Gmax Plaintiffs' claims are based on representations they viewed on Amazon's site, and they purchased the accused products through Amazon. *See, e.g.*, SAC ¶¶ 7, 10, 293, 308. If not for the Amazon purchases, the Gmax Plaintiffs would not be able to allege the claims made in the SAC. Further, the arbitration provisions cover "**any dispute or claim relating in any way** to [the consumer's] use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com." Leyniers Decl. ¶ 5 & Ex. 1 (emphasis added). The factual allegations relating to each cause of action alleged by Gmax Plaintiffs relate to the products sold

15412458

through Amazon. Accordingly, Gmax Plaintiffs' claims against Gmax fall squarely within the scope of the arbitration provision.

### III. GMAX PLAINTIFFS' ARGUMENTS FAIL TO OVERCOME THE ARBITRATION PROVISIONS.

Gmax Plaintiffs' opposition rests on the idea that it did not sign an arbitration agreement with Gmax and its claims are not arbitrable. That argument is belied, however, by the doctrines of equitable estoppel and third-party beneficiary. Dkt. No. 126 at 12-16. And Gmax Plaintiffs cannot dispute that a nonsignatory may be entitled to enforce an arbitration clause. *See, e.g.*, *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d. 942, 947 (11th Cir. 1999), *abrogated on other grounds*, *Arthur Anderson, LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012).

#### A. Equitable Estoppel

"[T]here are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration." *Id*. Equitable estoppel applies when the signatory to a written agreement containing an arbitration clause relies on the terms of that agreement in asserting its claims against a nonsignatory, such that when each of a signatory's claims "makes reference to" or "presumes the existence of" a written agreement, the signatory's claims "arise out of and relate directly to the written agreement," and arbitration is appropriate. *Id.*

In this case, Gmax Plaintiffs are admitted signatories to the agreements with Amazon relating to the purchase of Gmax's SAMe product fulfilled by Amazon. Their claims against non-signatory Gmax are based on the existence of their written agreements with Amazon. Gmax Plaintiffs' allegations and claims clearly arise out of and exist only by virtue of the relationship between Gmax Plaintiffs and Amazon. SAC ¶¶ 7, 10; Leyniers Decl. ¶¶ 4-8 & Exs. 1-2. Without

6

15412458

relying on the factual allegation of Amazon's sales to Ginsberg and Wilson, they could not state a plausible claim against Gmax.

"[A] defendant who is a non-signatory to an agreement containing an arbitration clause can force arbitration of a signatory's claims when the signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017); *see also Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So.3d 644, 646 (Fla. 3d DCA 2014)). A nonsignatory can compel arbitration if the plaintiff relies on the contract to assert its claims and the scope of the arbitration clause covers the dispute. *See id.* at 1354; *Leidel v. Coinbase Inc.*, 729 F. App'x 883, 886-87 (11th Cir. 2018). Here, Gmax Plaintiffs rely on the Amazon agreements in alleging their claims against Gmax and the claims fall within the broad scope of the arbitration provision. Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that the contract imposes. *See, e.g.*, *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005).

Gmax Plaintiffs clearly rely on the terms of an agreement in asserting their claims against Gmax. *See MS Dealer*, 177 F.3d at 947; *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014). Reliance occurred because Gmax Plaintiffs referred to and stated the existence of the Amazon agreements. *See MS Dealer*, 177 F.3d at 947.[1] Each of Gmax Plaintiffs' claims against Gmax presumes the existence of the agreement between Gmax Plaintiffs and Amazon, as the products purchased through Amazon's website and fulfilled by Amazon required

---

[1] In *MS Dealer*, the Court found that plaintiff was equitably estopped from avoiding arbitration with a nonsignatory where the plaintiff's claims for fraud and conspiracy presumed the existence of a charge contained in a retail installment contract, as the claims depended entirely upon her payment obligations under the installment contract. *Id.*

agreement by Gmax Plaintiffs to the "conditions and use." *Id.* at 947-48. Since Gmax Plaintiffs' allegations and claims presume the existence of the agreement containing the arbitration provision, Gmax Plaintiffs are equitably estopped from claiming that Gmax cannot enforce the agreement in order to compel arbitration.

Further, Gmax Plaintiffs' claims against Gmax that the labels on the products sold through Amazon's website were mislabeled are entirely based upon Gmax Plaintiffs' agreement to purchase the products from Amazon. As such, Gmax Plaintiffs are estopped from avoiding arbitration with Gmax. *See Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014) (equitable estoppel applied where plaintiff's claims were premised on allegations that the loans were unlawful debts and the interest rates were usurious such that the plaintiff relied on the terms of the underlying agreement to make out her claims against the non-signatory). The same result should occur here.

### B.   Third Party Beneficiary

In addition, Gmax is a third-party beneficiary of the broad arbitration agreements between Amazon and Gmax Plaintiffs, such that it can be enforced against those plaintiffs. *See, e.g.*, *Zac Smith & Co., Inc. v. Moonspinner Condominium Ass'n, Inc.*, 472 So.2d 1324 (Fla. 1st DCA 1985); 2 WILLISTON ON CONTRACTS § 364A (1959)). Plaintiffs have previously told this Court that "all purchasing consumers are intended third party beneficiaries of the sales contract between [co-defendant Vitamins Because] and the various private label retailers for the subject SAMe [including Gmax]." Dkt. No. 129 at 18 (citing SAC ¶ 226). Similarly, Gmax, a non-contracting party, is a third party beneficiary of the agreements between any of the Gmax Plaintiffs, including Ginsberg and Wilson, and may enforce the arbitration provision of those

15412458

agreements. *See, e.g.*, *Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So.3d 146, 149 (2016), *rehearing denied*, 2016 WL 6603787 (Fla. Nov. 8, 2016).

Gmax is a third party beneficiary of the agreements between the plaintiffs and Amazon, which is particularly true because the alleged sales of its SAMe product were made as part of the Fulfillment by Amazon program. Plaintiffs were subject to the terms of use of Amazon agreements providing that "[a]ny dispute or claim relating in any way to your use of the Amazon services sold or distributed by Amazon or through Amazon.com will be resolved" by arbitration. Leyniers Decl. ¶ 5 & Ex. 1.

Accordingly, Gmax Plaintiffs' claims based on sales through Amazon should be heard in arbitration and not by this Court.

### IV.   THE CLASS ACTION WAIVER IN THE AMAZON AGREEMENTS SHOULD BE ENFORCED.

Gmax Plaintiffs agreed to a class action waiver in their agreements. They do not dispute that the Amazon agreements contain provisions mandating arbitration and waiving class actions in arbitration. The waiver should be enforced and the individual claims of Ginsberg and Wilson should be the only claims for which arbitration is compelled. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

### IV.   ALTERNATIVELY, THE CLAIMS AGAINST GMAX SHOULD BE DISMISSED.

As alternative relief and without waiving its arbitration motion, the claims against Gmax should be dismissed for the reasons set forth in Vitamins Because's motion to dismiss the SAC and its reply memorandum. Dkt. Nos. 122, 130.

### CONCLUSION

For the foregoing reasons, this matter belongs in arbitration. The Court should stay or dismiss the proceedings in this matter, compel arbitration of Ginsberg and Wilson's individual

9

claims and dismiss the class claims. Alternatively, the Court should dismiss the SAC against Gmax with prejudice.

Dated: August 24, 2020

Respectfully submitted,

*/s/ Leon N. Patricios*
Leon N. Patricios (FBN 0012777)
Joseph Zumpano (FBN 0056091)
ZUMPANO PATRICIOS. P.A.
312 Minorca Avenue Coral Gables, FL 33134
(305) 444-5565
lpatricios@zplaw.com
jzumpano@zplaw.com

Richard J. Oparil (Admitted Pro Hac Vice)
Kevin M. Bell (Admitted Pro Hac Vice)
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
(202) 677-4030
richard.oparil@agg.com
kevin.bell@agg.com

Attorneys for Defendant
Gmax Central LLC

15412458

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2020, the foregoing was filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

>*/s/ Leon N. Patricios*
>Leon N. Patricios

15412458