# EXHIBIT B

1

2

3
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER 19-22702-CV-KMW

4
CORI ANN GINSBERG, et al
        **Plaintiffs**

5
    **vs.**

6
VITAMINS BECAUSE, LLC, et al

7
        Defendants

8

9
TELEPHONIC HEARING HELD 10-8-2020
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

10

11
APPEARANCES:

12
FOR THE PLAINTIFFS:

13
                    Jay Brody, ESQUIRE
                    Barbara Perez, ESQUIRE

14
FOR DEFENDANTS:

15

16
                    Yaniv Adar, ESQUIRE
                    Richard Oparil, ESQUIRE
                    Brendan Little, ESQUIRE

17
                    David Johnson, ESQUIRE
                    Scott Anderson, ESQUIRE

18
                    **Joseph Sorce, ESQUIRE**
                    Catherine Davis, ESQUIRE

19

20
REPORTED BY:        PATRICIA SANDERS, RPR
                    United States Court Reporter

21
                    400 North Miami Avenue, Suite 11-3
                    Miami, FL  33128

22
                    T: 305.523.5528
                    patricia_sanders@flsd.uscourts.gov.

23

24

25

10:29  1      THE COURT:  This Court calls Case No. 19-CV-22702;

10:29  2  Ginsberg, et al versus Vitamins Because, et al.

10:29  3      Counsel, please state your appearances beginning first

10:29  4  with the plaintiffs.

10:29  5      MR. BRODY:  Good morning, Your Honor, this is Jay

10:29  6  Brody on behalf of the plaintiffs.

10:29  7      MS. PEREZ:  Good morning; Barbara Perez on behalf of

10:29  8  the plaintiffs.

10:29  9      THE COURT:  Good morning, counsel.

10:29  10      MR. ADAR:  Good morning, Your Honor, Yaniv Adar on

10:29  11  behalf of defendants We Like Vitamins and Jolly Dollar, LLC.

10:29  12      MR. OPARIL:  Good morning. This is Richard Oparil from

10:29  13  Arnall Golden on behalf of GMAX, LLC.

11:57  14      THE COURT:  Good morning.

11:57  15      MR. LITTLE:  Brendan Little, Lippes Mathias Wexler

10:30  16  Friedman, on behalf of Asquared Brands, LLC.

10:29  17      MR. JOHNSON:  Good morning, Your Honor, this is David

10:29  18  Johnson, along with my partner Scott Anderson, and we represent

10:29  19  Vitamins Because and CT Health Solutions.

10:29  20      THE COURT:  Good morning, gentlemen.

10:29  21      MR. SORCE: Good morning. This is Joseph Sorce on

10:29  22  behalf of Healthy Way, LLC and Khakiware Inc.

10:49  23      THE COURT:  Good morning.  All right.  I think we are

10:49  24  missing one party.

10:49  25      Is Ms. Davis on the line?

11:03   1            All right.  If someone could please reach out to Ms.

11:03   2    Davis to see if she's having problems calling in.

11:03   3            MR. BRODY:  This is Jay Brody.  I believe Ms. Davis

11:03   4    filed a motion to withdraw as counsel.

11:03   5            THE COURT:  Yes, she has and it has not yet been

11:03   6    granted.

11:04   7            MR. BRODY:  This is Jay Brody again.  I understand,

11:04   8    Your Honor.  I can try to e-mail counsel right now.

11:04   9            THE COURT:  Yes, if you would.  She's probably getting

11:04  10    her response ready for tomorrow; but it would be good for her

11:04  11    to be on the call here today.

11:04  12            All right. While counsel is trying to reach Ms. Davis

11:04  13    let's have a brief conversation about where we are; and then I

11:04  14    wanted to see if we could not work out our next steps.

11:04  15            This is an action brought back in June of 2019, with

11:04  16    13 counts, regarding purchase of a dietary supplement.  It is a

11:04  17    class action matter.

11:04  18            Essentially, the plaintiffs claim defendants' products

11:05  19    are fraudulently labeled, defectively manufactured.

11:05  20            The first complaint was in June of 2019.  The first

11:05  21    amended complaint was in November of 2019, and the second

11:05  22    amended was just filed in June of this year.

11:05  23            All of the defendants have responded except for Ms.

11:05  24    Davis' client; and that response is due tomorrow.

11:05  25

11:05  1      So, in light of that, I thought we should be talking

11:05  2  about the motion to stay, which four of the defendants filed,

11:05  3  asking that no discovery be conducted pending resolution of

11:05  4  their motions to dismiss.

11:05  5      And there are two overarching reasons for their

11:05  6  request.  One is the lack of subject matter jurisdiction; that

11:06  7  the plaintiffs have not sufficiently alleged the appropriate

11:06  8  predicate for the amount in controversy under CAFA of the

11:06  9  $5,000,000.  The one paragraph advanced is conclusory.

11:06  10      Then the other request to stay has to do with the

11:06  11  arbitration of claim that Jolly Dollar has raised; that the

11:06  12  condition of use agreement that Amazon has for all of its

11:06  13  customers compels this matter to be brought to an arbitral body

11:06  14  and not engage in litigation.

11:06  15      So, I thought we could talk about that, and then

11:07  16  perhaps talk about what our next steps would be.

11:07  17      So the request to stay the case as to discovery

11:07  18  regarding arbitration is denied. Because under the standard of

11:07  19  "clearly meritorious" I don't think that the defendant will

11:07  20  prevail.

11:07  21      I looked at the "peek" that the Court advises me to do

11:07  22  in assessing whether a stay is appropriate, which I have done.

11:07  23  And I am referring to the Feldman case -- I do not know which

11:07  24  of you noted that -- where Courts take a preliminary peek at

11:08  25  the merits to see if either it is truly meritorious or case

11:05 1  dispositive. I found several cases from New Jersey, Wisconsin

11:08 2  and California that talk about the fact that there is nothing

11:08 3  to show that the defendants are third party beneficiaries of

11:08 4  the conditions of use.

11:08 5         And so absent any facts to suggest that the defendants

11:08 6  were intended to be a beneficiary of that, the arbitration

11:08 7  provisions aren't enforceable.  And that the doctrine of

11:08 8  equitable estoppel is really not viable.

11:08 9         And those cases are as follows:  Main versus Gateway,

11:09 10 2016 Westlaw 7626581; Shapiro versus Logitech, 2019 Westlaw

11:09 11 397989; Standard Process versus Antitren, LLC, 2020 Westlaw

11:09 12 553871.

11:09 13        And that brings me to the motion to dismiss, which is

11:09 14 kind of a little bit of a thicket.  So, the defendants say that

11:09 15 their attack is facial.  And the plaintiffs say, no, it is

11:09 16 factual; and since it is factual we will need to engage in

11:09 17 discovery.

11:09 18        On a facial claim it seems that the defendants will be

11:09 19 or might be -- because I am not ruling -- might be meritorious

11:10 20 because there are several cases, one from this District, which

11:10 21 suggests that merely stating the amount in controversy exceeds

11:10 22 $5,000,000 is not going to save your complaint.

11:10 23        And that would be Calmes versus Boca Country Club,

11:10 24 2017 Westlaw 4621112; Smith versus Kraft Foods, 2008 Westlaw

11:10 25 11337485; and Brophy versus Almanzar, 359 F.Supp.3d 917.

1    11:11   "Mere unsupported allegation is not enough."

2    11:11   That brings us to our issue, I think, because even if

3    11:11   I were to determine the defendants were correct on a "facial"

4    11:11   attack I do not believe that that would be case dispositive.

5    11:11   Because I think that I would give the plaintiffs one

6    11:11   final time -- let me be clear -- one final time to amend their

7    11:11   complaint.

8    11:11   Now, we could do that, and I could set a schedule.

9    11:11   But I wonder what happens then if the plaintiffs say, well,

10   11:11   here is our allegation, and if defendants then attack because

11   11:11   factually there is an issue -- we have our affidavit again --

12   11:12   then we would like more discovery to fix it.

13   11:12   Which would, of course, set us out yet again.

14   11:12   So, I bring this all to your attention to see if there

15   11:12   is something the parties can develop in terms of a timeline

16   11:12   that will address all of these questions -- without taking us

17   11:12   out too very long -- and satisfying the cases which I think

18   11:12   indicate that facially the plaintiffs have not met their burden

19   11:12   in their pleadings.

20   11:12   But if we talk in a factual context, then the Courts

21   11:13   have approved limited, limited discovery.

22   11:13   So let me ask the defense -- and I guess Vitamins

23   11:13   Because and CT Health since you are steering that ship -- what

24   11:13   your thoughts are.

25   11:13

11:13  1          MR. JOHNSON:  Your Honor, this is Dave Johnson again

11:13  2   for Vitamins Because and CT Health.

11:13  3          My partner Scott Anderson is going to address the

11:13  4   Court's concern in that regard in connection with the facial

11:13  5   attack.

11:13  6          THE COURT:  All right.

11:13  7          MR. JOHNSON: But I wanted to say before then that I

11:13  8   believe Your Honor has really captured the history and the

11:14  9   progress and the issues in the case.

11:14  10         The one thing that I wanted to bring to the Court's

11:14  11  attention is -- I know that there have been suggestions that

11:14  12  the defendants are trying to delay the case -- and Your Honor

11:14  13  recognize that the second amended complaint was not filed until

11:14  14  June.

11:14  15         But I wanted to point out that, yes, it's been over a

11:14  16  year since the original complaint was filed, but that's really

11:14  17  not the fault of the defendants.

11:14  18         With that, I would have Mr. Anderson address for Your

11:14  19  Honor the facial attack issue.

11:14  20         THE COURT:  Before I hear from Mr. Anderson, let me

11:14  21  expand on that a little.  First, I am not suggesting anyone has

11:14  22  done anything untoward in the timing of their pleadings.

11:14  23         But I think we need to all acknowledge that we do have

11:14  24  a solid year history here.  It is pretty clear now what the

11:15  25  issue may be, and so that is why I think we should all talk

11:15  1    about how to move forward.  Now that everyone has appeared --

11:15  2    with the exception of Inspire Now who must do so by tomorrow

11:15  3    or face default -- we need to figure out the most expeditious

11:15  4    way to move forward with this litigation.

11:15  5        So, I will hear from you now, Mr. Anderson.

11:15  6        MR. ANDERSON:  Good morning, again, Your Honor.

11:15  7        THE COURT:  Good morning.

11:15  8        MR. ANDERSON:  Your Honor, I think our motion to

11:15  9    dismiss is pretty clearly a facial attack on the allegation in

11:15  10   the complaint as to the amount in controversy.

11:15  11       Therefore, I do not think that any discovery should go

11:15  12   forward -- even limited jurisdictional discovery -- at this

11:16  13   time; at least until the Court rules.

11:16  14       I have not frankly researched the issue a whole lot.

11:16  15   I am unsure about the Court's ability to allow an amendment if

11:16  16   it does not have jurisdiction.  I just don't know.  I am not

11:16  17   saying it does not -- I just don't know the answer.

11:16  18       THE COURT:  Well, there would be an amendment because

11:16  19   of insufficient -- the idea is that that element has not been

11:16  20   sufficiently pled.  The only way I would not allow an amendment

11:16  21   is if there was some demonstration that it would be wholly

11:16  22   futile to do so; and I don't think we have that here.

11:16  23       MR. ANDERSON:  That is fair enough, Your Honor.  I do

11:16  24   think that it would be difficult to do limited jurisdictional

11:16  25   discovery under these circumstances given the allegations in

11:16  1    the complaint because I don't know what we would discover given

11:16  2    the lack of any specific facts or jurisdictional allegations.

11:17  3    I think conducting limited jurisdictional discovery at this

11:17  4    point would be very, very difficult.

11:17  5            THE COURT:  Well, I will talk to plaintiffs about that

11:17  6    in a moment.  Again, that is why I wanted to have this kind of

11:17  7    "next steps" discussion.

11:18  8            Because I am not talking about the parties having

11:18  9    three months of discovery.  I am not talking about some long

11:18  10   drawn out process.

11:18  11           And I think I found one case where there were

11:18  12   Interrogatories -- I think six Requests for Admissions -- or

11:18  13   something like that.

11:18  14           So, I am talking about limited discovery here.  And if

11:18  15   the parties could try to agree to something like that -- that

11:18  16   might obviate or address some of the concerns about sweeping,

11:18  17   expensive, all encompassing discovery.

11:18  18           Let me say this; I would only take us off a discovery

11:18  19   track, as it were, if there were to be some agreement in that

11:18  20   regard.

11:18  21           I know I am doing a little cart before horse here, but

11:18  22   I am also trying to give you all an idea of what I think is

11:19  23   possible as your next steps.

11:19  24           And perhaps that would encourage you all to come to

11:19  25   some plan that is satisfactory to both sides.

11:19  1        So, let me turn now to the plaintiffs.

11:19  2        MR. BRODY:  Your Honor, this is Jay Brody for the

11:19  3   plaintiffs.  I think it is important that everyone understand

11:19  4   that a lot of the claims...

11:19  5        (INAUDIBLE COMMENTS)

11:19  6        THE COURT REPORTER:  I did not understand what counsel

11:19  7   just said.

11:19  8        THE COURT:  I apologize to Ms. Sanders because I did

11:19  9   not give these instructions at the outset.

11:19  10       We are having this hearing by phone with multiple

11:19  11  attorneys, which is very difficult for the court reporter, so

11:19  12  it is important that everyone speak clearly and in a voice loud

11:19  13  enough to be heard over the phone so that it can be understood

11:19  14  and taken down in an accurate manner.

11:19  15       All right. You may continue.

11:19  16       MR. BRODY:  I apologize, Your Honor.  Again, this is

11:19  17  Jay Brody for the plaintiffs.

11:20  18       I think a lot of the claims which plaintiffs have set

11:20  19  forth in their complaint can be properly termed -- as I believe

11:20  20  in the Wiggins case -- as claims for an indeterminant amount of

11:20  21  damages.

11:20  22       And the reason it is for an indeterminant amount of

11:20  23  damages is because plaintiffs obviously do not have the sales

11:20  24  information at this time.

11:20  25

11:20  1       That was requested in discovery, and obviously that

11:20  2   discovery has not been produced yet, and that is a lot of why

11:20  3   we are here today.

11:20  4       And so in order for the plaintiffs to even have an

11:20  5   opportunity to put a monetary number on the claim -- for a lot

11:20  6   of the claims -- they would need that sales information.

11:20  7       As well as the class discovery -- the information and

11:20  8   records necessary to ascertain the class -- if we want to put a

11:20  9   more determinant number on the actual damages we will need to

11:21  10  know how much of the subject product was sold and at what price

11:21  11  it was sold.

11:21  12      And we would also need to know from what states the

11:21  13  purchasers -- the putative class members -- were from.  That

11:21  14  would go a very long way to help us determine and put a number

11:21  15  on the amount of statutory damages -- which has been put into

11:21  16  controversy in this case.

11:21  17      By way of example, plaintiffs assert amongst other

11:21  18  statutory damages -- statutory damages under New York General

11:21  19  Business Law 350.  That statute requires defendants to pay $500

11:21  20  for every act of deception.

11:21  21      It is clear that mislabeling is included under that

11:21  22  statute.  Plaintiffs would need to know how many bottles of the

11:21  23  subject products were sold in New York in order to put a number

11:21  24  on those statutory damages.

11:22  25

1    11:22    THE COURT:  I am going to cut you off because I think

2    11:22    your argument goes to a scope question.  But certainly the CAFA

3    11:22    did not anticipate a scenario where a class action allegation

4    11:22    was brought invoking the jurisdiction of the Court -- where the

5    11:22    plaintiffs said in response to a facial attack of the complaint

6    11:22    we need discovery because we just could not give you any more

7    11:22    factual predicate.

8    11:22    While I have acknowledged that there are cases where

9    11:23    the Court has found that limited discovery was appropriate, as

10   11:23    to the jurisdictional discovery, the idea that there is no

11   11:23    factual framework -- in the light most favorable or reasonable

12   11:23    inference -- in the pleadings to get us to the five million; I

13   11:23    am a little troubled by that.

14   11:23    I am troubled equally by the defendants telling me it

15   11:24    is only a facial attack; and then to be given an affidavit

16   11:24    which clearly is outside the four corners of the complaint.

17   11:24    I guess this is my way of saying it is time to join

18   11:24    the issues, it is time to articulate them, and it is time for

19   11:24    us to determine -- at least from an elements perspective --

20   11:24    have plaintiffs pled sufficiently, and if you have not what we

21   11:24    do next.

22   11:24    And if I give you the opportunity to amend, are we

23   11:24    still going to have this conversation about jurisdictional

24   11:24    discovery. Because if that's the case, then maybe you need to

25   11:24    talk about limited jurisdictional discovery.

11:25 1    Which should, again, address the defendants' concerns

11:25 2  about cost but also address the plaintiffs' legitimate request

11:25 3  consonant with the case law.

11:25 4    MR. BRODY:  Your Honor, this is Jay Brody again.  I

11:25 5  think if we limited discovery at this time to just the sales

11:25 6  information -- I think that would be sufficient for purposes of

11:25 7  the re-pleading.

11:25 8    Because, again, a lot of the damages are indeterminate

11:25 9  punitive damages; and those are things that will have to be

11:25 10  estimated anyway.

11:25 11    THE COURT:  When you say sales information what do you

11:25 12  mean? Because there is this affidavit that says as to the sales

11:26 13  information we barely get to 3.9 million.

11:26 14    So, what else would you need?

11:26 15    MR. BRODY:  Well, Your Honor, first of all, I would

11:26 16  like to note that I believe that the affidavit is demonstrably

11:26 17  untrue.

11:26 18    And we attached an exhibit showing that the price

11:26 19  points that the defendant Mr. Chapman relied upon in the

11:26 20  affidavit were clearly wrong and that calculation was clearly

11:26 21  under-estimated....

22    THE COURT REPORTER:  Judge, I'm sorry.

23    THE COURT:  Slow down, Mr. Brody.  Remember this is

24  difficult enough by phone.

25

1          MR. BRODY:  My apologies, Your Honor.

2          THE COURT:  I understand it's difficult. You may

3    continue.

4          MR. BRODY: Just simply put; I do not believe that they

5    are accurate at all.  And, in fact, some of the price points

6    which were relied upon in that affidavit came out to be around

7    $21.

8          And if Your Honor were to just go on Amazon today you

9    would see that they are being priced now at over $30.  So some

10   of that information is demonstrably untrue and should not be

11   credited by the Court.

12         THE COURT:  Well, that brings up the notion that you

13   are now -- you are asking me to weigh current price points and

14   try to determine the credibility of the affidavits and all of

15   that, and that is of course an exercise for a later part of the

16   litigation.

17         But what I need to know right now is upon what you

18   premise your assertions that this is a class action, and that

19   it fulfills the $5,000,000 prerequisite.

20         So I am letting you know my thoughts right now -- that

21   in a facial attack context I do not believe that one paragraph

22   does it.

23         And Assuming Inspire Now files tomorrow we would then

24   be ready -- and, Ms. Davis, are you now on the line?

25

11:28  1          MS. DAVIS:  This is Catherine Davis, Your Honor. I am

11:28  2     on the line.

11:28  3          THE COURT:  Good morning, Ms. Davis.

11:28  4          MS. DAVIS:  Your Honor, I apologize for getting on

11:28  5     late.

11:28  6          THE COURT:  No, I understand.  So, what I am saying is

11:28  7     if Inspire's responsive pleading were to be filed tomorrow and

11:28  8     everything is then joined, I do not want to be in a position

11:28  9     where we are going to keep coming back here in some way or

11:28  10    another.

11:28  11         So if I were to allow the plaintiffs to amend, I would

11:29  12    only want to hear from the defense on this one issue. This is

11:29  13    the only issue that I think potentially puts the request for

11:29  14    stay in play.

11:29  15         So, this sort of vacillation between, well, it's the

11:29  16    facial but then it is kind of factual; I am not really sure how

11:29  17    to address the hybrid nature of the argument.

11:29  18         MR. ANDERSON:  Your Honor, this is Scott Anderson. I

11:29  19    think that if plaintiffs were to file an amended complaint that

11:29  20    provided additional jurisdictional allegations that we would be

11:29  21    amenable to working with them on very limited jurisdictional

11:29  22    discovery.

11:29  23         THE COURT:  Okay.

11:29  24         MR. ANDERSON:  And to the extent we can work that out

11:29  25    Your Honor -- and, you know, if we needed to perhaps we could

11:30   1   have a very narrow hearing on the issue, about how limited, if

11:30   2   the parties can't agree.

11:30   3           Thank you, Your Honor.

11:30   4           THE COURT:  Thank you, Mr. Anderson.

11:30   5           All right.  That sounds fairly promising.

11:30   6           And let me say this to plaintiffs; I am not giving

11:30   7   your position away or anything like that -- and I understand

11:30   8   that you might have questions about that -- but I think that is

11:30   9   something that I would likely consider.

11:30   10          And so if I were to give you a chance to amend with

11:30   11   regard to the class action amount in controversy -- and we have

11:30   12   been at this for a while now -- how long do you think you would

11:30   13   need to do that, Mr. Brody?

11:30   14          Would two weeks be sufficient?

11:30   15          MR. BRODY:  Your Honor, as far as just drafting the

11:31   16   complaint -- I think that two weeks would certainly be enough.

11:31   17          THE COURT:  All right.

11:31   18          MR. BRODY: And as far as the limited jurisdictional

11:31   19   discovery, Your Honor, I think if the parties can agree that

11:31   20   defendants should produce the sales records and just the sales

11:31   21   records, without anything else, I think that be sufficient.

11:31   22          If that is what the defendants are now agreeing to

11:31   23   over the phone here today then I think the parties can move

11:31   24   forward on that basis.

11:31   25

THE COURT: Well, let's start with the premise that you all are, in fact, willing to talk about going forward on some limited jurisdictional discovery after of course, Mr. Brody, you replead.

And let's say I read it -- and of course I don't know yet because I have not read it -- but let's say I read it, and I go back to the cases that I mentioned, and I say, okay, here we go, we are fine.

But if not then perhaps I could get you all back on the line so we could have some conversation about what in the interim you all have talked -- the contingency of -- in terms of a limited jurisdictional discovery period.

Although let me say that this is still fluid, and it does not have a lot of structure, but it is something in terms of direction.

Does that comport with everyone's -- what the parties are trying to do at this point?

MR. BRODY: Jay Brody on behalf of plaintiffs, your Honor.  That would certainly be acceptable to plaintiffs.

THE COURT:  All right.

MR. BRODY: I would just give the Court a heads-up in terms of the complaint -- if we were to be redrafting the complaint without the benefit of the limited discovery before we redrafted it -- we would have to be relying upon reasonable estimations and reasonable inferences.

11:33  1    Which I do believe is clearly permitted under the case

11:33  2  law; but I just want the Court to understand that the numbers

11:33  3  we would be asserting in our redrafting of the complaint would

11:33  4  be reasonable estimations made by reasonable inferences.

11:33  5    THE COURT:  I understand.

11:33  6    Let me hear from defendants.

11:33  7    MR. ANDERSON:  Your Honor, this is Scott Anderson on

11:33  8  behalf of defendants.  I want to make clear we are certainly

11:33  9  amenable to the Court's suggestion of the limited discovery --

11:33  10  but the limited discovery would of course depend greatly upon

11:33  11  what the amendment says.

11:34  12    THE COURT:  I understand.  And at this point what I am

11:34  13  looking to in terms of amendment is a little bit more of a

11:34  14  tighter descriptor -- understanding of course the "reasonable

11:34  15  inference" and "light most favorable" and all of that.

11:34  16    But I would like a little more information in that

11:34  17  regard -- being that we are a year out I would like more of a

11:34  18  robust description than what we have now.

11:34  19    UNIDENTIFIED SPEAKER:  Yes, Your Honor.  We can

11:34  20  certainly do a more robust description.

11:34  21    Is your Honor requiring or looking for us to put an

11:35  22  exact monetary value explanation --

11:35  23    THE COURT:  I don't that that's necessary, but if you

11:35  24  have one that would be helpful.  But just saying it is more

11:35  25  than $5,000,000 does not give me as much to work with in the

11:35  1  analysis that the defendants have advanced.  If you were to say

11:35  2  something like, a preliminary review of the materials suggests

11:35  3  that it would be X million, you are not wedded to that amount,

11:35  4  but that would be helpful.

11:35  5          And so if that is what you believe right now based

11:35  6  upon a good faith review of the discovery and the case then

11:35  7  that would be permissible.

11:35  8          UNIDENTIFIED SPEAKER.  Yes, Your Honor.  We will work

11:35  9  with what we have.

11:35  10          THE COURT:  I appreciate that.

11:36  11          All right.  Is there anything else any of the other

11:36  12  parties would like to take up or believe we need to address at

11:36  13  this time?

11:36  14           As I indicated earlier to Mr. Adar, I don't see the

11:36  15  arbitration matter as being fruitful at this point -- certainly

11:36  16  not on the motion to stay -- and so unless something else is

11:36  17  brought to my attention I am pretty certain you will remain

11:36  18  with us.

11:36  19          MR. ADAR:  Your Honor, if I may just briefly touch

11:36  20  upon that.

11:36  21          THE COURT:  Yes.

11:36  22          MR. ADAR:  I have not had an opportunity to review the

11:36  23  cases that the Court referenced.  I just want to clarify for

11:36  24  purposes of our motion that we are...

11:36  25

1      THE COURT REPORTER: I'm sorry, Judge...

2      THE COURT:  Counsel, if you would please slow down,

3  both for the benefit of the court reporter as well as the

4  record being made.

5      MR. ADAR:  I apologize, Your Honor.

6      Your Honor, what I was saying is that we are not

7  relying on the conditions of use, we are relying on the terms

8  associated with the fulfilled by Amazon program.

9      Unlike Logitech, who essentially runs (UNINTELLIGIBLE)

10  by Amazon and administers their own products and sells their

11  own products.

12      In this instance Jolly Dollar has advanced testimony

13  and evidence that shows that it exclusively works through

14  Amazon, and Amazon handles all logistics for the sales.

15      We believe that that distinction is important and ask

16  Your Honor to consider that before you rule on the motion to

17  compel (sic).

18      Also, Your Honor, I did note that we moved to dismiss

19  for lack of subject matter jurisdiction, and I just want to

20  clarify that we are not making the routine Bristol Myers Squibb

21  argument that Your Honor has likely considered and rejected

22  many times.

23      We are not saying that the Court lacks subject matter

24  jurisdiction over foreign defendant or nationwide class action,

25  but rather here the only claim against Jolly Dollar is by a New

11:38  1   York resident.  Jolly Dollar is a Maryland Corporation, and so

11:38  2   pursuant to Bristol Myers Squibb and the other cases that have

11:38  3   interpreted that issue, we believe that the Court lacks subject

11:27  4   matter jurisdiction -- or personal jurisdiction -- over Jolly

11:38  5   Dollar.

11:38  6          So we do ask the Court to consider it.  Regarding the

11:38  7   motion to stay, we hear Your Honor loud and clear, but we just

11:38  8   wanted to make sure there was not a waiver of our right to

11:38  9   compel arbitration.

11:38  10         So we will proceed with discovery along with the rest

11:38  11  of the defendants; and understand Your Honor's ruling.

11:38  12         THE COURT:  And you were correct to bring up your

11:38  13  position and clarify it as to the Maryland, New York matter.

11:38  14         I was trying to thread the needle here as to why a

11:38  15  motion to stay was not appropriate, and I had focused on the

11:39  16  arbitration portion, and I was not ruling on the other issues

11:39  17  that you or the other defendants brought up.

11:39  18         I have not addressed that yet.  And so I was just --

11:39  19  in the context of the motion to stay -- focused on those two

11:39  20  arguments.

11:39  21         But I do understand that your argument is based on --

11:39  22  I think I alluded to it as kind of an equitable estoppel.

11:39  23         MR. ADAR:  That is correct, Your Honor.  We are not

11:39  24  relying on a third party beneficiary argument, we are relying

11:39  25  exclusively on equitable estoppel.

11:39  1          THE COURT:  As far as I have been able to ascertain

11:40  2    that does not get you over the finish line, as it were, with

11:40  3    regard to a motion to stay or even a motion to dismiss.  And I

11:40  4    think I gave you those three cases.

11:40  5          MR. ADAR: Yes, Your Honor.

11:40  6          THE COURT:  When I do finally enter an order or bring

11:40  7    you back to deliver the "omnibus order" on motions to dismiss,

11:40  8    I will make it clear.

11:40  9          All right. Is there  anything else I can address on

11:40  10   behalf of any of the parties?

11:40  11         And, Ms. Davis, I will take up your motion to withdraw

11:41  12   after I hear from Inspire Now tomorrow.

11:41  13         MS. DAVIS:  Thank you, Your Honor, I was going to

11:41  14   bring that up.  I am glad you clarified it.

11:41  15         THE COURT:  Once I have their responsive pleading in

11:41  16   hand then we can talk about withdrawal and other arrangements

11:41  17   that Inspire may wish to make.

11:41  18         MS. DAVIS:  Absolutely.  Thank you, Your Honor.

19         THE COURT:  All right.  Is there anything else before

20   we recess this matter?

21         MR. OPARIL:  Your Honor, just one thing...

22         THE COURT:  Yes.  And if you would give us your name

23   for benefit of the record.

11:41  24         MR. OPARIL:  This is Richard Oparil for GMAX.

11:41  25         THE COURT:  Yes, Mr. Oparil.

11:41  1          MR. OPARIL: GMAX certainly understands and agrees to

11:41  2   what the Court has suggested.

11:41  3          I just wanted to clarify that -- as to the discovery

11:41  4   responses that are currently due tomorrow -- I just wanted to

11:42  5   make clear that given what Your Honor has said and what the

11:42  6   parties have said that we do not have to produce discovery

11:42  7   tomorrow.

11:42  8          We have Interrogatories responses and document request

11:42  9   responses that are due; so I was just trying to determine if

11:42  10  that will be due as well.

11:42  11         THE COURT:  I'm not sure what it is you are asking

11:42  12  since I am not the one handling these matters.  But since we

11:42  13  are talking 24 hours before -- I assume that you are ready to

11:42  14  respond and you just wanted to know you should respond.

11:42  15         I'm not sure what you are asking me here.

11:42  16         MR. OPARIL:  Well, Your Honor, the answer to that is

11:42  17  we are not entirely prepared to respond so I would have to

11:42  18  respond...

11:42  19         (UNINTELLIGIBLE FOR THE RECORD)

11:42  20         THE COURT REPORTER: Judge, I am having a problem

11:42  21  hearing.  Counsel is fading in and out.

11:42  22         THE COURT:  You are breaking up.  I cannot really hear

11:42  23  you either. I don't know if you are on speaker or what is going

11:42  24  on with your connection.

11:42  25

11:43  1          MR. OPARIL:  I do not have the best connection.

11:43  2          THE COURT: If you would please speak directly into the

11:43  3  phone as loudly as you can.

11:43  4          MR. OPARIL:  Is that better?

11:43  5          THE COURT:  A little bit.

11:43  6          MR. OPARIL:  Your Honor, I was saying that we are not

11:43  7  prepared to respond to those yet, and if we were going to have

11:43  8  to respond I would request at least an additional week...

11:43  9          THE REPORTER:  Judge, I'm sorry.  Counsel is fading in

11:43  10 and out again.

11:43  11         THE COURT:  I'm not sure what is happening on your

11:43  12 end, counsel, but we are having difficulty hearing you.

11:43  13         Let me say this, you have had my scheduling order for

11:47  14 some time -- this case has been around for a year now -- so it

11:47  15 is not appropriate for you to come in the day before something

11:47  16 is due and say, oh, well, I need to ask for more time.

11:47  17         That's not the way it works.  If something is due and

11:43  18 you need more time to comply something should have been filed,

11:43  19 at the beginning of the week at least, to let me know that that

11:44  20 was an issue.

11:44  21         And really; this is something that you should have

11:44  22 taken up with Judge Torres since he is the one handling these

11:44  23 matters.

11:50  24         That is not why I convened this hearing today. So we

11:50  25 have had about a 45 minute discussion about where I see us

11:50  1  going in this case and you now spring on me the fact that

11:50  2  discovery is due tomorrow and you want me to give you more

11:50  3  time.

11:50  4          Again, that is not how this works.

11:45  5          MR. OPARIL:  Well maybe I was not clear then about

11:45  6  what Your Honor is ruling -- if there is going to be a stay --

11:45  7  is there going to be a stay of discovery while plaintiffs file

11:45  8  their third amended complaint?

12:01  9          And then we talk about any jurisdictional discovery

12:01  10  that is needed at that point -- was that the Court's ruling?

12:01  11          Because the discovery request that we have -- I think

12:01  12  all of the defendants perhaps now have -- that goes to all of

12:01  13  the issues in the case.

12:01  14          MR. BRODY:  Your Honor, this is Jay Brody for the

11:46  15  plaintiffs.

11:46  16          THE COURT:  Yes.

11:46  17          MR. BRODY:  I would just note, Your Honor, that I

11:46  18  believe the discovery responses would go a very long way in

11:46  19  terms of helping plaintiffs formulate a third amended complaint

11:46  20  which would comport with the directions of the Court in this

11:46  21  conference.

11:46  22          And so to the extent that we push that discovery down

11:46  23  the road it kind of brings us to these issues where it will be

11:46  24  more and more difficult for plaintiffs to give to Your Honor a

11:46  25  reasonable explanation of the amount in controversy.

11:46   1          THE COURT:  All right. What is it you are prepared to

11:46   2   produce tomorrow, Mr. Oparil?

11:47   3          MR. OPARIL:  We will have written responses -- we will

11:47   4   not have a significant amount of documents to produce.

11:47   5          Again, part of the reason for limiting jurisdictional

11:47   6   discovery to jurisdictional issues is -- it would of course be

11:47   7   significantly more focused than all of the other requests that

11:47   8   we have to respond to.

11:47   9          THE COURT:  Are all the other defendants in the same

11:47   10  posture of having discovery due tomorrow?

11:47   11         MR. ADAR:  Your Honor, this is Yaniv Adar.  I would

11:47   12  like to add -- at least I hope -- some clarity as to what it

11:47   13  was that triggered the language.

11:47   14         THE COURT:  Sure.

11:47   15         MR. ADAR: Judge Torres held a telephonic hearing in

11:47   16  this matter. And at that hearing Judge Torres basically said

11:47   17  his hands were tied because he does not have any guidance from

11:48   18  the District Court, and he does not have the authority to stay

11:48   19  discovery.

11:48   20         So, then what he orally ordered -- and this was my

11:48   21  understanding of his ruling -- he said he did not want things

11:48   22  to drag along; so he asked the parties to at a minimum submit

11:48   23  written responses by tomorrow -- not documents -- he made that

11:48   24  clear in the order.

11:48   25

11:48  1       So that if there are any objections that we can get

11:48  2  those resolved.

11:48  3       THE COURT:  Yes.

11:48  4       MR. ADAR: Plaintiffs' counsel and Jolly Dollar have

11:48  5  already been conferring -- and have conferred in good faith --

11:48  6  regarding objections we've already served.

11:48  7       So I just want to be clear, the deadline tomorrow is

11:48  8  not pursuant to the Federal Rules of Civil Procedure, it is

11:48  9  pursuant to a tentative ruling from Judge Torres that was

11:48  10  entered with the understanding that you were not going to

11:48  11  intervene.

11:48  12       And I think the State of the case was in a little bit

11:48  13  of a flux when Your Honor set down the telephonic hearing.

11:48  14       THE COURT:  Right.

12:16  15       MR. ADAR:  So tomorrow -- my understanding is that

11:48  16  defendants only have an obligation pursuant to Judge Torres'

11:49  17  oral order to respond in writing with document production to

11:49  18  follow.

11:49  19       THE COURT:  Well, that does not sound like it was a

11:49  20  tentative order; it sounds like it is pretty straightforward.

11:49  21  So I would suggest that the written responses be provided.

11:49  22       If there are dates upcoming in the next month as to

11:49  23  documents and admissions perhaps you should let me know and/or

11:49  24  you could work it out in the discussion that you all are going

11:49  25  to have, and I could limit discovery to the question of the

11:49    1    five million.  But bringing this up now really does not help

11:50    2    this whole discussion.  Maybe it's my fault for trying, again,

11:50    3    to give you a heads-up about what I was looking at in this

11:50    4    case.

11:50    5         And so perhaps I should not have interfered whatsoever

11:50    6    and just let Judge Torres take it on. So, if you've got written

11:50    7    responses due tomorrow then that should be complied with.

11:50    8         MR. OPARIL: This is Rich Oparil.  We will serve the

11:50    9    responses, Your Honor.

11:50   10         MR. ADAR:  And, Your Honor, this is Yanir Adar.  For

11:50   11    the most part Your Honor's ruling is consistent with Judge

11:50   12    Torres -- he said we need to be able to get jurisdictional

11:51   13    discovery underway -- so it seems like based upon Your Honor's

11:51   14    ruling today and based on Judge Torres' oral ruling, which has

11:51   15    not been memorialized in writing yet, the parties will respond

11:51   16    to written discovery tomorrow.

11:51   17         And then will work in good faith to produce documents

11:51   18    consistent with the $5,000,000 issue.  That is my understanding

11:51   19    of the state of things.

11:51   20         THE COURT:  Again, if you are speaking with plaintiffs

11:51   21    and you have a plan in terms of time and scope, and you wish to

11:51   22    let me know that in order for me to adopt it, that is fine.

11:51   23         Or if you just want to keep me away from it, and not

11:51   24    meddle with what you are up to, that is fine as well.

11:51   25

11:51 1    As I said, I wanted to talk with you all to determine

11:52 2 the issues that are driving us right now; in order to try to

11:52 3 get a better sense of our next steps so that we can resolve

11:52 4 those issues.

11:52 5    UNIDENTIFIED SPEAKER:  Judge, I am a little confused

11:52 6 now. My understanding of what we agreed to was that plaintiffs

11:52 7 were going to file an amended complaint within the next two

11:52 8 weeks.

11:52 9    THE COURT:  Correct.

11:52 10    UNIDENTIFIED SPEAKER: To more artfully articulate the

11:52 11 basis for jurisdiction.

11:52 12    THE COURT:  Right.

11:52 13    UNIDENTIFIED SPEAKER: And that then we were going to

11:52 14 talk about coming to an agreement on very limited discovery on

11:52 15 the jurisdictional issues -- and either proceed based upon an

11:52 16 agreement or to bring that issue to the Court's attention to

11:52 17 figure out what that scope should be if we cannot reach some

11:52 18 agreement.

11:53 19    It seems to me that that is the appropriate way to

11:53 20 proceed and is not inconsistent with Judge Torres and his

11:53 21 approach to say, you know, stand down really on all of this

11:53 22 broad based discovery that the plaintiffs have served pending

11:53 23 the determination of the subject matter jurisdiction issue.

11:53 24    The whole point behind this is for -- my client is not

11:53 25 a huge company and there are limited resources.

11:53  1          So I would suggest that we go through the process that

11:53  2   was discussed here today and come to some agreement -- and then

11:53  3   deal with the broad based discovery after there has been some

11:53  4   determination of whether or not the Court has subject matter

11:53  5   jurisdiction.

11:53  6          THE COURT:  Here's the thing, counsel, I don't even

11:53  7   know what the discovery is that you are referring to since I

11:53  8   was not handling that portion of it.

11:53  9          Is there a docket entry that shows me what it is so

11:54  10  that I know what all of you have?  I have no idea what we are

11:54  11  even dealing with here.

11:54  12         I am now being told that you have things that are due

11:54  13  tomorrow -- and you want me to give you more time on something

11:54  14  that I am not even familiar with.

11:55  15         Is there a docket entry someone can take me to where I

11:55  16  can look at the scope of the Request for Production or as to

11:55  17  the Interrogatories, or any of that?

11:55  18         I don't have that here so I am not able to address

11:55  19  this issue. So I am going to ask you all talk to each other

11:55  20  after tomorrow's compliance -- which I thought we had just all

11:55  21  decided would happen -- and then have discussions about what is

11:55  22  the appropriate discovery going forward.

11:56  23         MR. OPARIL:  This is Richard Oparil for GMAX.  I do

11:56  24  not believe that copies of any of the discovery requests have

11:56  25  been filed in any of the Court's docket entries.

11:56  1      I will represent to you that it goes to all of the

11:56  2  issues in the case -- certainly well beyond what we would be

11:56  3  talking about for jurisdictional discovery.

11:56  4      THE COURT:  How many Interrogatories do you have to

11:56  5  answer by tomorrow?

11:56  6      Which I would imagine you have been working on.

11:56  7      MR. OPARIL:  Yes, I have.  And, Your Honor, there are

11:56  8  four Interrogatories (INAUDIBLE) 24 sub-parts, and then the

11:57  9  Request for Production is about 13 pages long.

11:57  10     THE COURT:  So then Mr. Adar was incorrect, there is

11:57  11  production that is owing?

11:50  12     MR. ADAR:  Your Honor, this is Yanir Adar.  It is the

11:57  13  Interrogatories and Requests for Production -- and I believe

11:57  14  that it is one through 17.

11:57  15     UNIDENTIFIED SPEAKER:  Your Honor, to clarify, my

11:57  16  understanding of Judge Torres' ruling was that we had to serve

11:57  17  written responses and objections to the outstanding discovery

11:57  18  requests -- which includes the requests for documents and the

11:57  19  Interrogatories.

11:57  20     However, he did not expect production of all of those

11:57  21  documents by the -- by October the 9th -- he just wanted to get

11:57  22  the ball rolling so that when the motion to stay was resolved

11:58  23  we did not have to begin that whole process.

11:58  24     THE COURT:  All right. I am not comfortable weighing

11:58  25  in on this.

11:58 1          Again, I don't know enough about what you all have

11:58 2    discussed with Judge Torres to make any kind of a ruling, and

11:58 3    so I am declining to get involved at this point.

11:58 4          I understand that I have not given you a ruling on the

11:58 5    motions to dismiss, however, I have given you my thoughts on

11:58 6    what I think the issues are on the stay.

11:59 7          So that is a long way of saying right now if there is

11:59 8    an outstanding order from Judge Torres then it needs to be

11:59 9    complied with.

11:59 10         Whatever it is he ordered, and whatever the timeline,

11:59 11   then that is what the parties need to do.

12:01 12         All right. If there is nothing further then -- and I

12:01 13   rarely if ever do this -- but if for some reason the parties

12:01 14   believe you need for me to get you back on the line to deal

12:01 15   with some issue then I am available.

12:03 16         All right. Thank you for being available here today.

17   If there is nothing else we are adjourned.

18

19

20

21

22

23

24

25

```
 1

 2                          -   -   -

 3                   C E R T I F I C A T E.

 4                          -   -   -

 5        This proceeding occurred during the COVID-19 pandemic

 6   and is therefore subject to the technological limitations of

 7   reporting remotely.

 8

 9                                  /S/PATRICIA SANDERS

10   _____              _____

11   DATE FILED                    PATRICIA SANDERS, RPR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## $

**$21** [1] - 14:7
**$30** [1] - 14:9
**$5,000,000** [5] - 4:9, 5:22, 14:19, 18:25, 28:18
**$500** [1] - 11:19

## /

**/S/PATRICIA** [1] - 33:9

## 1

**10-8-2020** [1] - 1:8
**11-3** [1] - 1:21
**11337485** [1] - 5:25
**13** [2] - 3:16, 31:9
**17** [1] - 31:14
**19-22702-CV-KMW** [1] - 1:2
**19-CV-22702** [1] - 2:1

## 2

**2008** [1] - 5:24
**2016** [1] - 5:10
**2017** [1] - 5:24
**2019** [4] - 3:15, 3:20, 3:21, 5:10
**2020** [1] - 5:11
**24** [2] - 23:13, 31:8

## 3

**3.9** [1] - 13:13
**305.523.5528** [1] - 1:22
**33128** [1] - 1:21
**350** [1] - 11:19
**359** [1] - 5:25
**397989** [1] - 5:11

## 4

**400** [1] - 1:21
**45** [1] - 24:25
**4621112** [1] - 5:24

## 5

**553871** [1] - 5:12

## 7

**7626581** [1] - 5:10

## 9

**917** [1] - 5:25
**9th** [1] - 31:21

## A

**ability** [1] - 8:15
**able** [3] - 22:1, 28:12, 30:18
**absent** [1] - 5:5
**absolutely** [1] - 22:18
**acceptable** [1] - 17:19
**accurate** [2] - 10:14, 14:5
**acknowledge** [1] - 7:23
**acknowledged** [1] - 12:8
**act** [1] - 11:20
**action** [6] - 3:15, 3:17, 12:3, 14:18, 16:11, 20:24
**actual** [1] - 11:9
**Adar** [6] - 1:15, 2:10, 26:11, 28:10, 31:10, 31:12
**adar** [1] - 19:14
**ADAR** [12] - 2:10, 19:19, 19:22, 20:5, 21:23, 22:5, 26:11, 26:15, 27:4, 27:15, 28:10, 31:12
**add** [1] - 26:12
**additional** [2] - 15:20, 24:8
**address** [10] - 6:16, 7:3, 7:18, 9:16, 13:1, 13:2, 15:17, 19:12, 22:9, 30:18
**addressed** [1] - 21:18
**adjourned** [1] - 32:17
**administers** [1] - 20:10
**Admissions** [1] - 9:12
**admissions** [1] - 27:23
**adopt** [1] - 28:22
**advanced** [3] - 4:9, 19:1, 20:12
**advises** [1] - 4:21
**affidavit** [6] - 6:11, 12:15, 13:12, 13:16, 13:20, 14:6
**affidavits** [1] - 14:14
**agree** [3] - 9:15, 16:2, 16:19
**agreed** [1] - 29:6
**agreeing** [1] - 16:22
**agreement** [6] - 4:12,

9:19, 29:14, 29:16, 29:18, 30:2
**agrees** [1] - 23:1
**al** [4] - 1:3, 1:6, 2:2
**allegation** [4] - 6:1, 6:10, 8:9, 12:3
**allegations** [3] - 8:25, 9:2, 15:20
**alleged** [1] - 4:7
**allow** [3] - 8:15, 8:20, 15:11
**alluded** [1] - 21:22
**Almanzar** [1] - 5:25
**Amazon** [6] - 4:12, 14:8, 20:8, 20:10, 20:14
**amenable** [2] - 15:21, 18:9
**amend** [4] - 6:6, 12:22, 15:11, 16:10
**amended** [7] - 3:21, 3:22, 7:13, 15:19, 25:8, 25:19, 29:7
**amendment** [5] - 8:15, 8:18, 8:20, 18:11, 18:13
**amount** [10] - 4:8, 5:21, 8:10, 10:20, 10:22, 11:15, 16:11, 19:3, 25:25, 26:4
**analysis** [1] - 19:1
**anderson** [3] - 7:20, 8:5, 16:4
**Anderson** [6] - 1:17, 2:18, 7:3, 7:18, 15:18, 18:7
**ANDERSON** [6] - 8:6, 8:8, 8:23, 15:18, 15:24, 18:7
**ANN** [1] - 1:3
**answer** [3] - 8:17, 23:16, 31:5
**anticipate** [1] - 12:3
**anyway** [1] - 13:10
**apologies** [1] - 14:1
**apologize** [4] - 10:8, 10:16, 15:4, 20:5
**appearances** [2] - 1:11, 2:3
**appeared** [1] - 8:1
**appreciate** [1] - 19:10
**approach** [1] - 29:21
**appropriate** [7] - 4:7, 4:22, 12:9, 21:15, 24:15, 29:19, 30:22
**approved** [1] - 6:21
**arbitral** [1] - 4:13
**arbitration** [6] - 4:11, 4:18, 5:6, 19:15,

21:9, 21:16
**are..** [1] - 19:24
**argument** [5] - 12:2, 15:17, 20:21, 21:21, 21:24
**arguments** [1] - 21:20
**Arnall** [1] - 2:13
**arrangements** [1] - 22:16
**artfully** [1] - 29:10
**articulate** [2] - 12:18, 29:10
**ascertain** [2] - 11:8, 22:1
**Asquared** [1] - 2:16
**assert** [1] - 11:17
**asserting** [1] - 18:3
**assertions** [1] - 14:18
**assessing** [1] - 4:22
**associated** [1] - 20:8
**assume** [1] - 23:13
**Assuming** [1] - 14:23
**attached** [1] - 13:18
**attack** [9] - 5:15, 6:4, 6:10, 7:5, 7:19, 8:9, 12:5, 12:15, 14:21
**attention** [4] - 6:14, 7:11, 19:17, 29:16
**attorneys** [1] - 10:11
**authority** [1] - 26:18
**available** [2] - 32:15, 32:16
**Avenue** [1] - 1:21

## B

**ball** [1] - 31:22
**Barbara** [2] - 1:13, 2:7
**barely** [1] - 13:13
**based** [7] - 19:5, 21:21, 28:13, 28:14, 29:15, 29:22, 30:3
**basis** [2] - 16:24, 29:11
**BECAUSE** [1] - 1:6
**begin** [1] - 31:23
**beginning** [2] - 2:3, 24:19
**behalf** [9] - 2:6, 2:7, 2:11, 2:13, 2:16, 2:22, 17:18, 18:8, 22:10
**behind** [1] - 29:24
**beneficiaries** [1] - 5:3
**beneficiary** [2] - 5:6, 21:24
**benefit** [3] - 17:23, 20:3, 22:23
**best** [1] - 24:1
**better** [2] - 24:4, 29:3

**between** [1] - 15:15
**beyond** [1] - 31:2
**bit** [4] - 5:14, 18:13, 24:5, 27:12
**Boca** [1] - 5:23
**body** [1] - 4:13
**bottles** [1] - 11:22
**Brands** [1] - 2:16
**breaking** [1] - 23:22
**Brendan** [2] - 1:16, 2:15
**brief** [1] - 3:13
**briefly** [1] - 19:19
**bring** [6] - 6:14, 7:10, 21:12, 22:6, 22:14, 29:16
**bringing** [1] - 28:1
**brings** [4] - 5:13, 6:2, 14:12, 25:23
**Bristol** [2] - 20:20, 21:2
**broad** [2] - 29:22, 30:3
**Brody** [10] - 1:12, 2:6, 3:3, 3:7, 10:2, 10:17, 13:4, 17:3, 17:18, 25:14
**brody** [1] - 13:23, 16:13
**BRODY** [15] - 2:5, 3:3, 3:7, 10:2, 10:16, 13:4, 13:15, 14:1, 14:4, 16:15, 16:18, 17:18, 17:21, 25:14, 25:17
**Brophy** [1] - 5:25
**brought** [5] - 3:15, 4:13, 12:4, 19:17, 21:17
**burden** [1] - 6:18
**Business** [1] - 11:19
**BY** [1] - 1:20

## C

**CAFA** [2] - 4:8, 12:2
**calculation** [1] - 13:20
**California** [1] - 5:2
**Calmes** [1] - 5:23
**cannot** [2] - 23:22, 29:17
**captured** [1] - 7:8
**cart** [1] - 9:21
**case** [20] - 1:2, 4:17, 4:23, 4:25, 6:4, 7:9, 7:12, 9:11, 10:20, 11:16, 12:24, 13:3, 18:1, 19:6, 24:14, 25:1, 25:13, 27:12, 28:4, 31:2
**Case** [1] - 2:1

**cases** [9] - 5:1, 5:9, 5:20, 6:17, 12:8, 17:7, 19:23, 21:2, 22:4
**Catherine** [1] - 15:1
**catherine** [1] - 1:18
**certain** [1] - 19:17
**certainly** [8] - 12:2, 16:16, 17:19, 18:8, 18:20, 19:15, 23:1, 31:2
**chance** [1] - 16:10
**Chapman** [1] - 13:19
**circumstances** [1] - 8:25
**Civil** [1] - 27:8
**claim** [5] - 3:18, 4:11, 5:18, 11:5, 20:25
**claims** [3] - 10:18, 10:20, 11:6
**claims..** [1] - 10:4
**clarified** [1] - 22:14
**clarify** [5] - 19:23, 20:20, 21:13, 23:3, 31:15
**clarity** [1] - 26:12
**class** [8] - 3:17, 11:7, 11:8, 11:13, 12:3, 14:18, 16:11, 20:24
**clear** [10] - 6:6, 7:24, 11:21, 18:8, 21:7, 22:8, 23:5, 25:5, 26:24, 27:7
**clearly** [7] - 4:19, 8:9, 10:12, 12:16, 13:20, 18:1
**client** [2] - 3:24, 29:24
**Club** [1] - 5:23
**comfortable** [1] - 31:24
**coming** [2] - 15:9, 29:14
**COMMENTS** [1] - 10:5
**company** [1] - 29:25
**compel** [2] - 20:17, 21:9
**compels** [1] - 4:13
**complaint** [19] - 3:20, 3:21, 5:22, 6:7, 7:13, 7:16, 8:10, 9:1, 10:19, 12:5, 12:16, 15:19, 16:16, 17:22, 17:23, 18:3, 25:8, 25:19, 29:7
**compliance** [1] - 30:20
**complied** [2] - 28:7, 32:9
**comply** [1] - 24:18
**comport** [2] - 17:16, 25:20
**concern** [1] - 7:4
**concerns** [2] - 9:16, 13:1
**conclusory** [1] - 4:9
**condition** [1] - 4:12
**conditions** [2] - 5:4, 20:7
**conducted** [1] - 4:3
**conducting** [1] - 9:3
**conference** [1] - 25:21
**conferred** [1] - 27:5
**conferring** [1] - 27:5
**confused** [1] - 29:5
**connection** [3] - 7:4, 23:24, 24:1
**consider** [3] - 16:9, 20:16, 21:6
**considered** [1] - 20:21
**consistent** [2] - 28:11, 28:18
**consonant** [1] - 13:3
**context** [3] - 6:20, 14:21, 21:19
**contingency** [1] - 17:11
**continue** [2] - 10:15, 14:3
**controversy** [6] - 4:8, 5:21, 8:10, 11:16, 16:11, 25:25
**convened** [1] - 24:24
**conversation** [3] - 3:13, 12:23, 17:10
**copies** [1] - 30:24
**CORI** [1] - 1:3
**corners** [1] - 12:16
**Corporation** [1] - 21:1
**correct** [4] - 6:3, 21:12, 21:23, 29:9
**cost** [1] - 13:2
**counsel** [12] - 2:3, 2:9, 3:4, 3:8, 3:12, 10:6, 20:2, 23:21, 24:9, 24:12, 27:4, 30:6
**Country** [1] - 5:23
**counts** [1] - 3:16
**course** [6] - 6:13, 14:15, 17:3, 17:5, 18:10, 18:14, 26:6
**court** [2] - 10:11, 20:3
**COURT** [63] - 1:1, 1:9, 2:1, 2:9, 2:14, 2:20, 2:23, 3:5, 3:9, 7:6, 7:20, 8:7, 8:18, 9:5, 10:6, 10:8, 12:1, 13:11, 13:22, 13:23, 14:2, 14:12, 15:3, 15:6, 15:23, 16:4, 16:17, 17:1, 17:20,
18:5, 18:12, 18:23, 19:10, 19:21, 20:1, 20:2, 21:12, 22:1, 22:6, 22:15, 22:19, 22:22, 22:25, 23:11, 23:20, 23:22, 24:2, 24:5, 24:11, 25:16, 26:1, 26:9, 26:14, 27:3, 27:14, 27:19, 28:20, 29:9, 29:12, 30:6, 31:4, 31:10, 31:24
**Court** [17] - 1:20, 2:1, 4:21, 8:13, 12:4, 12:9, 14:11, 17:21, 18:2, 19:23, 20:23, 21:3, 21:6, 23:2, 25:20, 26:18, 30:4
**Court's** [7] - 7:4, 7:10, 8:15, 18:9, 25:10, 29:16, 30:25
**Courts** [2] - 4:24, 6:20
**COVID-19** [1] - 33:5
**credibility** [1] - 14:14
**credited** [1] - 14:11
**CT** [3] - 2:19, 6:23, 7:2
**current** [1] - 14:13
**customers** [1] - 4:13
**cut** [1] - 12:1

**D**

**damages** [9] - 10:21, 10:23, 11:9, 11:15, 11:18, 11:24, 13:8, 13:9
**DATE** [1] - 33:11
**dates** [1] - 27:22
**Dave** [1] - 7:1
**David** [2] - 1:17, 2:17
**davis** [4] - 3:2, 3:3, 3:12, 15:3
**Davis** [5] - 1:18, 2:25, 14:24, 15:1, 22:11
**DAVIS** [4] - 15:1, 15:4, 22:13, 22:18
**Davis'** [1] - 3:24
**deadline** [1] - 27:7
**deal** [2] - 30:3, 32:14
**dealing** [1] - 30:11
**deception** [1] - 11:20
**decided** [1] - 30:21
**declining** [1] - 32:3
**default** [1] - 8:3
**defectively** [1] - 3:19
**defendant** [2] - 4:19, 13:19, 20:24
**defendants** [23] - 2:11, 3:23, 4:2, 5:3, 5:5, 5:14, 5:18, 6:3,
6:10, 7:12, 7:17, 11:19, 12:14, 16:20, 16:22, 18:6, 18:8, 19:1, 21:11, 21:17, 25:12, 26:9, 27:16
**Defendants** [1] - 1:14
**DEFENDANTS** [1] - 1:14
**defendants'** [2] - 3:18, 13:1
**defense** [2] - 6:22, 15:12
**delay** [1] - 7:12
**deliver** [1] - 22:7
**demonstrably** [2] - 13:16, 14:10
**demonstration** [1] - 8:21
**denied** [1] - 4:18
**description** [2] - 18:18, 18:20
**descriptor** [1] - 18:14
**determinant** [1] - 11:9
**determination** [2] - 29:23, 30:4
**determine** [6] - 6:3, 11:14, 12:19, 14:14, 23:9, 29:1
**develop** [1] - 6:15
**dietary** [1] - 3:16
**difficult** [6] - 8:24, 9:4, 10:11, 13:24, 14:2, 25:24
**difficulty** [1] - 24:12
**direction** [1] - 17:15
**directions** [1] - 25:20
**directly** [1] - 24:2
**discover** [1] - 9:1
**discovery** [53] - 4:3, 4:17, 5:17, 6:12, 6:21, 8:11, 8:12, 8:25, 9:3, 9:9, 9:14, 9:17, 9:18, 11:1, 11:2, 11:7, 12:6, 12:9, 12:10, 12:24, 12:25, 13:5, 15:22, 16:19, 17:3, 17:12, 17:23, 18:9, 18:10, 19:6, 21:10, 23:3, 23:6, 25:2, 25:7, 25:9, 25:11, 25:18, 25:22, 26:6, 26:10, 26:19, 27:25, 28:13, 28:16, 29:14, 29:22, 30:3, 30:7, 30:22, 30:24, 31:3, 31:17
**discussed** [2] - 30:2, 32:2
**discussion** [4] - 9:7, 24:25, 27:24, 28:2
**discussions** [1] - 30:21
**dismiss** [7] - 4:4, 5:13, 8:9, 20:18, 22:3, 22:7, 32:5
**dispositive** [2] - 5:1, 6:4
**distinction** [1] - 20:15
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [2] - 5:20, 26:18
**DIVISION** [1] - 1:2
**docket** [3] - 30:9, 30:15, 30:25
**doctrine** [1] - 5:7
**document** [2] - 23:8, 27:17
**documents** [6] - 26:4, 26:23, 27:23, 28:17, 31:18, 31:21
**Dollar** [7] - 2:11, 4:11, 20:12, 20:25, 21:1, 21:5, 27:4
**done** [2] - 4:22, 7:22
**down** [6] - 10:14, 13:23, 20:2, 25:22, 27:13, 29:21
**drafting** [1] - 16:15
**drag** [1] - 26:22
**drawn** [1] - 9:10
**driving** [1] - 29:2
**due** [10] - 3:24, 23:4, 23:9, 23:10, 24:16, 24:17, 25:2, 26:10, 28:7, 30:12
**during** [1] - 33:5

**E**

**e-mail** [1] - 3:8
**either** [3] - 4:25, 23:23, 29:15
**element** [1] - 8:19
**elements** [1] - 12:19
**encompassing** [1] - 9:17
**encourage** [1] - 9:24
**end** [1] - 24:12
**enforceable** [1] - 5:7
**engage** [2] - 4:14, 5:16
**enter** [1] - 22:6
**entered** [1] - 27:10
**entirely** [1] - 23:17
**entries** [1] - 30:25
**entry** [2] - 30:9, 30:15
**equally** [1] - 12:14
**equitable** [5] - 5:8, 21:22, 21:25

**ESQUIRE** [9] - 1:12, 1:13, 1:15, 1:16, 1:16, 1:17, 1:17, 1:18, 1:18
**essentially** [2] - 3:18, 20:9
**estimated** [1] - 13:10
**estimated...** [1] - 13:21
**estimations** [1] - 17:25, 18:4
**estoppel** [3] - 5:8, 21:22, 21:25
**et** [4] - 1:3, 1:6, 2:2
**evidence** [1] - 20:13
**exact** [1] - 18:22
**example** [1] - 11:17
**exceeds** [1] - 5:21
**except** [1] - 3:23
**exception** [1] - 8:2
**exclusively** [2] - 20:13, 21:25
**exercise** [1] - 14:15
**exhibit** [1] - 13:18
**expand** [1] - 7:21
**expect** [1] - 31:20
**expeditious** [1] - 8:3
**expensive** [1] - 9:17
**explanation** [2] - 18:22, 25:25
**extent** [2] - 15:24, 25:22

## F

**F.Supp.3d** [1] - 5:25
**face** [1] - 8:3
**facial** [1] - 5:15, 5:18, 6:3, 7:4, 7:19, 8:9, 12:5, 12:15, 14:21, 15:16
**facially** [1] - 6:18
**fact** [4] - 5:2, 14:5, 17:2, 25:1
**facts** [2] - 5:5, 9:2
**factual** [6] - 5:16, 6:20, 12:7, 12:11, 15:16
**factually** [1] - 6:11
**fading** [2] - 23:21, 24:9
**fair** [1] - 8:23
**fairly** [1] - 16:5
**faith** [3] - 19:6, 27:5, 28:17
**familiar** [1] - 30:14
**far** [3] - 16:15, 16:18, 22:1
**fault** [2] - 7:17, 28:2
**favorable** [2] - 12:11,

18:15
**Federal** [1] - 27:8
**Feldman** [1] - 4:23
**figure** [2] - 8:3, 29:17
**file** [3] - 15:19, 25:7, 29:7
**filed** [8] - 3:4, 3:22, 4:2, 7:13, 7:16, 15:7, 24:18, 30:25
**FILED** [1] - 33:11
**files** [1] - 14:23
**final** [2] - 6:6
**finally** [1] - 22:6
**fine** [3] - 17:8, 28:22, 28:24
**finish** [1] - 22:2
**first** [5] - 2:3, 3:20, 7:21, 13:15
**five** [2] - 12:12, 28:1
**fix** [1] - 6:12
**FL** [1] - 1:21
**FLORIDA** [1] - 1:1
**fluid** [1] - 17:13
**flux** [1] - 27:13
**focused** [3] - 21:15, 21:19, 26:7
**follow** [1] - 27:18
**follows** [1] - 5:9
**Foods** [1] - 5:24
**FOR** [3] - 1:12, 1:14, 23:19
**foreign** [1] - 20:24
**formulate** [1] - 25:19
**forth** [1] - 10:19
**forward** [6] - 8:1, 8:4, 8:12, 16:24, 17:2, 30:22
**four** [3] - 4:2, 12:16, 31:8
**framework** [1] - 12:11
**frankly** [1] - 8:14
**fraudulently** [1] - 3:19
**Friedman** [1] - 2:16
**fruitful** [1] - 19:15
**fulfilled** [1] - 20:8
**fulfills** [1] - 14:19
**futile** [1] - 8:22

## G

**Gateway** [1] - 5:9
**General** [1] - 11:18
**gentlemen** [1] - 2:20
**GINSBERG** [1] - 1:3
**Ginsberg** [1] - 2:2
**given** [6] - 8:25, 9:1, 12:15, 23:5, 32:4, 32:5
**glad** [1] - 22:14

**GMAX** [4] - 2:13, 22:24, 23:1, 30:23
**Golden** [1] - 2:13
**granted** [1] - 3:6
**greatly** [1] - 18:10
**guess** [2] - 6:22, 12:17
**guidance** [1] - 26:17

## H

**hand** [1] - 22:16
**handles** [1] - 20:14
**handling** [3] - 23:12, 24:22, 30:8
**hands** [1] - 26:17
**heads** [2] - 17:21, 28:3
**heads-up** [2] - 17:21, 28:3
**Health** [3] - 2:19, 6:23, 7:2
**Healthy** [1] - 2:22
**hear** [7] - 7:20, 8:5, 15:12, 18:6, 21:7, 22:12, 23:22
**heard** [1] - 10:13
**HEARING** [1] - 1:8
**hearing** [8] - 10:10, 16:1, 23:21, 24:12, 24:24, 26:15, 26:16, 27:13
**held** [1] - 26:15
**HELD** [1] - 1:8
**help** [2] - 11:14, 28:1
**helpful** [1] - 18:24, 19:4
**helping** [1] - 25:19
**history** [2] - 7:8, 7:24
**Honor** [55] - 2:5, 2:10, 2:17, 3:8, 7:1, 7:8, 7:12, 7:19, 8:6, 8:8, 8:23, 10:2, 10:16, 13:4, 13:15, 14:1, 14:8, 15:1, 15:4, 15:18, 15:25, 16:3, 16:15, 16:19, 17:19, 18:7, 18:19, 18:21, 19:8, 19:19, 20:5, 20:6, 20:16, 20:18, 20:21, 21:7, 21:23, 22:5, 22:13, 22:18, 22:21, 23:5, 23:16, 24:6, 25:6, 25:14, 25:17, 25:24, 26:11, 27:13, 28:9, 28:10, 31:7, 31:12, 31:15
**Honor's** [3] - 21:11, 28:11, 28:13
**HONORABLE** [1] - 1:9
**hope** [1] - 26:12
**horse** [1] - 9:21

**hours** [1] - 23:13
**huge** [1] - 29:25
**hybrid** [1] - 15:17

## I

**idea** [4] - 8:19, 9:22, 12:10, 30:10
**imagine** [1] - 31:6
**important** [3] - 10:3, 10:12, 20:15
**INAUDIBLE** [2] - 10:5, 31:8
**Inc** [1] - 2:22
**included** [1] - 11:21
**includes** [1] - 31:18
**inconsistent** [1] - 29:20
**incorrect** [1] - 31:10
**indeterminant** [1] - 10:20, 10:22
**indeterminate** [1] - 13:8
**indicate** [1] - 6:18
**indicated** [1] - 19:14
**inference** [2] - 12:12, 18:15
**inferences** [2] - 17:25, 18:4
**information** [8] - 10:24, 11:6, 11:7, 13:6, 13:11, 13:13, 14:10, 18:16
**Inspire** [4] - 8:2, 14:23, 22:12, 22:17
**Inspire's** [1] - 15:7
**instance** [1] - 20:12
**instructions** [1] - 10:9
**insufficient** [1] - 8:19
**intended** [1] - 5:6
**interfered** [1] - 28:5
**interim** [1] - 17:11
**interpreted** [1] - 21:3
**Interrogatories** [7] - 9:12, 23:8, 30:17, 31:4, 31:8, 31:13, 31:19
**intervene** [1] - 27:11
**invoking** [1] - 12:4
**involved** [1] - 32:3
**issue** [15] - 6:2, 6:11, 7:19, 7:25, 8:14, 15:12, 15:13, 16:1, 21:3, 24:20, 28:18, 29:16, 29:23, 30:19, 32:15
**issues** [11] - 7:9, 12:18, 21:16, 25:13, 25:23, 26:6, 29:2, 29:4, 29:15, 31:2,

32:6

## J

**Jay** [9] - 1:12, 2:5, 3:3, 3:7, 10:2, 10:17, 13:4, 17:18, 25:14
**Jersey** [1] - 5:1
**Johnson** [3] - 1:17, 2:18, 7:1
**JOHNSON** [3] - 2:17, 7:1, 7:7
**join** [1] - 12:17
**joined** [1] - 15:8
**Jolly** [7] - 2:11, 4:11, 20:12, 20:25, 21:1, 21:4, 27:4
**Joseph** [2] - 1:18, 2:21
**Judge** [16] - 13:22, 23:20, 24:9, 24:22, 26:15, 26:16, 27:9, 27:16, 28:6, 28:11, 28:14, 29:5, 29:20, 31:16, 32:2, 32:8
**JUDGE** [1] - 1:9
**Judge..** [1] - 20:1
**June** [4] - 3:15, 3:20, 3:22, 7:14
**jurisdiction** [10] - 4:6, 8:16, 12:4, 20:19, 20:24, 21:4, 29:11, 29:23, 30:5
**jurisdictional** [18] - 8:12, 8:24, 9:2, 9:3, 12:10, 12:23, 12:25, 15:20, 15:21, 16:18, 17:3, 17:12, 25:9, 26:5, 26:6, 28:12, 29:15, 31:3

## K

**KATHLEEN** [1] - 1:9
**keep** [2] - 15:9, 28:23
**Khakiware** [1] - 2:22
**kind** [6] - 5:14, 9:6, 15:16, 21:22, 25:23, 32:2
**Kraft** [1] - 5:24

## L

**labeled** [1] - 3:19
**lack** [3] - 4:6, 9:2, 20:19
**lacks** [2] - 20:23, 21:3
**language** [1] - 26:13
**late** [1] - 15:5
**Law** [1] - 11:19

**law** [2] - 13:3, 18:2
**least** [5] - 8:13, 12:19, 24:8, 24:19, 26:12
**legitimate** [1] - 13:2
**letting** [1] - 14:20
**light** [3] - 4:1, 12:11, 18:15
**likely** [2] - 16:9, 20:21
**limit** [1] - 27:25
**limitations** [1] - 33:6
**limited** [19] - 6:21, 8:12, 8:24, 9:3, 9:14, 12:9, 12:25, 13:5, 15:21, 16:1, 16:18, 17:3, 17:12, 17:23, 18:9, 18:10, 29:14, 29:25
**limiting** [1] - 26:5
**line** [6] - 2:25, 14:24, 15:2, 17:10, 22:2, 32:14
**Lippes** [1] - 2:15
**litigation** [3] - 4:14, 8:4, 14:16
**LITTLE** [1] - 2:15
**LLC** [6] - 1:6, 2:11, 2:13, 2:16, 2:22, 5:11
**logistics** [1] - 20:14
**Logitech** [2] - 5:10, 20:9
**look** [1] - 30:16
**looked** [1] - 4:21
**looking** [3] - 18:13, 18:21, 28:3
**loud** [2] - 10:12, 21:7
**loudly** [1] - 24:3

## M

**mail** [1] - 3:8
**Main** [1] - 5:9
**manner** [1] - 10:14
**manufactured** [1] - 3:19
**Maryland** [2] - 21:1, 21:13
**materials** [1] - 19:2
**Mathias** [1] - 2:15
**matter** [12] - 3:17, 4:6, 4:13, 19:15, 20:19, 20:23, 21:4, 21:13, 22:20, 26:16, 29:23, 30:4
**matters** [2] - 23:12, 24:23
**mean** [1] - 13:12
**meddle** [1] - 28:24
**members** [1] - 11:13
**memorialized** [1] -
28:15
**mentioned** [1] - 17:7
**Mere** [1] - 6:1
**merely** [1] - 5:21
**meritorious** [3] - 4:19, 4:25, 5:19
**merits** [1] - 4:25
**met** [1] - 6:18
**Miami** [2] - 1:21, 1:21
**mIAMI** [1] - 1:2
**might** [4] - 5:19, 9:16, 16:8
**million** [4] - 12:12, 13:13, 19:3, 28:1
**minimum** [1] - 26:22
**minute** [1] - 24:25
**mislabeling** [1] - 11:21
**missing** [1] - 2:24
**moment** [1] - 9:6
**monetary** [2] - 11:5, 18:22
**month** [1] - 27:22
**months** [1] - 9:9
**morning** [13] - 2:5, 2:7, 2:9, 2:10, 2:12, 2:14, 2:17, 2:20, 2:21, 2:23, 8:6, 8:7, 15:3
**most** [4] - 8:3, 12:11, 18:15, 28:11
**motion** [14] - 3:4, 4:2, 5:13, 8:8, 19:16, 19:24, 20:16, 21:7, 21:15, 21:19, 22:3, 22:11, 31:22
**motions** [3] - 4:4, 22:7, 32:5
**move** [3] - 8:1, 8:4, 16:23
**moved** [1] - 20:18
**MR** [51] - 2:5, 2:10, 2:12, 2:15, 2:17, 2:21, 3:3, 3:7, 7:1, 7:7, 8:6, 8:8, 8:23, 10:2, 10:16, 13:4, 13:15, 14:1, 14:4, 15:18, 15:24, 16:15, 16:18, 17:18, 17:21, 18:7, 19:19, 19:22, 20:5, 21:23, 22:5, 22:21, 22:24, 23:1, 23:16, 24:1, 24:4, 24:6, 25:5, 25:14, 25:17, 26:3, 26:11, 26:15, 27:4, 27:15, 28:8, 28:10, 30:23, 31:7, 31:12
**MS** [5] - 2:7, 15:1, 15:4, 22:13, 22:18

**multiple** [1] - 10:10
**must** [1] - 8:2
**Myers** [2] - 20:20, 21:2

## N

**name** [1] - 22:22
**narrow** [1] - 16:1
**nationwide** [1] - 20:24
**nature** [1] - 15:17
**necessary** [2] - 11:8, 18:23
**need** [18] - 5:16, 7:23, 8:3, 11:6, 11:9, 11:12, 11:22, 12:6, 12:24, 13:14, 14:17, 16:13, 19:12, 24:16, 24:18, 28:12, 32:11, 32:14
**needed** [2] - 15:25, 25:10
**needle** [1] - 21:14
**needs** [1] - 32:8
**New** [8] - 5:1, 11:18, 11:23, 20:25, 21:13
**next** [8] - 3:14, 4:16, 9:7, 9:23, 12:21, 27:22, 29:3, 29:7
**North** [1] - 1:21
**note** [3] - 13:16, 20:18, 25:17
**noted** [1] - 4:24
**nothing** [3] - 5:2, 32:12, 32:17
**notion** [1] - 14:12
**November** [1] - 3:21
**number** [4] - 11:5, 11:9, 11:14, 11:23
**Number** [1] - 1:2
**numbers** [1] - 18:2

## O

**objections** [3] - 27:1, 27:6, 31:17
**obligation** [1] - 27:16
**obviate** [1] - 9:16
**obviously** [2] - 10:23, 11:1
**occurred** [1] - 33:5
**October** [1] - 31:21
**OF** [1] - 1:1
**omnibus** [1] - 22:7
**once** [1] - 22:15
**one** [15] - 2:24, 4:6, 4:9, 5:20, 6:5, 6:6, 7:10, 9:11, 14:21, 15:12, 18:24, 22:21, 23:12, 24:22, 31:14
**oparil** [1] - 22:25

**OPARIL** [13] - 2:12, 22:21, 22:24, 23:1, 23:16, 24:1, 24:4, 24:6, 25:5, 26:3, 28:8, 30:23, 31:7
**Oparil** [6] - 1:16, 2:12, 22:24, 26:2, 28:8, 30:23
**opportunity** [3] - 11:5, 12:22, 19:22
**oral** [2] - 27:17, 28:14
**orally** [1] - 26:20
**order** [11] - 11:4, 11:23, 22:6, 22:7, 24:13, 26:24, 27:17, 27:20, 28:22, 29:2, 32:8
**ordered** [2] - 26:20, 32:10
**original** [1] - 7:16
**outset** [1] - 10:9
**outside** [1] - 12:16
**outstanding** [2] - 31:17, 32:8
**overarching** [1] - 4:5
**owing** [1] - 31:11
**own** [2] - 20:10, 20:11

## P

**pages** [1] - 31:9
**pandemic** [1] - 33:5
**paragraph** [2] - 4:9, 14:21
**part** [3] - 14:15, 26:5, 28:11
**parties** [14] - 6:15, 9:8, 9:15, 16:2, 16:19, 16:23, 17:16, 19:12, 22:10, 23:6, 26:22, 28:15, 32:11, 32:13
**partner** [2] - 2:18, 7:3
**parts** [1] - 31:8
**party** [3] - 2:24, 5:3, 21:24
**PATRICIA** [2] - 1:20, 33:11
**patricia_sanders@ flsd.uscourts.gov** [1] - 1:22
**pay** [1] - 11:19
**peek** [2] - 4:21, 4:24
**pending** [2] - 4:3, 29:22
**PEREZ** [1] - 2:7
**Perez** [2] - 1:13, 2:7
**perhaps** [4] - 4:16, 9:24, 15:25, 17:9, 25:12, 27:23, 28:5
**period** [1] - 17:12

**permissible** [1] - 19:7
**permitted** [1] - 18:1
**personal** [1] - 21:4
**perspective** [1] - 12:19
**phone** [5] - 10:10, 10:13, 13:24, 16:23, 24:3
**Plaintiffs** [1] - 1:4
**plaintiffs** [32] - 2:4, 2:6, 2:8, 3:18, 4:7, 5:15, 6:5, 6:9, 6:18, 9:5, 10:1, 10:3, 10:17, 10:18, 10:23, 11:4, 11:17, 11:22, 12:5, 12:20, 15:11, 15:19, 16:6, 17:18, 17:19, 25:7, 25:15, 25:19, 25:24, 28:20, 29:6, 29:22
**PLAINTIFFS** [1] - 1:12
**plaintiffs'** [2] - 13:2, 27:4
**plan** [2] - 9:25, 28:21
**play** [1] - 15:14
**pleading** [3] - 13:7, 15:7, 22:15
**pleadings** [3] - 6:19, 7:22, 12:12
**pled** [2] - 8:20, 12:20
**point** [8] - 7:15, 9:4, 17:17, 18:12, 19:15, 25:10, 29:24, 32:3
**points** [3] - 13:19, 14:5, 14:13
**portion** [2] - 21:16, 30:8
**position** [3] - 15:8, 16:7, 21:13
**possible** [1] - 9:23
**posture** [1] - 26:10
**potentially** [1] - 15:13
**predicate** [2] - 4:8, 12:7
**preliminary** [2] - 4:24, 19:2
**premise** [2] - 14:18, 17:1
**prepared** [3] - 23:17, 24:7, 26:1
**prerequisite** [1] - 14:19
**pretty** [4] - 7:24, 8:9, 19:17, 27:20
**prevail** [1] - 4:20
**price** [4] - 11:10, 13:18, 14:5, 14:13
**priced** [1] - 14:9
**problem** [1] - 23:20
**problems** [1] - 3:2

**Procedure** [1] - 27:8
**proceed** [3] - 21:10, 29:15, 29:20
**proceeding** [1] - 33:5
**process** [3] - 9:10, 30:1, 31:23
**Process** - 5:11
**produce** [5] - 16:20, 23:6, 26:2, 26:4, 28:17
**produced** [1] - 11:2
**product** [1] - 11:10
**production** [3] - 27:17, 31:11, 31:20
**Production** [3] - 30:16, 31:9, 31:13
**products** [4] - 3:18, 11:23, 20:10, 20:11
**program** [1] - 20:8
**progress** [1] - 7:9
**promising** [1] - 16:5
**properly** [1] - 10:19
**provided** [2] - 15:20, 27:21
**provisions** [1] - 5:7
**punitive** [1] - 13:9
**purchase** [1] - 3:16
**purchasers** [1] - 11:13
**purposes** [2] - 13:6, 19:24
**pursuant** [4] - 21:2, 27:8, 27:9, 27:16
**push** [1] - 25:22
**put** [7] - 11:5, 11:8, 11:14, 11:15, 11:23, 14:4, 18:21
**putative** [1] - 11:13
**puts** [1] - 15:13

## Q

**questions** [2] - 6:16, 16:8

## R

**raised** [1] - 4:11
**rarely** [1] - 32:13
**rather** [1] - 20:25
**re** [1] - 13:7
**re-pleading** [1] - 13:7
**reach** [3] - 3:1, 3:12, 29:17
**read** [3] - 17:5, 17:6
**ready** [3] - 3:10, 14:24, 23:13
**really** [8] - 5:8, 7:8, 7:16, 15:16, 23:22, 24:21, 28:1, 29:21
**reason** [3] - 10:22,

26:5, 32:13
**reasonable** [7] - 12:11, 17:24, 17:25, 18:4, 18:14, 25:25
**reasons** [1] - 4:5
**recess** [1] - 22:20
**recognize** [1] - 7:13
**RECORD** [1] - 23:19
**record** [2] - 20:4, 22:23
**records** [3] - 11:8, 16:20, 16:21
**redrafted** [1] - 17:24
**redrafting** [2] - 17:22, 18:3
**referenced** [1] - 19:23
**referring** [4] - 4:23, 30:7
**regard** [5] - 7:4, 9:20, 16:11, 18:17, 22:3
**regarding** [4] - 3:16, 4:18, 21:6, 27:6
**rejected** [2] - 20:21
**relied** [2] - 13:19, 14:6
**relying** [5] - 17:24, 20:7, 21:24
**remain** [1] - 19:17
**remember** [1] - 13:23
**remotely** [1] - 33:7
**replead** [1] - 17:4
**REPORTED** [1] - 1:20
**REPORTER** [5] - 10:6, 13:22, 20:1, 23:20, 24:9
**Reporter** [1] - 1:20
**reporter** [2] - 10:11, 20:3
**reporting** [1] - 33:7
**represent** [2] - 2:18, 31:1
**Request** [2] - 30:16, 31:9
**request** [8] - 4:6, 4:10, 4:17, 13:2, 15:13, 23:8, 24:8, 25:11
**requested** [1] - 11:1
**requests** [4] - 26:7, 30:24, 31:18
**Requests** [2] - 9:12, 31:13
**requires** [1] - 11:19
**requiring** [1] - 18:21
**researched** [1] - 8:14
**resident** [1] - 21:1
**resolution** [1] - 4:3
**resolve** [1] - 29:3
**resolved** [2] - 27:2, 31:22
**resources** [1] - 29:25
**respond** [8] - 23:14,

23:17, 24:7, 24:8, 26:8, 27:17, 28:15
**respond..** [1] - 23:18
**responded** [1] - 3:23
**response** [3] - 3:10, 3:24, 12:5
**responses** [10] - 23:4, 23:8, 23:9, 25:18, 26:3, 26:23, 27:21, 28:7, 28:9, 31:17
**responsive** [2] - 15:7, 22:15
**rest** [1] - 21:10
**review** [3] - 19:2, 19:6, 19:22
**Rich** [1] - 28:8
**Richard** [4] - 1:16, 2:12, 22:24, 30:23
**road** [1] - 25:23
**robust** [2] - 18:18, 18:20
**rolling** [1] - 31:22
**routine** [1] - 20:20
**RPR** [2] - 1:20, 33:11
**rule** [1] - 20:16
**rules** [1] - 8:13
**Rules** [1] - 27:8
**ruling** [13] - 5:19, 21:11, 21:16, 25:6, 25:10, 26:21, 27:9, 28:11, 28:14, 31:16, 32:2, 32:4
**runs** [1] - 20:9

## S

**sales** [8] - 10:23, 11:6, 13:5, 13:11, 13:12, 16:20, 20:14
**SANDERS** [3] - 1:20, 33:9, 33:11
**sanders** [1] - 10:8
**satisfactory** [1] - 9:25
**satisfying** [1] - 6:17
**save** [1] - 5:22
**scenario** [1] - 12:3
**schedule** [1] - 6:8
**scheduling** [1] - 24:13
**scope** [4] - 12:2, 28:21, 29:17, 30:16
**Scott** [5] - 1:17, 2:18, 7:3, 15:18, 18:7
**second** [2] - 3:21, 7:13
**see** [7] - 3:2, 3:14, 4:25, 6:14, 14:9, 19:14, 24:25
**sells** [1] - 20:10
**sense** [1] - 29:3
**serve** [2] - 28:8, 31:16

**served** [2] - 27:6, 29:22
**set** [4] - 6:8, 6:13, 10:18, 27:13
**several** [2] - 5:1, 5:20
**Shapiro** [1] - 5:10
**ship** [1] - 6:23
**show** [1] - 5:3
**showing** [1] - 13:18
**shows** [2] - 20:13, 30:9
**sic)** [1] - 20:17
**sides** [1] - 9:25
**significant** [1] - 26:4
**significantly** [1] - 26:7
**simply** [1] - 14:4
**six** [1] - 9:12
**slow** [2] - 13:23, 20:2
**Smith** [1] - 5:24
**sold** [3] - 11:10, 11:11, 11:23
**solid** [1] - 7:24
**Solutions** [1] - 2:19
**someone** [2] - 3:1, 30:15
**Sorce** [2] - 1:18, 2:21
**SORCE** [1] - 2:21
**sorry** [3] - 13:22, 20:1, 24:9
**sort** [1] - 15:15
**sound** [1] - 27:19
**sounds** [2] - 16:5, 27:20
**sOUTHERN** [1] - 1:1
**speaker** [1] - 23:23
**SPEAKER** [6] - 18:19, 19:8, 29:5, 29:10, 29:13, 31:15
**speaking** [1] - 28:20
**specific** [1] - 9:2
**spring** [1] - 25:1
**Squibb** [2] - 20:20, 21:2
**stand** [1] - 29:21
**Standard** [1] - 5:11
**standard** [1] - 4:18
**start** [1] - 17:1
**State** [1] - 27:12
**state** [2] - 2:3, 28:19
**STATES** [2] - 1:1, 1:9
**states** [1] - 11:12
**States** [1] - 1:20
**stating** [1] - 5:21
**statute** [2] - 11:19, 11:22
**statutory** [4] - 11:15, 11:18, 11:24
**stay** [15] - 4:2, 4:10, 4:17, 4:22, 15:14,

19:16, 21:7, 21:15, 21:19, 22:3, 25:6, 25:7, 26:18, 31:22, 32:6
**steering** [1] - 6:23
**steps** [5] - 3:14, 4:16, 9:7, 9:23, 29:3
**still** [2] - 12:23, 17:13
**straightforward** [1] - 27:20
**structure** [1] - 17:14
**sub** [1] - 31:8
**sub-parts** [1] - 31:8
**subject** [9] - 4:6, 11:10, 11:23, 20:19, 20:23, 21:3, 29:23, 30:4, 33:6
**submit** [1] - 26:22
**sufficient** [3] - 13:6, 16:14, 16:21
**sufficiently** [3] - 4:7, 8:20, 12:20
**suggest** [3] - 5:5, 27:21, 30:1
**suggested** [1] - 23:2
**suggesting** [1] - 7:21
**suggestion** [1] - 18:9
**suggestions** [1] - 7:11
**suggests** [2] - 5:21, 19:2
**Suite** [1] - 1:21
**supplement** [1] - 3:16
**sweeping** [1] - 9:16

## T

**technological** [1] - 33:6
**TELEPHONIC** [1] - 1:8
**telephonic** [2] - 26:15, 27:13
**tentative** [2] - 27:9, 27:20
**termed** [1] - 10:19
**terms** [8] - 6:15, 17:11, 17:14, 17:22, 18:13, 20:7, 25:19, 28:21
**testimony** [1] - 20:12
**THE** [65] - 1:9, 1:12, 2:1, 2:9, 2:14, 2:20, 2:23, 3:5, 3:9, 7:6, 7:20, 8:7, 8:18, 9:5, 10:6, 10:8, 12:1, 13:11, 13:22, 13:23, 14:2, 14:12, 15:3, 15:6, 15:23, 16:4, 16:17, 17:1, 17:20, 18:5, 18:12, 18:23, 19:10, 19:21, 20:1,

20:2, 21:12, 22:1,
22:6, 22:15, 22:19,
22:22, 22:25, 23:11,
23:19, 23:20, 23:22,
24:2, 24:5, 24:9,
24:11, 25:16, 26:1,
26:9, 26:14, 27:3,
27:14, 27:19, 28:20,
29:9, 29:12, 30:6,
31:4, 31:10, 31:24
**therefore** [2] - 8:11,
33:6
**thicket** [1] - 5:14
**thing..** [1] - 22:21
**third** [4] - 5:3, 21:24,
25:8, 25:19
**thoughts** [3] - 6:24,
14:20, 32:5
**thread** [1] - 21:14
**three** [2] - 9:9, 22:4
**tied** [1] - 26:17
**tighter** [1] - 18:14
**timeline** [2] - 6:15,
32:10
**timing** [1] - 7:22
**today** [8] - 3:11, 11:3,
14:8, 16:23, 24:24,
28:14, 30:2, 32:16
**tomorrow** [18] - 3:10,
3:24, 8:2, 14:23,
15:7, 22:12, 23:4,
23:7, 25:2, 26:2,
26:10, 26:23, 27:7,
27:15, 28:7, 28:16,
30:13, 31:5
**tomorrow's** [1] - 30:20
**Torres** [9] - 24:22,
26:15, 26:16, 27:9,
28:6, 28:12, 29:20,
32:2, 32:8
**Torres'** [3] - 27:16,
28:14, 31:16
**touch** [1] - 19:19
**track** [1] - 9:19
**triggered** [1] - 26:13
**troubled** [2] - 12:13,
12:14
**truly** [1] - 4:25
**try** [4] - 3:8, 9:15,
14:14, 29:2
**trying** [7] - 3:12, 7:12,
9:22, 17:17, 21:14,
23:9, 28:2
**turn** [1] - 10:1
**two** [5] - 4:5, 16:14,
16:16, 21:19, 29:7

### U

**under** [7] - 4:8, 4:18,

8:25, 11:18, 11:21,
13:21, 18:1
**under-estimated...** [1]
- 13:21
**understood** [1] -
10:13
**underway** [1] - 28:13
**UNIDENTIFIED** [6] -
18:19, 19:8, 29:5,
29:10, 29:13, 31:15
**UNINTELLIGIBLE** [2]
- 20:9, 23:19
**UNITED** [1] - 1:1
**uNITED** [1] - 1:9
**United** [1] - 1:20
**unless** [1] - 19:16
**unlike** [1] - 20:9
**unsupported** [1] - 6:1
**unsure** [1] - 8:15
**untoward** [1] - 7:22
**untrue** [2] - 13:17,
14:10
**up** [12] - 14:12, 17:21,
19:12, 21:12, 21:17,
22:11, 22:14, 23:22,
24:22, 28:1, 28:3,
28:24
**upcoming** [1] - 27:22

### V

**vacillation** [1] - 15:15
**value** [1] - 18:22
**versus** [7] - 2:2, 5:9,
5:10, 5:11, 5:23,
5:24, 5:25
**viable** [1] - 5:8
**VITAMINS** [1] - 1:6
**Vitamins** [5] - 2:2,
2:11, 2:19, 6:22, 7:2
**voice** [1] - 10:12
**vs** [1] - 1:5

### W

**waiver** [1] - 21:8
**wedded** [1] - 19:3
**week** [1] - 24:19
**week..** [1] - 24:8
**weeks** [3] - 16:14,
16:16, 29:8
**weigh** [1] - 14:13
**weighing** [1] - 31:24
**Westlaw** [5] - 5:10,
5:11, 5:24
**Wexler** [1] - 2:15
**whatsoever** [1] - 28:5
**whole** [4] - 8:14, 28:2,
29:24, 31:23
**wholly** [1] - 8:21

**Wiggins** [1] - 10:20
**WILLIAMS** [1] - 1:9
**willing** [1] - 17:2
**Wisconsin** [1] - 5:1
**wish** [2] - 22:17, 28:21
**withdraw** [2] - 3:4,
22:11
**withdrawal** [1] - 22:16
**wonder** [1] - 6:9
**works** [3] - 20:13,
24:17, 25:4
**writing** [2] - 27:17,
28:15
**written** [6] - 26:3,
26:23, 27:21, 28:6,
28:16, 31:17

### Y

**Yanir** [2] - 28:10,
31:12
**Yaniv** [3] - 1:15, 2:10,
26:11
**year** [5] - 3:22, 7:16,
7:24, 18:17, 24:14
**York** [4] - 11:18,
11:23, 21:1, 21:13