# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| CORI ANN GINSBERG, NOAH MALGERI, KALYN WOLF, BILL WILSON, SHANNON HOOD, ERIC FISHON, and ROBERT MCKEOWN on behalf of themselves and all others similarly situated, | CASE NO.: 1:19-CV-22702-KMW  Purported Class Action |
| Plaintiffs, | |
| vs. | |
| VITAMINS BECAUSE LLC, CT HEALTH SOLUTIONS LLC, GMAX CENTRAL LLC, ASQUARED BRANDS LLC, INSPIRE NOW PTY LTD d/b/a BOOSTCEUTICALS, HEALTHY WAY RX LLC, KHAKIWARE INC., and JOLLY DOLLAR SUPPLY COMPANY, LLC., | |
| Defendants. | |

## VITAMINS BECAUSE AND CT HEALTH SOLUTIONS' MOTION TO DISMISS BASED ON PLAINTIFFS' LACK OF ARTICLE III STANDING AND MEMORANDUM OF LAW IN SUPPORT[1]

Pursuant to Rule 12(b)(1), Fed. R. Civ. P., U.S. Const. art. 3, § 2, cl. 1, and L. R. 7.1, Defendants, Vitamins Because, LLC and CT Health Solutions, LLC (collectively "Vitamins

---

[1] Vitamins Because is making a factual challenge to Plaintiffs Article III standing and, therefore, the Court may consider matters outside the four corners of the complaint. *See e.g., Corbett v. TSA*, 930 F.3d 1225, 1228 (11th Cir. 2019) (recognizing that "if we have been presented with 'facts beyond the four corners' of the pleading that are relevant to the question of standing, we may consider them.") (citing *Cone Corp. v. Fla. Dept. of Trans*., 921 F.2d 1190, 1206 n.50 (11th Cir. 1991)); *MSPA Claims 1, LLC v. First Acceptance Ins. Co*., 2017 WL 3671033, *4 (S.D. Fla. 2017). Because this is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." *Morrison v. Amway Corp*., 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Because"), move to dismiss this purported consumer class action because each named Plaintiff lacks Article III standing.[2]

The 11th Circuit recognizes that "standing is 'perhaps the most important jurisdictional' requirement, and without it, we have no power to judge the merits." *Corbett*, 930 F.3d at 1222 (quoting *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000)). Indeed, "Article III standing is a threshold jurisdictional issue that must be resolved before any federal court can reach the merits of a plaintiff's claim." *Doss v. General Mills, Inc.*, 816 Fed. Appx. 312 (11th Cir. 2020) (affirming Judge Scola's dismissal of a consumer class action due to the plaintiff's lack of Article III standing) (citing *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F. 3d 243, 245 (11th Cir. 2014)).

Here, Plaintiffs invoked federal jurisdiction and, therefore, it is their burden to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed. 351 (1992); *Corbett v TSA*, 930 F.3d 1225, 1228 (11th Cir. 2019); *Bohlke v. Green Star Cap. Sols., LLC*, No. 17-CV-81379, 2018 WL 3413030, at *3 (S.D. Fla. June 8, 2018) (recognizing that in a purported class action each named plaintiff must have standing and each plaintiff bears the burden of establishing it) (citing *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004)). Indeed, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Gaminde v Lang Pharma Nutrition, Inc.*, 2019 U.S. Dist. LEXIS 48595, at *6 (N.D.N.Y. Mar. 25, 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

---

[2] Cori Ann Ginsberg -- the only Plaintiff with any connection to Florida or the S.D. of Florida -- voluntarily dismissed all her claims with prejudice. [Dkt. 255 and 260]

2

In this case, each Plaintiff alleges they purchased a supplement, SAMe, manufactured by Vitamins Because through the various retailer defendants. They allege the SAMe they purchased was defective because the amount of the active ingredient in the product was less than what was stated on the label. Third Am. Complt [Dkt. 176] at ¶¶ 2, 32, 39, 47, 53, 59, 65, 71, 78, 84, 87-91. In a consumer class action such as this, the 11th Circuit, numerous courts in this District, and courts around the country have held that to establish Article III standing each named plaintiff must allege and prove the specific product they purchased actually contained the defect alleged in the complaint. *See e.g.*, *Doss v. General Mills, Inc.*, 816 Fed. Appx. 312 (11th Cir. 2020) (upholding Judge Scola's dismissal of a consumer class action due to the plaintiff's lack of Article III standing under strikingly similar facts); *Wallace v. ConAgra Foods, Inc*., 747 F.3d 1025 (8th Cir. 2014) (same); *Deluna v. American Journey (PET), LLC*, Case No. 21-60409-Civ-Singhal/Valle, 2021 WL 5149790 (S.D. Fla. Oct. 29, 2021) (dismissing plaintiff's consumer class action for lack of Article III standing because plaintiff, like Plaintiffs here, did not have testing to show the specific product he purchased contained the defect alleged in the complaint); *Sabater v. Am. Journey (PET), LLC*, No. 21-60409-Civ-Singhal/Valle, 2021 WL 5149846 (S.D. Fla. Oct. 29, 2021) (same).

Discovery in this case has revealed that none of the SAMe purchased by any of the named Plaintiffs has ever been tested to determine whether it met the label statement for the amount of active ingredient. Each Plaintiff testified as follows:[3]

- Wolf Dep. Trans. (attached as Exhibit A) at pp. 23:24–24:7:

---

[3] At the time of this filing, Noah Maglieri has not yet been deposed. Discovery has revealed, however, that he either does not have any of the product he purchased or, if he does, that product has not been tested.

Q: Have you ever had the SAM-e that's the subject of this lawsuit tested for its potency or efficacy?

A: No.

- Fishon Dep. Trans. (attached as Exhibit B) at p. 192:15-23

    Q: Did you ever test any of the SAM-e products that you purchased?

    A: No, I didn't personally test and nor did I personally send any of my stuff to be tested.

- Fishon Dep. Trans. at p. 307:15-25:

    Q: And because it wasn't tested – and I'm speaking specifically to the BoostCeuticals product on 3/24/18 – we don't know what the ingredients of that product you purchased were?

    A: So from my customer/layman point of view, no, since my product, the one that I bought, the one that I had, wasn't tested, I don't know what my product and what my pills' ingredients and amounts were, correct.

- Fishon Dep. Trans. at p. 317:3-7:

    Q: Are you claiming that that product you purchased had less SAM-e than what was on the label?

    A: I am not making that claim.

- Wilson Dep. Trans. (attached as Exhibit C) at p. 18:11-22:

    Q: Have you given any of that product from that bottle to anyone?

    A: No.

    Q: Have you given it to your lawyers?

    A: No.

    Q: Have you given it to any experts?

    A: No.

    Q: Have you ever had it tested anywhere?

    A: No.

Q: Have you had anybody ask you to send that product to them?

A: No.

- Wilson Dep. at p. 25:12 – 26:5:

    Q: What do you understand the allegations are with regard to the product?

    A: The product was misrepresented on the label on the bottle.

    Q: In what respect?

    A: In the amount of material that's in each capsule.

    Q: You have capsules in your possession right now that you've purchased and you haven't bothered to test them to determine whether your product that you have in your possession meets the label statements for active ingredients. Is that fair?

    A: I've already stated, I rely on my lawyers for all of the testing information.

- Wilson Dep. at p. 33:11-25:

    Q: So you believed, as far as I understand your testimony, you stopped taking product because you believed there might have been something wrong with the product, either the quality or something about the active ingredient. You had the product but you never sent it out to be tested; is that right?

    A: I was not asked to do so.

    Q: Did you think to do it on your own?

    A: I did, no.

    Q: I'm sorry, you did or you did not?

    A: No is the answer to your question.

- McKeown Dep. Trans. (attached as Exhibit D) at p. 51:3-7:

    Q: And I think you've already answered this, but did you take the entire bottle of SAM-e that you purchased from Asquared?

    A: I did.

- McKeown Dep. Trans. at 52:14-17:

    Q:  Did you have any of the product that you purchased tested for potency?

    A:  No.

- McKeown Dep. Trans. at p.53:16-54:23:

    Q:  So your basis for understanding – or alleging, excuse me -- that the product you purchased had a discrepancy in terms of its ingredients is based solely on documentation provided by your attorneys?

    A:  Correct.

    Q:  Do you have any other basis to allege that the SAM-e you purchased from Asquared didn't have the ingredients that were indicated on the label?

    A:  No.

    Q:  Did you think that it would be important to have the product that you purchased tested for potency?

    A:  I believe so.

    Q:  And I think you answered this, but none of the product that you purchased and took was actually tested, right?

    A: Correct.

- McKeown Dep. Trans. at p. 56:21-57:2:

    Q:  And would you agree the only objective or scientific way to confirm that the bottle of SAM-e that you purchased personally had different ingredients on the label would have been to test that product?

    A:  Correct.

- Hood Dep. Trans. (attached as Exhibit E) at p. 58:21-24:

    Q:  Sure. And obviously you took all of this first bottle, so you couldn't have that product tested; is that right?

    A:  That would be correct.

- Hood Dep. Trans. at p. 59:21-23

    Q: Did you take all of the pills in the second bottle of SAM-e purchased from ASquared?

    A:  Yes.

- Hood Dep. Trans. at pp. 62:22-63:7 (emphasis added):

    Q: Okay. And so my question is: How do you know the SAM-e that you purchased was under that threshold?

           \*      \*      \*

    A: How do I know? Because I don't know that the individual pill that I consumed not exceeded or fell below whatever threshold would be acceptable. **There's no way to tell. I opened the bottle and consumed the pills**.

- Hood Dep. Trans. at p. 64:15-18:

    Q: And obviously because you took all of that bottle, you didn't have any of that bottle of SAM-e tested for potency; is that correct?

    A: Correct.

- Hood Dep. Trans. at p. 65:7-23:

    Q: Did you take all of this fourth bottle of SAM-e from ASquared?

    A: I believe so.

           \*      \*      \*

    Q. And as you took all of the product in the fourth bottle, is it fair to say you didn't have any pills in that bottle tested for potency?

    A. That is correct.

    Q. So at this point from February of 2018 through December of 2018 you've purchased four separate bottles of ASquared SAM-e and consumed all of the product; is that correct?

    A. That sounds correct.

- Hood Dep. Trans. at pp. 66:25-67:14:

    Q: Did you take all of the SAM-e that you purchased? And I'm referring to the fifth purchase.

    A: I can't recall if I took any of the last bottle.

7

> Q: Do you have any of the last bottle at present?
>
> A: No. That would mean I took it all.

- Hood Dep. Trans. at p. 67:17-19:

> Q: And did you have any of that product, being the fifth purchase, tested for potency?
>
> A: No.

Plaintiffs' experts did not test any Plaintiff's product either. Indeed, Plaintiffs' experts did not even bother to ask whether any of the Plaintiffs still had any of the product they purchased which, as it turns out, at least two of them do; Fishon and Wilson.[4]

No Plaintiff can establish Article III standing by showing the actual product they purchased was defective so they hired a nutritionist to opine that **all** the SAMe manufactured by Vitamins Because was uniformly defective because **none** of it met the label statements for the amount of active ingredient. *See* Expert Report of Douglas Kalman at ¶ 11. Not surprisingly, Kalman quickly abandoned that utterly remarkable opinion and admitted that not all the SAMe product manufactured by Vitamins Because contained less active ingredient than stated on the label:

> Q. So you'd agree that some of the SAM-e that you're aware of met the label requirements for active ingredient; correct?
>
> A. I would agree that up to about 10 percent of what I am aware of regarding the SAM-e products met or nearly met label claim.
>
> Q. So it's true that some of Vitamins Because's SAM-e product met label claims; correct?
>
> A. It is true. And if my memory serves me correctly that a couple of products from 2020 did meet label claim. Again, still less than 10 percent or less of all of the products that were tested.

---

[4] The fact these two Plaintiffs still have the SAMe they purchased raises serious spoliation issues because Plaintiffs were required to disclose that information in their Rule 26 disclosures -- specifically in response to Rule 26(a)(A)(ii) -- and neither of them did. *See* Exhibit F.

> Q. But even in your expert opinion, not all; correct?
>
> A. Correct.

Kalman Dep. Trans. (attached as Exhibit G) at pp. 94:11-95:2. Giving Plaintiffs every benefit of the doubt; at best, all they have shown is that some SAMe product manufactured by Vitamins Because may not have met the label statement for the amount of active ingredient at the time that particular product was tested. That is insufficient to establish that each, or any, Plaintiff has Article III standing. *See In re Whole Foods Mkt. Grp., Inc.*, 397 F.Supp.3d 406 (S.D.N.Y. 2019) (dismissing plaintiff's consumer class action for lack of Article III standing because plaintiff did not present any evidence that he received a product with the alleged defect, and his evidence establishing an 89% chance that he did was insufficient to establish Article III standing).

Plaintiffs filed this lawsuit more than two-and-a-half years ago and they are on their fourth iteration of their purported class action complaint. This case is a month away from the close of discovery, dispositive and Daubert motions are due no later than February 8, 2022, and trial is scheduled to occur on June 20, 2022. [Dkt. 244] When the Court set these deadlines, it stated: "**NO FURTHER EXTENSIONS WILL BE ALLOWED.**" [Dkt. 244] (emphasis in original). Plaintiffs should have had evidence to establish their Article III standing when they filed this lawsuit but certainly they should have it now that we are at the close of discovery. They do not. This case must, therefore, be dismissed. *See e.g.*, *Doss, Wallace, Deluna,* and *Sabater*.

WHEREFORE, Defendants, Vitamins Because and CT Health Solutions, respectfully request that this Honorable Court dismiss Plaintiffs' Third Amended Complaint for lack of Article III standing and award them such other and further relief as this Court deems just and proper under the circumstances including awarding Vitamins Because its taxable costs and attorneys' fees.

## MEMORANDUM OF LAW

Pursuant to Local Rule 7.1(a)(1), Vitamins Because provides this Memorandum of Law in support of its Motion to Dismiss.

### I. ARTICLE III STANDING

Article III standing is a gateway to federal court. "Standing is 'perhaps the most important jurisdictional' requirement, and without it, we have no power to judge the merits." *Corbett*, 930 F.3d at 1222 (quoting *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000)). Indeed, "Article III standing is a threshold jurisdictional issue that must be resolved before any federal court can reach the merits of a plaintiff's claim." *Doss v. General Mills, Inc.*, 816 Fed. Appx. 312 (11th Cir. 2020) (affirming Judge Scola's dismissal of a consumer class action due to the plaintiff's lack of Article III standing) (citing *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F. 3d 243, 245 (11th Cir. 2014)).

Plaintiffs invoked this Court's jurisdiction so it is their burden to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed. 351 (1992); *Corbett v TSA*, 930 F.3d 1225, 1228 (11th Cir. 2019); *Bohlke v. Green Star Cap. Sols., LLC*, No. 17-CV-81379, 2018 WL 3413030, at *3 (S.D. Fla. June 8, 2018) (recognizing that in a purported class action each named plaintiff must have standing and each plaintiff bears the burden of establishing it) (citing *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004)). They must prove their standing by a preponderance of the evidence. *Gaminde v Lang Pharma Nutrition, Inc.*, 2019 U.S. Dist. LEXIS 48595, at *6 (N.D.N.Y. Mar. 25, 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Plaintiffs must satisfy two distinct sets of standing requirements: 1) constitutional (or Article III) standing and 2) statutory standing. In this case, Vitamins Because is challenging

Plaintiffs' *constitutional* standing and, to be clear, the Supreme Court has rejected the notion that a plaintiff has *constitutional* standing merely because she satisfies the requirements of statutory standing. "A plaintiff invoking federal jurisdiction bears the burden of establishing the 'irreducible constitutional minimum' of standing by demonstrating (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1543 (2016).

The *Spokeo* Court clarified the contours of the "injury" prong of Article III standing. The Court stated that it has "made it clear time and time again that an injury in fact must be both concrete *and* particularized." *Id.* at 1548 (emphasis in original). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* As the Court noted, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. **Article III standing requires a concrete injury even in the context of a statutory violation**." *Id.* at 1549 (emphasis added).

To establish 'injury in fact,' "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1548. A "concrete" injury is "real and not abstract." *Id*. **Indeed, for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way**." *Id*. (emphasis added). *Spokeo's* injury requirement applies in consumer class actions. *See generally, Doss, Wallace, Deluna,* and *Sabater*.

As demonstrated above, Plaintiffs have no evidence that they actually sustained any injury at all because none of them have evidence to establish that the SAMe product(s) they purchased were defective. Without that, each Plaintiffs' alleged injury, just like each plaintiff's alleged injury

11

in *Doss, Wallace*, *Deluna*, and *Sabater*, is merely "conjectural or hypothetical," which is not sufficient to confer Article III standing.

## II. NONE OF THE NAMED PLAINTIFFS HAVE ARTICLE III STANDING

In *Doss*, the plaintiff filed a purported class action alleging that cereal manufactured and sold by General Mills was defective because it contained glyphosate, which General Mills failed to disclose to its consumers. *Id*. at 313. The plaintiff based her allegations on testing of random samples of the cereal that revealed trace amounts of glyphosate. While it was undisputed that the plaintiff purchased the cereal from General Mills, the plaintiff, just like the Plaintiffs here, did not test the specific product she purchased so she was unable to show that the product she purchased was defective. *Id*. Judge Scola found the plaintiff lacked standing because there was "no allegation that the cereal she purchased even contains glyphosate, never mind harmful levels of it." *Id*. The same holds true here. Without testing showing that the specific SAMe product each Plaintiff purchased contained less active ingredient than stated on the label they, like the plaintiff in *Doss*, cannot establish that the product they purchased was defective. Therefore, for the same reasons the plaintiff in *Doss* did not have standing, none of the Plaintiffs here have standing.

In two very recent decisions, Judge Singhal granted the defendant's motion to dismiss the plaintiff's consumer class action complaints because the plaintiffs lacked Article III standing. *Deluna v. American Journey (PET), LLC*, Case No. 21-60409-Civ-Singhal/Valle, 2021 WL 5149790 (S.D. Fla. Oct. 29, 2021); *Sabater v. Am. Journey (PET), LLC*, No. 21-60409-Civ-Singhal/Valle, 2021 WL 5149846 (S.D. Fla. Oct. 29, 2021). In both cases, the plaintiff purchased dog food manufactured by the defendant in reliance on defendant's representations that the dog food did not contain wheat, and it was a "single source animal protein(s)." *Deluna*, 2021 WL 5149790 at *1. Plaintiff alleged that "independent analysis of the ingredients of the [dog food]

revealed that they 'contain material amounts of wheat and chicken, i.e., amounts above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing.'" *Id*. Defendant moved to dismiss by making a factual attack on plaintiff's Article III standing because the plaintiff failed to allege that he tested any of the dog food he actually purchased. *Id*. at *2. Judge Singhal dismissed the cases because, without testing of the specific product plaintiff purchased, the plaintiff could not carry his burden of establishing that he sustained an injury-in-fact that was fairly traceable to defendant's alleged conduct. *Id*. at *3.

Likewise, in *Wallace v. ConAgra Foods, Inc*., 747 F.3d 1025 (8th Cir. 2014), plaintiffs filed a purported class action alleging they paid a premium for hot dogs labeled as kosher but later learned that some of the hot dogs manufactured by the defendant were not kosher. *Id*. at 1030. Defendant moved to dismiss for lack of Article III standing because "the consumers have not alleged that the products they each purchased were defective," but only that some packages of hot dogs sold as "kosher" were defective because they were not, in fact, "kosher." *Id*. The trial court agreed with defendant, finding that plaintiffs lacked an actual or imminent injury because they were unable to show that the products they personally purchased contained non-kosher beef. *Id*.

Notably, in affirming the district court's dismissal, the Eighth Circuit stated "[i]n the context of defective products, 'it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.'" *Id*. (citing *In re Zurn Pex Plumbing Prods. Liab. Litig*., 644 F.3d 604, 616 (8th Cir. 2011) (emphasis added)) (quoting *O'Neil v. Simplicity, Inc*., 574 F.3d 501, 503 (8th Cir. 2009)). Here, like in *Wallace*, Plaintiffs do not have any evidence that the individual SAMe products they purchased failed to meet the label statement for the amount of active ingredient. Giving Plaintiffs every benefit of the doubt; at best, all they have shown is

that some SAMe product manufactured by Vitamins Because may not have met the label statement for the amount of active ingredient at the time that product was tested. That is insufficient to establish that each, or any, Plaintiff has Article III standing.

Just like the plaintiffs in *Wallace*, Plaintiffs here lack an actual or imminent injury sufficient for Article III standing because they have not and cannot show that the products they personally purchased contained less active ingredient than stated on the label. *See also, In re Whole Foods Mkt. Grp., Inc.*, 397 F.Supp.3d 406 (S.D.N.Y. 2019) (dismissing plaintiff's consumer class action for lack of Article III standing because plaintiff did not present any evidence that he received a product with the alleged defect, and his evidence establishing an 89% chance that he did was insufficient to establish Article III standing); *Gaminde v Lang Pharma Nutrition, Inc.*, 2019 U.S. Dist. LEXIS 48595, at *6 (N.D.N.Y. Mar. 25, 2019) (dismissing purported consumer class action complaint because "it is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that [plaintiff] purchased must as well…[plaintiff's] failure to allege that he tested his bottle of CVS Krill Oil—indeed, his failure to make any allegation regarding how he knows that it was mislabeled—is fatal.").

In *Wallace*, the Eighth Circuit also rejected the argument that, under CAFA, a statutory violation creates constitutional standing even without an injury in fact:

> Viewing the consumers' argument most charitably, the argument proceeds in three steps. First, multiple states have created causes of action that do not require a particularized showing of individual injury to recover. Second, Congress extended federal jurisdiction to these causes of action under CAFA. Third, CAFA's extension of federal jurisdiction to these state causes of action means the consumers need only show a bare statutory violation—injury in law rather than an injury in fact—to satisfy Article III. Assuming the first step is correct (an assumption we make to avoid unnecessary analysis of state law), we are not convinced by the consumers' argument at the other two steps.

> To interpret CAFA as a congressional attempt to extend federal jurisdiction to cases involving no injury in fact would force us to presume—without any basis in the statutory text, see 28 U.S.C. § 1453, and in contradiction to long-settled constitutional precedent, *see, e.g., Lujan*, 504 U.S. at 560—that Congress intended to stretch, if not breach, the constitutional limits on federal jurisdiction.

*Id*. at 1031.

Plaintiffs cannot establish Article III standing by showing the products they purchased were defective so they tried to overcome that fatal flaw in their case by hiring a nutritionist to opine that post-litigation testing performed by others[5] showed that all the SAMe manufactured by Vitamins Because was uniformly defective because none of it met the label statements for the amount of active ingredient. *See* Expert Report of Douglas Kalman at ¶ 11. Kalman's report acknowledges, however, that testing conducted in 2019 and 2020 demonstrated that some SAMe manufactured by Vitamins Because met the label statement for the amount of active ingredient. Kalman Report at ¶ 55. Then, in his deposition Kalman quickly receded from the truly remarkable opinion contained in his report and admitted that not all the SAMe product manufactured by Vitamins Because contained less active ingredient than stated on the label:

> Q.  It is your opinion that all of the SAM-e manufactured by Vitamins Because failed to meet the label requirement as it relates to the active amount of SAM-e; correct?
>
> A.  **No, incorrect. I did -- I did see and read perhaps two or three certificates of analysis by third-party analytical labs that did find the label claim was met or nearly met. So that would be 2 or 3 tests out of 30-plus tests found a label claim or near label claim was made.**
>
> Q.  Would you agree that 3 out of 30 is 10 percent?
>
> A.  If I can do the math with my fingers, I would agree. Yes. Sorry about the bad joke. Yes.

---

[5] "Q. Were you involved in any aspect of the testing of the 22 to 30 bottles of SAM-e? A. No. Reviewing the results thereof, but nothing more than that. Q. So I'm correct that the extent of your involvement of the testing of the 22 to 30 bottles of SAM-e is reading the test results; correct? A. That's a pretty good summary." Kalman Dep. Trans. at p. 48:14-22.

> Q. So you would agree that this statement is not true? All SAM-e capsules manufactured by the defendant Vitamins Because and CT Health were uniformly mislabeled?
>
> A. **I cannot say all,** but given the inconsistency and that at least 90 percent of the testing showed or demonstrated severe issues with regards to purity and strength and composition of the products, it's a huge red flag of inconsistency in manufacturing processes and quality.
>
> Q. So you'd agree that some of the SAM-e that you're aware of met the label requirements for active ingredient; correct?
>
> A. **I would agree that up to about 10 percent of what I am aware of regarding the SAM-e products met or nearly met label claim.**
>
> Q. So it's true that some of Vitamins Because's SAM-e product met label claims; correct?
>
> A. It is true. And if my memory serves me correctly that a couple of products from 2020 did meet label claim. Again, still less than 10 percent or less of all of the products that were tested.
>
> Q. But even in your expert opinion, not all; correct?
>
> A. Correct.

Kalman Dep. Trans. at pp. 93:11-95:2 (emphasis added).

Kalman's acknowledgement that some of the SAMe manufactured by Vitamins Because met label statements for active ingredient is the death knell to each Plaintiff's claim because it requires that each Plaintiff prove that the SAMe product they purchased contained less active ingredient than what was stated in the label. *See e.g., Doss, Wallace, Deluna, Sabater, In re Whole Foods* and *Gaminde.* Indeed, in *In re Whole Foods*, the court found that even an 89% chance that the product plaintiff purchased contained the alleged defect was insufficient to establish Article III standing. The *Gaminde* court's analysis on why the plaintiff lacked standing is particularly apropos:

> In other words, 'it is pure speculation to say the particular packages sold to the [plaintiffs in *Wallace*] were tainted by non-kosher beef.' So here—it is pure speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that Gaminde purchased must as well.

*Gaminde*, 2019 U.S.Dist. LEXIS at *5.

Four of the remaining Plaintiffs (Malgeri, Wolf, McKeown and Hood) no longer have the SAMe they purchased so any proof they might have had to establish standing is lost to history. One Plaintiff, Wilson, still has a portion of one bottle of the SAMe he purchased but he never had it tested. The last Plaintiff, Fishon, testified he did not have any of the SAMe he purchased -- which turned out to be untrue -- but, in any event, Fishon never had that product tested either. Now, all these years later, Wilson's and Fishon's product cannot be tested so the proof that may have allowed them to establish standing -- or Vitamins Because to establish the products met specifications -- was lost due to their own misconduct. The point is, without testing of their individual products, it is pure speculation to say the particular SAMe each Plaintiff purchased contained less active ingredient than was stated on the label. Under these facts, each Plaintiffs' alleged injury is merely "conjectural or hypothetical" because each Plaintiff may have received exactly what he or she purchased.

## III. CONCLUSION

For all the foregoing reasons, Plaintiffs' Third Amended Complaint must be dismissed because each Plaintiff lacks constitutional standing to pursue the claims alleged.

**MEET AND CONFER**

Pursuant to Local Rule 7.1(a)(3), a meet and confer on this Motion was not required.

Dated: December 13, 2021

Respectfully submitted,

/s/David S. Johnson
David S. Johnson     FBN 096423
Scott W. Anderson    FBN 738311
JOHNSON DABOLL ANDERSON, PLLC
2011 W Cleveland Street, Suite F
Tampa, Florida 33606
Telephone: (813) 377-2499
Fax: (813) 330-3156
djohnson@jdalegal.com
sanderson@jdalegal.com
aglisson@jdalegal.com

*Counsel for Vitamins Because and CT Health Solutions*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of December, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of this filing to the following counsel of record on the attached service list.

/s/David S. Johnson

**SERVICE LIST**

| | |
|---|---|
| Joshua H. Eggnatz<br>FBN: 67926<br>EGGNATZ PASCUCCI, P.A.<br>7450 Griffin Road<br>Suite 230<br>Davie, FL 33314<br>Tel: 954-889-3359<br>Fax: 954-889-5913<br>jeggnatz@justiceearned.com<br>Attorneys for Plaintiffs | Brendan H. Little<br>Sean M. O'Brien<br>LIPPES MATHIAS WEXLER, et al.<br>50 Fountain Plaza, Suite 1700<br>Buffalo, NY 14202<br>Tel: 716-853-5100<br>blittle@lippes.com<br>sobrien@lippes.com |
| Jay I. Brody (Admitted Pro Hac Vice)<br>Gary S. Graifman (Admitted Pro Hac Vice)<br>KANTROWITZ, GOLDHAMER &<br>GRAIFMAN, P.C.<br>747 Chestnut Ridge Road<br>Chestnut Ridge, New York 10977<br>Tel: 845-356-2570<br>ggraifman@kgglaw.com<br>jbrody@kgglaw.com<br>Attorneys for Plaintiffs | Alessandro A. Apolito<br>LIPPES MATHIAS WEXLER, et al.<br>822 US Highway A1A, Suite 101<br>Ponte Vedra Beach, FL 32082<br>Tel: 904-660-0020<br>aapolito@lippes.com<br>Attorneys for ASquared Brands |
| Nicholas A. Migliaccio<br>Jason S. Rathod<br>MIGLIACCIO & RATHOD LLP<br>412 H Street N.E., Ste. 302<br>Washington, DC 20002<br>Tel: 202-470-3520<br>nmigliaccio@classlawdc.com<br>Attorneys for Plaintiffs | Leon N. Patricios (FBN 0012777)<br>ZIMPANO PATRICIOS, P.A.<br>312 Minorca Ave.<br>Coral Gables, FL 33134<br>Tel: 305-444-5565<br>Fax: 305-444-8588<br>lpatricios@zplaw.com<br>jzumpano@zplaw.com |
| Joseph A. Sorce<br>JOSEPH A. SORCE & ASSOCS., P.A.<br>999 Ponce de Leon Blvd., Suite 1020<br>Coral Gables, FL 33134<br>Tel: 305-529-8544<br>jsorce@flconstructionlawyer.com<br>Attorney for Defendants Khakiware, Inc. | Richard J. Oparil (admitted *pro hac vice*)<br>ARNALL GOLDEN GREGORY<br>1775 Pennsylvania Ave., NW<br>Suite 1000<br>Washington, DC 20006<br>T: 202-677-4030<br>Richard.oparil@agg.com<br>Attorneys for GMAX Central, LLC |
| | Mark Migdal & Hayden<br>Yaniv Adar<br>Joshua A. Migdal |

| | |
|---|---|
| and Healthy Way RX, LLC | 80 S.W. 8th Street<br>Suite 1999 |
| Bretton I Pollack<br>Pollack, Pollack & Kogan, LLC<br>Courthouse Tower<br>44 W Flagler Street, Suite 2050<br>Miami, FL 33130<br>Tel: 305-373-9676<br>Brett.pollack@ppkfirm.com<br>B@birvingpollack.com<br>Attorneys for Inspire Now | Miami, FL 33130<br>Tel: 305-374-0440<br>yaniv@markmigdal.com<br>josh@markmigdal.com<br>eservice@markmigdal.com<br>Attorneys for Jolly Dollar Supply Company |

JOHNSON DABOLL ANDERSON, PLLC