# EXHIBIT E

Page 1

```
 1                UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                      MIAMI DIVISION
 3             Case Number:  1:19-CV-22702-KMW
 4      MIAMI DIVISION; NOAH MALGERI;
        KAYLYN WOLF; BILL WILSON;
 5      SHANNON HOOD; ERIC FISHON;
        and ROBERT MCKEOWN, on behalf
 6      of themselves and
        all others similarly situated,
 7
                  Plaintiffs,
 8        vs.
 9      VITAMINS BECAUSE, LLC;
        CT HEALTH SOLUTIONS, LLC;
10      GMAX CENTRAL; INSPIRE NOW PTY,
        LTD d/b/a BoostCeuticals;
11      RX, LLC; KHAKIWARE, INC.;
        and JOLLY DOLLAR SUPPLY
12      COMPANY, LLC,
13                Defendants.
        _____/
14
15
16              VIDEO CONFERENCE DEPOSITION
17                         OF
18                    SHANNON HOOD
                  (Appearing via Zoom.)
19
20      TAKEN BY:     VITAMINS BECAUSE AND
                      CT HEALTH SOLUTIONS
21
22      DATE:        Friday, November 19, 2021
23      TIME:        9:32 a.m. - 12:55 p.m.
24      PLACE:       Video Conference (ZOOM)
25
```

Page 58

1  you purchased had less active ingredients than was on the
2  label?
3      MR. BRODY: Object to form. Calls for
4      expertise.
5      A. I believe they were tested in a lab and it turned
6  turned out that they were like not testing out to what the
7  label said.
8  BY MR. O'BRIEN:
9      Q. Why do you believe that?
10     A. Because they were tested in an independent lab and
11  that's how it came back. I checked and the lab was right.
12     Q. My question is: Why do you think the product was
13  tested?
14     MR. BRODY: I'm going to instruct the witness
15     not to reveal any attorney-client information. You
16     can answer.
17     A. I believe they were tested in an independent lab.
18  I believe when they came back, the dosage wasn't what was on
19  the label. I didn't like hire the lab, so...
20  BY MR. O'BRIEN:
21     Q. Sure. And obviously you took all of this first
22  bottle, so you couldn't have that product tested; is that
23  right?
24     A. That would be correct.
25     Q. The third Amended Complaint on your behalf alleges

Page 59

1  that you made a second purchase of SAM-e on May 14th of
2  2018. Do you have any recollection of making that purchase?
3      MR. BRODY: Same objection.
4      A. Not specific to that date.
5  BY MR. O'BRIEN:
6      Q. Do you recall receiving the second bottle of SAM-e
7  sometime in May 2018?
8      A. I recall receiving bottles as I ordered them.
9  I don't recall specifically receiving one in that.
10     Q. Was the second purchase also made through Amazon?
11     A. Yes.
12     Q. Do you recall noticing anything unusual about the
13  second purchase?
14     A. No.
15     Q. Do you remember why you made a second purchase?
16  Was that because you had used all of the first bottle?
17     A. Yes.
18     Q. So you made some sort of decision to continue to
19  use the product?
20     A. Yes.
21     Q. Did you take all of the pills in the second bottle
22  of SAM-e purchased from ASquared?
23     A. Yes.
24     Q. What did you do with the bottle?
25     A. I would have recycled it.

Page 60

1      Q. Did you take any pictures of the bottle?
2      A. No. I would have no reason to do that.
3      Q. And again, because you took all of the pills in the
4  bottle, you wouldn't have been able to have any of that
5  tested for potency or anything like that?
6      A. Correct.
7      Q. Do you think it would be important to have the
8  product you consumed to be checked for potency?
9      MR. BRODY: Object to form. Calls for legal
10     expertise.
11     A. For me to personally have it tested?
12  BY MR. O'BRIEN:
13     Q. Not you personally. Anyone.
14     A. I think by the time something is available for sale
15  it should have been tested.
16     Q. I'm talking about your individual purchases.
17  Do you think it's important to have the pills that you
18  purchased tested for potency?
19     MR. BRODY: Object to the form.
20     A. The ones that I had shipped to my house?
21  BY MR. O'BRIEN:
22     Q. Yes.
23     A. No because I don't see why they would be any
24  different than the other pills.
25     Q. Would it surprise you to know there could be some

Page 61

1  variance between bottles of supplements in terms of potency?
2      MR. BRODY: Object to form. lack of
3      foundation. Counsel, do you want to restate and
4      give a foundation question?
5      MR. O'BRIEN: No.
6  BY MR. O'BRIEN:
7      Q. Ms. Hood, you can answer the question.
8      A. I think that with anything, there's probably
9  a certain threshold of, you know, what's accessible.
10  Like when you get blood work done, there's a threshold with
11  a margin of error. I mean it's negligible. I'm sure
12  there's some degree of difference but I would think that
13  there's some mechanism in place to make sure that everything
14  is meeting a threshold as to what it says on the label.
15  BY MR. O'BRIEN:
16     Q. So how do you know whether the SAM-e purchased you
17  met or didn't meet that threshold?
18
19     MR. BRODY: Object to form. Asked and
20     answered and calls for expertise.
21     A. How do I know?
22  BY MR. O'BRIEN:
23     Q. Yeah.
24     A. I don't know. I'm trust what I'm purchasing.
25  If something says 400 milligrams on the label, I trust that.

16 (Pages 58 - 61)

Page 62

1    Q.  What would you do if you were going to verify that
2    that was the case?
3         MR. BRODY:  Object to form.
4    A.  I don't understand.
5    BY MR. O'BRIEN:
6    Q.  Could you have have product tested to confirm the
7    label is accurate?
8    A.  I wouldn't know how to do that.
9    Q.  Could you reach out to a lab?
10        MR. BRODY:  Object to form.
11   A.  Probably not a vitamin lab.  I don't know.
12   I wouldn't know how to do that.
13   BY MR. O'BRIEN:
14   Q.  I liked the answer that you gave about the
15   threshold; I think I can ask the question a little clearer
16   that way.
17        So with any product or item that you receive, there
18   is some, like you said, threshold level; is that right?
19        MR. BRODY:  Object to form.
20   A.  A negligible threshold.
21   BY MR. O'BRIEN:
22   Q.  Okay.  And so my question is:  How do you know the
23   SAM-e that you purchased was under that threshold?
24        MR. BRODY:  Object to form.  Calls for
25   expertise.

Page 63

1    A.  Can I answer?
2    BY MR. O'BRIEN:
3    Q.  Yes.
4    A.  How do I know?  Because I don't know that the
5    individual pill that I consumed not exceeded or fell below
6    whatever threshold would be acceptable.  There's no way to
7    tell.  I opened the bottle and consumed the pills.
8    BY MR. O'BRIEN:
9    Q.  The Complaint alleges your third purchase of SAM-e
10   from ASquared was on August 7th, 2018; so about three months
11   after the May purchase.  Do you have any recollection of
12   making that may purchase?
13   A.  No.
14   Q.  Had you hired your attorneys yet?
15        MR. O'BRIEN:  Object to form.
16   A.  I don't recall.
17   BY MR. O'BRIEN:
18   Q.  At any point after hiring your attorneys, did you
19   buy additional SAM-e from ASquared?
20        MR. BRODY:  Object to form.
21   A.  I believe when I saw that news article on online,
22   I stopped taking it or stopped buying it.  I don't know if
23   I still had any left over when I saw that.  I can't recall.
24   BY MR. O'BRIEN:
25   Q.  Do you have any recollection of receiving the third

Page 64

1    purchase in August of 2018?
2    A.  Not specifically.
3    Q.  Do you remember noticing anything unusual about the
4    packaging, the bottle, the pills when you opened it?
5    A.  I've never received an unusual package.
6    Q.  Your knocking out my questions proactively now.
7    I appreciate it.  Did you take all of the SAM-e in that
8    purchase?
9    A.  I believe I did.
10   Q.  What did you do with the bottle?  Did you recycle
11   it like the previous two?
12   A.  Yes.
13   Q.  Did you take any pictures of the bottle at all?
14   A.  No.
15   Q.  And obviously because you took all of that bottle,
16   you didn't have any of that bottle of SAM-e tested for
17   potency; is that correct?
18   A.  Correct.
19   Q.  The Complaint alleges your fourth purchase was in
20   December of 2018, again, four months after the third
21   purchase.  Do you have any independent recollection of
22   making that purchase?
23   A.  No.
24   Q.  Would that also have been through Amazon?
25   A.  Yes.

Page 65

1    Q.  Do you have any recollection of receiving the
2    SAM-e from ASquared in December of 2018?
3    A.  No.
4    Q.  Do you remember seeing anything unusual when about
5    the the bottle or the pills upon opening it?
6    A.  No.
7    Q.  Did you take all of this fourth bottle of
8    SAM-e from ASquared?
9    A.  I believe so.
10   Q.  And did you recycle this bottle similar to the
11   other ones?
12   A.  Yes.
13   Q.  Did you take any pictures of this fourth bottle?
14   A.  No.
15   Q.  And as you took all of the product in the fourth
16   bottle, is it fair to say you didn't have any pills in that
17   bottle tested for potency?
18   A.  That is correct.
19   Q.  So at this point from February of 2018 through
20   December of 2018 you've purchased four separate bottles of
21   ASquared SAM-e and consumed all of the product; is that
22   correct?
23   A.  That sounds correct.
24   Q.  And still, despite taking all that, is it your
25   testimony that you experienced no positive side effects from

17 (Pages 62 - 65)

Page 66

1   this product?
2        MR. BRODY:  Objection, asked and answered
3   multiple times.
4        A.   Again, over the course of the year, you feel good
5   sometimes.  You feel lousy sometimes.  I can't specifically
6   attribute anything to any one thing.
7   BY MR. O'BRIEN:
8        Q.   Is it fair to say that you continued to take the
9   product because you thought it could have been helping you?
10       A.   Yes.
11       MR. BRODY:  Object to form.  Misstates prior
12   testimony.
13  BY MR. O'BRIEN:
14       Q.   All right.  The Complaint alleges your final
15  purchase of SAM-e from ASquared was in March of 2019.  Do
16  you have any recollection of making that purchase?
17       A.   No.
18       Q.   Was that from Amazon?
19       A.   Yes.
20       Q.   Do you recall receiving that purchase?
21       A.   Not specifically.
22       Q.   Do you recall anything unusual about the bottles or
23  ally pills when you received it?
24       A.   No.
25       Q.   Did you take all of the SAM-e that you purchased?

Page 67

1   And I'm referring to the fifth purchase.
2        A.   I can't recall if I took any of the last bottle.
3        Q.   Do you have any of the last bottle at present?
4        A.   No.  That would mean I took it all.
5        Q.   Fair.  What did you do with the five bottle?
6        A.   If there were any left, I'm sure I threw away the
7   medication out recycled the bottle but I can't say if it was
8   an empty bottle or not.  The bottle itself would have been
9   recycled.
10       Q.   And this was in March of 2019.  Do you remember if
11  you had hired your attorneys at this point?
12       A.   When I purchased it?
13       Q.   Yeah.  As of the time of the purchase of March
14  2019.
15       A.   I don't believe I would have but I can't say with
16  100 percent certainty.  I don't believe so.
17       Q.   And did you have any of that product, being the
18  fifth purchase, tested for potency?
19       A.   No.
20       MR. BRODY:  Let's take a five-minute break.
21       MR. O'BRIEN:  Yes, let's take a break.
22       (At 11:24 a.m. a break was taken.)
23       (At 11:38 a.m. the following proceedings
24  were resumed.)
25  BY MR. O'BRIEN:

Page 68

1        Q.   Ms. Hood, I'm showing you a document that I've
2   marked for today's deposition as Exhibit Two.  This is
3   titled an Amended Class Action Complaint From The United
4   States District Court In The Eastern District Of
5   Pennsylvania.  Do you recognize this exhibit?
6        MR. BRODY:  Counsel, I'm just going to object
7   to the use of this exhibit.
8        MR. O'BRIEN:  Why?
9        MR. BRODY:  Just because it hasn't been
10  produced in discovery.
11       Go ahead.
12  BY MR. O'BRIEN:
13       Q.   Ms. Hood, do you recognize this document?
14       A.   Is this the one you showed me earlier?
15       Q.   No, this is a different document.  Take a second
16  and take a look at the first page.  Do you want me to Zoom
17  in a little bit?
18       A.   No, that's good where it's at.  Do I need to pay
19  specific attention section of the... (unintelligible)
20       Q.   No.  Just look at the first page and see if any of
21  the substance your memory as to whether you've ever seen
22  this document before.
23       A.   I know that my Complaint has been amended.
24       Q.   So I'm going to represent to you that this is not
25  a document from this lawsuit.

Page 69

1        A.   What is it?  Coverage (phonetic)...(unintelligible)
2        THE COURT REPORTER:  Counsel, Ms. Hood is
3   breaking up.
4        MR. O'BRIEN:  Let's go off the record.
5        (Off the record.)
6        (On the record.)
7   BY MR. O'BRIEN:
8        Q.   So, Ms. Hood, I was asking you to review the first
9   page of this document and let me know if you recognize the
10  document; and I did so with the qualification that this is
11  not related to your current lawsuit that you're being
12  deposed about today.
13       A.   Obviously I recognize my name.  I'm not sure what
14  healthy beverage is.
15       Q.   Do you know why your name is included as a
16  plaintiff in this lawsuit?
17       A.   My understanding -- and I don't understand the
18  details -- but the general way things are set up is there
19  are distributers, there are sellers, there are logistics
20  people.  I'm not clear on exactly who plays what part ih
21  everything.  So maybe that company has something to do with
22  the company that I've dealt with in purchasing that, is my
23  best guess.
24       Q.   Do you have understanding of whether you're seeking
25  to be a class representative in this other lawsuit that's

18 (Pages 66 - 69)