IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:19-CV-22702-KMW

NOAH MALGERI, KALYN WOLF, BILL
WILSON, SHANNON HOOD, ERIC
FISHON, and ROBERT MCKEOWN on
behalf of themselves and all others similarly
situated,

    Plaintiffs,

vs.

VITAMINS BECAUSE LLC, CT HEALTH
SOLUTIONS LLC, GMAX CENTRAL
LLC, and ASQUARED BRANDS LLC,

    Defendants.
_____

## PLAINTIFFS' MOTION TO STRIKE DEFENDANT VITAMINS BECAUSE'S EXPERT WITNESS AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Rules 26 and 37 and L. R. 7.1, Plaintiffs, Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, Eric Fishon, and Robert McKeown (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, by and through undersigned counsel, hereby move for sanctions and to strike Defendants Vitamins Because LLC and CT Health Solutions LLC's (collectively, "Vitamins Because" or "VB" or "Defendant") Expert Witness, Dr. Ross and exclude his testimony in the case, and state as follows:

### I.    INTRODUCTION AND FACTUAL BACKGROUND

On November 29, 2021, Defendant Vitamins Because disclosed Dr. Neil Ross of N2 Pharma LLC as a "hybrid expert witness" for Vitamins Because pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Vitamins Because's Hybrid Expert Witness Disclosure, Exh. 1. Vitamins Because's disclosure indicates that Dr. Ross was expected to testify as a fact witness

1

regarding his involvement with Vitamins Because's manufacturing of SAMe supplements, as well as offer expert opinions regarding the quality of its manufacturing process and adherence to FDA and GMP guidance and recommendations. *Id*. However, no expert report was produced by Vitamins Because pursuant to Rule 26(a)(2)(B).

At the December 16, 2021 Discovery Hearing, Plaintiffs objected to Vitamins Because's designation of Dr. Ross as an expert under Rule 26(a)(2)(C). *See* Plaintiffs' December Notice of Compliance, ECF No. 266, at 4-6. It was Plaintiffs' position that Dr. Ross was required to provide a complete written report pursuant to Rule 26(a)(2)(B) because Dr. Ross was *now* being specially retained as an independent contractor to provide expert testimony in the case. *Id*, at 4-5. Moreover, Dr. Ross has never been a regular, continuous employee of Vitamins Because; he was, rather, solely contracted for specific work and projects, and not a regular employee of the company. *Id*. (Citations omitted). Plaintiffs also argued that regardless of Dr. Ross' prior contractual status with Defendant, his role with the company has now changed, and because he is now functioning as a retained expert, a full expert report pursuant to to Rule 26(a)(2)(B) was required. *Id*. (citing to Rule 26(a)(2)(B); *Torres v Wal-Mart Stores E., L.P*., 19-62352-CIV, 2021 WL 3634632, at *11, n.16 (S.D. Fla. Aug. 17, 2021)).[1]

While Magistrate Torres did not adopt Plaintiffs' position that Defendant was necessarily required to produce a full expert report pursuant to Rule 26(a)(2)(B), he did expressly adopt Plaintiffs' alternative position that Vitamins Because's witness disclosure failed to fulfill even

---

[1] Plaintiffs also argued that courts in this district have long recognized that experts offering opinions beyond those arising from their prior work are experts from whom full Rule 26(a)(2)(B) reports are required. *See* ECF No. 266, at 4-5; *In re Denture Cream Prod. Liab. Litig*., 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) (Altonaga, J.) (emphasis added); *see also Pringle v. Johnson & Johnson*, 2019 WL 6723822, at *2 (S.D. Fla. Dec. 11, 2019) (Marra, J.); *Cajule Cedant v. United States*, 2021 WL 2895714, at *4 (S.D. Fla. July 9, 2021) (Scola, J); *Torres v. First Transit, Inc*., 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (Bloom, J.).

the lesser disclosure and summary requirements under Rule 26(a)(2)(C). December 16, 2021 Discovery Hearing Transcript, Exh. 2, at 12-14, 21-22 (granting Plaintiffs' motion to compel to require more specific Rule 26(a)(2)(C) disclosures that specifically identify any opinion that Dr. Ross may offer and its factual basis.). *See generally* Exh. 2, at 5-22. Beyond stating the general subject matter on which Dr. Ross is expected to testify, Defendant's disclosure plainly failed to outline "a summary of the facts and opinions to which the witness is expected to testify." Rule 26(a)(2)(C); Fed. R. Civ P. 26 advisory committee's notes to 2010 amendment (noting that non-retained expert must also provide "the facts supporting [the expert's] opinions"); Exh. 1; Exh. 2, at 12-14, 21-22 (finding general references to general subjects insufficient for Rule 26(a)(2)(C) disclosures.). "While the summary [of the facts and opinions which] Rule 26(a)(2)(C) requires is considerably less extensive than the report required by Rule 26(a)(2)(B), a party must do more than identify[ ] generic subject areas of anticipated testimony, without identifying the actual substance or content of the opinions on which testimony is expected." *Torres v. Wal-Mart Stores E., L.P.*, 2021 WL 3634632, at *17 (citing *Almonte v. United States*, 2021 WL 3418402, at *3 (S.D. Fla. Apr. 21, 2021) (Marra, J.)).

Here, Defendant's November 29th Expert Disclosures failed to identify the specific opinions and supporting facts that Dr. Ross would be offering in the case or at trial, and instead summarily listed a few topics generally and in a wholly conclusory way. Exh. 1. For this reason, the Magistrate ruled that Defendant's expert disclosures did not comply with Rule 26(a)(2)(C)(ii). Exh. 2, at 12-14, 21-22. *See also See* ECF No. 266, at 5-6; *Torres v. Walmart Stores E., L.P.,* 16-60984-CIV, 2017 WL 8780915, at *3 (S.D. Fla. June 9, 2017) ("bare-bone disclosures" -- that do not identify what the expert opinions are or even hint at the nature of the opinions – "are prohibited under the Federal Rules because they leave defendants in the dark as

to the content and context of treating physician opinion testimony."); *Jones v. Royal Caribbean Cruises, Ltd.*, 12-20322-CIV, 2013 WL 8695361, at *4 (S.D. Fla. Apr. 4, 2013) (expert disclosures cannot be too abbreviated to provide the opposing party with any insights as to the pivotal parts of the expert's testimony.).

Plaintiffs' discovery motion and notice of compliance served to put Vitamins Because on notice that its expert disclosure did not comply with Rule 26(a) requirements and requested more specific disclosures pursuant to the federal rules to cure any potential surprise prior to expert depositions and the expert discovery cutoff. *See* ECF No. 266, at 6; *Torres v. Wal-Mart Stores E., L.P.*, 2021 WL 3634632, at *14 (permitting district courts the discretion to require more fulsome disclosures—beyond those prescribed in Rule 26(a)(2)(C) —for non-retained experts."). The Magistrate's Orders at the conference made clear that Defendant was required to amend its expert disclosures and provide a full summary of all *facts and opinions* to which Dr. Ross was expected to testify. Exh. 2, at 12-14, 21-22.

Despite the Magistrate's clear directives, Defendant utterly failed to issue any further amended or supplemental expert disclosures by December 31, 2021, the deadline set by the Court for expert rebuttal reports and expert discovery cut-off. ECF No. 244. Similarly, Defendant refused to produce or offer any meaningful response to Plaintiffs' expert discovery demands. Defendant's Response to Plaintiffs' Fourth Request for Production, Exh. 3.[2] Thus,

---

[2] For each request, Vitamins Because summarily responded to the effect of: "Dr. Ross is not a retained expert in litigation and is not a party to this case. Vitamins Because is not in possession or control of Dr. Ross' file." *See* Exh. 3. Of course virtually the same document requests were also made directly to Dr. Ross as part of Plaintiffs' Notice of Deposition of Neil Ross. Exh. 5. No response or documents were produced by Dr. Ross prior to the date of his January 17th deposition.

The Notice of Deposition (Exh. 5) was provided to counsel for Defendant as they had represented that they were serving as Dr. Ross's contact. Exh. 1 (failing to provide Dr. Ross's

counsel for Plaintiffs was forced to prepare and then depose Dr. Ross without the benefit of any meaningful expert disclosures or insight into Dr. Ross's actual expert opinions. *See* Exh. 1.

At 9:32 AM on January 17, 2022, the last day of discovery (*see* ECF No. 244, at 2) and less than thirty (30) minutes before the scheduled start of Dr. Ross's deposition, counsel for Plaintiffs received an email from Defendant's counsel which purported to include Defendant's "Amended Hybrid Expert Witness Disclosure." Exh. 4. In addition to waiting to serve it, until right before the start of the deposition, this self-styled "amended disclosure" was made more than forty-five (45) days after the November 29, 2021 deadline for Defendant's expert disclosures and two (2) weeks after the parties' rebuttal expert reports were due!

Of course, Defendant's "Amended Hybrid Expert Witness Disclosures" (Exh. 4) amended little from the prior disclosures (Exh. 1) and provided no meaningful cure for the lack of opinions and facts to which Dr. Ross was expected to testify. Exh. 4. Like the prior disclosures, the "amended disclosures" make vague references to testimony about Defendant's "manufacture of SAMe," "manufacturing records," "the adequacy of the SAMe product," "the FDA inspection," and unspecified "actions" taken by Defendant following the inspection – but present no actual opinions or testimonial content. Similarly, the "amended disclosures" make only vague references to Dr. Ross's factual basis, such as his "involvement with and counseling with regards to Vitamins Because's manufacturing process" and unspecified "manufacturing records." No explanation regarding what involvement or which counseling, or an explanation of which records or their contents was provided. All in all, the amended disclosure added only a

---

address or contact, instead *disclosing that all communications with Dr. Ross would be handled through counsel for Vitamins Because*.). Despite these disclosures, counsel for Defendant later denied ever representing Dr. Ross in any capacity. *See* Exh. 3.

5

few new sentences the disclosures and otherwise simply repeats the prior disclosures word for word *verbatim*. *See* Exhs. 1 and 4.

Despite assurances by counsel for Defendant at the December Discovery Hearing to the contrary (*see* Exh. 2, at 9-11, 20), the amended expert disclosure makes little indication that Dr. Ross's expert opinion will be limited to his "firsthand knowledge" from his pre-litigation work performed for the company as a consultant. Exh. 4. It rather suggests that Dr. Ross will opine generally regarding "the adequacy of the SAMe product manufactured by Vitamins Because" during the class period, but not necessarily to observations he may have made during his prior work as a consultant. *Id*. Such expert opinions are not specified.[3] *Id*. Any facts (beyond general references to observations and unspecified manufacturing records) which might serve as a basis for his assertions are similarly absent. *Id*.

The testimony of Dr. Ross at his deposition confirmed the Plaintiffs' counsel's fears that the expert "opinions" disclosed by Defendant as to the adequacy of the SAMe supplements and alleged manufacturing parameters to ensure its reliability went beyond Dr. Ross's personal observations and work at the company. Dr. Ross testified that never actually observed Vitamins Because actual fix their manufacturing problems or implements the cGMP improvements which he recommended, but instead just presumed that the company got them done. Dr. Ross Deposition Transcript, Exh. 6, at pp. 57-58, 70, 84-85. He also stated that he played no role in the SAMe manufacturing process beyond sending over batch records which showed the company how it should be done. Exh. 6, at p.92. He never once supervised Vitamins Because manufacturing of SAMe and was present in their manufacturing facility, at most, on a once a

---

[3] At Dr. Ross' deposition, counsel for Defendant even took the position that because Dr. Ross was "not a retained expert, **so he's not going to have predestined opinions**." Dr. Ross Deposition Transcript, Exh. 6, at p.58 (emphasis added).

week basis for a few months. Exh. 6, a p. 65, 110. In fact, Dr. Ross recalled seeing only a single set of test results for Vitamins Because's SAMe supplements despite confirming that the company was required by the C.F.R. to test all batches of finished product, perform other internal testing, and retain all assay test results. Exh. 6, at pp. 155-156. Ultimately, Dr. Ross explained that he couldn't fairly form an opinion on the adequacy of SAMe product in question because he hadn't examined enough records or issues in the case. Exh. 6, at pp. 85-87.[4]

To even greater surprise, Dr. Ross' testimony at the deposition revealed that he played no role in drafting any version of Defendant's expert disclosures (which was written by Defendant's counsel who nonsensically claimed not to represent him) and which he stated he had no prior awareness of. Dr. Ross Deposition Transcript, Exh. 6, at pp. 89-90. Dr. Ross further testified that the areas he was cited as providing testimony on were not areas he had been involved in and bore little correlation to his actual knowledge, observations, or opinions concerning issues in the case. *Id*., at 57-58, 84-88 (testifying that he never actually observed Defendant ever implementing his recommended corrective practices and advice on how to comply with cGMP standards). Dr. Ross even expressly denied knowledge about some issues referenced in this expert disclosure. *Id*. (explaining that he only observed one SAMe batch record; was unaware of assay test results revealing that Defendant's SAMe product failed to meet label claim and other documentation; and that *he generally could not form an opinion as to the adequacy of the subject product SAMe* because he hasn't seen enough testing records.). Dr. Ross further confirmed that he possessed little to no knowledge concerning the allegations and claims in the case *id*., at 96, and had virtually no meaningful conversations with counsel for Vitamins Because about his knowledge

---

[4] Defendant's disclosures and representation at the December hearing also exaggerate Dr. Ross' involvement in the company's response to the FDA inspection finding numerous regulatory violations. *See* Exh. 2, at 9, 12, and Exh. 4.Dr. Ross testified that he recalls only glancing at the last 2 quarterly reports sent to the FDA. Exh. 6, at 70.

7

and opinions on any case matters or what was expected of him as an expert witness in this case. *Id.*, at 89-90, 95-96. Stunningly, Dr. Ross said he had no intention of offering testimony (at trial or otherwise) beyond his testimony at the January 17th deposition. Id., at 61.[5]

Following the deposition and the close of all discovery, Dr. Ross suddenly provided counsel for Plaintiffs with a number of case-critical documents which he had in his file and which Plaintiffs had requested of Defendant and Dr. Ross many weeks prior. *See e.g.* "SAMe Formulation sheet," Exh. 7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Exhs. 3 and 5 (Plaintiffs' document requests to Defendant and Dr. Ross). Because of their untimely production (i.e., on the last day of discovery) these documents were not able to be used by Plaintiffs in their expert reports, rebuttal reports, or as exhibits at Dr. Ross' deposition. Other records which Dr. Ross confirmed at the deposition are in the possession of Defendant have still not been produced. Dr. Ross Deposition Transcript, Exh. 6, at pp. 67-68 (confirming that Defendant submitted quarterly reports to the FDA which they knowingly possess along with other Vitamins Because-FDA communications.). Further supplementation to Dr. Ross' expert disclosures providing his expert opinions and factual bases as required by Rule 26(a) has still not been made.

## II. ARGUMENT
### a) Legal Standard

---

[5] Q: So your understanding is that you're only going to be testifying at this deposition?
A: Yes, as far as I know, yeah.

Dr. Ross Deposition Transcript, Exh. 6, at p.61.

8

Rule 26(a)(2) requires a party to disclose the identity of any expert it may use at trial. The disclosure and written report must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D)(i). Even expert witnesses who are not required to provide a full written report pursuant to Fed. R. Civ. P. 26(a)(2)(C) must still include in their timely disclosures both "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." *Id*.

Courts in this circuit have repeatedly warned that compliance with Rule 26 is "not merely an aspiration" as "the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). Rule 26(a)(2) promotes the meaningful disclosure of expert opinions so that the opposing side can prepare for effective cross-examination and, if necessary, engage rebuttal experts. *Hyman v. Harrison*, 8:08-CV-1640-T-27MAP, 2009 WL 10670855, at *1 (M.D. Fla. Feb. 2, 2009) (citing *Reese*). *See also Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004); *Mars v. Macy's Florida Stores*, LLC, 0:19-CV-60687, 2019 WL 9078707, at *1 (S.D. Fla. Oct. 2, 2019).

For these reasons, where a party fails to provide information which is required under Rule 26(a), Rule 37 authorizes the Court to sanction that party. *See* Fed. R. Civ. P. 37(c). Under Rule 37, if a party fails to comply with Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive disclosure. The party failing to comply with Rule 26(a) bears the burden of establishing that its

nondisclosure was either substantially justified or harmless." *S.O.S. Resource Services, Inc. v. Bowers*, 2015 WL 6735540, at *1 (S.D. Fla. Nov. 4, 2015) (Citation omitted).

### b) Defendant Failed to Make Proper Expert Disclosures in Accordance with the Scheduling Order

In this case, there can be no doubt that Defendant's required expert witness disclosures were not completed by the Court imposed deadlines and must therefore be stricken pursuant to Federal Rule of Civil Procedure 37(c)(1). The Court's final Amended Scheduling Order required Defendant to disclose experts, expert witness summaries and reports by November 29, 2021, and for the parties to exchange rebuttal expert witness summaries and reports by December 31, 2021. ECF No. 244, at 2. This Court further found that Defendant's November 29th expert disclosures were inadequate and noncompliant with Rule 26(a) in that they included neither a report nor any actual opinions or exhibits and failed to provide the facts or data upon which the expert's opinions were based. Exh. 2, at 12-14, 21-22. Defendant then declined to even attempt to amend them until more than two weeks after the court-imposed deadline for serving expert rebuttal reports. Defendant has thus completely failed to abide by the deadlines set forth in this Court's Scheduling Order. *See S.O.S. Resource Services, Inc. v. Bowers*, 14CIV22789COOKETORRE, 2015 WL 6735540, at *3 (S.D. Fla. Nov. 4, 2015) (granting a party's motion to strike expert witness disclosure where the party had completely failed to abide by court deadlines for expert disclosures.); *Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*, No. 8:13-CV-1408-T-TBM, 2014 WL 12639973, at *3 (M.D. Fla. Oct. 28, 2014) ("Federal courts routinely strike expert reports or exclude expert testimony which is not timely disclosed."). As this court knows, this is a pattern under which Defendants have continually flouted the Court's orders in this case. *See* ECF No. 223 ("Order Granting Plaintiffs' Motion to Compel Discovery and for Sanctions").

### c) Defendant's Last-Minute Expert Disclosures Were "Too little, too late"

A quick review of Defendant's January 17th "amended disclosures" shows it to be little more than a joke and mockery of the Court's December 16th Order. *See* Exh. 4 and 2, at 12-14, 21-22 (Magistrate directing Defendant to supplement its expert disclosures with Dr. Ross' opinions and factual bases.). On the last day of discovery, and less than a half hour before the start of Dr. Ross' deposition, Defendant copied its prior wholly inadequate expert disclosures verbatim and simply added a few vague sentences purporting to state Dr. Ross' opinions and factual bases. *See* Exh. 4. But these "additions" suffer from the same flaws and inadequacies as Defendant's original disclosures. *See* Exh. 2, at 8-13 (Magistrate explaining that disclosure was insufficient because it speaks about "topics" but fails to set forth that Dr. Ross' opinion "is X based upon his factual knowledge.").[6] They add no disclosure of the contents of Dr. Ross' expert opinions, and beyond vague references to "manufacturing records" and his general "involvement" with the company, do not explain what precise sources he could be relying upon

---

[6] Magistrate Torres explained that the Defendant's Rule 26(a)(2)(C)disclosures must state Dr. Ross' ultimate opinion and probe questions as to how he reached his conclusions on issues such as the product reliability and Defendant's compliance with FDA requirements, and set forth his observations and involvement in the SAMe manufacturing process which permitted him to reach those conclusions. *See* Exh. 2, at 8-13.

Counsel for Defendant represented at the December 16th hearing that Dr. Ross was expected to testify about various matters, including: the FDA inspection and Vitamins Because's response which Dr. Ross helped develop; the creation of procedures so that the products were sufficiently labeled; Dr. Ross' general involvement with Vitamins Because, what he saw while working there and what he helped do; Dr. Ross' creation of parameters as to how they manufacture supplements; Dr. Ross' assisting with the FDA compliance process; Dr. Ross' assisting with the manufacturing process and helping ensure that the company's products were adequate and reliable; an ultimate opinion that the SAMe supplements were reliable and the specific processes, weighing, tests, and paperwork which were run to ensure the product's reliability; and what the finished product consisted of. Exh. 2, at 9-12. However, Dr. Ross' facts and opinions on these matters were never set forth in any version of Defendant's expert disclosures. *See* Exh. 2, at 12 (Magistrate requiring Defendant to disclose facts and opinions of Dr. Ross' expected testimony on matters which counsel for Defendant laid out at the conference.).

to reach these "opinions." Exh. 4. Simply put, they fail to provide "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Moreover, what little information the "amended disclosures" do provide are not actually accurate descriptions of Dr. Ross' opinions and observations while consulting for Vitamins Because. Exh. 6, at 57-58, 84-88; *see also infra*, at 6-7. Dr. Ross confirmed in his testimony that the disclosures were drafted exclusively by counsel for Defendant who never had any meaningful communication with Dr. Ross concerning his knowledge or opinions on issues in the case. *Id*. *See also* Exh. 2, at 13 (Magistrate directed counsel for Defendant to engage with the expert as to what his opinions in the case would be and put those in written disclosures before his deposition.). Counsel for Defendant, however, readily admitted that he has no control over Dr. Ross and what opinions he may offer. Exh. 2, at 13-14. And Magistrate Torres had directed that the disclosures be prepared by the expert himself based on his knowledge and opinions. Exh. 2, at 12.[7]

Thus, Defendant, given ample opportunity to "cure" its deficient expert disclosure, still failed to do so. *See Hinds v. Am. Sec. Ins. Co.*, 16-CV-20780, 2016 WL 8677901, at \*4 (S.D. Fla. Dec. 7, 2016) (citing *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 2010 WL 1837724, at \*4 (S.D. Fla. May 3, 2010)). Defendant cannot now excuse its lack of diligence to avoid sanctions for violation of the disclosure requirements under Rule 26. Such failure supports the preclusion of Dr. Ross from testifying or offering evidence at trial. *See id*. *See also S.O.S. Resource Services*, 2015 WL 6735540 at \*3 ("A court can only assist those parties who help themselves.").

---

[7] Court: "[J]ust like a doctor would be expected to put in a two-page letter *that the doctor prepares*, the ultimate opinion is X based upon his factual knowledge or her factual knowledge, I think that is what is missing in your disclosure." Exh. 2, at 12 (Emphasis added.).

Moreover, even if the "amended disclosures" had provided more substantial and accurate disclosures as to Dr. Ross' actual opinions and factual bases, the "amendments" were made at such a last minute, moments before the start of Dr. Ross' deposition and well after expert disclosure deadlines, that Plaintiffs were unable to make fair use of them in preparing and prosecuting their case. *Mars v. Macy's Florida Stores, LLC*, 0:19-CV-60687, 2019 WL 9078707, at \*2 (S.D. Fla. Oct. 2, 2019) (explaining how Eleventh Circuit precedent plainly requires a party to "disclose expert testimony *sufficiently in advance of the discovery cut-off*, so that the opposing party may adequately prosecute or defend their case without being subject to prejudicial surprise." (Citations omitted; emphasis added.)).

### d) Defendant's Failure was Not Substantially Justified or Harmless

In this case it is also clear that allowing Defendant's witness to testify under such circumstances would severely prejudice Plaintiffs who were not provided with meaningful and Rule 26-compliant expert disclosures in advance of the deadline for expert rebuttal reports (i.e. December 31, 2021) or Dr. Ross' deposition. Plaintiffs were thus prejudiced in that they were unable to prepare for a meaningful cross-examination or identify rebuttal witnesses or arguments. *See Hyman*, 2009 WL 10670855 at \*1; *Cooper*, 390 F.3d at 728; *Mars*, 2019 WL 9078707, at \*1. And despite the Magistrate's orders on the matter (*see* Exh. 2, at 12-14, 21-22), Defendant intentionally played "hide-the-ball" and Plaintiffs suffered "surprise" as to what Dr. Ross's opinions actually were, what knowledge and (very limited) personal observations he actually had of the SAMe manufacturing process. Even today, after the deposition, there exists no definitive or complete record as to what constitutes Dr. Ross' expert opinions in all matters of the case or his factual bases (through observations and written records) for those opinions. Exh. 6, at 55-58, 84-88 (explaining that he's unsure and confused as to whether he's providing expert

testimony in the case and on what issues.). *See also Reese*, 527 F.3d at 1266 (explaining that expert witness discovery rules are designed to allow adequate preparation by the parties and prevent surprise.).

As courts have explained, the exchanging of expert reports and disclosures is "not intended as a make-work device, but rather as meaningful provision which eliminates unfair surprise to the opposing party and the conservation of resources by providing notice of the specifics of the expert's expected testimony." *Access Now Inc. v. Macy's E., Inc.*, 99-9088-CIV, 2001 WL 36380366, at *1 (S.D. Fla. Oct. 22, 2001) (Citations and quotations omitted.). "Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion." *Id.*, at 4. This was and continues to be Plaintiffs' predicament with Defendant's expert and his lack of disclosures. As in *Mars*, 2019 WL 9078707, at *2, Defendant's lack of disclosures prevented Plaintiff from: (1) effectively cross-examining Dr. Ross concerning his expert conclusions; (2) conducting additional discovery concerning the Dr. Ross' opinions; and (3) preparing and exchanging a report to rebut the Experts' opinions. *See also Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-23074-CIV, 2014 WL 3764126, at *3 (S.D. Fla. July 30, 2014) (striking expert where untimely disclosure caused defendants prejudice.).

Because the deficiencies in Defendant's expert disclosures go to the very opinions and facts to be offered by their expert as to core issues of liability in the case (e.g., adequacy of the SAMe supplements, compliance with FDA regulations, etc.), there can also be no doubt as to the importance of the omitted information and its prejudice to Plaintiffs if Dr. Ross' testimony and opinions are to be admitted. *See Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009). Moreover, Defendant was specifically directed by the Magistrate to provide Rule 26(a)

compliant disclosures (Exh. 2, at 12-14, 21-22), and therefore cannot offer an acceptable explanation for its failure to timely disclose well in advance of the expert rebuttal and discovery deadlines. *See id.* The Magistrate's directive means that Defendant was, by all accounts and reason, required to materially amend it disclosures and provide both the actual opinions and facts of Dr. Ross' testimony in the case. *S.O.S. Resource Services* 2015 WL 6735540, at *1 ("Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.").

### e) Expert's Opinions Must be Stricken for Lack of Expert Report

In determining whether or not Dr. Ross was required to provide a full expert report pursuant to Rule 26(a)(2)(B), the Magistrate noted that the critical issue was what was the source of his opinions and information. Exh. 2, at 18. To the extent that Dr. Ross' opinions were based solely on his work that he performed at Vitamins Because during the relevant time and the facts he gathered from that experience, then he could properly be treated as a Rule 26(a)(2)(C) expert and properly proceed without any expert report. Exh. 2, at 18. However, to the extent that his opinions would extend beyond his work at the company, an expert report would be required. Exh. 2, at 18-20.

Based on Defendant's counsel's representation that all of Dr. Ross' opinions were formed contemporaneous with his consulting work for Defendant, the Magistrate found that Dr. Ross would qualify as a Rule 26(a)(2)(C) witness to which Plaintiffs were entitled to better disclosures, but not a full Rule 26(a)(2)(B) report. Exh. 2, at 20-21. The Magistrate, however, specifically warned that, should Dr. Ross' deposition testimony reveal otherwise, Plaintiffs would have grounds to ask the Court to strike Dr. Ross as a witness. Exh. 2, at 21.

15

To this end, Dr. Ross' deposition testimony as to the scope of what opinions he could offer in the case, while confusing and unclear (*see* Exh. 6, at 55-58, 84-88), do appear to undermine the assurances counsel for Defendant had provided the Court. As explained *supra*, at 6-7, Dr. Ross clarified that he, in fact, observed very little regarding Defendant's SAMe manufacturing and records, and therefore could not form an opinion regarding the SAMe supplements in question based on those experiences. *See e.g.*, Exh. 6, at 65, 85-87, 92, 110. Moreover, he indicated that his opinions may extend beyond his work with Defendant and factual observations on the job, even suggesting that he could offer an expert opinion on matters based on his "knowledge of industry" and other matters. *See* Exh. 6, at 56. As no expert report pursuant to Rule 26(a)(2)(B) was ever produced concerning these opinions and their bases, Plaintiffs accordingly move to strike Defendant's expert witness pursuant to the Magistrate's December 16th directives. Exh. 2, at 21-22.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Strike Defendant Vitamins Because's Expert Witness and exclude his testimony in the case.

<u>MEET AND CONFER</u>

Pursuant to Local Rule 7.1, on February 4, 2022, before filing this motion, Plaintiffs' counsel met and conferred with counsel for Defendants regarding the relief sought. Defendant opposes the relief sought.

DATED: February 8, 2022.                    By:  */s/ Joshua H. Eggnatz*

Joshua H. Eggnatz, Esq.
Fla. Bar No.: 0067926
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: 954-889-3359
Fax: 954-889-5913
JEggnatz@JusticeEarned.com

*Local Counsel for Plaintiff and the Putative Class*

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com


Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com

*Counsel for Plaintiff and the Putative Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of notices of Electronic Filing generated by CM/ECF.

By: */s/ Joshua Eggnatz*

17

<u>**SERVICE LIST**</u>
**Malgeri, et al. vs. Vitamins Because, LLC, et al.**
**Case No.: 19-cv-022702-KMW**

<u>**Attorneys for PLAINTIFFS**</u>:

Joshua H. Eggnatz
**EGGNATZ | PASCUCCI**
7450 Griffin Road
Suite 230
Davie, FL 33314
Tel: 954-889-3359
JEggnatz@JusticeEarned.com

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com


<u>**Attorneys for DEFENDANTS:**</u>

*Defendants*, **VITAMIN BECAUSE LLC**
<u>**and CT HEALTH SOLUTIONS LLC**</u>:

David S. Johnson (FBN 96423)
**JOHNSON DABOLL ANDERSON, PLLC**
2011 W. Cleveland Street, Suite F
Tampa, Florida 33606
Tel: 813-377-2499
Fax: 813-330-3156
djohnson@jdalegal.com

18

*Defendant*, **GMAX CENTRAL LLC:**

Leon N. Patricios (FBN 0012777)
Joseph I. Zumpano (FBN 0056091)
**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, FL 33134
Tel: 305-444-5565
Fax: 305-444-8588
lpatricios@zplaw.com
jzumpano@zplaw.com

Richard J. Oparil (Admitted *Pro Hac Vice*)
Kevin M. Bell (Admitted *Pro Hac Vice*)
**ARNALL GOLDEN GREGORY LLP**
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
Tel: 202-677-4030
richard.oparil@agg.com
kevin.bell@agg.com

*Defendant*, **ASQUARED BRANDS LLC:**

Alessandro A. Apolito (FBN 0084864)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
822 N. A1A, Suite 101
Ponte Vedra Beach, Florida 32082
Tel: 904-660-0020
Fax: 904-660-0029
aapolito@lippes.com


Brendan H. Little (Admitted *Pro Hac Vice*)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
Tel: 716-853-5100
blittle@lippes.com