# EXHIBIT 2

1             UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
2
               CASE NO. 19-CV-22702-KMW
3
NOAH MALGERI, *et al.*,
4                                     Miami, Florida
              Plaintiff(s),
5                                     December 16, 2021
          vs.
6
VITAMINS BECAUSE, LLC, *et al.*,
7
              Defendant(s).      Pages 1 – 79
8    ------------------------------------------------------------

9                     DISCOVERY HEARING
              TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10             BEFORE THE HONORABLE EDWIN G. TORRES
                UNITED STATES MAGISTRATE JUDGE
11
APPEARANCES:
12
FOR THE PLAINTIFF(S):  JAY I. BRODY, ESQ.
13                     KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.
                       747 Chestnut Ridge Road
14                     Chestnut Ridge, NY 10977
                       (845) 356-2570
15                     jbrody@kgglaw.com

16

17                     JOSHUA H. EGGNATZ, ESQ.
                       EGGNATZ PASCUCCI, P.A.
18                     7450 Griffin Road
                       Davie, FL 33314
19                     (954) 889-3359
                       jeggnatz@justiceearned.com
20

21

22

23

24

25

```
 1    APPEARANCES (CONT'D)

 2

 3    FOR THE DEFENDANT(S):   SCOTT ANDERSON, ESQ.
      Vitamins Because        JOHNSON DABOLL ANDERSON, PLLC
 4    CT Health Solutions     2011 W Cleveland Street
                              Tampa, FL 33606
 5                            (813) 377-2499
                              sanderson@jdalegal.com
 6

 7

 8    FOR THE DEFENDANT(S):    DANIT DARMON, ESQ.
      GMAX Central, LLC        KEVIN WOLKENFELD, ESQ.
 9                             ZUMPANO PATRICIOS, P.A.
                               312 Minorca Ave
10                             Coral Gables, FL 33134
                               (305) 444-5565
11                             ddarmon@zplaw.com
                               kwolkenfeld@zplaw.com
12

13

14    FOR THE DEFENDANT(S):   SEAN O'BRIEN, ESQ.
      Asquared Brands, LLC    LIPPES MATHIAS WEXLER FRIEDMAN, LLP
15                            50 Fountain Plaza
                              Buffalo, NY 14202
16                            (716) 853-5100
                              sobrein@lippes.com
17

18

19    TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
20                            jemancari@gmail.com

21

22

23

24

25
```

```
 1   Thereupon,

 2   the following proceedings were held:

 3          THE DEPUTY CLERK:  Calling case Cora Ginsberg, et al.

 4   v. Vitamins Because, LLC, et al., case No. 19-22702, civil,

 5   Judge Williams.

 6          Counsel, please state your appearances for the record,

 7   starting with the plaintiff.

 8          MR. BRODY:  Good afternoon, your Honor.  This is Jay

 9   Brody, from the law firm of Kantrowitz Goldhamer & Graifman,

10   for the plaintiffs.

11          MR. EGGNATZ:  Good afternoon, your Honor.  Joshua

12   Eggnatz on behalf of the plaintiffs.

13          THE COURT:  Good afternoon.

14          MR. O'BRIEN:  Good afternoon, your Honor.  Sean

15   O'Brien, from Lippes Mathias, on behalf of defendant Asquared.

16          MR. ANDERSON:  Good afternoon, your Honor.  Scott

17   Anderson here on behalf of Vitamins Because and CT Health

18   Solutions.

19          MS. DARMON:  Good afternoon.  Danit Darmon, from

20   Zumpano Patricios, on behalf of defendant GMAX DXM Central,

21   LLC.  I haven't filed a notice of appearance for the case.  I

22   am filling in for Leon Patricios, who had a scheduling

23   conflict, and I am with my associate Kevin Wolkenfeld.

24          THE COURT:  Good afternoon.  Anybody on the phone?  I

25   know somebody wanted to appear.  Nobody has called in.
```

```
 1              THE DEPUTY CLERK:  Did anyone call in on the line?

 2              THE COURT:  No.

 3              THE DEPUTY CLERK:  No.

 4              THE COURT:  OK.  Have a seat.

 5          This is a discovery hearing in the case.  I don't

 6      remember who set it so we will just go through everybody who is

 7      here.

 8              Let me turn to counsel for the plaintiff in connection

 9      with the case.  I think our discovery cutoff is the 4th of

10      April, right?

11              MR. BRODY:  Your Honor, I believe it is January 17th,

12      if my memory serves me correct.

13              THE COURT:  We will doublecheck.  I have it as April

14      4, but it could be -- you have it as January 17th?

15              A VOICE:  Of 2022?

16              MR. EGGNATZ:  It is January 17th.

17              MR. BRODY:  Yes, your Honor.

18              THE COURT:  OK.  Doublecheck where you got the April

19      4th one.

20              OK.  Mr. Brody.

21              MR. BRODY:  OK, your Honor.  The first issue I'd like

22      to address, what I consider the primary issue, is Vitamins

23      Because's expert disclosure.

24              THE COURT:  OK.

25              MR. BRODY:  Vitamins Because has made an expert
```

1    disclosure, what they termed a hybrid expert witness, a

2    doctor --

3             THE DEPUTY CLERK:  Counsel, I'm sorry.  You are not

4    picking up on the microphone.

5             MR. BRODY:  I'm sorry.

6             THE COURT:  You can go ahead and sit down.  Since we

7    don't have a reporter, it is actually better for microphone

8    purposes to sit down.

9             MR. BRODY:  Sure.

10            THE COURT:  Go ahead.

11            MR. BRODY:  Can the court hear me now?

12            THE COURT:  Yes.  Even closer.

13            THE DEPUTY CLERK:  Just pull the microphone.

14            THE COURT:  Just go ahead and pull it to you.

15            MR. BRODY:  Can the court hear us now?

16            THE COURT:  Yes.

17            MR. BRODY:  I apologize.

18            THE COURT:  Go ahead.  You were saying.

19            MR. BRODY:  Yes.  The expert disclosure of Vitamins

20   Because, it presents and discloses certain subject matter which

21   the hybrid expert witness intends to testify about.  It doesn't

22   provide any facts or opinions.  At least that is our

23   understanding of it.

24            Plaintiffs' position is twofold.  First of all,

25   plaintiffs believe that a full expert report was required

1    pursuant to Rule 26(a)(2)(B).  In the alternative, plaintiffs

2    submit that the expert disclosure was still deficient under

3    26(a)(2)(C), and I could take your Honor through the reasons

4    behind my position.

5         I will start with the (a)(2)(B).

6         THE COURT:  Before you do that, just to make sure that

7    the disclosure was -- is this a Gayles case?  I'm trying to

8    remember.  No, it is a Williams case.

9         Some scheduling orders have an initial disclosure of

10   identification of a witness and topic in advance of the expert

11   report.  In this case what did Judge Williams' scheduling order

12   require that is at issue here?  In other words, is this simply

13   an identification of a witness as opposed to being a report?

14        MR. BRODY:  My understanding is that the expert

15   reports were due on the same day as disclosures, and expert

16   reports were due, this was the end of last month, I believe it

17   was.  The end of November.  For defendants, that is.

18        THE COURT:  OK.  Does the defendant agree for Vitamins

19   Because?

20        MR. ANDERSON:  Of the time line, yes, your Honor.

21        THE COURT:  OK.

22        MR. BRODY:  Yes.  That is the time line.

23        THE COURT:  OK.

24        MR. BRODY:  Plaintiffs' position that defendant was

25   required to submit a full expert report pursuant to 26(a)(2)(B)

1   is based on two reasons.

2        First of all, the expert Dr. Ross, although he might

3   have been hired by the company in the past to do certain work,

4   he is an independent contractor.  So in the past his work might

5   have been related to the business.  At this point he has

6   effectively morphed into an expert witness.  He is now being

7   paid as an independent contractor to provide expert testimony.

8   So for that reason I think it's clear that under 26(a)(2)(B) he

9   would be required to present a full expert report.

10       Secondly, it seems from the expert disclosure, at

11  least the way I read it, is that Dr. Ross intends to testify

12  about certain issues beyond his particular observations that he

13  had while working for the company as an independent contractor.

14  He's also intending to testify about the sufficiency of the

15  supplements.  That is, as I understand it, outside the scope of

16  his prior contractual work.  So in that regard he is a

17  traditional expert witness.  Again, under 26(a)(2)(B), I

18  believe, plaintiffs submit that he would be required to

19  disclose a full expert report.

20       In the alternative, your Honor, even under

21  26(a)(2)(C), it's plaintiffs' position that defendant Vitamins

22  Because's expert disclosure was wholly inadequate.  Like I

23  indicated before, it presents subject matter which the expert

24  intends to testify about.  It doesn't present the facts and it

25  doesn't present the content of the opinions.

1          I think your Honor has made clear in prior decisions,

2     and there is a whole host of case law in this district that

3     makes clear, that that is wholly inadequate, even for purposes

4     of (a)(2)(C) under Rule 26.

5          Those are the two issues that I would like to bring

6     before the court right now.

7          THE COURT:  Let me finish reading his disclosure.

8          MR. BRODY:  Sure.

9          (Pause)

10         THE COURT:  Turning to counsel for Vitamins Because,

11    it is my understanding that he was either employed by or

12    retained by your client at the time of some of the events,

13    including the FDA inspection that was at issue.

14         MR. ANDERSON:  That is correct, your Honor.  To

15    clarify, he has not been retained as a testifying expert.  He

16    falls into the category similar to that of a treating

17    physician.  He has not been given any documents outside of what

18    he was involved in.  He is not a retained testifying expert.

19         THE COURT:  Just for my record, you are Mr. Anderson,

20    right --

21         MR. ANDERSON:  Yes.

22         THE COURT:  -- representing Vitamins Because?

23         So your argument is that it would not be an expert

24    report disclosure but a 26(a)(2) disclosure, is that right?

25         MR. ANDERSON:  Yes.  26(a)(2)(C), your Honor.

1    THE COURT:  OK.

2    MR. ANDERSON:  We have identified that he was part of

3  the FDA proceedings or the FDA inspection and that he plans to

4  testify about the results of those that he was involved with,

5  and he was involved in coming up with procedures so that the

6  products were sufficiently labeled, etc., and he is expected to

7  testify about that.

8    THE COURT:  Obviously some of that is actual factual

9  testimony, but is he actually going to be called upon to give

10  an opinion based upon his expertise?  And what is his

11  expertise, by the way?  It is not clear here.  What is his

12  expertise?

13    MR. ANDERSON:  He is an FDA consultant.  He is an FDA

14  and GMP, good manufacturing practices, consultant.  He has his

15  own business, a Pharma business, where he comes in to --

16    THE COURT:  Pharmaceutically trained or medically

17  trained?

18    MR. ANDERSON:  Pharmaceutically trained.

19    THE COURT:  Pharmaceutically trained.  So will he

20  actually be asked to give an opinion or --

21    MR. ANDERSON:  He's -- I'm sorry, your Honor.

22    THE COURT:  That is OK.

23    -- or are you hedging your bet?  Because obviously his

24  knowledge of that process is arguably factual, right?

25    MR. ANDERSON:  Absolutely.

1          THE COURT:  But are you going to actually say, as you

2   would a treating physician, for example, you would say, in your

3   professional opinion do you believe that the plaintiff has

4   reached maximum medical improvement, and then the doctor will

5   say yes, right?

6          MR. ANDERSON:  Right.

7          THE COURT:  Or you will ask the doctor, do you believe

8   that this injury is reasonably related to the incident that

9   occurred involving this case, and the doctor will say yes.

10         MR. ANDERSON:  Sure.

11         THE COURT:  Is there something like that that you

12  would ask this person?

13         MR. ANDERSON:  I expect Dr. Ross to testify about his

14  involvement and what he saw and what he helped do there.  I

15  don't think there is a question that you could ask him that

16  would be pure opinion testimony.

17         THE COURT:  OK.

18         MR. ANDERSON:  He was involved in the process, he was

19  involved in making the parameters of how they manufacture the

20  things, and then he also helped to assist in the FDA process.

21         In rendering -- that is a bad choice of words, but in

22  helping Vitamins Because come up with their manufacturing

23  process and helping make sure that the products were adequate,

24  I mean, he certainly did testing or helped create a process

25  whereby the product was reliable.

```
1              THE COURT:  Right.

2              MR. ANDERSON:  So he may testify that the product was

3     reliable, but that is firsthand knowledge that he was involved

4     in --

5              THE COURT:  OK.

6              MR. ANDERSON:  -- in developing.

7              THE COURT:  Expand on that a little bit.  When you say

8     that he may testify that the product was reliable and in

9     accordance with what it was marketed as, what basis of

10    knowledge would he have to make that determination?

11             MR. ANDERSON:  Because he was there.  He helped put

12    the processes in place where you manufacture it, and during the

13    manufacturing process you weigh it X number of times, following

14    the manufacturing process you do X test, and he was involved in

15    putting together all the paperwork to show, basically show your

16    work, like you would in a math problem.  At 30 seconds it was

17    X; at 40 seconds it was X; at 60 seconds it was X, and the

18    finished product was Y.

19             THE COURT:  Right.

20             MR. ANDERSON:  So he would testify about what that

21    finished product was.

22             THE COURT:  OK.  In that case, then, outside of the

23    ultimate conclusion of reliability, any other opinion that he

24    might give?

25             MR. ANDERSON:  Just about his opinions related to the
```

 1   FDA inspection that he was a part of.

 2              THE COURT:  OK.

 3              MR. ANDERSON:  I mean, obviously he helped them

 4   develop their response to the FDA and in doing that he has

 5   knowledge about the FDA process, etc.

 6              THE COURT:  Right.

 7              MR. ANDERSON:  But he used that knowledge to help

 8   Vitamins Because respond.

 9              THE COURT:  So I guess technically then, doesn't the

10   plaintiff, technically under the rule, don't you need to

11   make -- for example, what you just explained to me --

12              MR. ANDERSON:  Sure.

13              THE COURT:  -- doesn't that have to be disclosed?

14   Because just like a doctor would be expected to put in a

15   two-page letter that the doctor prepares, the ultimate opinion

16   is X based upon his factual knowledge or her factual knowledge,

17   I think that is what is missing in your disclosure, because

18   you're talking about the topics, right, you're talking about

19   what he is going to talk about --

20              MR. ANDERSON:  Yes.

21              THE COURT:  -- he will opine about.  He will opine

22   about.  I think technically -- it is not something that cannot

23   be fixed -- but technically they need to know the answer to

24   those questions that I have just been probing you on.

25              MR. ANDERSON:  Sure.

```
1             THE COURT:  Because obviously if he testifies about

2     the FDA process, his role in it, how the company did its work,

3     that is all factual testimony.

4             MR. ANDERSON:  Absolutely.

5             THE COURT:  You don't have to disclose anything more

6     than you have.  It's, if you then are going to however say, in

7     your opinion, right, did everything comport with what the FDA

8     required, and in your opinion is the product reliable and

9     consistent with what it was marketed for.  If he is going to

10    say yes to that, which I think he may have a basis to do --

11            MR. ANDERSON:  Sure.

12            THE COURT:  -- I think technically that has to be

13    disclosed.

14            Now, of course, it may come out in his deposition, but

15    technically the 26(a)(2) disclosure under the rule, and we

16    haven't gotten into the argument whether it requires more, but

17    let's assume it is only a 26(a)(2) --

18            MR. ANDERSON:  Sure.

19            THE COURT:  -- you kind of have to think that through

20    with him and put in writing before his deposition what his

21    opinion would be on whatever that is.

22            MR. ANDERSON:  We'd be happy to do that if he is in

23    fact expected to -- and frankly, we don't have much control

24    over him.

25            THE COURT:  Is that right?  Well, in that case, then,
```

1    that's fine.  If you don't have much control over him, then I

2    wouldn't ask his opinion.

3              MR. ANDERSON:  Right.

4              THE COURT:  Right.

5              MR. ANDERSON:  Yes.

6              THE COURT:  In that case, then, withdraw him as an

7    opinion.

8              MR. ANDERSON:  Well, I don't -- I'm being a little

9    facetious.

10             THE COURT:  OK.

11             MR. ANDERSON:  Well, just so you know.  He is not

12   retained is the point.

13             THE COURT:  You may want to doublecheck that.

14             MR. ANDERSON:  Sure.

15             THE COURT:  But technically a 26(a)(2) disclosure does

16   have to say, much like a doctor has to say that the patient has

17   reached maximum medical improvement.  That is an opinion that

18   that is the most that the doctor is willing to do, and in your

19   case you have to do that because I think it is deficient in

20   that respect.

21        Now talk about why wouldn't an expert report be

22   disclosed given that he's only -- I guess part of the argument

23   is that he is an independent contractor, he is not really an

24   employee of Vitamins Because, and respond to that argument.

25             MR. ANDERSON:  Well, that would work the same way as a

1  treating physician.  I mean, a treating physician just sees

2  someone on a limited basis and comes in and testifies about the

3  work that they performed for them.

4      He hasn't been retained as a litigation expert.  He is

5  primarily a fact witness.  In fact, whether he is a 1099 or a

6  W-2 employee I don't think bears any relationship to him being

7  identified as an expert and whether he needs to give a report

8  or not, much like a treating physician comes in and sees a

9  patient once or twice.  He came in there and he was much more

10 involved than a normal treating physician would be.  So I don't

11 think it matters whether he was a 1099 or a W-2 or anything

12 like that.

13     THE COURT:  All right.

14     MR. ANDERSON:  I mean, just to kind of make a full

15 circle, Mr. Chapman, who is one of the owners of Vitamins

16 Because, I mean, he talked about his involvement 32 times in

17 his depo, and the other co-owner testified and she mentioned

18 his name 87 times in relation to his participation in the

19 business.

20     THE COURT:  OK.

21     Mr. Brody.

22     MR. BRODY:  Yes, your Honor.  I mean, I think it is

23 the end of the second-to-last paragraph in the expert

24 disclosure defendants say:  Dr. Ross will opine about the

25 adequacy of the SAM-e product manufactured by Vitamins Because.

1    To me, that is an expert opinion.  I don't see how that can

2    be -- that is the ultimate opinion which your Honor was

3    alluding to before.

4           So to the extent that that's true -- I'm not denying

5    that there might also be factual testimony that wouldn't

6    require it, but it seems to me he is going outside the scope of

7    just what he did as an independent contractor while working for

8    the company.

9           THE COURT:  That does come close.  But acknowledging

10   that maybe we need to make this disclosure more specific as to

11   any ultimate opinions that he will be asked at trial, in terms

12   of the expert report issue, do you have any authority you would

13   point me to that he should be treated differently than a

14   26(a)(2) hybrid witness?

15          MR. BRODY:  Yes, I believe so.  Well, first what I

16   just alluded to.  To the extent that it goes outside of the

17   scope of just observations that he had on the job, I think the

18   case law is clear.  That is what I put forth in the notice of

19   compliance.  I think all those cases make clear that to the

20   extent it is outside the scope of just observations, just what

21   he did, just factual retelling of what he did on the job, that

22   is already considered an expert opinion.  That is page 5 --

23          THE COURT:  Page 5?

24          MR. BRODY:  -- of notice of compliance.  All those

25   cases over there.

```
 1          If your Honor is ready, I would also like to address

 2    another point.

 3          THE COURT:  Well, tell me -- I guess I don't have the

 4    notice of compliance here in front of me.  Hold on.

 5          MR. BRODY:  I can read some of the case law.

 6          THE COURT:  What docket number are you talking about?

 7    256?

 8          MR. BRODY:  266.

 9          THE COURT:  266.  Hold on.

10          MR. BRODY:  The paragraph starts "second."

11          THE COURT:  OK.  Well, do you have any information

12    that he would fit within these kinds of cases?  For example,

13    first of all, a 2012 case is actually pretty old because the

14    rules have been amended since, I think.  You have, for example,

15    a 2019 case:  "Treating physicians are subject to (2)(b) if

16    they offer opinions that extend beyond their treatment of a

17    patient or if they form opinions upon review of information

18    provided by counsel in anticipation of litigation."

19          Do you have any information that at this point he

20    would be any different?

21          MR. BRODY:  I have just what was disclosed, which

22    really isn't enough, but also what was alluded to here today.

23    I mean, I think counsel just said additionally he is also going

24    to be opining about the end of the product.  I mean, if you're

25    talking about the adequacy of the SAM-e, that is an ultimate
```

1  issue in the case.

2        THE COURT:  But in other words -- true, but so is

3  causation an ultimate issue in the case for a treating

4  physician.

5        MR. BRODY:  Yes, but --

6        THE COURT:  So the issue would be what is the source

7  of information.  That's the critical issue.  If the source of

8  information is based upon work that he did at a relevant time

9  during the factual development of a case -- so here, for

10 example, he was working on the development of the product at

11 issue -- whether he was working on it as an employee or

12 independent contractor, I don't think it matters.  If he was an

13 agent involved in the process, then he's gathering factual

14 information, and assuming he has the experience to render an

15 opinion or the education to render an opinion, then that could

16 be -- he may be opining about things that he did and opining as

17 to whether or not they were appropriate, for example.

18       MR. BRODY:  Yes.

19       THE COURT:  If that's the case, if that is the extent

20 of his testimony, it would seem to me that that would be

21 treated as a 26(a)(2)(C).

22       MR. BRODY:  If that was the extent of his testimony.

23       THE COURT:  Right.

24       MR. BRODY:  And maybe we can even clarify that now.

25 But it seems to me that is not going to be the case.

```
1        THE COURT:  Why?

2        MR. BRODY:  Because from the testimony that the

3   Vitamins Because witnesses gave at their deposition, it is

4   clear that he did not work specifically on SAM-e.  He had

5   consulted regarding a whole range, hundreds of different

6   supplements that are manufactured, and he gave them general

7   guidelines about how to go through the process, etc., how to

8   set up a process.  He wasn't specifically retained to consult

9   regarding SAM-e --

10       THE COURT:  OK.

11       MR. BRODY:  -- specifically, and he didn't tell them

12  specifically how to weigh and what to weigh in a SAM-e product,

13  which is somewhat unique.  So in that regard his opinion about

14  the adequacy of SAM-e is a more specific issue.  That seems,

15  from the testimony that they gave at their deposition, would go

16  beyond, at least from what they implied and what they stated at

17  the deposition, would go beyond what he worked.

18       Again, part of the issue is that they don't really set

19  forth exactly what his opinions are.  So it's a difficult

20  question for me to answer, your Honor.  But when I hear counsel

21  saying, well, additionally, he's also going to speak about the

22  adequacy of that based on testing, I mean, what testing?  There

23  wasn't really -- the testing records I was told were lost and

24  weren't able to be produced.  I don't know exactly what testing

25  they're referring to, and it doesn't seem to me that this is
```

1    limited to just the work that he did.  The work that he did was

2    giving them a packet explaining how to set up FDA-compliant

3    procedures.

4            THE COURT:  All right.  Do you want to respond to

5    that, Mr. Anderson?

6            MR. ANDERSON:  I do.  He was retained generally to

7    help them set up the site, but he created all the forms,

8    including the forms for the manufacture of SAM-e.  He was

9    involved in the manufacture of SAM-e and also other products.

10           We provided and we have produced hundreds of pages of

11   what are called batch records, and although some people may or

12   may not call them testing, you're able to look at them and

13   determine the adequacy of the product based on weights and

14   doing a little bit of remedial math.  Dr. Ross was involved in

15   all of that as part of his job.

16           Part of his job with Vitamins Because was making sure

17   the product was adequate.  So his opinion, when I say he will

18   also opine, I don't mean that is an opinion separate and apart

19   from the work he did; I was just saying in addition he will

20   talk about this topic.

21           His opinion that the SAM-e is adequate is based on his

22   involvement, and he had to make that determination in order to

23   adequately do his job.

24           THE COURT:  When you say make that determination,

25   contemporaneous with the work that he did back then?

1           MR. ANDERSON:  Correct, your Honor.

2           THE COURT:  OK.  Well, is there anything that you are

3    preparing to have him do based upon information that he did not

4    work on?

5           MR. ANDERSON:  We haven't given him a thing, your

6    Honor.

7           THE COURT:  OK.  Well, all right.  Well, I kind of

8    agree with you, Mr. Brody.  Based on the representations from

9    Mr. Anderson, I think if, as Mr. Anderson represents, he would

10   qualify as an (a)(2)(C) witness, to which you are entitled to a

11   better disclosure, if he is going to render an ultimate

12   opinion, that needs to be put in the disclosure.

13          Now, if it turns out after you depose him, if you want

14   to depose him, that it's inconsistent with what Mr. Anderson

15   just told me, well, then at that point my remedy is either to

16   strike him or to require a supplemental report at their cost.

17   There are things I can do to fix it, but I don't anticipate

18   that.  Taking Mr. Anderson's point at face value, I think then

19   he would qualify as an (a)(2)(C).  He is not being asked to do

20   litigation analyses, and so therefore a proper (a)(2)(C)

21   disclosure is probably all that is required.

22          Again, when you depose him, if it turns out that he

23   was actually then -- what has happened in the past, as I'm

24   thinking this through, is you started out with somebody who was

25   basically a true hybrid expert for (a)(2)(C) purposes and then

1  as trial approached he was sent stuff to analyze.  I remember

2  specifically a doctor was given like x-rays and MRI films that

3  the doctor did not use at the time.  So all of the sudden

4  post-deposition, post-report or disclosure, he is now being

5  used as an additional expert.  If that happens, the remedy is

6  to strike it.

7      MR. ANDERSON:  Yes, your Honor.  Understood.

8      THE COURT:  OK.  So with that, I'll grant the motion

9  to compel but to require a more specific 26(a)(2)(C) disclosure

10 that specifically identifies any opinion that he is going to be

11 asked in front of the jury beyond just talking about a subject

12 generally.  If you are going to ask him, in your opinion,

13 blank, that has to be disclosed under (a)(2)(C).

14     MR. BRODY:  Your Honor, can I just ask real quick?

15 Does he also have to disclose the facts upon which he is basing

16 that opinion on?

17     THE COURT:  Whatever is in the rule, the rule is very

18 clear.

19     MR. BRODY:  OK.  I mean, the disclosure as we have it,

20 they didn't do that.

21     THE COURT:  It is too broad.

22     MR. BRODY:  OK.

23     THE COURT:  OK.  Next issue.  Well, let me ask you, is

24 there any issue from the defendant?

25     MR. ANDERSON:  I don't have any, your Honor.

```
 1              THE COURT:  Any other defendant?

 2              MR. O'BRIEN:  I have a few, your Honor.

 3              THE COURT:  Who is that?

 4              MR. O'BRIEN:  Sean O'Brien for Asquared.

 5              THE COURT:  OK.  Mr. O'Brien.  I'll go back and forth.

 6              MR. O'BRIEN:  That's fine.  One of Asquared's first

 7    issue was actually also in plaintiffs' notice of compliance.

 8              THE COURT:  OK.

 9              MR. O'BRIEN:  So I think we can knock two out at once.

10              THE COURT:  OK.  Where do I go?

11              MR. O'BRIEN:  Docket 268 is Asquared's notice of

12    compliance.

13              THE COURT:  Two six eight?

14              MR. O'BRIEN:  Yes, sir.

15              THE COURT:  OK.  I'm with you.

16              MR. O'BRIEN:  Point one is titled Remaining

17    Depositions.

18              One of the issues has been addressed primarily with

19    the court at the last conference.  I am going to save that one

20    for the last -- for the end, excuse me.

21              Subsection 1 is the deposition of the plaintiff Noah

22    Malgeri.  Noah Malgeri is a named plaintiff in the case.

23              Asquared's notice of compliance articulates kind of, I

24    think at a high level, the scheduling issues that pertain to

25    Mr. Malgeri's deposition, but I think I want to start a little
```

1   bit broader.

2          Discovery is still open until January 17th.

3          THE COURT:  Did you confirm that, by the way, Maedon?

4          THE DEPUTY CLERK:  Yes, Judge.  I was looking at the

5   wrong dates.  January 17th.

6          THE COURT:  So April 4 was just an error?

7          THE DEPUTY CLERK:  Yes.  It was an error.

8          THE COURT:  So January 17th.

9          MR. O'BRIEN:  So discovery is still open until

10  January.  I don't think there is any dispute that in a vacuum

11  Asquared, a defendant in the case, has a right to notice and

12  take a named plaintiffs' deposition.

13         The parties have independently agreed on dates that

14  Mr. Malgeri is available within the discovery period to take

15  his deposition.

16         THE COURT:  OK.

17         MR. O'BRIEN:  I can't imagine how prior scheduling

18  issues with a deposition noticed by another defendant in the

19  case is a basis to preclude my client Asquared from proceeding

20  with the deposition of the plaintiff.

21         THE COURT:  I misunderstood that.  Was he already

22  deposed for a different defendant?

23         MR. O'BRIEN:  He was not.

24         So the issue is defendant Vitamins Because noticed

25  Mr. Malgeri's deposition.  After the initial notice, plaintiffs

1    disclosed their expert, Dr. Kalman, their liability expert.

2          THE COURT:  OK.

3          MR. O'BRIEN:  And if you remember at the last

4    discovery conference, your Honor, there was an issue raised

5    about the timing of that deposition.  So specifically defendant

6    Vitamins Because wanted to take the deposition of Dr. Kalman

7    before defendants' expert disclosure was due.

8          THE COURT:  OK.

9          MR. O'BRIEN:  So the parties agreed and the deposition

10   proceeded.

11         THE COURT:  OK.

12         MR. O'BRIEN:  But prior to that conference defendant

13   Vitamins Because noticed Dr. Kalman's deposition for November

14   14th, which was also the date that Noah Malgeri, the

15   plaintiffs' deposition, was scheduled to proceed.  So they

16   then, Vitamins Because then amended their notice of deposition

17   to November 15th --

18         THE COURT:  OK.

19         MR. O'BRIEN:  -- to allow for the deposition of

20   Dr. Kalman and Noah Malgeri to proceed.

21         Dr. Kalman's deposition did not proceed on November

22   14th because plaintiffs were taking the position that they did

23   not have to produce Dr. Kalman until after expert discovery was

24   completed.

25         THE COURT:  I thought he is an expert.

1        MR. O'BRIEN:  He is.  Regardless, then plaintiff did

2   not appear, plaintiff Malgeri did not appear on November 15th,

3   which was the date of the amended deposition notice for

4   Malgeri.

5        THE COURT:  OK.

6        MR. O'BRIEN:  So to date Malgeri's deposition has not

7   been taken, and plaintiffs' position is that the defendants

8   collectively have waived their ability to take plaintiff

9   Malgeri's deposition because they did not proceed on the

10  November 14th date.

11       THE COURT:  So who canceled November 14th?

12       MR. O'BRIEN:  Vitamins Because amended their notice of

13  deposition from November 14th to November 15th.

14       THE COURT:  Right.  And then what happened?  Why

15  didn't they go forward on the 15th?

16       MR. O'BRIEN:  I don't know why plaintiffs didn't

17  produce.  My recollection is defendant Vitamins Because took a

18  certificate of nonappearance.

19       THE COURT:  Oh.

20       MR. O'BRIEN:  But I believe, and I won't speak for

21  Mr. Brody, but I believe Mr. Brody's position is that the

22  deposition should have gone forward on the 14th and that he

23  made his client available on that day.

24       THE COURT:  So in other words, he was prepared to go

25  on the 14th but not the 15th; is that what you are saying?

1          MR. BRODY:  Yes.  He had booked his schedule

2     accordingly.

3          A couple of facts that weren't mentioned.  The issue

4     with regards to Dr. Kalman's scheduling, that was already

5     noticed to go before your Honor before this time.  So

6     defendants decided unilaterally that they were just going to

7     plow forward, irregardless of the fact that we had noticed this

8     issue to go before the court, and they just unilaterally

9     canceled apparently the deposition of plaintiff Malgeri.

10          This is not the first time they did it.  This is the

11     second time that we have had an agreement on when plaintiff

12     Malgeri should be deposed.

13          Plaintiffs have been ready to go and then, all of the

14     sudden, they just unilaterally refuse to go forward without

15     even telling us.  The first time I was emailing, I was calling

16     them, are we going forward with this, we agreed upon a date.  I

17     don't get my phone calls returned.  I don't have a return

18     email.

19          The second time I told them, we are able to produce

20     them on the day which all parties agree, and that is another

21     fact which was left out.  It is not just defendant Vitamins

22     Because that agreed to depose plaintiff Malgeri on the 14th, or

23     whatever day it was, all parties agreed.  And Vitamins Because

24     represented to us, and copied all counsel on the email, that

25     all these dates were confirmed with all defense counsel and

1   that these were the final dates and that if we dared to

2   reschedule these issues, they were going to bring it before the

3   court because we were preventing them from going forward.

4          Then all of the sudden we come to the day.  I tell

5   them, hey, we are not going forward with the expert deposition

6   on that day.  We are bringing that in front of the court.  We

7   are going forward with the plaintiff Malgeri deposition.  That

8   was agreed upon by all parties and all parties are available.

9   We are sending forth.  I try to present them on and the Zoom

10  link doesn't work because they have already decided to depose

11  the expert witness even though I told them previously that we

12  were bringing that in front of the court.

13         So now this is going to be the third time that the

14  defendants are taking the position that they can just

15  unilaterally set a new schedule for deposing plaintiff Malgeri,

16  even though he's made himself available twice and he's appeared

17  on a day which all parties agreed that he should appear.  So I

18  don't understand this.

19         I would also like to just --

20         THE COURT:  When did you find out they wanted to move

21  it from the 14th to the 15th?

22         MR. BRODY:  I found out about the time that they

23  indicated to plaintiffs that they wanted to depose the expert

24  on the date which we had already scheduled and all parties had

25  already agreed that we were going to go forward with plaintiff

1    Malgeri's deposition.  Around that same time they told me, oh,

2    we're just going to move the other thing.  I told them, you

3    can't just move things; people have lives; this was scheduled;

4    he arranged his schedule accordingly; we can't just agree to

5    move things.

6          Second of all, I told them we're not going forward

7    with the expert deposition.  I've noticed that in front of the

8    court.  If your Honor may recall, we had a whole back and forth

9    for an hour and 45 minutes last time.  Ultimately, your Honor

10   directed the parties to have his deposition, I believe it was

11   the end of last month.  We did that.

12         Defendants did not comply with the other part of your

13   Honor's order, which is to hold the other expert deposition at

14   the end of November.  So that is another issue which I am going

15   to have to bring up to the court, but I will put that to the

16   side for a second.

17         So it was around that same time.  This excuse we

18   couldn't go forward with plaintiff Malgeri's deposition because

19   we had this other deposition scheduled, I had already informed

20   them that that was going to be brought in front of the court.

21   So there is no reason why we couldn't have gone forward with

22   that deposition.

23         In any event, the plaintiff Malgeri deposition wasn't

24   scheduled to begin until like 12:30 or so, because he's on the

25   west coast.  So we had pushed it to 12:30.  At that point it

1   was clear that plaintiffs were not producing plaintiff -- I'm

2   sorry, the expert for deposition.  One, because we had told

3   them we weren't.  I had confirmed that multiple times,

4   including that morning, and he hadn't showed up that morning.

5   So there is no reason why any defendant could not have gone

6   forward with the plaintiff Malgeri's deposition as agreed upon

7   by all parties, including defendant Asquared.

8           Just one more point for context.

9           Plaintiff Malgeri does not have any claims against

10  defendant Asquared.  He has no individual allegations against

11  them.  So your Honor has kind of addressed this issue in that

12  the only relevant testimony he can give is, A, testimony about

13  issues, ultimate issues in the case that maybe he's heard about

14  from his counsel, which would be privileged, or that he's heard

15  about from someone else, which would anyway be hearsay.

16          So there is no real compelling reason why defendant

17  Asquared all of the sudden needs to depose this non-claimant in

18  the case.  They haven't given us sufficient reason and they

19  seem to be disputing your Honor's position that any relevant

20  testimony would by definition be hearsay.

21          THE COURT:  Is he a plaintiff as against a different

22  defendant?

23          MR. BRODY:  Yes.

24          THE COURT:  Which defendant?

25          MR. BRODY:  Defendant Vitamins Because.

1          THE COURT:  Vitamins Because.  OK.

2          MR. BRODY:  But Vitamins Because is not looking to

3    notice his deposition for a third time.  My understanding it's

4    only defendant Asquared which all of the sudden has come up

5    with this idea that they need to depose everyone under all

6    circumstances regardless of the relevance, which I don't

7    understand.

8          THE COURT:  If he is not a plaintiff against your

9    client, does it matter?

10         MR. O'BRIEN:  It does, your Honor.  First of all, I

11   think Rule 30 is pretty clear that any party can depose any

12   other party in a lawsuit.  There is no clarification on that

13   point.

14         Not to carve things up too finely, but just about 30

15   minutes ago plaintiff Fishon, one of the named plaintiffs in

16   the case, discontinued the lawsuit against three of the

17   defendants, and that discontinuance had in material part to do

18   with the documents submitted to support the claim that they

19   bought the defendants' product, period.  It is a lot broader in

20   terms of relevant issues than just did you purchase SAM-e from

21   Asquared.  It has to do with the circumstances under the

22   purchase, whether they had that product tested individually.

23         Defendant Vitamins Because has made a motion recently

24   to dismiss under 12(b)(1) for lack of standing.  The primary

25   basis for that motion is that the individual plaintiffs didn't

1    have their product tested and, as a result, they can't proceed

2    in this lawsuit.  So plaintiffs' position that, well, my

3    clients didn't buy SAM-e from Asquared so you're not entitled

4    to material discovery against them in that case is simply

5    incorrect.  It is an extremely narrow reading of the federal

6    rules and it handicaps Asquared's ability to properly defend

7    its case against all plaintiffs.  That is to say nothing of

8    plaintiffs' jurisdiction to be in this court in the first

9    place, which is CAFA jurisdiction under which they need to

10   allege $5 million in damages.

11        They certainly have a different analysis now without a

12   bunch of the defendants, but Asquared, without the ability to

13   conduct paper or discovery through depositions in that regard,

14   I don't know what will be said at the deposition, but certainly

15   not being able to take that deposition is extremely prejudicial

16   to defendant Asquared.

17        THE COURT:  Is it correct, from your understanding of

18   things, his deposition was going to go forward on the 14th.

19        MR. O'BRIEN:  That's correct, your Honor.  I think if

20   you look at page 2 of doc 268, on October 22nd defendant

21   Vitamins Because noticed the deposition.  Between that time,

22   and I did include the email communication between Mr. Brody and

23   Mr. Anderson, Mr. Brody indicated -- so this is amongst the

24   fight about when plaintiffs' expert should be deposed --

25   Mr. Brody says:  Incidentally, Dr. Kalman also tells me that

1   his calendar is open for November 9th, 15th, and 18th, but I

2   believe you've also scheduled other depositions on the 9th and

3   the 15th and we have a court conference scheduled on the 18th.

4   Also, I'm not available for full-day expert depositions on

5   Friday.

6          So it is in response to that email, which was on

7   November 5th, that defendant Vitamins Because served an amended

8   notice of deposition for the next day to make availability for

9   Dr. Kalman's deposition on the 14th.

10          So the circumstances surrounding that notwithstanding

11   I don't think warrant relief from this court precluding a

12   defendant in this lawsuit from deposing a named plaintiff.

13          THE COURT:  Well, let me ask you this question.  Is

14   Mr. Malgeri going to testify at trial?

15          MR. BRODY:  He is not going to testify about Asquared.

16   He doesn't know anything about Asquared.  That is first of all.

17          As far as what he might testify, he might have to

18   testify that he purchased a product, but, again, he didn't

19   purchase from Asquared.  So it's got absolutely nothing to do

20   with Asquared as far as I or anyone else can tell.

21          The jurisdiction issue, I mean, I thought jurisdiction

22   already attached --

23          THE COURT:  But you intend to call him at trial.  In

24   other words, he intends to be one of your witnesses at trial.

25          MR. BRODY:  Again, not for Asquared, for the defendant

 1   which he's claiming against.

 2              THE COURT:  All right.

 3        MR. O'BRIEN:  Your Honor, not to jump in without being

 4   asked, but Mr. Malgeri is also -- this is Sean O'Brien --

 5   Mr. Malgeri is ostensibly a named member of the nationwide

 6   class that is asserted in this lawsuit.  So although he did not

 7   buy the product from Asquared, Asquared is a defendant to that

 8   nationwide class, which is all plaintiffs or all individuals

 9   who bought SAM-e manufactured by Vitamins Because during a

10   certain time period.

11        MR. BRODY:  Your Honor, can I just clarify?  This is

12   Jay Brody.  There is a nationwide class asserted against

13   defendant Vitamins Because, but plaintiff Malgeri, if he didn't

14   buy from Asquared, he does not and cannot bring a nationwide

15   class or any case against defendant Asquared.  He simply

16   doesn't have standing for that.  We made that clear that, yes,

17   he is asserting a nationwide class but only against the

18   defendants which he is claiming against, not against defendants

19   which he is not claiming against.

20              THE COURT:  Mr. Anderson.

21        MR. ANDERSON:  Your Honor, I don't want to make more

22   of it than it is, but we're happy to cross-notice if the issue

23   is that Asquared should for some reason not be able to take

24   their deposition, which I think is silly.  This guy is a

25   purported class representative.  He has claims in one way or

1    another that affect the entire defendant, and his deposition

2    should be taken.

3         The circumstances under which it was canceled the

4    first time, there was at least a week's notice.  We were told

5    that the expert was available and for litigation purposes we

6    chose to take the expert's deposition because we needed to get

7    it done and he had limited availability.

8         The plaintiff in the lawsuit should have every

9    anticipation that they are going to have to testify, they are

10   going to have to testify at trial, and if they are trying to be

11   a class rep, they are certainly going to have to deal with that

12   issue.

13        THE COURT:  All right.  Since he is a plaintiff, I

14   guess the appropriate thing to do would be to say since it

15   wasn't your fault that it was canceled, it is not Mr. Malgeri's

16   fault, as Mr. Anderson pointed out, a strategic decision to go

17   with a different witness for whatever reason, I understand your

18   point, however, since he is a plaintiff, isn't the appropriate

19   remedy to allow them to take the deposition but on dates that

20   he proposes?  In other words --

21        MR. BRODY:  He can propose more dates, but, again, the

22   last two times we proposed dates they just unilaterally didn't

23   go forward with it.  In one case without even telling us.

24        THE COURT:  But I can fix that, right?

25        MR. BRODY:  I'm sorry?

1          THE COURT:  But I can fix that.

2          MR. BRODY:  How are you going to fix?  That is already

3     prejudice that we've suffered.  We literally produced him on a

4     date that all defendants agreed that we should go forward.  How

5     can the court fix that at this point?  It's impossible.

6          THE COURT:  In other words, retroactively you're

7     saying.

8          MR. BRODY:  All defendants agreed that this was going

9     to be the date and the plaintiffs couldn't move the date, and

10    if plaintiffs moved the date, they were going to bring it to

11    the court.  Then all of the sudden they want to depose someone

12    else, who we already told them we are bringing to the court for

13    an order to clarify how that is going to go forward.  How is

14    that in any way fair to the plaintiffs?

15         THE COURT:  Ultimately I did order that deposition to

16    be taken at the end of November, is that what you told me,

17    Dr. Kalman?

18         MR. BRODY:  Your Honor ordered that Dr. Kalman should

19    go forward, I believe it was November 24th.  There was another

20    expert deposition, which your Honor ordered to go forward, I

21    think it was the last week of November going into December.

22    That was not plaintiffs' position.  That was defendant's

23    request.  To accommodate defendants, because it was their

24    deposition, your Honor agreed that they can do that as long as

25    they weren't going to be deposing him a second time.  At least

1   that is my understanding of the general issue.

2          THE COURT:  All right.

3          MR. BRODY:  For some reason, which I don't understand,

4   they just didn't abide by your Honor's order for the umpteenth

5   time in this case and just didn't go forward with the expert

6   deposition.  Now they want to reschedule that expert

7   deposition.  Well, that expert already blocked off a week of

8   his schedule.  He's got other cases.  He's got other things to

9   do.

10         This is tremendously prejudicial to plaintiffs.  Every

11  time we have something scheduled or we have a court order,

12  defendants feel they can just not abide by the court order and

13  then plaintiffs are left suffering without any real remedy.

14         THE COURT:  Well, I do want to go back to this because

15  I want to follow up on some of what you just said, but going

16  back to Mr. Malgeri, put the other expert aside for a second

17  because what you are saying is I ordered a deposition and they

18  didn't want to go forward with it.  Is that what you are

19  saying?

20         MR. BRODY:  They didn't notice it.  I asked them why

21  are we meeting and conferring; don't we need to have a

22  deposition on this day?  Well, apparently we are not going

23  forward on this, let's just meet and confer about some other

24  issue.

25         THE COURT:  OK.

```
1              MR. BRODY:  And that's it.

2              THE COURT:  Table that.  We are just dealing with

3    Mr. Malgeri.

4              Since he is a class plaintiff, isn't the appropriate

5    remedy for me to enter is to allow his deposition to be reset

6    on a date that he wants?  So whatever date that is, if they are

7    available, they are available.

8              MR. BRODY:  Your Honor can do that, but I just think

9    it is unfair that defendants are allowed to just unilaterally

10   not go forward with dates that everyone agreed upon and that

11   the plaintiffs have to produce the plaintiff three times.  But

12   yes, if that's what your Honor's instructing, we'll comply.  We

13   always comply.  I mean, we might be the only party that makes

14   an effort to comply.

15             THE COURT:  Is it correct that they gave notice of the

16   rescheduling a week in advance?

17             MR. BRODY:  And I told them that I was bringing the

18   issue to the court immediately, that same week in advance.

19             THE COURT:  OK.

20             MR. BRODY:  So there is no reason -- I told them very

21   clearly the expert plaintiff was not being produced for

22   deposition on that date.  It was going in front of your Honor.

23             Their attitude, in effect, was, well, we don't really

24   care, we're just going to go ahead and do what we want because

25   we don't really listen to the court's orders anyway.  I mean,
```

1   that is part of what I'm dealing with here.

2          THE COURT:  I doubt that they put it that way, but I

3   hear what you are saying.

4          MR. BRODY:  No.  In effect.

5          THE COURT:  I got you.

6          MR. BRODY:  Yes.

7          THE COURT:  All right.  Well, then it is now, what is

8   it today?  The 16th.  Next week is Christmas.  The week after

9   that is New Years.  So effectively the next two weeks nobody is

10   going to be -- at least the plaintiff is not going to want to

11   be deposed.

12          MR. BRODY:  He might prefer during those two weeks.  I

13   mean, we have been in touch with alternative dates.

14          THE COURT:  If he prefers it.  If he prefers it.  I'd

15   assumed he didn't want to be deposed during that period because

16   maybe he has family plans or whatever.

17          MR. BRODY:  Well --

18          THE COURT:  Whatever date.

19          MR. BRODY:  He prefers that, but his schedule could

20   change, especially if it takes a week or two to get noticed.

21   We can only hold open so many days.

22          THE COURT:  Whatever day he picks other than next

23   week, OK, whatever day he proposes, that will be the date and

24   then everybody will readjust.  Then if anybody wants to depose

25   him, that will be the date.  If they don't want to depose him,

```
 1    they don't have to, but that is the last time we will deal with

 2    Mr. Malgeri's deposition.

 3              MR. O'BRIEN:  Your Honor, this is O'Brien.  Just to

 4    clarify.  In anticipation of this being an issue, I reached out

 5    to Mr. Brody before today's conference and said, look, I'm not

 6    saying the court's going to rule one way or another, but

 7    assuming that I'm entitled to take the deposition or the

 8    defendants collectively are entitled to take the deposition,

 9    contact your client and provide me dates that work best for

10    him.  He's already done that.

11              I have a notice prepared for --

12              THE COURT:  For what date?

13              MR. O'BRIEN:  -- the 22nd at 12.

14              Is that right, Jay?

15              MR. BRODY:  Whatever it is.  But yes.

16              MR. O'BRIEN:  It's the 22nd.

17              MR. BRODY:  I'm not trying to make this more difficult

18    than it needs to be.

19              THE COURT:  That would be next week.

20              MR. O'BRIEN:  I believe it is next Tuesday.

21              THE COURT:  Your client would prefer the 22nd?

22              MR. BRODY:  Your Honor, I'm not in charge of his

23    personal schedule.  When he tells me he's available, that's

24    what I relay.

25              THE COURT:  OK.  So it is the 22nd.  Speak now or
```

1  forever hold your peace.  That will be the last time we will

2  deal with Mr. Malgeri.

3         So now do you want to respond to his point about this

4  other deposition that I apparently ordered and it did not go

5  forward for some reason.

6         MR. BRODY:  I'm not sure I understand the question.

7  I'm sorry.

8         MR. O'BRIEN:  I think I can, your Honor.

9         THE COURT:  Go ahead.

10        MR. O'BRIEN:  So there are four individuals, two

11 testifying experts, and then two, we'll call them, fact

12 witnesses that were disclosed as part of plaintiffs' expert

13 disclosure.  Dr. Kalman is what I would call a liability

14 expert.  Dr. Sharp is what I would call a damages expert.  And

15 then Dr. Hutt and Mr. Yan are individuals who participated in

16 the process of conducting testing associated with Dr. Kalman's

17 report.  OK.

18        At the last conference your Honor ruled that Dr. Hutt

19 and Mr. Yan are essentially fact witnesses.  They are not going

20 to testify at trial and the defendants can depose them.

21        THE COURT:  Can or cannot?

22        MR. O'BRIEN:  Can.

23        My recollection, your Honor, is that you set no time

24 limitations on those depositions.  I've already conferred with

25 Mr. Brody.  We have proposed dates in place.  Those depositions

1    are going to proceed.

2          The issue is with regard to Dr. Sharp's deposition.

3          At the last conference there was an argument about the

4    timing of Dr. Kalman, the liability expert's deposition.

5    Defendant Vitamins Because wanted to take that deposition fast.

6    I think the reason is clear now that they've filed their motion

7    to dismiss, that that was a material part of their strategy.

8          Your Honor ruled that that deposition had to proceed

9    before the end of November.  That deposition proceeded and it

10   was taken on November, a day or two before Thanksgiving.  I

11   think Wednesday before Thanksgiving.  Dr. Sharp, the damages

12   expert, was not noticed by Vitamins Because and it was not

13   noticed by Asquared.  Asquared intentionally didn't notice that

14   deposition.

15         It was not my understanding that the court was ruling

16   that Dr. Sharp's deposition separately also had to occur before

17   the end of November.  It was important for Asquared to wait

18   until some factual developments played out before noticing that

19   deposition, and that has come to fruition with plaintiff Fishon

20   walking away from the case.

21         The basis for that is Dr. Sharp's expert report.  It

22   opines about the amount of monetary damages that the plaintiffs

23   and the named and unnamed class members can recover on a

24   state-by-state basis and comes to ultimate conclusions about

25   the monetary value of this case.

```
1            That opinion is going to be substantially changed now
2     that three of the defendants and three of the subclasses are no
3     longer a part of this lawsuit.
4            THE COURT:  You said defendant.  Do you mean
5     plaintiffs?
6            MR. O'BRIEN:  I meant plaintiffs.  I apologize.
7            So it was Asquared's intent to notice this deposition
8     a bit later in the schedule.
9            Again, similar to plaintiff Malgeri, I have reached
10    out to Mr. Brody in advance of this hearing.  I have come up
11    with mutually -- I think we are working through a mutually
12    accommodating date, but we will make ourselves available
13    pursuant to Dr. Sharp's schedule.  But again, I don't think
14    that precluding Asquared from deposing, noticing and deposing
15    Dr. Sharp is an appropriate remedy regardless of what was
16    occurring between defendant Vitamins Because and plaintiff at
17    the last hearing.
18           THE COURT:  When is our expert discovery cutoff?  Is
19    it the same day?
20           MR. O'BRIEN:  It is one January 17th deadline, your
21    Honor.
22           THE COURT:  OK.  So Kalman was deposed but Sharp was
23    not yet deposed.  That's the one you're talking about?
24           MR. O'BRIEN:  That's correct, your Honor.  Kalman's
25    deposition is done.
```

```
 1              THE COURT:  OK.  OK.  Were you already looking into

 2    dates for Mr. Sharp beyond November?

 3              MR. BRODY:  I've been looking into alternative dates

 4    to be prepared for whatever the court orders, yes.

 5              Your Honor --

 6              THE COURT:  If for purposes of accommodating it I can

 7    grant you, if it turns out that he can't be deposed before --

 8    obviously next week you have the holidays and you also have

 9    Mr. Malgeri.  So if he can't be deposed by the 17th, I can

10    obviously allow him to be deposed the week after if that helps

11    you.

12              MR. BRODY:  That might help in light of --

13              THE COURT:  Right.

14              MR. BRODY:  Can I use that as a flex, if you will,

15    your Honor?

16              THE COURT:  Yes.

17              MR. BRODY:  Because there might be other experts that

18    need to be deposed later.

19              THE COURT:  Under the circumstances I'm pretty sure

20    that I have flexibility in the schedule to allow him to be

21    deposed by the 24th.

22              MR. BRODY:  Yes, because it was my understanding

23    that -- again, your Honor ordered that his deposition be taken

24    the last week of November going into the first week of

25    December, and also that the other two --
```

1          THE COURT:  To be honest with you, I just don't

2    remember.

3          MR. BRODY:  I don't have the transcript in front of

4    me.

5          THE COURT:  I just don't remember.  I will take it at

6    face value.

7          MR. BRODY:  At this point there is a lot of them

8    clogged in one time.

9          THE COURT:  I will give you a little extra relief

10   here.

11         MR. BRODY:  Thank you.

12         THE COURT:  So that you have until the 24th to make

13   him available.

14         OK.  Back to you, Mr. Brody.  Next issue on your end.

15         MR. BRODY:  Sure.  Your Honor, just in regards to

16   defendant retailers, and this applies to all of the defendants,

17   besides defendant Vitamins Because, who is a defendant

18   manufacturer, none of the other defendants in the case produced

19   documents showing their compliance with 21 C.F.R. 111.  That

20   was one of the document requests that I had.

21         Now, I am not moving to compel.  That issue has been

22   settled.  They've told me they don't have responsive documents.

23   What I am moving the court is to preclude them from now

24   advancing other evidence in the case that they have complied

25   with this regulation, even though they haven't produced any

1   documents on the matter.

2              THE COURT:  Isn't that a substantive determination?

3              MR. BRODY:  I'm not sure I understand.

4              THE COURT:  In other words, isn't that appropriate for

5   summary judgment?  In other words, would you be moving for

6   partial summary judgment on a defense of theirs --

7              MR. BRODY:  Perhaps.

8              THE COURT:  -- that they cannot use the benefit of

9   that statute?

10             MR. BRODY:  I would be, but what I'm concerned about

11  is then all of the sudden they are going to tell me they are

12  going to present testimony about certain documents or something

13  at court.

14             THE COURT:  Right.

15             MR. BRODY:  I don't think that's fair.  I mean, the

16  regulation requires that the stuff be documented, etc.  To the

17  extent that those documents were not produced, because they

18  claimed that they didn't have any of these responsive documents

19  in their possession, then I don't think it's fair they all of

20  the sudden show up in court at trial and now we have this other

21  evidence, testimony, etc.

22             THE COURT:  Right.  How about I do this, because I

23  don't want to make, since you're taking the representation that

24  they have no documents, so you're not technically moving to

25  compel.

```
 1              MR. BRODY:  Right.

 2              THE COURT:  You're just trying to document your

 3    record.

 4              MR. BRODY:  Correct.

 5              THE COURT:  The way I can deal with that is, just in

 6    an abundance of caution, I am going to impose a final chance of

 7    December 31 for all 26(e) supplementation.  OK.  So anything

 8    that can be supplemented should be supplemented, will be used

 9    at trial or in opposition to a motion for summary judgment must

10    be fully produced no later than the 31st, so that way we can

11    address any problem if we need to.  And then that way you will

12    know by that point if they don't produce anything, the universe

13    of documents is set.

14         So when you do file your motion for summary judgment,

15    you will be able to rely on that order, because the purpose of

16    that order is to make it very clear that anything else that

17    comes in later, including at summary judgment, will be

18    stricken.

19              MR. BRODY:  Does this apply to --

20              THE COURT:  It applies to everything.

21              MR. BRODY:  -- witness testimony as well?

22              THE COURT:  It applies to everything.  Anything that

23    should have been -- we are at a point now, which actually one

24    month before -- typically, I do it a month before when I have

25    to do it, and I haven't done it here.  But in the interest of
```

1    moving things along, I will just make it two weeks before, two,

2    three weeks before.  So 12/31 is our drop-dead date.

3           If there is anything else that you are going to try to

4    use at trial or in opposition to summary judgment -- this

5    applies to both parties now, not just the defendants --

6    anything else that you are going to want to use at summary

7    judgment or at trial must be produced, disclosed by the 31st.

8    That is your drop-dead deadline.

9           So to the extent you have already represented, for

10   example, that there are no documents, obviously nothing will

11   change.  But the benefit of me making that order clear is that

12   if there is a motion to strike testimony or evidence on the

13   basis of nonproduction during the course of discovery, either

14   the defendant or the plaintiff will be able to rely on what I

15   call a 26(e) order to enforce it.  OK.

16          MR. BRODY:  Yes.  Your Honor, just to clarify on the

17   26(e) issue.  So plaintiffs have some samples that they may

18   want to use in court.  Again, I'm talking about sealed bottles.

19   Would it be sufficient if I just disclosed like a list of

20   samples?

21          THE COURT:  Shouldn't their expert have gotten access

22   to the samples?

23          MR. BRODY:  Did they ask for the -- I believe there

24   was one defendant and I opposed that motion.  I don't believe

25   the court granted it.

1        MR. ANDERSON:  In initial disclosures.

2        MR. O'BRIEN:  Your Honor, we are now 30 days from the

3   end of discovery on a case where the very premise is that the

4   product that was purchased was defective and we are hearing

5   that there are additional tests --

6        MR. BRODY:  No.

7        MR. O'BRIEN:  -- that may support the claim or

8   undercut the claim that they want to disclose in the case.

9        MR. BRODY:  No, your Honor, that cannot be further

10  from the truth.  I am not talking about additional tests.

11       THE COURT:  Right.

12       MR. BRODY:  I'm talking about sealed bottles.  Sealed.

13  They are not tested.  They are sealed bottles.

14       THE COURT:  Right.

15       MR. BRODY:  I might want to show the jury the sealed

16  bottle.

17       THE COURT:  Well, you mean like a demonstrative aid?

18       MR. BRODY:  Yes.

19       THE COURT:  Remember it is not coming into evidence,

20  right, if it is a demonstrative aid, right?

21       MR. BRODY:  Well, I mean --

22       THE COURT:  In other words, did you produce the sealed

23  bottle to their expert?

24       MR. BRODY:  No.

25       THE COURT:  Why not?  If you want to use it.

```
 1              MR. BRODY:  Well, I am not using it as part of expert
 2   testimony.
 3              THE COURT:  OK.  Let me ask you this question.  How
 4   would you get it in?  How would you use it at trial?
 5              MR. BRODY:  Someone would just have to identify that
 6   it looks like a typical subject product.  That's all.
 7              THE COURT:  Who would do it?
 8              MR. BRODY:  Anyone could do it really.
 9              THE COURT:  Anybody?
10              MR. BRODY:  Any witness.  I don't see why not.  You
11   don't need particular expertise to know that this is a
12   bottle -- I mean, any defendant could do it, any expert that is
13   familiar with the bottles could do it.
14              Again, there is nothing particular about these
15   bottles.  They are bought off Amazon.  Anyone could buy the
16   bottles off Amazon.
17              THE COURT:  Has your expert used it --
18              MR. BRODY:  No.
19              THE COURT:  -- or talked about it?
20              MR. BRODY:  No, no.
21              THE COURT:  OK.  Well, if it's a true demonstrative --
22   is that what you are talking about, just what a closed bottle
23   looks like?
24              MR. BRODY:  Yes, I believe so.
25              THE COURT:  Are you sure?
```

```
 1              MR. BRODY:  I'm sorry?

 2              THE COURT:  In other words, if it's a true

 3     demonstrative, it doesn't have to even be produced.

 4              MR. BRODY:  OK.

 5              THE COURT:  If it is a true demonstrative.  If you

 6     want to move it into evidence, right, if you want the jury to

 7     see it in the jury room --

 8              MR. BRODY:  OK.

 9              THE COURT:  -- that is a different standard.

10              So to the extent that that samples -- has it been

11     disclosed before?  Maybe your expert talked about it.

12              MR. BRODY:  Again, it was requested by one of the

13     defendants.

14              THE COURT:  OK.

15              MR. BRODY:  So yes, they were on notice.

16              THE COURT:  What happened upon the request?

17              MR. BRODY:  I don't believe it was granted by your

18     Honor at the last --

19              THE COURT:  Did I deny the motion to compel?

20              MR. BRODY:  I don't want to say on the record for

21     certain, but I don't believe it was granted.

22              THE COURT:  Does anybody remember?  Did it come up

23     before something to do with a sample?

24              MR. ANDERSON:  We've been asking for all the bottles

25     for a year and a half, and they would be required by the
```

```
 1    initial disclosures, I think, in addition to that.  I don't

 2    recall your Honor denying any motion.

 3              THE COURT:  But did the issue come up?  In other

 4    words, you've known that they have had other samples of stuff.

 5              MR. ANDERSON:  No.

 6              THE COURT:  No?

 7              MR. ANDERSON:  Well, we saw a privilege log that said

 8    that there were some samples but not unopened bottles.

 9              THE COURT:  Got it.  So it was on a privilege log.  I

10    remember a privilege log with samples.  I do remember that.

11              MR. ANDERSON:  Yes.

12              THE COURT:  Did that come up at the last hearing?

13              MR. BRODY:  Yes, your Honor.

14              THE COURT:  OK.

15              MR. ANDERSON:  And they needed to amend their

16    privilege log.

17              MR. BRODY:  And we did that.

18              THE COURT:  OK.  In that case then let's talk about

19    this.  I do remember that.  So the topic did come up, and I

20    guess I ordered them to come up with a more specific privilege

21    log to defend it.

22              MR. ANDERSON:  Yes, your Honor, so we could revisit it

23    if we needed to.

24              THE COURT:  OK.  Do you want to revisit it now that

25    you have their log?
```

1          MR. ANDERSON:  I believe any testing that they are

2     relying on --

3          THE COURT:  He is not saying it is a testing.  He is

4     literally relying on a bottle.

5          MR. BRODY:  Your Honor, there are two things.

6          MR. ANDERSON:  I think they are two separate things.

7     The stuff that is on the privilege log is testing and the stuff

8     that he is raising now for the first time is sealed bottles.

9          THE COURT:  OK.

10         MR. ANDERSON:  So as far as the testing goes, I mean,

11    all defendants have taken the position the entire time, since

12    their entire case was based on that, that it should in fact be

13    produced.  I don't know anything about these unopened bottles.

14    To the extent they are demonstratives, that is one thing.

15         THE COURT:  If they are demonstratives, it is not that

16    big of a deal.

17         MR. ANDERSON:  Right.

18         THE COURT:  If they intend to use it at trial, is

19    there any reason why they wouldn't be produced by the 31st to

20    anybody who wanted to see them?

21         MR. BRODY:  Again, I could produce like a spreadsheet

22    with the information on it.  If I were to actually produce the

23    bottles, that would create some difficulty.

24         THE COURT:  Why?

25         MR. BRODY:  Because then I need them back.

 1            THE COURT:  Well, for example --

 2            MR. BRODY:  If I want to use them --

 3            THE COURT:  Let me give you an example.  Say their

 4    expert wanted to study this bottle to be able to talk about it.

 5            MR. BRODY:  He could have bought that on Amazon

 6    himself.

 7            THE COURT:  He doesn't have to buy them on Amazon

 8    himself if you have them.

 9            MR. BRODY:  We have them because we bought them on

10    Amazon ourselves.

11            THE COURT:  Precisely.

12            MR. BRODY:  First of all, I don't recall any of these

13    two defendants specifically -- I recall defendant Inspire Now

14    asking for that, and then again that was dealt with.  I could

15    be mistaken, but I don't recall any specific request.

16            THE COURT:  When you say that was dealt with, how was

17    it dealt with specifically?

18            MR. BRODY:  I don't recall the details, but I believe

19    at the last hearing that was brought up by defendant Inspire

20    Now, and I believe -- actually, you know what, I don't want to

21    say.  I mean, if defendant Inspire Now was here I would point

22    to them, but they are no longer in the case.

23            THE COURT:  Well, it is being brought up now.  It

24    seems to me that now that we are getting to the end of the

25    discovery period, the 26(e) order applies to that bottle.

```
 1              MR. BRODY:  To all 26 of them?  I mean, like I have a

 2    whole bunch --

 3              THE COURT:  All it means --

 4              MR. BRODY:  Then how do I use them?

 5              THE COURT:  You don't lose them.  In other words, if

 6    any of their experts wants to go to your office for two hours

 7    or one hour and look at what you are going to use, they are

 8    welcome to.  OK.

 9              MR. BRODY:  So this is an in-person inspection.

10              THE COURT:  So that basically is a Rule 34 inspection.

11              So whatever bottles you are going to use at trial,

12    mark them, identify them, so that we know we are talking about

13    the same thing, right, and then they will have an opportunity

14    to look at it if they want.  They may not want to.  But that

15    needs to be done prior to the 31st.

16              MR. BRODY:  OK.

17              THE COURT:  Is that fair?

18              MR. BRODY:  Your Honor, in regards to the actual

19    testing that was withheld, that was just alluded to before --

20              THE COURT:  Right.

21              MR. BRODY:  -- I amended the scheduling order to

22    reveal exactly --

23              THE COURT:  You mean the privilege log.

24              MR. BRODY:  I'm sorry.  The privilege log that is.  I

25    apologize.
```

1          -- to reveal exactly what was tested, in line with

2     what your Honor ordered the last time.

3          THE COURT:  Right.

4          MR. BRODY:  I actually have no problem disclosing

5     those tests.  I'm just concerned that it will then implicate me

6     as a witness of some sort because this was part of my attorney

7     investigation that I did pre-suit.  So to the extent that your

8     Honor orders it and it wouldn't implicate plaintiffs' counsel

9     as a witness, we could produce those within a week or less, if

10    that's been requested.

11         THE COURT:  I don't think it does --

12         MR. BRODY:  I feel your Honor would have to order it.

13         THE COURT:  In other words, do you intend to introduce

14    it?  Let's think of it this way.  You can't testify at trial.

15         MR. BRODY:  Correct.

16         THE COURT:  How would you introduce it in your case in

17    chief?

18         MR. BRODY:  Well, we weren't planning on it unless the

19    defense counsel were to be using it.  I mean, if we could

20    introduce it, then we might.

21         THE COURT:  OK.  So basically, it's not really an

22    issue because then you have identified how you obtained them

23    and you don't intend to introduce the testing.  That's what I'm

24    hearing you say.

25         MR. BRODY:  I'm not sure of a way I could.

1          THE COURT:  Well, the way you could -- well, I don't

2    want to tell you how to run your case, but the way you could

3    would be to tell your expert about that and your expert,

4    remember, can rely upon hearsay and things that occurred

5    outside his or her personal knowledge and talk about it, right?

6    So that is the way it would normally be done.

7          Similarly, to impeach it, the defendants' expert would

8    be the one to do it.  So if there is something to impeach, it

9    would come in through the experts, who can rely on things

10   beyond their personal knowledge.  That is how that comes in.

11         So your being a witness is not an issue, number one.

12         MR. BRODY:  OK.

13         THE COURT:  Number two, I think it should be made

14   available for -- so you should produce it, especially if you

15   haven't yet decided what to do with it, produce it, because

16   what harm does it do at this point from your perspective.

17         Comply with the 26(e) order.  That way they can decide

18   what, if anything, to do with it, and there is plenty of time

19   between now and then to follow up on it.  Then that way we have

20   at least 12/31 is our drop-dead date for anything being used in

21   this case.  OK.

22         So if your experts then need to look at it, you want

23   to look at it or whatever, you will have an opportunity.

24         MR. O'BRIEN:  The only qualification to that, your

25   Honor -- this is Sean O'Brien.  I apologize.

1          In light of the geographic issues in the case, we have

2     an expert in Florida, an expert in Utah, plaintiffs' counsel's

3     firm is in New Jersey.  I think that for the purposes of

4     disclosure of the unopened bottles, and I won't speak for all

5     the defendants, but Asquared would happily accept photographs

6     of those bottles.

7          THE COURT:  Do a Zoom.  Your expert can look at them

8     through Zoom.  However you want to do it, that is fine with me,

9     so long as everybody has an opportunity either to personally

10    inspect them, get a photograph, take a look at them on a Zoom

11    call by the 31st, so that way we all know what has been

12    produced by the 31st, so that way anything that comes up later

13    that was not known to everybody, including the court, by the

14    31st we all know is subject to exclusion.

15         MR. O'BRIEN:  Thank you.

16         THE COURT:  So that applies, obviously, to both sides.

17         So I will grant your relief, your request in that

18    manner, but of course that deals with this issue too.

19         Going back to the defendant, any other issue on the

20    defendants' side?

21         MR. O'BRIEN:  One more deposition issue, your Honor.

22    It has to do with a former named plaintiff Cori Ann Ginsberg.

23    She dropped out of the case roughly -- I don't know -- eight to

24    twelve weeks ago.

25         At the last discovery conference your Honor entered a

1   protective order basically stating that the defendants were not

2   entitled to take her deposition, and you did note that you are

3   happy to revisit it at the next conference, and I would like to

4   revisit it briefly.

5          THE COURT:  I was just about to say, well, that sounds

6   right.  Now that I'm on the same page with myself, tell me what

7   your argument is.

8          MR. O'BRIEN:  Sure.

9          THE COURT:  Don't you have enough things to do with

10  people who are actually in the case?

11         MR. O'BRIEN:  Can't help myself, your Honor.

12         Cori Ann Ginsberg is a named plaintiff in the case,

13  the same as everyone else.  She bought SAM-e that was

14  manufactured by Vitamins Because just like everyone else.

15  Asquared believes that the circumstances surrounding her

16  testing are potentially relevant to the defense of the case,

17  specifically what she did --

18         THE COURT:  Her testing?

19         MR. O'BRIEN:  Well, her purchase.  Excuse me.

20         THE COURT:  Oh.

21         MR. O'BRIEN:  That includes her potential, or lack of

22  testing.  We don't know if she tested the product.  We don't

23  know what she did with the product.  We don't know how she

24  became a plaintiff in this case, which is important in light of

25  the testimony of the other named plaintiffs.  We don't know

1   anything about her purchase.

2           Certainly in building a defense of the case, the

3   circumstances surrounding her purchase and what she did with

4   the product, are relevant.

5           THE COURT:  How would it come in?  Let me ask you

6   that.

7           MR. O'BRIEN:  I think if Asquared intended to rely on

8   her testimony at trial, we would subpoena her as a witness.

9           THE COURT:  Is she from Florida?

10          MR. O'BRIEN:  She may be outside of the -- yes, she is

11  a Florida resident.  I don't know if she is within the

12  hundred-mile limit.

13          Assuming she did not appear, comply with the subpoena,

14  I believe the remedy would be to read her deposition

15  transcript.

16          THE COURT:  But she is not a party.  How would you do

17  that?  You can't just use her deposition transcript for any

18  reason, right?  If she doesn't testify --

19          MR. O'BRIEN:  Correct.

20          THE COURT:  Because obviously the deposition of a

21  party can be used for any reason at any time.

22          MR. O'BRIEN:  Correct.

23          THE COURT:  How would you do this?

24          MR. O'BRIEN:  Well, maybe I'm incorrect, but if she

25  does not comply with the subpoena to appear at trial, the

1  remedy, my understanding, to utilize the deposition transcript

2  if one existed.

3       THE COURT:  So basically you would call her in your

4  case.

5       MR. O'BRIEN:  Correct.

6       THE COURT:  And over the 403 objection, what would

7  your response be?

8       MR. O'BRIEN:  I mean, it is a decent question.  I

9  don't know that I've thought it out fully, but because we had

10  the deposition -- I don't know that it is actually -- she is

11  not a party opponent so it is not a party opponent exception.

12       THE COURT:  Right.

13       MR. O'BRIEN:  I think the position -- I don't know if

14  I have an answer for you off the top of my head, your Honor.

15       THE COURT:  I can see why it's hard.  I'm pretty

16  smart, but I don't know if I could come up with anything that

17  quick either.  But that is the problem, right?

18       MR. ANDERSON:  Sure.  Can I try?

19       THE COURT:  Sure.

20       MR. ANDERSON:  I think it would go to adequacy of the

21  named plaintiffs to be adequate class representatives and the

22  adequacy of counsel to proceed as an adequate class

23  representative.  The way she got into her attorney-client

24  relationship and the way she interacted with the other

25  plaintiffs or what she was told and what she was not told, for

1    example, none of the plaintiffs appeared at mediation, that

2    kind of stuff is relevant.

3              THE COURT:  Actually, let me stop you there.

4              Where are we on class certification in the case?

5              MR. ANDERSON:  We don't know.

6              THE COURT:  What do you mean you don't know?

7              MR. O'BRIEN:  No motion has been filed.

8              THE COURT:  OK.  Well, I guess there is no deadline to

9    file -- I guess technically if she didn't impose a deadline,

10   then it would be at the pretrial motion stage.

11             When is that deadline?  Do you remember?

12             MR. O'BRIEN:  It's the second week in February, your

13   Honor.

14             THE COURT:  So let's assume that the plaintiff doesn't

15   file a motion for a class action.  I don't know why they

16   wouldn't, right, because that is the only way that this is

17   going to be -- that is the only way we have jurisdiction is

18   because it is a class action, right?

19             MR. O'BRIEN:  Right.

20             THE COURT:  That is subject matter jurisdiction.

21             MR. O'BRIEN:  Correct, your Honor.

22             THE COURT:  So obviously one argument at the class

23   certification stage may be that at the class certification

24   hearing you are entitled to call her if you think that that

25   would be relevant to the class certification process, but that

1    is different than trial.

2         MR. ANDERSON:  Well, right, but wouldn't we be able to

3    take her deposition as part of class certification discovery?

4         THE COURT:  Maybe, if Judge Williams lets you.  In

5    other words, that is a topic.  What discovery you're entitled

6    to for purposes of the class certification issue can be an

7    issue in dispute, right.  And she has not referred that to me

8    as best as I know.  I don't think this is an all pretrial, is

9    it?  I don't think so.  So it is just on discovery.

10        So what I'm dealing with is a different universe,

11   number one.  Number two, for purposes of admissibility at

12   trial, I can't come up with a good basis to do it, to introduce

13   her testimony over a proportionality and relevance objection

14   for purposes of discovery at trial.  The plaintiff does not

15   intend to call her, right.  She basically is just a purchaser

16   of product.

17        Do you have any authority, by the way?  Actually, let

18   me back up.  Do you have any authority to support your position

19   that you've come up with.

20        MR. O'BRIEN:  Your Honor, I could not find a single

21   case that is factually analogous to this situation.

22        THE COURT:  Right.  One reason is --

23        MR. O'BRIEN:  Sure.

24        THE COURT:  -- we have enough to deal with the people

25   we've got.  So we now have a motion to dismiss on standing

1   ground filed by the defendant.  That has to be adjudicated

2   based upon what we have in the case.  So it is not surprising

3   to me that this has not come up somewhere in the behemoth of

4   federal law that exists out there.  So it is not surprising to

5   me.  But it's telling.  So therefore, absent something like

6   that, I think my initial instinct is correct.

7            Now, whether or not there is some fact that you have

8   that may be compelling to Judge Williams that she wants to hear

9   about as part of the certification process, you will be able to

10  argue that at the time.  Then maybe it comes in, but you can at

11  least tie it to certification.

12           Because one argument that the plaintiff has is that

13  the plaintiff has the burden of showing adequacy of class

14  representatives, but Judge Williams may feel it is necessary or

15  not.  So that issue, it may come up again, I get it, as part of

16  that.  But for purposes of discovery at this point, I think my

17  protective order is pretty sound.

18           MR. O'BRIEN:  Understood, your Honor.  Thank you.

19           THE COURT:  Anything else on the plaintiffs' side?

20           MR. BRODY:  Your Honor, we addressed this issue at a

21  prior hearing a couple of months back.  Plaintiffs had issued a

22  notice of inspection of defendant Vitamins Because's reserve

23  samples.  Your Honor instructed us that we should inquire about

24  this at deposition.  We did.

25           THE COURT:  Deposition of?

1           MR. BRODY:  Deposition of defendant Vitamins Because,

2     some of their witnesses.

3           THE COURT:  OK.

4           MR. BRODY:  They indicated that they did have these.

5     We've asked for them to be produced.  We brought this up.

6     They've never been produced.  I don't think your Honor made a

7     conclusive directive.  I think your Honor kind of just kicked

8     this issue down the road.

9           THE COURT:  Right.

10          MR. BRODY:  I'm bringing this up at this point to ask

11    your Honor either to, one, compel the production of these so we

12    can use them in whatever time we have left as part of

13    discovery, or to issue, again, like a preclusion of any further

14    evidence or testing in the case.

15          THE COURT:  That latter part is easy because if their

16    position is they don't intend to introduce anything unlike, for

17    example, the samples that you have, you may want to use it at

18    least for demonstrative, maybe for admissibility reasons at

19    trial, so that is going to be produced.  If they are basically,

20    the reason they haven't produced anything else is they don't

21    think it's either relevant or they have no intention of using

22    it, right, then obviously if they don't do it by the 31st that

23    is consistent with my 26(e) order, they can't use it.

24          But going to your point as to whether or not you

25    affirmatively are entitled to it, what was my ruling last time?

1          MR. BRODY:  For reasons which I can't understand

2     defendant has suggested that it would be complicated for them

3     to produce it, even though they ship these products to people

4     daily.

5          THE COURT:  Remind me what a reserve sample is.

6          MR. BRODY:  Reserve sample is, under the federal

7     regulations for these types of supplement products, companies

8     are supposed to keep a sample on reserve.  In case there is any

9     inquiry into those issues, you can go back and -- you basically

10    can't say, oh, we don't have the samples anymore.  They're

11    required to hold some samples so if they ever need to be tested

12    by the FDA or for any other reason.

13         THE COURT:  OK.

14         MR. BRODY:  So they're supposed to have these for

15    every batch.

16         THE COURT:  The witness that you deposed about this,

17    did the witness confirm that they have the sample that relates

18    to this particular case?

19         MR. BRODY:  Yes.  Yes.  The SAM-e samples they said

20    they had.  They were a little wishy-washy, oh, we saw them, we

21    can probably find them, they are in our warehouse, I'd have to

22    go back and look.  It was one of those situations.  But they

23    were aware of it and they did testify about that.

24         I mean, the issue for plaintiffs is that defendants

25    have produced only like a very selective amount of testing,

1    like only ones that they have done very recently.  But they

2    haven't given us the universe of testing which they claim they

3    have but they lost, all the testing that would exonerate them

4    from the case.

5            THE COURT:  Did the witness talk about that?

6            MR. BRODY:  Yes.  The witnesses affirmed that they

7    lost all the testing when they moved facilities and that they

8    had all this evidence which could clearly show that all the

9    SAM-e was adequate and perfectly sufficient, but all of the

10   sudden they lost them when they moved facilities and we can't

11   explain why every time plaintiffs tested it comes out to be

12   deficient.

13           THE COURT:  So you asked the question of the

14   defendants' witness.  What do you call it, SAM-e?

15           MR. BRODY:  Reserve -- SAM-e is the market name of the

16   supplement.

17           THE COURT:  So you asked the witness and the witness

18   said they couldn't get it because they had lost it in the move?

19           MR. BRODY:  No, that was the testing that they

20   allegedly did.

21           THE COURT:  The testing, not the sample.

22           MR. BRODY:  Correct.  The sample they claim that they

23   could find.  They'd have to go in their warehouse and look for

24   it, but they claim that they had it.

25           THE COURT:  I see.  So you asked the witness about

1    testing that was conducted contemporaneously and that testing

2    has been lost.

3            MR. BRODY:  Correct.

4            THE COURT:  OK.

5            MR. ANDERSON:  Your Honor, we've been over -- I don't

6    know if you recall -- at every discovery hearing we have had on

7    this case we have talked about this sampling issue.  The issue

8    is they want us to produce all of the reserve samples that we

9    have of this product without tying it to any plaintiff, without

10   tying it to any product that was purchased, without tying it to

11   anything that has to do with this case.

12           It is a complete fishing expedition to just produce

13   everything that we've got.  That is inappropriate.

14           Then after that we had a discussion about if we were

15   to do some limited type of sampling discovery, how would that

16   work, and that there would be protocols to make sure that the

17   integrity of the samples is maintained.  For example, much like

18   you talked about taking photos or going up to New York to look

19   at the unopened packages, the chain of custody of any sort of

20   testing or sampling would be needed capped to ensure that

21   everything that was done was done in compliance with protocols

22   in the industry about how you would test the stuff, how you

23   would store it, how you would ship it.  We have been over this

24   ad nauseam.

25           Then as far as the testing goes, there was testimony

1    that some of the testing, when they moved facilities, was lost.

2            THE COURT:  When was that?

3            MR. ANDERSON:  Gosh, 2017, I think.

4            THE COURT:  OK.

5            MR. ANDERSON:  It is '17 or '18.

6            THE COURT:  OK.

7            MR. ANDERSON:  I want to say '17.  It's in the record,

8    whatever the date is.

9            There are dozens or hundreds of pages of what I was

10   referring to earlier that Dr. Ross had reviewed, which are

11   batch records, which the batch records, when read and analyzed,

12   those tell you whether the product was adequate or not.  So it

13   may not be called a test, but it is a test.

14           So to the extent that there are representations that

15   somehow testing was lost or anything like that, there are

16   documents that support all the contentions made.  So that is

17   where we stand on the sampling issue, but we have addressed it

18   for hours.

19           THE COURT:  I think this came up at least once or

20   twice.

21           MR. ANDERSON:  It's come up every time.

22           THE COURT:  Have I punted on them?  Did I kind of kick

23   them down the road?

24           MR. ANDERSON:  My understanding was your ruling was to

25   the extent you would allow a sampling, which you hadn't yet, it

```
 1    would have to be tied in some way to the specific products,

 2    specific bottles at issue in this case.

 3               THE COURT:  Right.

 4               MR. ANDERSON:  Not just give me everything you've got

 5    and let me see what I can do with it.

 6               THE COURT:  Right.  That is my recollection.

 7               Am I wrong about that?

 8               MR. BRODY:  Your Honor, all the samples, they use the

 9    same exact process.  That was the testimony of the deponent,

10    they followed the same exact step every time and they are the

11    same process.

12               So I think what your Honor suggested was, OK, you

13    don't have to produce all the samples, you produce some of

14    them, you will send it over.  This idea that there is some sort

15    of complication for the chain of custody, that all of the

16    sudden now they can't ship anything, that is how they shipped

17    the product to the consumers.  They shipped the stuff daily.

18    So now all of the sudden they are unable to ship it in a way

19    which would get it to us intact.  I just don't understand that

20    argument.

21               THE COURT:  But I do recall saying that I wasn't going

22    to compel all reserve samples.

23               MR. BRODY:  Right.  We are not asking for all samples.

24               THE COURT:  Right.  For example, in light of the

25    information that you have now been able to gather, have you
```

1    asked them for a particular sample for the specific type or

2    batch that your client purchased, for example?  Have you done

3    it that specifically?

4           MR. BRODY:  I have asked them for samples that

5    predated the lawsuit.

6           THE COURT:  But that is awfully broad.

7           MR. BRODY:  Yes, and I've given them that discretion.

8    I believe it is awfully broad.

9           THE COURT:  But if it is that way -- if you can't pin

10   it any more than that --

11          MR. BRODY:  Why do we need to?  I mean, this is a

12   class action.

13          THE COURT:  Don't you have to?

14          MR. BRODY:  Why?  Why?  This is a class action about

15   one product.

16          MR. ANDERSON:  Not yet.

17          MR. BRODY:  OK, but --

18          THE COURT:  In order for there to be an inspection of

19   something like that, wouldn't you have to identify with some

20   degree of specificity?

21          How many samples are we talking about, by the way?

22          MR. ANDERSON:  I don't know the number off the top of

23   my head.

24          MR. BRODY:  They can't tell us.

25          MR. ANDERSON:  We manufactured a significant amount of

```
 1    product.
 2           THE COURT:  Right.  So we're talking about potentially
 3    a hundred?
 4           MR. ANDERSON:  Or more.
 5           THE COURT:  So Mr. Brody was talking about the
 6    questions that the witness at the 30(b)(6) was asked.  What did
 7    the witness say about that?
 8           MR. ANDERSON:  That reserve samples exist.
 9           THE COURT:  OK.  And they are maintained where?
10           MR. ANDERSON:  At the warehouse.
11           THE COURT:  Is it correct that they have to maintain
12    that as part of an FDA process?
13           MR. ANDERSON:  They can be.  That can be the
14    interpretation, yes.
15           THE COURT:  So I guess one of the reasons why -- I
16    guess what I don't understand is if there is a particular
17    sample that you'd want to cross-reference with based upon what
18    you were going to rely upon, is there a reason that you can't
19    identify that to that degree?
20           MR. BRODY:  There is no particular batch that we are
21    relying upon.  The class action covers all batches that were
22    manufactured by the Vitamins Because of this product.  So that
23    is why I can't identify one in particular.
24           THE COURT:  Well --
25           MR. BRODY:  I mean, I could find a batch number, but
```

1    that would be a bit arbitrary.  If that is what the court

2    wanted --

3            THE COURT:  Even if it is arbitrary -- let me back up.

4            What is the purpose of you getting access to their

5    reserve sample?  What would happen?

6            MR. BRODY:  I mean, they claim that they have tested

7    everything.  They don't have the tests, even though the FDA

8    found that they didn't test everything, but they dispute the

9    more objective FDA finding that they didn't test everything,

10   and they've only produced a couple of tests that happened after

11   the lawsuit occurred.  They don't have any testing that

12   happened before they were sued on this issue.

13           THE COURT:  OK.

14           MR. BRODY:  So I say produce the samples and let's

15   test it, let's see if this is true.  Are the samples sufficient

16   or are they deficient.

17           THE COURT:  OK.  Well, for example, they have

18   identified, I take it, in that testing -- I guess in this case

19   both sides have done some testing, right?

20           Didn't you do testing, as you indicated?

21           MR. BRODY:  Yes.  We have done some --

22           THE COURT:  Didn't you do pre-investigation testing?

23           MR. BRODY:  We have done some testing.  Defendants are

24   disputing whether it is enough testing, etc.  Obviously our

25   experts have taken their position and their experts will take

```
 1    their position.  But I don't think it is right that they are

 2    able --

 3              THE COURT:  But you already?

 4              MR. BRODY:   -- to use certain testing but not produce

 5    the stuff that they have.

 6              THE COURT:  In other words, you already have very

 7    specific information about two very specific batches.  One, a

 8    batch that you obtained and tested, right, and, two, a batch

 9    that they tested, either immediately or shortly thereafter,

10    that they are relying upon.  So you've just identified two

11    particular specific samples potentially.

12              Why aren't you requesting that?  Because if that is

13    what you are requesting --

14              MR. BRODY:  Your Honor, I could request specifically

15    that.

16              THE COURT:  Why wouldn't I compel that?

17              MR. BRODY:  I could request that, but there is no -- I

18    mean, I almost feel like I should just concede I should request

19    that just to get this over with because I don't see how that

20    would be any more particular and any more relevant than any

21    other batch of the subject product.  The case revolves around

22    all batches.

23              THE COURT:  Because it's a way to identify -- the rule

24    requires reasonable particularity, right.  So that is a way to

25    identify it --
```

```
 1              MR. BRODY:  OK.

 2              THE COURT:  -- A, to impeach them and, B, to support

 3      your theory.  I think that is kind of probably what I just

 4      envisioned.

 5              MR. BRODY:  OK.

 6              THE COURT:  The problem is every time I have a

 7      discovery hearing nowadays -- I'm getting old -- so I forget

 8      everything that happened.  So I need a transcript for anything.

 9      But I think what I was envisioning was taking the accumulation

10      of information and condensing it down to something manageable,

11      and it sounds like you have just identified to me something

12      manageable.

13              You have identified a batch that you tested.  They've

14      identified a batch that they tested.  If you want, for lack of

15      a better word, to impeach that or, alternatively, corroborate

16      it, you have now identified two specific samples --

17              MR. BRODY:  It is more than two, but, yes, I

18      understand.

19              THE COURT:  Whatever it is.

20              MR. BRODY:  It's multiple.

21              THE COURT:  As opposed to a hundred.

22              MR. BRODY:  OK.  I understand.

23              THE COURT:  So if you get that, what would be the

24      reason I couldn't compel it?

25              MR. ANDERSON:  I think if it makes sense and it is
```

1    connected to bottles that they are asking for that, as we have

2    discussed at prior hearings, that that is something that is

3    open.  I just don't think it is, here you go, here's

4    everything.

5            THE COURT:  I agree on that.  In other words, he's

6    identified, either wittingly or unwittingly, two ways to do it.

7    One is what they tested and two is what you tested.

8            MR. ANDERSON:  Sure.

9            MR. BRODY:  Your Honor, I mean, I think --

10           MR. ANDERSON:  I think that makes sense.

11           MR. BRODY:  -- part of the issue is defendants are

12   taking the position that not all samples were deficient.  If we

13   had a sampling of their reserve samples, not all of them but a

14   sampling of them, that would be good evidence in the case.

15   That would be probably the most relevant evidence we could have

16   in this case.

17           THE COURT:  As far as you are concerned, you have a

18   claim based on the information that you purchased and the

19   testing that you conducted, right?

20           MR. BRODY:  Yes.

21           THE COURT:  That's your case, right.

22           MR. BRODY:  I'm not suggesting we don't have other

23   evidence and that the case would go by if we didn't have this;

24   I'm just suggesting that this would be good, direct, relevant

25   evidence.

1    THE COURT:  Let's put it this way.  Yes, I suppose in

2  theory, but the rule requires some level of particularity.

3    MR. BRODY:  OK.

4    THE COURT:  So I think you've identified --

5    MR. BRODY:  OK.

6    THE COURT:  If you want that, identify it, and now we

7  have at least a very specific identifiable series of product

8  that you can then make available for testing, it seems to me.

9    MR. BRODY:  OK.

10    THE COURT:  So to some extent I guess I'm granting

11  your motion at the end of the day in part as to that that you

12  have identified, but I am not going to compel all reserve

13  samples.

14    MR. BRODY:  I'm not asking the court to do that.  I

15  understand.

16    THE COURT:  I guess maybe, hopefully, I brought that

17  to closure since it is a month away.

18    OK.  Anything else on the defendants' side?

19    MR. O'BRIEN:  I apologize, your Honor.  I have one

20  more issue.  In a full disclosure, I don't think this issue is

21  technically ripe before the court.  I did raise it in my notice

22  of compliance, but it deals with discovery demands that

23  Asquared has served that plaintiffs' time to respond has not

24  yet run.

25    The only reason that I raise it is because my

```
 1   recollection is at the last conference you indicated that this

 2   was going to be the last chance to speak to your Honor about

 3   discovery issues before the close of discovery.  So I felt

 4   compelled to raise it to the extent that --

 5            THE COURT:  I may have been saying that to just scare

 6   you.

 7            MR. O'BRIEN:  Apparently it worked.

 8            THE COURT:  It worked.  So if you can't resolve it --

 9   chances are something is going to happen between now and the

10   17th anyway.

11            MR. O'BRIEN:  OK.

12            THE COURT:  So I won't --

13            MR. O'BRIEN:  That is fine.  I will put it away for

14   now.

15            THE COURT:  I won't force them to raise an issue that

16   they haven't fully --

17            MR. O'BRIEN:  I wouldn't expect you to.

18            THE COURT:  Right.

19            MS. DARMON:  If I may, your Honor.

20            THE COURT:  Your appearance, please.

21            MS. DARMON:  Can you hear me now?  OK.

22            So we'd just like to state on the record, on behalf of

23   defendant GMAX, regarding the final deadline for production, it

24   is our position that we have indeed produced all responsive

25   documents, but to the extent necessary GMAX would like to point
```

1 | to other defendant manufacturers' evidence regarding
2 | regulations.
3 |          THE COURT:  So long as you know it's been produced,
4 | right.
5 |          MS. DARMON:  OK.
6 |          THE COURT:  In other words, the key is that the
7 | plaintiff has it.  So to the extent that you need to verify
8 | that --
9 |          MS. DARMON:  Right.
10 |          THE COURT:  -- the 31st is your drop-dead date.
11 |          MS. DARMON:  OK.
12 |          THE COURT:  Anything else on the plaintiffs' side?
13 |          MR. BRODY:  Your Honor, there are another couple of
14 | issues, but I think they have been resolved including this
15 | week, very recently.
16 |          THE COURT:  Great.  All right.  So I was hoping to say
17 | good-bye to all of you, but if we have to have another hearing,
18 | I guess we will deal with it around the 17th.
19 |          MR. BRODY:  Thank you.
20 |          THE COURT:  I won't schedule it yet.  Let's just see
21 | where we are.
22 |          Thank you all very much.
23 |          (Adjourned)
24 |
25 |

C E R T I F I C A T E

    I hereby certify that the foregoing is an accurate transcription to the best of my ability of the digital audio recording in the above-entitled matter.


February 4, 2022      s/ Joanne Mancari
                       Joanne Mancari, RPR, CRR, CSR
                       Court Reporter
                       jemancari@gmail.com

MR. ANDERSON: [73] 3/16 6/20 8/14
8/21 8/25 9/2 9/13 9/18 9/21 9/25 10/6
10/10 10/13 10/18 11/2 11/6 11/11 11/20
11/25 12/3 12/7 12/12 12/20 12/25 13/4
13/11 13/18 13/22 14/3 14/5 14/8 14/11
14/14 14/25 15/14 20/6 21/1 21/5 22/7
22/25 34/21 49/1 51/24 52/5 52/7 52/11
52/15 52/22 53/1 53/6 53/10 53/17 61/18
61/20 62/5 63/2 68/5 69/3 69/5 69/7
69/21 69/24 70/4 71/16 71/22 71/25 72/4
72/8 72/10 72/13 75/25 76/8 76/10
MR. BRODY: [167]
MR. EGGNATZ: [2] 3/11 4/16
MR. O'BRIEN: [62] 3/14 23/2 23/4 23/6
23/9 23/11 23/14 23/16 24/9 24/17 24/23
25/3 25/9 25/12 25/19 26/1 26/6 26/12
26/16 26/20 31/10 32/19 34/3 40/3 40/13
40/16 40/20 41/8 41/10 41/22 43/6 43/20
43/24 49/2 49/7 57/24 58/15 58/21 59/8
59/11 59/19 59/21 60/7 60/10 60/19
60/22 60/24 61/5 61/8 61/13 62/7 62/12
62/19 62/21 63/20 63/23 64/18 77/19
78/7 78/11 78/13 78/17
MS. DARMON: [6] 3/19 78/19 78/21
79/5 79/9 79/11
THE COURT: [291]
THE DEPUTY CLERK: [7] 3/3 4/1 4/3
5/3 5/13 24/4 24/7

**$**
$5 [1] 32/10

**'**
'17 [2] 69/5 69/7
'18 [1] 69/5

**1**
10977 [1] 1/14
1099 [2] 15/5 15/11
111 [1] 45/19
12 [2] 31/24 40/13
12/31 [2] 48/2 57/20
12:30 [2] 29/24 29/25
14202 [1] 2/15
14th [11] 25/14 25/22 26/10 26/11 26/13
26/22 26/25 27/22 28/21 32/18 33/9
15th [8] 25/17 26/2 26/13 26/15 26/25
28/21 33/1 33/3
16 [1] 1/5
16th [1] 39/8
17th [10] 4/11 4/14 4/16 24/2 24/5 24/8
43/20 44/9 78/10 79/18
18th [2] 33/1 33/3
19-22702 [1] 3/4
19-CV-22702-KMW [1] 1/2

**2**
2011 [1] 2/4
2012 [1] 17/13
2017 [1] 69/3
2019 [1] 17/15
2021 [1] 1/5
2022 [2] 4/15 80/8
21 [1] 45/19
22702 [1] 3/4
22nd [5] 32/20 40/13 40/16 40/21 40/25
2499 [1] 2/5
24th [3] 36/19 44/21 45/12
256 [1] 17/7

2570 [1] 1/14
26 [22] 6/1 6/3 6/23 7/8 7/17 7/21 8/4
8/24 8/25 13/15 15/9 17/14 15/16 14/14 18/21
22/9 47/7 48/15 48/17 54/25 55/1 57/17
65/23
266 [2] 17/8 17/9
268 [2] 23/11 32/20

**3**
30 [5] 11/16 31/11 31/14 49/2 72/6
305 [1] 2/10
31 [3] 47/7 48/2 57/20
312 [1] 2/9
31st [9] 47/10 48/7 53/19 55/15 58/11
58/12 58/14 65/22 79/10
32 [1] 15/16
33134 [1] 2/10
33314 [1] 1/18
3359 [1] 1/19
33606 [1] 2/4
34 [1] 55/10
356-2570 [1] 1/14
377-2499 [1] 2/5

**4**
40 [1] 11/17
403 [1] 61/6
444-5565 [1] 2/10
45 [1] 29/9
4th [1] 4/9 4/19

**5**
50 [1] 2/14
5100 [1] 2/15
5565 [1] 2/10
5th [1] 33/7

**6**
60 [1] 11/17

**7**
716 [1] 2/15
7450 [1] 1/18
747 [1] 1/13
79 [1] 1/7

**8**
813 [1] 2/5
845 [1] 1/14
853-5100 [1] 2/15
87 [1] 15/18
889-3359 [1] 1/19

**9**
954 [1] 1/19
9th [2] 33/1 33/2

**A**
abide [2] 37/4 37/12
ability [4] 26/8 32/6 32/12 80/5
able [12] 19/24 20/12 27/19 32/15 34/23
47/15 48/14 54/4 63/2 64/9 70/25 74/2
about [80] 5/21 7/12 7/14 7/24 9/4 9/7
10/13 11/20 11/25 12/5 12/18 12/18
12/19 12/21 12/22 13/1 14/21 15/2 15/16
15/24 17/6 17/24 17/25 18/16 19/7 19/13
19/21 20/20 22/11 25/5 28/22 30/12
30/13 30/15 31/14 32/24 33/15 33/16
37/23 41/3 42/3 42/22 42/24 43/23 46/10
46/12 46/22 48/18 49/19 49/12 50/14

50/19 50/22 51/11 52/18 52/13 54/4
55/12 57/3 57/5 59/5 60/18 61/6 64/23
66/16 66/23 67/5 67/25 68/7 68/14 68/18
68/22 70/7 71/14 71/21 72/2 72/5 72/7
74/7 78/2
above [1] 80/6
above-entitled [1] 80/6
absent [1] 64/5
absolutely [3] 9/25 13/4 33/19
abundance [1] 47/6
accept [1] 58/5
access [2] 48/21 73/4
accommodate [1] 36/23
accommodating [2] 43/12 44/6
accordance [1] 11/9
accordingly [2] 27/2 29/4
accumulation [1] 75/9
accurate [1] 80/4
acknowledging [1] 16/9
action [5] 62/15 62/18 71/12 71/14 72/21
actual [2] 9/8 55/18
actually [15] 5/7 9/9 9/20 10/1 17/13
21/23 23/7 47/23 53/22 54/20 56/4 59/10
61/10 62/3 63/17
ad [1] 68/24
addition [2] 20/19 52/1
additional [3] 22/5 49/5 49/10
additionally [2] 17/23 19/21
address [3] 4/22 17/1 47/11
addressed [4] 23/18 30/11 64/20 69/17
adequacy [8] 15/25 17/25 19/14 19/22
20/13 61/20 61/22 64/13
adequate [7] 10/23 20/17 20/21 61/21
61/22 67/9 69/12
adequately [1] 20/23
Adjourned [1] 79/23
adjudicated [1] 64/1
admissibility [2] 63/11 65/18
advance [4] 6/10 38/16 38/18 43/10
advancing [1] 45/24
affect [1] 35/1
affirmatively [1] 65/25
affirmed [1] 67/6
after [7] 21/13 24/25 25/23 39/8 44/10
68/14 73/10
afternoon [7] 3/8 3/11 3/13 3/14 3/16
3/19 3/24
again [16] 7/17 19/18 21/22 33/18 33/25
35/21 43/9 43/13 44/23 48/18 50/14
51/12 53/21 54/14 64/15 65/13
against [14] 30/9 30/10 30/21 31/8 31/16
32/4 32/7 34/1 34/12 34/15 34/17 34/18
34/18 34/19
agent [1] 18/13
ago [2] 31/15 58/24
agree [5] 6/18 21/8 27/20 29/4 76/5
agreed [13] 24/13 25/9 27/16 27/22
27/23 28/8 28/17 28/25 30/6 36/4 36/8
36/24 38/10
agreement [1] 27/11
ahead [6] 5/6 5/10 5/14 5/18 38/24 41/9
49/17 49/20
aid [2] 49/17 49/20
al [4] 1/3 1/6 3/3 3/4
all [78] 5/24 7/2 11/15 13/3 15/13 16/19
16/24 17/13 20/4 20/7 20/15 21/7 21/21
22/3 27/13 27/20 27/23 27/24 27/25
27/25 28/4 28/8 28/8 28/17 28/24 29/6
30/7 30/17 31/4 31/5 31/10 32/7 33/16
34/2 34/8 34/8 35/13 36/4 36/8 36/11
39/7 39/7 45/16 46/11 46/19 47/7 50/6

**A**

all... [31]  51/24 53/11 54/12 55/1 55/3
58/4 58/11 58/14 63/8 67/3 67/7 67/8
67/8 67/9 68/8 69/16 70/8 70/13 70/15
70/18 70/22 70/23 72/21 74/22 76/12
76/13 77/12 78/24 79/16 79/17 79/22
allegations [1]  30/10
allege [1]  32/10
allegedly [1]  67/20
allow [6]  25/19 35/19 38/5 44/10 44/20
69/25
allowed [1]  38/9
alluded [3]  16/16 17/22 55/19
alluding [1]  16/3
almost [1]  74/18
along [1]  48/1
already [17]  16/22 24/21 27/4 28/10
28/24 28/25 29/19 33/22 36/2 36/12 37/7
40/10 41/24 44/1 48/9 74/3 74/6
also [20]  7/14 10/20 16/5 17/1 17/22
17/23 19/21 20/9 20/18 22/15 23/7 25/14
28/19 32/25 33/2 33/4 34/4 42/16 44/8
44/25
alternative [4]  6/1 7/20 39/13 44/3
alternatively [1]  75/15
although [3]  7/2 20/11 34/6
always [1]  38/13
am [11]  3/22 3/23 23/19 29/14 45/21
45/23 47/6 49/9 76/7 77/12
Amazon [5]  50/15 50/16 54/5 54/7 54/10
amend [1]  57/15
amended [6]  17/14 25/16 26/3 26/12
33/7 55/21
amongst [1]  32/23
amount [3]  42/22 66/25 71/25
analogous [1]  63/21
analyses [1]  21/20
analysis [1]  32/11
analyze [1]  22/1
analyzed [1]  69/11
ANDERSON [11]  2/3 2/3 3/17 8/19 20/5
21/9 21/9 21/14 32/23 34/20 35/16
Anderson's [1]  21/18
Ann [2]  58/22 59/12
another [9]  17/2 24/18 27/20 29/14 35/1
36/19 40/6 79/13 79/17
answer [2]  12/23 19/20 61/14
anticipate [1]  21/17
anticipation [3]  17/18 35/9 40/4
any [52]  5/22 8/17 11/23 15/6 16/11
16/12 17/11 17/19 17/20 22/10 22/24
22/25 23/1 24/10 29/23 30/5 30/9 30/19
31/11 31/11 34/15 36/14 37/13 45/25
46/18 47/11 50/10 50/12 52/2 52/3 53/1
53/19 54/12 54/15 55/8 59/16 60/17
60/21 60/21 63/17 63/18 65/13 66/8
66/12 68/9 68/10 68/19 71/10 73/11
74/20 74/20 74/20
anybody [5]  3/24 39/24 50/9 51/22 53/20
anymore [1]  66/10
anyone [4]  4/1 33/20 50/8 50/15
anything [25]  13/5 15/11 21/2 33/16 47/7
47/12 47/16 47/22 48/3 48/6 53/13 57/18
57/20 58/12 60/1 61/16 64/19 65/16
65/20 68/11 69/15 70/16 75/8 77/18
79/12
anyway [3]  30/15 38/25 78/10
apart [1]  20/18
apologize [5]  5/17 43/6 55/25 57/25
77/19

apparently [4]  27/9 37/22 41/4 78/7
appear [6]  3/25 52/8 52/9 55/7 57/24
60/25
appearance [2]  3/21 78/20
appearances [3]  1/11 1/20 3/6
appeared [2]  28/16 62/1
applies [6]  45/16 47/20 47/22 48/5 54/25
58/16
apply [1]  47/19
approached [1]  22/1
appropriate [6]  18/17 35/14 35/18 38/4
43/15 46/4
April [4]  4/10 4/13 4/18 24/6
arbitrary [2]  73/1 73/3
are [105]
aren't [1]  74/12
arguably [1]  9/24
argue [1]  64/10
argument [9]  8/23 13/16 14/22 14/24
42/3 59/7 62/22 64/12 70/20
around [4]  29/1 29/17 74/21 79/18
arranged [1]  29/4
articulates [1]  23/23
as [66]  4/13 4/14 6/13 6/15 7/7 7/13 7/15
8/15 10/1 11/9 14/6 14/25 15/4 15/7
16/7 16/10 18/11 18/16 18/21 20/15 21/9
21/10 21/19 21/23 22/1 22/5 22/19 30/6
30/21 32/1 33/17 33/17 33/20 33/20
35/16 36/24 36/24 41/12 44/14 47/21
50/1 53/10 53/10 56/6 56/9 58/9 59/13
60/8 61/22 63/3 63/8 63/8 64/9 64/15
65/12 65/24 68/25 68/25 72/12 73/20
75/21 76/1 76/17 76/17 77/11 79/3
aside [1]  37/16
ask [12]  10/7 10/12 10/15 14/2 22/12
22/14 22/23 33/13 48/23 50/3 60/5 65/10
asked [13]  9/20 16/11 21/19 22/11 34/4
37/20 65/5 67/13 67/17 67/25 71/1 71/4
72/6
asking [5]  51/24 54/14 70/23 76/1 77/14
Asquared [31]  2/14 3/15 23/4 24/11
24/19 30/7 30/10 30/17 31/4 31/21 32/3
32/12 32/16 33/15 33/16 33/19 33/20
33/25 34/7 34/7 34/14 34/15 34/23 42/13
42/13 42/17 43/14 58/5 59/15 60/7 77/23
Asquared's [5]  23/6 23/11 23/23 32/6
43/7
asserted [2]  34/6 34/12
asserting [1]  34/17
assist [1]  10/20
associate [1]  3/23
associated [1]  41/16
assume [2]  13/17 62/14
assumed [1]  39/15
assuming [3]  18/14 40/7 60/13
at [99]
attached [1]  33/22
attitude [1]  38/23
attorney [2]  56/6 61/23
attorney-client [1]  61/23
audio [2]  1/9 80/5
authority [5]  12/6 13/17 63/18
availability [2]  33/8 35/7
available [13]  24/14 26/23 28/8 28/16
33/4 35/5 38/7 38/7 40/23 43/12 45/13
57/14 77/8
Ave [1]  2/9
aware [1]  66/23
away [3]  42/20 77/17 78/13
awfully [2]  71/6 71/8

**B**

back [13]  20/25 23/5 29/8 37/14 37/16
45/14 53/25 58/19 63/18 64/21 66/9
66/22 73/3
bad [1]  10/21
based [13]  7/1 9/10 12/16 18/8 19/22
20/13 20/21 21/3 21/8 53/12 64/2 72/17
76/18
basically [9]  11/15 21/25 55/10 56/21
59/1 61/3 63/15 65/19 66/9
basing [1]  22/15
basis [9]  11/9 13/10 15/2 24/19 31/25
42/21 42/24 48/13 63/12
batch [12]  20/11 66/15 69/11 69/11 71/2
72/20 72/25 74/8 74/8 74/21 75/13 75/14
batches [3]  72/21 74/7 74/22
be [126]
bears [1]  15/6
became [1]  59/24
because [81]
Because's [3]  4/23 7/22 64/22
been [27]  7/3 7/5 8/15 8/17 12/24 15/4
17/14 23/18 26/7 27/13 39/13 44/3 45/21
47/23 51/10 51/24 56/10 58/11 62/7 65/6
68/2 68/5 68/23 70/25 78/5 79/3 79/14
before [28]  1/10 6/6 7/23 8/6 13/20 16/3
25/7 27/5 27/5 27/8 28/2 40/5 42/9
42/10 42/11 42/16 42/18 44/7 47/24
47/24 48/1 48/2 51/11 51/23 55/19 73/12
77/21 78/3
begin [1]  29/24
behalf [5]  3/12 3/15 3/17 3/20 78/22
behemoth [1]  64/3
behind [1]  6/4
being [13]  6/13 7/6 14/8 15/6 21/19 22/4
32/15 34/3 38/21 40/4 54/8 57/11 57/20
believe [23]  4/11 5/25 6/16 7/18 10/3
10/7 16/15 26/20 26/21 29/10 33/2 36/19
40/20 48/23 48/24 50/24 51/17 51/21
53/1 54/18 54/20 60/14 71/8
believes [1]  59/15
benefit [2]  46/8 48/11
besides [1]  45/17
best [3]  40/9 63/8 80/5
bet [1]  9/23
better [5]  5/7 21/11 75/15
between [5]  32/21 32/22 43/16 57/19
78/9
beyond [7]  7/12 17/16 19/16 19/17 22/11
44/2 57/10
big [1]  53/16
bit [5]  11/7 20/14 24/1 43/8 73/1
blank [1]  22/13
blocked [1]  37/7
booked [1]  27/1
both [3]  48/5 58/16 73/19
bottle [7]  49/16 49/23 50/12 50/22 53/4
54/4 54/25
bottles [16]  48/18 49/12 49/13 50/13
50/15 50/16 51/24 52/8 53/8 53/13 53/23
55/11 58/4 58/6 70/2 76/1
bought [6]  31/19 34/9 50/15 54/5 54/9
59/13
Brands [1]  2/14
briefly [1]  59/4
bring [5]  8/5 28/2 29/15 34/14 36/10
bringing [5]  28/6 28/12 36/12 38/17
65/10
broad [2]  22/21 71/6 71/8
broader [2]  24/1 31/19

**B**

BRODY [15]  1/12 3/9 4/20 15/21 21/8
26/21 32/22 32/23 32/25 34/12 40/5
41/25 43/10 45/14 72/5
Brody's [1]  26/21
brought [5]  29/20 54/19 54/23 65/5
77/16
Buffalo [1]  2/15
building [1]  60/2
bunch [2]  32/12 55/2
burden [1]  64/13
business [4]  7/5 9/15 9/15 15/19
but [105]
buy [5]  32/3 34/7 34/14 50/15 54/7
bye [1]  79/17

**C**

C.F.R [1]  45/19
CAFA [1]  32/9
calendar [1]  33/1
call [12]  4/1 20/12 33/23 41/11 41/13
41/14 48/15 58/11 61/3 62/24 63/15
67/14
called [4]  3/25 9/9 20/11 69/13
calling [2]  3/3 27/15
calls [1]  27/17
came [2]  1/9 69/19
can [50]  5/6 5/11 5/15 16/1 17/5 18/24
21/17 22/14 23/9 28/14 30/12 31/11
33/20 34/11 35/21 35/24 36/1 36/5 36/24
37/12 38/8 39/21 41/8 41/20 41/21 41/22
42/23 44/6 44/9 44/14 47/5 47/8 47/10
57/4 57/9 57/17 58/7 60/21 61/15 61/18
63/6 64/10 65/12 66/9 66/21 70/5 72/13
72/13 77/8 78/21
can't [20]  24/17 29/3 29/4 32/1 44/7 44/9
56/14 59/11 60/17 63/12 65/23 66/1
66/10 67/10 70/16 71/9 71/24 72/18
72/23 78/8
canceled [4]  26/11 27/9 35/3 35/15
cannot [5]  12/22 34/14 41/21 46/8 49/9
capped [1]  68/20
care [1]  38/24
carve [1]  31/14
case [71]  1/2 3/3 3/4 3/21 4/5 4/9 6/7 6/8
6/11 8/2 10/9 11/22 13/25 14/6 14/9
16/18 17/5 17/13 17/15 18/1 18/3 18/9
18/19 18/25 23/22 24/11 24/19 30/13
30/18 31/16 32/4 32/7 34/15 35/23 37/5
42/20 42/25 45/18 45/24 49/3 49/8 52/18
53/12 54/22 56/16 57/2 57/21 58/1 58/23
59/10 59/12 59/16 59/24 60/2 61/4 62/4
63/21 64/2 65/14 66/8 66/18 67/4 68/7
68/11 70/2 73/18 74/21 76/14 76/16
76/21 76/23
cases [4]  16/19 16/25 17/12 37/8
category [1]  8/16
causation [1]  18/3
caution [1]  47/6
Central [2]  2/8 3/20
certain [7]  5/20 7/3 7/12 34/10 46/12
51/21 74/4
certainly [5]  10/24 32/11 32/14 35/11
60/2
certificate [1]  26/18
certification [8]  62/4 62/23 62/23 62/25
63/3 63/6 64/9 64/11
certify [1]  80/4
chain [2]  68/19 70/15
chance [2]  47/6 78/2

chances [1]  78/9
change [2]  39/2 48/1
changed [1]  43/17
Chapman [1]  15/15
charge [1]  40/22
Chestnut [2]  1/13 1/14
chief [1]  56/17
choice [1]  10/21
chose [1]  35/6
Christmas [1]  39/8
circle [1]  15/15
circumstances [7]  31/6 31/21 33/10 35/3
44/19 59/15 60/3
civil [1]  3/4
claim [8]  31/18 49/7 49/8 67/2 67/22
67/24 73/6 76/18
claimant [1]  30/17
claimed [1]  46/18
claiming [3]  34/1 34/18 34/19
claims [3]  30/9 34/25
clarification [1]  31/12
clarify [6]  8/15 18/24 34/11 36/13 40/4
48/16
class [23]  34/6 34/8 34/12 34/15 34/17
34/25 35/11 38/4 42/23 61/21 61/22 62/4
62/15 62/18 62/22 62/25 63/3 63/6
64/13 71/12 71/14 72/21
clear [14]  7/8 8/1 8/3 9/11 16/18 16/19
19/4 22/18 30/1 31/11 34/16 42/6 47/16
48/11
clearly [2]  38/21 67/8
Cleveland [1]  2/4
client [8]  8/12 24/19 26/23 31/9 40/9
40/21 61/23 71/2
clients [1]  32/3
clogged [1]  45/8
close [2]  16/9 78/3
closed [1]  50/22
closer [1]  5/12
closure [1]  77/17
co [1]  15/17
co-owner [1]  15/17
coast [1]  29/25
collectively [2]  26/8 40/8
come [20]  10/22 13/14 16/9 28/4 31/4
42/19 43/10 51/22 52/3 52/12 52/19
52/20 57/9 60/5 61/16 63/12 63/19 64/3
64/15 69/21
comes [9]  9/15 15/2 15/8 42/24 47/17
57/10 58/12 64/10 67/11
coming [2]  9/5 49/19
communication [1]  32/22
companies [1]  66/7
company [4]  7/3 7/13 13/2 16/8
compel [7]  22/9 45/21 46/25 51/19 65/11
70/22 74/16 75/24 77/12
compelled [1]  78/4
compelling [2]  30/16 64/8
complete [1]  68/12
completed [1]  25/24
compliance [9]  16/19 16/24 17/4 23/7
23/12 23/23 45/19 68/21 77/22
compliant [1]  20/2
complicated [1]  66/2
complication [1]  70/15
complied [1]  45/24
comply [5]  29/12 38/12 38/13 38/14
57/17 60/13 60/25
comport [1]  13/7
concede [1]  13/7

concerned [3]  46/10 56/5 76/17
conclusion [1]  72/23
conclusions [1]  42/24
conclusive [1]  65/7
condensing [1]  75/10
conduct [1]  32/13
conducted [2]  68/1 76/19
conducting [1]  41/16
confer [1]  37/23
conference [10]  23/19 25/4 25/12 33/3
40/5 41/18 42/3 58/25 59/3 78/1
conferred [1]  41/24
conferring [1]  37/21
confirm [2]  24/3 66/17
confirmed [2]  27/25 30/3
conflict [1]  3/23
connected [1]  76/1
connection [1]  4/8
consider [1]  4/22
considered [1]  16/22
consistent [2]  13/9 65/23
consult [1]  19/8
consultant [2]  9/13 9/14
consulted [1]  19/5
consumers [1]  70/17
CONT'D [1]  2/1
contact [1]  40/9
contemporaneous [1]  20/25
contemporaneously [1]  68/1
content [1]  7/25
contentions [1]  69/16
context [1]  30/8
contractor [6]  7/4 7/7 7/13 14/23 16/7
18/12
contractual [1]  7/16
control [2]  13/23 14/1
copied [1]  27/24
Cora [1]  3/3
Coral [1]  2/10
Cori [2]  58/22 59/12
correct [17]  4/12 8/14 21/1 32/17 32/19
38/15 43/24 47/4 56/15 60/19 60/22 61/5
62/21 64/6 67/22 68/3 72/11
corroborate [1]  75/15
cost [1]  21/16
could [27]  4/14 6/3 10/15 18/15 30/5
39/19 50/8 50/12 50/13 50/15 52/22
53/21 54/5 54/14 56/9 56/19 56/25 57/1
57/2 61/16 63/20 67/8 67/23 72/25 74/4
74/17 76/15
couldn't [5]  29/18 29/21 36/9 67/18
75/24
counsel [13]  3/6 4/8 5/3 8/10 17/18
17/23 19/20 27/24 27/25 30/14 56/8
56/19 61/22
counsel's [1]  58/2
couple [4]  27/3 64/21 73/10 79/13
course [3]  13/14 48/13 58/18
court [34]  1/1 2/19 5/11 5/15 8/6 23/19
27/8 28/3 28/6 28/12 29/8 29/15 29/20
32/8 33/3 33/11 36/5 36/11 36/12 37/11
37/12 38/18 42/15 44/4 45/23 46/13
46/20 48/18 48/25 58/13 73/1 77/14
77/21 80/9
court's [2]  38/25 40/6
covers [1]  72/21
create [2]  10/24 53/23
created [1]  20/7
critical [1]  18/7
cross [2]  34/22 72/17

C

cross-notice [1] 34/22
cross-reference [1] 72/17
CRR [2] 2/18 80/8
CSR [2] 2/18 80/8
CT [2] 2/4 3/17
custody [2] 68/19 70/15
cutoff [2] 4/9 43/18
CV [1] 1/2

D

DABOLL [1] 2/3
daily [2] 66/4 70/17
damages [4] 32/10 41/14 42/11 42/22
DANIT [2] 2/8 3/19
dared [1] 28/1
DARMON [2] 2/8 3/19
date [22] 25/14 26/3 26/6 26/10 27/16
28/24 36/4 36/9 36/9 36/10 38/6 38/6
38/22 39/18 39/23 39/25 40/12 43/12
48/2 57/20 69/8 79/10
dates [13] 24/5 24/13 27/25 28/1 35/19
35/21 35/22 38/10 39/13 40/9 41/25 44/2
44/3
Davie [1] 1/18
day [15] 6/15 26/23 27/20 27/23 28/4
28/6 28/17 33/4 33/8 37/22 39/22 39/23
42/10 43/19 77/11
days [2] 39/21 49/2
ddarmon [1] 2/11
dead [4] 48/2 48/8 57/20 79/10
deadline [6] 43/20 48/8 62/8 62/9 62/11
78/23
deal [7] 35/11 40/1 41/2 47/5 53/16
63/24 79/18
dealing [3] 38/2 39/1 63/10
deals [2] 58/18 77/22
dealt [3] 54/14 54/16 54/17
December [4] 1/5 36/21 44/25 47/7
decent [1] 61/8
decide [1] 57/17
decided [3] 27/6 28/10 57/15
decision [1] 35/16
decisions [1] 8/1
defective [1] 49/4
defend [2] 32/6 52/21
defendant [56] 1/7 2/3 2/8 2/13 3/15
3/20 6/18 6/24 7/21 22/24 23/1 24/11
24/18 24/22 24/24 25/5 25/12 26/17
27/21 30/5 30/7 30/10 30/16 30/22 30/24
30/25 31/4 31/23 32/16 32/20 33/7 33/12
33/25 34/7 34/13 34/15 35/1 42/5 43/4
43/16 45/16 45/17 45/17 48/14 48/24
50/12 54/13 54/19 54/21 58/19 64/1
64/22 65/1 66/2 78/23 79/1
defendant's [1] 36/22
defendants [29] 6/17 15/24 26/7 27/6
28/14 29/12 31/17 32/12 34/18 34/18
36/4 36/8 36/23 37/12 38/9 40/8 41/20
43/2 45/16 45/18 48/5 51/13 53/11 54/13
58/5 59/1 66/24 73/23 76/11
defendants' [6] 25/7 31/19 57/7 58/20
67/14 77/18
defense [5] 27/25 46/6 56/19 59/16 60/2
deficient [5] 6/2 14/19 67/12 73/16 76/12
definition [1] 30/20
degree [2] 71/20 72/19
demands [1] 77/22
demonstrative [6] 49/17 49/20 50/21
51/3 51/5 65/18

demonstratives [2] 53/14 53/15
deny [1] 31/19
denying [2] 16/4 32/2
depo [1] 15/17
deponent [1] 70/9
depose [13] 21/13 21/14 21/22 27/22
28/10 28/23 30/17 31/5 31/11 36/11
39/24 39/25 41/20
deposed [13] 24/22 27/12 32/24 39/11
39/15 43/22 42/23 44/7 44/9 44/10 44/18
44/21 66/16
deposing [5] 28/15 33/12 36/25 43/14
43/14
deposition [85]
depositions [6] 23/17 32/13 33/2 33/4
41/24 41/25
details [1] 54/18
determination [4] 11/10 20/22 20/24 46/2
determine [1] 20/13
develop [1] 12/4
developing [1] 11/6
development [2] 18/9 18/10
developments [1] 42/18
did [55] 4/1 6/11 10/24 13/2 13/7 16/7
16/21 16/21 18/8 18/16 19/4 20/1 20/1
20/19 20/25 21/3 22/3 24/3 25/21 25/22
26/1 26/2 26/9 27/10 28/20 29/11 29/12
31/20 32/22 34/6 36/15 41/4 48/23 49/22
51/9 51/22 52/3 52/12 52/17 52/19 56/7
59/2 59/17 59/23 60/3 60/13 64/24 65/4
66/17 66/23 67/5 67/20 69/22 72/6 77/21
didn't [22] 19/11 22/20 26/15 26/16
31/25 32/3 33/18 34/13 35/22 37/4 37/5
37/18 37/20 39/15 42/13 46/18 62/9 73/8
73/9 73/20 73/22 76/23
different [9] 17/20 19/5 24/22 30/21
32/11 35/17 51/9 63/1 63/10
differently [1] 16/13
difficult [2] 19/19 40/17
difficulty [1] 53/23
digital [2] 1/9 80/5
direct [1] 76/24
directed [1] 29/10
directive [1] 65/7
disclose [4] 7/19 13/5 22/15 49/8
disclosed [10] 12/13 13/13 14/22 17/21
22/13 25/1 41/12 48/7 48/19 51/11
discloses [1] 5/20
disclosing [1] 56/4
disclosure [26] 4/23 5/1 5/19 6/2 6/7 6/9
7/10 7/22 8/7 8/24 8/24 12/17 13/15
14/15 15/24 16/10 21/11 21/12 21/21
22/4 22/9 22/19 25/7 41/13 58/4 77/20
disclosures [3] 6/15 49/1 52/1
discontinuance [1] 31/17
discontinued [1] 31/16
discovery [27] 1/9 4/5 4/9 24/2 24/9
24/14 25/4 25/23 32/4 32/13 43/18 48/13
49/3 54/25 58/25 63/3 63/5 63/9 63/14
64/16 65/13 68/6 68/15 75/7 77/22 78/3
78/3
discretion [1] 71/7
discussed [1] 76/2
discussion [1] 68/14
dismiss [3] 31/24 42/7 63/25
dispute [3] 24/10 63/7 73/8
disputing [2] 30/19 73/24
district [3] 1/1 1/1 8/2
do [72] 6/6 7/3 10/3 10/7 10/14 11/14
11/20 13/22 14/18 14/19 16/12 17/11

17/13 20/4 20/6 20/23 21/3 21/17 21/19
22/20 23/10 31/7 31/7 34/21 35/9 35/14
36/24 37/9 37/14 38/8 38/24 41/3 43/4
46/22 47/14 47/24 47/25 50/7 50/8 50/12
50/13 51/23 52/10 52/19 52/24 55/4
56/13 57/8 57/15 57/16 57/18 58/7 58/8
58/22 59/9 60/16 60/23 62/6 62/11 63/12
63/17 63/18 65/22 67/14 68/11 68/15
70/5 70/21 71/11 73/20 73/22 76/6 77/14
doc [1] 32/20
docket [2] 17/6 23/11
doctor [10] 5/2 10/4 10/7 10/9 12/14
12/15 14/16 14/18 22/2 22/3
document [2] 45/20 47/2
documented [1] 46/16
documents [12] 8/17 31/18 45/19 45/22
46/1 46/12 46/17 46/18 46/24 47/13
48/10 69/16 78/25
does [14] 6/18 14/15 16/9 22/15 30/9
31/9 31/10 34/14 47/19 51/22 56/11
57/16 60/25 63/14
doesn't [13] 5/21 7/24 7/25 12/9 12/13
19/25 28/10 33/16 34/16 51/3 54/7 60/18
62/14
doing [2] 12/4 20/14
don't [92]
done [13] 35/7 40/10 43/25 47/25 55/15
57/6 67/1 68/21 68/21 71/2 73/19 73/21
73/23
doublecheck [3] 4/13 4/18 14/13
doubt [1] 39/2
down [5] 5/6 5/8 65/8 69/23 75/10
dozens [1] 69/9
Dr. [29] 7/2 7/11 10/13 15/24 20/14 25/1
25/6 25/13 25/20 25/21 25/23 27/4 32/25
33/9 36/17 36/18 41/13 41/14 41/15
41/16 41/18 42/2 42/4 42/11 42/16 42/21
43/13 43/15 69/10
Dr. Hutt [2] 41/15 41/18
Dr. Kalman [9] 25/1 25/6 25/20 25/23
32/25 36/17 36/18 41/13 42/4
Dr. Kalman's [5] 25/13 25/21 27/4 33/9
41/16
Dr. Ross [6] 7/2 7/11 10/13 15/24 20/14
69/10
Dr. Sharp [3] 41/14 42/11 43/15
Dr. Sharp's [4] 42/2 42/16 42/21 43/13
drop [4] 48/2 48/8 57/20 79/10
drop-dead [4] 48/2 48/8 57/20 79/10
dropped [1] 58/23
due [6] 6/15 6/16 25/7
during [6] 11/12 18/9 34/9 39/12 39/15
48/13
DXM [1] 3/20

E

earlier [1] 69/10
easy [1] 65/15
education [1] 18/15
EDWIN [1] 1/10
effect [2] 38/23 39/4
effectively [2] 7/6 39/9
effort [1] 38/14
EGGNATZ [3] 1/17 1/17 3/12
eight [2] 23/13 58/23
either [9] 8/11 21/15 48/13 58/9 61/17
65/11 65/21 74/9 76/6
else [12] 30/15 33/20 36/12 47/16 48/3
48/6 59/13 59/14 64/19 65/20 77/18
79/12

# E

email [4]  27/18 27/24 32/22 33/6
emailing [1]  27/15
employed [1]  8/11
employee [3]  14/24 15/6 18/11
end [14]  6/16 6/17 15/23 17/24 23/20
 29/11 29/14 36/16 42/9 42/17 45/14 49/3
 54/24 77/11
enforce [1]  48/15
enough [4]  17/22 59/9 63/24 73/24
ensure [1]  68/20
enter [1]  38/5
entered [1]  58/25
entire [3]  35/1 53/11 53/12
entitled [9]  21/10 32/3 40/7 40/8 59/2
 62/24 63/5 65/25 80/6
envisioned [1]  75/4
envisioning [1]  75/9
error [2]  24/6 24/7
especially [2]  39/20 57/14
ESQ [6]  1/12 1/17 2/3 2/8 2/8 2/13
essentially [1]  41/19
et [4]  1/3 1/6 3/3 3/4
etc [6]  9/6 12/5 19/7 46/16 46/21 73/24
even [13]  5/12 7/20 8/3 18/24 27/15
 28/11 28/16 35/23 45/25 51/3 66/3 73/3
 73/7
event [1]  29/23
events [1]  8/12
ever [1]  66/11
every [8]  35/8 37/10 66/15 67/11 68/6
 69/21 70/10 75/6
everybody [4]  4/6 39/24 58/9 58/13
everyone [4]  31/5 38/10 59/13 59/14
everything [11]  13/7 47/20 47/22 68/13
 68/21 70/4 73/7 73/8 73/9 75/8 76/4
evidence [12]  45/24 46/21 48/12 49/19
 51/6 65/14 67/8 76/14 76/15 76/23 76/25
 79/1
exact [2]  70/9 70/10
exactly [4]  19/19 19/24 55/22 56/1
example [15]  10/2 12/11 17/12 17/14
 18/10 18/17 48/10 54/1 54/3 62/1 65/17
 68/17 70/24 71/2 73/17
exception [1]  61/11
exclusion [1]  58/14
excuse [3]  23/20 29/17 59/19
exist [1]  72/8
existed [1]  61/2
exists [1]  64/4
exonerate [1]  67/3
Expand [1]  11/7
expect [2]  10/13 78/17
expected [3]  9/6 12/14 13/23
expedition [1]  68/12
experience [1]  18/14
expert [71]  4/23 4/25 5/1 5/19 5/21 5/25
 6/2 6/10 6/14 6/15 6/25 7/2 7/6 7/7 7/9
 7/10 7/17 7/19 7/22 7/23 8/15 8/18 8/23
 14/21 15/4 15/7 15/23 16/1 16/12 16/22
 21/25 22/5 25/1 25/1 25/7 25/23 25/25
 28/5 28/11 28/23 29/7 29/13 30/2 32/24
 33/4 35/5 36/20 37/5 37/6 37/7 37/16
 38/21 41/12 41/14 41/14 42/12 42/21
 43/18 48/21 49/23 50/1 50/12 50/17
 51/11 54/4 57/3 57/3 57/7 58/2 58/2
 58/7
expert's [2]  35/6 42/4
expertise [4]  9/10 9/11 9/12 50/11
experts [7]  41/11 44/17 55/6 57/9 57/22

 73/25 73/25
explain [1] 67/1
explained [1]  12/24
explaining [1]  20/2
extend [1]  17/16
extent [16]  16/4 16/16 16/20 18/19 18/22
 46/17 48/9 51/10 53/14 56/7 69/14 69/25
 77/10 78/4 78/25 79/7
extra [1]  45/9
extremely [2]  32/5 32/15

# F

face [2]  21/18 45/6
facetious [1]  14/9
facilities [3]  67/7 67/10 69/1
fact [9]  13/23 15/5 15/5 27/7 27/21 41/11
 41/19 53/12 64/7
facts [4]  5/22 7/24 22/15 27/3
factual [10]  9/8 9/24 12/16 12/16 13/3
 16/5 16/21 18/9 18/13 42/18
factually [1]  63/21
fair [4]  36/14 46/15 46/19 55/17
falls [1]  8/16
familiar [1]  50/13
family [1]  39/16
far [5]  33/17 33/20 53/10 68/25 76/17
fast [1]  42/5
fault [2]  35/15 35/16
FDA [16]  8/13 9/3 9/3 9/13 9/13 10/20
 12/1 12/4 12/5 13/2 13/7 20/2 66/12
 72/12 73/7 73/9
FDA-compliant [1]  20/2
February [2]  62/12 80/8
federal [3]  32/5 64/4 66/6
feel [4]  37/12 56/12 64/14 74/18
felt [1]  78/3
few [1]  23/2
fight [1]  32/24
file [3]  47/14 62/9 62/15
filed [3]  3/21 42/6 62/7 64/1
filling [1]  3/22
films [1]  22/2
final [3]  28/1 47/6 78/23
find [5]  28/20 63/20 66/21 67/23 72/25
finding [1]  73/9
fine [4]  14/1 23/6 58/8 78/13
finely [1]  31/14
finish [1]  8/7
finished [2]  11/18 11/21
firm [2]  3/9 58/3
first [15]  4/21 5/24 7/2 16/15 17/13 23/6
 27/10 27/15 31/10 32/8 33/16 35/4 44/24
 53/8 54/12
firsthand [1]  11/3
fishing [1]  68/12
Fishon [2]  31/15 42/19
fit [1]  17/12
fix [5]  21/17 35/24 36/1 36/2 36/5
fixed [1]  12/23
FL [3]  1/18 2/4 2/10
flex [1]  44/14
flexibility [1]  44/20
FLORIDA [5]  1/1 1/4 58/2 60/9 60/11
follow [2]  37/15 57/19
followed [1]  70/10
following [2]  3/2 11/13
force [1]  78/15
foregoing [1]  80/4
forever [1]  41/1
forget [1]  75/7

form [1]  17/17
former [1]  58/22
forms [2]  20/7 20/8
forth [5]  16/18 19/19 23/5 28/9 29/8
forward [24]  26/15 26/22 27/7 27/14
 27/16 28/3 28/5 28/7 28/25 29/6 29/18
 29/21 30/6 32/18 35/23 36/4 36/13 36/19
 36/20 37/5 37/18 37/23 38/10 41/5
found [2]  28/22 73/8
Fountain [1]  2/14
four [1]  41/10
frankly [1]  13/23
Friday [1]  33/5
FRIEDMAN [1]  2/14
front [8]  17/4 22/11 28/6 28/12 29/7
 29/20 38/22 45/3
fruition [1]  42/19
full [7]  5/25 6/25 7/9 7/19 15/14 33/4
 77/20
full-day [1]  33/4
fully [3]  47/10 61/9 78/16
further [2]  49/9 65/13

# G

Gables [1]  2/10
gather [1]  70/25
gathering [1]  18/13
gave [4]  19/3 19/6 19/15 38/15
Gayles [1]  6/7
general [2]  19/6 37/1
generally [2]  20/6 22/12
geographic [1]  58/1
get [27]  27/17 35/6 39/20 50/4 58/10
 64/15 67/18 70/19 74/19 75/23
getting [3]  54/24 73/4 75/7
Ginsberg [3]  3/3 58/22 59/12
give [8]  9/9 9/20 11/24 15/7 30/12 45/9
 54/3 70/4
given [7]  8/17 14/22 21/5 22/2 30/18
 67/2 71/7
giving [1]  20/2
gmail.com [2]  2/19 80/9
GMAX [4]  2/8 3/20 78/23 78/25
GMP [1]  9/14
go [39]  4/6 5/6 5/10 5/14 5/18 19/7
 19/15 19/17 23/5 23/10 26/15 26/24 27/5
 27/8 27/13 27/14 28/25 29/18 32/18
 35/16 35/23 36/4 36/13 36/19 36/20 37/5
 37/14 37/18 38/10 38/24 41/4 41/9 55/6
 61/20 66/9 66/22 67/23 76/3 76/23
goes [3]  16/16 53/10 68/25
going [65]  9/9 10/1 12/19 13/6 13/9 16/6
 17/23 18/25 19/21 21/11 22/10 22/12
 23/19 27/6 27/16 28/2 28/3 28/5 28/7
 28/13 28/25 29/2 29/6 29/14 29/20 32/18
 33/14 33/15 35/9 35/10 35/11 36/2 36/8
 36/10 36/13 36/21 36/25 37/1 37/15 37/22
 38/22 38/24 39/10 39/10 40/6 41/19 42/1
 43/1 44/24 46/11 46/12 47/6 48/3 48/6
 55/7 55/11 58/19 62/17 65/19 65/24
 68/18 70/21 72/18 77/12 78/2 78/9
GOLDHAMER [2]  1/13 3/9
gone [2]  26/22 29/21 30/5
good [22]  3/8 3/11 3/13 3/14 3/16 3/19
 3/24 9/14 63/12 76/14 76/24 79/17
good-bye [1]  79/17
Gosh [1]  69/3
got [10]  4/18 33/19 37/8 37/8 39/5 52/9
 61/23 63/25 68/13 70/4
gotten [2]  13/16 48/21

**G**

GRAIFMAN [2]  1/13 3/9
grant [3]  22/8 44/7 58/17
granted [3]  48/25 51/17 51/21
granting [1]  77/10
Great [1]  79/16
Griffin [1]  1/18
ground [1]  64/1
guess [13]  12/9 14/22 17/3 35/14 52/20
 62/8 62/9 72/15 72/16 73/18 77/10 77/16
 79/18
guidelines [1]  19/7
guy [1]  34/24

**H**

had [33]  3/22 7/13 16/17 19/4 20/22
 27/1 27/7 27/11 28/24 28/24 29/8 29/19
 29/19 29/25 30/2 30/3 31/17 31/22 35/7
 42/8 42/16 45/20 52/4 61/9 64/21 66/20
 67/8 67/18 67/24 68/6 68/14 69/10 76/13
hadn't [2]  30/4 69/25
half [1]  51/25
handicaps [1]  32/6
happen [2]  73/5 78/9
happened [6]  21/23 26/14 51/16 73/10
 73/12 75/8
happens [1]  22/5
happily [1]  58/5
happy [3]  13/22 34/22 59/3
hard [1]  61/15
harm [1]  57/16
has [44]  3/25 4/25 7/5 8/1 8/15 8/17 9/14
 10/3 12/4 13/12 14/16 14/16 18/14 21/23
 22/13 23/18 24/11 26/6 30/10 30/11 31/4
 31/21 31/23 34/25 39/16 42/19 45/21
 50/17 51/10 58/9 58/11 58/22 62/7 63/7
 64/1 64/3 64/12 64/13 66/2 68/2 68/11
 77/23 77/23 79/7
hasn't [1]  15/4
have [160]
haven't [10]  3/21 13/16 21/5 30/18 45/25
 47/25 57/15 65/20 67/2 78/16
he [158]
he's [16]  7/14 9/21 14/22 18/13 19/21
 28/16 28/16 29/24 30/13 30/14 34/1 37/8
 37/8 40/10 42/23 76/5
head [2]  61/14 71/23
Health [2]  2/4 3/17
hear [6]  5/11 5/15 19/20 39/3 64/8 78/21
heard [2]  30/13 30/14
hearing [13]  1/9 4/5 43/10 43/17 49/4
 52/12 54/19 56/24 62/24 64/21 68/6 75/7
 79/17
hearings [1]  76/2
hearsay [3]  30/15 30/20 57/4
hedging [1]  9/23
held [1]  3/2
help [4]  12/7 20/7 44/12 59/11
helped [5]  10/14 10/20 10/24 11/11 12/3
helping [2]  10/22 10/23
helps [1]  44/10
her [19]  12/16 57/5 59/2 59/15 59/18
 59/19 59/21 60/1 60/3 60/8 60/8 60/14
 60/17 61/3 61/23 62/24 63/3 63/13 63/15
here [12]  3/17 4/7 6/12 9/11 17/4 17/22
 18/9 39/1 45/10 47/25 54/21 76/3
here's [1]  8/2
hereby [1]  80/4
hey [1]  28/5
high [1]  23/24

him [22]  10/15 13/20 13/24 14/1 14/6
 19/6 21/3 21/5 21/18 21/21 21/16 21/22
 22/12 33/23 36/7 36/25 39/25 39/25
 40/10 44/10 44/20 45/13
himself [3]  28/16 54/6 54/8
hired [1]  7/3
his [48]  7/4 7/12 7/16 8/7 9/10 9/10 9/11
 9/14 9/23 10/13 11/25 12/16 13/2 13/14
 13/20 13/20 14/2 15/16 15/17 15/18
 15/18 18/20 18/22 19/13 19/19 20/15
 20/16 20/17 20/21 20/21 20/23 24/15
 26/23 27/1 29/4 29/10 31/4 33/4 32/18
 33/1 35/1 37/8 38/5 39/19 40/22 41/3
 44/23 57/5
hold [6]  17/4 17/9 29/13 39/21 41/1
 66/11
holidays [1]  44/8
honest [1]  45/1
Honor [86]
Honor's [4]  29/13 30/19 37/4 38/12
HONORABLE [1]  1/10
hopefully [1]  77/16
hoping [1]  79/16
host [1]  8/2
hour [2]  29/9 55/7
hours [2]  55/6 69/18
how [32]  10/19 13/2 16/1 19/7 19/7
 19/12 20/2 24/17 36/4 36/13 36/13
 46/22 50/3 50/4 54/16 55/4 56/16 56/22
 57/2 57/10 59/23 60/5 60/16 60/23 68/15
 68/22 68/22 68/23 70/16 71/21 74/19
however [3]  13/6 35/18 58/8
hundred [3]  60/12 72/3 75/21
hundred-mile [1]  60/12
hundreds [3]  19/5 20/10 69/9
Hutt [2]  41/15 41/18
hybrid [4]  5/1 5/21 16/14 21/25

**I**

I'd [3]  4/21 39/14 66/21
I'll [2]  22/8 23/5
I'm [38]  5/3 5/5 6/7 9/21 14/8 16/4 21/23
 23/15 30/1 33/4 35/25 39/1 40/5 40/7
 40/17 40/22 41/6 41/7 44/19 46/3 46/10
 48/18 49/12 51/1 55/24 56/5 56/23 56/25
 59/6 60/24 61/15 63/10 65/10 75/7 76/22
 76/24 77/10 77/14
I've [5]  29/7 41/24 44/3 61/9 71/7
idea [2]  31/5 70/14
identifiable [1]  77/7
identification [2]  6/10 6/13
identified [12]  9/2 15/7 56/22 73/18
 74/10 75/11 75/13 75/14 75/16 76/6 77/4
 77/12
identifies [1]  22/10
identify [8]  50/5 55/12 71/19 72/19 72/23
 74/23 74/25 77/6
if [103]
imagine [1]  24/17
immediately [2]  38/18 74/9
impeach [4]  57/7 57/8 75/2 75/15
implicate [2]  56/5 56/8
implied [1]  19/16
important [2]  42/17 59/24
impose [2]  47/6 62/9
impossible [1]  36/5
improvement [2]  10/4 14/17
in [204]
in-person [1]  55/9
inadequate [2]  7/22 8/3

inappropriate [1]  68/13
incident [1]  10/8
Incidentally [1]  32/25
include [1]  32/22
includes [1]  59/21
including [7]  8/13 20/8 30/4 30/7 47/17
 58/13 79/14
inconsistent [1]  21/14
incorrect [2]  32/5 60/24
indeed [1]  78/24
independent [6]  7/4 7/7 7/13 14/23 16/7
 18/12
independently [1]  24/13
indicated [6]  7/23 28/23 32/23 65/4
 73/20 78/1
individual [2]  30/10 31/25
individually [1]  31/22
individuals [3]  34/8 41/10 41/15
industry [1]  68/22
information [12]  17/11 17/17 17/19 18/7
 18/8 18/14 21/3 53/22 70/25 74/7 75/10
 76/18
informed [1]  29/19
initial [5]  6/9 24/25 49/1 52/1 64/6
injury [1]  10/8
inquire [1]  64/23
inquiry [1]  66/9
inspect [1]  58/10
inspection [8]  8/13 9/3 12/1 55/9 55/10
 64/22 71/18
Inspire [3]  54/13 54/19 54/21
instinct [1]  64/6
instructed [1]  64/23
instructing [1]  38/12
intact [1]  70/19
integrity [1]  68/17
intend [6]  33/23 53/18 56/13 56/23 63/15
 65/16
intended [1]  60/7
intending [1]  7/14
intends [4]  5/21 7/11 7/24 33/24
intent [1]  43/7
intention [1]  65/21
intentionally [1]  42/13
interacted [1]  61/24
interest [1]  47/25
interpretation [1]  72/14
into [11]  7/6 8/16 13/16 36/21 44/1 44/3
 44/24 49/19 51/6 61/23 66/9
introduce [6]  56/13 56/16 56/20 56/23
 63/12 65/16
investigation [2]  56/7 73/22
involved [11]  8/19 9/4 9/5 10/18 10/19
 11/3 11/14 15/10 18/13 20/9 20/14
involvement [3]  10/14 15/16 20/22
involving [1]  10/9
irregardless [1]  27/7
is [359]
isn't [5]  17/22 35/18 38/4 46/2 46/4
issue [54]  4/21 4/22 6/12 8/13 16/12
 18/1 18/3 18/6 18/7 18/11 19/14 19/18
 22/23 22/24 23/7 24/24 25/4 27/3 27/8
 29/14 30/11 33/21 34/22 35/12 37/1
 37/24 38/18 40/4 42/2 45/14 45/21 48/17
 52/3 56/22 57/11 58/18 58/19 58/21 63/6
 63/7 64/15 64/20 65/8 65/13 66/24 68/7
 68/7 69/17 70/2 73/12 76/11 77/20 77/20
 78/15
issued [1]  64/21
issues [13]  7/12 8/5 23/18 23/24 24/18

issues... [8] 28/2 30/13 30/13 31/20 58/1 66/9 78/3 79/14
it [275]
it's [22] 7/8 7/21 13/6 19/19 21/14 31/3 33/19 36/5 40/16 46/19 50/21 51/2 56/21 61/15 62/12 64/5 65/21 69/7 69/21 74/23 75/20 79/3
its [2] 13/2 32/7

**J**
January [8] 4/11 4/14 4/16 24/2 24/5 24/8 24/10 43/20
JAY [4] 1/12 3/8 34/12 40/14
jbrody [1] 1/15
jdalegal.com [1] 2/5
jeggnatz [1] 1/19
jemancari [2] 2/19 80/9
Jersey [1] 58/3
Joanne [3] 2/18 80/8 80/8
job [5] 16/17 16/21 20/15 20/16 20/23
JOHNSON [1] 2/3
JOSHUA [2] 1/17 3/11
JUDGE [7] 1/10 3/5 6/11 24/4 63/4 64/8 64/14
judgment [7] 46/5 46/6 47/9 47/14 47/17 48/4 48/7
jump [1] 34/3
jurisdiction [6] 32/8 32/9 33/21 33/21 62/17 62/20
jury [4] 22/11 49/15 51/6 51/7
just [82]
justiceearned.com [1] 1/19

**K**
Kalman [10] 25/1 25/6 25/20 25/23 32/25 36/17 36/18 41/13 42/4 43/22
Kalman's [6] 25/13 25/21 27/4 33/9 41/16 43/24
KANTROWITZ [2] 1/13 3/9
keep [1] 66/8
KEVIN [2] 2/8 3/23
key [1] 79/6
kgglaw.com [1] 1/15
kick [1] 69/22
kicked [1] 65/7
kind [9] 13/19 15/14 21/7 23/23 30/11 62/2 65/7 69/22 75/3
kinds [1] 17/12
KMW [1] 1/2
knock [1] 23/9
know [31] 3/25 12/23 14/11 19/24 26/16 32/14 33/16 47/12 50/11 53/13 54/20 55/12 58/11 58/14 58/23 59/22 59/23 59/23 59/25 60/11 61/9 61/10 61/13 61/16 62/5 62/6 62/15 63/8 68/6 71/22 79/3
knowledge [9] 9/24 11/3 11/10 12/5 12/7 12/16 12/16 57/5 57/10
known [2] 52/4 58/13
kwolkenfeld [1] 2/11

**L**
labeled [1] 9/6
lack [3] 31/24 59/21 75/14
last [23] 6/16 15/23 23/19 23/20 25/3 29/9 29/11 35/22 36/21 40/1 41/1 41/18 42/3 43/17 44/24 51/18 52/12 54/19 56/2 58/25 65/25 78/1 78/2
later [5] 43/8 44/18 47/10 47/17 58/12

latter [1] 65/15
law [5] 39/8 12 16/18 17/5 64/4
lawsuit [9] 31/11 31/16 32/2 33/12 34/6 35/8 43/3 71/5 73/11
least [11] 5/22 7/11 19/16 35/4 36/25 39/10 57/20 64/11 65/18 69/19 77/7
left [3] 27/21 37/13 65/12
Leon [1] 3/22
less [1] 56/9
let [11] 4/8 8/7 22/23 33/13 50/3 54/3 60/5 62/3 63/17 70/5 73/3
let's [9] 13/17 37/23 52/18 56/14 62/14 73/14 73/15 77/1 79/20
lets [1] 63/4
letter [1] 12/15
level [2] 23/24 77/2
liability [3] 25/1 41/13 42/4
light [4] 44/12 58/1 59/24 70/24
like [32] 4/21 7/22 8/5 10/11 11/16 12/14 14/16 15/8 15/12 17/1 22/2 28/19 29/24 48/19 49/17 50/6 50/23 53/21 55/1 59/3 59/14 64/5 65/13 66/25 67/1 68/17 69/15 71/19 74/18 75/11 78/22 78/25
limit [1] 60/12
limitations [1] 41/24
limited [4] 15/2 20/1 35/7 68/15
line [4] 4/1 6/20 6/22 56/1
link [1] 28/10
LIPPES [2] 2/14 3/15
lippes.com [1] 2/16
list [1] 48/19
listen [1] 38/25
literally [2] 36/3 53/4
litigation [4] 15/4 17/18 21/20 35/5
little [6] 11/7 14/8 20/14 23/25 45/9 66/20
lives [1] 29/3
LLC [5] 1/6 2/8 2/14 3/4 3/21
LLP [1] 2/14
log [9] 52/7 52/9 52/10 52/16 52/21 52/25 53/7 55/23 55/24
long [3] 36/24 58/9 79/3
longer [2] 43/3 54/22
look [12] 20/12 32/20 40/5 55/7 55/14 57/22 57/23 58/7 58/10 66/22 67/23 68/18
looking [4] 24/4 31/2 44/1 44/3
looks [2] 50/6 50/23
lose [1] 55/5
lost [8] 19/23 67/3 67/7 67/10 67/18 68/2 69/1 69/15
lot [2] 31/19 45/7

**M**
made [9] 4/25 8/1 26/23 28/16 31/23 34/16 57/13 65/6 69/16
Maedon [1] 24/3
MAGISTRATE [1] 1/10
maintain [1] 72/11
maintained [2] 68/17 72/9
make [19] 6/6 10/23 11/10 12/11 15/14 16/10 16/19 20/20 22/24 33/8 34/21 40/17 43/12 45/12 46/23 47/16 48/1 68/16 77/8
makes [4] 8/3 38/13 75/25 76/10
making [3] 10/19 20/16 48/11
MALGERI [24] 1/3 23/22 23/22 24/14 25/14 25/20 26/2 26/4 27/9 27/12 27/22 28/7 28/15 29/23 30/9 33/14 34/4 34/5 34/13 37/16 38/3 41/2 43/9 44/9

Malgeri's [9] 23/25 24/25 26/6 26/9 29/1 29/18 30/6 35/13 40/2
manageable [2] 75/10 75/12
Mancari [3] 2/18 80/8 80/8
manner [1] 58/18
manufacture [4] 10/19 11/12 20/8 20/9
manufactured [6] 15/25 19/6 34/9 59/14 71/25 72/22
manufacturer [1] 45/18
manufacturers' [1] 79/1
manufacturing [4] 9/14 10/22 11/13 11/14
many [2] 39/21 71/21
mark [1] 55/12
market [1] 67/15
marketed [2] 11/9 13/9
material [3] 31/17 32/4 42/7
math [2] 11/16 20/14
MATHIAS [2] 2/14 3/15
matter [5] 5/20 7/23 31/9 46/1 62/20 80/6
matters [2] 15/11 18/12
maximum [2] 10/4 14/17
may [21] 11/2 11/8 13/10 13/14 14/13 18/16 20/11 20/12 29/8 48/17 49/7 55/14 60/10 62/23 64/8 64/14 64/15 65/17 69/13 78/5 78/19
maybe [10] 16/10 18/24 30/13 39/16 51/11 60/24 63/4 64/10 65/18 77/16
me [48] 4/8 4/12 5/11 8/7 12/11 16/1 16/6 16/13 17/13 17/4 18/20 18/25 19/20 19/25 21/15 22/23 23/20 29/1 32/25 33/13 36/16 38/5 40/9 40/23 45/4 45/22 46/11 48/11 50/3 54/3 54/24 56/5 58/8 59/6 59/19 60/5 62/3 63/7 63/18 64/3 64/5 66/5 70/4 70/5 73/3 75/11 77/8 78/21
mean [33] 10/24 12/3 15/1 15/14 15/16 15/22 17/23 17/24 19/22 20/18 22/19 33/21 38/13 38/25 39/13 43/4 46/15 49/17 49/21 50/12 53/10 54/21 55/1 55/23 56/19 61/8 62/6 66/24 71/11 72/25 73/6 74/18 76/9
means [1] 55/3
meant [1] 43/6
mediation [1] 62/1
medical [2] 10/4 14/17
medically [1] 9/16
meet [1] 37/23
meeting [1] 37/21
member [1] 34/5
members [1] 42/23
memory [1] 4/12
mentioned [2] 15/17 27/3
Miami [1] 1/4
microphone [3] 5/4 5/7 5/13
might [12] 7/2 7/4 11/24 16/5 33/17 33/17 38/13 39/12 44/12 44/17 49/15 56/20
mile [1] 60/12
million [1] 32/10
Minorca [1] 2/9
minutes [2] 29/9 31/15
missing [1] 12/17
mistaken [1] 54/15
misunderstood [1] 24/21
monetary [2] 42/22 42/25
month [5] 6/16 29/11 47/24 47/24 77/17
months [1] 64/21
more [18] 13/5 13/16 15/9 16/10 19/14

## M

more... [14]  22/9 30/8 34/21 35/21 40/17 52/20 58/21 71/10 72/4 73/9 74/20 74/20 75/17 77/20
morning [2]  30/4 30/4
morphed [1]  7/6
most [2]  14/18 76/15
motion [15]  22/8 31/23 31/25 42/6 47/9 47/14 48/12 48/24 51/19 52/2 62/7 62/10 62/15 63/25 77/11
move [7]  28/20 29/2 29/3 29/5 36/9 51/6 67/18
moved [4]  36/10 67/7 67/10 69/1
moving [5]  45/21 45/23 46/5 46/24 48/1
Mr. [39]  4/20 8/19 15/15 15/21 20/5 21/8 21/9 21/9 21/14 21/18 23/5 23/25 24/14 24/25 26/21 26/21 32/22 32/23 32/23 32/25 33/14 34/4 34/5 34/20 35/15 35/16 37/16 38/3 40/2 40/5 41/2 41/15 41/19 41/25 43/10 44/2 44/9 45/14 72/5
Mr. Anderson [8]  8/19 20/5 21/9 21/9 21/14 32/23 34/20 35/16
Mr. Anderson's [1]  21/18
Mr. Brody [12]  4/20 15/21 21/8 26/21 32/22 32/23 32/25 40/5 41/25 43/10 45/14 72/5
Mr. Brody's [1]  26/21
Mr. Chapman [1]  15/15
Mr. Malgeri [8]  24/14 33/14 34/4 34/5 37/16 38/3 41/2 44/9
Mr. Malgeri's [4]  23/25 24/25 35/15 40/2
Mr. O'Brien [1]  23/5
Mr. Sharp [1]  44/2
Mr. Yan [2]  41/15 41/19
MRI [1]  22/2
much [7]  13/23 14/1 14/16 15/8 15/9 68/17 79/22
multiple [2]  30/3 75/20
must [2]  47/9 48/7
mutually [2]  43/11 43/11
my [29]  3/23 4/12 6/4 6/14 8/11 8/19 21/15 24/19 26/17 27/17 31/3 32/2 37/1 41/23 42/15 44/22 56/6 61/1 61/14 64/6 64/16 65/23 65/25 69/24 70/6 71/23 77/21 77/25 80/5
myself [2]  59/6 59/11

## N

name [2]  15/18 67/15
named [10]  23/22 24/12 31/15 33/12 34/5 42/23 58/22 59/12 59/25 61/21
narrow [1]  32/5
nationwide [5]  34/5 34/8 34/12 34/14 34/17
nauseam [1]  68/24
necessary [2]  64/14 78/25
need [15]  12/10 12/23 16/10 31/5 32/9 37/21 44/18 47/11 50/11 53/25 57/22 66/11 71/11 75/8 79/7
needed [4]  35/6 52/15 52/23 68/20
needs [5]  15/7 21/12 30/17 40/18 55/15
never [1]  65/6
new [4]  28/15 39/9 58/3 68/18
next [10]  22/23 33/8 39/8 39/9 39/22 40/19 40/20 44/9 44/15 45/14 59/3
no [33]  1/2 3/4 4/2 4/3 6/8 29/21 30/5 30/10 30/16 31/12 38/20 39/24 43/2 46/24 47/10 48/10 49/6 49/9 49/24 50/18 50/20 50/20 52/5 52/6 54/22 56/4 62/7 62/8 65/21 67/19 72/20 74/17

## NOAH

NOAH [5]  1/3 23/21 23/22 25/14 25/20 nobody [2]  3/25 58/9
non [1]  30/17
non-claimant [1]  30/17
nonappearance [1]  26/18
none [2]  45/18 62/1
nonproduction [1]  48/13
normal [1]  15/10
normally [1]  57/6
not [113]
note [1]  59/2
nothing [4]  32/7 33/19 48/10 50/14
notice [24]  3/21 16/18 16/24 17/4 23/7 23/11 23/23 24/11 24/25 25/16 26/3 26/12 31/3 33/8 34/22 35/4 37/20 38/15 40/11 42/13 43/7 51/15 64/22 77/21
noticed [10]  24/18 24/24 25/13 27/5 27/7 29/7 32/21 39/20 42/12 42/13
noticing [2]  42/18 43/14
notwithstanding [1]  33/10
November [20]  6/17 25/13 25/17 25/21 26/2 26/10 26/11 26/13 26/13 29/14 33/1 33/7 36/16 36/19 36/21 42/9 42/10 42/17 44/2 44/24
now [42]  5/11 5/15 7/6 8/6 13/14 14/21 18/24 21/13 22/4 28/13 32/1 37/6 39/7 40/25 41/3 42/6 43/1 45/21 45/23 46/20 47/23 48/5 49/2 52/24 53/8 54/13 54/20 54/21 54/23 54/24 57/19 59/6 63/25 64/7 70/16 70/18 70/25 75/16 77/6 78/9 78/14 78/21
nowadays [1]  75/7
number [8]  11/13 17/6 57/11 57/13 63/11 63/11 71/22 72/25
NY [1]  1/14 2/15

## O

O'BRIEN [7]  2/13 3/15 23/4 23/5 34/4 40/3 57/25
objection [2]  61/6 63/13
objective [1]  73/9
observations [3]  7/12 16/17 16/20
obtained [2]  56/22 74/8
obviously [12]  9/8 9/23 12/3 13/1 44/8 44/10 48/10 58/16 60/20 62/22 65/22 73/24
occur [1]  42/16
occurred [2]  10/9 57/4 73/11
occurring [1]  43/16
October [1]  32/20
off [5]  37/7 50/15 50/16 61/14 71/22
offer [1]  17/16
office [1]  55/6
oh [5]  26/19 29/1 59/20 66/10 66/20
OK [82]
old [2]  17/13 75/7
on [102]
once [3]  15/9 23/9 69/19
one [38]  4/19 15/15 23/6 23/16 23/18 23/19 30/2 30/8 31/15 33/24 34/25 35/23 40/6 43/20 43/23 45/8 45/20 47/23 48/24 51/12 53/14 55/7 57/8 57/11 58/21 61/2 62/22 63/11 63/22 64/12 65/11 66/22 71/15 72/15 72/23 74/7 76/7 77/19
ones [1]  67/1
only [14]  13/17 14/22 30/12 31/4 34/17 38/13 39/21 57/24 62/16 62/17 66/25 67/1 73/10 77/25
open [5]  24/2 24/9 33/1 39/21 76/3
opine [2]  12/21 12/21 15/24 20/18

opines [1]  42/22
opining [3]  17/24 18/16 18/16
opinion [26]  9/10 9/20 10/3 10/16 11/23 12/15 13/7 13/18 13/21 14/2 14/7 14/17 16/1 16/2 16/22 18/15 18/15 19/13 20/17 20/18 20/21 21/12 22/10 22/12 22/16 43/1
opinions [7]  5/22 7/25 11/25 16/11 17/16 17/17 19/19
opponent [2]  61/11 61/11
opportunity [3]  55/13 57/23 58/9
opposed [3]  6/13 48/24 75/21
opposition [2]  47/9 48/4
or [71]  5/22 8/11 9/3 9/16 9/20 9/23 10/7 10/24 12/16 15/5 15/8 15/9 15/11 15/11 17/17 18/11 18/15 18/17 20/11 21/16 22/4 27/22 29/24 30/14 32/13 33/20 34/8 34/15 34/25 37/11 39/16 39/20 40/6 40/7 40/25 41/21 42/10 46/12 47/9 48/4 48/7 48/12 48/14 49/7 50/19 55/7 56/9 57/5 57/23 59/21 61/25 64/7 64/14 65/13 65/14 65/21 65/24 66/12 68/18 68/20 69/5 69/9 69/12 69/15 69/19 71/1 72/4 73/16 74/9 75/15 76/6
order [20]  6/11 20/22 29/13 36/13 36/15 37/4 37/11 37/12 47/15 47/16 48/11 48/15 54/25 55/21 56/12 57/17 59/1 64/17 65/23 71/18
ordered [7]  36/18 36/20 37/17 41/4 44/23 52/20 56/2
orders [4]  6/9 38/25 44/4 56/8
ostensibly [1]  34/5
other [66]  6/12 11/23 15/17 18/2 20/9 23/1 26/24 29/2 29/12 29/13 29/19 31/12 33/2 33/24 35/20 36/6 37/8 37/8 37/16 37/23 39/22 41/4 44/17 44/25 45/18 45/24 46/4 46/5 46/20 49/22 51/2 52/3 52/4 55/5 56/13 58/19 59/25 61/24 63/5 66/12 74/6 74/21 76/5 76/22 79/1 79/6
our [8]  4/9 5/22 43/18 48/2 57/20 66/21 73/24 78/24
ourselves [2]  43/12 54/10
out [17]  13/14 21/13 21/22 21/24 23/9 27/21 28/20 28/22 35/16 40/4 42/18 43/10 44/7 58/23 61/9 64/4 67/17
outside [8]  7/15 8/17 11/22 16/6 16/16 16/20 57/5 60/10
over [9]  13/24 14/1 16/25 61/6 63/13 68/5 68/23 70/14 74/19
own [1]  9/15
owner [1]  15/17
owners [1]  15/15

## P

P.A [2]  1/17 2/9
P.C [1]  1/13
packages [1]  68/19
packet [1]  20/2
page [6]  12/15 16/22 16/23 32/20 59/6
pages [3]  1/7 20/10 69/9
paid [1]  7/7
paper [1]  32/13
paperwork [1]  11/15
paragraph [2]  15/23 17/10
parameters [1]  10/19
part [22]  9/2 12/1 14/22 19/18 20/15 20/16 29/12 31/17 39/1 41/12 42/7 43/3 50/1 56/6 63/3 64/9 64/15 65/12 65/15 72/12 76/11 77/11
partial [1]  46/6

**P**

participated [1] 41/15
participation [1] 15/18
particular [10] 7/12 50/11 50/14 66/18
71/1 72/16 72/20 72/23 74/11 74/20
particularity [2] 74/24 77/2
parties [1] 24/13 25/9 27/20 27/23 28/8
28/8 28/17 28/24 29/10 30/7 48/5
party [7] 31/11 31/12 38/13 60/16 60/21
61/11 61/11
PASCUCCI [1] 1/17
past [3] 7/3 7/4 21/23
patient [3] 14/16 15/9 17/17
PATRICIOS [3] 2/9 3/20 3/22
Pause [1] 8/9
peace [1] 41/1
people [5] 20/11 29/3 59/10 63/24 66/3
perfectly [1] 67/9
performed [1] 15/3
Perhaps [1] 46/7
period [5] 24/14 31/19 34/10 39/15 54/25
person [2] 10/12 55/9
personal [3] 40/23 57/5 57/10
personally [1] 58/9
perspective [1] 57/16
pertain [1] 23/24
Pharma [1] 9/15
Pharmaceutically [3] 9/16 9/18 9/19
phone [2] 3/24 27/17
photograph [1] 58/10
photographs [1] 58/5
photos [1] 68/18
physician [7] 8/17 10/2 15/1 15/1 15/8
15/10 18/4
physicians [1] 17/15
picking [1] 5/4
picks [1] 39/22
pin [1] 71/9
place [3] 11/12 32/9 41/25
plaintiff [48] 1/4 1/12 3/7 4/8 10/3 12/10
23/21 23/22 24/20 26/1 26/2 26/8 27/9
27/11 27/22 28/7 28/15 28/25 29/18
29/23 30/1 30/6 30/9 30/21 31/8 31/15
33/12 34/13 34/15 35/8 35/13 35/18 38/4 38/11
38/21 39/10 42/19 43/9 43/16 48/14
58/22 59/12 59/24 62/14 63/14 64/12
64/13 68/9 79/7
plaintiffs [32] 3/10 3/12 5/25 6/1 7/18
24/25 25/22 26/16 27/13 28/23 30/1
31/15 31/25 32/7 34/8 36/9 36/10 36/14
37/10 37/13 38/11 42/22 43/5 43/6 48/17
59/25 61/21 61/25 62/1 64/21 66/24
67/11
plaintiffs' [17] 5/24 6/24 7/21 23/7 24/12
25/15 26/7 32/2 32/8 32/24 36/22 41/12
56/8 58/2 64/19 77/23 79/12
planning [1] 56/18
plans [2] 9/3 39/16
played [1] 42/18
Plaza [1] 2/14
please [2] 3/6 78/20
plenty [1] 57/18
PLLC [1] 2/3
plow [1] 27/7
point [23] 7/5 14/12 16/13 17/2 17/19
21/15 21/18 23/16 29/25 30/8 31/13
35/18 36/5 41/3 45/7 47/12 47/23 54/21
57/16 64/16 65/10 65/24 78/25
pointed [1] 35/16
position [19] 5/24 6/4 6/24 7/21 25/22

26/7 26/21 28/14 30/19 32/2 36/22 53/11
61/15 63/18 65/19 65/23 74/1 76/12
78/24
possession [1] 46/19
post [2] 22/4 22/4
post-deposition [1] 22/4
post-report [1] 22/4
potential [1] 59/21
potentially [3] 59/16 72/2 74/11
practices [1] 9/14
pre [2] 56/7 73/22
pre-investigation [1] 73/22
pre-suit [1] 56/7
Precisely [1] 54/11
preclude [2] 24/19 45/23
precluding [2] 33/11 43/14
preclusion [1] 65/13
predated [1] 71/5
prefer [2] 39/12 40/21
prefers [3] 39/14 39/14 39/19
prejudice [1] 36/3
prejudicial [2] 32/15 37/10
premise [1] 49/3
prepared [3] 26/24 40/11 44/4
prepares [1] 12/15
preparing [1] 21/3
present [5] 7/9 7/24 7/25 28/9 46/12
presents [2] 5/20 7/23
pretrial [2] 62/10 63/8
pretty [5] 17/13 31/11 44/19 61/15 64/17
preventing [1] 28/3
previously [1] 28/11
primarily [2] 15/5 23/18
primary [1] 4/22 31/24
prior [7] 7/16 8/1 24/17 25/12 55/15
64/21 76/2
privilege [8] 52/7 52/9 52/10 52/16 52/20
53/7 55/23 55/24
privileged [1] 30/14
probably [4] 21/21 66/21 75/3 76/15
probing [1] 12/24
problem [5] 11/16 47/11 56/4 61/17 75/6
procedures [2] 9/5 20/3
proceed [5] 25/15 25/20 25/21 26/9 32/1
42/1 42/8 61/22
proceeded [2] 25/10 42/9
proceeding [1] 24/19
proceedings [2] 3/2 9/3
process [18] 9/24 10/18 10/20 10/23
10/24 11/13 11/14 12/5 13/2 18/13 19/7
19/8 41/16 62/25 64/9 70/9 70/11 72/12
processes [1] 11/12
produce [18] 25/23 26/17 27/19 38/11
47/12 49/22 53/21 53/22 56/9 57/14
57/15 66/3 68/8 68/12 70/13 70/13 73/14
74/4
produced [21] 19/24 20/10 36/3 38/21
45/18 45/25 46/17 47/10 48/7 51/3 53/13
53/19 58/12 65/5 65/6 65/19 65/20 66/25
73/10 78/24 79/3
producing [1] 30/1
product [32] 10/25 11/2 11/8 11/18
11/21 13/8 15/25 17/24 18/10 19/12
20/13 20/17 31/19 31/22 32/13 34/7
49/4 50/6 59/22 59/23 60/4 63/16 68/9
68/10 69/12 70/17 71/15 72/1 72/22
74/21 77/7
production [2] 65/11 78/23
products [6] 9/6 10/23 20/9 66/3 66/7

professional [1] 10/3
proper [1] 21/26
properly [1] 32/6
proportionality [1] 63/13
propose [1] 35/21
proposed [2] 35/22 41/25
proposes [2] 35/20 39/23
protective [2] 59/1 64/17
protocols [2] 68/16 68/21
provide [3] 5/22 7/7 40/9
provided [2] 17/18 20/10
pull [2] 5/13 5/14
punted [1] 69/22
purchase [6] 31/20 31/22 33/19 59/19
60/1 60/3
purchased [5] 33/18 49/4 68/10 71/2
76/18
purchaser [1] 63/15
pure [1] 10/16
purported [1] 34/25
purpose [2] 47/15 73/4
purposes [10] 5/8 8/3 21/25 35/5 44/6
58/3 63/6 63/11 63/14 64/16
pursuant [3] 6/1 6/25 43/13
pushed [1] 29/25
put [10] 11/11 12/14 13/20 16/18 21/12
29/15 37/16 39/2 77/1 78/13
putting [1] 11/15

**Q**

qualification [1] 57/24
qualify [2] 21/10 21/19
question [7] 10/15 19/20 33/13 41/6 50/3
61/8 67/13
questions [2] 12/24 72/6
quick [2] 22/14 61/17

**R**

raise [4] 77/21 77/25 78/4 78/15
raised [1] 25/4
raising [1] 53/8
range [1] 19/5
rays [1] 22/2
reached [4] 10/4 14/17 40/4 43/9
read [4] 7/11 17/5 60/14 69/11
reading [2] 8/7 32/5
readjust [1] 39/24
ready [2] 17/1 27/13
real [3] 22/14 30/16 37/13
really [8] 14/23 17/22 19/18 19/23 38/23
38/25 50/8 56/21
reason [20] 7/8 29/21 30/5 30/16 30/18
34/23 35/17 37/3 38/20 41/5 42/6 53/19
60/18 60/21 63/22 65/20 66/12 72/18
75/24 77/25
reasonable [1] 74/24
reasonably [1] 10/8
reasons [5] 6/3 7/1 65/18 66/1 72/15
recall [8] 29/8 52/2 54/12 54/13 54/15
54/18 68/6 70/21
recently [3] 31/23 67/1 79/15
recollection [4] 26/17 41/23 70/6 78/1
record [6] 3/6 8/19 47/3 51/20 69/7
78/22
recording [1] 1/9 80/6
records [4] 19/23 20/11 69/11 69/11
recover [1] 42/23
reference [1] 72/17
referred [1] 63/7
referring [1] 19/25 69/10

**R**

refuse [1]  27/14
regard [4]  7/16 19/13 32/13 42/2
regarding [4]  19/5 19/9 78/23 79/1
regardless [3]  26/1 31/6 43/15
regards [3]  27/4 45/15 55/18
regulation [2]  45/25 46/16
regulations [2]  66/7 79/2
related [3]  7/5 10/8 11/25
relates [1]  66/17
relation [1]  15/18
relationship [2]  15/6 61/24
relay [1]  40/24
relevance [2]  31/6 63/13
relevant [12]  18/8 30/12 30/19 31/20
 59/16 60/4 62/2 62/25 65/21 74/20 76/15
 76/24
reliability [1]  11/23
reliable [4]  10/25 11/3 11/8 13/8
relief [3]  33/11 45/9 58/17
rely [6]  47/15 48/14 57/4 57/9 60/7 72/18
relying [4]  53/2 53/4 72/21 74/10
Remaining [1]  23/16
remedial [1]  20/14
remedy [8]  21/15 22/5 35/19 37/13 38/5
 43/15 60/14 61/1
remember [13]  4/6 6/8 22/1 25/3 45/2
 45/5 49/19 51/22 52/10 52/10 52/19 57/4
 62/11
Remind [1]  66/5
render [3]  18/14 18/15 21/11
rendering [1]  10/21
rep [1]  35/11
report [14]  5/25 6/11 6/13 6/25 7/9 7/19
 8/24 14/21 15/7 16/12 21/16 22/4 41/17
 42/21
reporter [3]  2/19 5/7 80/9
reports [2]  6/15 6/16
representation [1]  46/23
representations [2]  21/8 69/14
representative [2]  34/25 61/23
representatives [2]  61/21 64/14
represented [2]  27/24 48/9
representing [1]  8/22
represents [1]  21/9
request [7]  36/23 51/16 54/15 58/17
 74/14 74/17 74/18
requested [2]  51/12 56/10
requesting [2]  74/12 74/13
requests [1]  45/20
require [4]  6/12 16/6 21/16 22/9
required [8]  5/25 6/25 7/9 7/18 13/8
 21/21 51/25 66/11
requires [4]  13/16 46/16 74/24 77/2
reschedule [2]  28/2 37/6
rescheduling [1]  38/16
reserve [11]  64/22 66/5 66/6 66/8 67/15
 68/8 70/22 72/8 73/5 76/13 77/12
reset [1]  38/5
resident [1]  60/11
resolve [1]  78/8
resolved [1]  79/14
respect [1]  14/20
respond [5]  12/8 14/24 20/4 41/3 77/23
response [3]  12/4 33/6 61/7
responsive [3]  45/22 46/18 78/24
result [1]  32/1
results [1]  9/4
retailers [1]  45/16
retained [7]  8/12 8/15 8/18 14/12 15/4

 18/8 20/6
retelling [1]  16/21
retroactively [1]  50/6
return [1]  27/17
returned [1]  27/17
reveal [2]  55/22 56/1
review [1]  17/17
reviewed [1]  69/10
revisit [4]  52/22 52/24 59/3 59/4
revolves [1]  74/21
Ridge [2]  1/13 1/14
right [69]  4/10 8/6 8/20 8/24 9/24 10/5
 10/6 11/1 11/19 12/6 12/18 13/7 13/25
 14/3 14/4 15/13 18/23 20/4 21/7 24/11
 26/14 34/2 35/13 35/24 37/2 39/7 40/14
 44/13 46/14 46/22 47/1 49/11 49/14
 49/20 49/20 51/6 53/17 55/13 55/20 56/3
 57/5 59/6 60/18 61/12 61/17 62/16 62/18
 62/19 63/2 63/7 63/15 63/22 65/9 65/22
 70/3 70/6 70/23 70/24 72/2 73/19 74/1
 74/8 74/24 76/19 76/21 78/18 79/4 79/9
 79/16
ripe [1]  77/21
road [4]  1/13 1/18 65/8 69/23
role [1]  13/2
room [1]  51/7
Ross [6]  7/2 7/11 10/13 15/24 20/14
 69/10
roughly [1]  58/23
RPR [2]  2/18 80/8
rule [11]  6/1 8/4 12/10 13/15 22/17
 22/17 31/11 40/6 55/10 74/23 77/2
ruled [2]  41/18 42/8
rules [2]  17/14 32/6
ruling [3]  42/15 65/25 69/24
run [2]  57/2 77/24

**S**

said [8]  17/23 32/14 37/15 40/5 43/4
 52/7 66/19 67/18
SAM [17]  15/25 17/25 19/4 19/9 19/12
 19/14 20/8 20/9 20/21 31/20 32/3 34/9
 59/13 66/19 67/9 67/14 67/15
SAM-e [17]  15/25 17/25 19/4 19/9 19/12
 19/14 20/8 20/9 20/21 31/20 32/3 34/9
 59/13 66/19 67/9 67/14 67/15
same [12]  6/15 14/25 29/1 29/17 38/18
 43/19 55/13 59/6 59/13 70/9 70/10 70/11
sample [10]  51/23 66/5 66/6 66/8 66/17
 67/21 67/22 71/1 72/17 73/5
samples [28]  48/17 48/20 48/22 51/10
 52/4 52/8 52/10 64/23 65/17 66/10 66/11
 66/19 68/8 68/17 70/8 70/13 70/22 70/23
 71/4 71/21 72/8 73/14 73/15 74/11 75/16
 76/12 76/13 77/13
sampling [7]  68/7 68/15 68/20 69/17
 69/25 76/13 76/14
sanderson [1]  2/5
save [1]  23/19
saw [3]  10/14 52/7 66/20
say [25]  10/1 10/2 10/5 10/9 11/7 13/6
 13/10 14/16 14/16 15/24 20/17 20/24
 32/7 35/14 51/20 54/3 54/16 54/21 56/24
 59/5 66/10 69/7 72/7 73/14 79/16
saying [12]  5/18 19/21 20/19 26/25 36/7
 37/17 37/19 39/3 40/6 53/3 70/21 78/5
says [1]  32/1
scare [1]  78/5
schedule [10]  27/1 28/15 29/4 37/8
 39/19 40/23 43/8 43/13 44/20 79/20

 scheduled [8]  25/15 28/24 29/3 29/19
 29/24 33/2 33/3 37/1
scheduling [7]  3/22 6/9 6/11 23/24 24/17
 27/4 55/21
scope [4]  7/15 16/6 16/17 16/20
SCOTT [2]  2/3 3/16
sealed [7]  48/18 49/12 49/12 49/13
 49/15 49/22 53/8
SEAN [5]  2/13 3/14 23/4 34/4 57/25
seat [1]  4/4
second [9]  15/23 17/10 27/11 27/19 29/6
 29/16 36/25 37/16 62/12
Secondly [1]  7/10
seconds [3]  11/16 11/17 11/17
see [10]  16/1 50/10 51/7 53/20 61/15
 67/25 70/5 73/15 74/19 79/20
seem [3]  18/20 19/25 30/19
seems [6]  7/10 16/6 18/25 19/14 54/24
 77/8
sees [2]  15/1 15/8
selective [1]  66/25
send [1]  70/14
sending [1]  28/9
sense [2]  75/25 76/10
sent [1]  22/1
separate [2]  20/18 53/6
separately [1]  42/16
series [1]  77/7
served [2]  33/7 77/23
serves [1]  4/12
set [8]  4/6 19/8 19/18 20/2 20/7 28/15
 41/23 47/13
settled [1]  5/14
Sharp [5]  41/14 42/11 43/15 43/22 44/2
Sharp's [4]  42/2 42/16 42/21 43/13
she [25]  15/17 58/23 59/13 59/17 59/22
 59/23 59/23 60/3 60/9 60/10 60/10 60/11
 60/16 60/18 60/24 61/24 61/10 61/23
 61/24 61/25 61/25 62/9 63/7 63/15 64/8
ship [4]  66/3 68/23 70/16 70/18
shipped [2]  70/16 70/17
shortly [1]  74/9
should [18]  16/13 26/22 27/12 28/17
 32/24 34/23 35/2 35/8 36/4 36/18 47/8
 47/23 53/12 57/13 57/14 64/23 74/18
 74/18
Shouldn't [1]  48/21
show [5]  11/15 11/15 46/20 49/15 67/8
showed [1]  30/4
showing [2]  45/19 64/13
side [5]  29/16 58/20 64/19 77/18 79/12
sides [2]  58/16 73/19
significant [1]  71/25
silly [1]  34/24
similar [2]  8/16 43/9
Similarly [1]  57/7
simply [3]  6/12 32/4 34/15
since [9]  5/6 17/14 35/13 35/14 35/18
 38/4 46/23 53/11 77/17
single [1]  63/20
sir [1]  23/14
sit [2]  5/6 5/8
site [1]  20/7
situation [1]  63/21
situations [1]  66/22
six [1]  23/13
smart [1]  61/16
so [136]
sobrein [1]  2/16
Solutions [2]  2/4 3/18

**S**

some [29]  6/9 8/12 9/8 17/5 20/11 34/23 37/3 37/15 37/23 41/5 42/18 48/17 52/8 53/23 56/6 64/7 65/2 66/11 68/15 69/1 70/1 70/13 70/14 71/19 73/19 73/21 73/23 77/2 77/10
somebody [2]  3/25 21/24
somehow [1]  69/15
someone [4]  15/2 30/15 36/11 50/5
something [12]  10/11 12/22 37/11 46/12 51/23 57/8 64/5 71/19 75/10 75/11 76/2 78/9
somewhat [1]  19/13
somewhere [1]  64/3
sorry [8]  5/3 5/5 9/21 30/2 35/25 41/7 51/1 55/24
sort [3]  56/6 68/19 70/14
sound [1]  64/17
sounds [2]  55/5 75/11
source [2]  18/6 18/7
SOUTHERN [1]  1/1
speak [5]  19/21 26/20 40/25 58/4 78/2
specific [13]  16/10 19/14 22/9 52/20 54/15 70/1 70/2 71/1 74/7 74/7 74/11 75/16 77/7
specifically [12]  19/4 19/8 19/11 19/12 22/2 22/10 25/5 54/13 54/17 59/17 71/3 74/14
specificity [1]  71/20
spreadsheet [1]  53/21
stage [2]  62/10 62/23
stand [1]  69/17
standard [1]  51/9
standing [3]  31/24 34/16 63/25
start [2]  6/5 23/25
started [1]  21/24
starting [1]  3/7
starts [1]  17/10
state [4]  3/6 42/24 42/24 78/22
stated [1]  19/16
STATES [2]  1/1 1/10
stating [1]  59/1
statute [1]  46/9
step [1]  70/10
still [3]  6/2 24/2 24/9
stop [1]  62/3
store [1]  68/23
strategic [1]  35/16
strategy [1]  42/7
Street [1]  2/4
stricken [1]  47/18
strike [3]  21/16 22/6 48/12
study [1]  54/4
stuff [9]  22/1 46/16 52/4 53/7 53/7 62/2 68/22 70/17 74/5
subclasses [1]  43/2
subject [8]  5/20 7/23 17/15 22/11 50/6 58/14 62/20 74/21
submit [3]  6/2 6/25 7/18
submitted [1]  31/18
subpoena [3]  60/8 60/13 60/25
Subsection [1]
substantially [1]  43/1
substantive [1]  46/2
sudden [11]  22/3 27/14 28/4 30/17 31/4 36/11 46/11 46/20 67/10 70/16 70/18
sued [1]  73/12
suffered [1]  36/3
suffering [1]  37/13
sufficiency [1]  7/14

sufficient [4]  30/18 48/19 67/9 73/15
sufficiently [1]  7/4
suggested [2]  66/2 70/12
suggesting [2]  76/22 76/24
suit [1]  56/7
summary [7]  46/5 46/6 47/9 47/14 47/17 48/4 48/6
supplement [2]  66/7 67/16
supplemental [1]  21/16
supplementation [1]  47/7
supplemented [2]  47/8 47/8
supplements [2]  7/15 19/6
support [5]  31/18 49/7 63/18 69/16 75/2
suppose [1]  77/1
supposed [2]  66/8 66/14
sure [23]  5/9 6/6 8/8 10/10 10/23 12/12 12/25 13/11 13/18 14/14 20/16 41/6 44/19 45/15 46/3 50/25 56/25 59/8 61/18 61/19 63/23 68/16 76/8
surprising [2]  64/2 64/4
surrounding [3]  33/10 59/15 60/3

**T**

Table [1]  38/2
take [18]  6/3 24/12 24/14 25/6 26/8 32/15 34/23 35/6 35/19 40/7 40/8 42/5 45/5 58/10 59/2 63/3 73/18 73/25
taken [7]  26/7 35/2 36/16 42/10 44/23 53/11 73/25
takes [1]  39/20
taking [7]  21/18 25/22 28/14 46/23 68/18 75/9 76/12
talk [7]  12/19 14/21 20/20 52/18 54/4 57/5 67/5
talked [5]  15/16 50/19 51/11 68/7 68/18
talking [14]  12/18 12/18 17/6 17/25 22/11 43/23 48/18 49/10 49/12 50/22 55/12 71/21 72/2 72/5
Tampa [1]  2/4
technically [10]  12/9 12/10 12/22 12/23 13/12 13/15 14/15 46/24 62/9 77/21
tell [10]  17/3 19/11 28/4 33/20 46/11 57/2 57/3 59/6 69/12 71/24
telling [3]  27/15 35/23 64/5
tells [2]  32/25 40/23
termed [1]  5/1
terms [2]  16/11 31/20
test [7]  11/14 68/22 69/13 69/13 73/8 73/9 73/15
tested [14]  31/22 32/1 49/13 56/1 59/22 66/11 67/11 73/6 74/8 74/9 75/13 75/14 76/7 76/7
testified [1]  15/17
testifies [1]  13/1 15/2
testify [20]  5/21 7/11 7/14 7/24 9/4 9/7 10/13 11/2 11/8 11/20 33/14 33/15 33/17 33/18 35/9 35/10 41/20 56/14 60/18 66/23
testifying [8]  8/15 8/18 41/11
testimony [22]  7/7 9/9 10/16 13/3 16/5 18/20 18/22 19/2 19/15 30/12 30/12 30/20 46/12 46/21 47/21 48/12 50/2 59/25 60/8 63/13 68/25 70/9
testing [39]  10/24 19/22 19/22 19/23 19/24 20/12 41/16 53/1 53/3 53/7 53/10 55/19 56/23 59/16 59/18 59/22 65/14 66/25 67/2 67/3 67/7 67/19 67/21 68/1 68/1 68/20 68/25 69/1 69/15 73/11 73/18 73/19 73/20 73/22 73/23 73/24 74/4 74/19 77/8

tests [5]  49/5 49/10 56/5 73/7 73/10
than [12]  23/6 73/10 76/13 76/23 76/24 39/22 40/18 47/10 63/1 71/10 74/20 75/17
Thank [5]  45/11 58/15 64/18 79/19 79/22
Thanksgiving [2]  42/10 42/11
that [584]
that's [16]  14/1 16/4 18/7 18/19 23/6 32/19 38/1 38/12 40/23 43/23 43/24 46/15 50/6 56/10 56/23 76/21
their [35]  10/22 12/4 17/16 19/3 19/15 21/16 25/1 25/1 25/16 26/8 26/12 32/1 34/24 36/23 38/23 42/6 42/7 45/19 46/19 48/21 49/23 52/15 52/25 53/12 54/3 55/6 57/10 65/2 65/15 67/23 73/4 73/25 73/25 74/1 76/13
theirs [1]  46/6
them [65]  12/3 15/3 19/6 19/11 20/2 20/12 20/12 20/12 27/16 27/19 27/20 28/3 28/5 28/9 28/11 29/2 29/6 29/20 30/3 30/11 32/4 35/19 36/12 37/20 38/17 38/20 41/11 41/20 45/7 45/23 52/20 53/20 53/25 54/2 54/7 54/8 54/9 54/22 55/1 55/4 55/5 55/12 55/12 56/22 58/7 58/10 58/10 65/5 65/12 66/22 66/20 66/21 67/3 67/10 69/22 69/23 70/14 71/1 71/4 71/7 75/2 76/13 76/14 78/15
then [48]  10/4 10/20 11/22 12/9 13/6 13/25 14/1 14/6 18/13 18/15 20/25 21/15 21/18 21/23 21/25 25/16 25/16 26/1 26/14 27/13 28/4 36/11 37/13 39/7 39/24 39/24 41/11 41/15 46/11 46/19 47/11 52/18 53/25 54/14 55/4 55/13 56/5 56/20 56/22 57/19 57/19 57/22 62/10 64/10 65/22 68/14 68/25 77/8
theory [2]  75/3 77/2
there [54]  8/2 10/11 10/14 10/15 11/11 15/9 16/5 16/25 19/22 21/2 21/17 22/24 24/10 25/4 29/21 30/5 30/16 31/12 34/12 35/4 36/19 38/20 41/10 42/3 44/17 45/7 48/3 48/10 48/12 48/23 49/5 50/14 52/8 53/5 53/19 57/8 57/18 62/3 62/8 64/4 64/7 66/8 68/16 68/25 69/9 69/14 69/15 70/14 71/18 72/16 72/18 72/20 74/17 79/13
thereafter [1]  74/9
therefore [2]  21/20 64/5
Thereupon [1]  2/20
these [13]  17/12 27/25 28/1 28/2 46/18 50/14 53/13 54/12 65/4 65/11 66/3 66/7 66/14
they [157]
They'd [1]  67/23
they're [3]  19/25 66/10 66/14
they've [5]  42/6 45/22 65/6 73/10 75/13
thing [5]  21/5 29/2 35/14 53/14 55/13
things [14]  10/20 18/16 21/17 29/3 29/5 31/14 32/18 37/8 48/1 53/5 53/6 57/4 57/9 59/9
think [67]  4/9 7/8 8/1 10/15 12/17 12/22 13/10 13/12 13/19 14/19 15/6 15/11 15/22 16/17 16/19 17/14 17/23 18/12 21/9 21/18 23/9 23/24 23/25 24/10 31/11 32/19 33/11 34/24 36/21 38/8 41/8 42/6 42/11 43/11 43/13 46/15 46/19 52/1 53/6 56/11 56/14 57/13 58/3 60/7 61/13 61/20 62/24 63/8 63/9 64/6 64/16 65/6 65/7 65/21 69/3 69/19 70/12 74/1 75/3 75/9 75/25 76/3 76/9 76/10 77/4 77/20 79/14

**T**

thinking [1]  21/24
third [2]  28/13 31/3
this [110]
those [15]  8/5 9/4 12/24 16/19 16/24
  39/12 41/24 41/25 46/17 56/5 56/9 58/6
  66/9 66/22 69/12
though [5]  28/11 28/16 45/25 66/3 73/7
thought [3]  25/25 33/21 61/9
three [5]  31/16 38/11 43/2 43/2 48/2
through [9]  4/6 6/3 13/19 19/7 21/24
  32/13 43/11 57/9 58/8
tie [1]  64/11
tied [1]  70/1
time [39]  6/20 6/22 8/12 18/8 22/3 27/5
  27/10 27/11 27/15 27/19 28/13 28/22
  29/1 29/9 29/17 31/3 32/21 34/10 35/4
  36/25 37/5 37/11 40/1 41/1 41/23 45/8
  53/8 53/11 56/2 57/18 60/21 64/10 65/12
  65/25 67/11 69/21 70/10 75/6 77/23
times [6]  11/13 15/16 15/18 30/3 35/22
  38/11
timing [2]  25/5 42/4
titled [1]  23/16
today [2]  17/22 39/8
today's [1]  40/5
together [1]  11/15
told [16]  19/23 21/15 27/19 28/11 29/1
  29/2 29/6 30/2 35/4 36/12 36/16 38/17
  38/20 45/22 61/25 61/25
too [2]  22/21 31/14 58/18
took [1]  26/17
top [2]  61/14 71/22
topic [4]  6/10 20/20 52/19 63/5
topics [1]  12/18
TORRES [1]  1/10
touch [1]  39/13
traditional [1]  7/17
trained [4]  9/16 9/17 9/18 9/19
TRANSCRIBED [2]  1/9 2/18
transcript [5]  45/3 60/15 60/17 61/1 75/8
transcription [1]  80/5
treated [2]  16/13 18/21
treating [8]  8/16 10/2 15/1 15/1 15/8
  15/10 17/15 18/3
treatment [1]  17/16
tremendously [1]  37/10
trial [21]  16/11 22/1 33/14 33/23 33/24
  35/10 41/20 46/20 47/9 48/4 48/7 50/4
  53/18 55/11 56/14 60/8 60/25 63/1 63/12
  63/14 65/19
true [7]  16/4 18/2 21/25 50/21 51/2 51/5
  73/15
truth [1]  49/10
try [3]  28/9 48/3 61/18
trying [4]  6/7 35/10 40/17 47/2
Tuesday [1]  40/20
turn [1]  4/8
Turning [1]  8/10
turns [3]  21/13 21/22 44/7
twelve [1]  58/24
twice [3]  15/9 28/16 69/20
two [28]  7/1 8/5 12/15 23/9 23/13 35/22
  39/9 39/12 39/20 41/10 41/11 42/10
  44/25 48/1 48/1 53/5 53/6 54/13 55/6
  57/13 63/11 74/7 74/8 74/10 75/16 75/17
  76/6 76/7
two-page [1]  12/15
twofold [1]  5/24
tying [3]  68/9 68/10 68/10

**type** [2]  68/15 71/1
**types** [1]  86/7
typical [1]  50/6
typically [1]  47/24

**U**

ultimate [9]  11/23 12/15 16/2 16/11
  17/25 18/3 21/11 30/13 42/24
Ultimately [2]  29/9 36/15
umpteenth [1]  37/4
unable [1]  70/18
under [15]  6/2 7/8 7/17 7/20 8/4 12/10
  13/15 22/13 31/5 31/21 31/24 32/9 35/3
  44/19 66/6
undercut [1]  49/8
understand [13]  7/15 28/18 31/7 35/17
  37/3 41/6 46/3 66/1 70/19 72/16 75/18
  75/22 77/15
understanding [10]  5/23 6/14 8/11 31/3
  32/17 37/1 42/15 44/22 61/1 69/24
Understood [2]  22/7 64/18
unfair [1]  38/9
unilaterally [6]  27/6 27/8 27/14 28/15
  35/22 38/9
unique [1]  19/13
UNITED [2]  1/1 1/10
universe [3]  47/12 63/10 67/2
unless [1]  56/18
unlike [1]  65/16
unnamed [1]  42/23
unopened [4]  52/8 53/13 58/4 68/19
until [6]  24/2 24/9 25/23 29/24 42/18
  45/12
unwittingly [1]  76/6
up [34]  5/4 9/5 10/22 19/8 20/2 20/7
  29/15 30/4 31/4 31/14 37/15 43/10 46/20
  51/22 52/3 52/12 52/19 52/20 54/19
  54/23 57/19 58/12 61/16 63/12 63/18
  63/19 64/3 64/15 65/5 65/10 68/18 69/19
  69/21 73/3
upon [18]  9/9 9/10 12/16 17/17 18/8
  21/3 22/15 27/16 28/8 30/6 38/10 51/16
  57/4 64/2 72/17 72/18 72/21 74/10
us [10]  5/15 27/15 27/24 30/18 35/23
  64/23 67/2 68/8 70/19 71/24
use [19]  22/3 44/14 46/8 48/4 48/6 48/18
  49/25 50/4 53/18 54/2 55/4 55/7 55/11
  60/17 65/12 65/17 65/23 70/8 74/4
used [6]  12/7 22/5 47/8 50/17 57/20
  60/21
using [3]  50/1 56/19 65/21
Utah [1]  58/2
utilize [1]  61/1

**V**

vacuum [1]  24/10
value [3]  21/18 42/25 45/6
verify [1]  79/7
very [11]  22/17 38/20 47/16 49/3 66/25
  67/1 74/6 74/7 77/7 79/15 79/22
VITAMINS [42]  1/6 2/3 3/4 3/17 4/22
  4/25 5/19 6/18 7/21 8/10 8/22 10/22
  12/8 14/24 15/15 15/25 19/3 20/16 24/24
  25/6 25/13 25/16 26/12 26/17 27/21
  27/23 30/25 31/1 31/2 31/23 32/21 33/7
  34/9 34/13 42/5 42/12 43/16 45/17 59/14
  64/22 65/1 72/22
VOICE [1]  4/15

**W**

W-2 [2]  15/6 15/11
wait [1]  42/17
waived [1]  26/8
walking [1]  42/20
want [38]  14/13 20/4 21/13 23/25 34/21
  36/11 37/6 37/14 37/15 37/18 38/24
  39/10 39/15 39/25 41/3 46/23 46/8 48/18
  49/8 49/15 49/25 51/6 51/6 51/20 52/24
  54/2 54/20 55/14 55/14 57/2 57/22 58/8
  65/17 68/8 69/7 72/17 75/14 77/6
wanted [8]  3/25 25/6 28/20 28/23 42/5
  53/20 54/4 73/2
wants [4]  38/6 39/24 55/6 64/8
warehouse [3]  66/21 67/23 72/10
warrant [1]  33/11
was [151]
washy [1]  66/20
wasn't [5]  19/8 19/23 29/23 35/15 70/21
way [32]  7/11 9/11 14/25 24/3 34/25
  36/14 39/2 40/6 47/5 47/10 47/11 56/14
  56/25 57/1 57/2 57/6 57/17 57/19 58/11
  58/12 61/23 61/24 62/16 62/17 63/17
  70/1 70/18 71/9 71/21 74/23 74/24 77/1
ways [1]  76/6
we [136]
we'd [2]  13/22 78/22
we'll [2]  38/12 41/11
we're [5]  29/2 29/6 34/22 38/24 72/2
we've [6]  36/3 51/24 63/25 65/5 68/5
  68/13
Wednesday [1]  42/11
week [16]  36/21 37/7 38/16 38/18 39/8
  39/8 39/20 39/23 40/19 44/8 44/10 44/24
  44/24 56/9 62/12 79/15
week's [1]  35/4
weeks [5]  39/9 39/12 48/1 48/2 58/24
weigh [3]  11/13 19/12 19/12
weights [1]  20/13
welcome [1]  55/8
well [39]  13/25 14/8 14/11 14/25 16/15
  17/3 17/11 19/21 21/2 21/7 21/7 21/15
  22/23 32/2 33/13 37/7 37/14 37/22 38/23
  39/7 39/17 47/21 49/17 49/21 50/1 50/21
  52/7 54/1 54/23 56/18 57/1 57/1 59/5
  59/19 60/24 62/8 63/2 72/24 73/4
were [34]  3/2 5/18 6/15 6/16 9/6 10/23
  18/17 19/23 25/22 27/6 27/25 28/1 28/2
  28/3 28/12 28/25 30/1 35/4 36/10 41/12
  44/1 46/17 51/15 52/8 53/22 56/19 59/1
  66/20 66/23 68/14 72/18 72/21 73/12
  76/12
weren't [5]  19/24 27/3 30/3 36/25 56/18
west [1]  29/25
WEXLER [1]  2/14
what [98]
whatever [16]  13/21 22/17 27/23 35/17
  38/6 39/16 39/18 39/22 39/23 40/15 44/4
  55/11 57/23 65/12 69/8 75/19
when [11]  11/7 19/20 20/17 20/24 21/22
  27/11 28/20 32/24 40/23 43/18 47/14
  47/24 54/16 62/11 67/7 67/10 69/1 69/2
  69/11
where [9]  4/18 9/15 11/12 23/10 49/3
  62/4 69/17 72/9 79/21
whereby [1]  10/25
whether [11]  13/16 15/5 15/7 15/11
  18/11 18/17 31/22 64/7 65/24 69/12
  73/24
which [41]  5/20 7/23 13/10 16/2 17/21

# W

which... [36]  19/13 21/10 22/15 25/14
26/3 27/20 27/21 28/17 28/24 29/13
29/14 30/14 30/15 30/24 31/4 31/6 32/9
32/9 33/6 34/1 34/8 34/18 34/19 34/24
35/3 36/20 37/3 47/23 59/24 66/1 67/2
67/8 69/10 69/11 69/25 70/19
while [2]  7/13 16/7
who [15]  3/22 4/6 4/6 15/15 21/24 23/3
26/11 34/9 36/12 41/15 45/17 50/7 53/20
57/9 59/10
whole [4]  8/2 19/5 29/8 55/2
wholly [2]  7/22 8/3
why [22]  14/21 19/1 26/14 26/16 29/21
30/5 30/16 37/20 49/25 50/10 53/19
53/24 61/15 62/15 67/11 71/11 71/14
71/14 72/15 72/23 74/12 74/16
will [41]  4/6 4/13 6/5 9/19 10/4 10/7 10/9
12/21 12/21 15/24 16/11 20/17 20/19
29/15 32/14 39/23 39/24 39/25 40/1 41/1
41/1 43/12 44/14 45/5 45/9 47/8 47/11
47/15 47/17 48/1 48/10 48/14 55/13 56/5
57/23 58/17 64/9 70/14 73/25 78/13
79/18
Williams [5]  3/5 6/8 63/4 64/8 64/14
Williams' [1]  6/11
willing [1]  14/18
wishy [1]  66/20
wishy-washy [1]  66/20
withdraw [1]  14/6
withheld [1]  55/19
within [4]  17/12 24/14 56/9 60/11
without [9]  27/14 32/11 32/12 34/3 35/23
37/13 68/9 68/9 68/10
witness [26]  5/1 5/21 6/10 6/13 7/6 7/17
15/5 16/14 21/10 28/11 35/17 47/21
50/10 56/6 56/9 57/11 60/8 66/16 66/17
67/5 67/14 67/17 67/17 67/25 72/6 72/7
witnesses [6]  19/3 33/24 41/12 41/19
65/2 67/6
wittingly [1]  76/6
WOLKENFELD [2]  2/8 3/23
won't [5]  26/20 58/4 78/12 78/15 79/20
word [1]  75/15
words [18]  6/12 10/21 18/2 26/24 33/24
35/20 36/6 46/4 46/5 49/22 51/2 52/4
55/5 56/13 63/5 74/6 76/5 79/6
work [17]  7/3 7/4 7/16 11/16 13/2 14/25
15/3 18/8 19/4 20/1 20/1 20/19 20/25
21/4 28/10 40/9 68/16
worked [3]  19/17 78/7 78/8
working [5]  7/13 16/7 18/10 18/11 43/11
would [83]
wouldn't [10]  14/2 14/21 16/5 53/19 56/8
62/16 63/2 71/19 74/16 78/17
writing [1]  13/20
wrong [2]  24/5 70/7

# X

x-rays [1]  22/2

# Y

Yan [2]  41/15 41/19
year [1]  51/25
Years [1]  39/9
yes [47]  4/17 5/12 5/16 5/19 6/20 6/22
8/21 8/25 10/5 10/9 12/20 13/10 14/5
15/22 16/15 18/5 18/18 22/7 23/14 24/4
24/7 27/1 30/23 34/16 38/12 39/6 40/15
44/4 44/16 44/22 48/16 49/18 50/24
51/15 52/11 52/13 52/22 60/10 66/19
68/19 67/8 71/7 72/14 73/21 75/17 76/20
77/1
yet [6]  43/23 57/15 69/25 71/16 77/24
79/20
York [1]  68/18
you [211]
you'd [1]  72/17
you're [11]  12/18 12/18 17/24 20/12 32/3
36/6 43/23 46/23 46/24 47/2 63/5
you've [6]  33/2 52/4 63/19 70/4 74/10
77/4
your [138]

# Z

Zoom [4]  28/9 58/7 58/8 58/10
zplaw.com [2]  2/11 2/11
ZUMPANO [2]  2/9 3/20