IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:19-CV-22702-KMW

NOAH MALGERI, KALYN WOLF, BILL
WILSON, SHANNON HOOD, ERIC
FISHON, and ROBERT MCKEOWN on
behalf of themselves and all others similarly
situated,

    Plaintiffs,

vs.

VITAMINS BECAUSE LLC, CT HEALTH
SOLUTIONS LLC, GMAX CENTRAL
LLC, and ASQUARED BRANDS LLC,

    Defendants.
_____

**PLAINTIFFS' MOTION FOR SANCTIONS AND TO STRIKE DEFENDANT
VITAMINS BECAUSE'S PLEADINGS AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Rules 26 and 37 and L. R. 7.1, Plaintiffs, Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, Eric Fishon, and Robert McKeown (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, by and through undersigned counsel, hereby move for sanctions and to strike the pleadings of Defendants Vitamins Because LLC and CT Health Solutions LLC's (collectively, "Vitamins Because" or "VB" or "Defendant") (ECF No. 226) and enter a default judgment as to their liability, and state as follows:

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

Pursuant to this Court's Order on October 9, 2020 (ECF. No. 174), Plaintiffs filed their final iteration of the pleadings, Third Amended Complaint ("TAC") (ECF. No. 176), on October 23, 2020. Plaintiffs and putative class members alleged that they purchased deficient and defective S-adenosyl methionine ("SAMe") supplements manufactured by Defendant ("subject product" or

1

"SAMe capsules") and were similarly deceived by false and deceptive labeling which grossly overstated the included amount of the stated active ingredient (i.e., SAMe) and concealed core manufacturing defects and regulatory noncompliance. TAC, ¶¶ 1-3, 5-6, 8-13, 32, 61, 67, 90-92, 108, 235-236, ECF No. 176.

In sum, Defendant in this case has filed five (5) motions to dismiss in the present action (*see* ECF Nos. 37, 54, 122, 188, 267), as well as four (4) motions to stay discovery (*see* ECF Nos. 71, 141, 203-204, 215) and an utterly futile Petition for Writ of Mandamus to the 11th Circuit Court of Appeals (*see* ECF No. 215-1) which Magistrate, Judge Edwin G. Torres described as "frivolous" and demonstrated its impropriety. ECF No. 219-1, at 19-21, 34, 38. None of Defendants' motions have been granted by the Court. *See* ECF Nos. 88, 162-1, 174, 203-2, 212, 220, 221. At no point in time did the Court stay the case or discovery. In addition, Defendant has been previously warned about its refusal to comply with their discovery obligations in this case. *See* ECF No. 223.

On May 26, 2020, the Court issued a Scheduling Order (ECF. No. 91) requiring the parties to exchange initial disclosures pursuant to F.R.C.P. 26 by June 30, 2020 and comply with numerous other discovery deadlines set forth therein. Beginning in July 2020, Plaintiffs accordingly propounded numerous discovery requests to Defendant. This included: 1) Plaintiffs' First Request for Production of Documents, served on July 21, 2020, Exh. 1; 2) Plaintiffs' Second Request for Production of Documents, served on July 30, 2020, Exh. 2; 3) Plaintiffs' Third Request for Production of Documents, served on August 21, 2020, Exh. 3; and 4) Plaintiffs' First Set of Interrogatories, served on July 30, 2020, Exh. 4.

Amongst the documents requested from Defendant were:

1) Documents "concerning the creation, manufacture … of the subject product, including … documents relating to the product's components, active ingredients …and its manufacturing process." Exh. 1, at 7, #1.

2) Documents "concerning the … standard operating procedures relating to the manufacture, labeling … of the subject product." Exh. 1, at 8, #4.

3) Documents "concerning the establishment of manufacturing, component, and in-process specifications …." Exh. 1, at 11, #16.

4) "[W]ritten procedures for laboratory operations concerning the subject product …" Exh. 1, at 13, #27.

5) Documents "concerning Defendants' design or selection of manufacturing processes, which ensure that ingredient specifications for the subject product are consistently met." Exh. 1, at 14, #33.

6) Documents relating to regulatory compliance with "the filling, assembling, packaging, and labeling of the subject product." Exh. 1, at 17, #39.

   Documents relating to the "production, manufacturing, and labeling runs relating to the subject product." Exh. 1, at 18, #46.

7) "[A]ll records concerning the subject product which Defendants have made available to the FDA." Exh. 1, at 19, #50.

8) Documents and communications "concerning Defendants' . . . communications and interactions with the FDA relating to the subject product or the physical plant(s) at which the subject product is manufactured." Exh. 1, at 19, #51.

9) Documents concerning "all corrective actions performed by Defendants in relation to the subject product." Exh. 1, at 20, #53.

10) Documents "regarding the amount or measure of SAMe in the subject product." Exh. 1, at 21, #60.

Beginning in October 2020, because of Defendants' steadfast and serial failures to provide discovery, Plaintiffs brought multiple motions to compel discovery, and Magistrate Torres issued several orders requiring Defendant's compliance with the outstanding discovery that had been served in the case. ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS, ECF No. 223, ¶¶ 1-12 (cataloging several motions to compel and Rule

3

37 discovery orders by the Magistrate.). Despite their clear obligations, Defendant, in a calculated attempt to avoid its discovery responsibilities, repeatedly thumbed its nose thumbed its nose at this Court's Orders and refused to respond to long overdue discovery requests or otherwise engage in good-faith discovery on the grounds that it unilaterally felt that Court's Orders for discovery should be amended and/or overruled. *Id*. (cataloging Defendant's repeated noncompliance, motions to stay discovery, and strategic bases not to comply with ordered discovery.). After Defendant ignored three discovery orders and refused to meaningfully respond to Plaintiffs' discovery requests, Magistrate Torres issued "Rule 37 sanctions in the form of an Order deeming all objections waived" and ordered "that complete responses were due within fourteen days." *Id*., at ¶11. Suspecting that Defendant had again violated the Court's discovery Order for a *fourth* time, the Magistrate warned Defendant that it was "on notice that any and all potential sanctions will be considered" should its noncompliance continue. *Id*., at ¶ 13.

Under the threat of further, more serious sanctions, Defendant then issued material discovery responses and production. *See e.g.,* Defendant's Responses to Plaintiffs' First Request for Production of Documents, Exh. 5. However, because of Defendant's continuous motions to stay discovery, coupled with its outright obstruction and lack of compliance with ongoing ordered discovery, virtually no meaningful discovery was produced by Defendant until June 2021.

In its discovery response dated June 10, 2021, Defendant appeared to acknowledge its possession of at least some responsive documents relating to its manufacture and formulation of its SAMe supplements, some of which were later finally produced as discovery production. *See* Exh. 5.

However, stunningly, the recent deposition testimony of Dr. Neil Ross, consultant for Defendant Vitamins Because, has revealed that a number of responsive, material records

4

concerning these matters were in the possession of Defendant and were still being withheld by Defendant and were never produced. Dr. Ross Deposition Transcript, Exh. 6, at pp. 17, 67-68, 137-138. These records include: 1) the SAMe formulation sheet provided to Defendant by Dr. Ross to assist company with their SAMe manufacture and labeling; 2) quarterly reports submitted by Defendant to the FDA. *Id.*[1] Thus, after its abject failure to follow the Court's numerous orders, and its serial conduct of disobeying under threat of sanctions, testimony by Defendant's consultant and designated expert witness has now, at this late date, has revealed that Defendant *further* failed to abide by the Court's discovery sanctions by intentionally withholding case-critical responsive records in its possession which (i) concern the company's formulation and filling of the subject product and (ii) concern correspondence with the FDA regarding its observations of the unvarying regulatory noncompliance in Defendant's manufacturing of SAMe. Because of Defendant's patent disobeying of the Court's discovery Orders, which already imposed the sanctions of deeming all objections waived and requiring a complete discovery production (ECF No. 223), and because now, even after being advised that further serious sanctions would befall them for additional

---

[1] The unproduced records are directly responsive to a number of discovery requests (*see e.g.* Exh. 1, at 7 (#1), 8 (#4), 11 (#16), 14 (#33), 18 (#46), 19 (#50-51), 20 (#53), 21 (#60)) and critical to core issues in this case. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ The record supports the understanding of Dr. Kalman, Plaintiffs' expert, that Defendant's manufacturing processes were set up to uniformly underfill it capsules with insufficient amounts of SAMe raw material which cannot meet their label claims for the stated amount of active SAMe. Defendant's quarterly reports confirm Defendant's acknowledgement of core manufacturing problems observed by the FDA, which its principal (Cynthia Valenca) repeatedly denied under oath and sets forth the company's progress in implementing appropriate corrective measures. Exh. 6, Dr. Ross Deposition Transcript, pp.67-68 (explaining the purpose and content of quarterly reports submitted to the FDA and confirming that Defendant possesses these records which he assisted them to prepare.); Exh. 9, Cynthia Valenca Deposition Transcript, pp. 22, 65, 76, 79, (repeatedly denying the veracity of the "false" FDA report and its observations on the grounds that Aaron Fox, the FDA inspector, "didn't know what the hell he was talking about."); ECF No. 176-9 (FDA Inspection Report with observations of Defendant's core manufacturing problems.).

violations, they have withheld crucial documents through the discovery period, Plaintiffs now here move the Court for further sanctions in the form of the striking of Defendant's Answer (ECF No. 226) and granting of a default judgement.

Following his deposition, Dr. Ross produced several probative records relating to core issues in the case and which would have further informed Dr. Kalman's expert opinion which Dr. Ross confirmed were in Defendant's possession! *See e.g.* Exh. 7, "SAMe Formulation sheet" ▮▮▮▮▮▮▮▮▮▮▮▮. These responsive documents were never produced by Defendant in the course of discovery. In light of this stunning post-discovery revelation, confirmation by Dr. Ross that further responsive records in Defendant's possession have still not been produced, and testimony of Dr. Ross conceding that the SAMe supplements were intentionally formulated to contain the labeled amount of SAMe isomers (or tosylate), *but not active SAMe ions*, Plaintiffs have also respectfully reserved their right to supplement their expert reports and disclosures and amend their recent motion briefings accordingly.

## II. ARGUMENT

### a) Legal Standard

The sanction of striking a defendant's answer and entering a default judgment against that party is authorized by Rule 37(b). This rule provides in relevant part:

> If a party … fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (**iii) striking pleadings in whole or in part;**
> …
> **(vi) rendering a default judgment against the disobedient party;** or

6

(vii) treating as contempt of court the failure to obey any order ….

Fed.R.Civ.P. 37(b)(2)(A) (Emphasis added).

The rule provides district judges with "broad discretion to fashion appropriate sanctions for violation of discovery orders; however, this discretion is guided by judicial interpretation of the rule. For example, a default judgment sanction requires a willful or bad faith failure to obey a discovery order." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (citations omitted). *See also Phipps v Blakeney*, 8 F3d 788, 790 [11th Cir 1993] (citing *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)). "[T]he unsuitability of another remedy, the intransigence of a party, and the absence of an excuse are all factors to be considered." *National Hockey League*, at 640.

However, the "imposition of a default judgment sanction requires that the district court first find (1) that the party exhibited a willful or bad faith failure to obey a discovery order; (2) that the moving party was prejudiced by that violation; and (3) that a lesser sanction would fail to punish the violation adequately and would not ensure future compliance with court orders." *Inmuno Vital, Inc. v. Telemundo Group, Inc*., 203 F.R.D. 561, 569 (S.D. Fla. 2001) (citing Circuit cases). Given Defendant's conduct, this case fits squarely within the rule and the factors considered.

    b) **Striking of Defendant's Pleadings and Imposition of Default Judgment is Appropriate Under the Circumstances**

In this case, Defendant failed to obey the Court's Order Granting Plaintiffs' Motion to Compel Discovery and for Sanctions (ECF No. 223) which deemed all of Defendant's discovery objections waived and required complete responses to all of Plaintiffs' discovery requests. *Id*., at ¶¶ 11, 13 (requiring Defendant's prompt remedial action to their failure to abide the three prior discovery orders of Magistrate Torres by June 22, 2021.). Yet, despite the subject documents

7

recently revealed by Dr. Ross having been expressly requested by Plaintiffs (Exh. 6, at pp. 17, 67-68, 137-138), Defendant intentionally failed to disclose or produce its multiple communications with the FDA. Exh. 5, at 10-11 (#46-47). Defendant also failed to produce its formulation excel spreadsheet (Exh. 7) which Plaintiffs only recently received from Defendant's hybrid witness, Dr. Ross, on January 19, 2022, *after* the close of discovery and expert depositions.

As explained *infra*, Defendant was well aware of the existence of this material evidence and their possession of these records. Defendant had hired Dr. Ross, an independent consultant, to help the company prepare its quarterly reports and regularly respond to the FDA regarding its required curative actions following the FDA's 2018 facility inspection. Exh. 6, Dr. Ross Deposition Transcript, pp. 67-70 (explaining his consulting work with the quarterly reports and confirming Defendant's possession of these records.).

Similarly, Defendant possessed and used Dr. Ross's excel SAMe formulation sheet in its manufacture of the subject product. Exh. 6, at 17, 137-138; Exh. 8, Chapman Deposition, at pp. 77-79, 96, 122 (testifying that he and the company consistently followed the step by step instructions in Dr. Ross's excel formulation sheet in manufacturing its SAMe supplements.). The Court's Discovery Order (ECF No. 223) makes clear that all objections to discovery were waived because of Defendant's prior continued discovery violations, and so all documents responsive to Plaintiffs' requests were required to be produced. Despite Defendant's knowledge and possession of these records, and the clear Court Order concerning discovery obligations under threat of sanctions, Defendant simply failed to produce (or even disclose) many of these records.

Courts have consistently found Rule 37 sanctions such entry of default judgment appropriate where a party's conduct amounts to flagrant disregard and willful disobedience of discovery orders. *See e.g. Buchanan v. Bowman*, 820 F.2d 359, 362 (11th Cir. 1987). To this end,

8

the 11th Circuit has confirmed a district court's authority to impose such sanctions under these circumstances. *See OFS Fitel, LLC v. Epstein, Becker & Green, P.C.,* 549 F.3d 1344, 1367 (11th Cir.2008); *Wouters v. Martin Cty.,* Fla., 9 F.3d 924, 932 (11th Cir. 1993); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986). Moreover, as in this case, where Defendant has "exhibited a pattern of conduct that showed disrespect for the court's rules" and multiple discovery violations, the 11th Circuit has explained that Rule 37 sanctions are particularly appropriate. *Maus v. Ennis*, 513 F. App'x 872, 879 (11th Cir. 2013).

### 1. Willfulness of Defendant

No one can dispute that Defendant willfully and deliberately refused to comply with multiple court orders. *See Malautea v. Suzuki Motor Company, Ltd.,* 987 F.2d 1536, 1542 (11th Cir.1993) (requiring willful or bad faith failure to obey a discovery order for default judgment sanction). There is clear evidence in the record showing that Defendant's failure to comply with the Court's prior discovery orders and sanctions was willful. Beginning with its refusal to abide by the multiple Court orders concerning ongoing discovery and its obligations, to its frivolous filing of a Writ of Mandamus, to its further refusal to produce various requested records requiring further Court involvement and finally sanctions and threat of further sanctions, Defendant's willful and repeated disregard for Court orders is demonstrated throughout the case docket. *See infra*, § I ("Introduction and Factual Background.").

Moreover, records setting forth Defendant's chemical and quantitative formulation of the subject product SAMe supplement and the still unproduced communications with the FDA regarding their inspection and observed regulatory violations were clearly encompassed within Plaintiffs' discovery requests which the Court ordered to be produced. Dr. Ross's testimony makes clear that Defendant was aware of these records which they created and/or used in the course of

their SAMe manufacturing and FDA inspection follow up. *See infra,* § I; Exh. 6, at pp. 17, 67-68, 137-138. As such Defendant's withholding of these responsive documents during the course of discovery which it knowingly possessed can only be aptly characterized as willful and in bad faith. Defendant cannot provide any credible explanation of how they could have been unaware of the existence of such crucial records which are potentially harmful to their case in their possession. Nor could they claim misinterpretation of the Court's discovery orders and sanctions to require their production well before the close of discovery. *See id; Inmuno Vital, Inc.,* 203 F.R.D. 561 at 571 (finding willful failure to obey Court order where these elements were demonstrated); *Malautea,* 987 F.2d at 1543 (same).

Defendant was also given fair notice that further sanctions were possible if they did not comply with discovery orders. ECF No. 223, at 7 (¶13). *See Inmuno Vital, Inc.,* 203 F.R.D. 561 at 572. Of course, as noted, Defendant has already been sanctioned by this Court for their repeated noncompliance with discovery orders. ECF No. 223, at 7 (¶¶ 2-4, 7-9, 11, 13). *See Inmuno Vital, Inc.,* 203 F.R.D. 561 at 572. (granting Rule 37 sanctions even without any prior sanctions).

### 2. Prejudice to Plaintiffs

Here it is clear that Plaintiffs were seriously prejudiced by Defendant's failure to produce a number of responsive documents in its possession. For example, Defendant's failure to produce the Excel formulation sheet (Exh. 7) which its personnel used as a step by step blue print to manufacture (and under fill) all their SAMe capsules (*see* Exh. 8, at pp. 77-79, 96, 122) denied Plaintiffs insight into Defendant's manufacturing processes and product specifications. Similarly, Defendant's failure to produce their quarterly reports to the FDA regarding the observed regulatory violations at their manufacturing facility denied Plaintiffs evidence regarding their manufacturing

defects and any subsequent efforts to remedy core manufacturing failures through improper practices and the timeline on which it occurred.

And while in this case it may be impossible to know exactly how helpful the documents would have been to Plaintiff in the course of taking depositions and presenting expert reports and opinions, it is clear that being deprived of these discoverable documents materially prejudiced Plaintiffs in their ability to prepare their experts and conduct discovery. *See Inmuno Vital, Inc.,* 203 F.R.D. 561 at 573 (finding serious prejudice to the plaintiff despite the impossibility of knowing how helpful the ability to inspect and present the documents would have been to the plaintiff during discovery.). Because Defendant did not produce these documents to Plaintiffs during the entirety of discovery, Plaintiffs were deprived of the ability to fully question Vitamins Because officials about their regular and intended measure and strength of the SAMe capsules at the time of manufacture – a key factual element in the case which directly supports Plaintiffs' allegations of uniform SAMe deficiency in the subject product capsules. Similarly, because Defendant has still not produced its quarterly reports to the FDA, Plaintiff was unable to confront Defendant with this damning evidence or question the fact and expert witnesses as to those communications and use them as evidence of Defendant's regulatory and cGMP noncompliance.[2] *See Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (explaining that because "discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." And where failure to comply with Rule 26(a) was both unjustified and harmful to the opposing parties a district court may properly strike matters from the record. [citations omitted]); *Inmuno Vital*, at 573 (a

---

[2] As alluded to above, there is simply no way to know how the production of the missing records may have impacted depositions and expert opinions of both Plaintiffs and Defendants.

party is prejudiced and denied the protections inherent in our adversarial system where they cannot review and inspect relevant documents during discovery.).

### 3. Unavailability of Lesser Sanctions

Because the sanction of striking the pleadings and granting default judgment are sanctions of "last resort," it is generally appropriate where lesser available sanctions are not adequate. *Malautea*, 987 F.2d at 1542. However, "it is also true that overleniency is to be avoided where it results in inadequate protection of discovery." *Inmuno Vital, Inc.*, 203 F.R.D. at 573 (citations and quotations omitted.). In this case, Defendant's repeated delay tactics and outright refusal to complete its documents production with all responsive documents with Court discovery orders as set forth *infra*, in addition to its prior discovery violations, have seriously impacted Plaintiffs' ability to prepare effectively for expert disclosures and trial.

Unless the Court would be willing to allow the parties to exchange the remaining (and still withheld) discovery and further re-conduct depositions and expert disclosures with that discovery – an unviable option given the Court's express commitment to no further scheduling extensions (*see* ECF No. 244 (Amended Scheduling Order) –, there is no lesser sanction that would cure the prejudice to Plaintiffs.[3] Moreover, given Defendant's repeated failures to abide by Court discovery orders, there is no reason to believe that any lesser sanction would instill in Defendant the motivation to make full and complete discovery production. *See Smith v. Atlanta Postal Credit*

---

[3] While some courts have "decided to instruct the jury as to negative inferences that should be drawn from violation of discovery orders, in lieu of striking the infracting party's pleadings . . . [both] courts and commentators have noted that 'adverse inference instructions are one of the least severe sanctions which the court can impose and, therefore, often have very little deterrent effect.'" *Inmuno Vital, Inc. v. Telemundo Group, Inc*., 203 FRD 561, 574 (S.D. Fla. 2001) (Citation omitted). Moreover, due to Defendant's continued refusal to produce their FDA quarterly reports and communications, "it is not entirely clear what the jury would have to infer in order to cure the prejudice suffered by Plaintiff[s]." *Id.*

*Union*, 350 F. App'x 347, 351 (11th Cir. 2009). And even if it did, the horse is out the barn on this, as depositions are completed, expert reports have been served and discovery is closed. There is no going back, and certainly not without extreme prejudice to Plaintiffs. Thus, the granting of default judgment against Defendant is the only realistic sanction that will adequately prevent prejudice to Plaintiffs, hold Defendant accountable for its noncompliance with Court Orders, and adequately deter future discovery violations by parties subject to Court Orders. *See id.*

Thus, because (1) Defendant exhibited a willful failure to obey discovery orders entered in the case; (2) Plaintiff was prejudiced by those violation, included the its continued failure to produce responsive documents; and (3) lesser sanctions would fail to cure the prejudice which Plaintiffs have and continue to suffer, punish the violation adequately, and ensure future compliance with court orders, this Court should strike Defendant's pleadings and grant Plaintiffs a default judgment as to Defendant's liability. *See Inmuno Vital, Inc.*, 203 F.R.D. at 574.

### c) Additional or Alternative Sanctions

Even as Plaintiffs maintain that lesser sanctions capable of curing their prejudice do not exist, Plaintiffs further request sanctions in the form of costs and attorney's fees pursuant to Rule 26(g), 28 U.S.C. § 1927, and the Court's inherent powers to control the litigation. *See Malautea*, 987 F.2d at 1544-46. Plaintiffs additionally request, in the alternative, that the Court direct that Defendant's under filling of their capsules and setting the label claims in terms of the amount of SAMe isomer or tosylate disulfate (as opposed to active SAMe ions) contained in their subject product SAMe capsules be taken as *established fact* for purposes of trial and the general action, pursuant to Fed.R.Civ.P. 37(b)(2)(A)(i).

Plaintiffs similarly request, in the alternative, that the Court prohibit Defendant from opposing at trial or in motions Plaintiffs' claim that Defendant underfilled its SAMe capsules and

labeled their contents in terms of SAMe isomers or tosylate disulfate (as opposed to active SAMe ions), pursuant to Fed.R.Civ.P. 37(b)(2)(A)(ii).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Sanctions and to Strike Defendant Vitamins Because's Pleadings and enter a default judgment as to its liability, or such other and further relief which appears just and proper to the Court.

<u>MEET AND CONFER</u>

Pursuant to Local Rule 7.1, on February 4, 2022, before filing this motion, Plaintiffs' counsel met and conferred with counsel for Defendants regarding the relief sought. Defendant opposes the relief sought.

DATED: February 7, 2022.    By: /s/ Joshua H. Eggnatz

Joshua H. Eggnatz, Esq.
Fla. Bar No.: 0067926
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: 954-889-3359
Fax: 954-889-5913
JEggnatz@JusticeEarned.com

*Local Counsel for Plaintiff and the Putative Class*

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570

ggraifman@kgglaw.com
jbrody@kgglaw.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com

*Counsel for Plaintiff and the Putative Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 7, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of notices of Electronic Filing generated by CM/ECF.

By: */s/ Joshua Eggnatz*

### SERVICE LIST
**Malgeri, et al. vs. Vitamins Because, LLC, et al.**
**Case No.:  19-cv-022702-KMW**

**Attorneys for PLAINTIFFS**:

Joshua H. Eggnatz
**EGGNATZ | PASCUCCI**
7450 Griffin Road
Suite 230
Davie, FL 33314
Tel: 954-889-3359
JEggnatz@JusticeEarned.com

Jay I. Brody (Admitted *Pro Hac Vice*)

Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com


**Attorneys for DEFENDANTS:**

*Defendants*, **VITAMIN BECAUSE LLC**
**and CT HEALTH SOLUTIONS LLC:**

David S. Johnson (FBN 96423)
**JOHNSON DABOLL ANDERSON, PLLC**
2011 W. Cleveland Street, Suite F
Tampa, Florida 33606
Tel: 813-377-2499
Fax: 813-330-3156
djohnson@jdalegal.com

*Defendant*, **GMAX CENTRAL LLC:**

Leon N. Patricios (FBN 0012777)
Joseph I. Zumpano (FBN 0056091)
**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, FL 33134
Tel: 305-444-5565
Fax: 305-444-8588
lpatricios@zplaw.com
jzumpano@zplaw.com

Richard J. Oparil (Admitted *Pro Hac Vice*)
Kevin M. Bell (Admitted *Pro Hac Vice*)
**ARNALL GOLDEN GREGORY LLP**
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006

Tel: 202-677-4030
richard.oparil@agg.com
kevin.bell@agg.com

***Defendant*, ASQUARED BRANDS LLC:**

Alessandro A. Apolito (FBN 0084864)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
822 N. A1A, Suite 101
Ponte Vedra Beach, Florida 32082
Tel: 904-660-0020
Fax: 904-660-0029
aapolito@lippes.com


Brendan H. Little (Admitted *Pro Hac Vice*)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
Tel: 716-853-5100
blittle@lippes.com