**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:19-cv-22702-KMW

CORI ANN GINSBERG
NOAH MALGERI
KALYN WOLF
BILL WILSON
SHANNON HOOD
ERIC FISHON
ROBERT MCKEOWN, on behalf of themselves
and all others similarly situated,

     Plaintiffs,

  vs.

VITAMINS BECAUSE LLC
CT HEALTH SOLUTIONS LLC
GMAX CENTRAL LLC
ASQUARED BRANDS LLC
INSPIRE NOW PTY LTD d/b/a BoostCeuticals
HEALTHY WAY RX LLC
KHAKIWARE INC.
JOLLY DOLLAR SUPPLY COMPANY, LLC

     Defendants.

_____

**DEFENDANT ASQUARED BRANDS LLC'S MOTION TO DISMISS FOR LACK OF
STANDING, LACK OF SUBJECT MATTER JURISDICTION, AND
FOR SUMMARY JUDGMENT**

   Pursuant to Fed. R. Civ. P. 56, Defendant aSquared Brands LLC ("aSquared") moves for

an Order Dismissing Plaintiffs Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, and Robert

McKeown's claims for: (1) lack of Article III standing; (2) lack of jurisdiction; and/or (3) summary

judgment.

## PRELIMINARY STATEMENT

Kalyn Wolf, Shannon Hood, and Robert McKeown (collectively "aSquared Plaintiffs")[1]

seek to recover damages for purchasing the supplement SAM-e from aSquared which they contend

had had less active ingredient than what was listed on the label. The SAM-e at issue in this lawsuit

was manufactured by Defendant CT Health Solutions and Vitamins Because LLC (collectively

"Vitamins Because") and then sold to consumers by Vitamins Because or by third party retailers

such as aSquared. (Doc. 176, ¶¶ 14-21). The named Plaintiffs assert claims pursuant to various

state consumer protection statutes, Florida common law, and the Magnuson-Moss Warranty Act

("MMWA").

A concrete injury in fact is essential for Plaintiffs to meet Article III's standing

requirements. Actual injury is also an essential element in each cause of action asserted by the

aSquared Plaintiffs. Plaintiffs' lawsuit has been fatally flawed since its inception because Plaintiffs

did not test the SAM-e they purchased for potency. The evidence in the record shows that Plaintiffs

suffered no demonstrable injury resulting from their purchase of SAM-e because they cannot prove

that the SAM-e they purchased did not meet label specifications.

The only evidence Plaintiffs can point to is the sorely deficient and contradictory expert

opinion from Doctor Douglas Kalman ("Kalman"), asserting the unsustainable conclusion that

each and every bottle of SAM-e manufactured by Vitamins Because did not meet label

specifications. As detailed below, as well as the simultaneously filed Daubert motions, Kalman's

opinion is wholly unreliable. Indeed, this fact is illustrated best by his concession at his deposition

that the conclusion he reached in his report was incorrect.

Plaintiffs sue now, ask questions later strategy has created other jurisdictional defects. As

---

[1] Plaintiffs Malgeri and Hood do not assert claims against aSquared.

there are less than 100 named Plaintiffs in this lawsuit, they do not meet the jurisdictional prerequisites to bring a MMWA claim in Federal Court. By voluntarily dismissing two named plaintiffs under threat of sanctions relating to allegations of altering evidence, Plaintiffs no longer have a named class representative from Florida. As a result, Plaintiffs do not have standing to assert common law causes of action on behalf of the nationwide class against all of the Defendants.

Against these undisputed facts, Plaintiffs claims fail as a matter of law.

## DISMISSAL IS REQUIRED BECAUSE PLAINTIFFS LACK ARTICLE III STANDING

### I.     Standard of law

To bring a suit in federal court, a party must meet the standing requirements of Article III of the Constitution. *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1066–67 (S.D. Fla. 2020), appeal dismissed, 2020 WL 3864935 (11th Cir. May 11, 2020). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

### II.     Plaintiffs cannot demonstrate an injury in fact sufficient to confer standing

> *a.*     *Named plaintiffs in consumer class action lawsuits are not immune from establishing a specific injury sufficient to confer standing on an individual basis*

The Supreme Court has made it clear that standing must be particularized, meaning the alleged "injury must affect the plaintiff in a *personal and individual* way." *Lujan,* 504 U.S. at 560 n. 1 (emphasis added). In the context of defective products, "it 'is not enough' for a plaintiff 'to

allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.'" *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (emphasis added).

Indeed, it is well-established that named plaintiffs in a consumer class action lawsuit must still establish a specific injury sufficient to confer standing. Put differently, a plaintiff who purchased or used a specific product, and who has commenced a lawsuit alleging a defect with that product, must be able to show that the product he or she purchased was actually defective. *See, e.g.*, *Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d at 130; *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 501 (5th Cir. 2005); *Deluna v. Am. Journey (PET), LLC*, 2021 WL 5149790, at *3 (S.D. Fla. Nov. 1, 2021); *In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*, 397 F. Supp. 3d 406, 420 (S.D.N.Y. 2019), aff'd sub nom. *John v. Whole Foods Mkt. Grp., Inc.*, 823 F. App'x 46 (2d Cir. 2020); *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *3 (N.D.N.Y. Mar. 25, 2019); *Coffelt v. Kroger Co.*, 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018).

*In re Whole Foods*, 397 F. Supp. 3d 406 is instructive in this regard. There, the plaintiff brought an action against Whole Foods alleging that he purchased pre-packaged food from it that was assigned exaggerated weights, which resulted in him being overcharged for the purchase. *Id.* at *408. Whole Foods moved for summary judgment and argued that the undisputed facts would not permit a jury to find, other than by speculation, that the plaintiff himself was ever overcharged by Whole Foods for any pre-packaged food item. *Id.* This was because the plaintiff did not weigh the pre-packaged food he purchased prior to consuming them. As a result, the record was devoid of any evidence that plaintiff, did in fact, overpay. Whole Foods argued the plaintiff's failure in

that regard warranted dismissal on both the merits and on standing, as the plaintiff failed to establish an injury-in-fact, as necessary for Article III standing. *Id.* The District Court agreed and dismissed the lawsuit. In doing so, the District Court determined that although the plaintiff could demonstrate he did make purchases at Whole Foods, there was no competent, non-speculative, evidence that any of the purchased the plaintiff made were not accurately labeled because they were never weighed. *Id.* at *413, *423. In doing so, the court noted that "it is not enough merely to situate the product purchased by a plaintiff within a universe of products most, but not all, of which were sold illegally." *Id.* at *423.

Here, as detailed below, the named Plaintiffs admit they did not have the SAM-e they purchased tested to determine whether it met label specifications. Therefore, the named Plaintiffs cannot demonstrate that the purchased a product with less active ingredient than was listed on the label.

b.   *The named Plaintiffs failure to have the product they purchased tested is fatal to their claims in this lawsuit*

Each Plaintiff in this lawsuit has alleged that they purchased SAM-e that was manufactured by Vitamins Because to have less active ingredient than what was stated on the label. (Doc. 176). Plaintiffs have produced no evidence to demonstrate that the SAM-e they purchased contained less active ingredient than what was listed on the label. To the contrary, in discovery, the named Plaintiffs have all admitted that they did not have the specific product they purchased tested to determine whether the amount of active ingredient met the label statement. *See* Little Dec., Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F. The failure to have the subject SAM-e tested is particularly shocking in light of the fact that more than one named Plaintiff testified that they still

had the SAM-e they purchased in their possession.[2]

 Kalyn Wolf testified she did not have the SAM-e she purchased tested:

> Q: Have you ever had the SAM-e that's the subject of this lawsuit tested for its potency of efficacy?
> A: No
> Q: Did you ever perform any sort of testing yourself on the SAM-e that you purchased that's the subject of this lawsuit?
> Mr. Brody: Object to form.
> A: No.

Little Dec., Exhibit B, p. 23, ln. 24 – p. 24, ln. 7.

 Bill Wilson testified he did not have the SAM-e he purchased tested:

>  Q: Yeah. So you believed, as far as I understand your testimony, you stopped taking product because you believed there might have been something wrong with the product, either the quality or something about the active ingredient. You had the product but you never sent it out to be tested; is that right?
> A: I was not asked to do so.
> Q: Did you think to do it on your own?
> Mr. Brody: Objection to the form.
> A: I did, no.
> Q: I'm sorry, you did or you did not?
> A: No is the answer to your question.
> …
>
> Q: Why didn't you have any of the product that you currently have that's subject to this lawsuit tested?
> Mr. Brody: Same objection.
> A: I rely on my attorneys for all that.

Little Dec., Exhibit C, p. 33, ln. 10-25; p. 34, ln. 10-17.

 Robert McKeown testified as follows with regard to his failure to test the SAM-e that he

purchased:

> Q: Did you have any of the product that you purchased tested for potency?
> A: No.

---

[2] Formally named Plaintiff Eric Fishon had also testified that he kept SAM-e purchased that was at issue in this lawsuit, but he never sent it to his counsel or a third party to be tested. Mr. Fishon dismissed his lawsuit under the threat of sanctions.

…

Q: Okay. So your basis for understanding – or alleging, excuse me – that the product you purchased had a discrepancy in terms of its ingredients is based solely on documentation provided by your attorneys?
Mr. Brody: Object to form.
A: Correct.
Q: Do you have any other basis to allege that the SAM-e you purchased from Asquared didn't have the ingredients that were indicated on the label?
Mr. Brody: Same objection.
A: No.
…

Q: Did you think that it would be important to have the product that you purchased tested for potency?
Mr. Brody: Object to form; calls for legal expertise.
A: I believe so.
…

Q: And I think you answered this, but none of the product you purchased and took was actually tested, right?
Mr. Brody: Same objection.
A: Correct.

Little Dec., Exhibit D., p. 52, ln. 14-17; p. 53, ln. 16-25; p. 54. ln. 1-2; 6-10; 19-23.

Shannon Hood testified that she did not have any of the SAM-e she purchased tested. Little Dec., Exhibit E, p. 58, ln. 21-24; p. 59, ln. 21-23; p. 64, ln. 15-18; p. 65, ln. 7-23. p. 67, ln. 17-19.

Critically, Shannon Hood conceded that she had no way of knowing whether the SAM-e she purchased met, or did not meet, the labeled amount of active ingredient:

Q: Okay. And so my question is: How do you know the SAM-e that you purchased was under that threshold?
A: How do I know? Because I don't know if the individual pill that I consumer not exceeded or fell below whatever threshold would be acceptable. There's no way to tell. I opened the bottle and consumed the pills.

Little Dec., Exhibit E, p. 64, ln. 15-18.

Finally, Noah Malgeri testified that he did not have the SAM-e he purchased tested:

> Q: And the question is, did you, Mr. Malgeri, send SAM-e product
> out that resulted in those test results?
> Mr. Brody: Objection to form.
> A: No.

Little Dec., Exhibit F, p. 55, ln 10-18; p. 55, ln. 23-25; p. 56, ln. 2-16. Simply put, because the named Plaintiffs in this lawsuit did not have the SAM-e they purchased tested to find out whether it contained the amount of ingredient set forth on the label, they cannot establish an injury sufficient to confer standing. Plaintiffs' claimed injury is therefore purely based on speculation. Plaintiffs and their counsel knew they did not test the product before they commenced this lawsuit and proceeded forward, nonetheless. Through creative pleading, Plaintiffs were able to plausibly claim an "injury" in a way that would survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Now, however, after years of discovery, Plaintiffs are faced with the same foundational defect that they have tried to avoid since filing this lawsuit.

As the named Plaintiffs did not have the SAM-e they purchased tested, they cannot demonstrate they were injured and do not have standing.

   c.    *Plaintiffs' inevitable reliance on their expert witness' flawed extrapolations is insufficient to manufacture an injury*

Given that Plaintiffs were unable to produce evidence of injury specific to themselves in discovery, they were left with no choice but to attempt to demonstrate harm by extrapolation. Kalman, Plaintiffs' expert witness, was wholly unable to come to a reliable conclusion in that regard, which is fatal to Plaintiffs' exercise because it is, in reality, only conjecture.[3]

Multiple courts have held that even a material statistical probability of having received a

---

[3] aSquared will also file a *Daubert* motion to exclude Kalman as an expert. As Kalman's opinion is the only basis Plaintiffs can rely upon to try and demonstrate an injury, it is axiomatic that if his opinion is stricken, aSquared motion to dismiss for lack of standing should be granted.

defective product is insufficient to establish individual injury. *See In re Whole Foods Mkt. Grp., Inc.*, 397 F. Supp. 3d at 421; *Krim v. pcOrder.com, Inc.*, 402 F.3d 497; *Coffelt v. Kroger Co.*, 2018 WL 6004543, at \*11; *Wallace v. ConAgra Foods, Inc.*, 747 F.3d at 1030 (8th Cir. 2014). The underlying rationale for those decisions is illustrated in this case. As detailed below, Kalman concedes that ten percent of the SAM-e he analyzed tested to the specifications stated in the label. The Third Amended Complaint alleges approximately 86,000 bottles of SAM-e were sold during the subject time period. (Doc. 176, p. 17-40). Even giving Kalman every benefit of the doubt, at least 8,600 consumers who would be class members, statistically speaking, received a product that met label claim. Little Dec., Exhibit I, ¶ 16.

That type of statistical possibility is insufficient to show individual standing because it is not enough for Plaintiffs to allege that the SAM-e generally did not meet label specification or that it was likely that the SAM-e they purchases was at a high risk of not meeting label specifications – each Plaintiff must show that their SAM-e actually did not meet label specifications. An expert's opinion that is predicated on speculation and conjecture is insufficient as a matter of law to create a triable issue of fact. *Beauregard v. Continental Tire North American, Inc.*, 435 Fed. Appx. 877, 880 (11th Cir. 2011). Here, Plaintiffs' failure to test the SAM-e they purchased makes it entirely possible, perhaps even probable, that they purchased SAM-e with the amounts of SAM-e listed on the label.

As a result, Kalman's opinion cannot serve as a basis to defeat a summary judgment motion.

   i.   *Kalman admitted that all SAM-e manufactured by Vitamins Because was not defective*

Kalman's expert report concluded that all of the SAM-e manufactured by Vitamins Because were deficient in their amount of SAM-e. Little, Dec., Exhibit G, ¶ 71. Importantly,

however, Kalman's report acknowledges that in his investigation for this lawsuit, he reviewed test results of SAM-e manufactured by Vitamins Because that showed samples testing according to label specifications. Little, Dec., Exhibit G, ¶ 55. Faced with that reality at his deposition, Kalman departed from the conclusion in his report, and instead testified as follows:

> Q: It is your opinion that all of the SAM-e manufactured by Vitamins Because failed to meet the label requirement as it related to the active amount of SAM-e; correct?
> A: No, incorrect. I did – I did see and read perhaps two or three certificates of analysis by third-party analytical labs that did find the label claim was met or nearly met. So that would be 2 or 3 tests out of 30-plus tests found a label claim or near label claim was made.
> Q: Would you agree that 3 out of 30 is 10 percent?
> A: If I can do the math with my fingers, I would agree. Yes. Sorry about the bad joke. Yes.

Little, Dec., Exhibit H, p. 93-95. The importance of Kalman's concession at this deposition cannot be understated. By admitting that he cannot conclude that all of the SAM-e manufactured by Vitamins Because failed to meet the specifications on the label, he cannot, with any degree of reliability, conclude that the Plaintiffs in this lawsuit purchased SAM-e that did not meet label specifications.

Plaintiffs' counsel and Kalman clearly understood the magnitude of his testimony in that regard. In a blatant attempt to sweep his fatal admission away, they served an errata sheet attempting to wholly contradict and materially alter that testimony. Little, Dec., Exhibit I. Although Plaintiffs' action is impermissible and must be disregarded, the transparent attempt to change Kalman's specific testimony speaks volumes about its importance. *See, e.g., Hacking v. U.S.*, 2021 WL 4973840 (S.D. Fla. 2021); *Eldridge v. Pet Supermarket, Inc.*, 2019 WL 3302348 (S.D. Fla. 2019).

  ii. *Kalman tested SAM-e that was not manufactured by Vitamins Because*

To come to his flawed conclusion, Kalman had 21 tests of SAM-e product conducted.

Little, Dec., Exhibit G, p. 2; p. 129.  He also acknowledges that he reviewed 6 test results that were produced by a defendant in fact discovery. Little, Dec., Exhibit G, ¶¶ 53-55.

It does not appear, however, that Plaintiffs or Kalman took the time to ensure that all of the SAM-e they tested was even manufactured by Vitamins Because in the first instance. Kalman's expert report confirmed that SAM-e manufactured by Vitamins Because can be identified by an eight-digit lot number. Little, Dec., Exhibit G, ¶ 31, fn. 5. ASquared rebuttal expert, Dr. Nathalie Chevreau, highlighted that fact in her expert report and pointed out that at least 11 of the tests conducted by Kalman were on bottles of SAM-e with lot numbers than did not match the Vitamins Because lot number. Little Dec., Exhibit J, ¶ 22.

Kalman's mistake is confirmed by Vitamins Because. Mr. Thomas Chapman, who is an owner at Vitamins Because, reviewed the lot numbers of the all of the bottles of SAM-e relied on by Kalman in his report. See Declaration of Thomas Chapman submitted in support of the motion for summary judgment. 11 of those bottles were not manufactured by Vitamins Because. As a result, 11 of the 21 tests Kalman conducted to support his conclusion did not test SAM-e that was manufactured by Vitamins Because.

> iii.    *Kalman's reliance on the purported manufacturing failures by Vitamins Because is, for standing purposes, a red herring*

Again, understanding that Kalman's deposition testimony was fatal to their case, Plaintiffs pivoted. Kalman submitted an improper rebuttal report, which is a hail-mary attempt by Plaintiffs to avoid dismissal by having Kalman directly contradict his sworn deposition testimony on the central issue in this case.[4] Little Dec., Exhibit K. To do so, Kalman relies heavily on his review of the manufacturing processes and procedures at Vitamins Because to support his position. In

---

[4] aSquared will also be formally joining Defendant Vitamins Because's motion to strike Kalman's rebuttal report. (Doc. 275).

essence, his argument is that the Vitamins Because manufacturing process was so flawed that none of the SAM-e it produced could have had the accurate amount of SAM-e therein.

Putting aside the transparent attempt to rehabilitate himself, Kalman's newfound conclusion willingly disregards that approximately 29% of the SAM-e test results that Kalman reviewed demonstrated that the results tested in accordance with label specifications. Such a blatant contradiction cannot withstand even the slightest scrutiny and further demonstrates precisely why Plaintiffs cannot rely on Kalman's flawed opinions to show they were injured in this lawsuit.

### III.   Dismissal of the MMWA and Florida common law claims on behalf of the nationwide class is required because the Court lacks jurisdiction

In addition to the fact that Plaintiffs cannot demonstrate an injury in fact sufficient to confer standing, many of Plaintiffs claims face independent jurisdictional defects that require dismissal.

  *a.    The Court does not have jurisdiction to hear Plaintiffs' claims under the plain terms of the Magnuson-Moss Warranty Act*

Plaintiffs' MMWA claims fail because they do not satisfy the jurisdictional prerequisites necessary to invoke federal subject matter jurisdiction over a federal MMWA claim styled as a proposed class action.

The MMWA expressly provides that "[n]o claim shall be cognizable in a suit brought [in federal court] . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3). Here, Plaintiffs' attempt to bring a nationwide class action under the MMWA with only five named plaintiffs is directly contrary to this statutory language, regardless of Plaintiffs' jurisdictional assertions under the Class Action Fairness Act.

In *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034–35 (9th Cir. 2020), the Ninth Circuit addressed this issue, holding that "CAFA may not be used to evade or override the

MMWA's specific numerosity requirement," as the MMWA's "text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs." *Id.* at 1034–35. Namely, the Ninth Circuit reasoned that "[c]onstruing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA[,]" thus requiring a demonstration of Congress's clear and manifest intent to repeal or alter MMWA's jurisdictional requirements, which CAFA fails to exhibit. *Id.* at 1035; *see also Ebin v. Kangadis Food Inc.*, 2013 WL 3936193, at *1 (S.D.N.Y. 2013) (rejecting plaintiffs' contention that CAFA created an alternative basis for federal jurisdiction over their MMWA claims as "flatly contradicted by the plain text of the MMWA").

Two Courts in this District have recently adopted the Ninth Circuit's holding in *Floyd*. *See Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *19 (S.D. Fla. Aug. 18, 2021); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1207 (S.D. Fla. 2021). Theses cases are clear – the failure to include 100 named plaintiffs in this lawsuit deprives the Court of subject matter jurisdiction, which must result in dismissal of the MMWA cause of action.

> b.     *Plaintiffs do not have standing to assert Florida common law claims on behalf of the proposed Nationwide Class*

Plaintiffs have asserted claims for breach of express warranty, breach of implied warranty, intentional misrepresentation, and negligent misrepresentation pursuant to Florida law. Plaintiffs, however, are not Florida residents and lack standing to pursue relief on behalf of any out-of-state class members for common law claims on behalf of a nationwide class.

It is well established that "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000). The mere fact that a plaintiff has standing

to pursue claims against a defendant under the laws of the forum state does not thereby confer standing to pursue claims under the laws of other jurisdictions in which she seeks to represent absent class members.

Instead, "named plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that [from] which the plaintiff's own claim arises." *Feldman v. BRP US, Inc.*, 2018 WL 8300534, at *6 (S.D. Fla. Mar. 28, 2018); *see also In re Takata Airbag Prods. Liab. Litig.*, WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise."); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 267–68 (S.D. Fla. 2003) (finding that named plaintiffs, who were all Florida residents whose claims were governed by Florida law, lacked "standing to raise questions of state law for states other than Florida" and the court lacked "jurisdiction to evaluate the law of those other states"); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (requiring "that plaintiffs present named class representatives who possess individual standing to assert each state law's claims"); Carpenter, 441 F. Supp. 3d at 1038–41 (collecting cases).

Accordingly, "[w]here … a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1205 (S.D. Fla. 2021); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009). Simply put, there is no representative Plaintiff from the state of Florida in this lawsuit. As a result, all of the common law claims pursued on behalf of the nationwide class must be dismissed for lack of standing.

14

**SUMMARY JUDGMENT IS REQUIRED BECAUSE PLAINTIFFS' CAUSES OF ACTION AGAINST ASQUARED FAIL AS A MATTER OF LAW**

**I.     Standard of law**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56). The Court must view the record and all factual inferences in the light most favorable to the non-moving party and decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251–52).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Fed. R. Civ. P. 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Wendel v. Int'l Real Est.. News, LLC*, 2021 WL 193752, at *1-2 (S.D. Fla. Jan. 20, 2021) (quoting *Celotex Corp.*, 477 U.S. at 322. The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson*, 477 U.S. at 252.

## II.       Argument

### a.       *The Florida Deceptive and Unfair Trade Practices Act*

The aSquared Plaintiffs assert a cause of action against aSquared pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"). (Doc. 176, p. 67-68).

FDUPTA is a consumer protection statute proscribing "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive trade or commerce." Fla. Stat. § 501.204(1). It authorizes a private cause of action for actual damages by any "person" who has suffered a loss as a result of a violation of the statute. Fla. Stat. § 501.211(2). *Taft v. The Dade Cty. Bar Ass'n, Inc.*, 2015 WL 5771811, at *3 (S.D. Fla. Oct. 2, 2015)

To prevail on a FDUPTA claim, Plaintiffs must show (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015). "A deceptive act or practice is 'one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.*

Although nothing in in the plain language of FDUTPA limits its application to Florida residents, courts in this District have held that determined that non-Florida residents may be entitled to assert FDUTPA claims if the offending conduct took place in Florida. *Felice v. Invicta Watch Co. of Am., Inc.*, 2017 WL 3336715, at *3 (S.D. Fla. Aug. 4, 2017).

As the Court is aware, Plaintiff Cori Ann Ginsberg, the only named Plaintiff who was a Florida resident, was dismissed from the lawsuit. (Doc. 260). Notwithstanding, the aSquared Plaintiffs also assert a FDUTPA cause of action against aSquared. (Doc. 271, ¶¶ 130-138). The aSquared Plaintiffs, however, can avail themselves of FDUTPA only if they can demonstrate that aSquared engaged in deceptive conduct in Florida. It is not alleged that aSquared did not

manufacture the SAM-e in question. (Doc. 271). Plaintiffs themselves admit they purchased the SAM-e from aSquared on Amazon and had it shipped to their residences in states other than Florida. (Doc. 271, ¶¶ 8-13). There is no connection whatsoever between the aSquared Plaintiffs, aSquared, and the State of Florida.

Put differently, the record is devoid of any evidence to demonstrate that aSquared engaged in any deceptive act within the State of Florida. As Plaintiffs cannot demonstrate aSquared engaged in any allegedly deceptive conduct in the State of Florida, summary judgment on the FDUTPA claims is warranted.

Even if the aSquared Plaintiffs could assert a FDUTPA claim, their inability to prove a deceptive act or injury of any kind is also fatal. *Felice v. Invicta Watch Co. of Am., Inc.*, 2017 WL 3336715, at *2 (S.D. Fla. Aug. 4, 2017); *Dicuio v. Brother Int'l Corp.*, 2015 WL 3403144, at *31 (D.N.J. May 27, 2015), aff'd, 653 F. App'x 109 (3d Cir. 2016).

Plaintiffs cannot demonstrate that aSquared engaged in any deceptive act. Plaintiffs did not conduct any discovery with regard to aSquared. As a result, there is absolutely no evidence in the record to even suggest that: (1) aSquared knew any label of any SAM-e it sold was inaccurate; or that it (2) intended to misrepresent the contents of the SAM-e it sold to the aSquared Plaintiffs in order to induce them to purchase SAM-e.

Regardless, and as is articulated throughout this motion, Plaintiffs cannot demonstrate that they personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label. ASquared is entitled to summary judgment because the record demonstrates no genuine issue of material fact regarding the essential elements of actual injury.

b.     *The Arizona Consumer Fraud Act*

Plaintiff Kalyn Wolf ("Wolf"), a resident of Arizona, asserts a claim pursuant to the Arizona Consumer Fraud Act ("ACFA") against aSquared. As she cannot demonstrate that the SAM-e she individually purchased from aSquared was inaccurately labeled, she cannot demonstrate an injury.

"The elements of a private cause of action under the ACFA are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Naiman v. Alle Processing Corp.*, 2020 WL 6869412, at *5 (D. Ariz. Nov. 23, 2020) (quoting *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 666 P.2d 83, 87 (Ariz. Ct. App. 1983) (citing *Parks v. Macro–Dynamics*, 121 Ariz. 517, 591 P.2d 1005 (Ariz. Ct. App. 1979)).

The failure to demonstrate an injury is fatal for an ACFA claim. *Naiman v. Alle Processing Corp.*, 2020 WL 6869412, at *5 (D. Ariz. Nov. 23, 2020); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016). Here, Wolf cannot demonstrate damages because she cannot show she purchased SAM-e that did not meet label specifications. During her deposition, Wolf admitted she threw the SAM-e she bought out a few months after her purchase and never had it tested. Little Dec., Exhibit B, p. 23, ln. 20-25, p. 24, ln. 1-2. Wolf also made clear that the only basis she has to allege she purchased SAM-e that did not meet label specifications is based on what her attorney told her. Little Dec., Exhibit B, p. 25, ln. 9-23; p. 66, ln. 19-25; p. 67, ln. 1-5. Finally, Wolf agreed that testing the product she purchased was the only objective way to verify the veracity of her claims:

> Q: I can ask it again. Would you agree that the only objective way
> to verify that the SAM-e that you purchased actually had less active
> ingredient than what was on the label would be to test that product?
> A: Yes.

Little Dec., Exhibit B, p. 74, ln. 8-13.

Wolf cannot demonstrate that she personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label. As a result, ASquared is entitled to summary judgment because the record demonstrates no genuine issue of material fact regarding the essential element of injury.

      *c.*      *New York General Business Law §§ 349 and 350*

Plaintiff Shannon Hood ("Hood"), a resident of New York, asserts a claim New York General Business Law §§ 349 and 350 against aSquared.

GBL § 349 states "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). To establish a claim under GBL § 349, Plaintiffs must prove: (1) the challenged conduct was consumer-oriented; (2) it was misleading in a material way; and (3) the plaintiff suffered injury as a result. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 678 (S.D.N.Y. 2016).

GBL § 349 affords a private right of action to "any person who has been injured" by a violation of the section. GBL § 349(h). Accordingly, Plaintiffs must show aSquared "engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 274 (S.D.N.Y. 2014) (internal quotations omitted). Indeed, "the gravamen of [a GBL § 349 claim] must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).

"The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002*); see also Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9,

13 (1st Dept. 2002) (affirming dismissal of §§ 349 and 350 claims for lack of alleged injury).

Here, the record demonstrates that Plaintiffs cannot prove ASquared engaged in any materially deceptive act. Plaintiffs did not conduct any discovery with regard to aSquared. As a result, there is absolutely no evidence in the record to even suggest that: (1) aSquared knew any label of any SAM-e it sold was inaccurate; or that it (2) intended to misrepresent the contents of the SAM-e it sold to Hood in order to induce her to purchase SAM-e.

The failure to demonstrate injury is also fatal to GBL §§ 349 and 350 causes of action. *LVL XIII Brands, Inc.*, 209 F. Supp. 3d at 678. Hood testified that she did not have any of the SAM-e she purchased tested. Little Dec., Exhibit E, p. 58, ln. 21-24; p. 59, ln. 21-23; p. 64, ln. 15-18; p. 65, ln. 7-23. P. 67, ln. 17-19. Importantly, Hood made clear at her deposition that she had no way of knowing whether the SAM-e she purchased met, or did not meet, the labeled amount of active ingredient:

> Q: Okay. And so my question is: How do you know the SAM-e that you purchased was under that threshold?
> A: How do I know? Because I don't know if the individual pill that I consumer not exceeded or fell below whatever threshold would be acceptable. There's no way to tell. I opened the bottle and consumed the pills.

Little Dec., Exhibit E, p. 64, ln. 15-18.

Simply put, aSquared is entitled to summary judgment because the record demonstrates no genuine issue of material fact regarding the essential element of actual injury. Plaintiffs cannot demonstrate that they personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label.

#### d.     *The Texas Deceptive Trade Practice Act*

Plaintiff Robert McKeown ("McKeown"), a resident of Texas, asserts a cause of action against aSquared pursuant to the Texas Deceptive Trade Practices Act ("DTPA").

To state a claim under the DTPA, a plaintiff must show: "(1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant violated a specific provision of the DTPA; and (4) the defendant's violation is a producing cause of plaintiff's damages." *Houston v. DTN Operating Co., LLC*, 2017 WL 4653246, at *8 (E.D. Tex. Oct. 17, 2017).

First, McKeown has not identified a specific section of the DTPA that aSquared has violated, which he is required to do. *Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656, 669 (S.D. Tex. 2021); *SJ Auto Brokers, Inc. v. Union Ins. Co.*, 2019 WL 10369658, at *5 (W.D. Tex. July 24, 2019); *McMurray v. ProCollect, Inc.*, 2011 WL 13177710, at *4 (N.D. Tex. Feb. 24, 2011), aff'd, 687 F.3d 665 (5th Cir. 2012).

Regardless, McKeown cannot demonstrate that aSquared engaged in a false, misleading, or deceptive act under § 17.46(b) of the DTPA. As McKeown did not conduct any discovery with regard to aSquared, there is absolutely no evidence in the record to even suggest that: (1) aSquared knew any label of any SAM-e it sold was inaccurate; or that it (2) intended to misrepresent the contents of the SAM-e it sold to McKeown in order to induce him to purchase it. Additionally, McKeown cannot, through admissible evidence, demonstrate that he purchased SAM-e that did not meet label specifications.

Finally, aSquared is entitled to summary judgment because McKeown cannot prove damages. *See Willis v. Portfolio Recovery Assocs., LLC*, 2019 WL 2565243, at *2 (W.D. Tex. Mar. 8, 2019), *aff'd sub nom. Willis v. Portfolio Recovery Assocs., L.L.C.*, 803 F. App'x 761 (5th Cir. 2020). As stated previously, McKeown testified that he did not have the SAM-e he purchased from aSquared tested and that the entirety of his basis for believing he purchased SAM-e that did not meet label specifications was representations from his attorneys. Little Dec., Exhibit D., p. 52, ln. 14-17; p. 53, ln. 16-25; p. 54. Ln. 1-2; 6-10; 19-23.

As McKeown cannot demonstrate that he personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label, his DTPA claim fails.

e.    *Breach of express warranty*

The aSquared Plaintiffs assert a claim for breach of express warranty against aSquared pursuant to Florida law.

The elements of a claim for breach of express warranty under Florida law are: (1) a sale of goods, (2) an express warranty relating to those goods, (3) a breach of that express warranty, (4) notice to the seller of the alleged breach and (5) damages sustained by the buyer as a result of the breach of express warranty. *See Jovine v. Abbott Labs, Inc.*, 795 F.Supp.2d 1331, 1339-40 (S.D. Fla. 2011).

Florida law bars a buyer from remedy for breach of an express warranty when the plaintiff fails to notify the seller "within a reasonable time after he or she discovers or should have discovered any breach...." Fla. Stat. § 672.607(3)(a); *Jackmack v. Bos. Sci. Corp.*, 2021 WL 1020981, at *3 (M.D. Fla. Mar. 17, 2021). The statutory provision requires that the buyer, rather than the FDA or any other agency, provide notice to the seller. Fla. Stat. § 672.607(3)(a); *see Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313 (S.D. Fla. 2020) (rejecting plaintiff's argument that pre-suit notice was satisfied by repeated notice by other consumers and industry professionals but not plaintiff).

Here, there is no evidence that the aSquared Plaintiffs notified aSquared within a reasonable time after they discovered the alleged breach. Indeed, none of the aSquared Plaintiffs testified that they ever had any communication with aSquared other than their purchases of SAM-e. *See generally* Little Dec., Exhibits B-F. Simply put, because the aSquared Plaintiffs did not comply with the notice requirement, which is a condition precedent to bring a breach of express

warranty claim under Florida law, summary judgment dismissing this claim is required.

Additionally, the aSquared Plaintiffs have never identified the specific language that their breach of express warranty claim is based on in the first instance, which they are required to do. *Stein v. Marquis Yachts, LLC*, 2015 WL 1288146, at *6 (S.D. Fla. Mar. 20, 2015); *Yost v. Stryker Corp.*, 2010 WL 1141586, at *4 (M.D. Fla. Mar. 23, 2010). The aSquared Plaintiffs have stated nothing other than the SAM-e that they purchased did not include as much SAM-e as was listed on the label. As demonstrated by the aSquared Plaintiff's testimony, however, they do not have any basis to believe the SAM-e they purchased did not meet label specifications. *City of St. Petersburg v. Total Containment, Inc.*, 2008 WL 11403203, at *14 (S.D. Fla. Oct. 9, 2008).

Regardless, the aSquared Plaintiffs cannot demonstrate there was a breach of any express warranty, to the extent one exists, or damages. The aSquared Plaintiff's cannot show that they personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label. As a result, ASquared is entitled to summary judgment because the record demonstrates no genuine issue of material fact regarding the essential elements of breach.

     *f.*    *Breach of implied warranty*

The aSquared Plaintiffs assert a claim for breach of implied warranty against aSquared pursuant to Florida law.

Although not specified in the Third Amended Complaint, the aSquared Plaintiffs appear to be attempting to pursue a cause of action for breach of implied warranty of merchantability. A warranty that "goods shall be merchantable" or "fit for the ordinary purposes for which such goods are used" is implied in any contract for the sale of goods if the seller is a merchant with respect to goods of that kind. Fla. Stat. § 672.314.

A cause of action for breach of implied warranty of merchantability requires allegations that (1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3) the product was defective when transferred from the warrantor, and (4) the defect caused the injury. *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011).

Here, the aSquared Plaintiffs cannot demonstrate there was a breach of any implied warranty, to the extent one exists, or damages. The aSquared Plaintiff's cannot show that they personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label. As a result, aSquared is entitled to summary judgment because the record demonstrates no genuine issue of material fact regarding the essential elements of a defect or damages.

g.      *The Magnusson-Moss Warranty Act*

Assuming Plaintiffs can evade the jurisdictional defect articulated in Section III(a) *supra*, their MMWA claims are subject to summary judgment on the merits.

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief (A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1)(A)–(B).

The MMWA provides certain requirements and remedies to augment state law warranty claims, but the MMWA does not independently provide relief in the absence of an actionable state law breach of warranty. *See Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017) ("[A] Magnuson–Moss Warranty Act claim only exists if a valid breach of warranty claim

is also stated."); *Bailey v. Monaco Coach Corp.*, 168 Fed.Appx. 893, 894 n.1 (11th Cir. 2006) ("While the MMWA, (15 U.S.C. § 2301(7)), gives consumers a private right of action against warrantors for breach of implied warranty, implied warranty claims under the MMWA arise out of and are defined by state law."). Put differently, if Plaintiffs common law warranty causes of action fail, so to does the MMWA claim.

As detailed above, the aSquared Plaintiffs' Florida common law warranty claims are subject to summary judgment. As a result, so too is their MMWA claim.

> h.   *Intentional misrepresentation*

The aSquared Plaintiffs assert a cause of action against aSquared for intentional misrepresentation under Florida law.

The elements of an intentional misrepresentation claim in Florida are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 700215, at *3 (M.D. Fla. Feb. 22, 2017) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

The record demonstrates that the aSquared Plaintiffs cannot prove any of the elements of this claim. First, the aSquared Plaintiffs cannot demonstrate that they personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label. As a result, they cannot demonstrate they were subject to a false statement concerning a material fact. Second, because the aSquared Plaintiff's did not conduct any discovery with regard to aSquared, such as taking its deposition, there is absolutely no evidence in the record to even suggest that: (1) aSquared knew any label of any SAM-e it sold were incorrect; and (2) intended to misrepresent the contents of the SAM-e it sold in order to induce consumers to purchase it. Finally, the aSquared

Plaintiffs cannot demonstrate an injury because they cannot prove that thy personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label.

As a result, summary judgment is warranted.

    *i.        Negligent misrepresentation*

The aSquared Plaintiffs assert a cause of action against aSquared for intentional misrepresentation under Florida law.

To establish negligent misrepresentation, a party is required to prove: (1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury. *See Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505–06 (Fla. Dist. Ct. App. 2017); *Specialty Marine & Industrial Supplies, Inc. v. Venus*, 66 So.3d 306, 309 (Fla. 1st DCA 2011).

Again, the record demonstrates that the aSquared Plaintiffs cannot prove any of the elements of this claim. First, the aSquared Plaintiffs cannot demonstrate that they personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label. As a result, they cannot demonstrate they were subject to a false misrepresentation of a material fact. Second, because the aSquared Plaintiff's did not conduct any discovery with regard to aSquared, there is absolutely no evidence in the record to even suggest that: (1) aSquared knew any label of any SAM-e it sold were incorrect; and (2) intended to misrepresent the contents of the SAM-e it sold in order to induce consumers to purchase it. Finally, the aSquared Plaintiffs cannot demonstrate an injury because they cannot prove that thy personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label.

As a result, summary judgment is warranted.

> j.    *Punitive damages against aSquared*

In the Third Amended Complaint, Plaintiffs collectively seek punitive damages from Defendants. The aSquared Plaintiffs simply cannot demonstrate the evil intent required under any applicable law to recover punitive damages against aSquared.

The New York Court of Appeals has stated that "[a]mong the remedies available to private plaintiffs under GBL § 349 are compensatory damages, limited punitive damages and attorneys' fees." *Karlin v. IVF America, Inc.*, 93 N.Y.2d 782 (1999); *Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349, at *9 (S.D.N.Y. Mar. 30, 2018). Generally, an "award of punitive damages is warranted where the conduct of the party being held liable evidences a high degree of moral culpability, or where the conduct is so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence or recklessness." *Pellegrini v Richmond Cnty. Ambulance Serv., Inc.*, 851 N.Y.S.2d 268, 269 (2d Dept. 2008)

Although punitive damages are available under the ACFA, to recover, a plaintiff must prove by clear and convincing evidence that a defendant engaged in aggravated and outrageous conduct with an 'evil mind.'" *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 132 (Ariz. Ct. App. 1995) (quoting *Thompson v. Better–Bilt Aluminum Prod. Co.*, 171 Ariz. 550 (Ariz. 1992)). "A defendant acts with the requisite evil mind when he intends to injure or defraud, or deliberately interferes with the rights of others, 'consciously disregarding the unjustifiable substantial risk of significant harm to them.'" *Id.*

Punitive damages pursuant to the DTPA are, in reality, treble damages. Tex. Bus. & Com. Code § 17.50. Indeed, the DTPA permits an award of treble damages only for intentional conduct.

*Procare Auto., LLC v. MidAmerican Energy Servs., LLC*, 2021 WL 5822832, at \*2 (W.D. Tex. Dec. 7, 2021).

Finally, pursuant to Florida law, a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. Fla. Stat. § 768.72.

Under any of the above standards, the aSquared Plaintiffs' claim for punitive damages is subject to summary judgment. Similar to the arguments articulated above, the aSquared Plaintiffs cannot demonstrate that they personally purchased SAM-e from aSquared with less active ingredient than the amount stated on the label. As the aSquared Plaintiff's did not conduct any discovery with regard to aSquared, there is absolutely no evidence in the record to even suggest that: (1) aSquared knew any label of any SAM-e it sold were incorrect; and (2) intended to misrepresent the contents of the SAM-e it sold in order to induce consumers to purchase it.

As a result, there is no evidence in the record to support the claim that aSquared took any action with intent, which is required for punitive damages.

## CONCLUSION

Plaintiffs cannot demonstrate an injury in fact sufficient to confer Article III standing. Additionally, Plaintiff's MMWA and common law causes of action on behalf of the nationwide class must be dismissed for lack of subject matter jurisdiction.

Even if the Court determines Plaintiffs do have standing and the Court does have subject matter jurisdiction, the record demonstrates that summary judgment is required, and the Third Amended Complaint must be dismissed.

Dated: February 8, 2022

LIPPES MATHIAS LLP

/s Alessandro A. Apolito
Alessandro A. Apolito, Esq.
Florida Bar Number: 0084864
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256
P: 904-660-0020
F: 904-660-0029
Primary E-Mail:  aaapolito@lippes.com

Brendan H. Little, Esq., *pro hac vice*
Sean M. O'Brien, Esq., *pro hac vice*
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com