# EXHIBIT F

Page 1

1

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF FLORIDA
3    -----------------------------------------X
     CORI ANN GINSBERG, NOAH MALGERI, KALYN
4    WOLF, BILL WILSON, SHANNON HOOD, ERIC
     FISHON, ROBERT McKEOWN, on behalf of
5    themselves and all others similarly
     situated,

6
                              PLAINTIFFS,
7

8        -against-        Case No.:
9                         1:19-cv-22702-KMQ
10

     VITAMINS BECAUSE, LLC, CT HEALTH SOLUTIONS,
11   LLC, GMAX CENTRAL, LLC, ASQUARED BRANDS,
     LLC, INSPIRE NOW PTY, LTD d/b/a BOOST
12   CEUTICALS, HEALTHY WAY RX, LLC, KHAKIWARE,
     INC, JOLLY DOLLAR SUPPLY CO, LLC,

13
                              DEFENDANTS.
14   -----------------------------------------X
15

16               DATE: December 22, 2021
17               TIME: 12:38 P.M.
18

19        REMOTE DEPOSITION of the
20   Plaintiff, NOAH MALGERI, taken by the
21   respective parties, pursuant to a Court
22   Order and to the Federal Rules of Civil
23   Procedure, held at the above date and time,
24   before Karen R. Aniboli, a Notary Public of
25   the State of New York.

Page 2

1
2 A P P E A R A N C E S :
3
4 KANTROWITZ GOLDHAMER GRAIFMAN, PC
   Attorneys for the Plaintiffs
5 CORI ANN GINSBERG, NOAH MALGERI, KALYN
   WOLF, BILL WILSON, SHANNON HOOD, ERIC
6 FISHON, ROBERT McKEOWN, on behalf of
   themselves and all others similarly
7 situated
   135 Chestnut Ridge Road
8 Montvale, New York 07645
   BY: JAY BRODY, ESQ
9
10
   JOHNSON DABOLL ANDERSON, PLLC
11 Attorneys for the Defendants
   VITAMINS BECAUSE, LLC,
12 CT HEALTH SOLUTIONS, LLC
   2011 West Cleveland Street, Suite F
13 Tampa, Florida 33606
   BY: SCOTT ANDERSON, ESQ
14
15
   LIPPES MATHIAS, LLP
16 Attorneys for the Defendant
   ASQUARED BRANDS, LLC
17 50 Fountain Plaza, Suite 1700
   Buffalo, New York 14202
18 BY: SEAN M  O'BRIEN, ESQ
19
20
21        *    *    *
22
23
24
25

Page 3

1
2 F E D E R A L  S T I P U L A T I O N S
3
4
5  IT IS HEREBY STIPULATED AND AGREED by and
6 between the counsel for the respective
7 parties herein that the sealing, filing and
8 certification of the within deposition be
9 waived; that the original of the deposition
10 may be signed and sworn to by the witness
11 before anyone authorized to administer an
12 oath, with the same effect as if signed
13 before a Judge of the Court; that an
14 unsigned copy of the deposition may be used
15 with the same force and effect as if signed
16 by the witness, 30 days after service of
17 the original & 1 copy of same upon counsel
18 for the witness.
19
20  IT IS FURTHER STIPULATED AND AGREED that
21 all objections except as to form, are
22 reserved to the time of trial.
23
24        *    *    *    *
25

Page 4

1          N. MALGERI
2 N O A H   M A L G E R I, called as a
3 witness, having been first duly sworn by a
4 Notary Public of the State of New York, was
5 examined and testified as follows:
6 EXAMINATION BY
7 MR. ANDERSON:
8    Q.   Please, state your full name
9 for the record, sir.
10    A.   Noah Malgeri.
11    Q.   Hello, Mr. Malgeri, I'm Scott
12 Anderson.  I'm a lawyer with the law firm
13 of called Johnson, Daboll, Anderson in
14 Tampa, Florida.  I represent Vitamins
15 Because and CT Health Solutions in a
16 lawsuit that you filed against them related
17 to the use of the supplement SAM-e.
18        I'm here to ask you some
19 questions related to that lawsuit.  Do you
20 understand that's what we're doing here
21 today?
22    A.   Yes.
23        Who did you say your client
24 again was, Counsel?
25    Q.   Vitamins Because and CT Health

Page 5

1          N. MALGERI
2 Solutions.
3    A.   Are your clients a party to the
4 suit?
5    Q.   Excuse me?
6    A.   Are your clients a party to the
7 suit?
8    Q.   You know, unfortunately, today
9 is the day I get to ask you questions.
10    A.   You just asked me if I have any
11 questions, so I'm asking you a question.
12    Q.   I asked you if you understand
13 that's why you are here today.
14    A.   Okay.
15    Q.   Let me ask you this.  You don't
16 know whether my clients are parties to this
17 lawsuit?
18    A.   It sounds like you don't.
19    Q.   Do you know whether Vitamins
20 Because and CT Health Solutions are a party
21 to this lawsuit?
22    A.   I thought I did, but it sounds
23 like you don't, which is concerning.
24    Q.   Do you or do you not know
25 whether Vitamins Because and CT Health

2 (Pages 2 - 5)

N. MALGERI

1
2 Solutions are parties to this lawsuit?
3     A.   I'm sorry?
4     Q.   Do you know whether Vitamins
5 Because is a party to this lawsuit?
6     A.   I thought I did, yes.
7     Q.   What is your understanding of
8 their role in the lawsuit?
9     A.   That's not the Defendant I
10 sued.
11     Q.   Are you aware of whether or not
12 CT Health Solutions is a party to the
13 lawsuit?
14     A.   Well, I'm not aware if they are
15 a party to a lawsuit, but that's not a
16 vendor from which I purchased the product.
17     Q.   Have you sued CT Health
18 Solutions?
19     A.   No.
20     Q.   What is your understanding of
21 your role in this lawsuit, Mr. Malgeri?
22     A.   I'm seeking compensation for --
23 for harm suffered from a product that I
24 bought that was mislabeled.
25     Q.   How did you become a part of

N. MALGERI

1
2 this lawsuit?
3     A.   I filed, filed a complaint.
4     Q.   Before you filed a complaint,
5 did you hire a lawyer?
6     A.   Yes.
7     Q.   And how did you get in touch
8 with your lawyer?
9          MR. BRODY:  Objection to form.
10     Just caution the witness not to
11     reveal any attorney client
12     communications.
13     A.   By telephone.
14     Q.   Did he call you or did you call
15 him?
16          MR. BRODY:  Same objection.
17     Same warning to the witness not to
18     reveal any attorney client
19     communications.
20     A.   I don't completely recall.  It
21 was a few years ago.
22     Q.   You don't remember whether he
23 called you or you called him, is that
24 correct?
25     A.   I can't say for sure.

N. MALGERI

1
2     Q.   When did you enter into a
3 representation agreement with your current
4 Counsel?
5          MR. BRODY:  Objection to form.
6     A.   I don't remember the exact
7 date.
8     Q.   Do you remember what year?
9     A.   I mean, it was prior to COVID.
10 I don't remember the year.  I'd have to
11 guess.
12     Q.   So although you can't remember
13 whether Mr. Brody called you or you called
14 him, do you recall how you became aware of
15 Mr. Brody and/or his firm?
16          MR. BRODY:  Same objection to
17     form.  Again, I warn the witness not
18     to reveal any attorney client
19     communications.
20     A.   I don't know exactly how I
21 became aware of him at this point.
22     Q.   Do you know the name of their
23 firm?
24     A.   Well, I just know the name of
25 the Counsel I work with or Jay and another

N. MALGERI

1
2 gentleman.
3     Q.   Who is the other gentleman?
4     A.   It's a gentleman named Gary.
5     Q.   You had mentioned --
6          (Technical difficulties)
7     Q.   You'd mentioned you're seeking
8 compensation due to a product being
9 mislabeled, is that correct?
10     A.   Correct.
11     Q.   What product are we talking
12 about?
13     A.   A health supplement.
14     Q.   What is it called?
15     A.   SAM-e.
16     Q.   What are your allegations with
17 regard to how it was mislabeled?
18          MR. BRODY:  Objection to form.
19     A.   It indicates --
20          THE WITNESS:  Excuse me?
21          MR. BRODY:  Go ahead.  You can
22     answer.
23     A.   It indicated a certain potency
24 on the label that was not true.  In other
25 words, the product I was buying was SAM-e,

```
1            N. MALGERI
2  which is a health supplement, and a certain
3  quantity of that according to the marketing
4  material and advertising in the labelling
5  of the product, upon which I relied upon
6  when I was purchasing it, but it did not
7  contain that.
8     Q.   And how do you know that?
9        MR. BRODY:  Objection to form.
10     Calls for expert testimony.
11     A.   Well, I suspected it initially
12  when I took it, because it didn't work.
13  But then that was confirmed through
14  analysis.
15     Q.   What analysis was it confirmed
16  through?
17     A.   Chemical analysis of the
18  product.
19     Q.   Who performed that analysis?
20     A.   An expert scientist.  I don't
21  know his name.
22     Q.   Did that expert scientist that
23  we don't know the name of test your
24  specific product that you purchased?
25     A.   Well, I don't know if you know
```

```
1            N. MALGERI
2  the name, but I don't.
3     Q.   Did he test your product that
4  you purchased from Amazon?
5     A.   He tested, he tested the
6  product that was being sold by Amazon that
7  I purchased.
8     Q.   Okay.
9     A.   Is that your question?
10     Q.   Maybe.  It was not a very good
11  question.  Sorry about that.  And we'll get
12  into the details later.  We got
13  sidetracked.  Let me go over the rules of
14  the deposition first.
15        Have you ever had your
16  deposition taken before?
17     A.   No.
18     Q.   Via Zoom it's a little
19  difficult, but I'll try to do my very best
20  to let you answer the question before I ask
21  the next one.  And I ask that you try your
22  very best to let me finish asking the
23  question before you answer.  Is that okay?
24     A.   Yes.
25     Q.   Great.  If at any time you need
```

```
1            N. MALGERI
2  a break you just let me know, okay?
3     A.   Okay.
4     Q.   What is your current address,
5  are you at ████████████████?
6     A.   Yes.
7     Q.   How long have you lived there,
8  Mr. Malgeri?
9     A.   We've lived there for a couple
10  of months.
11     Q.   Who do you live there with?
12     A.   I live there with my wife.
13     Q.   And what is her name, sir?
14     A.   Rachel.
15     Q.   How long have you and Rachel
16  been married?
17     A.   A year.
18     Q.   Where did you live prior to the
19  15th Street address, sir?
20     A.   In Henderson, Nevada.
21     Q.   What was that address?
22     A.   It was ████  Winding Hill
23  Street.
24     Q.   And how long did you live at
25  ████  in Henderson?
```

```
1            N. MALGERI
2     A.   A year.
3     Q.   Where did you live before that?
4     A.   I lived in north, the northern
5  part of Las Vegas.
6     Q.   What was the address there?
7     A.   I don't remember.
8     Q.   How long did you live up there
9  in the northern part of Las Vegas?
10     A.   Two years.
11     Q.   That sounds like we're back
12  into 2018, does that sound about right?
13     A.   Yeah.
14     Q.   Where did you live before that
15  house in northern Las Vegas?
16     A.   Another, another home in
17  northern Las Vegas that I still own.
18     Q.   What is the address there?
19     A.   ████████████████.
20     Q.   Wolf Dancer?
21     A.   Yes.
22     Q.   Do you keep that as a rental
23  property?
24     A.   Yes.
25     Q.   How long have you owned that
```

4 (Pages 10 - 13)

Page 14

N. MALGERI

1
2 property?
3    A.   Since -- maybe 2016 or so.
4 2017, 2016.
5    Q.   Did you ever live at █████
███████████?
7    A.   Yes.
8    Q.   When did you live there?
9    A.   Before the house at Wolf
10 Dancer.
11    Q.   Is that the one we couldn't
12 recall the address for up in northern Las
13 Vegas or is that a different house?
14    A.   That is a different one.
15    Q.   How long did you live at ████
16    A.   A year.
17    Q.   Anyone live there with you?
18    A.   My wife and my two boys.
19    Q.   What was your wife's name?
20    A.   Doran.
21    Q.   D-O-R --
22    A.   D-O-R-A-N.
23    Q.   What are your two boys' names?
24    A.   Gabrian and Giacomo (phonetic).
25    Q.   Those are very cool names.

Page 15

N. MALGERI

1
2    A.   Yes.  But it has nothing to do
3 with this.
4    Q.   Did you ever live at 725 East
5 Charleston Boulevard?
6    A.   No.
7    Q.   Does that address ring a bell
8 to you?
9    A.   Yes.
10    Q.   What is that?
11    A.   What city?
12    Q.   Las Vegas?
13    A.   Yes.  That's the Legal Aid
14 Center of the Southern Nevada office.
15    Q.   Do you work there?
16    A.   No.
17    Q.   Do your wife or children work
18 there?
19    A.   No.
20    Q.   Have you ever worked there?
21    A.   Yes.
22    Q.   When is the last time that you
23 worked there?
24    A.   Little over a year ago.
25    Q.   What did you do there?

Page 16

N. MALGERI

1
2    A.   I was a director.
3    Q.   Are you a lawyer?
4    A.   Yes.
5    Q.   Where did you go to law school?
6    A.   George Washington University,
7 and the University of Heidelberg in
8 Germany.  I got a --
9    Q.   I'm sorry.  I cut you off.
10 Could you repeat that?
11    A.   Yeah.  I went to two law
12 schools.  I got a JD from George Washington
13 University in DC, and a LLM from the
14 University of Heidelberg in Germany.
15    Q.   When did you graduate from
16 George Washington?
17    A.   2000.
18    Q.   Where did you go work after you
19 graduated in 2000?
20    A.   US Army.
21    Q.   How long were you in the army,
22 sir?
23    A.   Five and a half years.
24    Q.   Did you practice law in the
25 army?

Page 17

N. MALGERI

1
2    A.   Yes.
3    Q.   What did you do?
4    A.   I was a JAG officer.
5    Q.   Did you try any cases as a JAG
6 officer?
7    A.   Yes.
8    Q.   About how many?
9    A.   I don't know.  Maybe four or
10 five.
11    Q.   What did you do when you left
12 the army, sir?
13    A.   Got an LLM.
14    Q.   And that was in Germany?
15    A.   Yes.
16    Q.   What did you do after you
17 received your LLM?
18    A.   Practiced law.
19    Q.   Great.  Where?
20    A.   In Reston, Virginia.
21    Q.   What type of law did you
22 practice in Reston, Virginia?
23    A.   Reston, it's the greater
24 Washington, DC area.
25    Q.   Sorry.  What did you do in

5 (Pages 14 - 17)

N. MALGERI

1   N. MALGERI
2  Reston?  What kind of law did you practice?
3      A.   Patent law.
4      Q.   Were you on your own or were
5  you with a firm?
6      A.   A firm.
7      Q.   What was the name of the firm?
8      A.   Cooley.
9      Q.   Great.  How long did you work
10  there at Cooley?
11     A.   Three years.
12     Q.   Were you an associate?
13     A.   Yes.
14     Q.   Where did you practice after
15  Cooley?
16     A.   Fish & Richardson.
17     Q.   How long were you with them?
18     A.   18 months.
19     Q.   Were you an associate there?
20     A.   Yes.
21     Q.   Where did you go then?
22     A.   Pepper Hamilton.
23     Q.   Pepper Hamilton, DC?
24     A.   Boston.
25     Q.   How long were you with Pepper

N. MALGERI

1   N. MALGERI
2  Hamilton in Boston?
3      A.   Five years total, but the last
4  18 months or so I was in Irvine.
5      Q.   Were you an associate at Pepper
6  Hamilton?
7      A.   Yes.
8      Q.   At any point with Pepper
9  Hamilton, did you become a partner?
10     A.   No.
11     Q.   Still practicing IP law at that
12  point?
13     A.   Yes.
14     Q.   Where did you go after Pepper
15  Hamilton, sir?
16     A.   Legal Aid Center.
17     Q.   Legal Aid Center there in
18  Nevada?
19     A.   Yes.
20     Q.   Why did you decide to go from
21  Pepper Hamilton to the Legal Aid Center?
22     A.   Spend more time with my kids.
23     Q.   I left a big firm to do the
24  same thing.  I get it.
25         All right.  So what kind of

N. MALGERI

1   N. MALGERI
2  work do you do there or did you do there at
3  the Legal Aid Center.
4         (Technical difficulties)
5         MR. ANDERSON:  Read back the
6      last question.
7         (Whereupon, the referred to
8      testimony was read back by the
9      Reporter.)
10     A.   I was a director of the pro
11  bono projects.
12     Q.   Was there a particular type of
13  case that you were in charge of, did it
14  span among a number of types of law?
15  Describe what you did.
16         MR. BRODY:  Objection to form.
17     A.   Well, I was a -- directing
18  attorney for -- volunteer attorney, pro
19  bono projects, working in various areas of
20  civil law including domestic violence,
21  human trafficking, sex trafficking, custody
22  cases for children and in foster care,
23  civil consumer matters, title loans, payday
24  loans, landlord tenant, immigration,
25  asylum, social security cases, federal

N. MALGERI

1   N. MALGERI
2  civil rights cases, 1983 cases.
3      Q.   As -- I'm sorry I didn't mean
4  to interrupt you.
5      A.   Other forms of civil cases.
6  Helping members of the community who are
7  unable to afford an attorney get volunteer
8  attorneys to help them on a pro bono basis.
9      Q.   In your role as director, were
10  you providing the legal services or were
11  you coordinating attorneys to help the
12  folks that needed help?
13     A.   I was coordinating.
14     Q.   During the time that you were,
15  worked at the Legal Aid Center, did you try
16  any cases?
17     A.   No.
18     Q.   Did you handle any cases as an
19  attorney?
20     A.   No.  I was not Counsel of
21  record in any case.
22     Q.   You had said that your center
23  provided some Counsel for civil consumer
24  matters, what type of civil consumer
25  matters did you guys help out with?

Page 22

N. MALGERI

1
2    A.    Auto repair cases, auto loans,
3 landlord tenant, residential, payday loans,
4 title loans, consumer fraud and various
5 kinds or forms that, that basically exist.
6    Q.    Prior to hiring Mr. Brody's law
7 firm, have you ever met Mr. Brody before?
8    A.    No.
9    Q.    Had you ever worked, ever met
10 anyone that works at Mr. Brody's law firm
11 prior to retaining him in this case?
12    A.    Not that I recall, though, I
13 suppose it's a possibility.
14    Q.    You stopped working there as
15 director about a year ago, what do you do
16 now for employment?
17    A.    A number of things.  I have a
18 start-up company that I founded.  I have --
19 mostly work as a consultant and I have a
20 start-up company.
21    Q.    All right.  What is the
22 start-up company called?
23    A.    Mojave Rail Fabrication.
24    Q.    What do you spell that?
25    A.    M-O-J-A-V-E. I am founder of a

Page 23

N. MALGERI

1
2 technology company around an invention.  So
3 -- I developed a technology and build
4 prototypes.
5    Q.    What type of technology?
6    A.    It's a mechanical consumer
7 recreational product technology.
8    Q.    What type of product?
9    A.    It's a vehicle roof rack.
10    Q.    Well, how long have you been
11 working on your start-up?
12    A.    Several years.  Probably three
13 years.
14    Q.    You mentioned you also work as
15 a consultant, what do you consult?
16    A.    Mostly grant applications.
17    Q.    Particularly is there a
18 particular type of industry?  Is there a
19 particular type of grant?
20    A.    Outdoor recreational, outdoor
21 recreational events.
22    Q.    Are you still licensed to
23 practice law?
24    A.    Yes.
25    Q.    Do you practice law currently?

Page 24

N. MALGERI

1
2    A.    No.
3    Q.    Do you have an understanding of
4 what your role in this particular lawsuit
5 is?
6    A.    Yes.  I'm the Plaintiff suing
7 the manufacturer of the product that I
8 mentioned earlier in the deposition.
9    Q.    Are you doing that in your
10 individual capacity?
11    A.    Yes.  But I'm also the class
12 rep.
13    Q.    What does that mean to you?
14    A.    It means I'm the voice of the
15 group of claimants in terms of articulating
16 our position and representing the class
17 before the court as the party.
18    Q.    Are you aware of whether there
19 was a mediation in this case?
20    A.    Well, we sued another party at
21 one point.
22    Q.    You never attended a mediation
23 in this case, correct?
24    A.    I have not attended a
25 mediation.

Page 25

N. MALGERI

1
2    Q.    Are you aware of whether there
3 is or has been a mediation?
4    A.    As I mentioned, we had sued
5 another party.  Are you talking about what
6 are the current Defendants or just
7 generally during the course of this
8 litigation?
9    Q.    You're a lawyer, you know what
10 mediation is, right?
11    A.    I do.
12    Q.    Have you been to one in this
13 case?
14    A.    No.
15    Q.    Are you aware of one occurring
16 in this case?
17    A.    I am not a hundred percent
18 sure.
19    Q.    Is the other party that you are
20 discussion We Like Vitamins?
21    A.    Yes.
22    Q.    What is your understanding of
23 their current status or in this lawsuit?
24    A.    Well, we settled with them.
25    Q.    Did you receive any

7 (Pages 22 - 25)

N. MALGERI

1
2 compensation as part of that settlement?
3       MR. BRODY:  No.  Objection to
4   form.  And I caution the witness not
5   to reveal any confidential settlement
6   information.  Yes, I'm advising the
7   witness not to answer that question
8   without a Court Order.  Obviously if
9   the Defendants seek a Court Order on
10   the matter we'll obviously comply.
11       MR. ANDERSON:  Just let me make
12   sure I have it straight.  You are
13   instructing him not to answer whether
14   he received compensation in this
15   lawsuit that we're sitting here today
16   in, is that correct?
17       MR. BRODY:  I am instructing
18   him not to reveal any confidential
19   information which was deemed and
20   considered by all parties of that
21   settlement to be confidential as part
22   of that settlement.  But that's what
23   I'm instructing him.  He can answer
24   the question otherwise.
25   Q.   Did you receive any

N. MALGERI

1
2 compensation as part of the settlement, Mr.
3 Malgeri?
4   A.   Based on my Counsel's
5 instruction, I probably can't answer.
6   Q.   Aside from -- you can't or you
7 won't?
8   A.   I'm not going to.
9   Q.   Did you sign a settlement
10 agreement?
11   A.   Yes.
12   Q.   Who are the parties to that
13 settlement agreement?
14   A.   Well -- it was We Like
15 Vitamins.
16   Q.   Was there any other party to
17 the settlement agreement?
18   A.   I signed on my own capacity as
19 myself as a party.
20   Q.   Have you ever spoken to any of
21 the other Plaintiffs in this case?
22   A.   Not that I'm aware of.
23   Q.   Aside from the settlement with
24 We Like Vitamins, are you aware of there
25 being any other offers made by any

N. MALGERI

1
2 Defendant to resolve this lawsuit?
3       MR. BRODY:  Objection to form.
4   Caution the witness not to reveal any
5   attorney client communication.  You
6   can answer as to whether you are or
7   not aware of any such offers.
8   A.   Any other -- Scott, are you
9 saying with other parties?
10   Q.   Yes, sir.
11   A.   Not that I can think of.
12   Q.   Have you ever been a party to
13 any other lawsuits?
14   A.   Well, my divorce.
15   Q.   Other than your divorce.  I'm
16 sorry.
17   A.   I think that's the only one.
18   Q.   You've never been a class
19 representative before?
20   A.   No.
21   Q.   So we're here today to talk
22 about the supplement SAM-e, right, and what
23 is your understanding of what SAM-e is?
24       MR. BRODY:  Objection to the
25   form.  You can answer.

N. MALGERI

1
2   A.   Oh, Scott, I did sue a
3 consultant on a contract matter, I just
4 remembered.
5   Q.   Was that for like an unpaid fee
6 or something like that?
7   A.   Yes.
8   Q.   When was that?
9   A.   That was just like two weeks
10 ago.
11   Q.   Is it still going?
12   A.   Yes.  It's brand new.  They
13 haven't even answered it.
14   Q.   Is that pending in Vegas?
15   A.   Yes.  It's like a $3,000
16 matter.
17   Q.   What is your understanding of
18 what SAM-e is?
19   A.   SAM-e, it's a, it's a
20 supplement like a vitamin kind of -- I
21 don't know scientifically,
22 pharmacologically, medically what -- I
23 couldn't tell you, you know, chemically
24 what it is.  It's a supplement that is a
25 popular supplement.

8 (Pages 26 - 29)

Page 30

N. MALGERI

1
2   Q.   Why did you decide to start
3   taking SAM-e?
4        MR. BRODY:  Objection to form.
5   A.   I wanted to try it because it
6   claimed benefits that seemed appealing.
7   Q.   What claimed benefits seemed
8   appealing to you?
9   A.   Mostly mood related.  To make
10  you have to, to make you feel in a more
11  positive mood.  Energy.
12  Q.   When did you first start taking
13  SAM-e?
14  A.   Well, I probably -- I don't
15  know exactly, but I first, I first took it
16  sometime between 5 and 10 years ago, I
17  would guess.
18  Q.   Have you taken it continuously
19  for the last 5 or 10 years?
20  A.   No.
21  Q.   I will tell you in this lawsuit
22  I've been given purchase records, purported
23  purchase records that span from about
24  March 16th of 2017 through -- that's not
25  true, September of 2016, excuse me, through

Page 31

N. MALGERI

1
2   April of 2018, and then one order placed in
3   June of 2021, did you take SAM-e
4   consistently from 2016 through 2018?
5        MR. BRODY:  Objection to the
6    form.
7   A.   I don't believe so.
8   Q.   How many bottles of SAM-e do
9   you think you purchased in your lifetime?
10  A.   Probably between 10 and 50, but
11  it does not always come in bottles.
12  Q.   How else have you received it?
13  A.   Sometimes it comes in blister
14  packs.  The blister pack ones are usually
15  better.
16  Q.   Why in your opinion are the
17  blister pack ones usually better?
18  A.   It just seems like the more
19  reputable vendors sell it that way, but I
20  don't know why.
21  Q.   In your opinion, who are the
22  more reputable vendors that sell SAM-e?
23  A.   Like, like Jarrow, J-A-R-R-O-W,
24  that's one.
25  Q.   Any others that you can recall?

Page 32

N. MALGERI

1
2   A.   No.
3   Q.   Do you recall purchasing SAM-e
4   from an outfit called NOW Foods?
5   A.   I don't recall.
6   Q.   Do you recall purchasing SAM-e
7   from a company called Doctor's Best?
8   A.   Not with certainty, but I am
9   familiar with both of those brands, and
10  have purchased other supplements at least
11  some supplements from those brands.
12  Q.   Do you know when you purchased
13  SAM-e that's the subject of this lawsuit?
14  A.   I think it was in 2017.  I
15  think it was in like December 2017, if I'm
16  not mistaken.
17  Q.   Now, by that time in December
18  of 2017 you'd been using SAM-e for a number
19  of years, right, or at least a year?
20  A.   I can't say that that's true.
21  I've used it on several occasions previous,
22  but I can't say according to the form of
23  that question that that's true.  I used it
24  on several occasions before I bought it in
25  December of 2017.

Page 33

N. MALGERI

1
2   Q.   Do you currently have any SAM-e
3   products at your house?
4   A.   Any SAM-e?
5   Q.   Yes.
6   A.   Probably we have some.
7   Q.   Have you ever given any SAM-e
8   to your lawyers?
9        MR. BRODY:  Objection to form.
10  A.   No, I don't think so.
11  Q.   Do you still have any of the
12  SAM-e that you purchased from We Like
13  Vitamins?
14  A.   No, I don't.
15  Q.   Did you use it all?
16  A.   I don't remember if I used it
17  all or not.
18  Q.   If you did not use it all did
19  you throw it away?
20       MR. BRODY:  Objection to form.
21  A.   I must of because I don't have
22  it any longer.
23  Q.   You never submitted the
24  product --
25  A.   I just don't know.  I mean, I

9 (Pages 30 - 33)

Page 34

N. MALGERI

1 don't know --
2
3    Q.   You can finish.
4    A.   No.  I can't, I can't recall
5 throwing any of it away, but I don't have
6 it.  I just can't tell you if I took it all
7 or what happened to it.
8    Q.   But you didn't give any of it
9 to your lawyers, correct?
10    A.   No.
11    Q.   You never had the We Like
12 Vitamins SAM-e tested in any way, did you?
13        MR. BRODY:  Objection to form.
14    A.   We had some SAM-e tested, I
15 don't know what or which -- it wasn't the
16 one -- it wasn't the pills, the physical
17 actual specimens that I possessed and
18 ingested.
19    Q.   Okay.
20    A.   We had --
21    Q.   That was my question.
22    A.   It was not the actual pills
23 that I purchased and ingested.
24    Q.   Have you ever seen the results
25 of any SAM-e testing?

Page 35

N. MALGERI

1
2    A.   Yes, I have.  I have and -- you
3 know, I discussed those results with my
4 Counsel, too.  Obviously, I'm not getting,
5 you know, going to divulge that, but I've
6 seen the results and discussed it with my
7 Counsel.
8    Q.   I will show you and mark this
9 as Deposition Exhibit A.
10        MR. ANDERSON:  I'll share my
11    screen.
12        (Whereupon, the aforementioned
13    documents Bates stamped Plaintiff 15
14    though 18 were marked as Defendant's
15    Exhibit A for identification as of
16    this date by the Reporter.)
17    A.   I see it.
18    Q.   All right.  Now, one of the
19 limitations on Zoom is I'm the only one
20 that can scroll, so if you have any issues
21 just let me know if I'm going too fast or
22 not going fast enough or you can't see
23 anything and I will try to fix it, okay?
24    A.   Okay.
25    Q.   All right.  I'll represent to

Page 36

N. MALGERI

1
2 you that this is information that we
3 received from your lawyers.
4        MR. BRODY:  Counsel, could you
5    read the Bates stamp numbers of the
6    exhibit, if there are such.
7        MR. ANDERSON:  Sure.
8    Plaintiff's 15 through 18, which will
9    also be Exhibit number 1 (sic) to the
10    deposition.
11    Q.   Have you purchased all of your
12 SAM-e supplements from Amazon?
13    A.   I've purchased it in other
14 places.
15    Q.   Where else have you purchased
16 that?
17    A.   I believe I purchased it at the
18 grocery store as all.
19    Q.   Anywhere else that you recall
20 purchasing SAM-e?
21    A.   Not that I recall specifically,
22 but I can specifically recall purchasing it
23 from the grocery store.
24    Q.   So Plaintiff's 16.  All right.
25 I'm going down to the bottom, and this is

Page 37

N. MALGERI

1
2 on Plaintiff's 18, this is also Exhibit 1.
3 You see you purchased from SAM-e from NOW
4 Foods back in September of 2016, do you see
5 that?
6    A.   Yes.
7    Q.   Do you have any reason to
8 believe that that's not accurate that you
9 didn't purchase it on September 1, 2016?
10    A.   No.
11    Q.   Am I correct that when you
12 purchased it on September 1, 2016, you
13 purchased it for mood related and energy
14 purposes, is that correct?
15    A.   Correct.
16    Q.   At that point in time, do you
17 recall why you chose NOW Foods versus any
18 other retailer or manufacturer?
19    A.   No.
20    Q.   It looks like about a week
21 later you purchased some from Jarrow, do
22 you recall that?
23    A.   I don't recall that.
24    Q.   Now, the first one from NOW
25 Foods that came in a bottle, right?

10 (Pages 34 - 37)

Page 38

N. MALGERI

```
1          N. MALGERI
2     A.   I don't know.
3     Q.   You'd agree it's a bottle
4  that's depicted, right?
5          MR. BRODY:  Objection to form.
6     A.   It looks like a bottle on your
7  copy there.
8     Q.   Okay.  Do you recall providing
9  these documents to your Counsel?
10    A.   Yes.
11    Q.   When you provided them were
12 they in color or black and white, do you
13 recall?
14    A.   I don't recall.  They were
15 probably -- they were not printed so I
16 would imagine they were in color.  In other
17 words, they were probably PDFs or screen
18 shots.
19    Q.   Moving on to November of 2016.
20 It looks like you started purchasing
21 Doctor's Best for SAM-e, is that correct?
22    A.   I really don't know.
23    Q.   You'd agree that the orders on
24 this document at least that's been produced
25 to us shows that you purchased SAM-e from
```

Page 39

N. MALGERI

```
1          N. MALGERI
2  Doctor's Best in November of 2016, correct?
3     A.   Yes.
4     Q.   Then again in December of 2016,
5  right?
6     A.   That's what it says.
7     Q.   And then in February of 2017?
8     A.   It says that on the page, yes.
9     Q.   And then in March 2017 it was
10 purchased from Doctor's Best, is that
11 correct?
12    A.   I don't know.
13    Q.   Would you agree that the
14 records that were produced indicate that
15 you purchased SAM-e from Doctor's Best on
16 March 16, 2017?
17    A.   Well, this Exhibit 1 does
18 reflect that.
19    Q.   Do you think Exhibit 1 is
20 wrong?
21    A.   I have no reason to believe it
22 is.
23    Q.   And Exhibit 1 reflects that you
24 purchased from Doctor's Best again on
25 June 13, 2017, right?
```

Page 40

N. MALGERI

```
1          N. MALGERI
2     A.   Right.
3     Q.   Again on June 19, 2017?
4     A.   Yes.
5     Q.   Then again in July of 2017?
6     A.   Yes.
7     Q.   And in September of 2017?
8     A.   Yes.
9     Q.   Do you know why the September
10 and July 2017 items are highlighted?
11    A.   No.
12    Q.   Did you highlight them?
13    A.   No.
14    Q.   Then again it looks like you
15 purchased on October 29, 2017, SAM-e from
16 Doctor's Best, is that correct?
17    A.   That's what is reflected on
18 Exhibit 1.
19    Q.   But you don't know whether or
20 not that's accurate?
21    A.   I have no reason to believe
22 it's not.
23    Q.   And then on December 8, 2017,
24 it appears that you purchased from We Like
25 Vitamins SAM-e, correct?
```

Page 41

N. MALGERI

```
1          N. MALGERI
2     A.   That's what it shows on
3  Exhibit 1.
4     Q.   Why did you switch from
5  Doctor's Best to We Like Vitamins?
6     A.   I'm thinking because it was
7  cheaper.
8     Q.   Is that the only reason?
9     A.   Because it was cheaper and it
10 was -- would have been less cost per
11 milligram.
12    Q.   Any other reason?
13    A.   No, I think it just was to
14 represent a good value, good value to me to
15 get SAM-e for a cheaper price.
16    Q.   Do you know how much you were
17 paying for Doctor's Best?
18    A.   I don't remember the exact
19 amount.  If it's not reflected there I
20 don't know.  But I know Doctor's Best and
21 Jarrow are more expensive than the We Like
22 Vitamins brands.  As you can see Jarrow and
23 Doctor's Best are in boxes, those are
24 blister packs inside.
25    Q.   Okay.  Sitting here today, do
```

11 (Pages 38 - 41)

N. MALGERI

1
2 you recall We Like Vitamins' product being
3 cheaper than Doctor's Best for SAM-e back
4 in September, October of 2017?
5     A.   Yes, I believe, I believe with
6 a reasonable degree of certainty it was
7 less money on a cost per milligram basis.
8     Q.   Do you recall how much less?
9     A.   No, I don't remember.
10     Q.   Then in February you went back
11 to Doctor's Best, correct?
12     A.   It looks like that way from
13 Exhibit 1, yes.  It looks like I purchased
14 Doctor's -- can you scroll up a little bit,
15 1, 2, 3, scroll up more.
16     Q.   This way or the other way?
17     A.   You got it.  So, it looks like
18 the subsequent purchases were, based on
19 Exhibit 1 which you provided at the
20 deposition here, it looks like subsequently
21 I purchased Doctor's Best at least three
22 more times, and only purchased We Like
23 Vitamins that one time.
24     Q.   You don't have any recollection
25 of purchasing We Like Vitamins SAM-e more

N. MALGERI

1
2 than one time, do you know?
3     A.   I don't recall if I did.  I
4 think -- I just can't remember.  I know I
5 purchased it and tried it, was not pleased
6 with it and wrote a review on Amazon about
7 my lack of satisfaction with the results
8 that I obtained from the We Like Vitamins
9 product.  And I don't remember what I
10 specifically wrote, but I wanted to warn
11 other consumers that that product did not
12 deliver the results as expected.  And, you
13 know, just despite it's a good value, it's
14 really not.
15     Q.   Do you have a copy of that
16 review?
17     A.   I don't.
18     Q.   Did you send a copy of that
19 review to your attorneys?
20     A.   I don't recall specifically if
21 I did.
22     Q.   If you had been asked to would
23 you have?
24     A.   I assume so.
25         The review as far as I know

N. MALGERI

1
2 could still be there.  I don't even know if
3 the product is still for sale or if they
4 keep historical reviews or what.
5     Q.   All right.  I'll try again to
6 share my screen.  Do you see my screen, Mr.
7 Malgeri?
8     A.   Yes.
9     Q.   All right.
10         MR. ANDERSON:  This will be
11     Deposition Exhibit B.
12         (Whereupon, the aforementioned
13     document Bates stamped Plaintiff 544
14     was marked as Defendant's Exhibit B
15     for identification as of this date by
16     the Reporter.)
17     Q.   It looks like a purchase of
18 SAM-e from Jarrow on June 3, 2021, do you
19 see that?
20     A.   Yes, I see it.
21     Q.   Do you recall making that
22 purchase?
23     A.   Vaguely.
24     Q.   When is the last time that you
25 recall purchasing SAM-e?

N. MALGERI

1
2     A.   Probably either this one or in
3 the grocery store.
4         It goes on sale a lot in the
5 grocery store.  Well, not a lot, but once
6 in a while.  But I don't take it all the
7 time anymore.
8     Q.   When is the last time that you
9 recall taking it?
10     A.   Probably -- two, three months
11 ago.  Probably -- yeah, about.
12     Q.   What brand did you take?
13     A.   I don't remember.
14     Q.   Do you recall whether it was in
15 a bottle or whether it was in a blister
16 pack?
17     A.   Blister pack.
18     Q.   Since you purchased the We Like
19 Vitamins product, do you always purchase
20 blister packs?
21     A.   Yes.  I mean, I do, that's
22 true.  It's possible my, my wife may have
23 purchased some in a bottle, but I certainly
24 haven't.
25     Q.   Does your current wife use

12 (Pages 42 - 45)

Page 46

1          N. MALGERI
2 SAM-e?
3     A.   No.
4     Q.   What about Doran?
5     A.   No.
6     Q.   Are you saying she just
7 sometimes purchases it for you?
8     A.   Yes.
9     Q.   Got you.
10         MR. BRODY:  Counsel, we've been
11 going for over an hour now, can we
12 take a quick break?
13         MR. ANDERSON:  At any time
14 sure.
15         MR. BRODY:  Five, ten minutes
16 break?
17         MR. ANDERSON:  We'll do ten
18 that's.  Cool.
19         (Whereupon, a short recess was
20 taken.)
21     Q.   All right.  Back from a brief
22 break here.
23         Mr. Malgeri, have you read any
24 depositions that have been taken in this
25 case, transcripts of any depositions?

Page 47

1          N. MALGERI
2     A.   No.
3         MR. ANDERSON:  Well, I don't
4 have any more questions for you, Mr.
5 Malgeri.  Sean or Mr. O'Brien does,
6 and I pass it off.  Thank you for
7 your time.
8         THE WITNESS:  All right.  Thank
9 you.
10 EXAMINATION BY
11 MR. O'BRIEN:
12     Q.   Mr. Malgeri, my name is Sean
13 O'Brien.  I'm an attorney with Lippes
14 Mathias.  Our office represents one of the
15 Defendants in this lawsuit aSquared Brands,
16 LLC.
17         I will not go through
18 instructions, you seem to be doing just
19 fine.
20         Do you have any recollection of
21 buying SAM-e from an entity named Asquared
22 Brands, LLC?
23     A.   No, I do not.
24     Q.   Okay.  Do you know if you're
25 asserting any claim in the lawsuit you are

Page 48

1          N. MALGERI
2 being deposed at today against the
3 Defendant aSquared Brands, LLC?
4     A.   My recollection is I'm suing
5 the manufacturer that -- of the product who
6 I believe Scott is Counsel for, although,
7 he was reluctant to tell me that for some
8 reason, but the --
9         Scott, you are muted, but which
10 is good.  But and we sued the retailer,
11 settled with them, so I don't believe
12 we're -- I have claims against your client,
13 Sean.
14     Q.   What did you do to prepare for
15 today's deposition?
16     A.   I reviewed our document
17 production, some of which we looked at at
18 the last session.  And I had a conversation
19 with my Counsel about the suit and
20 depositions in general.  And, you know,
21 talked about who, who the different parties
22 would be or entities who would be
23 conducting the deposition and seeking to
24 illicit testimony from me.
25     Q.   Mr. Malgeri, have you ever been

Page 49

1          N. MALGERI
2 convicted of a crime?
3         MR. BRODY:  Objection to form.
4     A.   Possibly.  I paid a fine for
5 being drunk in public, which I think is a
6 misdemeanor, but I pled guilty to it, but
7 so I don't know if you count that as a
8 conviction.
9     Q.   Probably.  Questionable.  Where
10 was that?
11     A.   Virginia.
12     Q.   You don't have to be exact,
13 approximately when?
14     A.   It was right around New Year's,
15 New Year's probably '13, '14, years ago,
16 15 years ago.
17     Q.   Are you aware if you have any
18 civil judgements against you personally?
19     A.   I don't.  Although, I do have a
20 divorce, you know, that's technically a
21 civil order.
22     Q.   That's correct.  Sorry.  I
23 should of prefaced that question outside of
24 your divorce.
25         You answered a couple of

13 (Pages 46 - 49)

Page 50

N. MALGERI

1    questions about your retention of Counsel
2    in this case, I am not going to revisit all
3    of it, but do you have any recollection as
4    to whether you decided to think about
5    bringing a lawsuit before you hired your
6    attorney?
7         MR. BRODY: Objection to form.
8         A.   I can't tell you whether I
9    thought about bringing a lawsuit or not
10   and, you know, I know I was upset about --
11   I know I was upset about my experience and
12   I did write a review, but I can't tell you,
13   you know, what else I thought about.
14        Q.   As you sit here today, you have
15   no recollection of how you found your
16   attorneys in this case, is that right?
17        MR. BRODY: Objection to form.
18        A.   Well, I don't have a specific
19   recollection.  I mean, my -- I've been
20   corresponding, you know with Jay for, for
21   so long it seems like now, I'm have to look
22   through my e-mails.  I mean, if that is a
23   topic of, of discovery that, you know, is
24   associated with some open pending discovery

Page 51

N. MALGERI

1    or something I can certainly respond to it.
2    But you know, Jay and I correspond fairly
3    routinely.  I could ascertain that
4    presumably upon conducting some research,
5    but I haven't done that.
6         Q.   By research you just mean
7    finding the first e-mail communication
8    between you and Jay and anyone reading it?
9         A.   That's what I would try to do,
10   yeah.
11        Q.   Okay.  Do you think you still
12   have access to those e-mails?
13        MR. BRODY: Objection to form.
14        A.   Yeah, access, I have access to
15   my e-mail, but I don't have transcripts of
16   the phone calls that we may or may not have
17   had.
18        Q.   Sure.  I understand that.  And
19   I guess just for clarification, do you
20   remember if the initial communication
21   between you and Mr. Brody was by phone or
22   by e-mail?
23        MR. BRODY: Objection to form.
24        A.   I do not remember.  To be

Page 52

N. MALGERI

1    honest with you, we correspond and we stay
2    in touch pretty regularly and have for
3    years but -- and also understand Jay and I
4    are kind of friends, too.  We were not
5    friends before the suit.
6         Q.   Sure.
7         A.   I just can't remember.
8         Q.   I will ask you a couple of
9    questions about some answer you gave to
10   Mr. Anderson about testing.
11        A.   Okay.
12        Q.   Mostly just for clarification
13   purposes.  I think it was all generally
14   covered.
15        At some point you've seen test
16   results for tests conducted on SAM-e
17   relating generally to this litigation, is
18   that correct?
19        A.   Yes.
20        Q.   Okay.  I believe you testified
21   that those test results were relating to or
22   corresponding to some type of scientific
23   expert, do you recall that?
24        MR. BRODY: Objection.

Page 53

N. MALGERI

1         A.   Yes.  My recollection is that
2    the test results were looking into the
3    actual amount of SAM-e detected in some
4    samples of the product.
5         Q.   And when you saw that was that
6    part of a larger document or report?
7         MR. BRODY: Objection to form.
8         A.   Yes, it was, it was a, it was
9    basically an expert testing report, which
10   I, which I reviewed along with the advice
11   of my Counsel.
12        Q.   Sure.  Mr. Malgeri, you
13   obviously know none of my questions are
14   intended to have you give an answer that
15   discloses attorney client privileged
16   communication, to the extent you think I'm
17   asking I'll clarify the question.
18        When you say an expert report,
19   do you know if the document you looked at
20   was the actual expert report that was
21   disclosed in this lawsuit?
22        MR. BRODY: Objection to form.
23        A.   I don't know if it was, you
24   know, the expert's written summary of his

Page 54

N. MALGERI

1     N. MALGERI
2  testimony, report, type expert report for
3  the purposes of the litigation or for -- or
4  if it was more raw data or what it was.
5  But it was the results of the testing that
6  has been presented in this litigation.
7     Q.   And do you know who that
8  testing was conducted on behalf of?
9        MR. BRODY:  Objection to form.
10    A.   You mean, so, that's an
11 interesting question that you ask, Sean.  I
12 know it was presented in the case on behalf
13 of, of me and my class, is that what you
14 mean?
15    Q.   Yes.  No.  I guess it's a
16 little bit of a vague question.
17        Did you, Mr. Malgeri, send any
18 of this product out for testing?
19        MR. BRODY:  Counsel, could you
20    clarify which product?
21    Q.   SAM-e?
22        MR. BRODY:  Any SAM-e?
23        MR. O'BRIEN:  Yes.  He's
24    talking about the test results.  I'm
25    asking for if the test results he, he

Page 55

N. MALGERI

1     N. MALGERI
2     reviewed were the results of him
3     sending the products out to be
4     tested.  I don't understand what more
5     clarification you need.
6        MR. BRODY:  You are asking
7     whether he sent the products out.
8        MR. O'BRIEN:  I will ask a new
9     question so we have a clear record.
10    Q.   The testing results that you
11 reviewed, Mr. Malgeri, I'm just trying to
12 ask a couple of questions about the source
13 of those testing results.
14        And the question is, did you,
15 Mr. Malgeri, send SAM-e product out that
16 resulted in those test results?
17        MR. BRODY:  Objection to form.
18    A.   No.
19    Q.   I'm sorry?
20    A.   I didn't provide the -- I
21 didn't provide the specimen that was
22 tested.
23    Q.   Okay.  I believe you answered
24 one of Mr. Anderson's questions by saying
25 the specific pills that you took or bought

Page 56

N. MALGERI

1     N. MALGERI
2  from We Like Vitamins were not tested, is
3  that correct?
4        MR. BRODY:  Objection to form.
5     A.   The, the ones that I bought, I
6  never provided to anyone, so whether or not
7  they were tested, Sean, would be
8  speculation on my part; but I didn't
9  provide the pills that I bought for
10 testing.
11        I suppose there is some
12 possibility that they were obtained from my
13 house without my knowledge or from my
14 garbage, but I would imagine and I believe
15 that's unlikely.
16    Q.   I think so.
17        Mr. Malgeri, I will show you a
18    couple of documents, and then we'll
19    be finished.
20    A.   All right.  Thank you.
21        MR. O'BRIEN:  Mark this
22    document as Exhibit C of today's
23    deposition.
24        (Whereupon, the aforementioned
25    document was deemed marked as

Page 57

N. MALGERI

1     N. MALGERI
2     Defendant's Exhibit C for
3     identification as of this date.)
4     Q.   Mr. Malgeri, I will show you
5  what has been marked Exhibit C of today's
6  deposition.  Mr. Brody and I have been
7  through this dance quite a few times so
8  we'll follow the same procedure we did in
9  other depositions.
10        I will show you the first page,
11 do you recognize this document?
12    A.   I can't see the top of it.
13    Q.   Sorry.
14    A.   All right.
15        MR. BRODY:  When he's done
16    reviewing the first page, can you
17    skip to the end of the document?
18    A.   Okay.  I've reviewed it.
19    Q.   Did you recognize what is --
20        MR. BRODY:  Sean, before you go
21    on with the questions, can you skip
22    down to the end of the document?
23        MR. O'BRIEN:  Jay, let me see
24    if he can identify the first page.  I
25    am not asking any more questions

15 (Pages 54 - 57)

Page 58

N. MALGERI

1
2    about the document until I show him
3    the signature page.  Don't worry
4    about it.
5    Q.   Mr. Malgeri --
6    A.   I don't remember, Sean, you
7    know, if this was the actual document.  I
8    never responded to interrogatories.
9    Q.   Okay.  I'll scroll down to the
10   bottom here.  This is dated August 26,
11   2021, there is a certificate of service and
12   that is the end of the document.
13        I know you said you remember
14   responding to interrogatories, do you have
15   any specific recollection sitting here
16   today in participating in creating and
17   responding to this set of interrogatories?
18   A.   Yes.  We went through these in
19   some detail with my Counsel.
20        MR. O'BRIEN:  Mark this as
21   Exhibit D.
22        (Whereupon, the aforementioned
23   document was deemed marked as
24   Defendant's Exhibit D for
25   identification as of this date.)

Page 59

N. MALGERI

1
2    Q.   Mr. Malgeri, I'm showing you
3    what has been marked as Exhibit D for
4    today's deposition.  Again, I'll just ask
5    if you recognize the document depicted on
6    the screen?
7    A.   You know, I don't, I don't
8    recognize it.  I know we responded to
9    interrogatories.  I mean, you know, I
10   probably seen 15,000 responses to
11   interrogatories in my life that looked like
12   this, but we responded to interrogatories,
13   and I discussed them with my Counsel over
14   the phone.  He's located on the east coast
15   and I'm in Nevada, but I responded to these
16   with my Counsel.
17   Q.   I'll scroll down to the last
18   page here.  I will take it up a few pages
19   so you get the whole feel.  You have a
20   signature page document dated November 3,
21   2021, certificate of service, and at the
22   end a verification page, do you recognize
23   the verification page?
24   A.   No.  I mean, I verified my
25   responses, I don't know in -- if this is

Page 60

N. MALGERI

1
2    the -- that looks like an electronic
3    signature.  I don't recognize this page but
4    we, we did respond.
5    Q.   So this document Exhibit D is
6    entitled "Second Supplemental Response with
7    an Objection to Asquared's First Set Of
8    Interrogatories," and you can see from the
9    last page it includes a verification page,
10   is that correct?
11   A.   Yes.
12   Q.   Do you know why your initial
13   responses to these interrogatories did not
14   include a verification page?
15        MR. BRODY:  Objection to form.
16   Calls for legal answer.
17   A.   No, I don't know.
18        MR. O'BRIEN:  Mark this Exhibit
19   E.
20        (Whereupon, the aforementioned
21   document was deemed marked as
22   Defendant's Exhibit E for
23   identification as of this date.)
24   Q.   All right.  Mr. Malgeri, I'm
25   showing you what has been marked as Exhibit

Page 61

N. MALGERI

1
2    E for today's deposition.  It's a document
3    entitled "Plaintiff's Second Supplemental
4    Responses To Defendant ASquared Brands
5    Request For Production of Documents to Noah
6    Malgeri."
7        Do you recognize this document,
8    Mr. Malgeri?
9    A.   No.
10   Q.   Okay.
11   A.   I know we responded to
12   interrogatories and perhaps supplemental
13   interrogatories, but in terms of their
14   characterization of if they are the first
15   interrogatory, first supplemental, second
16   supplement, etcetera, to me it does not
17   have much significance and I don't recall.
18   Q.   This document, Mr. Malgeri, is
19   a request for production of documents not
20   an interrogatory.
21        Do you have any recollection of
22   being asked to search for responsive
23   documents in this case?
24   A.   Yes.  We did, we did that, and
25   we provided some responsive documents.

Page 62

N. MALGERI

1
2   Q.   Earlier in the deposition
3 Mr. Anderson showed you Plaintiff's 15
4 through 18, then one other document, do you
5 recall providing any documents besides what
6 you saw in today's deposition as responsive
7 documents?
8   A.   I don't remember exactly what
9 we provided at this point or what was used,
10 what was discussed.
11       You know, it's hard to answer
12 because some of the things that I may have
13 provided to my attorney were for another
14 set of discovery or for other purposes and,
15 therefore, without knowing which ones were
16 ultimately deemed responsive and provided I
17 don't want to speculate as to which of
18 those might have just been part of attorney
19 client discussions.
20   Q.   I'm confused at what you mean
21 by other purposes, can you explain?
22       MR. BRODY:  Objection to form.
23   A.   You have to ask a different
24 question.  I don't know what that means.
25   Q.   Sure.  You said you provided

Page 63

N. MALGERI

1
2 documents to your Counsel, but you can't
3 answer whether everything was exchanged as
4 responsive to the demand because it could
5 have been used for, you said other demands
6 or other purposes, I don't know what you
7 mean by that answer.
8       MR. BRODY:  Objection to form.
9       Misstates prior testimony.  Go ahead.
10   A.   Yeah.  So, so -- I don't know
11 which documents that my attorney and I
12 discussed or shared or reviewed were
13 ultimately provided in response to
14 discovery.
15   Q.   Again, I can ask this in a
16 broader way.
17       As part of discovery you were
18 asked to search for and collect documents
19 that were responsive to multiple Defendant
20 paper discovery demands, is that right?
21       MR. BRODY:  Objection.
22   A.   Yes.
23   Q.   And you conducted that search
24 and provided that search to your Counsel?
25   A.   Correct.

Page 64

N. MALGERI

1
2   Q.   Whether or not your Counsel
3 turned them over is obviously outside of
4 your purview as Plaintiff, correct?
5       MR. BRODY:  Objection.
6   A.   I didn't do the production
7 myself, right.
8       You know, I know that the
9 documents we looked at in the last
10 deposition were documents that I generated.
11   Q.   Understood.
12       MR. O'BRIEN:  That's all I have
13    for you, Mr. Malgeri.  Thank you for
14    your time.
15       THE WITNESS:  Thank you, Sean.
16    Merry Christmas.
17       MR. O'BRIEN:  You, too.
18       MR. BRODY:  Counsel I'm going
19    to ask a couple of follow-up
20    questions to clarify a few matters.
21 EXAMINATION BY
22 MR. BRODY:
23   Q.   Jay Brody, Counsel for
24 Plaintiffs.
25       Mr. Malgeri, I wanted to

Page 65

N. MALGERI

1
2 clarify a couple of remarks that you had
3 made earlier.
4       You mentioned earlier that you
5 understand that you are suing and setting
6 forth claims against the manufacturer of
7 the subject product, is that correct?
8   A.   That's correct, we, we sued --
9       MR. ANDERSON:  Objection to
10    form.
11   A.   -- the seller of the product,
12 you know, We Like Vitamins, as we saw in
13 Exhibits 1 or 2.  Those were the retailer
14 on Amazon, Amazon retailer -- we settled
15 with them, we settled with them.  But we
16 have claims against the manufacturer as
17 well, I believe that's Scott's client.  So
18 -- those, those are, you know, those are
19 the parties that I'm suing.
20   Q.   And would you be able to -- if
21 you were to be shown a copy of the
22 pleadings, the current complaint, would you
23 be able to identify, after reviewing the
24 complaint, would you able to identify all
25 of the parties and complaints set forth in

17 (Pages 62 - 65)

N. MALGERI

1        N. MALGERI
2 this case?
3      MR. ANDERSON:  Objection.
4   A.   I've never spoken to or met any
5 other Plaintiffs and, you know, the name of
6 the manufacturer I will probably be able to
7 recognize if someone me reminds what it
8 was.  It's some variation with vitamins in
9 it, Vitamins Because or something.  I
10 always referred to it as the manufacturer.
11   Q.   Okay.  You feel that your
12 attorneys in this case have kept you
13 abreast of the ongoings of the case and all
14 relevant and important information?
15   A.   Yes.  Well, I mean you and I,
16 Jay, have spoken fairly extensively about
17 this.  I've spoken with Gary, as well as a
18 few of your colleagues, and e-mailed with
19 folks about the progress of the case.  And,
20 you know, as somebody who's an attorney
21 myself, I did a lot of federal litigation,
22 we have conversations about the case,
23 conversations, and talked about strategy
24 and so forth as one might expect.
25   Q.   Lastly, you've also reviewed a

1        N. MALGERI
2 lot of documents, which your Counsel has
3 sent you that's relevant to this case?
4      MR. ANDERSON:  Objection.
5  Leading.
6   A.   Yes, I mean, we, we reviewed
7 everything that, you know, together that
8 you sent over, Jay, and you, you sent me
9 other stuff that's just going on in the
10 case.  Probably more than most people, you
11 know, because I have an understanding of
12 what it is, and helps me to have some
13 context in terms of the progress of the
14 litigation and review different motions and
15 so forth.  So we've talked about all that
16 throughout the case.
17   Q.   That includes the pleadings as
18 well, is that correct?
19      MR. ANDERSON:  Same objection.
20   A.   Correct, correct.  The
21 pleadings are quite long, but I reviewed
22 them.
23      MR. BRODY:  Thank you, Mr.
24  Malgeri.  No further questions.
25      MR. ANDERSON:  Thank you.

1        N. MALGERI
2      MR. BRODY:  I note for the
3 record as we have with all of the
4 other Plaintiffs, Plaintiff reserves
5 their right to read and sign the
6 deposition transcript and provide any
7 corrections on the errata sheet.
8   (Whereupon, at 2:35 P.M., the
9 Examination of this witness was
10 concluded.)
11
12      °     °     °     °
13
14
15
16
17
18
19
20
21
22
23
24
25

1      N. MALGERI
2   D E C L A R A T I O N
3
4   I hereby certify that having been
5 first duly sworn to testify to the truth, I
6 gave the above testimony.
7
8   I FURTHER CERTIFY that the foregoing
9 transcript is a true and correct transcript
10 of the testimony given by me at the time
11 and place specified hereinbefore.
12
13
14
      _____
15       NOAH MALGERI
16
17
18 Subscribed and sworn to before me
19 this _____ day of _____ 20___.
20
21
     _____
22   NOTARY PUBLIC
23
24
25

18 (Pages 66 - 69)

Page 70

```
 1            N. MALGERI
 2          E X H I B I T S
 3  DEFENDANT'S EXHIBITS:
 4
 5  EXHIBIT    EXHIBIT
 6  LETTER     DESCRIPTION              PAGE
 7  Exh A    Documents Bates stamped      35
 8           Plaintiff 15 though 18
 9  Exh B    Document Bates stamped       44
10           Plaintiff 544
11  Exh C    Document (IN ATTORNEY        56
12           POSSESSION)
13  Exh D    Document (IN ATTORNEY        58
14           POSSESSION)
15  Exh E    Document (IN ATTORNEY        60
16           POSSESSION)
17
18  (Furnished exhibits attached to E-Transcript.)
19
20            I N D E X
21  EXAMINATION BY                      PAGE
22  MR. ANDERSON:                         4
23  MR. O'BRIEN                47
24  MR. BRODY                  64
25
```

Page 71

```
 1            N. MALGERI
 2
 3  INFORMATION AND/OR DOCUMENTS REQUESTED
 4  INFORMATION AND/OR DOCUMENTS       PAGE
 5  (None)
 6
 7       QUESTIONS MARKED FOR RULINGS
 8  QUESTION            PAGE  LINE
 9  (None)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 72

```
 1            N. MALGERI
 2          C E R T I F I C A T E
 3
 4  STATE OF NEW YORK     )
                  : SS.:
 5  COUNTY OF KINGS       )
 6
 7       I, KAREN R. ANIBOLI-KOPANYI, a Notary
 8  Public for and within the State of New
 9  York, do hereby certify:
10       That the witness whose examination is
11  hereinbefore set forth was duly sworn and
12  that such examination is a true record of
13  the testimony given by that witness.
14       I further certify that I am not
15  related to any of the parties to this
16  action by blood or by marriage and that I
17  am in no way interested in the outcome of
18  this matter.
19       IN WITNESS WHEREOF, I have hereunto
20  set my hand this 5th day of January 2022.
21
22
23         Karen R. Aniboli-Kop
           KAREN R. ANIBOLI-KOPANYI
24
25
```

Page 73

```
 1              ERRATA SHEET
            VERITEXT/NEW YORK REPORTING, LLC
 2
    CASE NAME: Ginsberg, Cori Ann v  Vitamins Because LLC
 3  DATE OF DEPOSITION: 12/22/2021
    WITNESSES' NAME: Noah Malgeri
 4
 5  PAGE  LINE (S)   CHANGE        REASON
 6  _____|_____|_____|_____
 7  _____|_____|_____|_____
 8  _____|_____|_____|_____
 9  _____|_____|_____|_____
10  _____|_____|_____|_____
11  _____|_____|_____|_____
12  _____|_____|_____|_____
13  _____|_____|_____|_____
14  _____|_____|_____|_____
15  _____|_____|_____|_____
16  _____|_____|_____|_____
17  _____|_____|_____|_____
18  _____|_____|_____|_____
19  _____|_____|_____|_____
20
21  _____
                 Noah Malgeri
22  SUBSCRIBED AND SWORN TO BEFORE ME
    THIS ____ DAY OF _____, 20__
23
24  _____
25  (NOTARY PUBLIC)          MY COMMISSION EXPIRES:
```

19 (Pages 70 - 73)

[& - asking]                                                                    Page 1

**&**

**&**   3:17 18:16

**0**

**07645**   2:8

**1**

**1**   3:17 36:9 37:2,9
37:12 39:17,19,23
40:18 41:3 42:13
42:15,19 65:13
**10**   30:16,19 31:10
**1006**   12:22,25
**12/22/2021**   73:3
**12:38**   1:17
**13**   39:25 49:15
**135**   2:7
**14**   49:15
**14202**   2:17
**15**   35:13 36:8
49:16 62:3 70:8
**15,000**   59:10
**15th**   12:5,19
**16**   36:24 39:16
**16th**   30:24
**1700**   2:17
**18**   18:18 19:4
35:14 36:8 37:2
62:4 70:8
**19**   40:3
**1900**   12:5
**1920**   13:19
**1983**   21:2
**1:19**   1:9

**2**

**2**   42:15 65:13
**20**   69:19 73:22
**2000**   16:17,19
**2011**   2:12
**2016**   14:3,4 30:25
31:4 37:4,9,12
38:19 39:2,4

**2017**   14:4 30:24
32:14,15,18,25
39:7,9,16,25 40:3
40:5,7,10,15,23
42:4
**2018**   13:12 31:2,4
**2021**   1:16 31:3
44:18 58:11 59:21
**2022**   72:20
**22**   1:16
**22702**   1:9
**24378**   72:23
**26**   58:10
**29**   40:15
**2:35**   68:8

**3**

**3**   42:15 44:18
59:20
**3,000**   29:15
**30**   3:16
**33606**   2:13
**35**   70:7

**4**

**4**   70:22
**44**   70:9
**47**   70:23

**5**

**5**   30:16,19
**50**   2:17 31:10
**528**   14:5,15
**544**   44:13 70:10
**56**   70:11
**58**   70:13
**5th**   72:20

**6**

**60**   70:15
**64**   70:24

**7**

**725**   15:4

**8**

**8**   40:23

**a**

**able**   65:20,23,24
66:6
**abreast**   66:13
**access**   51:13,15,15
**accurate**   37:8
40:20
**action**   72:16
**actual**   34:17,22
53:4,21 58:7
**address**   12:4,19,21
13:6,18 14:12
15:7
**administer**   3:11
**advertising**   10:4
**advice**   53:11
**advising**   26:6
**afford**   21:7
**aforementioned**
35:12 44:12 56:24
58:22 60:20
**ago**   7:21 15:24
22:15 29:10 30:16
45:11 49:15,16
**agree**   38:3,23
39:13
**agreed**   3:5,20
**agreement**   8:3
27:10,13,17
**ahead**   9:21 63:9
**aid**   15:13 19:16,17
19:21 20:3 21:15
**allegations**   9:16
**amazon**   11:4,6
36:12 43:6 65:14
65:14

**amount**   41:19
53:4
**analysis**   10:14,15
10:17,19
**anderson**   2:10,13
4:7,12,13 20:5
26:11 35:10 36:7
44:10 46:13,17
47:3 52:11 62:3
65:9 66:3 67:4,19
67:25 70:22
**anderson's**   55:24
**aniboli**   1:24 72:7
72:23
**ann**   1:3 2:5 73:2
**answer**   9:22 11:20
11:23 26:7,13,23
27:5 28:6,25
52:10 53:15 60:16
62:11 63:3,7
**answered**   29:13
49:25 55:23
**anymore**   45:7
**appealing**   30:6,8
**appears**   40:24
**applications**   23:16
**approximately**
49:13
**april**   31:2
**area**   17:24
**areas**   20:19
**army**   16:20,21,25
17:12
**articulating**   24:15
**ascertain**   51:4
**aside**   27:6,23
**asked**   5:10,12
43:22 61:22 63:18
**asking**   5:11 11:22
53:18 54:25 55:6
57:25

**asquared** 1:11
2:16 47:15,21
48:3 61:4
**asquared's** 60:7
**asserting** 47:25
**associate** 18:12,19
19:5
**associated** 50:25
**assume** 43:24
**asylum** 20:25
**attached** 70:18
**attended** 24:22,24
**attorney** 7:11,18
8:18 20:18,18
21:7,19 28:5
47:13 50:7 53:16
62:13,18 63:11
66:20 70:11,13,15
**attorneys** 2:4,11
2:16 21:8,11
43:19 50:17 66:12
**august** 58:10
**authorized** 3:11
**auto** 22:2,2
**avenue** 13:19
**aware** 6:11,14
8:14,21 24:18
25:2,15 27:22,24
28:7 49:17

**b**

**b** 1:11 44:11,14
70:2,9
**back** 13:11 20:5,8
37:4 42:3,10
46:21
**based** 27:4 42:18
**basically** 22:5
53:10
**basis** 21:8 42:7
**bates** 35:13 36:5
44:13 70:7,9

**behalf** 1:4 2:6 54:8
54:12
**believe** 31:7 36:17
37:8 39:21 40:21
42:5,5 48:6,11
52:21 55:23 56:14
65:17
**bell** 15:7
**benefits** 30:6,7
**best** 11:19,22 32:7
38:21 39:2,10,15
39:24 40:16 41:5
41:17,20,23 42:3
42:11,21
**better** 31:15,17
**big** 19:23
**bill** 1:4 2:5
**bit** 42:14 54:16
**black** 38:12
**blister** 31:13,14,17
41:24 45:15,17,20
**blood** 72:16
**bono** 20:11,19
21:8
**boost** 1:11
**boston** 18:24 19:2
**bottle** 37:25 38:3,6
45:15,23
**bottles** 31:8,11
**bottom** 36:25
58:10
**bought** 6:24 32:24
55:25 56:5,9
**boulevard** 15:5
**boxes** 41:23
**boys** 14:18,23
**brand** 29:12 45:12
**brands** 1:11 2:16
32:9,11 41:22
47:15,22 48:3
61:4

**break** 12:2 46:12
46:16,22
**brief** 46:21
**bringing** 50:6,10
**broader** 63:16
**brody** 2:8 7:9,16
8:5,13,15,16 9:18
9:21 10:9 20:16
22:7 26:3,17 28:3
28:24 30:4 31:5
33:9,20 34:13
36:4 38:5 46:10
46:15 49:3 50:8
50:18 51:14,22,24
52:25 53:8,23
54:9,19,22 55:6,17
56:4 57:6,15,20
60:15 62:22 63:8
63:21 64:5,18,22
64:23 67:23 68:2
70:24
**brody's** 22:6,10
**buffalo** 2:17
**build** 23:3
**buying** 9:25 47:21

**c**

**c** 2:2 56:22 57:2,5
69:2 70:11 72:2,2
**call** 7:14,14
**called** 4:2,13 7:23
7:23 8:13,13 9:14
22:22 32:4,7
**calls** 10:10 51:17
60:16
**capacity** 24:10
27:18
**care** 20:22
**caribbean** 14:6
**case** 1:8 20:13
21:21 22:11 24:19
24:23 25:13,16

27:21 46:25 50:3
50:17 54:12 61:23
66:2,12,13,19,22
67:3,10,16 73:2
**cases** 17:5 20:22
20:25 21:2,2,5,16
21:18 22:2
**caution** 7:10 26:4
28:4
**center** 15:14 19:16
19:17,21 20:3
21:15,22
**central** 1:11
**certain** 9:23 10:2
**certainly** 45:23
51:2
**certainty** 32:8
42:6
**certificate** 58:11
59:21
**certification** 3:8
**certify** 69:4,8 72:9
72:14
**ceuticals** 1:12
**change** 73:5
**characterization**
61:14
**charge** 20:13
**charleston** 15:5
**cheaper** 41:7,9,15
42:3
**chemical** 10:17
**chemically** 29:23
**chestnut** 2:7
**children** 15:17
20:22
**chose** 37:17
**christmas** 64:16
**city** 15:11
**civil** 1:22 20:20,23
21:2,5,23,24 49:18

49:21
**claim** 47:25
**claimants** 24:15
**claimed** 30:6,7
**claims** 48:12 65:6
  65:16
**clarification** 51:20
  52:13 55:5
**clarify** 53:18
  54:20 64:20 65:2
**class** 24:11,16
  28:18 54:13
**clear** 55:9
**cleveland** 2:12
**client** 4:23 7:11,18
  8:18 28:5 48:12
  53:16 62:19 65:17
**clients** 5:3,6,16
**coast** 59:14
**colleagues** 66:18
**collect** 63:18
**color** 38:12,16
**come** 31:11
**comes** 31:13
**commission** 73:25
**communication**
  28:5 51:8,21
  53:17
**communications**
  7:12,19 8:19
**community** 21:6
**company** 22:18,20
  22:22 23:2 32:7
**compensation**
  6:22 9:8 26:2,14
  27:2
**complaint** 7:3,4
  65:22,24
**complaints** 65:25
**completely** 7:20

**comply** 26:10
**concerning** 5:23
**concluded** 68:10
**conducted** 52:17
  54:8 63:23
**conducting** 48:23
  51:5
**confidential** 26:5
  26:18,21
**confirmed** 10:13
  10:15
**confused** 62:20
**considered** 26:20
**consistently** 31:4
**consult** 23:15
**consultant** 22:19
  23:15 29:3
**consumer** 20:23
  21:23,24 22:4
  23:6
**consumers** 43:11
**contain** 10:7
**context** 67:13
**continuously**
  30:18
**contract** 29:3
**conversation**
  48:18
**conversations**
  66:22,23
**convicted** 49:2
**conviction** 49:8
**cool** 14:25 46:18
**cooley** 18:8,10,15
**coordinating**
  21:11,13
**copy** 3:14,17 38:7
  43:15,18 65:21
**cori** 1:3 2:5 73:2
**correct** 7:24 9:9
  9:10 24:23 26:16

34:9 37:11,14,15
38:21 39:2,11
40:16,25 42:11
49:22 52:19 56:3
60:10 63:25 64:4
65:7,8 67:18,20,20
69:9
**corrections** 68:7
**correspond** 51:3
  52:2
**corresponding**
  50:21 52:23
**cost** 41:10 42:7
**counsel** 3:6,17
  4:24 8:4,25 21:20
  21:23 35:4,7 36:4
  38:9 46:10 48:6
  48:19 50:2 53:12
  54:19 58:19 59:13
  59:16 63:2,24
  64:2,18,23 67:2
**counsel's** 27:4
**count** 49:7
**county** 72:5
**couple** 12:9 49:25
  52:9 55:12 56:18
  64:19 65:2
**course** 25:7
**court** 1:2,21 3:13
  24:17 26:8,9
**covered** 52:15
**covid** 8:9
**creating** 58:16
**crime** 49:2
**ct** 1:10 2:12 4:15
  4:25 5:20,25 6:12
  6:17
**current** 8:3 12:4
  25:6,23 45:25
  65:22

**currently** 23:25
  33:2
**custody** 20:21
**cut** 16:9
**cv** 1:9

### d

**d** 1:11 3:2 14:21
  14:22 58:21,24
  59:3 60:5 69:2
  70:13,20
**daboll** 2:10 4:13
**dance** 57:7
**dancer** 13:19,20
  14:10
**data** 54:4
**date** 1:16,23 8:7
  35:16 44:15 57:3
  58:25 60:23 73:3
**dated** 58:10 59:20
**day** 5:9 69:19
  72:20 73:22
**days** 3:16
**dc** 16:13 17:24
  18:23
**december** 1:16
  32:15,17,25 39:4
  40:23
**decide** 19:20 30:2
**decided** 50:5
**deemed** 26:19
  56:25 58:23 60:21
  62:16
**defendant** 2:16
  6:9 28:2 48:3 61:4
  63:19
**defendant's** 35:14
  44:14 57:2 58:24
  60:22 70:3
**defendants** 1:13
  2:11 25:6 26:9
  47:15

degree   42:6
deliver   43:12
demand   63:4
demands   63:5,20
depicted   38:4 59:5
deposed   48:2
deposition   1:19
   3:8,9,14 11:14,16
   24:8 35:9 36:10
   42:20 44:11 48:15
   48:23 56:23 57:6
   59:4 61:2 62:2,6
   64:10 68:6 73:3
depositions   46:24
   46:25 48:20 57:9
describe   20:15
description   70:6
despite   43:13
detail   58:19
details   11:12
detected   53:4
developed   23:3
different   14:13,14
   48:21 62:23 67:14
difficult   11:19
difficulties   9:6
   20:4
directing   20:17
director   16:2
   20:10 21:9 22:15
disclosed   53:22
discloses   53:16
discovery   50:24
   50:25 62:14 63:14
   63:17,20
discussed   35:3,6
   59:13 62:10 63:12
discussion   25:20
discussions   62:19
district   1:2,2

divorce   28:14,15
   49:20,24
divulge   35:5
doctor's   32:7
   38:21 39:2,10,15
   39:24 40:16 41:5
   41:17,20,23 42:3
   42:11,14,21
document   38:24
   44:13 48:16 53:7
   53:20 56:22,25
   57:11,17,22 58:2,7
   58:12,23 59:5,20
   60:5,21 61:2,7,18
   62:4 70:9,11,13,15
documents   35:13
   38:9 56:18 61:5
   61:19,23,25 62:5,7
   63:2,11,18 64:9,10
   67:2 70:7 71:3,4
doing   4:20 24:9
   47:18
dollar   1:12
domestic   20:20
doran   14:20 46:4
drive   14:6
drunk   49:5
due   9:8
duly   4:3 69:5
   72:11

e

e   2:2,2 3:2,2 4:2,17
   9:15,25 22:25
   28:22,23 29:18,19
   30:3,13 31:3,8,22
   32:3,6,13,18 33:2
   33:4,7,12 34:12,14
   34:25 36:12,20
   37:3 38:21,25
   39:15 40:15,25
   41:15 42:3,25

44:18,25 46:2
   47:21 50:23 51:8
   51:13,16,23 52:17
   53:4 54:21,22
   55:15 60:19,22
   61:2 66:18 69:2
   70:2,5,18,20 72:2
   72:2
earlier   24:8 62:2
   65:3,4
east   15:4 59:14
effect   3:12,15
either   45:2
electronic   60:2
employment   22:16
energy   30:11
   37:13
enter   8:2
entities   48:22
entitled   60:6 61:3
entity   47:21
eric   1:4 2:5
errata   68:7 73:1
esq   2:8,13,18
etcetera   61:16
events   23:21
exact   8:6 41:18
   49:12
exactly   8:20 30:15
   62:8
examination   4:6
   47:10 64:21 68:9
   70:21 72:10,12
examined   4:5
exchanged   63:3
excuse   5:5 9:20
   30:25
exh   70:7,9,11,13
   70:15
exhibit   35:9,15
   36:6,9 37:2 39:17

39:19,23 40:18
   41:3 42:13,19
   44:11,14 56:22
   57:2,5 58:21,24
   59:3 60:5,18,22,25
   70:5,5
exhibits   65:13
   70:3,18
exist   22:5
expect   66:24
expected   43:12
expensive   41:21
experience   50:12
expert   10:10,20,22
   52:24 53:10,19,21
   54:2
expert's   53:25
expires   73:25
explain   62:21
extensively   66:16
extent   53:17

f

f   2:12 3:2 72:2
fabrication   22:23
fairly   51:3 66:16
familiar   32:9
far   43:25
fast   35:21,22
february   39:7
   42:10
federal   1:22 20:25
   66:21
fee   29:5
feel   30:10 59:19
   66:11
filed   4:16 7:3,3,4
filing   3:7
finding   51:8
fine   47:19 49:4
finish   11:22 34:3

[finished - initial]                                                              Page 5

**finished** 56:19
**firm** 4:12 8:15,23
  18:5,6,7 19:23
  22:7,10
**first** 4:3 11:14
  30:12,15,15 37:24
  51:8 57:10,16,24
  60:7 61:14,15
  69:5
**fish** 18:16
**fishon** 1:4 2:6
**five** 16:23 17:10
  19:3 46:15
**fix** 35:23
**florida** 1:2 2:13
  4:14
**folks** 21:12 66:19
**follow** 57:8 64:19
**follows** 4:5
**foods** 32:4 37:4,17
  37:25
**force** 3:15
**foregoing** 69:8
**form** 3:21 7:9 8:5
  8:17 9:18 10:9
  20:16 26:4 28:3
  28:25 30:4 31:6
  32:22 33:9,20
  34:13 38:5 49:3
  50:8,18 51:14,24
  53:8,23 54:9
  55:17 56:4 60:15
  62:22 63:8 65:10
**forms** 21:5 22:5
**forth** 65:6,25
  66:24 67:15 72:11
**foster** 20:22
**found** 50:16
**founded** 22:18
**founder** 22:25

**fountain** 2:17
**four** 17:9
**fraud** 22:4
**friends** 52:5,6
**full** 4:8
**furnished** 70:18
**further** 3:20 67:24
  69:8 72:14

**g**

**g** 4:2
**gabrian** 14:24
**garbage** 56:14
**gary** 9:4 66:17
**general** 48:20
**generally** 25:7
  52:14,18
**generated** 64:10
**gentleman** 9:2,3,4
**george** 16:6,12,16
**germany** 16:8,14
  17:14
**getting** 35:4
**giacomo** 14:24
**ginsberg** 1:3 2:5
  73:2
**give** 34:8 53:15
**given** 30:22 33:7
  69:10 72:13
**gmax** 1:11
**go** 9:21 11:13 16:5
  16:18 18:21 19:14
  19:20 47:17 57:20
  63:9
**goes** 45:4
**going** 27:8 29:11
  35:5,21,22 36:25
  46:11 50:3 64:18
  67:9
**goldhamer** 2:4
**good** 11:10 41:14
  41:14 43:13 48:10

**graduate** 16:15
**graduated** 16:19
**graifman** 2:4
**grant** 23:16,19
**great** 11:25 17:19
  18:9
**greater** 17:23
**grocery** 36:18,23
  45:3,5
**group** 24:15
**guess** 8:11 30:17
  51:20 54:15
**guilty** 49:6
**guys** 21:25

**h**

**h** 4:2 70:2
**half** 16:23
**hamilton** 18:22,23
  19:2,6,9,15,21
**hand** 72:20
**handle** 21:18
**happened** 34:7
**hard** 62:11
**harm** 6:23
**health** 1:10 2:12
  4:15,25 5:20,25
  6:12,17 9:13 10:2
**healthy** 1:12
**heidelberg** 16:7,14
**held** 1:23
**hello** 4:11
**help** 21:8,11,12,25
**helping** 21:6
**helps** 67:12
**henderson** 12:20
  12:25
**hereinbefore**
  69:11 72:11
**hereunto** 72:19
**highlight** 40:12

**highlighted** 40:10
**hill** 12:22
**hire** 7:5
**hired** 50:6
**hiring** 22:6
**historical** 44:4
**home** 13:16
**honest** 52:2
**hood** 1:4 2:5
**hour** 46:11
**house** 13:15 14:9
  14:13 33:3 56:13
**human** 20:21
**hundred** 25:17

**i**

**identification**
  35:15 44:15 57:3
  58:25 60:23
**identify** 57:24
  65:23,24
**illicit** 48:24
**imagine** 38:16
  56:14
**immigration**
  20:24
**important** 66:14
**include** 60:14
**includes** 60:9
  67:17
**including** 20:20
**indicate** 39:14
**indicated** 9:23
**indicates** 9:19
**individual** 24:10
**industry** 23:18
**information** 26:6
  26:19 36:2 66:14
  71:3,4
**ingested** 34:18,23
**initial** 51:21 60:12

**initially** 10:11
**inside** 41:24
**inspire** 1:11
**instructing** 26:13
  26:17,23
**instruction** 27:5
**instructions** 47:18
**intended** 53:15
**interested** 72:17
**interesting** 54:11
**interrogatories**
  58:8,14,17 59:9,11
  59:12 60:8,13
  61:12,13
**interrogatory**
  61:15,20
**interrupt** 21:4
**invention** 23:2
**ip** 19:11
**irvine** 19:4
**issues** 35:20
**items** 40:10

### j

**j** 22:25 31:23
**jag** 17:4,5
**january** 72:20
**jarrow** 31:23
  37:21 41:21,22
  44:18
**jay** 2:8 8:25 50:21
  51:3,9 52:4 57:23
  64:23 66:16 67:8
**jd** 16:12
**johnson** 2:10 4:13
**jolly** 1:12
**judge** 3:13
**judgements** 49:18
**july** 40:5,10
**june** 31:3 39:25
  40:3 44:18

### k

**kalyn** 1:3 2:5
**kantrowitz** 2:4
**karen** 1:24 72:7,23
**keep** 13:22 44:4
**kept** 66:12
**khakiware** 1:12
**kids** 19:22
**kind** 18:2 19:25
  29:20 52:5
**kinds** 22:5
**kings** 72:5
**kmq** 1:9
**know** 5:8,16,19,24
  6:4 8:20,22,24
  10:8,21,23,25,25
  12:2 17:9 25:9
  29:21,23 30:15
  31:20 32:12 33:25
  34:2,15 35:3,5,21
  38:2,22 39:12
  40:9,19 41:16,20
  41:20 43:2,4,13,25
  44:2 47:24 48:20
  49:7,20 50:11,11
  50:12,14,21,24
  51:3 53:14,20,24
  53:25 54:7,12
  58:7,13 59:7,8,9
  59:25 60:12,17
  61:11 62:11,24
  63:6,10 64:8,8
  65:12,18 66:5,20
  67:7,11
**knowing** 62:15
**knowledge** 56:13
**kopanyi** 72:7,23

### l

**l** 3:2,2 4:2 69:2

**label** 9:24
**labelling** 10:4
**lack** 43:7
**landlord** 20:24
  22:3
**larger** 53:7
**las** 13:5,9,15,17
  14:12 15:12
**lastly** 66:25
**law** 4:12 16:5,11
  16:24 17:18,21
  18:2,3 19:11
  20:14,20 22:6,10
  23:23,25
**lawsuit** 4:16,19
  5:17,21 6:2,5,8,13
  6:15,21 7:2 24:4
  25:23 26:15 28:2
  30:21 32:13 47:15
  47:25 50:6,10
  53:22
**lawsuits** 28:13
**lawyer** 4:12 7:5,8
  16:3 25:9
**lawyers** 33:8 34:9
  36:3
**leading** 67:5
**left** 17:11 19:23
**legal** 15:13 19:16
  19:17,21 20:3
  21:10,15 60:16
**letter** 70:6
**licensed** 23:22
**life** 59:11
**lifetime** 31:9
**limitations** 35:19
**line** 71:8 73:5
**lippes** 2:15 47:13
**litigation** 25:8
  52:18 54:3,6
  66:21 67:14

**little** 11:18 15:24
  42:14 54:16
**live** 12:11,12,18,24
  13:3,8,14 14:5,8
  14:15,17 15:4
**lived** 12:7,9 13:4
**llc** 1:10,11,11,11
  1:12,12 2:11,12,16
  47:16,22 48:3
  73:1,2
**llm** 16:13 17:13,17
**llp** 2:15
**loans** 20:23,24
  22:2,3,4
**located** 59:14
**long** 12:7,15,24
  13:8,25 14:15
  16:21 18:9,17,25
  23:10 50:22 67:21
**longer** 33:22
**look** 50:22
**looked** 48:17
  53:20 59:11 64:7
**looking** 53:3
**looks** 37:20 38:6
  38:20 40:14 42:12
  42:13,17,20 44:17
  60:2
**lot** 45:4,5 66:21
  67:2

### m

**m** 2:18 4:2 22:25
**mail** 51:8,16,23
**mailed** 66:18
**mails** 50:23 51:13
**making** 44:21
**malgeri** 1:3,20 2:5
  4:1,10,11 5:1 6:1
  6:21 7:1 8:1 9:1
  10:1 11:1 12:1,8
  13:1 14:1 15:1

16:1 17:1 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1 26:1 27:1,3
28:1 29:1 30:1
31:1 32:1 33:1
34:1 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1,7 45:1
46:1,23 47:1,5,12
48:1,25 49:1 50:1
51:1 52:1 53:1,13
54:1,17 55:1,11,15
56:1,17 57:1,4
58:1,5 59:1,2 60:1
60:24 61:1,6,8,18
62:1 63:1 64:1,13
64:25 65:1 66:1
67:1,24 68:1 69:1
69:15 70:1 71:1
72:1 73:3,21
**manufacturer**
24:7 37:18 48:5
65:6,16 66:6,10
**march**   30:24 39:9
39:16
**mark**   35:8 56:21
58:20 60:18
**marked**   35:14
44:14 56:25 57:5
58:23 59:3 60:21
60:25 71:7
**marketing**   10:3
**marriage**   72:16
**married**   12:16
**material**   10:4
**mathias**   2:15
47:14
**matter**   26:10 29:3
29:16 72:18

**matters**   20:23
21:24,25 64:20
**mckeown**   1:4 2:6
**mean**   8:9 21:3
24:13 33:25 45:21
50:20,23 51:7
54:10,14 59:9,24
62:20 63:7 66:15
67:6
**means**   24:14 62:24
**mechanical**   23:6
**mediation**   24:19
24:22,25 25:3,10
**medically**   29:22
**members**   21:6
**mentioned**   9:5,7
23:14 24:8 25:4
65:4
**merry**   64:16
**met**   22:7,9 66:4
**milligram**   41:11
42:7
**minutes**   46:15
**misdemeanor**   49:6
**mislabeled**   6:24
9:9,17
**misstates**   63:9
**mistaken**   32:16
**mojave**   22:23
**money**   42:7
**months**   12:10
18:18 19:4 45:10
**montvale**   2:8
**mood**   30:9,11
37:13
**motions**   67:14
**moving**   38:19
**multiple**   63:19
**muted**   48:9

**n**

**n**   2:2 3:2 4:1,2 5:1
6:1 7:1 8:1 9:1
10:1 11:1 12:1
13:1 14:1,22 15:1
16:1 17:1 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1 26:1 27:1
28:1 29:1 30:1
31:1 32:1 33:1
34:1 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1 45:1
46:1 47:1 48:1
49:1 50:1 51:1
52:1 53:1 54:1
55:1 56:1 57:1
58:1 59:1 60:1
61:1 62:1 63:1
64:1 65:1 66:1
67:1 68:1 69:1,2
70:1,20 71:1 72:1
**name**   4:8 8:22,24
10:21,23 11:2
12:13 14:19 18:7
47:12 66:5 73:2,3
**named**   9:4 47:21
**names**   14:23,25
**need**   11:25 55:5
**needed**   21:12
**nevada**   12:20
15:14 19:18 59:15
**never**   24:22 28:18
33:23 34:11 56:6
58:8 66:4
**new**   1:25 2:8,17
4:4 29:12 49:14
49:15 55:8 72:4,8
73:1

**noah**   1:3,20 2:5
4:10 61:5 69:15
73:3,21
**north**   13:4
**northern**   13:4,9
13:15,17 14:12
**notary**   1:24 4:4
69:22 72:7 73:25
**note**   68:2
**november**   38:19
39:2 59:20
**number**   20:14
22:17 32:18 36:9
**numbers**   36:5

**o**

**o**   3:2 4:2 14:21,22
22:25 31:23 69:2
**o'brien**   2:18 47:5
47:11,13 54:23
55:8 56:21 57:23
58:20 60:18 64:12
64:17 70:23
**oath**   3:12
**objection**   7:9,16
8:5,16 9:18 10:9
20:16 26:3 28:3
28:24 30:4 31:5
33:9,20 34:13
38:5 49:3 50:8,18
51:14,24 52:25
53:8,23 54:9
55:17 56:4 60:7
60:15 62:22 63:8
63:21 64:5 65:9
66:3 67:4,19
**objections**   3:21
**obtained**   43:8
56:12
**obviously**   26:8,10
35:4 53:14 64:3

occasions 32:21,24
occurring 25:15
october 40:15 42:4
offers 27:25 28:7
office 15:14 47:14
officer 17:4,6
oh 29:2
okay 5:14 11:8,23
  12:2,3 34:19
  35:23,24 38:8
  41:25 47:24 51:12
  52:12,21 55:23
  57:18 58:9 61:10
  66:11
once 45:5
ones 31:14,17 56:5
  62:15
ongoings 66:13
open 50:25
opinion 31:16,21
order 1:22 26:8,9
  31:2 49:21
orders 38:23
original 3:9,17
outcome 72:17
outdoor 23:20,20
outfit 32:4
outside 49:23 64:3
owned 13:25

**p**

p 2:2,2 3:2
p.m. 1:17 68:8
pack 31:14,17
  45:16,17
packs 31:14 41:24
  45:20
page 39:8 57:10,16
  57:24 58:3 59:18
  59:20,22,23 60:3,9
  60:9,14 70:6,21
  71:4,8 73:5

pages 59:18
paid 49:4
palm 14:6
paper 63:20
part 6:25 13:5,9
  26:2,21 27:2 53:7
  56:8 62:18 63:17
participating
  58:16
particular 20:12
  23:18,19 24:4
particularly 23:17
parties 1:21 3:7
  5:16 6:2 26:20
  27:12 28:9 48:21
  65:19,25 72:15
partner 19:9
party 5:3,6,20 6:5
  6:12,15 24:17,20
  25:5,19 27:16,19
  28:12
pass 47:6
patent 18:3
payday 20:23 22:3
paying 41:17
pc 2:4
pdfs 38:17
pending 29:14
  50:25
people 67:10
pepper 18:22,23
  18:25 19:5,8,14,21
percent 25:17
performed 10:19
personally 49:18
pharmacologically
  29:22
phone 51:17,22
  59:14
phonetic 14:24

physical 34:16
pills 34:16,22
  55:25 56:9
place 69:11
placed 31:2
places 36:14
plaintiff 1:20 24:6
  35:13 44:13 64:4
  68:4 70:8,10
plaintiff's 36:8,24
  37:2 61:3 62:3
plaintiffs 1:6 2:4
  27:21 64:24 66:5
  68:4
plaza 2:17
pleadings 65:22
  67:17,21
please 4:8
pleased 43:5
pled 49:6
pllc 2:10
point 8:21 19:8,12
  24:21 37:16 52:16
  62:9
popular 29:25
position 24:16
positive 30:11
possessed 34:17
possession 70:12
  70:14,16
possibility 22:13
  56:12
possible 45:22
possibly 49:4
potency 9:23
practice 16:24
  17:22 18:2,14
  23:23,25
practiced 17:18
practicing 19:11

prefaced 49:23
prepare 48:14
presented 54:6,12
presumably 51:5
pretty 52:3
previous 32:21
price 41:15
printed 38:15
prior 8:9 12:18
  22:6,11 63:9
privileged 53:16
pro 20:10,18 21:8
probably 23:12
  27:5 30:14 31:10
  33:6 38:15,17
  45:2,10,11 49:9,15
  59:10 66:6 67:10
procedure 1:23
  57:8
produced 38:24
  39:14
product 6:16,23
  9:8,11,25 10:5,18
  10:24 11:3,6 23:7
  23:8 24:7 33:24
  42:2 43:9,11 44:3
  45:19 48:5 53:5
  54:18,20 55:15
  65:7,11
production 48:17
  61:5,19 64:6
products 33:3
  55:3,7
progress 66:19
  67:13
projects 20:11,19
property 13:23
  14:2
prototypes 23:4
provide 55:20,21
  56:9 68:6

**provided** 21:23
38:11 42:19 56:6
61:25 62:9,13,16
62:25 63:13,24
**providing** 21:10
38:8 62:5
**pty** 1:11
**public** 1:24 4:4
49:5 69:22 72:8
73:25
**purchase** 30:22,23
37:9 44:17,22
45:19
**purchased** 6:16
10:24 11:4,7 31:9
32:10,12 33:12
34:23 36:11,13,15
36:17 37:3,12,13
37:21 38:25 39:10
39:15,24 40:15,24
42:13,21,22 43:5
45:18,23
**purchases** 42:18
46:7
**purchasing** 10:6
32:3,6 36:20,22
38:20 42:25 44:25
**purported** 30:22
**purposes** 37:14
52:14 54:3 62:14
62:21 63:6
**pursuant** 1:21
**purview** 64:4

**q**

**quantity** 10:3
**question** 5:11 11:9
11:11,20,23 20:6
26:7,24 32:23
34:21 49:23 53:18
54:11,16 55:9,14
62:24 71:8

**questionable** 49:9
**questions** 4:19 5:9
5:11 47:4 50:2
52:10 53:14 55:12
55:24 57:21,25
64:20 67:24 71:7
**quick** 46:12
**quite** 57:7 67:21

**r**

**r** 1:24 2:2 3:2 4:2
14:21,22 31:23,23
69:2 72:2,7,23
**rachel** 12:14,15
**rack** 23:9
**rail** 22:23
**raw** 54:4
**read** 20:5,8 36:5
46:23 68:5
**reading** 51:9
**really** 38:22 43:14
**reason** 37:7 39:21
40:21 41:8,12
48:8 73:5
**reasonable** 42:6
**recall** 7:20 8:14
14:12 22:12 31:25
32:3,5,6 34:4
36:19,21,22 37:17
37:22,23 38:8,13
38:14 42:2,8 43:3
43:20 44:21,25
45:9,14 52:24
61:17 62:5
**receive** 25:25
26:25
**received** 17:17
26:14 31:12 36:3
**recess** 46:19
**recognize** 57:11
57:19 59:5,8,22
60:3 61:7 66:7

**recollection** 42:24
47:20 48:4 50:4
50:16,20 53:2
58:15 61:21
**record** 4:9 21:21
55:9 68:3 72:12
**records** 30:22,23
39:14
**recreational** 23:7
23:20,21
**referred** 20:7
66:10
**reflect** 39:18
**reflected** 40:17
41:19
**reflects** 39:23
**regard** 9:17
**regularly** 52:3
**related** 4:16,19
30:9 37:13 72:15
**relating** 52:18,22
**relevant** 66:14
67:3
**relied** 10:5
**reluctant** 48:7
**remarks** 65:2
**remember** 7:22
8:6,8,10,12 13:7
33:16 41:18 42:9
43:4,9 45:13
51:21,25 52:8
58:6,13 62:8
**remembered** 29:4
**reminds** 66:7
**remote** 1:19
**rental** 13:22
**rep** 24:12
**repair** 22:2
**repeat** 16:10
**report** 53:7,10,19
53:21 54:2,2

**reporter** 20:9
35:16 44:16
**reporting** 73:1
**represent** 4:14
35:25 41:14
**representation** 8:3
**representative**
28:19
**representing**
24:16
**represents** 47:14
**reputable** 31:19
31:22
**request** 61:5,19
**requested** 71:3
**research** 51:5,7
**reserved** 3:22
**reserves** 68:4
**residential** 22:3
**resolve** 28:2
**respective** 1:21
3:6
**respond** 51:2 60:4
**responded** 58:8
59:8,12,15 61:11
**responding** 58:14
58:17
**response** 60:6
63:13
**responses** 59:10
59:25 60:13 61:4
**responsive** 61:22
61:25 62:6,16
63:4,19
**reston** 17:20,22,23
18:2
**resulted** 55:16
**results** 34:24 35:3
35:6 43:7,12
52:17,22 53:3
54:5,24,25 55:2,10

55:13,16

**retailer**  37:18
48:10 65:13,14
**retaining**  22:11
**retention**  50:2
**reveal**  7:11,18
8:18 26:5,18 28:4
**review**  43:6,16,19
43:25 50:13 67:14
**reviewed**  48:16
53:11 55:2,11
57:18 63:12 66:25
67:6,21
**reviewing**  57:16
65:23
**reviews**  44:4
**revisit**  50:3
**richardson**  18:16
**ridge**  2:7
**right**  13:12 19:25
22:21 25:10 28:22
32:19 35:18,25
36:24 37:25 38:4
39:5,25 40:2 44:5
44:9 46:21 47:8
49:14 50:17 56:20
57:14 60:24 63:20
64:7 68:5
**rights**  21:2
**ring**  15:7
**road**  2:7
**robert**  1:4 2:6
**role**  6:8,21 21:9
24:4
**roof**  23:9
**routinely**  51:4
**rules**  1:22 11:13
**rulings**  71:7
**rx**  1:12

**s**

**s**  2:2 3:2,2 70:2
73:5
**sale**  44:3 45:4
**sam**  4:17 9:15,25
28:22,23 29:18,19
30:3,13 31:3,8,22
32:3,6,13,18 33:2
33:4,7,12 34:12,14
34:25 36:12,20
37:3 38:21,25
39:15 40:15,25
41:15 42:3,25
44:18,25 46:2
47:21 52:17 53:4
54:21,22 55:15
**samples**  53:5
**satisfaction**  43:7
**saw**  53:6 62:6
65:12
**saying**  28:9 46:6
55:24
**says**  39:6,8
**school**  16:5
**schools**  16:12
**scientific**  52:23
**scientifically**
29:21
**scientist**  10:20,22
**scott**  2:13 4:11
28:8 29:2 48:6,9
**scott's**  65:17
**screen**  35:11 38:17
44:6,6 59:6
**scroll**  35:20 42:14
42:15 58:9 59:17
**sealing**  3:7
**sean**  2:18 47:5,12
48:13 54:11 56:7
57:20 58:6 64:15

**search**  61:22
63:18,23,24
**second**  60:6 61:3
61:15
**security**  20:25
**see**  35:17,22 37:3
37:4 41:22 44:6
44:19,20 57:12,23
60:8
**seek**  26:9
**seeking**  6:22 9:7
48:23
**seen**  34:24 35:6
52:16 59:10
**sell**  31:19,22
**seller**  65:11
**send**  43:18 54:17
55:15
**sending**  55:3
**sent**  55:7 67:3,8,8
**september**  30:25
37:4,9,12 40:7,9
42:4
**service**  3:16 58:11
59:21
**services**  21:10
**session**  48:18
**set**  58:17 60:7
62:14 65:25 72:11
72:20
**setting**  65:5
**settled**  25:24
48:11 65:14,15
**settlement**  26:2,5
26:21,22 27:2,9,13
27:17,23
**sex**  20:21
**shannon**  1:4 2:5
**share**  35:10 44:6
**shared**  63:12

**sheet**  68:7 73:1
**short**  46:19
**shots**  38:18
**show**  35:8 56:17
57:4,10 58:2
**showed**  62:3
**showing**  59:2
60:25
**shown**  65:21
**shows**  38:25 41:2
**sic**  36:9
**sidetracked**  11:13
**sign**  27:9 68:5
**signature**  58:3
59:20 60:3 72:23
**signed**  3:10,12,15
27:18
**significance**  61:17
**similarly**  1:5 2:6
**sir**  4:9 12:13,19
16:22 17:12 19:15
28:10
**sit**  50:15
**sitting**  26:15 41:25
58:15
**situated**  1:5 2:7
**skip**  57:17,21
**social**  20:25
**sold**  11:6
**solutions**  1:10
2:12 4:15 5:2,20
6:2,12,18
**somebody**  66:20
**sorry**  6:3 11:11
16:9 17:25 21:3
28:16 49:22 55:19
57:13
**sound**  13:12
**sounds**  5:18,22
13:11

**[source - true]**

source 55:12
south 12:5
southern 1:2
  15:14
span 20:14 30:23
specific 10:24
  50:19 55:25 58:15
specifically 36:21
  36:22 43:10,20
specified 69:11
specimen 55:21
specimens 34:17
speculate 62:17
speculation 56:8
spell 22:24
spend 19:22
spoken 27:20 66:4
  66:16,17
ss 72:4
stamp 36:5
stamped 35:13
  44:13 70:7,9
start 22:18,20,22
  23:11 30:2,12
started 38:20
state 1:25 4:4,8
  72:4,8
states 1:2
status 25:23
stay 52:2
stipulated 3:5,20
stopped 22:14
store 36:18,23
  45:3,5
straight 26:12
strategy 66:23
street 2:12 12:5,19
  12:23
stuff 67:9
subject 32:13 65:7

submitted 33:23
subscribed 69:18
  73:22
subsequent 42:18
subsequently
  42:20
sue 29:2
sued 6:10,17 24:20
  25:4 48:10 65:8
suffered 6:23
suing 24:6 48:4
  65:5,19
suit 5:4,7 48:19
  52:6
suite 2:12,17
summary 53:25
supplement 4:17
  9:13 10:2 28:22
  29:20,24,25 61:16
supplemental 60:6
  61:3,12,15
supplements
  32:10,11 36:12
supply 1:12
suppose 22:13
  56:11
sure 7:25 25:18
  26:12 36:7 46:14
  51:19 52:7 53:13
  62:25
suspected 10:11
switch 41:4
sworn 3:10 4:3
  69:5,18 72:11
  73:22

---

**t**

t 3:2,2 69:2 70:2
  72:2,2
take 31:3 45:6,12
  46:12 59:18

taken 1:20 11:16
  30:18 46:20,24
talk 28:21
talked 48:21 66:23
  67:15
talking 9:11 25:5
  54:24
tampa 2:13 4:14
technical 9:6 20:4
technically 49:20
technology 23:2,3
  23:5,7
telephone 7:13
tell 29:23 30:21
  34:6 48:7 50:9,13
ten 46:15,17
tenant 20:24 22:3
terms 24:15 61:13
  67:13
test 10:23 11:3
  52:16,22 53:3
  54:24,25 55:16
tested 11:5,5 34:12
  34:14 55:4,22
  56:2,7
testified 4:5 52:21
testify 69:5
testimony 10:10
  20:8 48:24 54:2
  63:9 69:6,10
  72:13
testing 34:25
  52:11 53:10 54:5
  54:8,18 55:10,13
  56:10
tests 52:17
thank 47:6,8 56:20
  64:13,15 67:23,25
thing 19:24
things 22:17 62:12

think 28:11,17
  31:9 32:14,15
  33:10 39:19 41:13
  43:4 49:5 50:5
  51:12 52:14 53:17
  56:16
thinking 41:6
thought 5:22 6:6
  50:10,14
three 18:11 23:12
  42:21 45:10
throw 33:19
throwing 34:5
time 1:17,23 3:22
  11:25 15:22 19:22
  21:14 32:17 37:16
  42:23 43:2 44:24
  45:7,8 46:13 47:7
  64:14 69:10
times 42:22 57:7
title 20:23 22:4
today 4:21 5:8,13
  26:15 28:21 41:25
  48:2 50:15 58:16
today's 48:15
  56:22 57:5 59:4
  61:2 62:6
top 57:12
topic 50:24
total 19:3
touch 7:7 52:3
trafficking 20:21
  20:21
transcript 68:6
  69:9,9 70:18
transcripts 46:25
  51:16
trial 3:22
tried 43:5
true 9:24 30:25
  32:20,23 45:22

[true - zoom]                                                                                                Page 12

69:9 72:12
**truth** 69:5
**try** 11:19,21 17:5
    21:15 30:5 35:23
    44:5 51:10
**trying** 55:11
**turned** 64:3
**two** 13:10 14:18
    14:23 16:11 29:9
    45:10
**type** 17:21 20:12
    21:24 23:5,8,18,19
    52:23 54:2
**types** 20:14

**u**

**u** 3:2
**ultimately** 62:16
    63:13
**unable** 21:7
**understand** 4:20
    5:12 51:19 52:4
    55:4 65:5
**understanding** 6:7
    6:20 24:3 25:22
    28:23 29:17 67:11
**understood** 64:11
**unfortunately** 5:8
**united** 1:2
**university** 16:6,7
    16:13,14
**unpaid** 29:5
**unsigned** 3:14
**upset** 50:11,12
**use** 4:17 33:15,18
    45:25
**usually** 31:14,17

**v**

**v** 22:25 73:2
**vague** 54:16

**vaguely** 44:23
**value** 41:14,14
    43:13
**variation** 66:8
**various** 20:19 22:4
**vegas** 13:5,9,15,17
    14:13 15:12 29:14
**vehicle** 23:9
**vendor** 6:16
**vendors** 31:19,22
**verification** 59:22
    59:23 60:9,14
**verified** 59:24
**veritext** 73:1
**versus** 37:17
**violence** 20:20
**virginia** 17:20,22
    49:11
**vitamin** 29:20
**vitamins** 1:10 2:11
    4:14,25 5:19,25
    6:4 25:20 27:15
    27:24 33:13 34:12
    40:25 41:5,22
    42:2,23,25 43:8
    45:19 56:2 65:12
    66:8,9 73:2
**voice** 24:14
**volunteer** 20:18
    21:7

**w**

**w** 31:23
**waived** 3:9
**want** 62:17
**wanted** 30:5 43:10
    64:25
**warn** 8:17 43:10
**warning** 7:17
**washington** 16:6
    16:12,16 17:24

**way** 1:12 31:19
    34:12 42:12,16,16
    63:16 72:17
**we've** 12:9 46:10
    67:15
**week** 37:20
**weeks** 29:9
**went** 16:11 42:10
    58:18
**west** 2:12
**whereof** 72:19
**white** 38:12
**wife** 12:12 14:18
    15:17 45:22,25
**wife's** 14:19
**wilson** 1:4 2:5
**winding** 12:22
**witness** 3:10,16,18
    4:3 7:10,17 8:17
    9:20 26:4,7 28:4
    47:8 64:15 68:9
    72:10,13,19
**witnesses'** 73:3
**wolf** 1:4 2:5 13:19
    13:20 14:9
**words** 9:25 38:17
**work** 8:25 10:12
    15:15,17 16:18
    18:9 20:2 22:19
    23:14
**worked** 15:20,23
    21:15 22:9
**working** 20:19
    22:14 23:11
**works** 22:10
**worry** 58:3
**write** 50:13
**written** 53:25
**wrong** 39:20
**wrote** 43:6,10

**x**

**x** 1:3,14 70:2,20

**y**

**yeah** 13:13 16:11
    45:11 51:11,15
    63:10
**year** 8:8,10 12:17
    13:2 14:16 15:24
    22:15 32:19
**year's** 49:14,15
**years** 7:21 13:10
    16:23 18:11 19:3
    23:12,13 30:16,19
    32:19 49:15,16
    52:4
**york** 1:25 2:8,17
    4:4 72:4,9 73:1

**z**

**zoom** 11:18 35:19

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.