**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.: 1:19-CV-22702-KMW**

NOAH MALGERI, KALYN WOLF,
BILL WILSON, SHANNON HOOD,
ERIC FISHON, and ROBERT
MCKEOWN on behalf of themselves
and all others similarly situated,

      Plaintiffs,

  vs.

VITAMINS BECAUSE LLC, CT
HEALTH SOLUTIONS LLC, GMAX
CENTRAL LLC, and ASQUARED
BRANDS LLC,

      Defendants.

_____

**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ........................................................................1

CLASS CERTIFICATION STANDARD AND RULE 23 REQUIREMENTS ..........................4

ANALYSIS ......................................................................................................6

    A.  The Adequately Defined Classes to Be Certified ........................................6

    B.  Rule 23(a) Requirements ..................................................................8

        1.    Numerosity........................................................................8

        2.    Commonality......................................................................9

        3.    Typicality .......................................................................11

        4.    Adequacy ........................................................................13

    C.  Rule 23(b) Requirements ................................................................14

        1.  Predominance ....................................................................15

            a.  Causes of Action ..........................................................19

                i.      Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and State Consumer Protection Claims....................19

                ii.     Negligent and Intentional Misrepresentation...................23

                iii.    Breach of Express and Implied Warranties .....................24

            b.  Varying Legal and Proof Requirements can be Most Efficiently Managed Through Sub-classing ................................................24

            c.  Damages Calculations Do Not Defeat Predominance as a Classwide Method for Damage Exists ..............................................25

            d.  Common Issue of Material Omissions Predominate as to the Proposed Classes............................................................27

        2.  Superiority........................................................................27

    D.  CONCLUSION ............................................................................30

# TABLE OF AUTHORITIES

**CASES**                                                                                  **PAGE(S)**

*Abby v. Paige,*
    Abby v. Paige, 282 F.R.D. 576, 578 (S.D. Fla. 2012) ......................................................5

*Agan v. Katzman & Korr, P.A.,*
    222 F.R.D. 692, 696 (S.D. Fla. 2004) ...............................................................9, 11, 12

*Alderman v. GC Services Ltd. Partnership,*
    2:16-CV-14508, 2018 WL 542455, at *6 (S.D. Fla Jan. 19, 2018) ..............................14

*Alhassid v. Bank of Am., N.A.,*
    307 F.R.D. 684, 697 (S.D. Fla. 2015) ............................................................................12

*Allapattah Servs., Inc. v. Exxon Corp.,*
    333 F.3d 1248, 1261 (11th Cir. 2003) ...................................................................15, 27

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) ...............................................................................................6, 13

*Andrews v. Am. Tel. & Tel. Co.,*
    95 F.3d 1014, 1027 (11th Cir. 1996) ........................................................................5, 25

*Betts v. Reliable Collection Agency, Ltd.,*
    659 F.2d 1000, 1005 (9th Cir. 1981) .............................................................................25

*Brown v. SCI Funeral Servs. of Fla.,*
    212 F.R.D. 602, 606 (S.D.Fla.2003) ..............................................................................15

*Busby v. JRHBW Realty, Inc.,*
    513 F.3d 1314, 1323 (11th Cir. 2008) ..........................................................................13

*Bussey v. Macon Cnty. Greyhound Park, Inc.,*
    562 Fed.Appx. 782, 787–88 (11th Cir.2014) .................................................................7

*C–Mart, Inc. v. Metropolitan Life Ins. Co.,*
    299 F.R.D. 679, 685 (S.D. Fla. 2014) .............................................................................5

*Cardenas v. Toyota Motor Corp.,*
    18-22798-CIV, 2021 WL 5811741, at *9 (S.D. Fla. Dec. 6, 2021)................... 18-19, 27

*Carriuolo v. Gen. Motors LLC,*
    14-61429-CIV, 2015 WL 12434325 (S.D. Fla. July 9, 2015) ...........................19, 20, 27

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484, 493-494 (S.D. Fla. 2003) .................................................................12

*Cherry et al. v. Dometic Corp.*,
986 F.3d 1296, 1303 (11th Cir. 2021) ...........................................................................7

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
332 Fed. Appx. 565, 567 (11th Cir.2009)....................................................................21

*Collins v. Quincy Bioscience, LLC*,
19-CV-22864, 2020 WL 3268340, at *29 (S.D. Fla. Mar. 19, 2020)......................25, 26

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426, 1433-35 (2013)..................................................................................25

*Cox v. Am. Cast Iron Pipe Co.*,
784 F.2d 1546, 1553 (11th Cir.1986) ......................................................................9, 27

*Cty. of Monroe, Fla. v. Priceline.com, Inc.*,
265 F.R.D. 659, 669 (S.D. Fla. 2010) ..........................................................................14

*Davis v. Powertel*,
776 So. 2d 971, 974 (Fla. 1st DCA 2000) ...............................................................20, 21

*De Leon–Granados v. Eller & Sons Trees, Inc.*,
497 F.3d 1214, 1218 (11th Cir. 2007) ...........................................................................5

*Dickens on behalf of estate of Dickens v. GC Servs. Ltd. P'ship*,
336 F. Supp. 3d 1369, 1380 (M.D. Fla. 2018).........................................................29, 30

*Dujanovic v. MortgageAmerica, Inc.*,
185 F.R.D. 660, 668 (N.D. Ala. 1999)..........................................................................14

*Evans v. United States Pipe & Foundry*,
696 F.2d 925, 930 (11th Cir. 1983) ...............................................................................9

*Fabricant v. Sears Roebuck*,
202 F.R.D. 310, 314-15 (S.D. Fla. 2001).....................................................................13

*Fitzpatrick v. General Mills, Inc.*,
263 F.R.D. 687, 697 (S.D. Fla. 2010)...........................................................................21

*Fosbrink v. Area Wide Protective, Inc.*,
325 F.R.D. 474, 483 (M.D. Fla. 2018)..........................................................................29

*Garcia-Celestino v. Ruiz Harvesting, Inc.*,

280 F.R.D. 640, 646 (M.D. Fla. 2012)......................................................................12, 13, 30

*General Telephone Co. of the Southwest v. Falcon,*
   457 U.S. 147, 160 (1982)..................................................................................................5

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,*
   317 F.R.D. 374, 402 (S.D.N.Y. 2016) ................................................................19, 22, 23

*Greene v. Gerber Products Co.,*
   262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017) .........................................................................22

*Hammett v. Am. Bankers Ins. Co. of Fla.,*
   203 F.R.D. 690, 694 (S.D. Fla. 2001).............................................................................12

*Herman v. Seaworld Parks & Entertainment, Inc.,*
   320 F.R.D. 271, 289 (M.D. Fla. 2017)..........................................................................9, 11

*In re Checking Account Overdraft Litig.,*
   275 F.R.D. 666 (S.D. Fla. 2011) .....................................................................................30

*In re Gen. Motors Corp. Engine Interchange Litig.,*
   594 F.2d 1106, 1129 (7th Cir. 1979) ............................................................................5, 25

*In re Scotts EZ Seed Litig.,*
   304 F.R.D. 397, 409 (S.D.N.Y. 2015) .............................................................................23

*In re Sugar Indus.  Antitrust  Litig.,*
   73 F.R.D. 322, 356 (E.D. Pa. 1976) ...............................................................................30

*In re Tobacco II Cases,*
   46 Cal.4th 298, 327 (2009) .............................................................................................23

*In re Terazosin Hydrochloride,*
   220 F.R.D. 672, 687 (S.D.Fla. 2004)..............................................................................10

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124, 140 (2d Cir. 2001)....................................................................................30

*Jackson v. Motel 6 Multipurpose Inc.,*
   130 F.3d 999, 1006 (11th Cir. 1997) ..............................................................................28

*Kerr v. City of W. Palm Beach,*
   875 F.2d 1546, 1558 (11th Cir.1989) .............................................................................15

*Klay v. Humana Inc.,*
   382 F.3d 1241, 1255 (11th Cir. 2004) ...........................................15, 17, 18, 27, 28, 29

*Koch v. Acker, Merrall & Condit Co*.,
    18 N.Y.3d 940, 940–41 (2012) .................................................................................22

*Kornberg v. Carnival Cruise Lines, Inc.,*
    741 F.2d 1332, 1337 (11th Cir.1984) ................................................................11, 12

*Kurtz v. Kimberly-Clark Corp.,*
    321 F.R.D. 482, 530 (E.D.N.Y. 2017) .................................................................. 22-23

*Lambert v. Nutraceutical Corp*.,
    870 F.3d 1170, 1183-84 (9th Cir. 2017) ....................................................................26

*Latman v. Costa Cruise Lines, N.V.,*
    758 So. 2d 699 (Fla. Dist. Ct. App. 2000) .................................................................21

*Little v. T– Mobile USA, Inc.,*
    691 F.3d 1302, 1304 (11th Cir. 2012) .........................................................................5

*Mael v. Evanger's Dog and Cat Food Co., Inc.,*
    3:17-cv-05469-RBL (W.D. Wash.) ..............................................................................8

*Mohamed v. Am. Motor Co., LLC,*
    15-23352-CIV, 2017 WL 2984165, at *3–4 (S.D. Fla. July 12, 2017) ..........................5

*Moore v. GNC, Holdings, Inc.,*
    No. 12-61703-CIV, 2013 WL 12237784, at *7 (S.D. Fla. Oct. 17, 2013) ......... 19-20, 21

*Murray v. Auslander,*
    244 F.3d 807, 811 (11th Cir. 2001) .............................................................................9

*Nelson v. Mead Johnson Nutrition Co.,*
    270 F.R.D. 689, 694 (S.D. Fla. 2010)..............................................................10, 20, 21

*Orlander v. Staples, Inc.,*
    802 F.3d 289, 302 (2d Cir. 2015).................................................................................22

*Palm Beach Golf Center-Boca, Inc. v. Sarris,*
    311 F.R.D. 688, 695 (Aug. 4, 2015) .............................................................................9

*Piambino v. Bailey*,
    610 F.2d 1306, 1326 (5th Cir. 1980) ..........................................................................25

*Piazza v. EBSCO Indus. Co.,*
    273 F.3d 1341, 1346 (11th Cir. 2001) ........................................................................11

*Prado-Steiman v. Bush,*
221 F.3d 1266, 1269 (11th Cir. 2000) ............................................................. 11

*Racies v. Quincy Bioscience, LLC,*
15-CV-00292-HSG, 2017 WL 6418910, at *4 (N.D. Cal. Dec. 15, 2017) .................. 26

*Rensel v. Centra Tech, Inc.,*
20-10894, 2021 WL 2659784, at *7-8 (11th Cir. June 29, 2021) ............................... 7

*Rikos v. Procter & Gamble Co.,*
799 F.3d 497, 523-24 (6th Cir. 2015) ............................................................. 26

*Rodriguez v. It's Just Lunch, Int'l,*
300 F.R.D. 125, 147 (S.D.N.Y. 2014) ............................................................. 22

*Rollins, Inc. v. Butland,*
951 So. 2d 860, 879 (Fla. Dist. Ct. App. 2006) ........................................... 22, 23

*Rutstein v. Avis Rent–A–Car Sys., Inc.,*
211 F.3d 1228, 1234 (11th Cir.2000) ............................................................. 15

*Sanchez-Knutson v. Ford Motor Co.,*
310 F.R.D. 529, 537 (S.D. Fla. 2015) ......................................................... 15, 16

*Sanchez-Knutson v. Ford Motor Co.,*
52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014) ............................................... 24

*Shin v. Plantronics, Inc.,*
5:18-cv-05626 NC (N.D. Cal.) ....................................................................... 8

*Siemer v. Assoc. First Capital Corp.,*
CV97-281TUCJMRJCC, 2001 WL 35948712, at *4 (D. Ariz. Mar. 30, 2001) ............. 23

*Surowitz v. Hilton Hotels Corp.,*
383 U.S. 363, 370-73 (1996) ....................................................................... 14

*Tefel v. Reno,*
972 F. Supp. 608, 617 (S.D. Fla. 1997) .......................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo,*
577 U.S. 442, 452 (2016) ....................................................................... 17, 27

*Valley Drug Co. v. Geneva Pharm., Inc.,*
350 F.3d 1181, 1187 (11th Cir. 2003) ........................................................... 4, 5

*Vega v. T–Mobile U.S.A. Inc.,*
    564 F.3d 1256, 1266 (11th Cir. 2009) ...................................................................4, 5, 28

*Vine v. PLS Fin. Services, Inc.,*
    331 F.R.D. 325, 339 (E.D. Tex 2019).........................................................................23

*Wal–Mart Stores, Inc. v. Dukes,*
    564 U.S. 338, 350 (2011).................................................................................4, 10, 16

*Williams v. Mohawk Indus., Inc.,*
    568 F.3d 1350, 1355 (11th Cir. 2009) ..................................................................10, 28

*Wolf v. Hewlett Packard Co.,*
    5:15-cv-01221-TJH-GJS (C.D. Cal.) ...............................................................................8

## STATUTES, RULES

Federal Rule of Civil Procedure 23 ..................................................1, 5, 13, 27, 28, 30

Fla. Stat. §§ 501.204(1), 501.211..........................................................................20

General Business Law §§ 349 and 350..........................................................................22

Plaintiffs, Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, and Robert McKeown (collectively, "Plaintiffs"[1]), on behalf of themselves and all others similarly situated, by and through undersigned counsel, move for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3):[2]

## I.  INTRODUCTION AND BACKGROUND

The predominant issue in this case is straightforward: Were the SAMe[3] supplements purchased by Plaintiffs and their proposed classes defectively manufactured and/or deficient in their included amounts of SAMe to deprive purchasers the benefit of their bargain? This factual determination can be resolved on a class-wide basis because all class members[4] purchased s-adenosyl-methionine ("SAMe") dietary supplements which were defectively manufactured and labeled by Defendants Vitamins Because LLC and CT Health Solutions LLC (together, "Vitamins Because" or "VB" or "Defendant Manufacturer")[5] through their standardized processes.[6]

As such, all class members were subject to the same common course of misconduct committed by Defendants Vitamins Because, Gmax Central LLC ("Gmax" or "NusaPure") and aSquared Brands LLC ("aSquared") (collectively, "Defendants") which included defective manufacturing practices which were not compliant with federal regulations and current Good

---

[1] Plaintiff Eric Fishon does not join this motion for class certification, but rather will pursue his remaining claims in this case against Defendants Vitamins Because LLC and CT Health Solutions LLC on an individualized basis.

[2] Portions of this Motion and the attached Exhibits have been designated "confidential" by Defendants. Plaintiffs are filing the confidential portions redacted so that such information can be filed under seal.

[3] S-adenosylmethionine, the active ingredient in the dietary supplement at issue in this litigation will be referred to as "SAMe" as is common in the supplement industry.

[4] The classes are defined *infra*, § III, A.

[5] The SAMe dietary supplements which were manufactured and labeled by Vitamins Because and are at issue in this litigation will be referred to as the "subject product."

[6] ECF No. 176, Third Amended Complaint ("TAC"), ¶¶ 1-6; ███████████████████████████████████████████████████████████████████████████████████

Manufacturing Practices ("cGMP"). Every class member was charged and paid the sales price for their purchase of the subject product which, because of its defective and deficient nature, was not fit for typical supplement use and of no value (or materially less) value to consumers.[7]

All of the experts agreed that Vitamins Because formulated and manufactured the subject product without any understanding that they were using a substance which contained about only one-half of the active SAMe ingredient which they advertised was contained in their supplements, and that, therefore, every 100 mg of the product contained only 50 mg of actual SAMe. The result was that the Defendants' business practices violated consumer statutes in Florida and many other states by manufacturing, labeling and/or selling deceptively labeled SAMe supplements which were uniformly underfilled, by at least half, with actual active SAMe content. The product was also defectively manufactured, and not in compliance with federal regulations and cGMP.[8] Defendants' misconduct also constituted a breach of implied warranties of merchantability and the express warranty created by the subject product label claims, and intentional and/or negligent misrepresentation.[9]

Plaintiffs seek to certify a nationwide class, numbering in the thousands,[10] of persons who purchased the subject product through Amazon.com. Putative nationwide class members assert Florida causes of action[11] against Defendants for their alleged misconduct which occurred in

---

[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[8] *See* Plaintiffs' Motion for Summary Judgment; ECF No. 176, TAC ¶¶ 130-28; ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[9] *See* Plaintiffs' Motion for Summary Judgment; ECF No. 176, TAC ¶¶ 219-255, 277-307; ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[10] *See infra*, § III, B, 1.
[11] ECF No. 176, TAC, §§ Counts 1, 8-13.

Florida.[12] Plaintiffs also seek to certify state classes of persons who purchased the subject product through Amazon.com in their particular states of residence.[13] Putative members of the state classes assert state-specific consumer protection claims[14] and seek recovery under their particular state law for Defendants' misconduct which was directed towards purchasers in their given state.

Lastly, Plaintiffs Wolf, Hood, and Mckeown also seek to certify an aSquared class of persons who, like them, purchased the subject product through Amazon.com from aSquared, an online retailer of the subject product.[15] Putative members of the aSquared class assert their claims against and seek recovery from Defendant aSquared who sold them the subject product under its own private label. Similarly, Plaintiff Wilson seeks to certify a Gmax class of persons who, like him, purchased the subject product through Amazon.com from Gmax, another online retailer of the subject product.[16] Putative members of the Gmax class assert their claims against and seek recovery from Defendant Gmax who sold them the subject product under its own private label.

Sales records identifying the purchasers of the subject product and their purchase

---

[12] ECF No. 176, TAC ¶¶ 14-18; ECF No. 176-9, at 3-5. The manufacturing, labeling, and wholesale purchase of all subject product SAMe supplements took place in Florida. *Id*. All Defendants are located in Florida and conduct their business there. *Id*.

[13] Plaintiff Malgeri, a resident of Nevada, seeks to certify a Nevada class of all persons who purchased the subject product through Amazon.com in or as a resident of Nevada. Plaintiff Wolf, a resident of Arizona, seeks to certify an Arizona class of all persons who purchased the subject product through Amazon.com in or as a resident of Arizona. Plaintiff Wilson, a resident of California, seeks to certify a California class of all persons who purchased the subject product through Amazon.com in or as a resident of California. Plaintiff Hood, a resident of New York, seeks to certify a New York class of all persons who purchased the subject product through Amazon.com in or as a resident of New York. Plaintiff Mckeown, a resident of Texas, seeks to certify a Texas class of all persons who purchased the subject product through Amazon.com in or as a resident of Texas. See *infra*, § III, A.

[14] ECF No. 176, TAC, §§ counts 2-7, 13.

[15] ███████████████████████████████████████████

███████████

[16] ████████████████████████████████████████████

███████████

information are available in Amazon databases and the records of subject product retailers. Class membership can be confirmed through these records.[17]

Plaintiffs seek the return of the monies class members paid for the worthless subject product SAMe supplements which they purchased,[18] and to stop Defendants' business practice of manufacturing, labeling, and/or selling false and misleadingly labeled SAMe supplements. Plaintiffs also seek additional and alternative forms of damages on behalf of the proposed classes, including: punitive damages, statutory damages, attorneys fees and litigation costs.

On this motion, the Court need not decide whether the label claims which Defendants employed on the subject product SAMe supplements were, in fact, false or misleading, and the cause of injury to consumers. What matters at this stage is that the ultimate determination can be resolved on a class-wide basis, based on evidence common to the proposed classes.

## II.     CLASS CERTIFCATION STANDARD AND RULE 23 REQUIREMENTS

Rule 23 establishes "the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). "A party seeking class certification must affirmatively demonstrate compliance with [Rule 23]," *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), and a district court "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega v. T–Mobile U.S.A. Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009).

A district court "should not determine the merits of [a] plaintiff's claim at the class certification stage, [but] the trial court can and should consider the merits of the case *to the degree*

---

[17] *See infra*, § III, A.

[18] ███████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████

*necessary* to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug*, 350

F.3d at 1188, n.15 (emphasis added). Thus, a district court may "probe behind the pleadings before

coming to rest on the certification question." *General Telephone Co. of the Southwest v. Falcon*,

457 U.S. 147, 160 (1982). A district court has broad discretion in deciding whether or not to certify

a class. *Mohamed v. Am. Motor Co., LLC*, 15-23352-CIV, 2017 WL 2984165, at *3–4 (S.D. Fla.

July 12, 2017) (citing *De Leon–Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th

Cir. 2007)). Federal Rules also recognize a district court's subclassing power as a method to more

efficiently manage a certified case. *See* Fed. R. Civ. Proc. 23; *In re Gen. Motors Corp. Engine

Interchange Litig.*, 594 F.2d 1106, 1129 (7th Cir. 1979); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d

1014, 1027 (11th Cir. 1996).

The requirements specified in Rule 23(a), as well as at least one of the requirements of

Rule 23(b) must be met. *Vega*, 564 F. 3d at 1265. In addition, "[a] plaintiff seeking certification

of a claim for class treatment must propose an adequately defined class." *C–Mart, Inc. v.

Metropolitan Life Ins. Co.*, 299 F.R.D. 679, 685 (S.D. Fla. 2014) (citing *Abby v. Paige*, 282 F.R.D.

576, 578 (S.D. Fla. 2012)).

Under Rule 23(a), a class may be certified if:

(1) The class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or
defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the
class.

Fed. R. Civ. Proc. 23(a).

A district court must then determine whether the proposed class satisfies the requirements

of Rule 23(b). *Little v. T– Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Here, Plaintiffs

seek certification under Rule 23(b)(3), which requires that common questions predominate over

individual interests and that a class action is the superior means of adjudicating the controversy. *Id.*; *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

This case is prime for class certification because Plaintiffs and their proposed classes purchased the same subject product SAMe supplements, which were manufactured by the same Defendant Manufacturer, Vitamins Because, through the same defective and noncompliant manufacturing processes,[19] and which were all uniformly underfilled and deficient in their SAMe strength.

### III.   **ANALYSIS**

#### A.    **The Adequately Defined Classes to Be Certified**

1) Plaintiffs' proposed nationwide class is defined as follows:

   **All persons who purchased the subject product through Amazon.com in or as a resident of the United States of America.[20]**

2) Plaintiff Malgeri's proposed Nevada class is defined as follows:

   **All persons who purchased the subject product through Amazon.com in or as a resident of Nevada.[21]**

3) Plaintiff Wolf's proposed Arizona class is defined as follows:

   **All persons who purchased the subject product through Amazon.com in or as a resident of Arizona.[22]**

---

[19] ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████

[20] The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities. Excluded from this proposed class are any persons or other entity related to or affiliated with Defendants or any sellers of the subject product; any person, firm, trust, corporation, or other entity who purchased for resale from Defendants, or any entity related to or affiliated with Defendants; or any person who has an action for damages for personal injury or death or property damage relating to the subject product.

[21] *Id.* (incorporating above definition of "persons" and class exclusions); *see supra*, fn. 20.

[22] *Id.* (incorporating above definition of "persons" and class exclusions); *see supra*, fn. 20.

4)  Plaintiff Wilson's proposed California class is defined as follows:

**All persons who purchased the subject product through Amazon.com in or as a resident of California.[23]**

5)  Plaintiff Hood's proposed New York class is defined as follows:

**All persons who purchased the subject product through Amazon.com in or as a resident of New York.[24]**

6)  Plaintiff Mckeown's proposed Texas class is defined as follows:

**All persons who purchased the subject product through Amazon.com in or as a resident of Texas.[25]**

7)  Plaintiffs Wolf's, Hood's, and Mckeown's proposed aSquared class is defined as follows:

**All persons who purchased the subject product as sold by aSquared through Amazon.com in or as a resident of the United States of America.[26]**

8)  Plaintiff Wilson's proposed nationwide class is defined as follows:

**All persons who purchased the subject product as sold by Gmax through Amazon.com in or as a resident of the United States of America.[27]**

"An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 Fed.Appx. 782, 787–88 (11th Cir.2014). Ascertainability does not mandate proof of administrative feasibility or convenience. *Cherry et al. v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021). Rather, "[a] proposed class is ascertainable if it[s] . . . membership is capable of determination." *Id.*, at 1304. *See also Rensel v. Centra Tech, Inc.*, 20-10894, 2021 WL 2659784, at *7-8 (11th Cir. June 29, 2021).

Here, class membership for the relevant purchasers of the subject product is capable of determination by reference to objective criteria available in the Amazon sales records concerning

---

[23] *Id*. (incorporating above definition of "persons" and class exclusions); *see supra*, fn. 20.
[24] *Id*. (incorporating above definition of "persons" and class exclusions); *see supra*, fn. 20.
[25] *Id*. (incorporating above definition of "persons" and class exclusions); *see supra*, fn. 20.
[26] *Id*. (incorporating above definition of "persons" and class exclusions); *see supra*, fn. 20.
[27] *Id*. (incorporating above definition of "persons" and class exclusions); *see supra*, fn. 20.

the sale of the subject product on Amazon.com. As Defendants' production of some of these sales records from their own Amazon accounts demonstrates, Amazon.com, Inc. ("Amazon") maintains sales data as to all purchases of the subject product, including: name of purchaser, shipping address, email, and purchase information (e.g., sales price, date, quantity purchased, etc.).[28]

Moreover, should a class be certified, Amazon has indicated in discovery that it is able and willing to run queries in their database to readily identify customers who purchased the subject product for purposes of class member identification and notice.[29] Amazon has successfully used the direct notice process in a number of class actions, including *Wolf v. Hewlett Packard Co.*, 5:15-cv-01221-TJH-GJS (C.D. Cal.), *Mael v. Evanger's Dog and Cat Food Co., Inc.*, 3:17-cv-05469-RBL (W.D. Wash.), and *Shin v. Plantronics, Inc.*, 5:18-cv-05626 NC (N.D. Cal.). The classes are thus readily ascertainable utilizing class-wide sales data that exists within Amazon's database. Sales records which identify class members and their purchases of the subject product are also possessed by the subject product retailers.[30]

**B.** **Rule 23(a) Requirements**

**1.** ***Numerosity***

---

[28] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

[29] Exh. 9, "Amazon's Amended Objections to Subpoena," at 4. Amazon's data base queries and identification of products and their purchasers is done through the relevant date of sales and the product's uniquely assigned Amazon Standard Identification Numbers ("ASINs") which categorize each product sold on Amazon.com. This information is available and has been produced by the Amazon retailers who sold the subject product. ████████████████████
████████████████████████████████████████████████████████████

Thus, although not necessary for Rule 23 certification, Plaintiffs have prudently secured third-party cooperation before making their motion for class certification.

[30] ████████████████████████████

"Parties seeking class certification do not need to know the precise number of class members." *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 696 (S.D. Fla. 2004) (Citation and quotation omitted).  A court may use common sense assumptions to find support for numerosity, *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "The numerosity requirement 'imposes a 'generally low hurdle.'" *Herman v. Seaworld Parks & Entertainment, Inc.,* 320 F.R.D. 271, 289 (M.D. Fla. 2017) (citing *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (Aug. 4, 2015)).  Plaintiffs must simply provide the court with *some* means to make an estimated factual determination that the numerosity requirement is met. *See Seaworld,* at 289 (citing *Vega*, 564 F.3d at 1267). Generally, a class comprised of at least 40 members is adequate, and less than 21 members is inadequate. *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir.1986).

Defendants in this case have produced sales data spreadsheets themselves showing, in the aggregate, hundreds and thousands of sales of the subject product SAMe through Amazon.com.[31] Proposed classes can be estimated to consist of thousands of class members, far in excess of the 21-40 member minimum established by the Eleventh Circuit. Their approximate aggregate damages for their purchases of the subject product will number in the millions of dollars.[32]

### 2.    *Commonality*

Under Rule 23(a)(2)'s commonality requirement, a class action must involve an issue that is susceptible to class-wide proof. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The commonality element is generally satisfied where plaintiffs allege that "[d]efendants have engaged

---

[31] *See e.g.* ▮▮▮▮▮▮▮▮▮▮▮▮
[32] *See* ECF No. 190 ("Plaintiffs' Opposition To Defendants Vitamins Because LLC and CT Health Solutions LLC's Motion to Dismiss the Third Amended Complaint"); ECF No. 221 ("Oder denying Motion to Dismiss for Lack of Subject Matter Jurisdiction").

in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D.Fla. 2004). Plaintiffs face a "low hurdle" in bearing this "light" burden, as commonality "does not require that all questions of law and fact raised be common." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Rather, it requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Id.*

Class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide-resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . [is] the capacity of a class proceeding to generate common *answers* apt to drive the resolution of the litigation.") (quotations and citations omitted). For purposes of Rule 23(a)(2), "even a single common question will do." *Id.*

This case involves several issues of law or fact that are common to the proposed classes, including (but not limited to) the following: (1) whether the subject product label claims regarding the amounts of SAMe included in the SAMe capsules were false or misleading to the reasonable consumer; (2) whether the alleged mislabeling would deceive an objective consumer acting reasonably under the circumstances; (3) whether Plaintiffs and proposed class members suffered any economic loss from the deceptive labeling; and (4) whether the subject product SAMe supplements were defectively manufactured and noncompliant with federal regulations. These issues are central to Defendants' liability under FDUTPA and Plaintiffs' other claims, and resolution of these issues will affect all members of the putative class. *See, e.g., Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 694 (S.D. Fla. 2010) (holding that the commonality requirement was satisfied in a FDUTPA class action where common issues existed regarding whether defendant's representations of its

product were true and whether those representations would deceive objective consumers). Plaintiffs, therefore, have satisfied the commonality requirement.

Moreover, here the predominant issue in the case is an overarching merits issue – whether the subject product labeling was materially false or misleading to reasonable consumers. Plaintiffs' claims arise out of the same course of conduct (i.e. Defendant Manufacturer's defective manufacturing processes and deceptive labeling practices) and are based on the same legal theories as all other putative class members. Every putative class member purchased SAMe supplements manufactured by Vitamins Because and suffered economic damages in not receiving the value of their purchase. Thus, common answers to issues of fact and law will drive the resolution of the litigation.

### 3. *Typicality*

Rule 23(a)(3) requires that the "claims … of the representative parties [be] typical of the claims … of the class." *Id*. "The main focus of the typicality requirement is that the named plaintiffs will advance the interests of the class members by advancing their own interests." *Id*. (citing *Agan*, 222 F.R.D. 692 at 698). Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir.1984)

Typicality and commonality are related, with commonality referring to the characteristics of the class as a whole, and typicality focusing on the named plaintiffs' claims in relation to the class. *See Piazza v. EBSCO Indus. Co*., 273 F.3d 1341, 1346 (11th Cir. 2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000).

Generally, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Seaworld*, 320 F.R.D. at 293 (citing *Prado–Steiman*, 221

F.3d at 1279). *See also Kornberg v. Carnival Cruise Lines*, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984); *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). "Typicality 'is not defeated by specific defenses or counterclaims to the named plaintiff's claim.'" *Cheney v. Cyberguard Corp*., 213 F.R.D. 484, 493-494 (S.D. Fla. 2003) (*citing Hammett v. Am. Bankers Ins. Co. of Fla*., 203 F.R.D. 690, 694 (S.D. Fla. 2001)).

Moreover, "the typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Alhassid v. Bank of Am., N.A*., 307 F.R.D. 684, 697 (S.D. Fla. 2015) (citations omitted). "Even if the fact patterns are unique to each claim, the typicality requirement will be satisfied if the class representative and class members experienced the same unlawful conduct." *Agan,* 222 F.R.D. at 698. "[L]ike commonality, Rule 23 [typicality] does not require that all members of the class possess identical claims. *Garcia-Celestino v. Ruiz Harvesting, Inc*., 280 F.R.D. 640, 646 (M.D. Fla. 2012) (Citation omitted.).

Here, Plaintiffs' claims arise out of the same course of misconduct by Defendants and are based on the same legal theories as those of the putative class members. Plaintiffs rely upon common, class-wide evidence which establishes liability as to all putative class members.[33] Plaintiffs' interests are thus identically aligned with those of the Class Members. If Plaintiffs are successful in establishing Defendants' liability as to their claims, Plaintiffs will have established liability on behalf of all class members as well who were similarly injured from Defendants misconduct. Therefore, Plaintiffs' claims are typical of class members' and by pursuing the action as a putative class, Plaintiffs are ensuring that absent class members are being fairly represented.

---

[33] *See e.g.* ███████████████████████████████████████████████████
███████████████████████

4.      *Adequacy*

Rule 23(a) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1323 (11th Cir. 2008) (Citation and quotation omitted.). *See also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001). "Minor conflicts alone will not defeat class certification, the conflict must be 'fundamental' to the specific issues in the case. *Garcia-Celestino*, 280 F.R.D. at 647 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 627, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Here, Plaintiffs satisfy both prongs. Neither Plaintiffs nor putative class counsel have any interest that is antagonistic to putative class members.  Plaintiffs and each putative class members share  a common interest in establishing the defective nature of Vitamins Because's manufacturing processes and Defendants' materially false and misleading SAMe supplement labels. As Plaintiffs prove their own individual claims, they also prove the claims of  thousands of putative class members. Therefore, Plaintiffs "share the true interests of the class."  *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (the "common goal of each member of  the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure  to all class members."). Plaintiffs have fulfilled their duties as class representatives and are prepared to continue to advance the case on behalf of the proposed classes.[34]

Defendants' anticipated challenges regarding some Plaintiffs' familiarity with various

---

[34]As the record demonstrates, Plaintiffs have reviewed the pleadings, provided discovery, made themselves available for depositions, communicated with putative class counsel as needed, and represented the interests of the proposed classes.

legal terminology, postures, statuses and details of the case do not compel a conclusion that Plaintiffs are not adequate to represent the class. *Alderman v. GC Services Ltd. Partnership*, 2:16-CV-14508, 2018 WL 542455, at \*6 (S.D. Fla Jan. 19, 2018). *See also Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 669 (S.D. Fla. 2010) ("[A]ttacks on a class representative's knowledge of and involvement in a case are also generally irrelevant to the adequacy inquiry") (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-73 (1996); *Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660, 668 (N.D. Ala. 1999) ("[L]ack of specific knowledge about the claims is not grounds for denying certification where the representative's counsel is capable of handling the litigation")); Newberg, § 3.34 (noting that challenges that focus on "plaintiff's motives, status, knowledge, or individual circumstances, have largely been rejected by the courts as irrelevant to the issues of adequacy.").

Likewise, the Plaintiff's attorneys are qualified, experienced, and fully capable of conducting the litigation. Gary S. Graifman, Esq. and Jay Brody, Esq. of Kantrowitz Goldhamer & Graifman, P.C., and Joshua H. Eggnatz, Esq. and Michael J. Pascucci, Esq., of Eggnatz Pascucci, P.A. have served as class counsel in numerous class actions throughout the country. Gary Graifman has over 30 years of experience representing consumers and has been appointed to leadership roles on steering committees to representant consumer classes in MDL cases. The firms possess the experience and resources necessary to adequately protect the interests of the proposed classes.[35]

### C.   Rule 23(b) Requirements

Under Rule 23(b)(3), certification is appropriate if: (i) common questions of law or fact

---

[35]*See* Exhs. 11 & 12 (Law firm resumes Kantrowitz Goldhamer & Graifman, P.C. and Eggnatz Pascucci, P.A.).

predominate over questions affecting the individual class members only; and (ii) class treatment is superior to other methods available for adjudicating the controversy.

        1.     ***Predominance***

Predominance is "determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Klay v. Humana Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). For this factor, "it is not necessary that *all* questions of law or fact be common, but only that *some* questions are common and that they predominate over the individual questions." *Id.*, 1254.

The court's inquiry is typically focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown v. SCI Funeral Servs. of Fla.,* 212 F.R.D. 602, 606 (S.D.Fla.2003). "Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof." *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 537 (S.D. Fla. 2015) (citing *Kerr v. City of W. Palm Beach,* 875 F.2d 1546, 1558 (11th Cir.1989)). To conduct this inquiry, the Court should consider Plaintiffs' class claims and "what value the resolution of the class-wide issue will have in each member's underlying cause of action." *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1234 (11th Cir.2000). Moreover, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp*., 333 F.3d 1248, 1261 (11th Cir. 2003).

In this case, common issues predominate because the question of whether Defendants manufactured, labeled, and sold mislabeled subject product supplements which were defective, noncompliant, and deficient in their active SAMe content is common to all putative class members. At trial, Plaintiffs will present a jury with substantial evidence demonstrating that: 1) Defendant

Manufacturers' formulative and manufacturing processes guaranteed that the SAMe capsules were uniformly underfilled of active SAMe content; essentially, each capsule contained insufficient amounts of SAMe materials to meet their labeled amount of active SAMe content;[36] 2) Defendant Manufacturer uniformly used defective manufacturing processes which lacked adequate quality controls and did not meet regulatory requirements and cGMP standards;[37] 3) that the subject product labels were deceptive and misleading to the reasonable consumer, because they listed amounts of SAMe that were greater than the supplement capsules actually contained,[38] and 4) that Plaintiffs and their putative classes suffered pecuniary loss due to the subject product's mislabeling.[39] The resolution of these and other common questions certainly has the capacity to generate common answers apt to drive the resolution of this class-wide litigation. *See Dukes*, 131 S. Ct. at 2551; *Sanchez-Knutson*, 310 F.R.D. at 537.

Put otherwise, the predominance inquiry seeks to determine the evidentiary effect of adding



plaintiffs to the class. If adding more plaintiffs requires the introduction of "significant amounts of new evidence," this suggests that individual issues are important. *Klay*, 382 F.3d at 1254. Conversely, if adding more plaintiffs leaves the amount of evidence needed to prove the claims "relatively undisturbed," common issues likely predominate. *Id.*

Here, whatever the result – defective manufacturing processes or not, uniformly underfilled capsules or not, false and deceptive labels or not – this case will be resolved class wide on those common determinations. While Plaintiffs and Defendants differ as to whether the subject product was mislabeled, they do so as to the SAMe product purchased by all Plaintiffs and all putative class members.[40] Plaintiffs, in all circumstances, rely upon the same common evidence to prove their claims and allegations[41] which apply equally to all other putative class members who purchased the subject product. *See Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 452 (2016) (defining a common question as "one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."). In this sense, Plaintiffs' and putative class members' claims will stand or fall on the same set of proof. The addition of putative class members to Plaintiffs' action in no way increases (or decreases) the amount of evidence Plaintiffs will need to offer to prove their claims.

---

[40] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████

[41] Plaintiffs' common sources of evidentiary proof include: 1) marketplace sample testing through multiple labs across a range of lots; 2) expert testimony regarding the defective and deficient nature of the subject product SAMe; 3) Defendant party admissions regarding the company's manufacturing processes, lack of regulatory compliance, and findings of deficiency; 4) manufacturing records (e.g. batch records, formulation sheets, supplier certificates of analysis); and 5) Defendant testimony regarding the SAMe formulation software and processes. These sources of evidence apply no less to the claims of putative class members as they do to the claims of the individually named Plaintiffs.

*See Klay*, 382 F.3d at 1254.

For this reason, Plaintiffs' expert drew his liability conclusions on a class-wide basis after reviewing the common evidence which was made available.[42] These included (but were not limited to) their expert's opinion that: 1) all SAM-e supplements manufactured by Defendant and sold by Defendants were deficient in their amount of active SAM-e; 2) all SAM-e supplements manufactured by Defendant were defectively manufactured and noncompliant with the relevant SAMe regulations and industry standards; 3) all SAM-e supplements manufactured by Defendant were of no consumer value and effectively worthless to a reasonable consumer.[43] Plaintiffs' expert's common findings of shared defectiveness, noncompliance, and deficiency amongst all the manufactured subject product  demonstrate the predominance of common issues.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████    ████████[44] is an issue of fact for the jury. Either way, Plaintiffs have presented evidence and an expert opinion that, if a jury believes, will show defective and deficient SAMe supplements common to all subject product, and deceptive misrepresentations and breaches of warranties as to all putative class members. Resolving whether the subject product SAMe capsules were, in fact, defectively manufactured through noncompliant processes and uniformly underfilled as to their labeled amount of active SAMe material, will answer the question for all class members. *See Cardenas v. Toyota Motor Corp*., 18-22798-CIV, 2021 WL 5811741, at *9



(S.D. Fla. Dec. 6, 2021) (finding the parties' dispute as to the existence of a defect in the product at issue does not undermine predominance because, if the plaintiffs' evidence were to be believed, it would show a common defect across the whole class.).

That generalized, class-wide proof will suffice holds particularly true in this case where a common course of manufacturing and labeling processes were employed by Defendant Manufacturer. All putative class members purchased the subject product SAMe supplements, made by the same company, through fixed manufacturing processes and parameters.[45]

Neither parties' (or any class members') subjective "understanding" or "reliance" as to as to the message conveyed by the label claims will be relevant to the analysis. Because of the general function of SAMe supplements and well-established industry standards, reasonable consumers of SAM-e supplements expect that product will contain the amount and strength of active SAMe claimed on the label, and would be materially deceived by labeled supplements which included less active SAMe then indicated by the labeled amount of SAMe milligrams.[46]

        **a.    Causes of Action to Certify**

      **i.    Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and State Consumer Protection Claims**

Courts routinely certify FDUTPA actions based on deceptive advertising. *See, e.g., Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,* 317 F.R.D. 374, 402 (S.D.N.Y. 2016); *Carriuolo v. Gen. Motors LLC*, 14-61429-CIV, 2015 WL 12434325 (S.D. Fla. July 9, 2015), *aff'd sub nom.* 823 F.3d 977 (11th Cir. 2016); *Moore v. GNC, Holdings, Inc.*, No. 12-61703-



CIV, 2013 WL 12237784, at *7 (S.D. Fla. Oct. 17, 2013); *Nelson*, 270 F.R.D. at 692. This is because FDUTPA claims, such as the one asserted by Plaintiffs and their proposed nation-wide class, consist of "three objective elements," each of which has to be established with common evidence: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo*, 823 F.3d at 985; *see also* Fla. Stat. §§ 501.204(1), 501.211.

"[I]n a FDUTPA action 'the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Nelson*, 270 F.R.D. at 692 (quoting *Davis v. Powertel*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)). The purportedly deceptive practice here involves two primary matters: 1) the label claims as to the amount of included SAMe which Defendants printed on the subject product labels, and 2) the material omissions as to the manufacturing defects and regulatory noncompliance which were omitted from all subject product labels.[47] Accordingly, a FDUTPA claim by any member of the proposed nationwide class would turn upon a determination as to whether the subject product labels were likely to deceive a consumer acting reasonably in the same circumstances. The parties can resolve these issues through common proof. For example, Plaintiffs will offer (amongst other generalized evidence) expert testimony exhibiting that the labels conveyed inaccurate information regarding the subject product's amounts of active SAMe content, and that a reasonable consumer of SAMe supplements would be deceived by Defendants' labels.

---

[47] Notably, however, at least in the case of the proposed Gmax and aSquared, Defendants' deceptive practice came in the form of affirmative misrepresentations whereby the subject product labels attached to the subject product as sold by Defendants Gmax and aSquared affirmatively misrepresented that the subject product was produced through cGMP. *See e.g.* ECF No. 176-3, at 2-3; ECF No. 176-4, at 2; Exh. 17 (Gmax and aSquared private labels: VB-PROD-5373-5374; VB-PROD-005435).

Because the "FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,* 332 Fed. Appx. 565, 567 (11th Cir.2009) (quotation omitted),[48] each class member would not need to show individual reliance on the label misrepresentations and/or material omissions. Common evidence proving the subject product labels' falsity and/or deceptiveness, as to the objectively reasonable consumer (i.e. an objective standard), will suffice. Therefore, "determinations of those issues will resolve the essential questions of liability with respect to the entire putative class." *Moore,* 2013 WL 12237784, at *5.

Plaintiffs and putative class members can also prove FDUTPA causation and actual damages through common evidence without any need to submit individualized proof. *See Nelson,* 270 F.R.D. at 696-98; *Davis,* 776 So.2d at 975; *Latman v. Costa Cruise Lines, N.V.,* 758 So. 2d 699 (Fla. Dist. Ct. App. 2000); *Fitzpatrick v. General Mills, Inc.,* 263 F.R.D. 687, 697 (S.D. Fla. 2010). If Defendants inflated the market value of the subject product by disseminating false and deceptive label claims overstating the product's SAMe content, all putative class members who purchased the subject product paid more for their SAMe supplements than they otherwise would have absent the misleading label claims. Here, Plaintiffs offer proof that the mislabeled subject product SAMe supplements, because of their undisclosed defective and deficient nature, were effectively worthless to consumers, or at the very least, worth materially less than their purchase price.[49] If accepted by the jury that Defendants' improper method of formulation and manufacturing guaranteed that the capsules were underfilled, there can be no doubt that Plaintiffs

---

[48] This is the case whether a FDUTPA claim is brought by an individual consumer or as a class action. *See Cold Stone Creamery,* 332 Fed. Appx. at 567.

[49] ██████████████████████████████████████████████████████

and putative class members were all similarly caused pecuniary injury by Defendants' deceptive false and deceptive labeling.

Moreover, courts routinely infer reliance and causation for proposed consumer classes of this variety where the consumers' purchases came as a result of material deception. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 879 (Fla. Dist. Ct. App. 2006); *Goldemberg*., 317 F.R.D. at 392 (applying to FDUTPA class context). With generalized evidence that the subject product was without consumer value, or at the very least, was materially overpriced on account of their false labeling or material omissions,[50] class-wide inferences are certainly proper.

Common questions also predominate with respect to Plaintiff Hood's proposed New York subclass, whose claims are based on General Business Law ("GBL") §§ 349 and 350[51], as well as the other proposed state classes asserting claims based on other similar statutory consumer protection schemes. The GBL claims,[52] for example, share several features with the FDUTPA, such as the objective "reasonable consumer" standard,[53] the lack of a reliance requirement,[54] and a market-price-manipulation approach to causation, which means that § 349 claims-like the FDUTPA--are "ideal for class certification." *Kurtz v. Kimberly-Clark Corp.,* 321 F.R.D. 482, 530

---

[50] *Id*.

[51] The elements of a GBL § 350 claim are identical to the elements of a § 349 claim. *Orlander v. Staples, Inc.,* 802 F.3d 289, 302 (2d Cir. 2015). The certification analysis for both claims should therefore be the same.

[52] GBL § 349's elements are similar to the FDUTPA and include: "(1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Greene v. Gerber Products Co.,* 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017) (quoting *Orlander*, 802 F.3d at 300).

[53] *See Goldemberg v. Johnson & Johnson Consumer Companies, Inc*., 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014).

[54] *Koch v. Acker, Merrall & Condit Co*., 18 N.Y.3d 940, 940–41 (2012) (justifiable reliance is not required for New York's GBL §§349-350 claims.); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014) ("causation element under GBL §§349-350 is satisfied where a plaintiff suffers a loss because of a defendant's deceptive act.)

(E.D.N.Y. 2017). *See also Goldemberg*, 317 F.R.D. at 389; *Scotts*, *In re Scotts EZ Seed Litig*., 304 F.R.D. 397, 409 (S.D.N.Y. 2015).

Consumer protection claims under California, Nevada, Arizona, and Texas law similarly lack any effective reliance requirement and are accordingly well-suited for class certification. *See In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) (although reliance is a required element, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material."); *Vine v. PLS Fin. Services, Inc*., 331 F.R.D. 325, 339 (E.D. Tex 2019) (concluding that so long as economic damages are uniform, the need for evidence of reliance does not preclude class certification for TDTPA claims.); *Siemer v. Assoc. First Capital Corp*., CV97-281TUCJMRJCC, 2001 WL 35948712, at *4 (D. Ariz. Mar. 30, 2001) (reliance for ACFA can be presumed simply by the class member's purchase of the subject product.). Like the FDUTPA claim, Plaintiffs can accordingly use common evidence[55] such as expert testimony, market-place assay testing, manufacturing records, and Defendants' admissions to establish the elements necessary for those consumer protection causes of action.

### ii.    Negligent and Intentional Misrepresentation

Even with regard to Plaintiffs' causes of action, such as intentional and negligent misrepresentation, that do require proof of individual reliance, Florida courts have recognized that plaintiffs can demonstrate reliance through circumstantial evidence that is common to the class. *Rollins,* 951 So. 2d 860 at 879. As noted *supra*, particularly in consumer class actions concerning the mislabeling of products, courts have held that product purchases which come as a result of deceptive labeling, if material, support providing the general inference of reliance and causation to all purchasers. *Goldemberg*, 317 F.R.D. at 391.

---

[55] *See supra*, fn.41 (compiling sources of evidentiary proof).

For this reason, Plaintiffs and the proposed classes can prove intentional and negligent misrepresentation on a class-wide basis using generalized evidence and appropriate class-wide inferences as to reliance. Courts have accordingly certified these claims for class treatment.

### iii.   Breach of Express and Implied Warranties

As with the consumer protection and misrepresentation causes of action, because all putative class members purchased the SAMe capsules that were uniformly underfilled and manufactured through the same set and repeated defective and noncompliant formulation methodology, common class-wide evidence will suffice. Plaintiffs' proof of the systematic underfilling of the SAMe capsules and their defective and deficient status will establish the nonconformance of the goods with their express warranties and lack of merchantability as to all putative class members. Simply put, the underlying elements of the claims will be met through generalized proof which applies to Plaintiffs and their proposed classes alike.

Even privity with Vitamins Because, a requirement for breach of implied warranty claims, is a matter which can be dealt with on a class-wide basis. Because all purchasing consumers (e.g. putative class members) are intended third party beneficiaries of the sales contract between Defendant Vitamins Because and the various private label retailers for the subject SAMe,[56] courts have permitted consumers under similar circumstances to pursue breach of warranty claims against the manufacturers. *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014) (permitting a implied warranty claim to proceed through third-party beneficiary law.).

### b.   Varying Legal and Proof Requirements can be Most Efficiently Managed Through Sub-classing

---

[56] ECF No. 176-8, ¶6 (Declaration of Thomas Chapman, principal of VB, acknowledging that Defendant Manufacturer sells its SAMe supplements wholesale to retailer with the understanding that they will mark up the price of the supplement for sale to consumers.).

Many of Plaintiffs' claims are asserted through its proposed nationwide class under Florida law. This includes Plaintiffs' claims for FDUTPA, intentional and negligent misrepresentation, and breach of warranties. Even in claims where differences between state consumer statutes and standing arise, Federal Rules recognize a court's subclassing power as a method to avoid variation problems between members of different states and thereby manage the case more efficiently. *See* Fed. R. Civ. Proc. 23; *In re Gen. Motors Corp. Engine Interchange Litig*., 594 F.2d at 1129 (noting that division of a class or potential class into subclasses to account for differences in proof is clearly permissible). Such subclassing schemes are commonly used in class actions, and Plaintiffs have accordingly asserted several putative (sub)classes in this motion so this Court can easily manage the few varying state claims which different subgroups of consumers may exclusively bring under their state's law. *See also Piambino v. Bailey*, 610 F.2d 1306, 1326 (5th Cir. 1980) (recognizing a district court's power to employ subclassing pursuant to former Rule 23(c)(4)(B)); *Betts v. Reliable Collection Agency, Ltd*., 659 F.2d 1000, 1005 (9th Cir. 1981); *Andrews v. Am. Tel. & Tel. Co*., 95 F.3d at 1027 (finding the use of subclassing pursuant to Rule 23 to be an appropriate mechanism to mitigate unmanageability due to individual factual and legal issues, such as reliance.).

### c. Damages Calculations Do Not Defeat Predominance as a Classwide Method for Damage Exists

For purposes of relief and recovery of damages, "class-wide methods of proof directly tied to Plaintiffs' theories of liability are available and can be used at trial to establish the amount that should be paid to the class as restitution or in damages." *Collins v. Quincy Bioscience, LLC*, 19-CV-22864, 2020 WL 3268340, at *29 (S.D. Fla. Mar. 19, 2020) (comparing to *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-35 (2013)). Here, the proposed methods for determination of damages is the same for each individual putative class member, *i.e.*, the full purchase price amount, under the full refund theory of damages, or the percentage of value not received, under the

deficiency theory of damages.[57]

████████████████████████████████████████████████

██████████████████████████████████.[58]

Courts have recognized that where a supplement is rendered worthless as the result of its defective and/or deficient nature,[59] the purchase price provides a common classwide method of measuring the economic loss attributable to Defendants' liability. *See Collins*, 2020 WL 3268340 at *29; *Rollins,* 951 So. 2d at 869 (citations omitted) (holding that "when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages"); *Racies v. Quincy Bioscience, LLC,* 15-CV-00292-HSG, 2017 WL 6418910, at *4 (N.D. Cal. Dec. 15, 2017), *rev'd on other grounds*, 2020 WL 2113852, at *5 (N.D. Cal. May 4, 2020) ("Plaintiff may present commonly-applicable evidence, including his expert's opinion that basic scientific principles show that [a product] cannot provide the benefits claimed."); *Lambert v. Nutraceutical Corp*., 870 F.3d 1170, 1183-84 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710 (2019) (finding that "full refund" model of measuring damages was consistent with theory of liability "that the product has no or only a de minimis value," and further finding that multiplying "suggested retail price" by number of "unit sales" sold over the relevant time period constituted a workable damages methodology at the class certification stage).[60]

In any event, even where a class-wide damages methodology could not be employed, "the

---

57 ████████████████████████████████████████
58 █
59 ████████████████████████████████████████████
████████████████████████████████████████████
██████████

60 The full-refund damages model is also appropriate because consumers have no reason to purchase the subject product except for its active SAMe content. *See See Collins,* 2020 WL 3268340 at *29*; Rikos v. Procter & Gamble Co*., 799 F.3d 497, 523-24 (6th Cir. 2015) (internal citation omitted).

Eleventh Circuit has made clear that individual issues relating to damages do not defeat class certification." *Cox,* 330 F.R.D. at 335 (citing *Allapattah Servs.*, 333 F.3d at 1261). "Nothing in [Rule 23] requires plaintiffs to prove predominance separately as to both liability and damages." *Carriuolo*, 823 F.3d at 989. Thus, "individualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member." *Id. See also Klay*, 382 F.3d at 1260.

The Supreme Court has similarly noted, that "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods,* 577 U.S. at 452 (Citation and quotation omitted.).

> **d.    Common Issue of Material Omissions Predominate as to the Proposed Classes**

It is undisputed that Defendants failed to tell Plaintiffs or any putative class members that the subject product supplements were manufactured through defective processes and facilities that were not complaint with federal regulations and cGMP. They also failed to inform them that the batches of the subject product capsules were not regularly tested to ensure they consistently and reliably met their label claims and delivered on their promised amounts of active SAMe ions. All Plaintiffs and putative class members were commonly exposed to these material omissions. As some courts have aptly put it: "all class members received the same information from defendant regarding the purported defect – which is to say, no information." *Cardenas*, 2021 WL 5811741, at *13 (finding that exposure to the same omission regarding a product's defect is susceptible to class wide proof.).

> **2.    _Superiority_**

Superiority is determined by the "increased efficiency" through the class mechanism. *Jackson v. Motel 6 Multipurpose Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997). The focus of the superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. Consequently, the predominance analysis has a "tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id*.

There are four specific, but non-exclusive, considerations: "(1) the class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). *See also Vega*, 564 F.3d at 1277; *Williams*, 568 F.3d at 1358; *Klay*, at 1273.

With respect to the first factor, there is no reason to believe that putative class members have any particular interest in individually controlling their own separate litigation. Putative class members have claims that are relatively small compared to the costs associated with potential litigation. Sales records produced in this case show that most, if not all, of the class members' claims for actual damages on each of their individual purchases of the subject product are under $40. Even considering other available damages under the law (e.g. statutory, punitive, etc.) and that many Plaintiffs and putative class members made multiple purchases of the subject product from Amazon.com, their total damages will still likely not exceed a few hundred dollars each. In sum, it would cost putative class members more to litigate an individual case than they could

recover in damages.[61]

With respect to the second factor, Plaintiffs are unaware of any other putative class members who are pursuing individual claims against Defendants or others concerning the subject product at issue in this action. This is not surprising. The amount at issue for any single putative class member's claim pales in comparison to the associated litigation costs. If this matter is not certified, putative class members will almost certainly never have their day in court. Thus, a class litigation is a superior method of adjudication to individualized lawsuits.

As for the third factor, concentrating litigation in this forum makes sense because Florida is Defendant Manufacturer's home state and the location of most of the misconduct (e.g. defective manufacturing and deceptive labeling) alleged in this action. Holding separate trials for claims that could be tried together would be costly, inefficient, and burden the court system. *Klay*, 382 F.3d at 1270. Neither the parties nor the judicial system would benefit from redundant litigation. "Where predominance is established, this consideration will almost always mitigate in favor of certifying a class." *Klay*, 382 F.3d at 1270. Thus, the third superiority factor supports class certification.

The final superiority factor – manageability – focuses on whether multiple individual lawsuits would be more manageable than a class action, and not whether a class here will create significant management problems. *Klay*, 382 F.3d at 1273. This factor "will rarely, if ever, be in

---

[61] "As the Eleventh Circuit has discussed, low amounts of per-class-member recovery create the unlikelihood that most of the plaintiffs, or attorneys, would pursue the claims individually. *Dickens on behalf of estate of Dickens*, 336 F. Supp. 3d at 1380 (citing *See Klay*, 382 F.3d at 1271). *See also Fosbrink v. Area Wide Protective, Inc.*, 325 F.R.D. 474, 483 (M.D. Fla. 2018) (Judge Moody recognizing that it is unlikely that the class members would have any interest in instituting individual lawsuits, that no class members have filed individual lawsuits against the defendant, it desirable to conduct the litigation in this forum, and the process of bringing individual actions would be more onerous than managing a class action. The alternative of having individual claims arising out of the same conduct offers neither efficiency nor fairness to Defendant or the putative class).

itself sufficient to prevent certification." *Dickens on behalf of estate of Dickens v. GC Servs. Ltd. P'ship*, 336 F. Supp. 3d 1369, 1380 (M.D. Fla. 2018) (Citation omitted.). *See also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (refusal to certify a class solely on grounds of manageability is disfavored and "should be the exception rather than the rule"); *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 356 (E.D. Pa. 1976) ("denial of class certification because of suspected manageability problems is disfavored").

Here, no serious manageability problems exist and certainly none that make thousands of individual actions a better alternative. "[T]he process of bringing individual actions would be much more onerous than a class action." *Garcia-Celestino*, 280 F.R.D. at 649. The number of class members here —in the hundreds or thousands—is too large for the prosecution of separate actions by each class member to be likely, practical, or desirable. This Court is fully capable of resolving this controversy, and the many Florida claims Plaintiffs assert are well-aligned with this forum.

Finally, there is no reason to suspect that this case will present any particular manageability problems compared to any other Rule 23(b)(3) class actions. All putative class members' claims involve common issues of law and fact, and the case will be resolved based upon common proof. Simply put, this case can be tried in an efficient manner. Courts in more complex cases have concluded that class treatment is manageable and there is no reason to alter course here.[62] Thus, the fourth superiority factor favors proceeding as a class in this case.

## IV.   <u>CONCLUSION</u>

Because the proposed classes meet the requirements of Rules 23(a) and 23(b)(3), Plaintiff respectfully requests that the Court certify this action and Plaintiffs proposed classes, appoint Plaintiffs as class representatives, and appoint Gary S. Graifman and Jay Brody of Kantrowitz

---

[62] *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011).

Goldhamer & Graifman, P.C. and Joshua H. Eggnatz of Eggnatz Pascucci, P.A. as class counsel.

DATED: February 8, 2022                    Respectfully Submitted,

By:   */s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq. (FBN: 0067926)
E-mail: JEggnatz@JusticeEarned.com
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, FL 33314
Telephone: 954-889-3359
Facsimile: 954-889-5913

*Local Counsel for Plaintiffs and the Putative Classes*

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com

*Counsel for Plaintiffs and the Putative Classes*

31

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of notices of Electronic Filing generated by CM/ECF.

By: */s/ Joshua Eggnatz*

## SERVICE LIST
*Malgeri, et al. vs. Vitamins Because, LLC, et al.*
**Case No.:  19-cv-022702-KMW**

**Attorneys for PLAINTIFFS:**

Joshua H. Eggnatz
**EGGNATZ | PASCUCCI**
7450 Griffin Road
Suite 230
Davie, FL 33314
Tel: 954-889-3359
JEggnatz@JusticeEarned.com

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302

Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com


**Attorneys for DEFENDANTS:**

*Defendants*, **VITAMIN BECAUSE LLC**
**and CT HEALTH SOLUTIONS LLC:**

David S. Johnson (FBN 96423)
**JOHNSON DABOLL ANDERSON, PLLC**
2011 W. Cleveland Street, Suite F
Tampa, Florida 33606
Tel:  813-377-2499
Fax: 813-330-3156
djohnson@jdalegal.com


*Defendant*, **GMAX CENTRAL LLC:**

Leon N. Patricios (FBN 0012777)
Joseph I. Zumpano (FBN 0056091)
**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, FL 33134
Tel: 305-444-5565
Fax: 305-444-8588
lpatricios@zplaw.com
jzumpano@zplaw.com


Richard J. Oparil (Admitted *Pro Hac Vice*)
Kevin M. Bell (Admitted *Pro Hac Vice*)
**ARNALL GOLDEN GREGORY LLP**
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
Tel: 202-677-4030
richard.oparil@agg.com
kevin.bell@agg.com


*Defendant*, **ASQUARED BRANDS LLC:**

Alessandro A. Apolito (FBN 0084864)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**

822 N. A1A, Suite 101
Ponte Vedra Beach, Florida 32082
Tel: 904-660-0020
Fax: 904-660-0029
aapolito@lippes.com

Brendan H. Little (Admitted *Pro Hac Vice*)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
Tel: 716-853-5100
blittle@lippes.com