**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:19-cv-22702-KMW

CORI ANN GINSBERG
NOAH MALGERI
KALYN WOLF
BILL WILSON
SHANNON HOOD
ERIC FISHON
ROBERT MCKEOWN, on behalf of themselves
and all others similarly situated,

                          Plaintiffs,

vs.

VITAMINS BECAUSE LLC
CT HEALTH SOLUTIONS LLC
GMAX CENTRAL LLC
ASQUARED BRANDS LLC
INSPIRE NOW PTY LTD d/b/a BoostCeuticals
HEALTHY WAY RX LLC
KHAKIWARE INC.
JOLLY DOLLAR SUPPLY COMPANY, LLC

                          Defendants.

_____

**DEFENDANT ASQUARED BRANDS LLC'S MOTION TO STRIKE DR. DOUGLAS
KALMAN AS AN EXPERT WITNESS**

      Pursuant to the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), aSquared hereby moves for an Order striking Plaintiffs Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, and Robert McKeown (collectively "Plaintiffs") expert witness Dr. Douglas Kalman ("Kalman").

**PRELIMINARY STATEMENT**

      Plaintiffs have commenced a lawsuit seeking to recover damages for purchasing the supplement SAM-e from aSquared which they contend had had less active ingredient in it than

what was listed on the label. (Doc. 176). Plaintiffs, however, did not have the SAM-e that they purchased tested and therefore cannot demonstrate that the SAM-e they purchased from aSquared did not meet label specifications.

As Plaintiffs were unable to produce evidence of injury specific to themselves, their ability to proceed in this lawsuit rests entirely on Kalman's expert report, which broadly opined that all of the SAM-e manufactured by Vitamins Because could never meet label specification. When subjected to scrutiny, Kalman's methodology, process, and resulting opinions fall apart at the seams.

First, Kalman admitted at his deposition that his ultimate opinion was incorrect, tried to change that testimony through an errata sheet, and then submitted an improper rebuttal report again materially altering his testimony.

Second, Kalman's testing of SAM-e was riddled with errors and failures to consider all of the evidence in front of him. Specifically, he: (1) only tested 21 bottles of SAM-e, which is an insufficient sample size; (2) tested SAM-e that was not manufactured by Vitamins Because; and (3) did not consider test results that demonstrated SAM-e manufactured by Vitamins Because complied with the specifications stated on the labels.

Third, Kalman's reliance on his review of an FDA inspection of Vitamins Because's facility and deposition testimony in that regard amount to a narration of facts that fails to convey an actual opinion based on his personal knowledge. Additionally, his conclusions in that regard overtly contradict the test results in the record and are therefore inherently unreliable.

Ultimately, Kalman's expert opinion is so flawed and contradicted that it will not aid the jury in resolving a factual dispute. As a result, his report and testimony should be excluded.

**ARGUMENT**

**I.       Standard of law**

The Court serves as a gatekeeper in determining the admissibility of expert testimony at trial. *Daubert*, 509 U.S. 579.

In making such determinations, the Court considers the testimony proffered in the context of the Federal Rules of Evidence. *Id.* at 597. Specifically, the Court must consider if the testimony "rests on a reliable foundation and is relevant to the task at hand" to determine whether it constitutes "pertinent evidence based on scientifically valid principles" that is admissible in a federal trial. *Id.* The Court's gatekeeping obligation under *Daubert* applies "not only to 'scientific' testimony, but to all expert testimony," which includes "testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999); *DW by & through CW v. Carnival Corp.*, 2018 WL 7822329, at *4 (S.D. Fla. June 19, 2018).

Applying the standards set out in Federal Rule of Evidence 702 and *Daubert*, courts conduct a three-part analysis to determine admissibility, evaluating if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)); *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001).

The Court's inquiry is "a flexible one," with "many factors" and "[no] definitive checklist or test." *Maiz*, 253 F.3d at 665 (quoting *Daubert*, 509 U.S. at 593).

## II. Kalman's expert opinion

Kalman's report states that he was hired by Plaintiffs' law firm to provide expert testimony regarding the deficiency of SAM-e manufactured by Vitamins Because. (Doc. 294-8, p. 2). To come to his conclusions, Dr. Kalman reviewed the Third Amended Complaint, reviewed testing results, discovery materials in the lawsuit, and published materials. (Doc. 294-9, p. 27, ln. 3-10). Dr Kalman did not review any deposition transcripts prior to authoring his expert report. (Doc. 294-9, p. 28, ln. 10-25; p. 29, ln. 1-14).

Based on his review of the manufacturing process and the testing results, Dr. Kalman concluded that "[i]t is my opinion to a reasonable degree of professional certainty that all SAM-e supplements manufactured by [Vitamins Because] were deficient in their amount of SAM-e…." (Doc. 294-8, ¶¶ 71-72).

## III. Kalman's opinion is explicitly and inherently unreliable

Expert testimony is not reliable if "there is simply too great an analytical gap between the data and the opinion proffered." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296,1305–06 (11th Cir. 2014) (quoting *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010)). "[I]f an expert opinion does not have a 'valid scientific connection to the pertinent inquiry' it should be excluded because there is no 'fit.'" *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) (quoting *Daubert*, 509 U.S. at 591–92).

To meet the reliability requirement, an expert's opinion must be based on scientifically valid principles, reasoning, and methodology that are properly applied to the facts at issue. *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). The reliability analysis is guided by several factors, including: (1) whether the scientific technique can be or has been tested; (2) whether the

4

theory or technique has been subjected to peer review or publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique is generally accepted in the relevant community. *Daubert*, 509 U.S. at 593-94. "[T]hese factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341.

Under the "reliability" requirement, an expert's opinion should be excluded when it is based on assumptions which are "not supported by the record." *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993) (affirming exclusion of expert testimony that "was based on assumptions that were not supported by the record"); *Ferguson v. Bombardier Servs. Corp.*, 244 F. App'x 944, 949 (11th Cir. 2007) (same). Plaintiffs have the burden of establishing that each *Daubert* requirement is satisfied. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005).

    i.    *Kalman admitted that all SAM-e manufactured by Vitamins Because was not uniformly defective*

Kalman's expert report concluded that all of the SAM-e manufactured by Vitamins were deficient in their amount of SAM-e. (Doc. 294-8, ¶¶ 71-72). Importantly, however, Kalman's report also acknowledges that in his investigation, he reviewed testing of SAM-e manufactured by Vitamins Because that showed that SAM-e did test according to label specifications and did have the correct amount of SAM-e. Little, Dec., (Doc. 294-8, ¶ 55). Faced with that reality at his deposition, Kalman retreated from the conclusion in his report, and instead testified as follows:

> Q: It is your opinion that all of the SAM-e manufactured by Vitamins Because failed to meet the label requirement as it related to the active amount of SAM-e; correct?
>
> A: No, incorrect. I did – I did see and read perhaps two or three

5

> certificates of analysis by third-party analytical labs that did find the label claim was met or nearly met. So that would be 2 or 3 tests out of 30-plus tests found a label claim or near label claim was made.
>
> Q: Would you agree that 3 out of 30 is 10 percent?
>
> A: If I can do the math with my fingers, I would agree. Yes. Sorry about the bad joke. Yes.

(Doc. 294-9, p. 93-95).

The importance of Kalman's concession at this deposition cannot be understated. By admitting that he cannot conclude that all of the SAM-e manufactured by Vitamins Because failed to meet label requirement, he cannot, with any degree of reliability, conclude that the named Plaintiffs in this lawsuit purchased SAM-e that did not meet label specification.

> ii. *Kalman's ever changing opinion is materially unreliable*

Kalman clearly understood the magnitude of his testimony that materially altered his opinion. In a blatant attempt to change his testimony, Plaintiffs served an errata sheet attempting to wholly contradict his deposition testimony. (Doc. 294-10). Although Kalman's errata sheet is impermissible and must be disregarded, the transparent attempt to change his testimony speaks volumes about its importance.

Kalman's "expert" conclusion has changed over and over again in this lawsuit. Kalman's initial expert report concluded that all SAM-e manufactured by Vitamins Because could never meet label specifications. (Doc. 294-8, ¶¶ 71-72). When challenged at his deposition, Kalman admitted the conclusion in his expert report was incorrect. (Doc. 294-9, p. 93-95). After his deposition, Kalman submitted an Errata Sheet attempting to change his testimony about his ultimate conclusion. (Doc. 294-10). Finally, Kalman's rebuttal report sought to rehabilitate his

own testimony instead of addressing issues raised by aSquared expert witness.[1] (Doc. 294-12).

Permitting Kalman to flip flop to such a degree allows him to abuse his role as an expert. That role in a complicated civil litigation cannot be understated, especially in a situation such as this, where Plaintiffs cannot prevail without an expert opinion to support their claims. Here, Kalman's ever-changing opinion is being intentionally altered for one purpose – defeating Defendants' dispositive motions. Simply put, an expert's role should be to clarify the complex issues, not obfuscate them. By condoning Kalman's explicit contradictions, the Court waters down the objectivity required from experts in Federal Court. *See generally Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 614-615 (2019); *Riggins v. SSC Yanceyville Operating Co., LLC*, 800 F. App'x 151, 160 (4th Cir. 2020).

In short, Kalman has changed his opinion about the central issue he was retained to analyze at least three times. Doing so is particularly concerning as that the facts and the universe of discovery have not changed. Instead, Kalman's frantic attempts to remedy his testimony – which aSquared submits should end this lawsuit – has led Kalman to contradict himself to such a degree that his opinion can no longer be seen as objectively reliable under any Rule 702 analysis.

### iii. The testing conducted by Kalman was flawed and insufficient

It is well-settled that when an expert's opinion rests on "haphazard, intuitive inquiry," instead of sound and reliable methodology, exclusion is appropriate. *See, e.g.*, *Cotromano v. United Techs. Corp.*, 2018 WL 2047468, at *14 (S.D. Fla. May 2, 2018) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000).)

Applying this principle, courts routinely exclude expert testimony for failure to conduct

---

[1] ASquared intends to join Vitamins Because's motion to strike Kalman's rebuttal report. (Doc. 275).

7

critical testing. *See, e.g.*, *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998) (affirming exclusion of expert on reliability grounds where expert performed no tests and took no samples); *McGee v. Evenflo Co.*, 2003 WL 23350439, at *9 (M.D. Ga. Dec. 11, 2003), (stating "absence of testing is a consistent factor in court decisions excluding expert testimony" and excluding design expert because he conducted no testing on allegedly defective car seat) aff'd, 143 F. App'x 299 (11th Cir. 2005)

        *1.    Kalman tested SAM-e that was not manufactured by Vitamins Because*

To come to his flawed conclusion, Dr. Kalman had 21 tests of SAM-e product conducted. (Doc. 294-8, p. 2; p. 129). Kalman also acknowledges that he reviewed other test results that were produced by a defendant in fact discovery. (Doc. 294-8, ¶¶ 53-55); (Doc. 294-2). In total, Kalman reviewed, or should have reviewed, 7 additional test results, bringing the total tests to 28.

Initially, Kalman did not take the time to ensure that all of the SAM-e tested was manufactured by Vitamins Because in the first instance. Kalman's testing process is summarized for clarity. Kalman worked with a third-party consultant Dr. Catherine Hutt ("Hutt") and a co-worker at his own employer, Kevin Yan ("Yan"), to purchase SAM-e. (Doc. 294-8, p. 1-2; p. 129). Hutt purchased 12 bottles of SAM-e from different retailers and sent them out to third-party laboratories to be tested. (Doc. 294-8, p. 1-2). Yan purchased 9 bottles of SAM-e and sent them out to third-party laboratories to be tested. (Doc. 294-8, p. 129). Thereafter, Kalman reviewed the test resulted and came to the opinions in his report.

Dr. Kalman's expert report confirmed that SAM-e manufactured by Vitamins Because can be identified by an eight-digit lot number. (Doc. 294-8, ¶ 31, fn. 5). ASquared rebuttal expert, Dr. Nathalie Chevreau ("Chevreau"), highlighted that fact in her expert report and pointed out that at least 11 of the tests conducted by Dr. Kalman were on bottles of SAM-e with lot numbers than did

not match the Vitamins Because lot number. (Doc. 294-11, ¶ 22).

This mistake is confirmed by Vitamins Because. Mr. Thomas Chapman, who is an owner at Vitamins Because, reviewed the lot numbers of the all of the bottles of SAM-e relied on by Kalman in his report. (Doc. 294-13). 5 of those bottles were not manufactured by Vitamins Because and 3 of those bottles were tested 3 different times. (Doc. 294-13; Doc. 294-8, p. 129). As a result, 11 of the 21 tests Kalman conducted to support his conclusion did not test product that was manufactured by Vitamins Because.

Removing those tests from his expert report leaves a total of 17 test results, at least 5 of which found that the label claim was met.[2] Put differently, approximately 29% of the tests Kalman reviewed met the label specifications. It is difficult to imagine how Kalman's conclusion that all SAM-e manufactured by Vitamins Because did not meet label specifications when 29% percent of the Vitamins Because SAM-e tested in this case met the label specifications. That type of contradiction undercuts the legitimacy of his conclusion to such an extent that it provides a basis to strike him as an expert in this lawsuit.

> 2. *Kalman ignored every test result that demonstrated SAM-e tested according to the label claim*

Kalman's decision to ignore the SAM-e test results that met label specifications is, standing alone, a basis to strike him as an expert.

It is generally recognized that "a scientist might well pick data from many different sources to serve as circumstantial evidence for a particular hypothesis, but a reliable expert would not ignore contrary data, misstate the findings of others, make sweeping statements without support, and cite papers that do not provide the support asserted." *Eghnayem v. Bos. Sci. Corp.*, 57 F. Supp.

---

[2] The 5 tests that met label specifications are provided in Doc. 294-1 and Doc. 294-8, p. 4.

9

3d 658, 677 (S.D. W. Va. 2014) (quoting *Abarca v. Franklin Cty. Water Dist.*, 761 F. Supp. 2d 1007, 1066 n. 60 (E.D. Cal. 2011)). Courts in this Circuit have excluded experts for this reason. *See, e.g.*, *Pierson v. Orlando Health*, 2010 WL 3447496, at *5 (M.D. Fla. Aug. 30, 2010) (excluding expert where he "did not consider sufficient facts or data, ignored available data, and did not apply principles and methods reliably to the facts"); *Travelers Indem. Co. of Am. v. Broan-Nutone, LLC*, 2008 WL 11381927, at *8 (N.D. Ala. Mar. 26, 2008) (excluding fire origin expert opinion because he "ignored pertinent data").

Here, and as detailed above, Kalman declined to consider all of the SAM-e test results available to him. His attempted basis for doing so is insufficient. Kalman concludes he is able to disregard the test results that are harmful to Plaintiffs' case because the laboratory who conducted those tests, Advanced Botanical Consulting and Testing, Inc. ("ABC"), was the subject of an FDA warning letter. (Doc. 294-8, ¶¶ 56-57). Kalman provides no further information to support his conclusion – the mere fact that ABC received an inquiry from the FDA is sufficient for him to flatly decide ABC test results can be disregarded. Despite his conclusion, there is no evidence in the record to plausibly assert concern over the legitimacy of the ABC test results. Kalman's duplicitous arguments continue – as he appears to rely on different ABC test results that coincidentally happen to show SAM-e that did not test according to label specifications. (Doc. 294-8, ¶¶ 53-54)

Kalman's willingness to simultaneously consider lab results from ABC when they supported his conclusion and disregard lab results from ABC that did support his conclusion illustrates precisely why he is so unreliable that he should be precluded. Said differently, Kalman wants his cake and the ability to eat it too.

Finally, as demonstrated by Chevreau's report, Kalman misread one of the test results,

10

which led to an incorrect conclusion about whether it met label claim. (Doc. 294-11). That test result is included in Kalman's expert documents and shows that Dr. Hutt, who administered a part of the testing for Kalman, incorrectly listed the sample size as 1 capsule. (Doc. 294-11, ¶ 24; Doc. 294-8, p. 4). The sample size listed on the bottle tested, however, was 3 capsules. (Doc. 294-11, ¶ 24; Doc. 294-8, p. 4). As a result, the amount of SAM-e should have been multiplied by three, which would have been sufficient to comply with label specifications. (Doc. 294-11, ¶ 24; Doc. 294-8, p. 4).

The above examples are particularly important in light of the conclusion Kalman was compelled to reach. If the named Plaintiffs are going to be able to demonstrate an injury, they have to demonstrate all SAM-e manufactured by Vitamins Because could never meet label specifications. (Doc. 294). As a result, Kalman was undeniably tasked with an impossible task as a substantial portion of the test results he reviewed demonstrated SAM-e manufactured by Vitamins Because testing according to label specifications. Kalman's decision to openly disregard the available data to such a degree makes clear that his opinion cannot be considered reliable, and exclusion is warranted.

### 3. *Kalman did not review a sufficient number of test results*

ASquared's rebuttal expert, Chevreau, articulated a foundational shortcoming in the methodology Kalman undertook in reaching his conclusion – he did not test enough SAM-e to reach his conclusion.

Even putting aside the fact that all of the testing Kalman reviewed did not support the conclusion he reached, the total number of tests conducted by Kalman was insufficient. The Third Amended Complaint estimates the number of bottles of SAM-e subject to this lawsuit at between 86,417 and 88,752. Using 86,400 as a point of reference, Chevreau used simple math to show that

11

Kalman tested 0.024 percent of the SAM-e potentially at issue in this lawsuit. (Doc 294-11, p. 2). Kalman set forth no methodology or rationale for his determination to test such a small percentage of the SAM-e at issue. (Doc. 294-11, p. 2). Chevreau analyzed this defect and pointed to the undisputed fact that there are a litany of methodologies available as benchmarks to allow for reliable statistical extrapolation. (Doc. 294-11, p. 7-8). Kalman chose not to employ any such methodology or explain his process at all.

Kalman did not test a representative sample and as a result, the test results relied upon do not provide a degree of statistical confidence to draw uniform conclusions about the accuracy of the label claims of all the SAM-e ever manufactured by Vitamins Because. (Doc. 294-11, p. 2). Put differently, Kalman cannot reliably articulate a conclusion about all of the SAM-e manufactured by Vitamins Because with such an extremely small sample size.

> iv. *Kalman's opinions that stem from a review of Vitamins Because's manufacturing processes are based in speculation*

It is improper for an expert "to become a vehicle for factual narrative." *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 2020 WL 1666763, at *15 (S.D. Fla. Apr. 3, 2020) (internal quotation omitted). Indeed, "[s]imply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702." *Sharkey v. J.P. Morgan Chase & Co.*, 978 F. Supp. 2d 250, 252 (S.D.N.Y. 2013). Experts that do nothing more than act as narrators of facts "fail to 'convey opinions based on [their] knowledge and expertise.'" *Duling v. Domino's Pizza, LLC*, 2015 WL 3407602, at *12 (N.D. Ga. Jan. 14, 2015) (quoting *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013)).

Kalman relies heavily on his review of discovery related to Vitamins Because's manufacturing process to come to his conclusion. He does not, however, provide any specified knowledge or expertise in that regard. He does not engage in any scientific process or accepted

12

method to analyze the quality of the manufacturing process. Nor could he. Kalman does not purport to provide an opinion about compliance with manufacturing protocols, he admits he never visited the manufacturing site at issue, and the only manufacturing documents he reviewed relate to a single FDA citation that was remedied. (Doc. 294-8, ¶¶ 19-23).

Instead, he flatly concludes that the perceived shortcomings in the manufacturing process are sufficient to conclude the SAM-e manufactured by Vitamins Because could never meet label specifications. In doing so, Kalman is acting as a mouthpiece for Plaintiffs' counsel and narrating the evidence in the record, as opposed to conveying a specific expert opinion based on those facts.

Regardless, Kalman's conclusions that are based on the Vitamins Because manufacturing process disregard that approximately 29% of the SAM-e test results that Dr. Kalman reviewed demonstrated it contained the same amount of SAM-e as was listed on the label. Such a blatant contradiction cannot withstand even the slightest scrutiny and further demonstrates precisely why Kalman's opinions are so unreliable that he must be stricken.

## CONCLUSION

For the reasons stated herein, aSquared rests the Court exclude the expert reports and testimony of Dr. Douglas Kalman.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Counsel for aSquared has conferred with Plaintiffs' counsel about this motion and Plaintiffs oppose the motion and the relief requested herein.

Dated: February 8, 2022

**LIPPES MATHIAS LLP**

/s Alessandro A. Apolito
Alessandro A. Apolito, Esq.
Florida Bar Number: 0084864
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256
P: 904-660-0020
F: 904-660-0029
Primary E-Mail: aaapolito@lippes.com

Brendan H. Little, Esq., *pro hac vice*
Sean M. O'Brien, Esq., *pro hac vice*
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com