**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:19-CV-22702-KMW**

NOAH MALGERI, KALYN WOLF, BILL
WILSON, SHANNON HOOD, ERIC
FISHON, and ROBERT MCKEOWN on
behalf of themselves and all others similarly
situated,

      Plaintiffs,

  vs.

VITAMINS BECAUSE LLC, CT HEALTH
SOLUTIONS LLC, GMAX CENTRAL
LLC, and ASQUARED BRANDS LLC,

      Defendants.

_____

<u>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT**</u>

## TABLE OF CONTENTS

INTRODUCTION AND FACTUAL BACKGROUND ............................................................1

ARGUMENT .................................................................................................................................6

    A.  Legal Standard ................................................................................................6

    B.  Plaintiffs are Entitled to Summary Judgment as to their FDUTPA and
        Consumer Protection Claims .........................................................................7

        1.  Evidence in the Record Conclusively Demonstrates that the Subject
            Product Labels were Misleading and Deceptive ...............................9

            a)  Defendant Manufacturer Uniformly Underfilled its SAMe Capsules .........9

            b)  The Subject Product SAMe Capsules Were Uniformly Defective and
               Noncompliant with cGMP and Federal Regulations ................................18

            c)  The Finished Subject Yielded Unreliable and Inconsistent Amounts
               of SAMe Strength as Measured Against its Label Claims ......................22

        2.  Defendant's Deceptive and Unfair Practices Caused Plaintiffs Actual
            Economic Injury................................................................................24

        3.  Plaintiffs are Entitled to Injunctive Relief .......................................25

        4.  Plaintiffs Hood and Fishon are Entitled to Statutory Damages Under
            New York's GBL §§ 349 and 350 ....................................................25

    C.  Plaintiffs are Entitled to Summary Judgment as to their Claims for Breach of
        Warranties .....................................................................................................26

    D.  CONCLUSION..............................................................................................29

## TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE(S)**

*Alhassid v. Bank of Am., N.A.,*
   No. 14-20484-CIV, 2015 WL 11110557, at \*9 (S.D. Fla. Nov. 4, 2015) ..................7, 8

*Anderson v. Liberty Lobby Inc.,*
   477 U.S. 242, 247 (1986)..................................................................................6

*Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc.,*
   2006 WL 2691528, at \*3 (M.D. Fla. Sept. 19, 2006) ......................................7

*Cordoba v. Dillard's, Inc.,*
   419 F.3d 1169, 1181 (11th Cir.2005) ..............................................................6

*Davidson v. Kimberly-Clark Corp,*
   873 F.3d 1103, 1110 n.2 (9th Cir. 2017) ..........................................................8

*Doe v. Boys Clubs of Greater Dallas, Inc.,*
   907 S.W.2d 472, 478 (Tex.1995)......................................................................8

*Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc.,*
   674 F.Supp.2d 1344, 1353 (S.D. Fla. 2009) ....................................................7

*Gold Coast Racing, Inc. v. The Home Depot U.S.A., Inc.,*
   No. 05-61931-CIV, 2006 WL 4579688, at \*2 (S.D. Fla. Feb. 6, 2006) ..........8

*HCA Health Servs. of GA., Inc. v. Employers Health Ins. Co.,*
   240 F.3d 982, 991 (11th Cir. 2001) ..................................................................6

*In re Amla Litig.,*
   320 F. Supp. 3d 578, 591 (S.D.N.Y. 2018)....................................................26

*In re Tobacco II Cases,*
   46 Cal.4th 298, 327 (2009) ..............................................................................9

*Koch v. Acker, Merrall & Condit Co.,*
   18 N.Y.3d 940, 940–41 (2012) ........................................................................8

*Lugo v. Carnival Corp.,*
   154 F Supp 3d 1341, 1344 (S.D. Fla. 2015) ....................................................7

*Manchanda v. Navient Student Loans,*
   19CV5121, 2020 WL 5802238, at \*5 (S.D.N.Y. Sept. 29, 2020) ....................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

475 U.S. 574, 587 (1986) .................................................................................7

*Miranda v. B & B Cash Grocery Store, Inc.,*
    975 F.2d 1518, 1534 (11th Cir.1992) ...........................................................7

*Rodriguez v. It's Just Lunch, Int'l,*
    300 F.R.D. 125, 147 (S.D.N.Y. 2014) ....................................................... 8-9

*Rollins, Inc. v. Butland,*
    951 So.2d 860, 869 (Fla. 2d DCA 2006) ......................................................8

*Siemer v. Assoc. First Capital Corp.,*
    CV97-281TUCJMRJCC, 2001 WL 35948712, at *4 (D. Ariz. Mar. 30, 2001)...........8, 9

*Spagnola v. Chubb Corp.,*
    574 F.3d 64, 74 (2d Cir. 2009)......................................................................8

*Switch, Ltd. v. Uptime Inst., LLC,*
    426 F. Supp. 3d 636, 643 (D. Nev. 2019) ....................................................8

*Vine v. PLS Fin. Services, Inc.,*
    331 F.R.D. 325, 339 (E.D. Tex. 2019)..........................................................9

*Walker v. Darby,*
    911 F.2d 1573, 1577 (11th Cir. 1990) ..........................................................6

*Zlotnick v. Premier Sales Group,*
    480 F.3d 1281, 1284 (11th Cir. 2007) ................................................ 7-8, 24

## **STATUTES, RULES**

21 C.F.R. § 111 ...........................................................................................19, 25

Ariz. Rev. Stat. Ann. §§ 44-1521 through 44-1534.....................................2, 6, 8, 25

Cal. Bus. & Prof. Code §§ 17200 ...............................................................2, 6, 8

Cal. Bus. & Prof.  Code § 17203 .....................................................................25

Cal. Civ. Code §§ 1750..............................................................................2, 6, 8

Fed. R. Civ. P. 37(c)(1)...................................................................................18

Fed R. Civ. Proc. 56......................................................................................1, 6, 7

Fla. Stat. Ann. § 501.21 .................................................................................25

Fla. Stat. §§ 501.201 ...........................................................................................................2, 6

Fla. Stat. § 501.202 ...................................................................................................................7

Fla. Stat. § 501.204(1) ..........................................................................................................7, 24

Fla. Stat. § 501.211(1) ..............................................................................................................25

Fla. Stat. § 672.104(1) ..............................................................................................................28

Fla. Stat. § 672.313(1) ........................................................................................................26, 27

Fla. Stat. § 672.314(2) ........................................................................................................27, 28

General Business Law §§ 349 & 350 ...............................................................2, 6, 8, 9, 25, 26

Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 ...................................................2, 6, 29

Nev. Rev. Stat. §§ 598.0903 through 598.0999 ...............................................................2, 6, 8

Nev. Rev. Stat. § 41.600 .........................................................................................2, 6, 8, 25

Rule 26(a)(2)(C) ........................................................................................................................18

Tex. Bus. & Com. Code §§ 17.41 ....................................................................................2, 6, 8, 25

Pursuant to Fed R. Civ. Proc. 56 and L. R. 7.1, Plaintiffs, Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, Eric Fishon, and Robert McKeown (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, by and through undersigned counsel, hereby move for summary judgment against Defendants Vitamins Because LLC and CT Health Solutions LLC's (together, "Vitamins Because" or "VB" or "Defendant Manufacturer"), Gmax Central LLC ("Gmax" or "NusaPure") and aSquared Brands LLC ("aSquared") (collectively, "Defendants") as to their asserted consumer protection and warranty claims in the Third Amended Complaint ("TAC") (ECF No. 176), and state as follows:

## I.      INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs are purchasers of S-adenosylmethionine ("SAMe") dietary supplement capsules that were manufactured by Defendant Manufacturer ("subject product") and sold by the retail Defendants Gmax and aSquared on Amazon.com. ECF No. 176, TAC, at ¶¶ 1; 8-13; ECF No. 176-8 (Declaration of Thomas Chapman regarding VB's manufacture and sale of SAMe); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Exh. 2, VB-PROD-5373-5374; VB-PROD-005435 (Examples of Gmax and aSquared private labels for their sale of the subject project.). Plaintiffs assert various causes of action under state consumer protection statutes and Florida common law, alleging on a class-wide basis that the subject product manufactured and labeled by Vitamins Because and sold to them by Defendants Gmax and aSquared and other online retailers were uniformly underfilled, fraudulently mislabeled and defectively manufactured. ECF No. 176, TAC, Counts 1-13.[1]

---

[1] Specifically, Plaintiffs have asserted their claims under: (1) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.; (2) Nevada's Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903 through 598.0999 and Nev. Rev. Stat. § 41.600; (3) Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 through 44-1534; (4) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (5) California's Consumers Legal

Plaintiffs advance two primary theories of deception and misconduct committed by Defendants. First, the subject product SAMe supplements are fraudulently labeled because, based on the formulation and manufacturing employed by Vitamins Because, the amount of active SAMe per serving represented on each label is significantly less than represented, as the actual amounts of active SAMe per serving were never properly filled in each capsule. ECF No. 176, TAC, at ¶¶ 1, 89. To support this claim, Plaintiffs and their experts coordinated dozens of laboratory assay tests on subject product SAMe capsules bought in the consumer marketplace, all of which show failure to meet the label claim and uniform SAMe deficiencies ████████████████ ███████████████████ (market sampling assay analyses of the subject product and expert analyses.). Even more significantly, Plaintiffs' expert, Dr. Douglas Kalman, analyzed Defendant Manufacturer's choice of raw materials, manufacturing records and processes for formulating the subject product and has opined ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████

Of course, Defendants have long known that the subject product SAMe supplements they sold were deficient as to their labeled amounts of active SAMe ingredient and did not meet their label claims. ███████████████████████████████████

---

Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; (6) New York Deceptive Practices and False Advertising Act, General Business Law §§ 349 & 350; (7) Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et seq*.; (8) breach of implied warranties under Florida common law; (9) breach of express warranty under Florida law; (10) Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.; (11) intentional misrepresentation under Florida law; and (12) negligent misrepresentation under Florida law. Plaintiffs also seek injunctive relief. ECF No. 176, TAC, at ¶¶ 130-319.



*See also* Exh. 8, VBPROD 3716 (Defendant Manufacturer's personnel questioned "why were [their SAMe supplements] testing this low"?).

Second, the subject product SAMe supplements are fraudulently labeled because of Defendants' material omissions concerning the quality of the product for consumer use. Chief amongst their material omissions is their failure to disclose that, during the time that Vitamins Because manufactured the subject product SAMe supplement, its manufacturing suffered from core defects and failure to comply with basic FDA requirements for the manufacture of supplements and current good manufacturing practices ("cGMP"). *See* Exh. 9, FDA Establishment

Inspection Report, PLAINTIFFS_064-077; Exh. 5, ¶¶ 18-23. A very damning 2018 FDA Inspection Report recorded multiple regulatory violations, including on matters cutting to the very basics of manufacturing and supplement formation. Exh. 9. These include (but are not limited) to the following FDA-observed violations:

1) Defendant Manufacturer "did not establish product specifications for the finished dietary supplements";

2) Defendant Manufacturer "did not establish component specifications for purity, STRENGTH (*emphasis added*) and composition";

3) Defendant Manufacturer "did not implement quality control operations to ensure the QUALITY (*emphasis added*) of the dietary supplement";

4) Defendant Manufacturer "did not establish specifications for the packaging and labeling of the finished dietary supplement, to ensure that [it] used the specified packaging and to ensure [it] applied the specified label";

5) Defendant Manufacturer "did not collect and hold reserve samples of packaged and labeled dietary supplements that [it] distributed."

*Id*.

The FDA found that Vitamins Because's violations applied to all of their dietary supplements, inclusive of the subject product SAMe. *Id*. Moreover, ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

4

Despite clear and abundant evidence, Defendants weakly deny Plaintiffs' allegations. Plaintiffs now move the Court to grant summary judgment as to their asserted consumer protection and warranty claims.[2] In making this motion, Plaintiffs rely on the facts and evidence to which there is no dispute or genuine issue of fact.[3]

## II.   ARGUMENT

### A.  Legal Standard

Summary judgment is appropriate when "the pleadings, depositions ... and admissions … show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 247 (1986); *HCA Health Servs. of GA., Inc. v. Employers Health Ins. Co*., 240 F.3d 982, 991 (11th Cir. 2001). *See also* Fed R. Civ. P. 56. A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson*, at 249. But speculation, conjecture, or a mere "scintilla" of evidence supporting the opposing party's position will not suffice to create a genuine

---

[2] These include: (1) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq.; (2) Nevada's Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903 through 598.0999 and Nev. Rev. Stat. § 41.600; (3) Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 through 44-1534; (4) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; (5) California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.; (6) New York Deceptive Practices and False Advertising Act, General Business Law §§ 349 & 350; (7) Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41, et seq.; (8) breach of implied warranties under Florida common law; (9) breach of express warranty under Florida law; (10) Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ECF No. 196, TAC ¶¶ 130-276.

[3] In conjunction with this motion, Plaintiffs submit a Statement of Undisputed Material Facts, pursuant to the Court's rules and Local Rule 56.1.

issue of material fact; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005); *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Only "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc*., 975 F.2d 1518, 1534 (11th Cir.1992). "But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper." *Lugo v. Carnival Corp*., 154 F Supp 3d 1341, 1344 (S.D. Fla. 2015) (citing *Matsushita Elec. Indus. Co.*, at 587).

### B. Plaintiffs are Entitled to Summary Judgment as to their FDUTPA and Consumer Protection Claims

"In order to succeed in their claims under the FDUTPA, Plaintiffs must prove: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc.*, 674 F.Supp.2d 1344, 1353 (S.D. Fla. 2009) (citation and quotation omitted.). Although FDUTPA does not explicitly define the term "deception," the statute should be "construed liberally," and the concept should be regarded as extremely broad. *Alhassid v. Bank of Am., N.A.*, No. 14-20484-CIV, 2015 WL 1110557, at *9 (S.D. Fla. Nov. 4, 2015) (citing Fla. Stat. § 501.202); *Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc.*, 2006 WL 2691528, at *3 (M.D. Fla. Sept. 19, 2006).

Unlawful acts and practices under FDUTPA include "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce." Fla. Stat. § 501.204(1). Deception under FDUTPA occurs when there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Group*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citation and quotation omitted). *See also Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006).

"Reliance is not required for causation under FDUTPA." *Alhassid,* 2015 WL 11110557, at *9. "When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Gold Coast Racing, Inc. v. The Home Depot U.S.A., Inc.*, No. 05-61931-CIV, 2006 WL 4579688, at *2 (S.D. Fla. Feb. 6, 2006).

Plaintiffs' claims under other state consumer protection statutes require proof of the same or similar elements. *See* case law.[4] They, too, provide liability for unfair or deceptive acts or practices in the conduct of any trade or commerce (*see* state consumer statutes[5]); and measure

---

[4] *Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir. 2009) (elements of GBL 349 are: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."); *Manchanda v. Navient Student Loans*, 19CV5121, 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) (GBL § 350 shares the same elements as GBL § 349.); *Davidson v. Kimberly-Clark Corp,* 873 F.3d 1103, 1110 n.2 (9ᵗʰ Cir. 2017 ) (UCL and CLRA claims are governed by the reasonable consumer standard.);*Siemer v. Assoc. First Capital Corp*., CV97-281TUCJMRJCC, 2001 WL 35948712, at *4 (D. Ariz. Mar. 30, 2001) ("elements of a private cause of action under the ACFA are (1) a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and (2) the hearer's consequent and proximate injury."); *Doe v. Boys Clubs of Greater Dallas, Inc*., 907 S.W.2d 472, 478 (Tex.1995) (TDTPA elements are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."); *Switch, Ltd. v. Uptime Inst., LLC*, 426 F. Supp. 3d 636, 643 (D. Nev. 2019) (elements of claim).

[5] N.Y. Gen. Bus. Law §§ 349 and 350; Cal. Bus. & Prof. Code §§ 17200, *et seq.;* Cal. Civ. Code §§ 1750, *et seq.;* Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*; Nev. Rev. Stat. §§ 598.0903 and Nev. Rev. Stat. § 41.600; Tex. Bus. & Com. Code §§ 17.41, *et seq.*

deception on an objective, reasonable consumer standard wherein reliance on the deceptive representations is not required or can be presumed. *See* case law.[6]

**1. Evidence in the Record Conclusively Demonstrates that the Subject Product Labels were Misleading and Deceptive**

In this case, it is undisputed that the subject product SAMe supplements manufactured by Vitamins Because and sold to Plaintiffs and other consumers by Defendants and other online retailers were labeled with affirmative misrepresentations and material omissions. Defendants cannot reasonably dispute that the subject product was of lesser economic value to Plaintiffs. Incontrovertible evidence, admitted by Defendants, shows that: 1) all SAMe capsules were underfilled and failed to contain the labeled amount of active SAMe content; 2) the SAMe capsules were manufactured through defective processes which did not comply with cGMP and federal regulations; and 3) the SAMe capsules failed to yield reliable and consistent amounts of active SAMe as represented on their labels. Thus, because all of the subject product during the stated class period was deficient and defective, Plaintiffs were injured and did not receive the economic value of their purchase.

**a) Defendant Manufacturer Uniformly Underfilled its SAMe Capsules**

---

[6] *Koch v. Acker, Merrall & Condit Co*., 18 N.Y.3d 940, 940–41 (2012) (justifiable reliance is not required for New York's GBL §§349-350 claims.); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014) ("causation element under GBL §§349-350 is satisfied where a the plaintiff suffers a loss because of a defendant's deceptive act.); *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) (Under California statutes, although reliance is a required element, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material."); *Vine v. PLS Fin. Services, Inc*., 331 F.R.D. 325, 339 (E.D. Tex. 2019) (concluding that, so long as economic damages are uniform, the need for evidence of reliance does not preclude class certification for TDTPA claims.); *Siemer v. Assoc. First Capital Corp*., CV97-281TUCJMRJCC, 2001 WL 35948712, at *4 (D. Ariz. Mar. 30, 2001) (reliance for ACFA can be presumed simply by the class member's purchase of the subject product.).

It is common practice throughout the dietary supplement industry to label SAMe supplements with the measure of milligrams of actual SAMe (i.e. active SAMe ions) contained in the enclosed supplements – not the total volume of SAMe salt which consists of other materials combined with the active SAMe ions to stabilize and hold its form. *See* Exh. 5, ¶ 8, fn.2. This is because the amount of active SAMe ions to be consumed in each serving of the supplement is the basis for all consumer dosages, and the motivation for consumer purchase and consumption of such dietary supplements. *Id*. Simply put, just like consumers take vitamin B supplements for its vitamin B, consumers take SAMe supplements for its active SAMe ion content, not the other non-active ingredients which are just included to ensure that the active SAMe content can be processed and maintained as a stable dietary supplement.

For this reason, consumers of SAMe supplements reasonably understand and expect the given labeled amount of SAMe (e.g. 500mg per capsule) to indicate that the given serving of supplement contains that mount (i.e. 500 mg) of actual SAMe ions, above and beyond any other ingredients[7] which are included in the supplements for manufacturing or stability purposes. Thus, while SAMe raw materials used in the manufacture of SAMe supplements may include other components (e.g. stabilizing salts), it is crucial for purposes of label claim accuracy that the supplements contain a sufficient amount of SAMe content to meet the claimed amount of SAMe in actual, active SAMe contents. *Id*; Exhibit 11, ███████████████████████████

████████████████████████ ██████ ████████████████████████

████████████████████████████████████████

---

[7] Supplement manufactures may also include rice powder as a flow agent in their gelatin or vegetable capsules.

[8] Unless specified otherwise, the term "label claim(s)" as used herein refers to the claim on the labels of the subject product as to the amount of milligrams of SAMe it contains per serving.

Thus, Defendant Manufacturer's defective manufacturing process guaranteed that the stated amount of active SAMe ions would not be present.

The raw material SAMe which Defendant used in its manufacture of SAMe supplements was a stable, commercial salt form of SAMe known as S-adenosyl methionine disulfate tosylate ("SAMe disulfate tosylate").

; Exh. 13, Supplier CoAs, VB PROD 5273-5361. The certificates of analysis for the SAMe disulfate tosylate which Defendant used as raw materials in their SAMe production reveal that this salt compound was comprised of up to approximately a mere 52% actual SAM-e ions, the active ingredient for which consumers consume SAMe supplements. The other approximately 48% was comprised of sulfate salts and other compounds. Exh. 13, VB PROD 5273-5361[9];

Given the chemical makeup of the SAMe raw material and its 50% SAMe strength, Defendant would have needed to include at least *twice* the specified levels of SAMe disulfate

---

[9] *See* Exh. 15, VB-PROD-005289 (certificate of analysis showing the SAMe ion content of the SAMe disulfate tosylate used by Defendant Manufacturer to range between 49.5-54.7%.).

[10]

tosylate to attain the "as labeled" proper level of SAM-e strength (i.e. the amount of active SAM-e ions). ████████████████████████ Thus, for example, in order for Defendant to meet a label claim of 500 mg of SAMe per capsule (as was made by Defendants on many of their SAMe products), each capsule of the subject would have needed to be filled with approximately double that amount (i.e. approximately 1000 mg) of SAMe disulfate tosylate raw material. ████████████████████████████████

████████████████████████████████████

Because Defendant Manufacturer's principals and personnel had virtually no understanding of the relationship between SAMe disulfate tosylate and its actual SAMe ion content ████████████████████████████████████ Defendant's ignorance of this key fact concerning SAMe supplement formulation resulted in its failure to set a manufacturing methodology that would ever fill its capsules with the amount of SAMe disulfate tosylate needed to meet its label claims. ███

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████



Moreover, testimony from Vitamins Because's corporate witness shows that the company consistently followed the same core defective manufacturing processes which guaranteed that each subject product bottle – including those purchased by Plaintiffs -- would contain supplements with an at least approximately 50% SAMe deficiency.

For these reasons, Plaintiffs' expert concluded that *all* subject product SAMe supplements manufactured by Defendant – including those purchased by Plaintiffs – were, at minimum, at least approximately 50% deficient, well below their respective label claims. 

Significantly, there is no dispute on this issue between





███████████████████████████████████████████████████████

████████████████████████████████

Review of Vitamins Because's numerous SAMe batch records which were produced in this case also confirms that the capsules were defectively manufactured, in that they were not filled to meet the labeled amount of SAMe based on its active SAMe ion content.[17] The batch records all show that a factor of .97 was used to fill the SAMe capsules indicating that the subject product contained the stated amount (e.g. 250 mg/unit) of SAMe tosylate disulfate, but not that measure or strength of active SAMe ions despite being labeled otherwise. *See e.g.* Exh. 19, VB-PROD-005191, VB-PROD-004019, VB-PROD-004056.[18] ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████
██████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████████

For these reasons, no genuine issue of material fact exists as to the underfilling of the subject product SAMe capsules and its mislabeling. It is all but conceded that the subject product capsules were filled and measured to contain only the represented amount of milligrams (e.g. 500 mg or 250 mg per capsule) in SAMe tosylate disulfate (or SAMe isomers), not that labeled amount of active SAMe ions, as is standard practice in the supplement industry. The label claims were thus uniformly deficient and deceptive to Plaintiffs and all reasonable consumers who expected the label claim (e.g. 500 mg or 250 mg per capsule) to indicate the supplements' active SAMe strength not inclusive of the amount of stabilizing salt and filler In light of the manufacturing batch records and multiple party admissions, no reasonable jury could find otherwise.

**b) The Subject Product SAMe Capsules Were Uniformly Defective and Noncompliant with cGMP and Federal Regulations**



Plaintiffs present clear allegations and evidence that *all* subject product SAMe capsules were uniformly defective in their manufacturing processes and noncompliant with federal regulations and cGMP. ECF No. 176, TAC, ¶¶ 94-103;



Here, too, there can be no material dispute that Vitamins Because defectively manufactured and sold all of its SAMe capsules in violation of FDA[20] and FTC regulations and guidance. In the first instance, Vitamins Because's testimony in this case admitted that the Defendant Manufacturer failed to qualify its supplier, measure its input of SAMe ions, or consistently test the finished product – clear violations of 21 C.F.R. § 111.

---

[20] Relevant FDA regulations which Vitamins Because violated include parts of 21 C.F.R. § 11175.

Moreover, the FDA's January 2018 inspection report of Vitamins Because's manufacturing facilities revealed core problems as to all supplement manufacturing performed by the company (including its SAMe supplements) and noncompliant processes in violation of FDA regulations. Exh. 9. The report records FDA inspector observations that Defendant's manufacturing processes failed to: a) establish component specifications for purity, strength and composition; b) test any raw ingredient components or finished dietary supplements; and c) create a quality assurance/compliance program, amongst other severe violations of good manufacturing practices ("GMP"). *Id*.

███████████ manufacturing processes and report on its progress through quarterly reports to the satisfaction of the FDA.[22] *Id*, at p. 66-67, 179.

For these reasons, *at least until about a year following the January 2018 inspection*, all parties agree that Vitamins Because's manufacturing failed to be in full compliance with the law. Because Plaintiffs' purchases were of subject product SAMe supplements which were manufactured (and sold) well before that time, it is beyond dispute that they purchased SAMe supplements from a noncompliant manufacturing source. ████████████████ Because the subject product labels indicate that the SAMe supplements were manufactured at a cGMP compliant facility,[23] and at the very least Defendants failed to disclose their serious manufacturing defects and regulatory noncompliance, Plaintiffs were materially deceived when making their subject product purchases. ████████████████████

████████████████████████████████

████████████████████████████████

_____

██ ████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
██████

[23] The private labels attached to the subject product sold by Defendants Gmax and aSquared affirmatively misrepresented that the subject product was produced through cGMP. *See e.g.* ECF No. 176-3, at 2-3; ECF No. 176-4, at 2; Exh. 2 (Gmax and aSquared private labels).

███████████████████████████████████████████████████

█████████████████████████████████████████

### c) The Finished Subject Product Yielded Unreliable and Inconsistent Amounts of SAMe Strength as Measured Against its Label Claims

Extensive assay testing of the subject product SAMe supplements conducted by both Plaintiffs and Defendants reveal a clear lack of reliability and consistency in the amounts of SAMe content actually provided by the SAMe capsules. ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ Simply put, while Defendants may attempt to argue that at least *some* of the subject product SAMe supplements may have met their label claims regarding the amounts and strength of its active SAMe content, it is beyond cavil that many of the SAMe lots and batches failed to reliably yield a fixed amount of SAMe in accordance with their label claims. *Id*; ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ In this respect, the subject product labels were misleading and injurious to Plaintiffs and reasonable consumers, as they typically rely on and expect their purchased supplements to reliably provide the labeled amount of supplementation on a consistent basis for typical consumer use and dosing. ████████████████████████████████████████████

█████████████████████████

---

[24] "[A]ny lack of uniformity in Defendant's manufacturing or end-product results (i.e. the subject product's strength or quality) would itself render the SAM-e supplements valueless to consumers

And here, too, there exists no material issue of disputed fact. Experts for both Plaintiffs and Defendants agree that there was rampant inconsistency in the subject products' SAMe yield as measured against its label claims. *Id*;

And they also agree that consumers reasonably expect that they are always receiving the labeled amount of SAMe in their supplement purchases, and that, therefore, the supplements are of lesser value to them should the consistency of the SAMe and label claims not be assured. *Id*.[26]

In this light, no jury could reasonably find that Defendants' manufacture and sale of SAMe supplements to Plaintiffs and consumers, which contained no reliable or consistent yield of SAMe as measured against their labels, is not an unfair or deceptive practice in the course of commercial conduct. *See* Fla. Stat. § 501.204(1). There is no doubt that label claims on the subject product were likely to detrimentally mislead Plaintiffs and the reasonable consumer, as they expect that the dietary supplements they purchase will reliably deliver the claimed amount of active ingredient (i.e. active SAMe ions) in every purchase. *See Zlotnick*, 480 F.3d at 1284. As such, there is no genuine issue of material fact that Defendants' conduct in manufacturing, formulating, labeling, and selling the subject product was materially deceptive.

**2. Defendant's Deceptive and Unfair Practices Caused Plaintiffs Actual Economic Injury**

In this case, it cannot be disputed that Plaintiffs purchased the subject product and paid for the subject product SAMe capsules. ▮▮▮▮▮▮▮▮▮▮▮. Plaintiffs, like typical consumers, purchased their SAMe supplements for the benefits of the active SAMe ions allegedly included, which were claimed on the labels to be contained in the capsules, and thus attain the stated levels of SAMe supplementation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At the very least, the materially misleading labels provided SAMe supplements not of their represented worth, causing Plaintiffs to pay a price premium. Defendants can present no counterevidence in the record suggesting that SAMe capsules which were uniformly underfilled, defectively manufactured through noncompliant processes, or inconsistent in their measure of active SAMe yield would not be of no, or at least, lesser consumer value. In fact, their stated opinions aside, Defendants' experts

have conceded that SAMe supplements of this quality would be of lesser consumer value.  It is

therefore clear that Plaintiffs were injured from Defendants' deceptive acts of mislabeling and

material omissions in having paid for worthless supplements or a price premium for supplements

of lesser value. Therefore, summary judgement should be granted as to Plaintiffs claims under the

state consumer statutes.

### 3. Plaintiffs are Entitled to Injunctive Relief

Plaintiffs also seek injunctive relief against Defendant pursuant to Fla. Stat. § 501.211(1),

which permits anyone aggrieved under FDUTPA to "bring an action to obtain a declaratory

judgment that an act or practice violates this part and to enjoin a person who has violated, is

violating, or is otherwise likely to violate this part."[27] Plaintiffs specifically seek to enjoin

Defendants from employing their false and misleading SAMe labels and selling the defective and

noncompliant subject product. Because Plaintiffs have demonstrated that they are entitled to

summary judgment as to their consumer protection claims, the Court should grant their requested

injunctive relief.

### 4. Plaintiffs Hood and Fishon are Entitled to Statutory Damages Under New York's GBL §§ 349 and 350

---

[27] Plaintiffs are also entitled to injunctive and declaratory relief pursuant to their claims under the relevant state consumer protection statutes. *See* Fla. Stat. Ann. § 501.21; Nev. Rev. Stat. § 41.600(3)(a), 598.0979; Ariz. Rev. Stat. § 44-1528; Cal. Bus. & Prof. Code § 17203; N.Y. Gen. Bus. Law § 349(b); Tex. Bus. & Com. Code § 17.47(a).

Under New York's Consumer Fraud Protection statutes, GBL §§ 349 and 350, claimants who were injured through violation of the statutes are entitled to recover the greater of (i) $50, pursuant to GBL § 349(h), and $500, pursuant to GBL § 350, or (ii) actual damages, whichever is greater, for each violation of the law. Because each bottle of SAMe is less than $50, statutory damages apply. *In re Amla Litig.*, 320 F. Supp. 3d 578, 591 (S.D.N.Y. 2018) (applying statutory damages because they would necessarily be more than any price premium measure of actual damages.). Because Plaintiffs Hood and Fishon have shown they are entitled to summary judgment as to their New York GBL claims, this Court should award them statutory damages of $50 under GBL § 349 and $500 under GBL § 350, for each of their subject product purchases, from each defendant who is liable. ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████

**C.  Plaintiffs are Entitled to Summary Judgment as to their Claims for Breach of Warranties**

Plaintiffs also seek summary judgment on their claim against Defendants for breach of express warranty. TAC, ¶¶ 242-255, ECF. No. 176, at 87-89. Under Florida law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Fla. Stat. § 672.313(1)(a). Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Fla. Stat. § 672.313(1)(b).

In this case, it cannot be disputed that the subject product label claims conveying representations regarding the amounts of SAMe included in the subject product capsules and their

25

quality constitute "affirmation[s] of fact or promise[s] made by the seller to the buyer" relating to product. Fla. Stat. § 672.313(1)(a); TAC, Exhs. A-G, ECF Nos. 176-1 through 176-7 (depictions of subject product labels); Exh. 2, VB-PROD-005372; VB-PROD-005435. They also describe the amount of SAMe in milligrams, in large and apparent print, because the measurement of useable product is the most essential characteristic of the SAMe supplements and the primary, if not sole, motivation for any consumer to buy the product. As such, by law, the subject product labels create express warranties that the supplements conform to the description of active SAMe content. *Id.* *See also* Fla. Stat. § 672.313(1)(b). It is thus clear that the subject product labels and their claims as to the amounts of SAMe present in the capsules constitute express warranties as a matter of law.

As previously noted, the record reveals no genuine dispute of fact that the subject product SAMe supplements manufactured by Vitamins Because and sold by Defendants and other online private label Amazon retailers were uniformly underfilled and distributed to Plaintiffs and consumers with less active ingredient than was listed on the label. *See supra*. In light of Defendant Manufacturer's formulaic underfilling, it is also beyond any dispute that the express warranties created by the subject product labels were breached by Defendants in their sale of the underfilled supplement capsules to Plaintiffs and other consumers. Underfilled capsules, by their very design, cannot provide the promised amounts of active SAMe or deliver the benefits associated with such levels of supplementation. Accordingly, Plaintiffs are entitled to summary judgment on this claim.

Plaintiffs also move for summary judgment on their claim against Defendants for breach of implied warranty of merchantability. TAC, ¶¶ 219-241, ECF. No. 176, at 83-86. The implied warranty of merchantability provides that goods sold by a merchant, like the subject product SAMe supplements sold to Plaintiffs, must be: 1) "of fair average quality within the description;" 2) "fit for the purposes for which [they] are used;" 3) "of even kind, quality and quantity within each unit

and among all units involved;" and 4) "conform to the promises or affirmations of fact made on the container or label." Fla. Stat. § 672.314(2).

Summary judgment should be granted on this claim because, as demonstrated *supra*, there is no genuine issue of material fact as to Defendants' status as merchants and the unmerchantability of the subject product SAMe supplements. Defendants qualify as "merchants" under the law because they are all entities who regularly sell dietary supplements and transact large volumes of commercial sales of those consumer products. ECF Nos. 176-8 (Chapman declaration describing the large volume of commercial sales of SAMe supplements which Defendants engage.) and 176-9, at 3-4 (FDA Inspection Report describing Vitamins Because's commercial practices as a manufacturer and seller of dietary supplements.). *See* also Fla. Stat. § 672.104(1) (defining "merchant as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction.").

Moreover, because it is beyond dispute that the subject product SAMe capsules were systematically underfilled by their formulation, design and manufacturing processes, and thus uniformly deficient as to their SAMe label claims, they failed to "conform to the promises or affirmations of fact made on the container or label." *See supra*; Fla. Stat. § 672.314(2)(f). Similarly, because the subject product SAMe capsules were manufactured through uniformly defective processes which were noncompliant with cGMP and federal regulations, they cannot be considered "of fair average quality" or fit as dietary supplements for purposes of consumer sale and use. *See supra*; Exhibit 10, Dr. Neil Ross Deposition Transcript, pp. 157-158 (testifying that he would not recommend that consumers purchase supplements manufactured by companies in violation of FDA regulations.); Fla. Stat. § 672.314(2)(b-c). And lastly, because it is beyond dispute that the finished subject product yielded varying and unreliable amounts of SAMe strength

as measured against their label claims, it is beyond dispute that the supplements did not meet their implied warranty to be "of even kind, quality and quantity within each unit and among all units involved." *See supra*; Fla. Stat. § 672.314(2)(d). Accordingly, the subject product purchased by Plaintiffs was not "merchantable" under the law, and Plaintiffs are entitled to summary judgment on this claim as well.[28]

### D.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Partial Summary Judgment.

DATED:  February 8, 2022.                    By:  /s/ Joshua H. Eggnatz

<div style="margin-left:40%">

Joshua H. Eggnatz, Esq.
Fla. Bar No.: 0067926
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: 954-889-3359
Fax: 954-889-5913
JEggnatz@JusticeEarned.com

*Local Counsel for Plaintiff and the Putative Class*

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com

</div>

---

[28] Because of Defendants' clear breaches of their implied and express warranties, Plaintiffs are also entitled to summary judgment under their claim under the Magnusson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq*. *See* TAC, ¶¶ 256-276, ECF No. 176, at 90-93 (asserting a state cause of action under the MMWA as consumers who were harmed by Defendants failure as warrantors to comply with their express written and implied warranties.).

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com

*Counsel for Plaintiff and the Putative Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of notices of Electronic Filing generated by CM/ECF.

By: */s/ Joshua Eggnatz*

## SERVICE LIST
### Malgeri, et al. vs. Vitamins Because, LLC, et al.
### Case No.:  19-cv-022702-KMW

**Attorneys for PLAINTIFFS**:

Joshua H. Eggnatz
**EGGNATZ | PASCUCCI**
7450 Griffin Road
Suite 230
Davie, FL 33314
Tel: 954-889-3359
JEggnatz@JusticeEarned.com

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977

Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com

**Attorneys for DEFENDANTS:**

*Defendants*, **VITAMIN BECAUSE LLC**
**and CT HEALTH SOLUTIONS LLC:**

David S. Johnson (FBN 96423)
**JOHNSON DABOLL ANDERSON, PLLC**
2011 W. Cleveland Street, Suite F
Tampa, Florida 33606
Tel:  813-377-2499
Fax: 813-330-3156
djohnson@jdalegal.com

*Defendant*, **GMAX CENTRAL LLC:**

Leon N. Patricios (FBN 0012777)
Joseph I. Zumpano (FBN 0056091)
**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, FL 33134
Tel: 305-444-5565
Fax: 305-444-8588
lpatricios@zplaw.com
jzumpano@zplaw.com

Richard J. Oparil (Admitted *Pro Hac Vice*)
Kevin M. Bell (Admitted *Pro Hac Vice*)
**ARNALL GOLDEN GREGORY LLP**
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
Tel: 202-677-4030
richard.oparil@agg.com
kevin.bell@agg.com

***Defendant*, ASQUARED BRANDS LLC:**

Alessandro A. Apolito (FBN 0084864)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
822 N. A1A, Suite 101
Ponte Vedra Beach, Florida 32082
Tel: 904-660-0020
Fax: 904-660-0029
aapolito@lippes.com


Brendan H. Little (Admitted *Pro Hac Vice*)
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
Tel: 716-853-5100
blittle@lippes.com