**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

NOAH MALGERI, KALYN WOLF, BILL
WILSON, SHANNON HOOD, and
ROBERT MCKEOWN on behalf of
themselves and all others similarly situated,

     Plaintiffs,

    vs.

VITAMINS BECAUSE LLC, CT HEALTH
SOLUTIONS LLC, GMAX CENTRAL
LLC, ASQUARED BRANDS LLC,
INSPIRE NOW PTY LTD d/b/a
BOOSTCEUTICALS, HEALTHY WAY
RX LLC, KHAKIWARE INC., and JOLLY
DOLLAR SUPPLY COMPANY, LLC.,

    Defendants.

CASE NO.: 1:19-CV-22702-KMW

Purported Class Action

---

## VITAMINS BECAUSE AND CT HEALTH SOLUTIONS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Vitamins Because, LLC, and CT Health Solutions, LLC (collectively "Vitamins Because"), move for summary judgment dismissing with prejudice Plaintiffs' Third Amended Complaint (the Complaint) in its entirety because each claim is preempted by federal law and Plaintiffs cannot carry their burden on essential elements of their case.

## MATERIAL FACTS

Vitamins Because manufactures and sells a federally regulated dietary supplement labeled both by the name of its dietary ingredient—S-Adenosyl-L-Methionine Disulfate Tosylate—and a shorthand name, "SAM-e." *See* Ex. A. Plaintiffs, who claim they purchased Vitamins Because's SAM-e dietary supplement through various retailer Defendants, filed this lawsuit purporting to

1

represent a nationwide class and several state subclasses in a Thirteen-Count Complaint under various warranty, consumer protection, and common law causes of action in six different states, the crux of which is that the quantity of SAM-e in the bottles they purchased was less than what was reported on the product label. *See* Dep. of Douglas Kalman, Composite Ex. B, at 90:6-10. Despite a host of claims in the Complaint about various defects in the SAM-e Plaintiffs purchased, Plaintiffs' purported damages expert in this case makes clear that Plaintiffs are proceeding under a single theory of recovery: they believe the SAM-e supplements they purchased from Vitamins Because and other Defendants contained less SAM-e than the label stated, and they want a full or partial refund of the purchase price. Expert Report of D.C. Sharp, Ex. C, at ¶ 4-5.

To prove each of their claims, Plaintiffs depend on the conclusion of their proffered expert, Dr. Douglas Kalman: while Dr. Kalman's opinion has frequently changed on this point, he opines either that all bottles of SAM-e manufactured by Vitamins Because were defective, (Ex. B at 50:2-6), or that up to 90 percent (rather than all) were defective (Ex. B at 94:1-16). To reach his conclusion, Dr. Kalman relied on two things: 1) supplement samples from bottles of SAM-e tested by Plaintiffs for this litigation, (Ex. B at 50:2-6), and 2) his opinion that Vitamins Because ran afoul of certain FDA manufacturing regulations and therefore could not have made *any* products that met label claims. Expert Rebuttal Report of Douglas Kalman, Ex. D, ¶ 34 (concluding that "all samples tested in four different laboratories . . . demonstrate that Defendant's SAMe manufacturing was defective and never yielded the labeled amount of actual SAMe content. This evidence, coupled with prior history and admitted violations of FDA and FTC regulations indicate a uniform defectiveness and deficiency in the product on a class-wide basis . . .").

It is undisputed that no Plaintiff had testing done on any bottle of Vitamins Because's SAM-e supplement that they actually purchased or consumed. *See* Pls.' Deps., Composite Ex. E.

Instead, Plaintiffs would use tests done on, at *most*, 21 bottles of SAM-e from various retailers to prove that all SAM-e supplements manufactured by Vitamins Because fell short of label content claims, *even though* some of the tests performed revealed that the product met label claims. Ex. B at 93:11—94:16.

Because Plaintiffs did not have their own products tested, testing was conducted on bottles of SAM-e ordered from various retailers on Amazon, without regard to who manufactured the product or how many products came from a single lot number. *E.g.*, Declaration of Kevin Yan, Ex. F In fact, Dr. Kalman did not even know whether Vitamins Because manufactured the products that were tested for this lawsuit:

> Q:    Did you do any research to determine whether or not CT Health Solutions or Vitamins Because manufactured this product that we're looking at the certificate of analysis of in Exhibit 8?
> A:    No, I did not.
> Q:    You just assumed it was manufactured by Vitamins Because; correct?
> A:    Yes, sir.
> Q:    And you assumed it was manufactured by Vitamins Because because you received it in relation to this lawsuit; correct?
> A:    Correct.

Ex. B at 108:13—109:10.

He further admitted that he does not know what percentage of Vitamins Because's SAM-e supplement was tested, or even if it was less than *one percent*. Ex. B at 45:1-10. In fact, Dr. Kalman has no direct knowledge of who manufactured any of the products whose certificates of analysis were attached to his expert report and on which he based his opinions for this litigation. Ex. B at 117:8-24.

Undisputedly, no more than three bottles from any single lot of SAM-e supplement were tested by Plaintiffs. Ex. B at 46:16-25. And the sworn declaration of Thomas Chapman, co-founder and co-owner of Vitamins Because, reveals that out of the 21 bottles of SAM-e supplement

Plaintiffs tested, Vitamins Because did not manufacture at least 11 of them, including all 9 bottles tested by Kevin Yan and listed in his declaration (Exhibit F), as well 2 bottles tested by another laboratory. Declaration of Thomas Chapman, Ex. G. In short, Plaintiffs tested no more than 10 bottles of Vitamins Because's SAM-e supplement that were ordered from various retailers, from different lot numbers, and never consumed by any Plaintiff, and want to hold Vitamins Because liable to a nationwide class for alleged economic damages to every Plaintiff who consumed the supplement.

## **LEGAL STANDARD**

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004).

And while a motion for summary judgment requires the court to make all reasonable inferences in favor of the non-movant, the court should not "draw unreasonable or implausible inferences in favor of the nonmoving party." *Mize*, 93 F.3d at 743. On this point, courts do not quibble: "an inference based on speculation and conjecture is not reasonable." *Wiley v. Nobles*, No. 3:16-cv-717-J-34JBT, 2018 U.S. Dist. LEXIS 148068, at *22 (M.D. Fla. Aug. 30, 2018).

4

"Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests." *Mize*, 93 F.3d at 743.

## ARGUMENT

Vitamins Because now seeks summary judgment on each count of Plaintiffs' Complaint because I) each count is preempted by federal law, and II) Plaintiffs cannot prove essential elements of their case because no reasonable jury may infer from Plaintiffs' evidence the conclusion upon which all of Plaintiffs' claims rest—namely, that the SAM-e dietary supplements Plaintiffs actually purchased and consumed contained less SAM-e than the labels stated.

## I.     Plaintiffs' Claims Are Expressly Preempted by Federal Law

Plaintiffs have situated all their state law claims in areas that are tightly regulated by the FDA and expressly preempted under federal law. Their proffered expert leaves no doubt that to prove their theory that Vitamins Because mislabeled the quantity of dietary ingredient in its SAM-e supplement, Plaintiffs will rely on the handful of tests they performed on Vitamins Because's product as well as alleged violations of FDA regulations. This, they cannot do.

The Supreme Court has long recognized that state laws that conflict with federal law are "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981). Congress passed the Nutrition Labeling and Education Act of 1990 (NLEA), amending the Food, Drug and Cosmetic Act (FDCA) to prescribe national uniform nutrition labeling for foods, including dietary supplements. 21 U.S.C. § 343. The NLEA includes an express preemption provision that prohibits states from establishing any requirements that are not identical to certain federal requirements, including those set forth in 21 U.S.C. section 343(q), governing labeling of dietary supplements. 21 U.S.C. §343-1(a)(4).  It also preempts states from imposing requirements

on nutrient-content or health-related claims made on a label that are not identical to the requirements set forth in § 343(r) of the FDCA. 21 U.S.C. § 343-1(a)(5).

The phrase "not identical to" means that a state requirement imposes an obligation that is not imposed by or contained in or differs from those specifically imposed by or contained in the FDCA or FDA regulations. 21 C.F.R. § 100.1(c)(4). The preemptive effect of the "requirements" language in 21 U.S.C. § 343-1 reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties. *See Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 443, 125 S. Ct. 1788, 1798 (2005). While "Congress did not haphazardly preempt every conceivable state law claim 'involving the false advertising of dietary supplements,' . . . Congress *did* expressly preempt state law claims (whether styled as a false advertising claim or any other) that are not identical to certain federal requirements governing the composition, manufacturing, testing, and packaging of dietary supplements." *Harris v. Cvs Pharmacy*, No. ED CV 13-02329-AB (AGRx), 2014 U.S. Dist. LEXIS 206509, at *12-14 (C.D. Cal. Oct. 14, 2014).

The FDA has promulgated regulations that precisely govern dietary supplement labels, as well as the testing protocol required to determine compliance therewith. 21 C.F.R. § 101.36. Testing dietary supplements for compliance with labeling requirements is not as simple as ordering a few bottles of a manufacturer's products from Amazon and sending them off to a lab. Instead,

> Compliance with this section will be determined in accordance with § 101.9(g)(1) through (g)(8), (g)(10), and (g)(11) [for testing foods] except that the sample for analysis shall consist of a composite of 12 subsamples (consumer packages) or 10 percent of the number of packages in the same inspection lot, whichever is smaller, randomly selected to be representative of the lot.

21 C.F.R. § 101.36(f). Further, "composites shall be analyzed by appropriate methods as given in the 'Official Methods of Analysis of the AOAC International,' or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures." 21 C.F.R. § 101.9(g)(2).

Johnson Daboll Anderson, PLLC

Therefore, to avoid federal preemption on each of their claims that Vitamins Because's SAM-e supplement did not contain the amount of dietary ingredient stated on its labels, Plaintiffs would have to prove that, at a minimum, they randomly selected and tested 12 bottles, or 10 percent of the bottles, in a *single lot* of Vitamins Because's SAM-e dietary supplement and analyzed those bottles under an AOAC method (or, if one was not available, another appropriate method). There is no factual dispute on the key issue here: the testing on which Plaintiffs rely was *not* conducted in accordance with the methodology set forth in § 101.9(g)(2). Instead, Plaintiffs utilized their own scattershot testing scheme, without regard to who manufactured the product, which lot the product came from, what percentage of a given lot the products they tested represent, and whether the tests being used are consistent across the products being tested. *See* Ex. B at 108:13—109:10; Declaration of Kevin Yan, Ex. F. In fact, Plaintiffs' expert on product quality and testing did not know what percentage of Vitamins Because's product was tested. Ex. B at 45:1-10. And contrary to proving that the products Plaintiffs bought and consumed did not meet their label claims, Plaintiffs have admitted that *none* of the products they purchased were ever tested. Composite Ex. E.

In cases like this one, courts across the country have found plaintiffs' state law claims that rely on product testing to be preempted where the plaintiffs' test did not follow the FDA protocol. "As each district court to have considered the matter has found, where, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted." *Mee v. I A Nutrition, Inc.*, No. C-14-5006 MMC, 2015 U.S. Dist. LEXIS 63038, at *10-11 (N.D. Cal. May 13, 2015). In *Mee,* the plaintiffs alleged that tests revealed that the protein content of the defendant's dietary supplements fell short of label claims. *Id.* at *1. The defendant

moved to dismiss because the plaintiffs failed to allege that they tested the supplements according to the 12-sample testing methodology required by the federal regulations. *Id.* at * 9. The court agreed, finding that the plaintiffs affirmatively demonstrated they *hadn't* followed the 12-sample methodology, and granting the defendant's motion to dismiss on all claims that relied on alleged misrepresentations of protein content on the products' labels. *Id.* at **12-13. *See also Dougherty v. Source Naturals, Inc.*, 148 F. Supp. 3d 831, 835-836 (E.D. Mo. 2015) ("Plaintiff explicitly alleges that the Defendant falsely states the nutritional content of its product, as revealed through Plaintiff's testing. This implicates the testing methods required by 21 C.F.R. § 101.9(g). Because Plaintiff has failed to allege she followed FDA testing protocols, her state law claims that rely on a different methodology to demonstrate such labeling violations are inconsistent with the FDCA and are thus preempted.").

Similarly, in *In re Whole Foods*, the plaintiffs, like Plaintiffs here, filed putative class actions under the consumer protection, warranty, and misrepresentation laws of several states, alleging that the amount of sugar in a brand of yogurt was grossly understated on the yogurt's label. 163 F. Supp. 3d 385, 386 (W.D. Tex. 2016). Plaintiffs relied on an article published by *Consumer Reports* to substantiate their allegation that the yogurt contained "11.4 grams of sugar per serving on average," which they claimed was nearly six times the amount stated on the yogurt's nutritional label. *Id.* The defendants moved to dismiss the lawsuit as preempted by federal law because the plaintiffs did not allege that the testing done on the yogurt was conducted in accordance with the methodology set forth in 21 C.F.R. § 101.9(g)(2). *Id.* at 393. The court held that the plaintiffs' state law misbranding claims were indeed preempted as a result of the tests deviating from the regulation, which would "impose liability inconsistent with the FDCA." *Id.* at 394.

Summary judgment is appropriate where Plaintiffs have completed discovery without testing the federally regulated product under the 12-sample protocol. For example, in a case involving the alleged overstatement of the magnesium and sodium content in a defendant's coconut water product, the court held that the plaintiffs' state law claims were preempted by § 101.9(g)(2) and granted summary judgment for the defendant because the plaintiffs did not calculate the magnesium and sodium content from a composite of 12 subsamples in attempting to show that the actual content of those minerals in the defendant's product was less than represented on the label. *Vital v. One World Co.*, 2012 U.S. Dist. LEXIS 186203, at *2, 13-18 (C.D. Cal. November 30, 2012). Because the discovery period was over, the court reasoned that the plaintiffs "could have conducted testing using the § 101-9(g)(2) methodology, but decided against it." *Id.*

Here, Plaintiffs have had ample time to conduct discovery, which is now closed, and, based on the opinions of Dr. Kalman regarding the FDA regulations to which Vitamins Because's product is subject, they have also been on notice that the product at issue is federally regulated. Indeed, Dr. Kalman's report lays out the very law under which dietary supplements are regulated and by which conflicting state laws are expressly preempted. Expert Report of Douglas Kalman, Ex. H, at p. 6-9. Still, rather than testing under the mandatory regulatory protocol, Plaintiffs chose to utilize their own protocol. As a result, their claims are preempted by federal law because every claim relies on the faulty testing.

While there is a split among courts in the Ninth Circuit, where many of these claims are litigated, as to whether the 12-sample methodology must be employed at the *pleading* stage to avoid dismissal, these courts agree that to avoid *summary judgment*, Plaintiffs must prove they utilized the regulatory testing protocol. *See, e.g., Lozano v. Bowmar Nutrition Llc*, No. 2:21-cv-04296-MCS-KS, 2021 U.S. Dist. LEXIS 191266, at *16 (C.D. Cal. Aug. 19, 2021) ("However,

9

the Court acknowledges that the accuracy of Defendant's nutrient content claims must be challenged under the 12-sample test method established by 21 C.F.R. § 101.9(g) to avoid the preemptive effect of the FDCA."); *Smith v. Allmax Nutrition, Inc.*, No. l:15-cv-00744-SAB, 2015 U.S. Dist. LEXIS 171897, 2015 WL 9434768, at *7-8 (E.D. Cal. Dec. 24, 2015) (denying motion to dismiss but holding "any adjudication of the claims on the merits other than by the 12-sample methodology as set forth in section 101.9(g) would be preempted by the FDA," and noting, "This allegation under 21 U.S.C. § 343(a) for a failure to include ingredients is connected to the testing requirements of 21 C.F.R. § 101.9(g)(2). All courts that have considered the issue have found that a plaintiff must prove a violation by the methodology specified in section 101.9.").

This case can be cleanly distinguished from the cases finding no preemption where the source of an ingredient is at issue, rather than the amount of an ingredient, because Plaintiffs here rely exclusively on alleged quantity shortfalls of SAM-e to support their claims. *See, e.g., Durnford v. MusclePharm Corp.*, 907 F.3d 595, at 603-04, 2018 U.S. App. LEXIS 28771 (9th Cir. 2018) (distinguishing between a misbranding claim premised upon the source and *composition* of a protein supplement—which is not regulated under the FDA's 12-sample testing methodology and is therefore not preempted—and one that challenges the *amount* of an ingredient in a supplement, which requires the FDA's testing protocol); *Bruaner v. MusclePharm Corp.*, No. CV 14-8869 FMO (AGRx), 2015 U.S. Dist. LEXIS 105515, at **23-27 (C.D. Cal. Aug. 11, 2015) (contrasting source claims and content claims, and finding that "remedying the alleged [source] violations would not require [defendant] to specifically identify each source of protein in the [p]roduct[,] . . . nor would it require a testing procedure not imposed by or contained in any federal regulation," but holding that quantity claims had to be proven by the 12-sample testing methodology).

Put differently, when a federally regulated supplement or food is at issue, "in order for a

state law claim to survive preemption, plaintiff's claim must be premised on conduct that both (1) violates the FDCA and (2) would give rise to a recovery under state law even in the absence of the FDCA." *Dougherty v. Source Naturals, Inc.*, 148 F. Supp. 3d 831, 834 (E.D. Mo. 2015). If the conduct alleged does not violate the FDCA, then Plaintiffs cannot impose state law liability on Vitamins Because without their claims being expressly preempted by Vitamins Because's compliance with federal law. But if Plaintiffs want to prove a violation of the FDCA to avoid preemption of their state law claims, they must abide by the terms of the FDCA and its accompanying regulations in doing so (in this case, by testing in accordance with § 101.9(g)(2)). *See, e.g., Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1308 (E.D. Cal. 2014) ("[B]ecause defendant's label statements are nutrient content claims, their accuracy must be challenged under the 12-sample test method established by 21 C.F.R. § 101.9(g). Yet, the Complaint does not allege plaintiff tested Honey Green Tea using this method. Consequently, the Complaint does not show that defendant's statements on the product labels violate the FDCA's labeling requirements. Because plaintiff's allegations do not show a violation of the FDCA, plaintiff's state law claims are preempted; if allowed to proceed, the state law claims would impose liability inconsistent with the FDCA.").

Finally, there is one further reason Plaintiffs' claims are preempted by federal law. "The plaintiff must be suing for conduct that *violates* the FDCA ... , but the plaintiff must not be suing *because* the conduct violates the FDCA . . ." *Dougherty v. Source Naturals, Inc.*, 148 F. Supp. 3d 831, 834 (E.D. Mo. 2015) (internal citations and quotations omitted). Aside from the improper testing that results in Plaintiffs' case being preempted by federal law, Plaintiffs' expert, Dr. Kalman (who is a dietician/nutritionist, not a legal or regulatory expert), concludes that Vitamins Because's SAM-e supplement was uniformly "defective and deficient" *because* of

alleged FDA regulatory violations in the manufacturing process. Expert Rebuttal Report of Douglas Kalman, Ex. D, ¶ 34 (concluding "that all samples tested in four different laboratories over two countries in North America demonstrate that Defendant's SAMe manufacturing was defective and never yielded the labeled amount of actual SAMe content. This evidence, coupled with prior history and admitted violations of FDA and FTC regulations indicate a uniform defectiveness and deficiency in the product on a class-wide basis . . ."). Even if Dr. Kalman were correct that Vitamins Because's manufacturing process did not meet FDA regulations, which he is not, Plaintiffs cannot hold Vitamins Because liable under its state law theories *because* of those alleged violations.

## II)   Plaintiffs Cannot Prove All the Essential Elements of Any Claim Based upon the Undisputed Facts

Plaintiffs' case teeters on a stack of unreasonable inferences drawn from scant evidence, and Vitamins Because is entitled to summary judgment even if this court finds that Plaintiffs' claims are not preempted.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).

## A.   Each of Plaintiffs' state law claims depends on proof that Plaintiffs each purchased mislabeled products and suffered actual damages

Each cause of action raised in the Complaint requires proof of, among other things, two key elements: 1) negligence, wrongdoing, or breach by Vitamins Because, for which Plaintiffs rely on proof of product mislabeling, and 2) actual injury to Plaintiffs:

- **Count I**: alleged violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

- **Count II**: alleged violations of Nevada's consumer fraud statute and Deceptive Trade Practices Act (NDTPA). "To allege a claim for damages under the NDTPA, a victim of consumer fraud must adequately allege: (1) an act of consumer fraud by the defendant, (2) caused (3) damage to the plaintiff." *In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practice Litig.*, 2017 U.S. Dist. LEXIS 105335, *38-39 (E.D. VA. July 7, 2017).

- **Count III**: alleged violations of Arizona's Consumer Fraud Act. "The requisites of a private cause of action for a statutory fraud are a false promise or a misrepresentation made in connection with the sale or advertisement of merchandise and the consumer's consequent and proximate injury." *Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 605 (Ct. App. 1980).

- **Count IV**: alleged violations of California's Unfair Competition Law (UCL). A UCL plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or

false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

- **Count V**: alleged violations of California's Consumer Legal Remedies Act (CLRA), the elements of which are: 1) an unfair or deceptive act or practice proscribed under § 1770(a) that 2) causes 3) damage 4) to a consumer who purchased/leased goods or services. *See* Cal. Civ. Code § 1770(a); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009).

- **Count VI:** alleged violations of New York's Deceptive Trade Practices and False Advertising Acts. "In order to assert a *prima facie* case under GBL §§ 349 or 350, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.' . . . A claim under GBL § 350 has the additional requirement that it relate to false advertising." *Segovia v. Vitamin Shoppe, Inc.*, 2016 U.S. Dist. LEXIS 15171, *19 SDNY 2016. Plaintiffs must prove that the deception "caused actual, although not necessarily pecuniary, harm." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741, 744 (1995).

- **Count VII:** alleged violations of the Texas Deceptive Trade Practices Act. The elements of a DTPA cause of action are: (1) the plaintiff is a consumer as defined in the Act; (2) the defendant engaged in a false, misleading, or deceptive act; and (3) the act constituted a producing cause of the consumer's damages. *Gomez v. Diaz*, 57 S.W.3d 573, 576 (Tex. Ct. App. 2001).

- **Count VIII:** alleged breach of implied warranties under Florida law, the elements of which are "(1) that the Plaintiff was a foreseeable user of the product, (2) that the product was being used in the intended manner at the time of the injury; (3) that the product was defective when transferred from the warrantor; and (4) that the defect caused the injury." *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 07-22326-CIV-DIMITROULEAS, 2008 U.S. Dist. LEXIS 44277, at *23 (S.D. Fla. June 5, 2008).

- **Count IX:** alleged breach of express warranties under Florida law. "At a minimum, in order to maintain a claim of breach of express warranty, a plaintiff must allege the following: (i) facts in respect to the sale of the product or other circumstances giving rise to warranty; (ii) identification of whether the warranty created was express or implied; (iii) circumstances of the injury as caused by the breach of warranty; (iv) notice to the seller of the alleged breach; and (v) injuries sustained and damages." *Gregware v. Scotts Miracle-Gro Co.*, No. 1:13-cv-24581-UU, 2014 U.S. Dist. LEXIS 194200, at *11 (S.D. Fla. Oct. 20, 2014).

- **Count X:** alleged violations under the Magnusson Moss Warranty Act (MMWA). To state a claim under the MMWA, a plaintiff must present a "sustainable claim for breach of warranty." *Temple v. Fleetwood Enters., Inc.,* 133 F. App'x 254, 268 (6th Cir. 2005). Accordingly, "a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Id.*

- **Count XI:** alleged intentional misrepresentation under Florida law, the elements of which are: "a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

- **Count XII:** alleged negligent misrepresentation under Florida law. "To state a cause of action for negligent misrepresentation, a plaintiff must show: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely and [sic] on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *Target Corp. v. Prestige Facilities Servs. Grp.*, No. 2:17-cv-301-FtM-99MRM, 2018 U.S. Dist. LEXIS 85517, at *10 (M.D. Fla. May 22, 2018).

Plaintiffs' damages expert relies entirely on the results of the product testing for this litigation to estimate a measure of economic damages on behalf of the purported class based on the difference between the amount of SAM-e in the products Plaintiffs purchased and the amount stated on the product labels. Expert Report of D.C. Sharp, Ex. C, at ¶ 4-5. Therefore, Plaintiffs must prove that they each actually purchased and consumed bottles of Vitamins Because's SAM-e dietary supplement which fell short of label quantity claims and therefore caused their economic losses.

### B. Plaintiffs cannot prove they purchased defective or mislabeled products or suffered actual injuries/damages

16

Plaintiffs here are trying what other purported class plaintiffs have tried to do in cases before theirs: prove that the products they purchased were defective or mislabeled by wildly extrapolating from a mere handful of tests on products they never actually consumed. The result should be the same: dismissal of the entire case with prejudice.[1]

While courts most often dismiss cases like this one on jurisdictional grounds because of Plaintiffs' lack of standing, the same problem of proof makes Plaintiffs' claims ripe for summary judgment because each of Plaintiffs' claims requires proof of a product defect and damages.

The problem with Plaintiffs' evidence in this case is illustrated by *In re Whole Foods*, where the plaintiff relied on an investigation by New York City's Department of Consumer Affairs (DCA) concluding that Whole Foods was overcharging for certain pre-packaged food items by short-weighing them. 397 F. Supp. 3d 406, 408 (S.D.N.Y. 2019). The DCA conducted an investigation over the course of several years, testing 80 lots of products from 8 stores in New York City, and finding that there was "an 89.6% chance [a customer] would get a mislabeled package and be overcharged for that purchase." *Id.* at 414. The plaintiff filed a class action alleging that he had purchased short-weighted pre-packaged cupcakes and cheese, although he never weighed any of these items himself. *Id.* at 408. Instead, he argued that a jury could infer that at least some of the items he purchased were short-weighted because the DCA investigation proved

---

[11] Vitamins Because has already briefed the implications of Plaintiffs' lack of concrete and particularized injury for the purpose of Article III standing, and incorporates into this motion its Motion to Dismiss based on Plaintiffs' Lack of Article III standing, filed on December 13, 2021, and notes that Plaintiffs' burden to prove standing is elevated at the summary judgment stage, where "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Because "standing is not dispensed in gross," Plaintiffs must prove they have standing for *each* claim and *each* form of relief sought. *Davis v. FEC*, 554 U.S. 724, 734, 128 S. Ct. 2759, 2769 (2008).

that Whole Foods in Manhattan had engaged in systemic overpricing. *Id.* The court concluded, "[E]ven if discovery here had validated the allegation in [Plaintiff's] complaint that the DCA had demonstrated an 89% likelihood that any pre-packaged food product sold by Whole Foods during 2014 and 2015 was priced at an inflated weight, this statistical finding, alone, could not have carried [Plaintiff's] claims across the goal line." *Id.* at 423. In a case premised upon a defective or mislabeled product, "it is not enough merely to situate the product purchased by a plaintiff within a universe of products most, but not all, of which were sold illegally." *Id.* at 422-23.

So too here, Plaintiffs would ask the factfinders to make an inference that the bottles of SAM-e dietary supplement *they* purchased contained less SAM-e than the label stated because a *few* bottles of SAM-e their paid litigation expert had tested contained less of what Plaintiffs would call the "active ingredient." But Plaintiffs in this case rely on evidence far more meager than that in *Whole Foods*—they tested a mere 10 bottles of SAM-e out of the thousands manufactured by Vitamins Because during the relevant time period, nowhere near enough to conclude that *all* or even 90 percent of Vitamins Because's SAM-e supplement contained less of its dietary ingredient than the label states. In concluding that Vitamins Because's SAM-e supplement uniformly fell short of its label claims, Plaintiffs' expert here is required to ignore his own testimony that, of the handful of tests he viewed, up to ten percent demonstrated that the product at issue met label claims. Ex. B at 93:11—94:16. But even if Plaintiffs could reach the 90 percent mark, they would still have to rely on inferences and speculation to prove that any Plaintiff, let alone each of them, suffered an actual injury.

The point is well illustrated by *Krim v. PCOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005), in which the Fifth Circuit considered a similar question to that raised in *Whole Foods*. The plaintiffs in *Krim* brought claims against a company called PCOrder.com under Section 11 of the

18

Securities Act of 1933, for alleged defective registration statements. *Id.* at 491-92. The Fifth Circuit accepted that, statistically, there was a 90 percent chance that any PCOrder.com shareholder held at least one share of stock that was traceable to the defective registration statement. *Id.* at 496, 501. But the Fifth Circuit ruled that a statistical likelihood, even of that magnitude, did not absolve the individual plaintiff of the duty to show that his or her shares were in fact traceable. *Id.* Accordingly, the court held that plaintiffs who did not furnish proof of the traceability of their own shares lacked standing. *Id.* at 502. Such statistical evidence, the Fifth Circuit noted, "merely demonstrates the probability that *anyone* with x number of shares will possess some tainted shares. It says nothing about the shares that one particular individual actually owns." *Id.* at 501.

> Taking a United States resident at random, there is a 99.83% chance that she will be from somewhere other than Wyoming. Does this high statistical likelihood alone, assuming for whatever reasons there is no other information available, mean that she can avail herself of diversity jurisdiction in a suit against a Wyoming resident? Surely not.

*Id.* at 497.

Of course, Plaintiffs here do not have evidence that 90 percent or 80 percent or *any* percent of Vitamins Because's SAM-e fell short of its label claims. They have tests on up to 10 bottles of Vitamins Because's SAM-e, none of which were purchased or consumed by Plaintiffs. Even if all 21 bottles tested by Plaintiffs were manufactured by Vitamins Because, the result would be the same. In ruling on this motion, this court need not "draw unreasonable or implausible inferences in favor of the nonmoving party." *Mize*, 93 F.3d at 743. And Plaintiffs "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). But this is exactly what Plaintiffs would need to survive summary judgment: an implausible inference that 21 bottles of SAM-e they

tested by their own improper protocol proves that every single Plaintiff in a nationwide class who purchased Vitamins Because's SAM-e between 2015 and 2020 received a product that contained less of its dietary ingredient than stated.[2] No Plaintiff, let alone Plaintiffs in the aggregate, can prove the damages they allege—that the SAM-e dietary supplement they bought was worth less than what they paid because it did not contain the stated quantity of SAM-e. Indeed, even "[w]here the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests." *Mize*, 93 F.3d at 743.

### C. Plaintiffs' warranty claims suffer from additional defects requiring summary judgment

Plaintiffs' breach of express and implied warranty claims under Florida law, as well as their MMWA claim, must be dismissed with prejudice for failure to provide notice to Vitamins Because and an opportunity to cure. Florida law bars buyers from remedy for breach of an express warranty when the plaintiff fails to notify the seller "within a reasonable time after he or she discovers or should have discovered any breach...." Fla. Stat. § 672.607(3)(a); *Jackmack v. Bos. Sci. Corp.*, 2021 WL 1020981, at *3 (M.D. Fla. Mar. 17, 2021); *see also Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So.2d 351, 353 (Fla. 4th DCA 1977) (stating that breach of warranty claims require "notice to seller of breach").

---

[2] To the extent Plaintiffs would also rely on Dr. Kalman's opinion that Vitamins Because fell short of FDA regulations in manufacturing their products, this opinion should have no bearing on summary judgment. "In ruling on a motion for summary judgment, this Court may generally consider only evidence that would be admissible at trial." *Gen. GMC Trucks, Inc. v. Mercury Freight Lines, Inc.*, 704 F.2d 1237, 1239 (11th Cir. 1983). Not only is Dr. Kalman, as a nutritionist/dietician, unqualified to offer legal conclusions on FDA regulatory violations, as a general rule, "testifying experts may not offer legal conclusions." *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005).

To state a claim under the MMWA, "a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts. *Temple v. Fleetwood Enters., Inc.,* 133 F. App'x 254, 268 (6th Cir. 2005). Indeed, the requirement that a warrantor have an opportunity to cure is codified at section 2310(e), which states that "no action . . . may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty . . . unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply." *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575-76 (6th Cir. 2013) (affirming summary judgment for the defendant where defendant was not given a reasonable opportunity to cure).

Here, there is no dispute that Plaintiffs did not give Vitamins Because notice of any alleged breach of warranty, nor an opportunity to cure an alleged breach, and therefore Vitamins Because is entitled to summary judgment on these claims.

**D.  Plaintiffs' request for injunctive relief should be dismissed**

Plaintiff's Thirteenth Count in the Complaint requests injunctive relief. "Permanent injunctive relief requires three elements: (1) success on the merits; (2) continuing irreparable injury; and (3) no adequate remedy at law." *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003). Of course, for the reasons above, Plaintiffs cannot succeed on the merits, but even if they could, their case is purely one for money damages. "It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity." *Rosen v. Cascade Int'l*, 21 F.3d 1520, 1527 (11th Cir. 1994). Plaintiffs have made clear that the remedy they seek is a full

or partial refund of the purchase price of the SAM-e supplements they bought. Thus, injunctive relief would be inappropriate and that count of the Complaint should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Vitamins Because respectfully asks this Court to enter summary judgment in its favor and dismiss Plaintiffs' entire case with prejudice.

Dated: February 8, 2022

*/s/Scott W. Anderson*
David S. Johnson      FBN  096423
Scott W. Anderson      FBN  738311
JOHNSON DABOLL ANDERSON, PLLC
2011 W Cleveland Street, Suite F
Tampa, Florida 33606
Telephone: (813) 377-2499
Fax: (813) 330-3156
djohnson@jdalegal.com
sanderson@jdalegal.com
aglisson@jdalegal.com

*Counsel for Vitamins Because and CT Health Solutions*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of February, 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of this filing to the following counsel of record on the attached service list.

*/s/Scott W. Anderson*

## **SERVICE LIST**

Joshua H. Eggnatz
FBN: 67926
EGGNATZ PASCUCCI, P.A.
7450 Griffin Road
Suite 230
Davie, FL 33314
Tel: 954-889-3359

Brendan H. Little
Sean M. O'Brien
LIPPES MATHIAS WEXLER, et al.
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
Tel: 716-853-5100
blittle@lippes.com

Johnson Daboll Anderson, PLLC

Fax: 954-889-5913
jeggnatz@justiceearned.com
Attorneys for Plaintiffs


Jay I. Brody (Admitted Pro Hac Vice)
Gary S. Graifman (Admitted Pro Hac Vice)
KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com
Attorneys for Plaintiffs

Nicholas A. Migliaccio
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com
Attorneys for Plaintiffs

Joseph A. Sorce
JOSEPH A. SORCE & ASSOCS., P.A.
999 Ponce de Leon Blvd., Suite 1020
Coral Gables, FL 33134
Tel: 305-529-8544
jsorce@flconstructionlawyer.com
Attorney for Defendants Khakiware, Inc.
and Healthy Way RX, LLC

Bretton I Pollack
Pollack, Pollack & Kogan, LLC
Courthouse Tower
44 W Flagler Street, Suite 2050
Miami, FL 33130
Tel: 305-373-9676
Brett.pollack@ppkfirm.com
B@birvingpollack.com
Attorneys for Inspire Now PTY LTD

sobrien@lippes.com

Alessandro A. Apolito
LIPPES MATHIAS WEXLER, et al.
822 US Highway A1A, Suite 101
Ponte Vedra Beach, FL 32082
Tel: 904-660-0020
aapolito@lippes.com
Attorneys for ASquared Brands

Leon N. Patricios (FBN 0012777)
ZIMPANO PATRICIOS, P.A.
312 Minorca Ave.
Coral Gables, FL 33134
Tel: 305-444-5565
Fax: 305-444-8588
lpatricios@zplaw.com
jzumpano@zplaw.com

Richard J. Oparil (admitted *pro hac vice*)
ARNALL GOLDEN GREGORY
1775 Pennsylvania Ave., NW
Suite 1000
Washington, DC 20006
T:  202-677-4030
Richard.oparil@agg.com
Attorneys for GMAX Central, LLC

Mark Migdal & Hayden
Yaniv Adar
Joshua A. Migdal
80 S.W. 8th Street
Suite 1999
Miami, FL 33130
Tel: 305-374-0440
yaniv@markmigdal.com
josh@markmigdal.com
eservice@markmigdal.com
Attorneys for Jolly Dollar Supply
Company

23