IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

NOAH MALGERI, KALYN WOLF, BILL
WILSON, SHANNON HOOD, and
ROBERT MCKEOWN on behalf of
themselves and all others similarly situated,

    Plaintiffs,

vs.

VITAMINS BECAUSE LLC, CT HEALTH
SOLUTIONS LLC, GMAX CENTRAL
LLC, ASQUARED BRANDS LLC,
INSPIRE NOW PTY LTD d/b/a
BOOSTCEUTICALS, HEALTHY WAY
RX LLC, KHAKIWARE INC., and JOLLY
DOLLAR SUPPLY COMPANY, LLC.,

    Defendants.

_____

CASE NO.: 1:19-CV-22702-KMW

Purported Class Action

### **DEFENDANT VITAMINS BECAUSE'S MOTION TO EXCLUDE PLAINTIFFS' PURPORTED EXPERT DR. KALMAN FROM TESTIFYING IN THIS CASE**

Defendant Vitamins Because LLC ("Vitamins Because") moves to exclude Plaintiffs' purported expert witness, Dr. Kalman, from testifying in this matter. In support, Vitamins Because states:

### I.    INTRODUCTION

Plaintiffs originally brought this purported class action on behalf of themselves and at least ten (10) classes and subclasses of individuals who allegedly purchased the dietary supplement SAM-e from various combinations of the retailer Defendants. None of the named Plaintiffs purchased any SAM-e product directly from Vitamins Because. The Third Amended Complaint specifically acknowledges that Vitamins Because is not the only manufacturer of SAM-e in the

marketplace and was not the exclusive provider of SAM-e to the retailer Defendants during the timeframes involved in the Complaint.

Nevertheless, all of Plaintiffs' causes of action are premised on their allegation that they, and **all class members**, were somehow damaged by Vitamins Because's "deceptive labeling" of their capsules. Third Am. Complt. at ¶1. In short, Plaintiffs allege that the SAM-e they purportedly purchased was somehow defective in that it did not contain the amount of active ingredient identified on the label. See Declaration of Douglas S. Kalman (Dr. Kalman was tasked with providing expert testimony "regarding the deficiency of S-Adenosyl methionine ("SAM-e") contained in the subject product dietary supplements"), attached as Exhibit A; Kalman Dep. at 89:15-20, attached as Exhibit B.

None of the products that Plaintiffs actually purchased and ingested, however, was ever tested. See Wolf Dep. Trans. at pp. 23:24 – 24:7; Fishon Dep. Trans. at p. 192:15 - 23, 307:15 - 25, 317:3 - 7; Wilson Dep. Trans. at p. 18:11 - 22, 25:12 – 26:5, 33:11 – 25; McKeown Dep. Trans. at p. 51:3 – 7, 52:14 – 17, 53:16 - 54:23; 56:21 - 57:2; Hood Dep. Trans. at p. 58:21 – 24, 59:21 – 23, 62:22 - 63:7, 64:15 – 18, 65:7 – 23, 66:25 - 67:14, 67:17 – 19; Malgeri Dep. Trans. at 34:14 – 23, 55:10 – 56:15.[1] To overcome this fatal lack of evidence of individual injury, Plaintiffs retained a nutritionist, Douglas Kalman, to opine that **all** the SAMe manufactured by Vitamins Because was "deficient in their amount of SAM-e." Ex. A at p. 2, ¶ 1. Dr. Kalman, however, is not qualified to render such an opinion. Even if he was, however, his opinions are wholly unreliable "junk

---

[1] In the interest of brevity, Vitamins Because refers the Court to its Motion to Dismiss for Lack of Article III Standing [Dkt. 267] for the quoted testimony and excerpts of the transcripts cited above. The entire deposition transcript for each Plaintiff can be found at Dkt. 276.

science" that will not be helpful to a jury. As a result, Dr. Kalman must be precluded from testifying here.

## II. STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the United States Supreme Court mandated that, to be admissible, an expert's testimony must be relevant and must rest on a reliable foundation. As a result, the Supreme Court assigned trial courts the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 579. This requires that, before expert testimony can be presented to a jury, the trial court must ensure that such testimony constitutes "good science" and that findings are sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation." *Id.* at 590, 593.

Thus, trial judges are to function as "gate keepers" and "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). That gate keeping role applies to both scientific and technical evidence. *Id.*

3

Plaintiffs' purported expert in this case must pass muster under *Daubert*. *See, e.g., Rink v. Cheminova, Inc.,* 400 F.3d 1286 (11th Cir. 2005). The Eleventh Circuit explained that expert testimony is admissible only when:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence to determine a fact in issue.

*Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1309 (11th Cir. 1999) citing *City of Tuscaloosa v. Hacros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998). Thus, to testify an expert must be "qualified as an expert by knowledge, skill, experience, training, or education" and the expert's testimony must be in the area of the expert's competence. *See City of Tuscaloosa,* 158 F.3d at 565. An expert's qualifications are not enough to allow an expert to render opinions at trial, however, because even a qualified expert's testimony must still be reliable. This applies whether the proffered testimony relates to scientific or technical knowledge.

Although determining whether an expert is qualified is necessarily a case specific determination, the Supreme Court set forth the following non-exclusive, four factor test fo evaluate whether an expert's opinions are sufficiently reliable to be admissible:

(1) Whether a theory or technique…can be (and has been) tested;

(2) Whether it has been subjected to peer review and publication;

(3) Whether there is a known or potential rate of error and whether there are standards controlling the technique's operation; and

(4) Whether the method of arriving at the opinion is generally accepted within the relevant scientific community.

*Kumho Tire Co.,* 526 U.S. at 149-150 citing *Daubert,* 509 U.S. at 592-94; *see also Michigan Millers Mut. Ins. Co. v. Benfield,* 140 F.3d 915, 920 (11th Cir., 1998).

The non-exclusive factors set forth above are merely a starting point for determining the admissibility of expert opinions and testimony. *Allison,* 184 F.3d at 1312. The inquiry into reliability is a flexible one which may address a number of other factors to ensure the reliability of expert opinions. *Daubert's* requirement that "the expert testify to scientific knowledge – conclusions supported by good grounds for each step in the analysis – means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Amorgianos v. Nat'l RR Passenger Corp.,* 303 F.3d 256, 267 (2d Cir. 2002). To that end, district courts have evaluated a number of additional factors when deciding whether an expert's opinions should be excluded.

In this case, Dr. Kalman should be precluded from testifying at trial because he is not qualified to render opinions on the topics he testifies about. Additionally, he has not articulated any reliable scientific methodology used in reaching his conclusions. Rather, the conclusions Dr. Kalman reaches are based entirely on speculation and improper extrapolation. Finally, his testimony will not assist the trier of fact.

### III. DR. KALMAN'S OPINIONS ARE INADMISSIBLE

In this case, Dr. Kalman's opinions boil down to the speculation and unsupported extrapolation in his Initial Expert Report that **ALL** the SAM-e manufactured by Vitamins Because was deficient and defective in that it contains less "active ingredient" than advertised on the label. *See generally* Exhibit A. He further opines that because the products are defective, they have no value to the consumer public. *Id.* In order to reach his conclusion, Dr. Kalman relies on purported testing coordinated and conducted by third parties, his flawed interpretation of the report of an

5

FDA inspection at Vitamins Because's former manufacturing facility, and his misunderstanding of FDA regulations.

### A. Dr. Kalman is Not Qualified to Render these Opinions

Dr. Kalman is a nutritionist. Ex. B. at 53:18-23. He is not an economist nor has he ever spoken to a single consumer of SAM-e as it relates to this lawsuit or the amount of active ingredient in any SAM-e product. *Id.* at 50:16-51:3. Dr. Kalman is not a chemist, statistician, epidemiologist, physician, or biologist. *Id.* at 40:1-10. Additionally, Dr. Kalman has not performed testing of any of the SAM-e at issue in this lawsuit. *Id.* at 48:14-18. In fact, Dr. Kalman was not retained until long after the "testing" was conducted and "the extent of [his] involvement of the testing of the 22 to 30 bottles of SAM-e is reading the test results." *Id.* at 48:19-22. He has not spoken with any of the scientists that conducted the testing nor has he seen photographs of the testing process. *Id.* at 48:23-49:8. Nevertheless, based on his reading of the testing results, erroneous interpretation of an FDA Section 483 inspection report, and misunderstanding of the FDA regulations, he opines that every bottle of SAM-e ever manufactured by Vitamins Because is defective. He is unquestionably not qualified to render these opinions.

### B. Dr. Kalman's Opinions are Unreliable

Dr. Kalman wrote in his report that, based on his review of the testing of 22 - 30 bottles of SAM-e, it was his opinion that ALL of the SAM-e ever manufactured by Vitamins Because was deficient in their label claims. *See generally,* Ex. A, and Dr. Kalman's Rebuttal Report, attached as Exhibit C. This opinion is clearly unreliable.

First, during his deposition Dr. Kalman testified repeatedly that it was NOT his opinion that ALL of the SAM-e manufactured by Vitamins Because was deficient. Indeed, Dr. Kalman testified as follows:

Q. It is your opinion that **all** of the SAM-e manufactured by Vitamins Because failed to meet the label requirement as it relates to the active amount of SAM-e; correct?

A. **No, incorrect**. I did -- I did see and read perhaps two or three certificates of analysis by third-party analytical labs that did find the label claim was met or nearly met. So that would be 2 or 3 tests out of 30-plus tests found a label claim or near label claim was made.

Q. Would you agree that 3 out of 30 is 10 percent?

A. **If I can do the math with my fingers, I would agree. Yes**. Sorry about the bad joke. Yes.

Q. So you would agree that this statement is not true? "All SAM-e capsules manufactured by the defendant Vitamins Because and CT Health were … uniformly mislabeled?"[2]

A. **I cannot say all**, but given the inconsistency and that at least 90 percent of the testing showed or demonstrated severe issues with regards to purity and strength and composition of the products, it's a huge red flag of inconsistency in manufacturing processes and quality.

Q. So you'd agree that some of the SAM-e that you're aware of met the label requirements for active ingredient; correct?

A. **I would agree that up to about 10 percent of what I am aware of regarding the SAM-e products met or nearly met label claim**.

Q. **So it's true that some of Vitamins Because's SAM-e product met label claims; correct?**

A. **It is true.** And if my memory serves me correctly that a couple of products from 2020 did meet label claim. Again, still less than 10 percent or less of all of the products that were tested.

Q. **But even in your expert opinion, not all; correct**?

A. **Correct**.

---

[2] This statement is a direct quote from Kalman's report. Report at p.2, ¶ 2; *see also,* p. 5, ¶11. In fact, it is the main opinion in his whole report because it goes to the central issue in this case.

Ex. B. at 93:11 - 95:2 (emphasis added).[3]  Indeed, Kalman's ever-changing opinion is being intentionally altered for one purpose – defeating Defendants' dispositive motions. Simply put, an expert's role should be to clarify the complex issues, not obfuscate them. By condoning Kalman's explicit contradictions, the Court waters down the objectivity required from experts in Federal Court. *See generally Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 614-615 (2019); *Riggins v. SSC Yanceyville Operating Co., LLC*, 800 F. App'x 151, 160 (4th Cir. 2020).  Dr. Kalman's flip flop testimony renders his opinions inherently unreliable.  *See, e.g., Rembrandt Vision Tech., L.P. v. Johnson & Johnson Vision Care, Inc.,* 282 FRD 655, 659-661 (M.D. Fla. 2012)(considering inconsistencies between expert report and sworn testimony in finding testimony unreliable).

Second, Dr. Kalman asserts that it is his "opinion based on the results of the testing of 22 - 30 bottles of SAM-e that all of Defendant Vitamins Because's SAM-e manufactured is defective." Ex. B at 50:2-6.  Shockingly, however, he has no idea about the volume of SAM-e Vitamins Because has manufactured, has no idea how many bottles of SAM-e Vitamins Because manufactured, and has no idea what percentage of Vitamins Because SAM-e bottles he read tests for.  *Id.* at 44:14-7.  In fact, Dr. Kalman was unable to report whether he had read tests for more or less than 1 percent of the SAM-e product manufactured by Vitamins Because.  *Id.* at 45:8-10. Even more shocking is that Dr. Kalman did not know whether any of the testing results he read related to products manufactured by Vitamins Because.  *See, e.g., Id.* at 115:18-118:11.  And, as it turns out, at least eleven of the products tested at the behest of the plaintiffs was not, in fact, manufactured by Vitamins Because.  *See* Declaration of Thomas Chapman, attached as Exhibit E. Thus, of the 22-30 bottles that Dr. Kalman read testing results for, at least 11 of them were

---

[3] Dr. Kalman impermissibly attempted to "fix" this testimony in an 11-page errata sheet [attached as Exhibit D] and a purported Rebuttal Report [Ex. C].  Defendants have moved to strike the Rebuttal Report and the errata sheet should similarly be disregarded.

manufactured by someone other than Vitamins Because [Ex. D] and at least 4 of them tested positive for the label claims.[4] Still, Dr. Kalman, without any statistical calculations or even consideration for statistics or mathematics, wants to tell the jury that ALL of the SAM-e manufactured by Vitamins Because is defective. Dr. Kalman's opinions are unreliable. *See Rink*, 400 F.3d at 1293 (finding that improper extrapolation "lacks the intellectual vigor required by *Daubert*").

Third, the ingredient that Plaintiffs tested for to determine whether the labels of the SAM-e manufactured by Vitamins Because were correct is not the ingredient that Vitamins Because, or the retailers include on the label. For example, Vitamins Because's label advises consumers that they are purchasing "S-Adenosyl Methionine disulfate tosylate." *See* Report of Catherine Hutt at PLTS EXPERT DISCLOSURE 11-12, attached as Exhibit F. Plaintiffs, however, tested the products for the amount of "S-Adenosyl-L-methionine." *Id.* Such a methodology, if it can be described as a methodology, is unreliable.

Finally, Dr. Kalman, in an attempt to fix his deposition testimony discloses in his rebuttal report that the basis for his opinion the SAM-e is all defective is the results of the FDA Section 483 inspection report of Vitamins Because's former manufacturing facility. *See* Ex. 3 at 10-11. This is not reliable for a number of reasons. For example, the FDA took no action following the 483 inspection report. It has never reinspected Vitamins Because's facility or taken any remedial action against Vitamins Because. Ex. B at 140. Moreover, somehow unbeknownst to Dr. Kalman, Vitamins Because built and moved to a new state of the art facility shortly after the inspection. *See* Ex. B. at 140:7-22. Moreover, despite his willingness to insult the manufacturing facility and

---

[4] As will be explained, Plaintiffs tested for the wrong chemical/supplement. Even if they tested for the right one, however, Dr. Kalman testified that it met label claim at least 4 times.

process, Dr. Kalman has never been to Vitamins Because's manufacturing facility, has never asked to visit the facility, and does not know what types of machines it uses to manufacture SAM-e. *Id.* at 140:23-141:15. Despite his opinions, Dr. Kalman nevertheless testified that Vitamins Because's SAM-e products could have met label requirement even if the 483 inspection report was accurate. *Id.* at 84:1-92:19. Again, Dr. Kalman's methodology, if there was one, is unreliable.

### C. Dr. Kalman Cannot Give Legal Opinions or Act as an Attorney Mouthpiece

Throughout his expert reports and his deposition, Dr. Kalman makes repeated assertions that Vitamins Because's SAM-e supplements are "defective" or "deficient" or that Vitamins Because (or its products) violated FDA regulations. *See, e.g. generally* Exs. A, B, and C. He also gives opinions as to what the FDA regulations require or what their intent is. *Id.* These "opinions" and testimony are impermissible and inadmissible. *See, e.g., In re 3M Combat Arms Earplug Products Liability Litigation,* 2021 WL 765019 * 40-47 (M.D. Fla. 2021).

### IV. CONCLUSION

Based On the foregoing, Dr. Kalman should be precluded from testifying in this case.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Counsel for aSquared has conferred with Plaintiffs' counsel about this motion and Plaintiffs oppose the motion and the relief requested herein.

Dated: February 8, 2022

*/s/Scott W. Anderson*
David S. Johnson   FBN  096423
Scott W. Anderson  FBN  738311
JOHNSON DABOLL ANDERSON, PLLC
2011 W Cleveland Street, Suite F
Tampa, Florida 33606
Telephone: (813) 377-2499
Fax: (813) 330-3156
djohnson@jdalegal.com
sanderson@jdalegal.com

aglisson@jdalegal.com

*Counsel for Vitamins Because and CT Health Solutions*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of February, 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of this filing to the following counsel of record on the attached service list.

/s/Scott W. Anderson

## SERVICE LIST

| | |
|---|---|
| Joshua H. Eggnatz<br>FBN: 67926<br>EGGNATZ PASCUCCI, P.A.<br>7450 Griffin Road<br>Suite 230<br>Davie, FL 33314<br>Tel: 954-889-3359<br>Fax: 954-889-5913<br>jeggnatz@justiceearned.com<br>Attorneys for Plaintiffs | Brendan H. Little<br>Sean M. O'Brien<br>LIPPES MATHIAS WEXLER, et al.<br>50 Fountain Plaza, Suite 1700<br>Buffalo, NY 14202<br>Tel: 716-853-5100<br>blittle@lippes.com<br>sobrien@lippes.com |
| Jay I. Brody (Admitted Pro Hac Vice)<br>Gary S. Graifman (Admitted Pro Hac Vice)<br>KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.<br>747 Chestnut Ridge Road<br>Chestnut Ridge, New York 10977<br>Tel: 845-356-2570<br>ggraifman@kgglaw.com<br>jbrody@kgglaw.com<br>Attorneys for Plaintiffs | Alessandro A. Apolito<br>LIPPES MATHIAS WEXLER, et al.<br>822 US Highway A1A, Suite 101<br>Ponte Vedra Beach, FL 32082<br>Tel: 904-660-0020<br>aapolito@lippes.com<br>Attorneys for ASquared Brands |
| Nicholas A. Migliaccio<br>Jason S. Rathod | Leon N. Patricios (FBN 0012777)<br>ZIMPANO PATRICIOS, P.A.<br>312 Minorca Ave.<br>Coral Gables, FL 33134<br>Tel: 305-444-5565<br>Fax: 305-444-8588<br>lpatricios@zplaw.com<br>jzumpano@zplaw.com |

11

Johnson Daboll Anderson, PLLC

MIGLIACCIO & RATHOD LLP
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: 202-470-3520
nmigliaccio@classlawdc.com
Attorneys for Plaintiffs

Joseph A. Sorce
JOSEPH A. SORCE & ASSOCS., P.A.
999 Ponce de Leon Blvd., Suite 1020
Coral Gables, FL 33134
Tel: 305-529-8544
jsorce@flconstructionlawyer.com
Attorney for Defendants Khakiware, Inc. and Healthy Way RX, LLC

Bretton I Pollack
Pollack, Pollack & Kogan, LLC
Courthouse Tower
44 W Flagler Street, Suite 2050
Miami, FL 33130
Tel: 305-373-9676
Brett.pollack@ppkfirm.com
B@birvingpollack.com
Attorneys for Inspire Now PTY LTD

Richard J. Oparil (admitted *pro hac vice*)
ARNALL GOLDEN GREGORY
1775 Pennsylvania Ave., NW
Suite 1000
Washington, DC 20006
T:  202-677-4030
Richard.oparil@agg.com
Attorneys for GMAX Central, LLC

Mark Migdal & Hayden
Yaniv Adar
Joshua A. Migdal
80 S.W. 8th Street
Suite 1999
Miami, FL 33130
Tel: 305-374-0440
yaniv@markmigdal.com
josh@markmigdal.com
eservice@markmigdal.com
Attorneys for Jolly Dollar Supply Company

Johnson Daboll Anderson, PLLC