**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:19-cv-22702-KMW

CORI ANN GINSBERG
NOAH MALGERI
KALYN WOLF
BILL WILSON
SHANNON HOOD
ERIC FISHON
ROBERT MCKEOWN, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

vs.

VITAMINS BECAUSE LLC
CT HEALTH SOLUTIONS LLC
GMAX CENTRAL LLC
ASQUARED BRANDS LLC
INSPIRE NOW PTY LTD d/b/a BoostCeuticals
HEALTHY WAY RX LLC
KHAKIWARE INC.
JOLLY DOLLAR SUPPLY COMPANY, LLC

      Defendants.
_____

## DEFENDANT ASQUARED BRANDS LLC'S MOTION FOR SANCTIONS

Pursuant to Fed. R. Civ. P. 11, Defendant aSquared Brands LLC ("aSquared") hereby moves for an Order awarding sanctions against Plaintiffs Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, and Robert McKeown (collectively "Plaintiffs"), and their counsel Gary S. Graifman, Esq., Jay I. Brody, Esq., Kantrowitz Goldhamer & Graifman, P.C., Joshua H. Eggnatz, Esq., and Eggnatz Pasucci, P.A.

### PRELIMINARY STATEMENT

Plaintiffs collectively allege that they purchased a supplement, SAM-e, that was

manufactured by Defendants Vitamins Because LLC and CT Health Solutions LLC (collectively "Vitamins Because") and then sold by, *inter alia*, aSquared Brands, LLC ("aSquared"). As suspected throughout this litigation and made clear through discovery, the individual plaintiffs did not have the SAM-e they purchased tested to determine whether it contained less active ingredient than was listed on the label. Said differently, Plaintiffs have no evidence that the SAM-e they purchased contained less active ingredient than what was stated on the label.

As a result, Plaintiffs cannot present particular or personalized evidence to establish an individual injury sufficient to confer Article III standing.[1] Moreover, Plaintiffs cannot continue to contend they can represent classes of individuals that they themselves cannot prove they are members of.

In light of the foregoing, Plaintiffs and their counsel knew, or should have reasonably understood, that the inability to prove that the purchased product contained less active ingredient than what was listed on the label was fatal to the lawsuit. Notwithstanding, they proceeded forward. Plaintiffs and their attorneys continued prosecution of this lawsuit in the face of their inability to prevail violates Fed. R. Civ. P. 11 and warrants sanctions.

## ARGUMENT

**I.      ASquared complied with Fed. R. Civ. P. 11's safe harbor provision**

Fed. R. Civ. P. 11(c) states in pertinent part:

> (2) *Motion for Sanctions*. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 4, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may

---

[1] This is the premise of Vitamins Because 's pending motion to dismiss and aSquared's pending motion for summary judgment (Doc. 267; Doc. 293).

2

> award the prevailing parties the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2). Pursuant to Fed. R. Civ. P. 11, aSquared served its draft motion for sanctions on all counsel for Plaintiff on January 4, 2022. *See* Declaration of Brendan H. Little, Esq. ("Little Dec."), Exhibit A. aSquared has complied with Fed. R. Civ. P. 11(c)(2)'s safe harbor provision and is ripe for adjudication.

**II.     Standard of law**

Rule 11 of the Federal Rule of Civil Procedure states in pertinent part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denial of factual contentions are warranted on the evidence, it specifically so identified, are reasonably based on belief or lack of information.

Fed. R. Civ. P. 11. "The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Fitzgerald v. Regions Bank*, 2014 WL 129066, *3 (M.D. Fla. Jan. 14, 2014) *citing Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).

Fed. R. Civ. P. 11 allows a court to impose "appropriate sanctions" when a party presents to the court a pleading, written motion, or other paper that is not based in fact, is not legally tenable,

3

or is submitted in bad faith for an improper purpose. Fed. R. Civ. P. 11(c); *see also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002). Thus, pursuant to Fed. R. Civ. P. 11, a court has the discretion to award sanctions where a party or attorney has signed and filed a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) is filed in bad faith for an improper purpose. *See Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (citations omitted); Fed. R. Civ. P. 11(b).

Additionally, attorneys have a continuing obligation "to reevaluate their position as the case develops." *Lee v. Criterion Ins. Co.,* 659 F. Supp. 813, 821-22 (S.D. Ga 1987) (quoting *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1131 (5th Cir. 1987)). "Upon discovering that a good faith basis no longer exists, it is incumbent upon the appropriate counsel and party to take necessary steps to ensure that the proceedings do not continue without a reasonable basis in fact and law." *Robinson,* 808 F.2d at 1131 and n. 17; *Lee,* 659 F. Supp. at 821. Moreover, "Rule 11 applies to all papers filed in a suit [and] a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Turner v. Sungard Bus. Sys., Inc.,* 91 F.3d 1418, 1421-22 (11th Cir. 1996); s*ee also In re Engle Cases,* 238 F. Supp.3d 1174, 1210 (M.D. Fla. 2017); *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1307 (M.D. Fla. 2010) *citing Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).

The Eleventh Circuit has developed a two-step inquiry for Rule 11 sanctions that examines: (1) whether the claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that the claims were frivolous. *See Baker v. Alderman*, 158 F.3d

516, 524 (11th Cir. 1998). The first prong of this inquiry sets forth an objective standard for assessing conduct, which takes into account the "reasonableness under the circumstances" and "what was reasonable to believe at the time" the representation to the court was made. *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 (11th Cir. 1992); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987).

The standard for examining conduct pursuant Fed. R. Civ. P. 11 is reasonableness under the circumstances. Anderson, 353 F.3d 912. A court considering a motion for sanctions must determine whether claims or assertions are objectively frivolous in fact or law, and, if they are, determine whether the person who signed the pleading should have been aware of the frivolity. *See Lawson v. Sec'y, Dep't of Corr.*, 563 F. App'x 678 (11th Cir. 2014); *see also Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252 (11th Cir. 1996).

The rule emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention. *See* Advisory Committee Notes to Rule 11, 1993; *see also Fitzgerald*, 2014 WL 129066 at *3; *Coleman v. Circle K. Stores, Inc.*, 2012 WL 5334116, *2 (M.D. Fla. Oct.1, 2012).

### III.    Article III standing

To bring a suit in federal court, a party must meet the standing requirements of Article III of the Constitution. *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1066–67 (S.D. Fla. 2020), appeal dismissed, 2020 WL 3864935 (11th Cir. May 11, 2020). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

### IV. Named plaintiffs in consumer class action lawsuits are not immune from establishing a specific injury sufficient to confer standing on an individual basis

The Supreme Court has made it clear that standing must be particularized, meaning the alleged "injury must affect the plaintiff in a *personal and individual* way." *Lujan,* 504 U.S. at 560 n. 1 (emphasis added). In the context of defective products, "it 'is not enough' for a plaintiff 'to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.'" *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (emphasis added).

Indeed, it is well-established that named plaintiffs in a consumer class action lawsuit must still establish a specific injury sufficient to confer standing. Put differently, a plaintiff who purchased or used a specific product, and who has commenced a lawsuit alleging a defect with that product, must be able to show that the product he or she purchased was actually defective. *See, e.g.*, *Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d at 130; *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 501 (5th Cir. 2005); *Deluna v. Am. Journey (PET), LLC*, 2021 WL 5149790, at *3 (S.D. Fla. Nov. 1, 2021); *In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*, 397 F. Supp. 3d 406, 420 (S.D.N.Y. 2019), aff'd sub nom. *John v. Whole Foods Mkt. Grp., Inc.*, 823 F. App'x 46 (2d Cir. 2020); *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *3 (N.D.N.Y. Mar. 25, 2019); *Coffelt v. Kroger Co.*, 2018 WL 6004543, at

\*11 (C.D. Cal. Aug. 17, 2018).

*In re Whole Foods*, 397 F. Supp. 3d 406 is instructive in this regard. There, the plaintiff brought an action against Whole Foods alleging that he purchased pre-packaged food from it that were assigned exaggerated weights, which resulted in him being overcharged for the purchase. *Id.* at \*408. Whole Foods moved for summary judgment and argued that the undisputed facts would not permit a jury to find, other than by speculation, that the plaintiff himself was ever overcharged by Whole Foods for any pre-packaged food item. *Id.* This was because the plaintiff did not weigh the pre-packaged food he purchased prior to consuming them. As a result, the record was devoid of any evidence that plaintiff, did in fact, overpay. Whole Foods argued that failure warranted dismissal on both the merits and on standing, as the plaintiff failed to establish an injury-in-fact, as necessary for Article III standing. *Id.* The Court agreed and dismissed the lawsuit. In doing so, the Court determined that although the plaintiff could demonstrate he did make purchases at Whole Foods, there was no competent, non-speculative, evidence that any of the purchased the plaintiff made were not accurately labeled because they were never weighed. *Id.* at \*413, \*423. In doing so, the court noted that "it is not enough merely to situate the product purchased by a plaintiff within a universe of products most, but not all, of which were sold illegally." *Id.* at \*423.

As detailed below, the named Plaintiffs admit they did not have the SAM-e they purchased from Vitamins Because tested. Therefore, they cannot demonstrate that the purchased a product with less active ingredient than was listed on the label.

**V. The named Plaintiffs failure to have the product they purchased tested is fatal to their claims in this lawsuit**

Each Plaintiff in this lawsuit has alleged that they purchased SAM-e that was manufactured by Vitamins Because to have less active ingredient than what was stated on the label. (Doc. 176). Plaintiffs have produced no evidence to demonstrate that the SAM-e they purchased contained less

7

active ingredient than what was listed on the label. To the contrary, in discovery, the named Plaintiffs have all admitted that they did not have the specific product they purchased tested to determine whether the amount of active ingredient met the label statement. *See* Little Dec., Exhibit B; Exhibit C; Exhibit D; and Exhibit E. The failure to have the subject SAM-e tested is particularly shocking in light of the fact that more than one named Plaintiff testified that they still had the SAM-e they purchased in their possession.[2]

Kalyn Wolf testified she did not have the SAM-e she purchased tested:

> Q: Have you ever had the SAM-e that's the subject of this lawsuit tested for its potency of efficacy?
> A: No
> Q: Did you ever perform any sort of testing yourself on the SAM-e that you purchased that's the subject of this lawsuit?
> Mr. Brody: Object to form.
> A: No.

(Doc. 294-3, p. 23, ln. 24 – p. 24, ln. 7).

Bill Wilson testified he did not have the SAM-e he purchased tested:

> Q: Yeah. So you believed, as far as I understand your testimony, you stopped taking product because you believed there might have been something wrong with the product, either the quality or something about the active ingredient. You had the product but you never sent it out to be tested; is that right?
> A: I was not asked to do so.
> Q: Did you think to do it on your own?
> Mr. Brody: Objection to the form.
> A: I did, no.
> Q: I'm sorry, you did or you did not?
> A: No is the answer to your question.
> …
>
> Q: Why didn't you have any of the product that you currently have that's subject to this lawsuit tested?
> Mr. Brody: Same objection.

---

[2] Formally named Plaintiff Eric Fishon had also testified that he kept SAM-e purchased that was at issue in this lawsuit, but he never sent it to his counsel or a third party to be tested. Mr. Fishon dismissed his lawsuit under the threat of sanctions.

> A: I rely on my attorneys for all that.

(Doc. 294-4, p. 33, ln. 10-25; p. 34, ln. 10-17).

Robert McKeown testified as follows with regard to his failure to test the SAM-e that he purchased:

> Q: Did you have any of the product that you purchased tested for potency?
> A: No.
> …
>
> Q: Okay. So your basis for understanding – or alleging, excuse me – that the product you purchased had a discrepancy in terms of its ingredients is based solely on documentation provided by your attorneys?
> Mr. Brody: Object to form.
> A: Correct.
> Q: Do you have any other basis to allege that the SAM-e you purchased from Asquared didn't have the ingredients that were indicated on the label?
> Mr. Brody: Same objection.
> A: No.
> …
>
> Q: Did you think that it would be important to have the product that you purchased tested for potency?
> Mr. Brody: Object to form; calls for legal expertise.
> A: I believe so.
> …
>
> Q: And I think you answered this, but none of the product you purchased and took was actually tested, right?
> Mr. Brody: Same objection.
> A: Correct.

(Doc. 294-5, p. 52, ln. 14-17; p. 53, ln. 16-25; p. 54. ln. 1-2; 6-10; 19-23).

Shannon Hood testified that she did not have any of the SAM-e she purchased tested. Little Dec., Exhibit E, p. 58, ln. 21-24; p. 59, ln. 21-23; p. 64, ln. 15-18; p. 65, ln. 7-23. P. 67, ln. 17-19. Critically, Shannon Hood conceded that she had no way of knowing whether the SAM-e she purchased met, or did not meet, the labeled amount of active ingredient:

9

> Q: Okay. And so my question is: How do you know the SAM-e that you purchased was under that threshold?
> A: How do I know? Because I don't know if the individual pill that I consumer not exceeded or fell below whatever threshold would be acceptable. There's no way to tell. I opened the bottle and consumed the pills.

(Doc. 294-6, p. 64, ln. 15-18).

Finally, Noah Malgeri testified that he did not have the SAM-e he purchased tested:

> Q: And the question is, did you, Mr. Malgeri, send SAM-e product out that resulted in those test results?
> Mr. Brody: Objection to form.
> A: No.

(Doc. 294-7, p. 55, ln 10-18; p. 55, ln. 23-25; p. 56, ln. 2-16.)[3]

Simply put, because the named Plaintiffs in this lawsuit did not have the SAM-e they purchased tested to find out whether it contained the amount of active ingredient set forth on the label, they cannot establish an injury sufficient to confer standing. Plaintiffs' claimed injury is purely based on speculation. Plaintiffs and their counsel knew they did not test the product before they commenced this lawsuit and proceeded forward, nonetheless. Through creative pleading, Plaintiffs were able to plausibly claim an "injury" in a way that would survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Now, however, after years of discovery, Plaintiffs and their attorneys are faced with the same foundational defect that they have tried to avoid since filing this lawsuit. As the named Plaintiffs did not have the SAM-e they purchased tested, they cannot demonstrate they were injured and do not have standing. In light of these facts, Plaintiffs' continued prosecution of this lawsuit is sanctionable.

Ultimately, Plaintiffs have not come forward with non-speculative evidence on which a

---

[3] Noah Malgeri's testimony was not include in the draft motion for sanctions sent to Plaintiffs' counsel because the transcript was not available at that time.

jury could reliably find that SAM-e that they purchased was mislabeled. Despite being aware of this reality since the litigation's inception, Plaintiffs have proceeded. Doing so is not objectively reasonable and is in violation of Rule 11 of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons stated above, Defendant aSquared Brands, LLC respectfully requests the Court grant its motion for sanctions against Plaintiffs Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, and Robert McKeown, and their counsel Gary S. Graifman, Esq., Jay I. Brody, Esq., and Joshua H. Eggnatz, Esq. Specifically, Defendant aSquared Brands, LLC requests the Court determines that Plaintiffs and their attorneys to be jointly and severally responsible to pay Defendant aSquared Brands, LLC's attorneys' fees and costs to defend this lawsuit.

Dated: February 10, 2022

**LIPPES MATHIAS LLP**

/s Alessandro A. Apolito
Alessandro A. Apolito, Esq.
Florida Bar Number: 0084864
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256
P: 904-660-0020
F: 904-660-0029
Primary E-Mail:  aaapolito@lippes.com

Brendan H. Little, Esq., *pro hac vice*
Sean M. O'Brien, Esq., *pro hac vice*
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com