**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:19-cv-22702-KMW

CORI ANN GINSBERG
NOAH MALGERI
KALYN WOLF
BILL WILSON
SHANNON HOOD
ERIC FISHON
ROBERT MCKEOWN, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

    vs.

VITAMINS BECAUSE LLC
CT HEALTH SOLUTIONS LLC
GMAX CENTRAL LLC
ASQUARED BRANDS LLC
INSPIRE NOW PTY LTD d/b/a BoostCeuticals
HEALTHY WAY RX LLC
KHAKIWARE INC.
JOLLY DOLLAR SUPPLY COMPANY, LLC

        Defendants.
_____

**DEFENDANT ASQUARED BRANDS LLC'S OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR CLASS CERTIFICATION</u>**

**LIPPES MATHIAS LLP**
Alessandro A. Apolito, Esq.
Florida Bar Number: 0084864
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256


Brendan H. Little, Esq., *pro hac vice*
Sean M. O'Brien, Esq., *pro hac vice*

Defendant aSquared Brands, LLC ("aSquared") submits its opposition to Plaintiffs Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, and Robert McKeown's motion for class certification (the "Motion"). Plaintiffs seek to certify a nationwide class and various state subclasses of individuals who purchased SAM-e from Amazon that was manufactured by Defendants Vitamins Because and CT Health Solutions, LLC (collectively "Vitamins Because"). As detailed below, Plaintiffs are confronted with insurmountable impediments to class certification and cannot satisfy their burden pursuant to Fed. R. Civ. P. 23. The Motion should be denied.

## ARGUMENT

### I.    Standard of law

"All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016). In reviewing a motion for class certification, "[a] district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011).

"The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). If the proposed class is adequately defined and clearly ascertainable, the plaintiff must then establish the four requirements listed in Fed. R. Civ. P. 23(a) and at least one of Fed. R. Civ. P. 23(b)'s three subsections. *Tyson Foods, Inc. v. Bouaphake*o, 577 U.S. 442, 453 (2016).

Fed. R. Civ. P. 23(a) sets forth the following requirements to certify a class:

> (1) the class is so numerous that joinder of all members is
> impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical
> of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a)(1-4). Furthermore, Feb. R. Civ. P. 23(b)(3) provides as follows:

> A class action may be maintained if Rule 23(a) is satisfied and if …
> the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). District courts possess wide latitude when determining whether to certify

a class. *See Coon v. Georgia Pac. Corp.*, 829 F.2d 1563, 1566 (11th Cir. 1987).

## II.   Plaintiffs' inability to demonstrate injury in fact for every class member is fatal to class certification

As the Eleventh Circuit has made clear, "analysis of class certification must begin with the

issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). The question of

whether an individual has standing to raise a claim is particularly important in the class action

context because, before the court reaches the question of whether the claims are common, it must

decide whether the individual has a cognizable claim at all. *Hill v. T-Mobile USA, Inc.*, 2011 WL

10958888, at *3 (N.D. Ala. May 16, 2011), *aff'd but criticized sub nom. Little v. T-Mobile USA,

Inc.*, 691 F.3d 1302 (11th Cir. 2012).

Article III does not grant a federal court with the ability to "order relief to any uninjured

plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016). Instead,

the court's role is limited "to providing relief to claimants, in individual or class actions, who have

suffered, or will imminently suffer, actual harm." *Id.* As a result, every member of the proposed classes must satisfy Article III standing in order to recover monetary damages in this case.

Last year, the Supreme Court decided *TransUnion*. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which further established concrete guidelines for standing in class actions. In *TransUnion*, the plaintiffs brought a class action lawsuit alleging that the defendant violated the Fair Credit Reporting Act by, *inter alia*, creating inaccurate credit reports. *Id.* The certified class consisted of two groups of plaintiffs, one group who had their inaccurate credit reports disclosed to third parties, and one group that did not. *Id.* In its decision, the Court reinforced the fact that Article III's concrete injury requirement applies to class actions, as "every class member must have Article III standing in order to recover individual damages." *Id.*

The issue of standing has been briefed at length by multiple defendants, including aSquared. (Doc. 267, 294). The named Plaintiffs admit they did not have the SAM-e they purchased tested to determine whether it met label specifications and their sole basis to claim injury in fact on a class wide basis is the conclusion of their expert witness Dr. Kalman ("Kalman") that all SAM-e manufactured by Vitamins Because could never have met label specification. (Doc. 294, p. 3-12). Kalman's conclusion should be disregarded. Indeed, his conclusion is invalidated by, *inter alia*: (1) the SAM-e test results he reviewed; and (2) his admission at his deposition that he could not support his conclusion because a percentage of SAM-e tests he reviewed met the label claim. (Doc. 294, 297). Without Kalman's misplaced conclusion, Plaintiffs offer no proof of damage.

With regard to class certification, this failure is fatal. As stated by the Supreme Court in *TransUnion*, every class member must have Article III standing in order to recover individual damages. As that rule applies here, Plaintiffs must be able to prove an injury for every member of

the putative classes. Plaintiffs, however, have no reliable evidence of injury for the class members because they have no way of showing that every class member purchased SAM-e that did not meet label specification. Their injury is instead grounded in speculation, which is insufficient to establish standing. As a result, Plaintiffs' proposed classes should not be certified.

## III.    Plaintiffs cannot certify a nationwide class because all of the non-Florida class members cannot pursue claims under FDUTPA or Florida common law claims under Florida conflict of law principles

Plaintiffs, all non-Florida residents, seek to certify a nationwide class of SAM-e purchasers in all 50 states by asserting that the Florida Deceptive Unfair Trade Practices Act ("FDUTPA") and Florida common law causes of action apply to every single class member, regardless of their location. Florida choice of law principles, however, dictate that the law of the non-Florida class members' home states should apply to their claims. Moreover, Plaintiffs fail to demonstrate no conflict exists between FDUPTA, common law, and the other states' laws.

### a.    Florida choice of law principles weigh strongly in favor of applying the law of each individual class members' home state

As detailed below, Florida choice of law principals require the application the law of the state where each putative class member is located.

Pursuant to the Class Action Fairness Act ("CAFA"), which is governed by diversity jurisdiction, Florida's choice-of-law rules apply. *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1249 (N.D. Cal. 2019)*; Morris v. ADT Security Servs., Inc.*, 2009 WL 10691165, at *6-9 (S.D. Fla. Sept. 11, 2009). According to Florida law, the appropriate analysis to apply to a deceptive trade practice statutory claim or the common law claims at issue here is the "'significant relationships' test of § 145 of the Restatement (Second) of Conflicts of Laws." *In re NationsRent Rental Fee Litig.*, 2009 WL 636188, at *5 (S.D. Fla. Feb. 24, 2009). Pursuant to § 145, courts consider: (a) the place where the injury occurred; (b) the place where the conduct causing the

injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Id.* Florida recognizes that "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law." *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

This Court has also considered §§ 6 and 148 for FDUTPA claims asserted with common-law claims. *See Chiron Recovery Ctr., LLC v. AmeriHealth HMO of New Jersey, Inc.*, 2017 WL 4390169, at *7-8 (S.D. Fla. Oct. 3, 2017); *Solution Z v. Alma Lasers, Inc.*, 2013 WL 12246356, at *5 (S.D. Fla. Jan 22, 2013). Under §§ 6 and 148, courts continue to point to "the presumption that the law of the place of injury applies," and § 6 recognizes that the plaintiff's home state has a "great interest" in the application of its own laws, which were passed to protect its own citizens. *Chiron*, 2017 WL 4390169, at *8.

All of these considerations weigh in favor of applying the law of the state where each putative class member is located. It is not disputed that class members purchased SAM-e in their home states from the various Defendants through Amazon. Put differently, the place where the class members allege to have acted in reliance upon the Defendants' representations, if any, is the place where the consumer made a purchase. Additionally, any alleged injuries incurred by class members would have occurred in those states, as that is where the purchase was made. *See Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1094 (Fla. 4th DCA 2003); *Karhu v. Vital Pharms., Inc.*, 2014 WL 815253, at *10 (S.D. Fla. Mar. 3, 2014), aff'd, 621 F. App'x 945 (11th Cir. 2015).

If all Plaintiffs do not have the same legal causes of action as all class members, a class cannot be certified. Multiple courts have denied class certification on this point alone by reaching the conclusion that: (a) the place of purchase is the location of the injury; and (2) the place of

purchase is the location where the consumer made the purchase. *See, e.g.*, *Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC*, 2020 WL 5440581, at *7 (S.D. Fla. Sept. 9, 2020); *Karhu*, 2014 WL 815253, at *7; *Morris v. ADT Sec. Servs., Inc.*, 2009 WL 10691165, at *6 (S.D. Fla. Sept. 11, 2009); *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 626 (S.D. Fla. 2008); *Hutson*, 837 So. 2d at 1094.

Plaintiffs cannot carry their burden to demonstrate that, pursuant to Florida choice of law rules, FDUPTA or the Florida common law claims[1] should govern the claims of non-Florida putative class members. As a result, Plaintiffs cannot represent a proposed nationwide class under the FDUPTA or the Florida common law claims.

> b.   *Plaintiffs fail to demonstrate that no conflicts exist between Florida law and the applicable laws of other states*

It is not the Court's obligation to survey the laws of all 50 states. *See, e.g.*, *Gelfound v. Metlife Ins. Co. of Conn.*, 313 F.R.D. 674, 677 (S.D. Fla. 2016). Instead, Plaintiffs, in seeking class certification, must provide an extensive analysis of the state law variations to reveal whether they pose "insuperable obstacles." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010). "Although there is no categorical bar to class treatment where the law of multiple states will apply, courts have expressed some skepticism of such treatment, particularly in substantive areas where the content of state law tends to differ." *Sacred Heart*, 601 F.3d at 1180.

Here, Plaintiffs ignore any choice of law analysis regarding the nationwide class. Plaintiffs' failure to present this analysis in their Motion, standing alone, is a sufficient basis to deny it. Indeed, the common law across all 50 states regarding misrepresentation and warranty claims are

---

[1] The analysis applies to the Magnuson Moss Warranty Act ("MMWA") claim as well because the MMWA is based substantively on state law.

subject to varying elements and requirements. Moreover, as stated by the Court in *Cohen*, the differences between states' deceptive trade practices laws are significant: "(1) some states have no private cause of action under their consumer protection laws or limit the right to a private action; (2) other states prohibit or restrict class actions; (3) some states require willful conduct while others do not require intent; (4) some states require a showing of reliance on the alleged deception and (5) in some states the action is limited to natural persons, while others allow businesses to sue." *Cohen*, 259 F.R.D. at 634.

As a result, and as Courts in this District have held repeatedly, the variations in the unfair and deceptive trade practice laws pose an insurmountable hurdle to class certification. *See Townhouse Rest.*, 2020 WL 5440581, at *7; *Karhu*, 2014 WL 815253, at *11; *Morris*, 2009 WL 10691165, at *8-9; *Cohen*, 259 F.R.D. at 634; *Montgomery*, 209 F.R.D. at 229. This Court should reach the same conclusion.

## IV.   Plaintiffs have not demonstrated the classes they seek to certify are ascertainable

In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified. *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015). A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful. *Id.* at 948

In their Motion, Plaintiffs seek to certify noticeably different classes than what were proposed in the Third Amended Complaint. The nationwide class defined in the Third Amended Complaint consisted of "[a]ll persons who purchased the subject product in or as a resident of the United States of America." (Doc. 17, p. 54). The proposed nationwide class in Plaintiffs' Motion is "[a]ll persons who purchased the subject product through Amazon.com in or as a resident of the

United States of America." (Doc. 296, p. 6). In other words, the proposed classes are limited to individuals who purchased SAM-e on Amazon.

As defined, it is not clear if the proposed classes are limited to SAM-e manufactured by Vitamins Because and then sold only by aSquared, GMAX Central, LLC ("GMAX"), and Vitamins Because. (Doc. 296, p. 6). As a result, the defined classes may include all sales of SAM-e that were manufactured by Vitamins Because, through an unknown number of third parties. Defining the classes in that way is impressible, as Plaintiffs cannot represent a class other than the one with similar claims, *i.e.*, the Defendants that they purchased SAM-e from.

To the extent Plaintiffs did intend to limit the proposed nationwide class to SAM-e sold by only aSquared, GMAX Central, LLC ("GMAX"), and Vitamins Because, they walk themselves into a separate jurisdictional issue, which will be ripe for motion practice upon clarification of this motion and other pending issues. Per Plaintiffs' own damages expert, Plaintiffs believe the net sales of SAM-e at issue in this case is approximately $3.3 million. *See* Declaration of Brendan H. Little, Esq. ("Little Dec."), Exhibit A. That number includes, however, sales of SAM-e from all of the dismissed Defendants, which is approximately $1.4 million. Little Dec., Exhibit A. Plaintiffs relied heavily on the $3.3 million in compensatory damages to maintain jurisdiction under the Class Action Fairness Act ("CAFA"), which will be squarely in question if Plaintiffs limit their proposed classes to consumers who bought SAM-e manufactured by Vitamins Because and sold only by the remaining Defendants, as they must.

Additionally, the "well-defined" classes have no time constraint, they are proposed in perpetuity. (Doc. 296, p. 6). ASquared purchased SAM-e manufactured by Vitamins Because for approximately 18 months. Little Dec., Exhibit B. It made clear that it did also use another manufacturer of SAM-e and that, after a certain date, it was unable to determine which consumers

purchased product from which manufacturer. Little Dec., Exhibit B. Although Amazon has suggested it can identify a seller of SAM-e by a unique ASIN number, that is only half the battle. First, Amazon did not respond to the subpoena substantively, it objected to it. (Doc. 296-9). Moreover, Amazon's subpoena objection provides no clarification if it can parse that information by manufacturer. Although Amazon might be able to identify all of the consumers who purchased SAM-e from Defendants, it does not suggest it can identify SAM-e that was purchased by Defendants and manufactured by Vitamins Because. That failure is fatal at this stage in the lawsuit.

Plaintiffs received consumer information from the Defendants over a year ago. They did not notice a deposition of any of the retail Defendants. Plaintiffs received Amazon's objection to its subpoena in August 2021. Notwithstanding the fundamental shortcoming apparent in the objection, Plaintiffs sought no further discovery or clarification. Instead, they blindly conclude that Amazon will just figure out all the details later. Fact discovery is closed, and Plaintiffs are not permitted to simply re-engage in discovery after class certification to demonstrate the proposed classes are, actually, ascertainable. Ascertainability is Plaintiffs' burden to establish at this point in the lawsuit, and they have not done so.

## V.     Fed. R. Civ. P 23(a) factors

### a.     Commonality

Pursuant to Fed. R. Civ. P. 23(a)(2), Plaintiffs must demonstrate that "there are questions of law or fact common to the class." That language is easy to misread as any competently crafted class complaint literally raises common "questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. *Id.* at 349-50. The Court does not examine the "raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate

common answers apt to drive the resolution of the litigation." *Id.* at 350. Proof of commonality often overlaps with the merits of a case. *Wal-Mart*, 564 U.S. at 349.[2]

Plaintiffs cannot demonstrate that all members of the class suffered the same injury because they cannot demonstrate all SAM-e manufactured by Vitamins Because did not meet label specification. (Doc. 294, p. 3-12). Plaintiffs did not have the SAM-e they purchased tested to confirm whether it met label specification. (Doc. 294, p. 3-12). Additionally, Plaintiffs have no reliable proof that all SAM-e purchased by the members of the class failed to meet label specification across the board. As a result, Plaintiffs cannot show whether they suffered the same (or any) injury as the members of the class they purport to represent. As a result, they cannot satisfy Fed. R. Civ. P. 23's commonality requirement and their Motion should be denied.

b.    *Adequacy*

Fed. R. Civ. P. 23(a)(4) requires the class representatives and their counsel to "fairly and adequately protect the interests of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). This requirement protects the legal rights of absent class members. *Id.*

i.  *The adequacy of the representative plaintiffs*

Although adequate class representation generally does not require that the named plaintiffs demonstrate, to any particular degree, that individually they will vigorously pursue the legal claims of the class, a finding of inadequacy generally requires plaintiffs to "have abdicated their role in the case beyond that of furnishing their names as plaintiffs, [such that] the attorneys, in essence, are the class representatives." *Kirkpatrick*, 827 F.2d 718, 727 (11th Cir. 1987); *Gamache v. Hogue*, 338 F.R.D. 275, 288 (M.D. Ga. 2021).

---

[2] aSquared's standalone argument regarding choice of law for the FDUTPA and common law claims could easily apply to commonality as well. *See* Section III *supra*.

Certain Plaintiffs' deposition testimony raises questions about whether they, or their lead counsel Jay Brody, is the class representative. Plaintiff Kalyn Wolf ("Wolf") testified that: (1) she did not know she was a class representative; (2) she did not know a mediation which she was required to attend even occurred; (3) she does not speak with her counsel regularly about the lawsuit; (4) she had never seen the operative Complaint before the date of her deposition; and (5) outside of herself, she had no knowledge of who any of the parties to the lawsuit were. (Doc. 294-3; p. 26, ln 20-25; p. 33, ln. 12-25; p. 34, ln 1-11; p. 9-13; p. 59, ln 19-23; p. 60-61). When asked what her basis was for alleging that the SAM-e she purchased did not meet label specification, Wolf testified "[b]ecause the attorney told me so." (Doc. 294-3, p. 67, ln. 1-5).

Plaintiff Robert McKeown ("McKeown") testified that: (1) he was solicited by counsel via email about being a potential plaintiff in this lawsuit; (2) he didn't ever really discuss the details of the case with his attorneys, other than to verify that he has received documents relating to it; (3) he did not know what court the lawsuit was in, the judge assigned, or whether there was a trial scheduled; (4) he did not know if any settlement negotiations had occurred in the lawsuit and did not know if any demand to resolve the lawsuit had been made; (5) he did not know a mediation which she was required to attend even occurred; and (6) he did not know whether he was a class representative or what a class representative's responsibilities were. (Doc. 294-5, p. 13, ln 12-16; p. 35, ln. 9-20; p. 37, Ln 22-25; p. 38, ln. 1-5; p. 39-41; p. 42, ln. 20-24; p. 43, ln. 24-25; p. 44, ln. 1-20). When questioned about basis was for his allegation that the SAM-e he purchased did not meet label specification, McKeown confirmed it was solely from information provided to him by his attorneys. (Doc. 294-5, p. 53, ln. 16-21).

Plaintiff Bill Wilson ("Wilson") testified that: (1) he was solicited by counsel about being a plaintiff; (2) he does not know who any of the defendants in the lawsuit are; (3) he, or his attorney,

never made anyone aware that he still had SAM-e he purchased in his possession; (4) he did not attend a court ordered mediation; (5) he was not aware whether his attorneys had made any offers to settle on his behalf; (6) he did not know what his responsibilities as a class representative were; and (7) he did not know what court the lawsuit was in or whether there was a trial scheduled. (Doc. 294-4, p. 22, ln. 4-15; p. 23, ln. 12-15; p. 18, ln. 11-22; p. 48, ln. 1-8; p. 48, 18-21; p. 48, ln. 23-25; p. 49, ln. 1-11; p. 75, ln. 17-25; p. 76, ln. 1-6). Wilson testified he had he had no knowledge about settling his claim against a former defendant in this case, We Like Vitamins, LLC ("WLV"). (Doc. 294-4, p. 76, ln 14-25; p. 77, ln. 1-4). Notwithstanding his testimony, he did settle, as is demonstrated by the notice of settlement Wilson's attorneys filed on his behalf relating to his claim against WLV on November 5, 2019.[3]

Plaintiffs' characterization of the above as nothing more than a lack of familiarity with the legal terminology and details of the case, while convenient, is hollow. (Doc. 296, p. 14). Plaintiffs' testimony makes clear that they were, in large part, solicited to be class representatives, that their only basis for understanding they even have a claim is based on representations of their counsel, that they play no role in the prosecution of the case, and that they lack any understanding of what it means to be a class representative. To that end, class counsel has continued to make dispositive decisions, such as participating in mediation, making settlement demands, and even settling claims on behalf of the certain Plaintiffs, presumably without their knowledge or consent.

Put simply, Plaintiffs have given their names to this case, but it is Plaintiffs' counsel who is, in reality, the class representative.

---

[3] WLV filed a motion to enforce the settlement agreement because Plaintiffs' counsel agreed to the terms of the agreement and then tried to walk away from the settlement. (Doc. 38). From that motion, it is clear that Wilson gave up his right to seek individual compensation from WLV and Plaintiffs' attorneys received $40,000.00 in attorneys' fees – two facts Wilson was apparently never made aware of.

ii.       *The adequacy of class counsel*

ASquared does not object to Plaintiffs' conclusion that their counsel is "qualified, experienced, and fully capable." (Doc. 296, p. 10). Their conduct in this litigation, however, calls into question their ability to fairly and adequately protect the interests of the class.

First, Wilson testified that he had the SAM-e he purchased in his possession.  (Doc. 294, p. 17, ln 11-25. Wilson was never asked to provide that SAM-e to his attorneys. *Id.* The fact that he actually possessed the SAM-e that he purchased was not disclosed in Plaintiffs' initial disclosures nor in Wilson's discovery responses. As a result, by the time Defendants learned this fact, the SAM-e was surely expired and they did not have the ability to request production of the SAM-e to test it for potency. In a case where the single dispositive issue is whether SAM-e met label specification, counsel's failure to disclose that Wilson had the SAM-e he purchased in his possession is exceedingly questionable.

Second, in conducting a court ordered mediation without their clients' knowledge (Section V(b)(i) *supra*), and engaging in settlement negotiations during the mediation, Plaintiffs' counsel display a willingness to pursue relief on their clients' behalf without their knowledge. This conduct is also exemplified by the circumstances surrounding the settlement with WLV. Wilson testified that he had no knowledge he settled his claim against WLV – a settlement in which counsel appears to have received a substantial recovery for legal fees. (Doc. 38). Moreover, WLV had to file a motion to enforce the settlement agreement, then spoke with their clients about the agreement they reached, and presumably could not get them to agree to the settlement they already entered into. (Doc. 38). Thereafter, Ginsberg was voluntarily dismissed as a plaintiff. (Doc. 260).

Finally, Plaintiffs' counsel continues to prosecute this case on behalf of Plaintiff Eric Fishon ("Fishon"). Fishon alleged that he purchased SAM-e from a former Defendant

BoostCeuticals on March 24, 2018, and submitted a PDF print out of an Amazon sale document to support his claim. (Doc. 176, ¶ 12); Little Dec., Exhibit C. BoostCeuticals, however, had no record of a sale to Fishon on that date. Little Dec., Exhibit D. Instead, it had a record of selling SAM-e to Fishon on October 29, 2019, 4 months after this lawsuit was commenced. Little Dec., Exhibit D. Not coincidentally, the Amazon confirmation number for the November 2019 sale happened to match the confirmation number of the document Fishon submitted as proof he purchased SAM-e in March 2018. Little Dec., Exhibit D. As there is no plausible way two different Amazon purchases made 18 months apart would have the same confirmation number, BoostCeuticals demanded clarification through Judge Torres' discovery procedures.

After refusing to produce documents in native form so Defendants could analyze the information included on the Amazon document submitted, Fishon finally produced his March 2018 order log from his Amazon account, which does not show any purchase being made on March 24, 2018.[4] Little Dec., Exhibit E. Fishon also produced an Amazon sale document for his purchase on October 19, 2019, which appears to have been scrubbed of an Amazon confirmation number. Little Dec., Exhibit F. In fact, it appears to be the only Amazon document exchanged in discovery in this lawsuit that does not include an Amazon confirmation number. Simply put, the documentary evidence in discovery strongly suggest that Fishon altered Amazon documents to make it look like he purchased SAM-e that would allow him to pursue claims against BoostCeuticals.

---

[4] Despite being able to download his March 2018 Amazon purchase log, Fishon testified and maintains he was unable to do so for October 2019. (Doc. 276-2, p. 266-267). As a result, the parties were unable to view the confirmation numbers associated with Mr. Fishon's October 2019 purchase, which would likely confirm whether Mr. Fishon copied and pasted his Amazon confirmation number from October 2019 onto the Amazon documents he submitted for his "purchase" in March 2018.

The circumstances around Fishon's purported purchase of SAM-e were raised at a discovery hearing on October 14, 2021. Two months later, and before the issue was resolved, Fishon dismissed his claims against all Defendants except Vitamins Because. (Doc. 271).

Taken together, the above course of conduct calls into question Plaintiffs' counsels' ability to fairly and adequately protect the interests of the proposed classes.

## VI.   Fed. R. Civ. P. 23(b)(3)

### a.   *Individual issues predominate over common questions making class certification impracticable*

Fed. R. Civ. P. 23(b)(3) allows a class to be certified if both common questions of law or fact predominate over questions affecting only individual members, and a class action is superior to other methods for a fair and efficient adjudication of the controversy. The predominance inquiry "tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Derivative Litig.*, 331 F.R.D. 675, 683 (S.D. Fla. 2019). "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). "Rule 23(b)(3), as an adventuresome innovation, is designed for situations in which class-action treatment is not as clearly called for." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

In cases where the determination of either liability or damages requires a case-by-case inquiry for each prospective plaintiff, courts generally consider the predominance and superiority requirements of Rule 23(b)(3) unsatisfied. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1276 (11th Cir. 2004). Put differently, where an individual inquiry would be required to establish whether a particular class member was harmed by the alleged misconduct at issue, the predominance requirement is not satisfied, and the claim is not suitable for class treatment in this regard.

15

i.       *Plaintiffs cannot demonstrate that each class member purchased SAM-e that did not meet label specification*

Every cause of action asserted by Plaintiffs on behalf of the putative classes relies on the assumption that the SAM-e purchased by consumers, including Plaintiffs, did not meet label specification. Plaintiffs, however, cannot demonstrate that each and every bottle of SAM-e manufactured by Vitamins Because did not meet label specifications. Plaintiffs' own expert concedes that he could not conclude that all the SAM-e manufactured by Vitamins Because did not meet label specifications. (Doc. 294, p. 9-10; Doc. 297, p. 5-6). As a result, there is no common proof amenable to class treatment.

Plaintiffs cannot magically convert individual issues into common ones for purposes of class certification merely through the strategic shaping of the evidence in the record. The practical constraint for Plaintiffs is that they have no way of knowing, with any degree of certainty, whether any particular member of the putative class purchased SAM-e manufactured by Vitamins Because that met label specifications. As a result, no cause of action can be proved or disproved through common evidence and class certification is inappropriate.

ii.      *Plaintiffs use of aggregate proof in the pursuit of a class action forgoes the individualized issues that are necessary to prove certain causes of action in this lawsuit*

Plaintiffs' conclusion that all of the state deceptive act statutes are indistinguishable is incorrect – individual issues of causation and reliance will swallow any common issues. The Arizona and Nevada subclasses assert claims that require individual reliance and there are material issues with regard to Plaintiffs' claims under the remaining deceptive act statutes.

### 1.     Arizona Consumer Fraud Act ("ACFA") subclass

Plaintiff's Motion devotes a single sentence to the ACFA where they conclude, based solely on a 21-year-old case, that "reliance can be presumed." (Doc. 296, p. 23). Plaintiffs misinterpret the requirements under ACFA and as a result, misapply the law.

A plaintiff suing under the AFCA must prove actual reliance. *See Naiman v. Alle Processing Corp.*, 2020 WL 6869412, at *7 (D. Ariz. Nov. 23, 2020); *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 349 (D. Ariz. 2009). As Arizona's statutory fraud acts require proof of actual reliance, each proposed class member must prove that he or she relied on the misrepresentations and was damaged. *Naiman*, 2020 WL 6869412, at *7 (quoting *Stratton*, 266 F.R.D. at 349. As a result, numerous Courts have denied motions for class certifications because proving actual reliance under the ACFA will require class member by class member litigation. *Naiman*, 2020 WL 6869412, at *7; *Stratton*, 266 F.R.D. at 350.

Plaintiff cannot assume actual reliance for each member of the class and have not put forth any common fact to do so in this case. Individual issues predominate over any common questions under the ACFA and as a result, Plaintiffs cannot satisfy their burden pursuant to Fed. R. Civ. P. 23(b)(3) to certify the Arizona subclass.

### 2.     Nevada Deceptive Trade Practices Act ("NDTPA") subclass

Plaintiff concludes, without citing any authority, that the NDTPA "lacks any effective reliance requirement." (Doc. 296, p. 23). This conclusion is contradicted by the law.

In order to state a claim under the NDTPA, a plaintiff must allege "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). To meet the causation element, a plaintiff must allege that he or she relied on the misrepresentation which caused the harm. *Id.*; *see also Motogolf.com, LLC v. Top*

*Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1178 (D. Nev. 2021); *Guerra v. Dematic Corp*, 2020 WL 5995496, at *2-3 (D. Nev. Oct. 8, 2020); *Bank of N.Y. Mellon v. Sunrise Ridge Master Homeowners Ass'n*, WL 2064065, at *6 (D. Nev. Apr. 28, 2020).

As the NDTPA requires proof of causation and reliance, each proposed class member must prove that he or she relied on the purported misrepresentation and was damaged as a result thereof. At least one court has denied a motion for class certification because a NDTPA claim presents individual issues of causation and reliance. *Bauman v. Saxe*, 2019 WL 157923, at *6 (D. Nev. Jan. 10, 2019). Plaintiff cannot assume causation or reliance for each member of the class and have not put forth any common fact to do so. Plaintiffs cannot satisfy their burden pursuant to Fed. R. Civ. P. 23(b)(3) to certify the Nevada subclass.

> 3.      *The remaining state subclasses require individualized inquiries*

Under FDUTPA, Plaintiffs must show: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Deere Constr., LLC v. CEMEX Constr. Materials, Fla., LLC* (*Deere II*), 2016 WL 8542540, at *2 (S.D. Fla. Dec. 1, 2016). "While proof of actual reliance is unnecessary, the first element of a FDUTPA claim is only satisfied by evaluating a reasonable consumer in the same circumstances as the plaintiff." *Id.* at *3. Although the Eleventh Circuit has held the standard is an objective one, the applicable analysis requires an evaluation of a reasonable consumer in the same circumstances as the plaintiff. *Id.*

For claims pursuant to N.Y. G.B.L. §§ 349 and 350, "the potentially common question of whether a given product's advertising set ... is misleading can be measured under an objective standard: whether it was 'likely to have misle[d] a reasonable consumer acting reasonably under the circumstances.'" *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 274 (E.D.N.Y. 2019) (quoting *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 389

(S.D.N.Y. 2016)). Under the reasonable consumer standard, plaintiffs must show that consumers are likely to be deceived by a representation. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

For claims made pursuant to the Texas Deceptive Trade Practices Act ("DTPA"), Plaintiffs must show: "(1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant violated a specific provision of the DTPA; and (4) the defendant's violation is a producing cause of plaintiff's damages." *Houston v. DTN Operating Co., LLC*, 2017 WL 4653246, at *8 (E.D. Tex. Oct. 17, 2017). Again, present in the elements of a DTPA claim is causation.

Courts generally consider claims under the California Unfair Competition Law ("UCL") and California Legal Remedies Act ("CLRA") in tandem. *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1103 (C.D. Cal. 2015). For purposes of class certification, the UCL and CLRA are materially indistinguishable. *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (citing *Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 589 n. 3 (C.D.Cal. 2011)). Both statutes allow plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material. *Forcellati,* 2014 WL 1410264 at *9.

Here, there is an individualized factual issue relating to causation and reliance that is not common to the class in its entirety. Plaintiffs' motion for summary judgment makes much to do about the type of SAM-e raw material that was included by Vitamins Because in its product. (Doc. 299, p. 10). Plaintiffs believe that because Vitamins Because filled the product with S-adenosyl methionine disulfate tosylate ("SAM-e disulfate tosylate"), they were "underfilling" raw materials in the product they manufactured. Plaintiffs then conclude, albeit without support, that all

reasonable consumers would expect that SAM-e they purchased would include SAM-e ions, not SAM-e disulfate tosylate as the raw material in the product. (Doc. 299, p. 10).

At the outset, Plaintiffs put forth no evidence to support the conclusion that they expected to purchase SAM-e filled with any specific SAM-e raw material. To the contrary, the record evidence shows that SAM-e bottles manufactured by Vitamins Because are, in one form or another, labeled as SAM-e disulfate tosylate. Little Dec., Exhibit G. As a result, an individual question will exist before the Court can even reach the potency issue: what was each consumer intending to purchase? To answer this question, the Court would be forced to engage in a class member by class member analysis to determine: (1) what raw material each class member expected to have in the SAM-e they purchased; and (2) whether they read the label in that regard before making the purchase. As a result, what a reasonable consumer in the same circumstance, i.e., purchasing a bottle of SAM-e clearly labeled as S-adenosyl methionine disulfate tosylate, would expect, is not a common factual issue at all.

Plaintiffs attempt to certify subclasses in Arizona and Nevada based on causes of action that require actual reliance. Multiple courts have rejected similar attempts and this Court should as well. Moreover, Plaintiffs' insistence that no reasonable consumer would ever expect to purchase SAM-e filled with SAM-e disulfate tosylate as a raw material, despite it being listed on the bottles, creates an individual question that cannot be established through common evidence. Ultimately, these individual issues stated above will swallow whole any classwide proof. Plaintiffs cannot satisfy their burden pursuant to Fed. R. Civ. P. 23(b)(3) and their Motion should be denied.

## CONCLUSION

For the reasons stated herein, Defendant aSquared Brands, LLC requests that Plaintiffs' motion for class certification be denied in its entirety.

Dated: February 22, 2022

**LIPPES MATHIAS LLP**

/s Alessandro A. Apolito
Alessandro A. Apolito, Esq.
Florida Bar Number: 0084864
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256
P: 904-660-0020
F: 904-660-0029
Primary E-Mail:  aaapolito@lippes.com

Brendan H. Little, Esq., *pro hac vice*
Sean M. O'Brien, Esq., *pro hac vice*