UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-22702-Civ-WILLIAMS/TORRES

NOAH MALGERI, *et al.*

    Plaintiffs,

v.

VITAMINS BECAUSE LLC, *et al.*

    Defendants.

_____/

**OMNIBUS ORDER ON MOTIONS TO STRIKE AND EXCLUDE
PLAINTIFFS' EXPERT DR. DOUGLAS KALMAN**

This matter is before the Court on Defendants Vitamins Because, LLC's and CT Health Solutions, LLC's (collectively "Vitamins Because"), and aSquared Brands, LLC's ("aSquared") motions to exclude Plaintiffs' expert Dr. Douglas S. Kalman [D.E. 297, 303]. Also before the Court is Vitamins Because's motion to strike Dr. Kalman's rebuttal report [D.E. 275]. Plaintiffs filed timely responses to the three motions [D.E. 351, 285, 350], to which Defendants replied accordingly [D.E. 367, 363, 364]. Therefore, the motions are now ripe for disposition.[1] After careful consideration of the motions, the responses, the replies, the attachments to each, the relevant authorities, and for the reasons discussed below, Defendants' motions to strike

---

[1] On July 3, 2019, the Honorable Kathleen M. Williams referred all discovery disputes and non-dispositive pretrial motions to the undersigned Magistrate Judge for disposition. [D.E. 4].

[D.E. 275, 297] are **DENIED**, and Vitamins Because's motion to strike [D.E. 303] is **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

This is a putative class action brought by several Plaintiffs for claims arising from the purchase of fraudulently mislabel and defectively manufactured dietary supplements. Specifically, Plaintiffs claim that they purchased S-Adenosyl Methionine ("SAM-e") dietary supplements manufactured by Vitamins Because that were mislabeled and defectively manufactured in that they contained significantly less amounts of the active SAM-e ingredient than represented in their labels.

In support of their claims, Plaintiffs retained Nutritionist Dr. Douglas S. Kalman as an expert witness to provide testimony regarding the deficiencies of SAM-e contained in the subject dietary supplements. In accordance with the Court's Amended Scheduling Order [D.E. 244], Plaintiffs timely disclosed Dr. Kalman's initial expert report and his rebuttal on October 29, 2021, and December 31, 2021, respectively.

## II.   APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of

laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the

courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the

4

testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

### III. ANALYSIS

Defendants Vitamins Because and aSquared move to strike the opinions and exclude the testimony of Dr. Kalman on the basis of near-identical *Daubert* challenges [D.E. 297, 303]. Additionally, Vitamins Because also moves to strike Dr. Kalman's rebuttal report on the grounds that the report is not a proper rebuttal [D.E. 275]. Plaintiffs respond by noting that Dr. Kalman is both a qualified and reliable expert, and by arguing that his rebuttal report is a proper rebuttal to the expert report prepared by Dr. Nathalie Chevreau. We will discuss each of these arguments in turn.

#### A. *Whether Dr. Kalman is Qualified to Opine in this Case*

Defendant Vitamins Because first seeks to strike the opinions of Dr. Kalman and exclude his testimony on the basis that he is not qualified to render his opinions in this case. Defendant's halfhearted, one-paragraph-long argument is unpersuasive.

For starters, instead of articulating arguments explaining why Dr. Kalman's actual credentials and experience as a licensed Nutritionist and nutrition-focused

5

clinical researcher render him unsuitable for the task at hand, Defendant focuses on arbitrarily highlighting a list of things that he is not. *See* [D.E. 303, p. 6] ("Dr. Kalman is not a chemist, statistician, epidemiologist, physician, or biologist."). This effort, however, mises the mark, for "Rule 702 contemplates a broad conception of expert qualifications[,] as is evidenced by the advisory committee notes thereto 'emphasiz[ing] that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert.'" *Peck v. Carnival Corp.*, No. 16-20214-CIV, 2017 WL 7726728, at \*3 (S.D. Fla. July 13, 2017) (quoting a *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004)).

Defendant also ignores the fact that a review of Dr. Kalman's *curriculum vitae* makes it clear he is well qualified to opine on nutrition-related matters, including the presence or absence of SAM-e in Defendant's dietary supplements. Not only does Dr. Kalman have extensive education and training in clinical research and nutrition, but he also has approximately thirty (30) years of practical experience in the nutritional and dietary supplements field. As the Vice President of Science Affairs at a leading nutraceutical and pharmaceutical life sciences company, he oversaw laboratory analysis, clinical trials, and regulatory procedures. Dr. Kalman has also worked on more than 300 clinical trials, including studies relating to foods and dietary supplements, has published an abundance of works on nutrition and supplement related matters, and has conducted research on and participated in studies involving SAM-e, the dietary supplement at the crux of this litigation. *See* [D.E. 275-3, pp. 2-4; 351-1]. Accordingly, "[b]ecause [Defendant] has not advanced

6

any attack that truly calls into question [Dr. Kalman's] expert qualifications," its argument that Dr. Kalman is not qualified to provide opinions and testimony in this case is meritless. *Quiet Tech.*, 326 F.3d at 1342.

### B. *Whether Dr. Kalman's Opinion is Reliable*

Both Vitamins Because and aSquared seek to strike and exclude Dr. Kalman's opinion and testimony as unreliable. Defendants' central argument is that, during his deposition, Dr. Kalman gave testimony that contradicted his initial opinion that "ALL of the SAM-e manufactured by Vitamins Because was deficient." [D.E. 303, pp. 6-8; 297, pp. 4-7]. Additionally, Defendants take issue with Dr. Kalman's methodology, including by questioning the size and origin of the samples that Plaintiffs tested, attacking the facts and evidence upon which he relied, and claiming that his conclusions ignored adverse data. After an independent review of the underlying expert reports and the testimony in the record, we find that Defendants' unreliability claims lack merit.

Defendants first argue that Dr. Kalman's testimony and opinions are unreliable because his deposition testimony controverted his initial opinion that all of the SAM-e supplements manufactured by Vitamins Because were inaccurately labeled. Likewise, Defendants object to Dr. Kalman's rebuttal report, wherein he reiterated his initial conclusion in contradiction of this deposition testimony. According to Defendants, "[b]y condoning Kalman's explicit contradictions, the Court waters down the objectivity required from experts in Federal Court." [D.E. 303, p. 8; 297, p. 7]. We disagree.

7

For starters, courts in this Circuit and others routinely hold that disputes about an expert's inconsistent or contradictory testimony bear on the weight, not the admissibility, of such testimony. *See Exim Brickell LLC v. Bariven, S.A.*, No. 09-CV-20915, 2011 WL 13131317, at *5 (S.D. Fla. Mar. 11, 2011) (refusing to exclude expert based on contradictions during deposition "because such contradictions or concessions should go toward the weight of the evidence put forth by the expert, not toward its admissibility."); *Morrow v. Allstate Indem. Co.*, No. 5:16-CV-137 (HL), 2020 WL 11629213, at *10 (M.D. Ga. June 1, 2020) (Plaintiff's claim of inconsistent expert testimony "does not bear on the admissibility of the [expert opinion]"; rather, this is "an appropriate matter to explore on cross-examination."); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 765019, at *26 (N.D. Fla. Feb. 28, 2021) ("To the extent Dr. Franks' actual deposition testimony can be viewed as conflicting with his previously given opinions . . . that is a matter affecting the weight and credibility of his opinion, not its admissibility."); *Gonzalez v. Inman Trucking, Inc.*, No. EP-16-CV-6-PRM, 2017 WL 7905499, at *5 (W.D. Tex. June 20, 2017) (same). Defendants do not cite authority to the contrary.

Second, the Court disagrees with Defendants' characterization of Dr. Kalman's testimony as a fatal concession. Contrary to Defendants' assertion that he has provided "flip flop testimony" that is "ever-changing," Dr. Kalman's opinions regarding class-wide deficiencies have remained consistent across his initial and rebuttal reports. *Compare* [D.E. 275-3, pp. 2, 5, 16, 23-24] *with* [D.E. 275-1, pp. 3-5, 7-8]. While it is true, as Defendants point out, that Dr. Kalman provided

8

contradictory testimony during his deposition, this contradiction is not fatal where, as here, the witness can explain the inconsistent testimony in good faith by pointing to evidence in the record that supports his ultimate opinion.[2] Here, for instance, Dr. Kalman has consistently maintained (both in his initial report and during his deposition) that the testing conducted by ABC laboratories on Defendants' behalf is questionable and should not be relied upon. [D.E. 257-3 ¶ 57; 303-2, pp. 121-124; 275-1, p. 11]. Likewise, Dr. Kalman has consistently opined (both in his initial report and in his rebuttal) that the testing conducted by Plaintiffs, as well as evidence of Vitamins Because's manufacturing processes support his ultimate conclusion that all the subject SAM-e supplements manufactured by Defendant were uniformly mislabeled. [D.E. 275-3, pp. 5, 23, 25; D.E. 275-1, pp. 7-8]. This is not a case in which the expert is woefully unable to reasonably explain his contradictions by pointing to his earlier opinions or the evidence he relied upon.

Defendants' arguments against Dr. Kalman's methodology are likewise unavailing. First, Defendants attack the randomized marketplace testing implemented by the laboratories that tested the dietary supplements, and which

---

[2] That being said, the Undersigned notes that Dr. Kalman cannot simply pretend to undo his deposition testimony with the submission of an errata sheet that would insert material and contradictory changes to the existing transcript—a point that Defendant rightly points out in its reply. Depositions have consequences and Defendants, if they so choose, will have the option of questioning Dr. Kalman about his contradictory testimony on the witness stand. *See Eldridge v. Pet Supermarket, Inc.*, No. 18-22531-CIV, 2019 WL 3302348, at *2 (S.D. Fla. July 23, 2019) ("[D]istrict courts have interpreted the Eleventh Circuit's recent decisions as making clear that material changes, especially when contradictory to the deponent's original testimony, are not permissible absent a good reason.") (citations and internal marks omitted).

Dr. Kalman used to arrive at his conclusions. These tests, however, were conducted by three different and reputable laboratories, and Defendants offer no evidence to dispute this. Moreover, the marketplace methodology the laboratories applied is one commonly used in the field. As Dr. Kalman explained, randomized marketplace testing is a valid methodology used by experts, including the FDA, in the testing of pharmaceuticals, drugs, and supplements. [D.E. 275-1, p. 5].

Defendants also allege that Dr. Kalman's methodology is faulty because his opinion is speculative, because he did not apply statistics or mathematics, and because he ignored data. [D.E. 303, pp. 8-10; 297, pp. 7, 9-12]. However, Dr. Kalman reviewed the record in its entirety and developed his opinions based on the evidence at issue on this case, including scientific testing, evidence regarding Defendant's manufacturing processes, and testimony from Defendant's principals—not by pure speculation. [D.E. 275-3, pp. 8, 11-14; D.E. 275-1, pp. 3-4, 9-10]. Further, Dr. Kalman relied on his substantial experience in the field of dietary and nutritional supplements to provide his opinion. The fact that he applied a different approach and interpreted the results differently from Defendant's expert, Dr. Nathalie Chevreau, does not make Dr. Kalman's opinions unreliable. *See Mcgarity v. FM Carriers, Inc.*, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*."); *Hightower v. Goldberg*, 2018 WL 296955, at *2 (M.D. Ga. Jan. 4, 2018) ("Defendants' objections go to the weight and credibility of Mr. Beauchamp's opinions, not their

reliability."); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("Questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

Defendants' additional challenges to Dr. Kalman methodology are based on issues of fact that are disputed by the parties, including whether the supplements tested were indeed manufactured by Defendant, and whether Plaintiffs' tests focused on the correct ingredients. Accordingly, these claims, too, lack the merit to render Dr. Kalman's opinion inadmissible. *See Salvani v. Corizon Health, Inc.*, 2019 WL 4101794, at *4 (S.D. Fla. Aug. 29, 2019) ("If Plaintiff believes that his set of facts are more accurate, he has ample opportunity to cross-examine Dr. Fournier at trial to undermine Dr. Fournier's opinion. However, to do so on a Daubert motion would be inappropriate when there are several factual disputes and an expert relies on one side of a story in determining a patient's illness."); *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1265 (S.D. Fla. 2012) ("'[a]n expert is … permitted to base his opinion on a particular version of the disputed facts and the weight to be accorded to that opinion is for the jury.'") (quoting *Walker v. Gordon*, 46 Fed. Appx. 691, 695–96 (3d Cir.2002)).

In sum, Dr. Kalman's methodology satisfies *Daubert*. The criticisms outlined in Defendants' Motions are more appropriate at trial and upon cross examination, as any such objections go to the weight of the evidence rather than its admissibility. *See Quiet Tech.*, 326 F.3d at 1345 (holding that the expert's methodology was reliable,

even though he did not utilize all available flight test parameters in his model; the remedy is effective cross examination to test the expert's analysis.); *In re Trasylol Prod. Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.") (citations and internal marks omitted).

### C. *Dr. Kalman is Not Qualified to Offer Legal Opinions*

Vitamins Because's motion also seeks to exclude Dr. Kalman's assertions that Vitamins Because's SAM-e supplements violated FDA regulations, and his opinions on what FDA regulations require. Plaintiffs did not respond to this claim.

Because any opinion that Vitamins Because violated FDA regulations is clearly a legal conclusion which Dr. Kalman is not qualified to provide, Plaintiffs may not offer such testimony nor any other legal conclusions through Dr. Kalman's testimony at trial. *See Georgian v. Zodiac Grp., Inc.*, No. 10-cv-60037, 2011 WL 2530967, at *3 (S.D. Fla. June 23, 2011) (King, J.) ("A legal conclusion is an improper subject for expert testimony.").

### D. *Whether Dr. Kalman's Rebuttal Report is a Proper Rebuttal*

Finally, Vitamins Because also moves to exclude Dr. Kalman's rebuttal report on the grounds that: (i) the report includes opinions and relies on materials that were, or could have been, disclosed in his initial report; and (ii) those opinions directly contradict his deposition testimony. *See generally* [D.E. 275]. For the reasons that follow, Defendant's motion is DENIED.

The Court has already addressed Defendant's arguments regarding the contradictions created by Dr. Klaman's deposition testimony, so it will not repeat that analysis here. *See* Section B, supra; *see also Kim v. Crocs, Inc.*, No. CV 16-00460 JAO-KJM, 2018 WL 6179320, at *2 (D. Haw. Nov. 27, 2018) (finding that report was a proper rebuttal despite claims that "rebuttal directly contradict[ed] expert's deposition testimony"); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-HSG, 2018 U.S. Dist. LEXIS 149395, at *19 (N.D. Cal. Aug. 31, 2018) (refusing to strike rebuttal report that contradicted expert's deposition testimony where the rebuttal responded to opposing expert and was relevant); *Bridges v. Enter. Prod. Co.*, No. 3:05CV786-WRB-LRA, 2007 WL 465738, at *5 (S.D. Miss. Feb. 8, 2007) ("The Court finds that the issues of whether [the expert] provided inconsistent statements [during his deposition] . . . relates to credibility, not admissibility. Accordingly, the Court finds that [the expert] should not be excluded as an expert witness").

Defendant's argument that Dr. Kalman's report is not a proper rebuttal misses the mark. Defendant does not challenge the timeliness or manner of disclosure of the report. Instead, Defendant claims that the rebuttal is improper because it "supports Plaintiffs' case-in-chief, it relies on information that Kalman had prior to his initial reports but failed to rely on, and it goes to the central issue in this litigation." [D.E. 275]. Yet the analysis for assessing the validity of a rebuttal does not focus on whether the report addresses central issues or whether it relies on materials that were previously available to the expert, "but [on] whether it is intended solely to contradict or rebut evidence on the same subject matter of an opponent's expert

13

report." *Doreen O'Malley v. Royal Caribbean*, No. 17-CIV-21225, 2018 WL 11350570, at *2 (S.D. Fla. May 24, 2018); *see also Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (finding that an expert may include material in rebuttal report even though material could have been included in initial report).

A plain reading of Dr. Kalman's report makes it clear that his rebuttal is used to respond to Defendant aSquared's expert, Dr. Chevreau. In fact, Dr. Kalman's rebuttal responds to Dr. Chevreau's critiques point by point, including (i) whether SAM-e is truly an unstable chemical, (ii) whether Plaintiffs tested a representative sample of Defendant's supplements, (iii) whether Plaintiffs' testing was consistent, and (vi) whether the tested supplements were indeed manufactured by Defendant. The fact that Dr. Kalman's rebuttal cites to the deposition transcripts of Defendant's 30(b)(6) witness, Thomas Chapman, and founder, Cynthia C. Valenca, does not detract from this reality, for their testimony related to Dr. Kalman's points of rebuttal.[3] We therefore conclude that Dr. Kalman's expert report constitutes a bona-fide rebuttal report.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions to exclude and strike the opinions and testimony of Plaintiff's expert, and to strike his rebuttal report [D.E. 275, 297] are **DENIED**. Furthermore, Vitamins Because's motion to strike Plaintiff's expert [D.E. 303] is **GRANTED in part** and **DENIED in part**:

---

[3] The Court notes that the reply fails to address Plaintiffs' substantiated claim that Defendant did not sign and approve the final transcripts of these depositions before November 19, 2021, well after Plaintiff's initial report October 31, 2021, deadline.

A. Defendant's motion to exclude all legal conclusions from Dr. Kalman's testimony is **GRANTED**. Plaintiffs may not offer legal conclusions through Dr. Kalman's testimony at trial.

B. In all other respects, Vitamins Because's motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 20th day of April 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge