**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 19-22702-CIV-WILLIAMS**

NOAH MALGERI, *et al.*,

      Plaintiffs,

vs.

VITAMINS BECAUSE LLC, *et al.*,

      Defendants.

_____ /

## <u>ORDER</u>

**THIS MATTER** is before the Court on two motions to dismiss. Defendants Vitamins Because, LLC ("***Vitamins Because***") and CT Health Solutions ("***CT Health***") filed a Motion to Dismiss for Lack of Article III Standing (DE 267; DE 276), and Defendant aSquared Brands LLC ("***aSquared***") filed a Motion to Dismiss for Lack of Standing, Lack of Subject Matter Jurisdiction, and for Summary Judgment (DE 294; DE 295). Plaintiffs Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, Robert McKeown, and Eric Fishon (collectively, "***Plaintiffs***") filed responses (DE 315; DE 353; DE 355) to which Defendants Vitamins Because and CT Health, and Defendant aSquared filed replies (DE 365; DE 283). For the reasons set forth below, Defendants Vitamins Because's and CT Health's Motion to Dismiss for Lack of Article III Standing (DE 267) is **GRANTED** and Defendant aSquared's Motion to Dismiss for Lack of Standing, Lack of Subject Matter Jurisdiction, and for Summary Judgment is **GRANTED IN PART AND DENIED IN PART AS MOOT**.

## I.   BACKGROUND

The first Complaint (DE 1) in this matter was filed more than three (3) years ago, and in that time, the parties to this matter have changed and the nature of the claims have evolved. Consequently, the Court reviews the procedural history and then outlines the factual background as it stands today, after the close of discovery and the filing of dispositive motions.[1]

### A.   Procedural background.

Plaintiffs Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood, and Robert McKeown, along with the now-terminated Plaintiff Cori Ann Ginsberg (DE 260; DE 255), filed the first Complaint in this matter on June 28, 2019. (DE 1.) The first Complaint alleged a class action against Defendants Vitamins Because, CT Health, aSquared, We Like Vitamins LLC, and Gmax Central LLC. (*Id.* at 1.) In that Complaint, Plaintiffs and Plaintiff Ginsberg alleged injury due to the purported deceptive labeling by Defendants Vitamins Because and CT Health of a non-coated S-adenosylmethionine ("**SAM-e**" or "**SAMe**") dietary supplement. (*Id.* at 1–2.) The plaintiffs bringing the first Complaint all bought SAM-e dietary supplements on Amazon.com, which were mailed to their respective homes in North Miami, Florida; Las Vegas, Nevada; Tucson, Arizona; La Mesa, California; Phoenix,

---

[1] At this stage in litigation, the Court is presented with a breadth of materials, including factual allegations, deposition testimony, and statements of material facts and facts in dispute. As of this writing, there are more than ten (10) pending motions: the subject Motions to Dismiss (DE 267; DE 294); Plaintiffs' Motion to Strike (DE 289), Motion for Sanctions and to Strike (DE 290), Motion to Certify Class (DE 296), Motion for Partial Summary Judgment (DE 299); Defendant Vitamins Because's and CT Health's Motion for Summary Judgment (DE 301); Defendant aSquared's Motion for Sanctions (DE 306); and Defendants Vitamins Because's and CT Health's Objections (DE 371) to Chief Magistrate Judge Edwin G. Torres' Omnibus Order (DE 396), and Defendant aSquared's Notice of Joinder (DE 372). However, because this Order relates to two Motions to Dismiss filed by Defendants Vitamins Because and CT Health, and Defendant aSquared, respectively, the Court considers the facts as alleged by Plaintiffs, the non-movant.

New York; and Cedar Park, Texas. (*Id.* at 4–6.) After the service period, motions to compel and to dismiss the first Complaint were filed. (DE 23; DE 28; DE 37.)

On November 18, 2019, after certain parties reached a settlement (DE 42; DE 43; DE 44), Plaintiffs and Plaintiff Ginsberg filed the First Amended Complaint (DE 46). Shortly thereafter, a joint stipulation for dismissal with prejudice was filed as to Defendant We Like Vitamins, LLC. (DE 51.) Motion practice continued and crossclaims were pled (DE 73; DE 82) until a Second Amended Complaint (DE 98) was filed on June 19, 2020, nearly a year after the first Complaint. (*Compare* DE 98, *with* DE 1.) The Second Amended Complaint added Plaintiff Eric Fishon and Defendants Inspire Now Pty Ltd d/b/a BoostCeuticals, Healthy Way Rx LLC, Khakiware Inc., and Jolly Dollar Supply Company, LLC. (DE 98 at 1.) Like the other plaintiffs and Plaintiff Ginsberg, Plaintiff Fishon also asserts that he purchased SAM-e dietary supplements on Amazon.com which were then delivered to his home in Hauppauge, New York. (*Id.* at 8.) Following the filing of the Second Amended Complaint, the Court denied the pending responsive pleadings, which included motions to dismiss, as moot. (DE 100.)

Notably, the instant Motions to Dismiss for Lack of Standing are not the first motions filed which challenge the Court's jurisdiction over this matter: following the Second Amended Complaint, multiple defendants filed motions to dismiss for lack of subject matter jurisdiction. (DE 122; DE 126; DE 127.) The crux of the defendants' arguments, as articulated by Defendants Vitamins Because and CT Health in their motion to dismiss (DE 122), was that in the Second Amended Complaint, Plaintiffs and Plaintiff Ginsberg had "not met their burden of establishing that more than $5,000,000.00 . . . is in controversy" as required by the Class Action Fairness Act ("*CAFA*"). (DE 122 at 4); 28

U.S.C. § 1332(d)(2). On October 9, 2020, the Court granted Defendants Vitamins Because's and CT Health's motion to dismiss for lack of subject matter jurisdiction, holding that Plaintiffs and Plaintiff Ginsberg "fail[ed] to sufficiently plead that the amount in controversy exceeds five million dollars" in the Second Amended Complaint. (DE 174.) The Court set a hearing/status conference for October 26, 2020 (*Id.*), and on October 23, 2020, Plaintiffs and Plaintiff Ginsberg filed the Third Amended Complaint (DE 176).

After the fourth iteration of the complaint—the Third Amended Complaint—the Court held that Plaintiffs and Plaintiff Ginsberg had adequately alleged an "aggregate amount in controversy [in excess of] $5 million" under CAFA. [2] (DE 221 at 2–4.) On June 18, 2021, nearly two (2) years after the first Complaint in this matter was filed, Defendants were ordered to file answers to the Third Amended Complaint. (DE 224.) Defendants complied, filing answers and crossclaims. (DE 225; DE 226; DE 227; DE 228; DE 229; DE 230.) The Third Amended Complaint (DE 176) is still the operative complaint in this matter. Accordingly, although almost two (2) years elapsed between the beginning of this matter and when responsive pleadings were filed to the fourth iteration of the complaint, the Parties to this matter have engaged in discovery since June 28, 2019. [3] On August 9,

---

[2] In doing so, Plaintiffs pled that there were "thousands of consumers" of the subject SAM-e products, supporting the allegation that the putative class met the numerosity requirement under Federal Rule of Civil Procedure 23. (DE 176 at 62); Fed. R. Civ. P. 23(a)(1).

[3] Throughout the pendency of this matter, the Court denied various motions to stay or stay discovery. (*See* DE 88; DE 174; DE 212; DE 249.) As stated by Plaintiffs in their Motions for Sanction and to Strike, "[a]t no point in time did the Court stay the case or discovery." (DE 290 at 2; DE 318 at 2.) In Plaintiffs' Motion for Sanctions and to Strike, which the Court denies as moot for the reasons stated below, Plaintiffs request the Court impose sanctions and strike Defendants Vitamins Because's and CT Health's answers to the Third Amended Complaint because the "deposition testimony of Dr. Neil Ross . . . has revealed that a number of responsive, material records concerning these matters were in the possession of Defendant and were still being withheld by Defendant and were never

2021, the Court entered an Amended Scheduling Order, setting trial for the following year and the close of discovery for January 17, 2022. (DE 244 at 1–2.) The January 17, 2022 deadline for the close of discovery was jointly proposed by all Parties in their Joint Motion to Amend the Scheduling Order. (DE 232; DE 232-1 at 3.) On December 12, 2021, one of the instant Motions to Dismiss for Lack of Standing was filed by Defendants Vitamins Because and CT Health. (DE 267.)

Since the Third Amended Complaint was filed, vigorous motions practice has ensued and the number of parties in this matter has narrowed. On November 11, 2021, after more than two (2) years of litigation, the then named-Plaintiff Ginsberg filed a Joint Stipulation for Dismissal with Prejudice with Defendants Vitamins Because, CT Health, and Gmax Central LLC of all claims asserted by Plaintiff Ginsberg in this matter.[4] (DE 255.) Shortly thereafter, on December 16, 2021, Plaintiff Eric Fishon filed a Joint Stipulation of Dismissal with Defendants Inspire Now PTY LTD; Jolly Dollar Supply Company, LLC; Healthy Way Rx LLC; and Khakiware, Inc. (DE 271 at 1.) On February 10, 2022, Defendant Jolly Dollar Supply Company, LLC dismissed all crossclaims in this matter. (DE 307 at 1.) On July 7, 2022, Plaintiff Wilson dismissed with prejudice his claims

---

produced." (DE 318 at 4–5.) Plaintiffs filed the Motion for Sanctions and to Strike on February 7, 2022, and deposed Dr. Neil Ross ("**Dr. Ross**") on January 17, 2022—the day discovery in this matter closed. (DE 318; DE 289-6 at 2; DE 244 at 1–2.) The discovery deadline was jointly proposed by all Parties in their Joint Motion to Amend the Scheduling Order. (DE 232; DE 232-1 at 3.) Dr. Ross was listed as "key operating personnel" on a 2018 report, which Plaintiffs cite to in the operative complaint filed on October 23, 2020. (DE 176-9 at 4–5; DE 176 at 49.) Nevertheless, Plaintiff deposed Dr. Ross on the final day of discovery and then filed a motion seeking sanctions based on that deposition after the discovery deadline passed.

[4] In its Motion for Sanctions, Defendant aSquared points out that the Joint Stipulation (DE 255) did not elaborate on the timing or rationale behind Plaintiff Ginsberg's dismissal of her claims. (Compare DE 306 at 8, with DE 362 at 2.)

against Gmax Central LLC, after which no claims remain as to Gmax Central LLC. (DE 377.)

To date, the Plaintiffs' fourth bite at the apple stands: the Third Amended Complaint has been the operative complaint since it was filed on October 23, 2020, almost two (2) years ago. But only Plaintiffs Malgeri, Wolf, Wilson, Hood, McKeown, and Fishon remain, and there are no pending claims as to Gmax Central LLC. (DE 377; DE 378.) Plaintiffs Wolf, Hood, and McKeown assert claims against Defendant aSquared. (DE 294 at 2.) All remaining Plaintiffs assert claims against Defendants Vitamins Because and CT Health. (*See e.g.*, DE 176 at 67–70 (alleging a Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**") claim against Defendants Vitamins Because and CT Health).) The Motions to Dismiss at issue were filed on December 13, 2021 (before the close of discovery) and February 8, 2022 (after the close of discovery) both approximately two-and-a-half years after the first Complaint was filed. (*Compare* DE 267 and DE 294, *with* DE 1.) The Motion to Dismiss filed by Defendants Vitamins Because and CT Health asserts a factual challenge under Federal Rule of Civil Procedure 12(b)(1) ("**Rule 12(b)(1)**") to Plaintiffs' Article III standing. (DE 267 at 1 n.1.) The Motion to Dismiss filed by Defendant aSquared asserts a challenge to the Plaintiffs' Article III standing pursuant to Federal Rule of Civil Procedure 56 ("**Rule 56**").

The procedural history in this case frames the discussion of standing and demonstrates that the Parties have robustly litigated this matter. The issue of standing does not come before the Court after a few weeks or even a few months but after years of litigation, argued in motions filed immediately before and after the close of discovery in this case. Accordingly, the Court is presented with a well-developed factual record.

### B. **Factual background.**

Because this Order resolves the Motion to Dismiss filed by Defendants Vitamins Because and CT Health—which presents a factual challenge to Plaintiffs' Article III Standing—the Court may consider matters beyond the pleadings and "is not required to accept as true [Plaintiffs'] unsubstantiated allegations . . ." *Morrison v. Amway Corp.*, 323 F.3d 920, 924–25 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quotation omitted)); *Deluna v. Am. Journey (PET), LLC*, 2021 WL 5149790, at *3 (S.D. Fla. Nov. 1, 2021). Defendant aSquared's Motion to Dismiss asserts a challenge pursuant to Rule 56. Nevertheless, the Court relies largely on the facts as asserted by Plaintiffs in the Third Amended Complaint, their Responses, and their own filings as non-movants. And even when accepting the facts as alleged by Plaintiffs, as discussed below, the record does not establish that Plaintiffs have standing to pursue their claims.

The Third Amended Complaint, filed on October 23, 2020, more than two (2) years and three (3) months after the first Complaint (DE 1), asserts thirteen (13) causes of action. (*Compare* DE 176, *with* DE 1; DE 176 at 67–102.) The causes of action range from violations of state consumer protection acts[5] to breach of implied and express warranties, violation of the federal Magnusson-Moss Warranty Act ("***MMWA***"), claims for

---

[5] Plaintiffs allege violation of the FDUTPA, Fla. Stat. §§ 501.201, *et seq*.; Plaintiff Malgeri alleges violation of Nevada's Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0930–.0999, 41.600; Plaintiff Wolf alleges violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann §§ 44-1521–1534; Plaintiff Wilson alleges violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California's Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; Plaintiff Hood alleges violation of New York's Deceptive Trade Practices and False Advertising Acts, Gen. Bus. L. §§ 349, 350; and Plaintiff McKeown alleges violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et seq*. (DE 176 at 67–81.)

misrepresentation, and injunctive relief. (DE 176 at 67–102.) In addition to the named Plaintiffs, the Third Amended Complaint also alleges a class action[6] on behalf of a nationwide putative class, and various state-level subclasses—a New York subclass, a Florida subclass, a Nevada subclass, an Arizona subclass, and a California subclass—as well as third-party private label brand subclasses—an aSquared subclass, a BoostCeuticals subclass, a Healthy Way subclass, and a Jolly Dollar subclass, etc. (*Id.* at 53–67.) The Court first summarizes the Party-specific factual background, before reviewing the facts relevant to the subject SAM-e product and its manufacturer, and then Plaintiffs' substantive allegations.

     **i.   The Parties.**

The operative complaint is a putative class action on behalf of Plaintiffs and others who were allegedly injured due to the purportedly deceptive labeling by Defendants Vitamins Because and CT Health of a SAM-e dietary supplement. This is the same basic factual premise asserted by the first Complaint. (*Compare* DE 176 at 2, with DE 1 at 1–2.) Defendants Vitamins Because and/or CT Health manufacture and provide SAM-e dietary supplements for sale directly to consumers via a Florida retail store and online, as well as through third-party retail sellers such as Amazon.com. (DE 176 at 2.) Defendants Vitamins Because and/or CT Health also manufacture and label vitamins and supplements for other retailers under private label brand retail names. (*Id.* at 10.) All Plaintiffs purchased the subject SAM-e supplements on Amazon. (*Id.* at 2–9.) Plaintiff Malgeri bought the product on Amazon in 2017 under the private label brand retail name "We Like Vitamins"; Plaintiff Wolf purchased the product on Amazon in 2017 under the

---

[6] Plaintiffs filed a Motion to Certify Class (DE 296), which for the reasons stated in this Order, is denied as moot.

private label brand retail name "aSquared"; throughout 2018, Plaintiff Wilson bought products twice on Amazon under the private label brand retail name "We Like Vitamins" and a third time on Amazon under the private label brand retail name "NusaPure"; Plaintiff Hood purchased the product four times in 2018 and once in 2019 on Amazon under the private label brand retail name "aSquared"; Plaintiff Fishon bought the product twice in 2018 and twice again in 2019 on Amazon under the separate private label brand retail names "BoostCeuticals," "We Like Vitamins," "Healthy Way Rx," and "Mental Refreshment"; and Plaintiff McKeown purchased the product in 2017 on Amazon under the private label brand retail name "aSquared." (*Id.*)

Defendant Vitamins Because is a Homosassa, Florida-based vitamins and supplements manufacturer and seller. (*Id.* at 10.) In addition to selling vitamins directly to consumers, Vitamins Because also manufactures vitamins and supplements for other retailers and "designs, prints, and places custom logos and labels (including all nutritional facts)" so that products can be sold under separate private label brand retail names on platforms such as Amazon.com. (*Id.*) Defendant CT Health is also a Homosassa, Florida-based vitamins and supplements manufacturer and seller, and works in conjunction with Vitamins Because (*Id.*) Gmax Central LLC[7] is a Tallahassee, Florida-based private label company which sells vitamins and supplements manufactured and labeled by Defendants Vitamins Because and/or CT Health under the "NusaPure" brand name. (*Id.* at 11.) Similarly, Defendant aSquared is a Miami-based private label company which sells vitamins and supplements, including the subject SAM-e product manufactured and

---

[7] On July 7, 2022, Plaintiff Wilson dismissed with prejudice his claims against Gmax Central LLC. (DE 377.) Because Plaintiff Wilson was the only Plaintiff who purchased a product under the "NusaPure" label, no claims remain as to Gmax Central LLC. (*Id.*; DE 378.) Accordingly, Gmax Central LLC is terminated as a party to this matter.

labeled by Defendants Vitamins Because and/or CT Health. (*Id*.) The remaining Defendants all similarly sold vitamins and supplements including the subject SAM-e product manufactured and labeled by Defendants Vitamins Because and/or CT Health: Defendant Inspire Now sold and/or sells under the "BoostCeuticals" brand, Defendants Healthy Way Rx LLC and Khakiware Inc sold and/or sells under the "Healthy Way Rx" and "NasaBe' Ahava" brands, and Defendant Jolly Dollar sold and/or sells under the "Mental Refreshment" brand. (*Id*. at 11–12.)

### ii.    The product and the manufacturer.

As set forth by Plaintiffs, SAM-e is "an amino acid derivative normally synthesized in the body that may become depleted with sickness or age." (*Id*. at 13.) SAM-e is "required for the synthesis of norepinephrine, dopamine, and serotonin, all important brain and body functions . . . [and] also facilitates . . . the body's antioxidant defense . . . and helps maintain . . . cognitive function." (*Id*. at 13–14.) Taking a SAM-e supplement along with other vitamins and supplements may alleviate a SAM-e deficiency. (*Id*. at 13.) SAM-e supplements sold in the U.S. are typically manufactured in a coated-tablet form and contain the active ingredient of SAM-e bound in a stabilized form known as s-adenosyl-methionine tosylate disulfate, along with other non-active ingredients. (*Id*. at 15.) Plaintiffs assert that the coating is necessary to maintain the SAM-e, slow SAM-e decomposition, and protect the gastrointestinal tract during digestion. (*Id*.)

Investigator Aaron J. Fox from the U.S. Food and Drug Administration ("***FDA***") inspected Defendant CT Health's manufacturing facilities between January 19 and 30, 2018 following customer complaints regarding supplements other than the subject SAM-e products. (DE 176-9 at 2, 7–8 (describing a complaint made about a Vitamin C –

Rosehip product and a complaint and follow-up testing of Berberine, Magnesium Potassium Aspartate with Bromelain, Omega-3 Fish Oil, and Magnesium Potassium Aspartate with Bromelain and Omega-3 Fish Oil supplements).) For the report, Investigator Fox observed the mixing of one lot of CoQ-10 supplements, and the encapsulating of one lot of DHEA supplements. (*See id.* at 3.)

On March 9, 2018, Investigator Fox issued an "Establishment Inspection Report" (the "***2018 Inspection Report***")[8] (DE 176-9.) The 2018 Inspection Report made eight (8) general Inspectional Observations ranging from findings that there were no established product specifics for any finished dietary supplements to the inconvenience of hand-washing facilities. (*Id.* at 2–3.) Investigator Fox also noted that "no samples were collected. No refusals were encountered, and firm management was cooperative." The 2018 Inspection Report states that, following earlier sampling, Defendant CT Health corrected misbranded products, and that there were no complaints other than the initiating complaints. (*Id.* at 3, 8.) Other than the 2018 Inspection Report, which was based on complaints about non-SAM-e products, there is no additional FDA report or recall notice in the record, and there is no record evidence of a recall of SAM-e or components used to manufacture SAM-e supplements prior to or following the 2018 Inspection Report.

### iii. The substantive allegations.

The SAM-e product at the center of this litigation is the SAM-e supplement manufactured by Defendants Vitamins Because and/or CT Health. (*Id.* at 15.) As asserted by Plaintiff, the SAM-e supplement manufactured by Defendants Vitamins Because

---

[8] SAM-e was neither the impetus for nor the specific subject supplement of the 2018 Inspection Report. (DE 176-9 at 3, 8.) Nevertheless, Plaintiffs argue that the 2018 Inspection Report indicates that all supplements manufactured and/or sold by Defendants were defective.

and/or CT Health is "[u]nlike most other SAM-e supplements sold in the U.S. consumer market," because it is made in capsule form with a combination of s-adenosyl-methionine tosylate disulfate, gelatin, and rice powder, and does not have an outer coating. (*Id*. at 15–16.) The subject product labels—either a Vitamins Because or other private label brand retail name label—state that the product bottles contain a specific amount of SAM-e per serving (such as 1500 mg per serving, 1000 mg, 500 mg, 400 mg, 375 mg, or 200 mg, depending on serving size). (*Id*. at 18, 20, 22.) Plaintiffs contend that the representations of milligrams ("***mg***") of SAM-e per serving "represent the amount of *active* SAMe contained therein . . . as would be relevant and useful to consumers . . . ." (*Id*. at 22 n.35.)

Plaintiffs' core allegation is that "[t]he SAMe capsules included in the subject product bottles" manufactured by Defendants Vitamins Because and/or CT Health and sold directly or via other third-party private label companies "have not and do not contain the stated amounts of milligrams of SAMe per serving and per capsule." (*Id*. at 19, 22.) Plaintiffs assert that the subject SAM-e "product capsules contain only a small fraction of the represented amount of active SAMe milligrams per serving . . ." (*Id*. at 22.) Because the subject SAM-e manufactured and produced by Defendants Vitamins Because and/or CT Health and sold by the same or by the other third-party private label companies did not allegedly contain the as represented amount of active SAM-e, Plaintiffs assert Defendants engaged in deceptive practices, and knew or should have known the subject

SAM-e products were defective. (*Id.* at 41–42.) From this alleged failure flows the claims for misrepresentation, breach of warranty, and violation of state consumer protection acts.

Plaintiffs allege that they "and their putative classes have been economically injured as a result of" Defendants' "deceptive acts, practices and false labeling." (*Id.* at 44.) Plaintiffs assert that the alleged "deceptive labels . . . caused them to decide to purchase the subject products over other available accurately labeled and non-defective SAM-e supplements on the market." (*Id.*) Because of the purportedly deceptive labels, Plaintiffs allege they did not receive the value they expected for their purchase, and in fact, the subject SAM-e supplements presented "no value to consumers." (*Id.* at 46.) Plaintiffs seek actual damages for themselves and the putative consumer class,[9] punitive damages, certain subclass damages under the causes of action for alleged state consumer protection act violations, and attorneys' fees. (*Id.* at 48–53.)

## II.   LEGAL STANDARD

Defendants Vitamins Because and CT Health move to dismiss the Third Amended Complaint pursuant to Rule 12(b)(1) as a factual challenge to Plaintiffs' Article III standing. Accordingly, the legal standards for Rule 12(b)(1) and Article III standing are summarized below.

### A.  Rule 12(b)(1).

Under Federal Rule of Civil Procedure 12(b)(1), a defendant "may attack standing, and hence subject matter jurisdiction . . . in two ways—facially or factually." *Swipe for Life, LLC v. XM Labs, LCC* [sic], 2012 WL 1289726, at *2 (S.D. Fla. Apr. 16, 2012) (citation

---

[9] The latest date a named Plaintiff purchased a subject SAM-e product was in 2019. Except for Plaintiff Fishon, who was added as a party in the Second Amended Complaint, (DE 98 at 1), the named Plaintiffs have remained the same since the first Complaint was filed more than three (3) years ago. (*Compare* DE 1, *with* DE 176.)

omitted). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Moreover, a 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Id.*; *Swipe for Life, LLC*, 2012 WL 1289726 at *2 (quoting *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002)); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982). "In a factual attack, the presumption of truthfulness afforded to a plaintiff under Rule 12(b)(6) does not attach." *Yachera v. Westminster Pharms., LLC*, 477 F. Supp. 3d 1251, 1262 (M.D. Fla. 2020) (citing *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (citing *Lawrence*, 919 F.2d at 1529)).

Defendants Vitamins Because and CT Health present a factual challenge to Plaintiffs' standing, and therefore the Court may consider information in the record outside the pleadings. (DE 267 at 1 n.1); *see Yachera*, 477 F. Supp. 3d at 1262 ("Because the Court's authority to hear the case is at issue in a Rule 12(b)(1) motion, the Court is free to weigh evidence outside the complaint.") (citation omitted).

### B. <u>Article III standing.</u>

Whether a party has Article III standing is a threshold jurisdictional issue that courts must address before reaching the merits of a case. *Kawa Orthodontics, LLP v. Sec'y,*

*U.S. Dep't Treas.*, 773 F.3d 243, 245 (11th Cir. 2014) (citing *Vt. Agency Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); and then citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id*.

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs must establish these three elements to meet the constitutional requirements of standing: (1) the plaintiff must have suffered an injury in fact, (2) the injury must be fairly traceable to the challenged conduct of the defendant, and (3) the injury must be likely to be redressed by a favorable decision. *Id.* at 560–61 (citations, quotations omitted). The first of the three elements of standing, "injury in fact" must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations, quotations omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339. A "concrete" injury must actually exist, although "intangible injuries can nevertheless be concrete." *Id.* at 340.

At issue before the Court is the first prong of the standing analysis: "injury in fact." *See Lujan*, 504 U.S. at 560. In the Eleventh Circuit, economic injuries are "the epitome of 'concrete'" injuries. *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019). "A person experiences an economic injury when, as a result of a deceptive act or an unfair practice, [they] are deprived of the benefit of [their] bargain." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019).

III.   **DISCUSSION**

At this stage in the litigation, the factual record is well developed. However, more than three (3) years of litigation have not resulted in Plaintiffs being able to clear the threshold jurisdictional bar of Article III standing. Even when viewed in the light most favorable to Plaintiffs, the record does not demonstrate that the named Plaintiffs "have suffered an injury in fact." *See Lujan*, 504 U.S. at 560–61. The Court does not reach the merits of the case, but only considers whether Plaintiffs have established the first of the three elements required for constitutional standing.

First, the Court turns to case law in this Circuit to determine whether "injur[ies] in fact" have been established. Two cases are particularly instructive and discussed in turn: *Doss v. General Mills, Inc.*, 816 F. App'x 312 (11th Cir. 2020), and *Yachera v. Westminster Pharmaceuticals, LLC*, 477 F. Supp. 3d 1251 (M.D. Fla. 2020). Next, the Court reviews Plaintiffs' own deposition testimonies, which reveal that not a single named Plaintiff either prior to or during the pendency of this litigation tested the SAM-e product they purchased to determine whether it failed to meet the label specifications. Finally, the Court analyzes the alternate theory of injury proffered by Plaintiffs themselves and Plaintiffs' expert Dr. Douglas Kalman ("***Dr. Kalman***")—that *all* SAM-e manufactured and/or sold by Defendants was defective.

A.   <u>**Plaintiffs can establish neither a "benefit of the bargain" economic injury, nor any other cognizable injury in this Circuit.**</u>

Plaintiffs' theory of injury is that, because of the deception by Defendant manufacturers and/or retailers, "Plaintiffs and putative class members did not receive the benefit of their bargain in their purchase of the subject product." (DE 176 at 45.) "Benefit of the bargain" economic injuries are recognized in the Eleventh Circuit as an injury in

fact. *See Debernardis*, 942 F.3d at 1084. But even though Plaintiffs allege a cognizable economic injury, at this stage in the proceedings—after three (3) years of litigation, a fourth complaint, the close of an extended discovery period, and the filing of dispositive motions—Plaintiffs cannot establish an injury in fact. Not a single named Plaintiff can demonstrate that the specific SAM-e product they purchased was deficient. Moreover, Plaintiffs' own expert has testified that some of the tested SAM-e products met the label requirements; testing performed by Plaintiffs actually revealed that some of the subject SAM-e products did meet the label specifications. As discussed below, the Court is guided by *Doss v. General Mills, Inc.*, which clearly holds that a named plaintiff must establish they purchased a defective product in order to meet the requirements for standing, and *Yachera v. Westminster*, which addresses how a plaintiff may establish injury in fact when *all* subject products are defective.

        i.    **_Doss v. General Mills, Inc._ holds that a plaintiff who cannot establish that they purchased a defective product does not have Article III standing.**

First, the Court turns to the Eleventh Circuit's holding in *Doss v. General Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020), that a plaintiff who does not allege she purchased a defective product cannot establish that a product is "worthless" under the "benefit of the bargain" theory. Because this is a factual challenge to Plaintiffs' standing, and the Court has the benefit of a fully developed record, the Court may consider aspects of the record beyond what Plaintiffs allege. Here, not only are the Plaintiffs unable to establish that the subject SAM-e products they purchased were defective, but it is also entirely possible—

based on the deposition testimony of Dr. Kalman and the laboratory testing conducted by Plaintiffs—that Plaintiffs purchased SAM-e products consonant with the label statements.

In *Doss*, the plaintiff alleged that she and a putative class suffered an economic injury because the Cheerios she purchased allegedly contained glyphosate. *Id.* at 312. The plaintiff brought claims for herself and a putative class, but failed to allege "that she purchased any boxes of Cheerios that contained <u>any</u> glyphosate . . . ." *Id.* at 314 (emphasis original). Thus, the Eleventh Circuit held that the plaintiff "alleged merely a conjectural or hypothetical injury" and affirmed the district court's grant of the defendant's motion to dismiss. *Id.* (citing *Spokeo*, 578 U.S. at 339 (quotations omitted)).

As in *Doss*, the Plaintiffs here do not allege that they were physically harmed by the subject SAM-e products. (*Compare* (DE 277 at 19), *with Doss v. General Mills, Inc.*, 2019 WL 7946028 at *2 (S.D. Fla. June 14, 2019)). And similarly, as in *Doss*, the Plaintiffs cannot show that the products they purchased were defective—just that *some* of the subject SAM-e products manufactured and/or sold by Defendants were defective. (DE 353-8 at 95 (Dr. Kalman Deposition at 94:1–25).) In *Doss*, the plaintiff alleged that "some Cheerios that have been tested" contained glyphosate. *Doss*, 2019 WL 7946028, at *2. However, neither the plaintiff nor her counsel in *Doss* "tested Cheerios for the presence of glyphosate" and therefore the court found that the plaintiff failed to allege an actual injury. *Doss v. General Mills, Inc.*, No. 18-cv-61924-RNS, DE 21 at 12; DE 36 at 3 (S.D. Fla. Oct. 12, 2018) (stating the plaintiff merely alleged that "some Cheerios that have been tested" contain glyphosate). In *Doss*, Plaintiff did not test any Cheerios—the Complaint merely cites to non-party organizations which tested Cheerios and other cereals for glyphosate. *Doss*, No. 18-cv-61924-RNS at DE 1 at 3–4.

Plaintiffs assert that, unlike *Doss*, they "**_prove_** that the defects and deficiencies present in the subject product line of SAMe capsules removed all consumer value from any of the products." (DE 277 at 17 (emphasis added).) Plaintiffs are incorrect and their argument is contradicted by their own expert's testimony and laboratory testing. (DE 353-8 at 95 (Dr. Kalman Deposition at 94:1–25).) As discussed below, Plaintiffs' expert Dr. Kalman testified that up to ten percent (10%) of the tested SAM-e products met the label requirements.[10]

In this matter, the Court is not left to consider standing based on Plaintiffs' allegations. Unlike *Doss*, the Court has the benefit of a fully developed record and

---

[10] Plaintiffs tested approximately thirty (30) samples in total of SAM-e, of which up to ten percent (10%) met the label specifications. (DE 353-8 at 94–96 (Dr. Kalman Deposition at 93:11–20; 94:1–25; 95:2).) It should be noted that Plaintiffs, in order to meet the damages requirement under CAFA, pled that there were "thousands of consumers" of SAM-e. (DE 176 at 62.) More recently, in Plaintiffs' motion for class certification (DE 296; DE 319), Plaintiff cite to Defendant aSquared's and GMAX's sales histories, showing "hundreds and thousands of sales of the subject product SAMe through Amazon.com." (DE 319 at 9, 9 n.32.) Thus, the possible pool of subject SAM-e products encompasses "thousands of consumers." (DE 353-8 at 94–96 (Dr. Kalman Deposition at 93:11–20; 94:1–25; 95:2).) Defendant aSquared asserts the possible sample pool of SAM-e products sold during the class period is approximately 86,000, of which around 8,600 products would have met the label claim based on Dr. Kalman's testimony. (DE 294 at 9.) aSquared argues that "statistical possibility is insufficient to show individual standing because it is not enough for Plaintiffs to allege that the SAM-e generally did not meet label specification or that it was likely that the SAM-e they purchased was at a high risk of not meeting label specifications—each Plaintiff must show that their SAM-e actually did not meet label specifications." (*Id.*) Further, aSquared correctly argues that expert opinion based on "speculation and conjecture" is impermissible. *See Beauregard v. Continental Tire N. Am., Inc.*, 435 F. App'x 877, 880 (11th Cir. 2011).

Defendant aSquared also argues that Dr. Kalman's methodology is flawed and based on some SAM-e samples that were not manufactured by Vitamins Because. (*Id.* at 11.) Defendant aSquared contends that the proportion of label-compliant SAM-e is higher than ten percent (10%) and is actually approximately twenty-nine percent (29%). (*Id.* at 12 ("Kalman's newfound conclusion willingly disregards that approximately 29% of the SAM-e test results that Kalman reviewed demonstrated that the results tested in accordance with label specifications.").)

Plaintiffs' own deposition testimony. And as Plaintiffs' themselves have stated, not a single Plaintiff tested the subject SAM-e product they purchased. Thus, the Plaintiffs' alleged economic injury is even more attenuated than the "conjectural or hypothetical injury" in *Doss*. Accordingly, Plaintiffs cannot establish standing.

### ii. *Yachera v. Westminster* provides an example of a successful benefit of the bargain injury claim, and how this case falls short.

The decision in *Yachera v. Westminster*, 477 F. Supp. 3d 1251 (M.D. Fla. 2020), is instructive because the contrast of that factual record to this case is compelling. In *Yachera*, the named plaintiffs were prescribed specific dosages of thyroid tablets; they then purchased defective thyroid tablets produced by the defendant. *Id*. at 1259–61. Following an FDA inspection and subsequent import alert regarding its China-based supplier of active pharmaceutical ingredients ("*API*"), the defendant pharmaceutical company voluntarily recalled its thyroid tablet. *Id*. The inspection revealed that the supplier failed to: conduct residual solvent testing of API, adequately validate written cleaning and maintenance procedures, and exercise sufficient control over computerized data systems. *Id.* at 1260. One week after the defendant manufacturer recalled the thyroid tablets, "the FDA announced that laboratory testing" confirmed that the supplier's thyroid API contained "inconsistent levels of the active ingredients and should not be used to manufacture or compound drugs for patient use." *Id*. (quotations, citations omitted). *Id.* The plaintiffs in *Yachera* purchased thyroid tablets produced by the defendant manufacturer at CVS and learned about the recall upon receiving a letter from CVS. *Id*.

On this record, there is no such finding by the FDA indicating a similar product-wide defect of the supplements in question. Following the 2018 Inspection Report—instigated by specific complaints about products other than SAM-e—the FDA did not

issue an alert, and Defendants did not institute a voluntary recall. Moreover, the author of the 2018 Inspection Report did not base his report on complaints related to SAM-e, and no recall or even alert regarding SAM-e produced and/or sold by Defendants was issued.

Notably, in *Yachera*, the thyroid tablets at issue were made with API which the FDA announced had "inconsistent levels of the active ingredients" and should not be used "to manufacture or compound drugs . . . ." *Id*. Accordingly, **all** of the subject thyroid tablets were recalled as defective because they did not contain the amount of API listed on the label. *Id*. at 1263. Consequently, in *Yachera*, the court denied the defendant manufacturer's motion to dismiss for lack of standing, because "they suffered monetary harm when they purchased thyroid tablets that did not contain the amount of API listed on the label." *Id*. at 1264 (citing *Reynolds v. Wal-Mart Stores, Inc.*, 2015 WL 1879615, at *2 (N.D. Fla. Apr. 23, 2015)). The factual record in this matter stands in contrast to that in *Yachera*: not only is there no FDA alert or recall of the subject SAM-e products, but Plaintiffs did not test the products they purchased to establish an injury.

Similarly, in *Deluna v. American Journey (PET), LLC*, 2021 WL 5149790, at *2 (S.D. Fla. Nov. 1, 2021), the court granted a motion to dismiss for lack of Article III standing after a plaintiff failed to show that any bag of dog food he purchased did not meet the label claim regarding wheat and protein content. *Id*. In granting the defendants' motion to dismiss, the court in *Deluna* found that the plaintiff failed to establish an injury in fact because he did not allege any details of an independent analysis of the subject dog food, and likewise failed to allege that he performed an independent analysis on any of the bags that he purchased. *Id*. The record before the Court is significantly more developed than that in *Deluna*. Not only do Plaintiffs fail to allege that they tested any of

the subject SAM-e purchased, all of the Plaintiffs testified that they in fact did not test any of subject SAM-e products that they purchased. Although Plaintiffs here sufficiently allege details of an independent analysis of subject SAM-e—unlike in *Deluna*—that analysis contradicts Plaintiffs' assertions and indicates that at least some of the subject SAM-e product met the label specifications. Thus, as in *Deluna*, Plaintiffs here fail to establish that the subject product they purchased was defective.

The Court is also guided by the Eleventh Circuit's decision in *Debernardis v. IQ Formulation, LLC*, 942 F.3d 1076 (11th Cir. 2019), a similar case involving defective dietary supplements. As in *Yachera*, the plaintiffs in *Debernardis* "plausibly alleged that the supplements the plaintiffs purchased were adulterated." *Id.* at 1085. In *Debernardis*, the plaintiffs purchased a supplement which contained an ingredient that qualified as a "new dietary ingredient," and therefore, the supplements "were presumed to be adulterated" under statutory law. *Id.* (citing 21 U.S.C. §§ 342(f), 350b). But Plaintiffs here have not alleged that the subject SAM-e supplements contained an ingredient that under statutory law is defective or presumed to be adulterated. In fact, Plaintiffs' own expert acknowledges that at least some of the subject SAM-e supplements sold and manufactured by Defendants met the label claim.

Although Plaintiffs cite *Debernardis* in support of their standing argument, Plaintiffs misapprehend the case's applicability. While Plaintiffs are not required to demonstrate they were physically harmed by a product, they are required to demonstrate a "concrete" injury. (*See* DE 277 at 19); *Debernardis*, 942 F.3d at 1086 (citations omitted). In *Debernardis*, all the supplements were adulterated because of an unequivocal statutory determination to that effect. *Debernardis*, 942 at 1085; *see also In re Zantac (Ranitidine)*

*Products Liability Litig.*, 546 F. Supp. 3d 1152, 1187 (S.D. Fla. 2021) (holding that plaintiffs in a products liability class action plausibly alleged an injury in fact because they adequately pled that they purchased drugs containing an ingredient that was a "known human carcinogen since the 1970s"). In this case, Plaintiffs can make no such allegation or showing. Moreover, at this late stage in the proceedings, the well-developed record shows that there is no such class-wide defect because some of the products manufactured and/or sold by the Defendants contained the as-advertised amount of active SAM-e. Plaintiffs cite to non-binding cases for the proposition that the allegation alone that all SAM-e products are defective is sufficient to establish injury, despite contradictory record evidence. (DE 315 at 15.) But those cases are inapposite. *See Carder v. Graco Children's Prods., Inc.*, 2021 WL 3909953, at *3 (Aug. 31, 2021) (denying a motion to dismiss where the plaintiffs alleged that the defendant car seat manufacturer sold booster seats advertised as "side-impact tested" when there are no federal safety standards for "side-impact testing"); *Von Slomski v. Hain Celestial Grp., Inc.*, 2014 WL 12771116, at *5 (C.D. Cal. June 10, 2014) (denying a motion to dismiss in the absence of record evidence indicating some subject tea products were not defective); *compare Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020) (presuming the allegation that all of a subject pet food failed to meet the label specification was true in a facial challenge to standing, not a factual challenge), *with Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613-WHO, DE 35 at 22 (N.D. Cal. Oct. 16, 2019) ("When a defendant makes a facial challenge, as Defendant does in this Motion, all material allegations in the complaint are assumed true, and the court must

determine whether lack of federal jurisdiction appears from the face of the Complaint itself.").

Following *Doss*, *Yachera*, *Deluna*, and *Debernardis*, Plaintiffs could adequately allege an injury in fact if they establish that the SAM-e products they purchased were defective, either by testing the actual products they purchased or by demonstrating that all the subject SAM-e supplements were defective. *Yachera*, 477 F. Supp. 3d at 1260; *Deluna*, 2021 WL 5149790 at *2; *Debernardis*, 942 at 1085; *In re Zantac*, 546 F. Supp. 3d at 1187 (involving a subject product containing a "known human carcinogen"); *see Varner v. Dometic Corp.*, 2017 WL 5462186, at *4 (S.D. Fla. July 27, 2017) (requiring the plaintiffs to "support their allegations of an inherent defect that is manifest at the point of sale" in all subject refrigerators to establish an injury in fact as to their purchased refrigerators); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("In the context of defective products, it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.") (citing *In re Zurn Pex Plumbing Prods. Liab. Litig.,* 644 F.3d 604, 616 (8th Cir. 2011) (quotation omitted)) (emphasis original, internal quotations omitted). Here, after more than three (3) years of litigation—and as discussed in detail below—the record shows that no named Plaintiff tested the SAM-e product they purchased, and that an analysis of only thirty (30) samples[11] out of the purported thousands of SAM-e products manufactured and/or sold

---

[11] Plaintiff used different laboratories and consultants—including RdR Solutions Consulting, LLC; Nutrasource Eurofins Central Analytical Laboratories; Merieux NutriSciences, and Labs Mart—to test SAM-e products purchased from Amazon.com. (DE 323-3 at 2, 42, 58, 114.) RdR Solutions Consulting, LLC analyzed the test results of twelve (12) SAM-e product samples, Nutrasource Eurofins tested nine (9) samples, and Labs Mart appears to have tested nine (9) samples. (*Id.* at 3, 61–62, 112.) At least two

by Defendants revealed that some of the SAM-e products met the label specifications. The assertion that **some** defective products were sold does not support the proposition that **all** the subject products are defective and, accordingly, Plaintiffs are unable to establish injury in fact.

### B. Plaintiffs' deposition testimony reveals not a single named Plaintiff tested the purchased SAM-e product for a defect.

Defendants Vitamins Because, CT Health, and aSquared argue that none of the named Plaintiffs can establish injury in fact because "none of the SAMe purchased by any of the named Plaintiffs has ever been tested to determine whether it met the label statement for the amount of active ingredient." (DE 267 at 3; DE 294 at 2 (stating "the record shows that Plaintiffs suffered no demonstrable injury . . . because they cannot prove that the SAM-e they purchased did not meet label specifications.").) Indeed, Plaintiffs' deposition testimony confirms that no named Plaintiff can demonstrate their purchased SAM-e products were deficient.

Plaintiff Malgeri testified in a deposition dated December 22, 2021 that he never sent the SAM-e product he purchased to get tested:

> Q. [D]id you, Mr. Malgeri, send SAM-e product out that resulted in those test results?
> . . .
> A. No. . . I didn't provide the -- I didn't provide the specimen that was tested. . . The, the ones that I bought, I never provided to anyone, so whether or not they were tested . . . would be speculation on my part; but I didn't provide the pills that I bought for testing.

(DE 276-7 at 16 (Noah Malgeri Deposition at 55:14–22, 56:5–10).)

---

(2) of the products tested appear to have greater than the stated label claim of SAM-e. (*Id.* at 62.) In addition to the tests performed by Plaintiffs, Defendant Gmax also tested SAM-e products, including samples "where the products met their label claims" as acknowledged by Dr. Kalman. (DE 353-5 at 21.)

Plaintiff Wolf testified in a deposition dated November 17, 2021 that she threw out the subject SAM-e product she purchased, and never got it tested.

> Q. Have you ever had the SAM-e that's the subject of this lawsuit tested for its potency of efficacy?
> A. No.
> . . .
> Q. Did you ever have the SAM-e that you purchased that's the subject of this lawsuit analyzed by any third party?
> A. No.

(DE 267-1 at 3 (Kalyn Wolf Deposition at 23:20–25; 24:1–2; 24–25; 25:1–7).)

Plaintiff Wilson testified in a deposition dated November 22, 2021 that he never sent the SAM-e product he purchased to get tested, even after he stopped taking the supplement.

> Q. …You had the product but you never sent it out to be tested; is that right?
> A. I was not asked to do so.

(DE 267-3 at 31–34 (Bill Wilson Deposition at 30:24–25; 31:1–3; 32:9–12; 33:7–19, 25).)

Plaintiff Hood similarly testified in a deposition dated November 19, 2021 that she never sent or tested the SAM-e product she purchased—she, in fact, consumed all the product—and further testified that she had no way of knowing whether the SAM-e she purchased did or did not have the represented amount of active ingredient.

> Q. [Y]ou took all of this first bottle, so you couldn't have that product tested; is that right?
> A. That would be correct.
> . . .
> Q. Did you take all of the pills in the second bottle of SAM-e purchased from ASquared? [sic]
> A. Yes.
> . . .
> Q. How do you know the SAM-e that you purchased was under that threshold [stated on the label]?
> . . .
> A. How do I know? Because I don't know that the individual pill that I consumed . . . exceeded or fell below whatever threshold would be

acceptable. There's no way to tell. I opened the bottle and consumed the pills.
. . .
Q. So at this point from February 2018 through December of 2018 you've purchased four separate bottles of ASquared SAM-e and consumed all of the product; is that correct?
A. That sounds correct.
. . .
Q. Do you have any of the last [fifth] bottle present?
A. No. That would mean I took it all.

(DE 267-5 at 17–34 (Shannon Hood Deposition at 58:17–24; 59:21–23; 62:22–23; 63:4–7; 64:7–9; 65:7–9, 19–23; 67:3–4)).)

Plaintiff Fishon also testified at his deposition on November 9, 2021 that he never sent any of the SAM-e product he purchased for testing. Plaintiff Fishon further testified that he is not claiming a SAM-e product he purchased "had less SAM-e than what was on the label," which is actually the gravamen of this lawsuit.

Q. Did you ever test any of the SAM-e products that you purchased?
. . .
A. No, I didn't personally test and nor did I personally send any of my stuff to be tested.
. . .
Q. And are you claiming that that product that you purchased had less SAM-e than what was on the label?
A. I am not making that claim.
Q. And was that product tested?
A. No, it was not.

(DE 267-2 at 49, 78–81(Eric Fishon Deposition at 192:15–23; 307:21–25; 309:7–9; 311:11–13; 314:17–19; 316:22–25; 317:3–7)).)

Plaintiff McKeown[12] similarly testified at his deposition on November 23, 2021 that he never tested the subject SAM-e for potency, and that he consumed the entire bottle of product purchased.

---

[12] There is likewise no record evidence indicating that the former lead Plaintiff Ginsberg tested any of her subject SAM-e product.

Q. Did you have any of the product that you purchased tested for potency?
 . . .
A. No.

(DE 267-4 at 49, 15 (Robert McKeown Deposition at 52:14–17).)

By their own accounts, none of the named Plaintiffs—Plaintiff Malgeri, Plaintiff Wolf, Plaintiff Hood, Plaintiff Wilson, Plaintiff Fishon, or Plaintiff McKeown—tested any of the subject SAM-e product they purchased from Defendants. Accordingly, Plaintiffs are not able to allege that they suffered an injury in fact due to the testing of the actual product they purchased. *See Doss*, 816 F. App'x at 314 (affirming dismissal of a complaint because the plaintiff had not alleged that she purchased any subject product with the complained about defect, and therefore did not have standing); (*but see* DE 277 (Plaintiffs' Response to Defendants Vitamins Because's and CT Health's Motion to Dismiss (DE 267)). Although this alone is fatal to their standing arguments, the Court considers Plaintiffs' proffered rebuttal theory, that *all* SAM-e products manufactured and/or sold by the Defendants were defective.

### C. Plaintiffs' own expert Dr. Douglas Kalman testified that at least some of the SAM-e product tested for litigation met the label specifications.

In the absence of evidence indicating that even one of the named Plaintiffs tested the complained about SAM-e product, Plaintiffs assert in their Response that "*all* SAMe products sold by Defendant – including those purchased by Plaintiffs – were, in fact, defective and/or deficient as to their labeled SAMe content." (DE 277 at 4.) Plaintiffs base this argument on Dr. Kalman's initial Expert Report (DE 353-5) (the "***Initial Expert Report***") and the Expert Rebuttal Report (DE 353-6) (the "**Rebuttal Report**"), which was

filed following Defendants Vitamins Because's and CT Health's Motion to Dismiss.[13] In

his Initial Expert Report, Dr. Kalman relies, in part, on the 2018 Inspection Report and

testing of SAM-e products by three independent laboratories to opine that "the subject

SAM-e supplements produced by Defendant are deficient and of no value to the

consumer." (DE 353-5 at 9, 12, 19.) In the Rebuttal Report, Dr. Kalman asserts that

"analytical test findings" and "defendant's defective manufacturing processes . . . are clear

evidence of the defective and deficient nature of the subject SAMe supplement on a class-

wide basis, and a lack of consumer value for all consumer purchases of the product." (DE

353-6 at 9.)

However, Dr. Kalman's deposition testimony reveals that, in fact, not *all* SAM-e

products tested were label-deficient. Dr. Kalman acknowledged that approximately ten

(10) percent of samples tested "met or nearly met the label claim." (DE 353-8 at 95 (Dr.

Douglas Kalman Deposition at 94:14–16).)

> Q. It is your opinion that all of the SAM-e manufactured by Vitamins
> Because failed to meet the label requirement as it relates to the active
> amount of SAM-e; correct?
> A. **No, incorrect**. I did – I did see and read perhaps two or three certificates
> of analysis by third-party analytical labs that did find the label claim was met
> or nearly met. So that would be 2 or 3 tests out of 30-plus tests found a label
> claim or near label claim was made.
> . . .
> Q. Okay. So you'd agree that some of the SAM-e that you're aware of met
> the label requirements for active ingredient; correct?

---

[13] Plaintiffs also argue in their Response to Defendant aSquared's Motion and in Plaintiffs'
own Motion for Partial Summary Judgment that record evidence of "uniform underfilling
and noncompliant manufacturing process[es]" supports the argument that "all" SAM-e
products manufactured and/or sold by Defendants were defective. (DE 323 at 9, 13–22;
DE 353 at 2 n.4.) For example, Plaintiffs allege that "SAMe batch records," Party emails,
and the deposition testimonies of Cynthia Valenca and Thomas Chapman indicate that
all the subject SAM-e supplements were defective and failed to meet the label claim. (DE
323 at 21.) However, such allegations are, again, refuted by Plaintiffs' own laboratory
testing and the expert testimony of Dr. Kalman which show that not **all** of the subject
SAM-e products were defective.

A. **I would agree that up to about 10 percent of what I am aware of regarding the SAM-e products met or nearly met label claim**.

Q. So it's true that some of Vitamins Because's SAM-e product met label claims; correct?

. . .

A. **It is true**. And if my memory serves me correctly that a couple of products from 2020 did meet label claim. Again, still less than 10 percent or less of all of the products that were tested.

Q. But even in your expert opinion, not all; correct?

. . .

A. Correct.

(DE 353-8 at 94–96 (Dr. Kalman Deposition at 93:11–20; 94:1–25; 95:2) (emphasis added).)

Therefore, despite Plaintiffs' assertions and Dr. Kalman's statement that "*all* subject product SAMe supplements manufactured by Defendant were . . . deficient,*" (DE 353-6 at 5), Dr. Kalman's own deposition testimony reveals that, in fact, at least some of the subject SAM-e products tested by Plaintiffs met the label specifications: "up to about 10 percent" according to Dr. Kalman. Accordingly, the theory that *all* subject SAM-e products manufactured by Defendants were deficient and therefore, the products purchased by Plaintiffs must have been deficient as well, fails. Unlike *Yachera* or *Debernardis*, where *all* of the subject product was conclusively established as defective by an agency recall or faulty ingredient, there is no such factual predicate here. *Yachera*, 477 F. Supp. 3d at 1260; *Debernardis*, 942 at 1085; *In re Zantac*, 546 F. Supp. 3d at 1187.

Finally, the Court does not review Dr. Kalman's expert opinions or testimony beyond that which has been recognized as the subject of his expertise. Dr. Kalman's testimony has already been limited in this regard. Judge Torres, in granting in part and denying in part various motions to strike Dr. Kalman's testimony filed by Defendants

Vitamins Because, CT Health, and aSquared, concluded that Dr. Kalman is not qualified to offer legal opinions. (DE 369 at 12.) Specifically, Judge Torres ruled that "any opinion that Vitamins Because violated FDA regulations is clearly a legal conclusion which Dr. Kalman is not qualified to provide . . . ."[14] (DE 369 at 12.)

Standing "requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo*, 578 U.S. at 334 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (emphasis added)). A concrete injury is one that is "real, and not abstract." *Spokeo*, 578 U.S. at 340 (internal quotations, citation omitted). An "injury in fact" is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical . . . ." *See Lujan*, 504 U.S. at 560 (citation omitted). Here, Dr. Kalman's deposition confirms that not all SAM-e products were deficient. Furthermore, as argued by aSquared, a mere "probability" of having purchased a deceptive product is "insufficient to establish injury." (DE 294 at 8–9); *see Coffelt v. Kroger Co.*, 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018) ("Here . . . Plaintiff cannot show that he purchased a contaminated product. There is no evidence before the Court that the specific package Plaintiff purchased had in fact been adulterated or contaminated. Plaintiff merely presents evidence that he purchased peas during the period of time in which products were subject to recall."); *In re Whole Foods Market Grp., Inc. Overcharging Litig.*, 397 F. Supp. 3d 406, 421 (S.D.N.Y. 2019) ("The problem comes

---

[14] Judge Torres also noted that "Dr. Kalman cannot simply pretend to undo his deposition testimony with the submission of an errata sheet that would insert material and contradictory changes to the existing transcript—a point that Defendant rightly points out in its reply . . . *See Eldridge v. Pet Supermarket, Inc.*, No. 18-22531-CIV, 2019 WL 3302348, at *2 (S.D. Fla. July 23, 2019) ("[D]istrict courts have interpreted the Eleventh Circuit's recent decisions as making clear that material changes, especially when contradictory to the deponent's original testimony, are not permissible absent a good reason.") (citations and internal marks omitted)." (DE 369 at 9 n.2.)

when a plaintiff, lacking any personalized evidence, proposes to use the statistical incidence of unlawful behavior on the part of a defendant as the sole basis on which to establish—and to seek to recovery for—an injury to himself."). The Third Amended Complaint alleges a class "made up of thousands of consumers." (DE 176 at 62.) Following Dr. Kalman's testimony that "up to about 10 percent" of the subject SAM-e products "met or nearly met" the label claim (DE 353-8 at 95 (Dr. Kalman Deposition at 94:1–25)), it is possible that a portion of the alleged class—which includes all named Plaintiffs—did not purchase defective products. And without a defective product, Plaintiffs fail to demonstrate an injury in fact sufficient to establish standing.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have failed to establish an injury in fact, and therefore do not have standing. This determination comes after more than three (3) years of litigation, the close of extended discovery, and the filing of dispositive motions. The Court is presented with a fully developed record, and although it does not consider the merits of Plaintiffs' claims, the Court concludes that Plaintiffs, nevertheless, do not have standing. Thus, the Court is without jurisdiction in this matter and Defendants Vitamins Because's and CT Health's Motion to Dismiss (DE 267) is granted, and Defendant aSquared's Motion to Dismiss (DE 294) is granted in part and denied in part.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants Vitamins Because's and CT Health's Motion to Dismiss for Lack of Article III Standing (DE 267) is **GRANTED**;

2. Defendant aSquared's Motion to Dismiss for Lack of Standing, Lack of Subject Matter Jurisdiction, and for Summary Judgment (DE 294) is **GRANTED IN PART AND DENIED IN PART AS MOOT**. The Motion (DE 294) is granted as to standing and denied as moot as to all other arguments;

3. Plaintiffs' Third Amended Complaint (DE 176) is **DISMISSED WITH PREJUDICE**;

4. Pursuant to the Stipulation of Dismissal (DE 377), Defendant Gmax Central LLC is **TERMINATED** as a party to this matter;

5. The Court will address Defendant aSquared's pending Motion for Sanctions (DE 306) in an order to follow. All other pending motions are **DENIED AS MOOT**;

6. All deadlines and hearings are **CANCELED**; and

7. The Clerk of Court is direct to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 30th day of September, 2022.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE