**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:19-cv-22702-KMW

CORI ANN GINSBERG
NOAH MALGERI
KALYN WOLF
BILL WILSON
SHANNON HOOD
ERIC FISHON
ROBERT MCKEOWN, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

    vs.

VITAMINS BECAUSE LLC
CT HEALTH SOLUTIONS LLC
GMAX CENTRAL LLC
ASQUARED BRANDS LLC
INSPIRE NOW PTY LTD d/b/a BoostCeuticals
HEALTHY WAY RX LLC
KHAKIWARE INC.
JOLLY DOLLAR SUPPLY COMPANY, LLC

                Defendants.

_____

**DEFENDANT ASQUARED BRANDS LLC'S MOTION**
**<u>FOR ATTORNEYS' FEES AND COSTS</u>**

Pursuant to Fla. Stat. § 501.2105, Defendant aSquared Brands LLC ("aSquared") moves

for an Order granting it an award of reasonable attorneys' fees and costs incurred in this action.

**PRELIMINARY STATEMENT**

Kalyn Wolf, Shannon Hood, and Robert McKeown (collectively "aSquared Plaintiffs")

filed this action in 2018 seeking to recover damages for purchasing the supplement SAM-e from

aSquared which they contend had had less active ingredient than what was listed on the label. The

class action complaint alleged, *inter alia*, violations of the Florida Deceptive and Unfair Trade

Practices Act, Fla. Stat. § 501.201, *et seq* ("FDUTPA").  On February 8, 2022, aSquared filed a Motion to Dismiss for Lack of Standing, Lack of Subject Matter Jurisdiction, and for Summary Judgment. (DE 294; DE 295). On September 30, 2022, this Court granted aSquared's Motion as to standing. (DE 383).

It is undisputed that Plaintiffs did not test the SAM-e they purchased to determine whether it met label specification. The evidence in the record, uncovered through discovery, unquestionably demonstrated that Plaintiffs could not show they suffered an injury resulting from their purchase of SAM-e. As such, Plaintiffs did not have standing to pursue their claims and the Third Amended Complaint was dismissed with prejudice. Given that it cannot be said, in good faith, that Plaintiffs possessed any evidence to substantiate their claims and aSquared was forced to litigate and defend against their allegations, the relevant factors make clear that aSquared is entitled to an award of its reasonable attorneys' fees and costs.

## I.      Standard of law

An award of attorneys' fees and costs pursuant to § 510.2105 lies within the discretion of the trial court which must treat prevailing defendants the same as it would prevailing plaintiffs for purposes of determining the award. *Human Soc. Of Broward Cty., Inc. v. Florida Human Soc.*, 951 So.2d 966, 971 (Fla 4th DCA 2007). Where a plaintiff brings a civil action involving a violation of FDUTPA, the prevailing party, after judgment and exhaustion of all appeals, if any, may receive its reasonable attorneys' fees and costs from the non-prevailing party. Fla. Stat. § 501.2105(1). Indeed, if the court holds that FDUTPA is inapplicable to the action, the prevailing party is still entitled to its attorneys' fees simply because the action was brought pursuant to FDUTPA. *Rustic Village, Inc. v. Friedman*, 417 So.2d 305, 305 (Fla. 3d DCA 1982).

A court must consider several factors in determining an award of attorneys' fees and costs

pursuant to FDUTPA. The list is non-exhaustive, as an award of fees or costs is solely within the discretion of the trial court. *Reilly v. Chipotle Mexican Grill, Inc.*, 2018 WL 1883086, at *2 (S.D. Fla. Jan. 26, 2018). The factors include, but are not limited to:

> (1) the scope and history of the litigation;
> (2) the ability of the opposing party to satisfy an award of fees;
> (3) whether an award of fees against the opposing party would deter other from acting in similar circumstances;
> (4) the merits of the respective positions – including the degree of the opposing party's culpability or bad faith;
> (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
> (6) whether the defense raised a defense mainly to frustrate or stall; and
> (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Humane Soc.*, 951 So.2d at 971-72.

## II.     aSquared is a prevailing party

Before awarding attorneys' fees, the Court must determine whether the moving party is the prevailing party in the case. *Reilly*, 2018 WL 1883086, at *3. As to aSquared's status as a prevailing party, the Eleventh Circuit has held that a defendant who prevails in a motion to dismiss based on a lack of standing is a "prevailing party" for the purposes of § 501.2105. *See M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113 (11th Cir. 1994); *Big Tomato v. Tasty Concepts, Inc.*, 972 F.Supp. 662 (S.D. Fla. 1997); *Reilly*, 2018 WL 1883086 at *3. Further, the Florida Supreme Court has held that the prevailing party is the party that "succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Moritz v. Hoyt Enters., Inc.*, 604 So.2d 807, 810 (Fla. 1992).

In *Reilly,* the Southern District of Florida granted Chipotle's motion for summary judgment in which it argued that the plaintiff did not have standing pursuant to Article III and FDUTPA given that she was not deceived about Chipotle's products, and she did not suffer any actual harm.

*See* 2018 WL 1883086, at \*3. In response to Chipotle's motion seeking attorneys' fees and costs pursuant to FDUTPA, the court engaged in an analysis to determine which party prevailed in the case. *Id.* at \*3. The court held that because Chipotle prevailed on both FDUTPA claims against it, it may be entitled to attorneys' fees contingent on an analysis of the *Humane Society* factors. *Id.* (citing *Big Tomato*, 972 F. Supp. at 664 n.1)

Here, Plaintiffs' Third Amended Complaint was dismissed with prejudice as aSquared's Motion to Dismiss for a lack of standing was granted. Given that this Court found that Plaintiffs lacked standing to pursue their claims and their FDUTPA causes of action were dismissed, aSquared is the prevailing party here and is entitled to all of its reasonable attorneys' fees and costs incurred in defending this action.

## III. The Court's denial of aSquared's Rule 11 motion for sanctions does not preclude it from recovering its fees under FDUTPA

On February 10, 2022, aSquared filed a motion pursuant to Fed. R. Civ. P. 11 for an Order awarding sanctions against Plaintiffs Noah Malgeri, Kalyn Wolf, Bill Wilson, Shannon Hood and Robert McKeown ("Rule 11 Plaintiffs") and their respective counsel. (Doc. 306). ASquared's motion argued that because the Rule 11 Plaintiffs and their counsel knew, or reasonably should have known, that they could not establish Article III standing and still proceeded with the lawsuit, they violated Fed. R. Civ. P. 11.

In denying aSquared's Rule 11 motion, the Court stated that "although the Court ultimately concluded that Plaintiffs failed to sufficiently establish an injury in fact so as to satisfy the requirements of Article III standing, the Plaintiffs' claims were not so 'objectively frivolous' and unmoored from the record as to warrant sanctions." (Doc. 384). However, the Court's holding does not preclude an award of fees pursuant to FDUTPA because the burden of proof under Rule 11 is significantly higher than the prevailing party standard pursuant to FDUTPA.

4

To succeed on a motion pursuant to Fed. R. Civ. P. 11, the movant must show that the claims made were objectively frivolous, taking account of the reasonableness under the circumstances, and that the person who signed the pleading should have been aware that the claims were frivolous. *See Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). The burden with regard to a claim for fees pursuant to FDUTPA is far less exacting. The only element that aSquared is required to demonstrate is that it is a prevailing party in the action. Given that a defendant who prevails in a motion to dismiss based on a lack of standing is a "prevailing party" for the purposes of § 501.2105, aSquared has fulfilled this requirement and is entitled to its attorneys' fees and costs pursuant to FDUTPA.

## IV.   Plaintiffs' claims are so inextricably intertwined as to entitle aSquared to an award of attorneys' fees for the hours expended on defending the entire action

FDUTPA allows for an award of the prevailing party's attorneys' fees for the hours expended on an entire civil action involving a FDUTPA claim. *Reilly,* supra, at *1 (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So.3d 362, 370 (Fla. 2013)). The language of the statute, specifically §§ 501.2105(2) and (3), provides that the trial judge shall award costs and fees for the hours actually spent "on the case," based on the prevailing party's sworn affidavit. Fla. Stat. §§ 501.2105(2), (3).

Further, the claims litigated in this lawsuit are inextricably intertwined. "[W]here the claims involve a 'common core' of facts and are based on 'related legal theories,' a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorneys' fees were sought." *Chodorow v. Moore*, 947 So.2d 577, 579 (Fla. 4th DCA 2007) (quoting *Anglia Jacs & Co. v. Dubin*, 830 So.2d 169, 172 (Fla. 4th DCA 2002)).

Accordingly, where an action contains "a deceptive trade practices count and one or more alternative theories of recovery, all based on the same transaction, no allocation of attorney's services need be made except to the extent counsel admits that a portion of the services was totally unrelated to the 501 claim[.]" *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So.2d 266, 272 (Fla. 5th DCA 1985); *see also Am. Registry, LLC v. Hanaw*, 2015 WL 5687693, at *6 (M.D. Fla. Sept. 25, 2015).

Here, Plaintiffs asserted a FDUTPA claim on behalf of a nationwide class. The factual predicate for Plaintiffs' FDUTPA claim is grounded on the same factual predicate for each of the other as each of the other twelve causes of action – the purchase of SAM-e that allegedly included less active ingredient than what was articulated on the label. (Doc. 176).

## V.    A balancing of the relevant factors weighs in favor of aSquared being rewarded its attorneys' fees

As detailed below, the relevant factors weigh strongly in favor of awarding attorneys' fees to aSquared. Specifically, the scope of the litigation, the lack of merit to Plaintiffs' position, and the basis for the claims asserted all support aSquared's request for attorneys' fees.

### a.    *The scope and history of litigation, the lack of merit to Plaintiffs' claims, and the basis to the claims asserted*

From its outset, the litigation of this dispute was marred with contention and unreasonable positions from Plaintiffs. For example, it took four iterations of the complaint to merely move past the pleadings stage of the litigation. (Doc. 176). One named Plaintiff, Cori Ann Ginsberg, the only named Plaintiff who was a Florida resident, was dismissed from the lawsuit after refusing to participate in any discovery. (Doc. 260).

Throughout the litigation, Plaintiffs' counsel displayed a willingness to pursue relief on their clients' behalf without their knowledge. Plaintiffs' testimony made clear that they were, in

large part, solicited to be class representatives, that their only basis for understanding they even have a claim is based on representations of their counsel, that they played no role in the prosecution of the case, and that they lack any understanding of what it means to be a class representative. To that end, class counsel has continued to make dispositive decisions, such as participating in mediation, making settlement demands, and even settling claims on behalf of certain Plaintiffs, presumably without their knowledge or consent.

This conduct is exemplified by the circumstances surrounding the settlement that three named Plaintiffs entered into with former Defendant We Like Vitamins, LLC ("WLV"). One of those Plaintiffs, Bill Wilson, testified he had no knowledge he settled his claim against WLV – a settlement in which counsel appears to have received a substantial recovery for legal fees. (Doc. 294-4, p. 76, ln 14-25; p. 77, ln. 1-4). WLV then had to file a motion to enforce the settlement agreement. (Doc. 38). Thereafter, Ginsberg, another Plaintiff who settled with WLV, was voluntarily dismissed as a plaintiff. (Doc. 260).

Moreover, Plaintiffs' counsel continues to prosecute this case on behalf of Plaintiff Eric Fishon ("Fishon"). Fishon alleged that he purchased SAM-e from a former Defendant BoostCeuticals on March 24, 2018, and submitted a PDF print out of an Amazon sale document to support his claim. (Doc. 176, ¶ 12). BoostCeuticals, however, had no record of a sale to Fishon on that date. Instead, it had a record of selling SAM-e to Fishon on October 29, 2019, 4 months after this lawsuit was commenced. Not coincidentally, the Amazon confirmation number for the November 2019 sale happened to match the confirmation number of the document Fishon submitted as proof he purchased SAM-e in March 2018. As there are no plausible way two different Amazon purchases made 18 months apart would have the same confirmation number, BoostCeuticals demanded clarification through Judge Torres' discovery procedures.

After refusing to produce documents in native form so Defendants could analyze the information included on the Amazon document submitted, Fishon finally produced his March 2018 order log from his Amazon account, which does not show any purchase being made on March 24, 2018. Fishon also produced an Amazon sale document for his purchase on October 19, 2019, which appears to have been scrubbed of an Amazon confirmation number. In fact, it appears to be the only Amazon document exchanged in discovery in this lawsuit that does not include an Amazon confirmation number. Simply put, the documentary evidence produced in discovery strongly suggests that Fishon altered Amazon documents to make it look like he purchased SAM-e that would allow him to pursue claims against BoostCeuticals.

Additionally, and perhaps most critically, it is undisputed that Plaintiffs did not test the SAM-e they purchased before commencing this action. This failure is despite the fact that certain Plaintiffs still possessed the SAM-e they purchased. (Doc. 294, p. 17, ln 11-25). Each Plaintiff in this lawsuit has alleged that they purchased SAM-e that was manufactured by Vitamins Because which contained less active ingredient than what was stated on the label. (Doc. 176). Plaintiffs have produced no evidence to demonstrate that the SAM-e they purchased contained less active ingredient than what was listed on the label. To the contrary, in discovery, the named Plaintiffs have all admitted that they did not have the specific product they purchased tested to determine whether the amount of active ingredient met the label statement. (Doc. 294-3 – 294-7). The failure to have the subject SAM-e tested is particularly shocking in light of the fact that more than one named Plaintiff testified that they still had the SAM-e they purchased in their possession.

Kalyn Wolf testified she did not have the SAM-e she purchased tested:

> Q: Have you ever had the SAM-e that's the subject of this lawsuit
> tested for its potency of efficacy?
> A: No
> Q: Did you ever perform any sort of testing yourself on the SAM-e

that you purchased that's the subject of this lawsuit?
Mr. Brody: Object to form.
A: No.

(Doc. 294-3, p. 23, ln. 24 – p. 24, ln. 7). Bill Wilson testified he did not have the SAM-e he

purchased tested:

> Q: Yeah. So you believed, as far as I understand your testimony,
> you stopped taking product because you believed there might have
> been something wrong with the product, either the quality or
> something about the active ingredient. You had the product but you
> never sent it out to be tested; is that right?
> A: I was not asked to do so.
> Q: Did you think to do it on your own?
> Mr. Brody: Objection to the form.
> A: I did, no.
> Q: I'm sorry, you did or you did not?
> A: No is the answer to your question.
> …
>
> Q: Why didn't you have any of the product that you currently have
> that's subject to this lawsuit tested?
> Mr. Brody: Same objection.
> A: I rely on my attorneys for all that.

(Doc. 294-4, p. 33, ln. 10-25; p. 34, ln. 10-17). Robert McKeown testified as follows with regard

to his failure to test the SAM-e that he purchased:

> Q: Did you have any of the product that you purchased tested for
> potency?
> A: No.
> …
>
> Q: Okay. So your basis for understanding – or alleging, excuse me
> – that the product you purchased had a discrepancy in terms of its
> ingredients is based solely on documentation provided by your
> attorneys?
> Mr. Brody: Object to form.
> A: Correct.
> Q: Do you have any other basis to allege that the SAM-e you
> purchased from Asquared didn't have the ingredients that were
> indicated on the label?
> Mr. Brody: Same objection.
> A: No.

…

> Q: Did you think that it would be important to have the product that
> you purchased tested for potency?
> Mr. Brody: Object to form; calls for legal expertise.
> A: I believe so.
> …
>
> Q: And I think you answered this, but none of the product you
> purchased and took was actually tested, right?
> Mr. Brody: Same objection.
> A: Correct.

(Doc. 294-5, p. 52, ln. 14-17; p. 53, ln. 16-25; p. 54. ln. 1-2; 6-10; 19-23). Shannon Hood testified

that she did not have any of the SAM-e she purchased tested. (Doc. 294-6, p. 58, ln. 21-24; p. 59,

ln. 21-23; p. 64, ln. 15-18; p. 65, ln. 7-23. P. 67, ln. 17-19). Critically, Shannon Hood conceded

that she had no way of knowing whether the SAM-e she purchased met, or did not meet, the labeled

amount of active ingredient:

> Q: Okay. And so my question is: How do you know the SAM-e that
> you purchased was under that threshold?
> A: How do I know? Because I don't know if the individual pill that
> I consumed not exceeded or fell below whatever threshold would be
> acceptable. There's no way to tell. I opened the bottle and consumed
> the pills.

(Doc. 294-6, p. 64, ln. 15-18). Finally, Noah Malgeri testified that he did not have the SAM-e he

purchased tested:

> Q: And the question is, did you, Mr. Malgeri, send SAM-e product
> out that resulted in those test results?
> Mr. Brody: Objection to form.
> A: No.

(Doc. 294-7, p. 55, ln 10-18; p. 55, ln. 23-25; p. 56, ln. 2-16.).

As a result of the above, Plaintiffs were left to rely exclusively on their expert to remedy

the foundational shortcoming in the litigation they commenced and pursued for multiple years.

Even Plaintiffs' hired expert, facing objectively devastating evidence for the case, could not draw

the conclusion needed for Plaintiffs case to have a remote chance at moving forward. Doctor Douglas Kalman's ("Kalman") report came to the unsustainable conclusion that each and every bottle of SAM-e manufactured by Vitamins Because did not meet label specifications.

Importantly, however, Kalman's report acknowledges that in his investigation for this lawsuit, he reviewed test results of SAM-e manufactured by Vitamins Because that showed samples tested in accordance with label specifications. (Doc. 294-8). Faced with that reality at his deposition, Kalman departed from the conclusion in his report, and instead testified as follows:

> Q: It is your opinion that all of the SAM-e manufactured by Vitamins Because failed to meet the label requirement as it related to the active amount of SAM-e; correct?
> A: No, incorrect. I did – I did see and read perhaps two or three certificates of analysis by third-party analytical labs that did find the label claim was met or nearly met. So that would be 2 or 3 tests out of 30-plus tests found a label claim or near label claim was made.
> Q: Would you agree that 3 out of 30 is 10 percent?
> A: If I can do the math with my fingers, I would agree. Yes. Sorry about the bad joke. Yes.

(Doc. 294-9, p. 93-95). The importance of Kalman's concession at this deposition cannot be understated. By admitting that he cannot conclude that all of the SAM-e manufactured by Vitamins Because failed to meet the specifications on the label, he cannot, with any degree of reliability, conclude that the Plaintiffs in this lawsuit purchased SAM-e that did not meet label specifications.

Ultimately, the tactics employed by Plaintiffs illustrates the consequences for failing to understand what is required to prevail in a lawsuit before filing an action. Plaintiffs identified the conclusion they wanted to reach – that the SAM-e they purchased was defective. They did not, however, conduct the simple and prudent diligence that would predicate bringing a lawsuit to come to that conclusion. They did not have the SAM-e they purchased tested. Plaintiffs had every opportunity to do so, or to be inventive about ways to strengthen the factual basis for the allegation that they articulated in their pleadings, but they decided against it. Plaintiffs commenced this

11

lawsuit, blind to how the fundamental standing requirements in Federal Court would doom this case from its inception and simply pushed forward without any regard for the gaping hole in their claim. Now, years later, and after hundreds of thousands of dollars in attorneys' fees were spent defending against the allegations made, the Court properly dismissed the lawsuit because Plaintiffs could not show the SAM-e they purchased was defective in any way and they couldn't substantiate their claim for harm. As a result, aSquared should be awarded its fees.

       b.     *Plaintiffs' ability to pay attorneys' fees*

The record does not indicate whether Plaintiffs will be able to satisfy an award of attorneys. As a result, aSquared submits that this factor is neutral and does not weigh in favor of either party. *See, e.g.*, *Healthcare Res. Mgmt. Grp., LLC v. EcoNatura All Healthy World, LLC*, 2022 WL 1537757, at *7 (S.D. Fla. May 12, 2022).

       c.     *Awarding fees would deter similar conduct*

By asserting a claim that invoked FDUTPA and then seeking redress under its remedial provisions, Plaintiffs intentionally exposed themselves to both the "benefits and the possible consequences of that act's provisions." *Tropical Paradise Resort, LLC v. JBSHBM, LLC*, 2021 WL 2269822, at *2 (S.D. Fla. Apr. 30, 2021), *report and recommendation adopted*, 2021 WL 2024424 (S.D. Fla. May 21, 2021) (quoting *Diamond Aircraft Indus. v. Horowitch*, 107 So. 3d 362, 369 (Fla. 2013)).

A fee award against Plaintiffs would, in fact, serve as a deterrent for those acting in similar circumstances. Specifically, a fee award against Plaintiffs would discourage parties from maintaining a lawsuit against an individual or entity for which it has no evidence of any FDUTPA violation.

**VI.      The fees requested by aSquared are reasonable and recoverable**

An attorney fee award is required to be reasonable and fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299-1302 (11th Cir. 1988). It is, therefore, within a court's ultimate discretion to adjust the fees to an amount it deems proper in accordance with the parameters articulated by the Eleventh Circuit. *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.").

In determining an appropriate fee award, courts utilize employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id.*

The lodestar method requires a court to determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1299; *Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302. Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* at 1304.

13

     a.     *The rates requested by counsel for aSquared are reasonable*

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *DJ Lincoln Enterprises, Inc. v. Google, LLC*, 2022 WL 4287640, at *7 (S.D. Fla. July 28, 2022). Generally, the court analyzes the going rate for the "relevant market," or the place where the case is filed. *DJ Lincoln*, 2022 WL 4287640, at *7.

The requested rates are commensurate with the reasonable rates approved in the Southern District of Florida. *See DJ Lincoln,* 2022 WL 4287640, at *9 (approving hourly rates for non-local counsel involved in litigation in Palm Beach County as follows: $760.00 for a partner with twenty years of experience; $625.00 for a partner with ten years of experience; $550.00 for an associate with seven years of experience; $400.00 for an associate with less than five years of experience; and $375.00 for an associate with two years of experience); *Warren Technology, Inc. v. UL LLC*, 2022 WL 2479227, at *5 (S.D. Fla. June 17, 2022) (approving hourly rates of $500.00 for partners and $250.00 for an associate); *Kelly v. Lee Cty. R.V. Sales Co.*, 2021 WL 3111553, at *2-*4 (M.D. Fla. July 22, 2021) (approving an hourly rate of $450.00 for a partner with forty years of experience and $285.00 for a partner with thirty years of experience); *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, 2021 WL 2269822, at *9-*10 (S.D. Fla. April 30, 2021) (approving hourly rates as follows: $841.50 for an intellectual property and commercial litigation attorney with thirty years of experience; $787.50 for a patent attorney with nineteen years of experience; $490.50 for a commercial litigator with thirty years of experience; $354.72 for an associate in commercial litigation with ten years of experience; $405.00 for an associate with four years of experience).

aSquared seeks recovery of its fees for nine timekeepers—two who formed the core team for this matter, three who were brought in for discrete, necessary tasks throughout the litigation,

14

one who served as local counsel and three associates who completed necessary research and drafting. Their identities, experience, qualifications, hour for which an award is sought, and hourly rates are summarized below. The details of the reasonable hours expended and tasks performed are set forth in detail in the Declaration of Brendan H. Little.

     1.    <u>Core Team</u>

Two timekeepers formed aSquared's core legal team on this matter. Brendan H. Little and Sean M. O'Brien.

     *a.*    *Brendan H. Little*

Brendan H. Little was lead counsel in this matter and is licensed in New York, Massachusetts, Pennsylvania, and Georgia, while being admitted to practice in federal courts across the country. Mr. Little, a partner of Lippes Mathias LLP in Buffalo, New York, has 16 years of experience practicing law and is the Team Leader of the firm's Consumer Financial Services Litigation Practice Team. Mr. Little's practice also extends to commercial and business litigation matters including contractual disputes, shareholder derivative actions, claims asserted pursuant to the RICO Act and real property litigation. Mr. Little spends a significant amount of time defending creditors across the United States against individual and class claims alleging violations of FDCPA, the TCPA, and the FCRA.

Mr. Little spent 141.50 hours litigating this matter for which an award is sought. Mr. Little's rates from 2019 to 2023 are as follows: $345.00 in 2019; $365.00 in 2020; $375.00 in January and February 2021; $385.00 in March through December 2021; $410.00 in 2022; and $435.00 in 2023. As lead counsel in this matter, Mr. Little directed the litigation and its strategy, reviewed and revised aSquared's pleadings and various motions and court filings; engaged in

written discovery; participated in mediation; communicated with colleagues, opposing counsel and co-defendant's counsel; and worked on aSquared's appellate brief.

            *b.*     *Sean M. O'Brien*

Sean M. O'Brien is a partner of Lippes Mathias LLP and has nine years of experience practicing law. Mr. O'Brien is admitted to practice in New York and New Jersey and is admitted in numerous federal courts across the country. Mr. O'Brien's practice is focused on commercial matters, municipal matters and general litigation. He also practices consumer finance law and has extensive experience in defending creditors against individual and class claims alleging violations of the FDCPA, the TCPA, and FCRA.

Mr. O'Brien spent 526.10 hours litigating this matter for which an award is sought. Mr. O'Brien's rates from 2019 to 2023 are as follows: $250.00 in 2019; $270.00 in 2020; $285.00 in 2021; $315.00 in 2022; and $335.00 in 2023. Mr. O'Brien's work included but was not limited to: reviewing pleadings regarding aSquared's potential exposure and the specific allegations against it; conferring with colleagues regarding litigation strategy; drafting litigation hold notices for the client and reviewing applicable insurance agreements; drafting, editing and revising aSquared's pleadings; drafting, editing and revising aSquared's motion papers; conducting legal research; participating in court hearings and conferences; engaging in paper discovery; taking depositions; participating in mediation; and drafting aSquared's appellate brief.

        2.    <u>Specialized Support</u>

Other timekeepers worked on discrete tasks for which their specific skill set was necessary. aSquared seeks recovery of fees for four such timekeepers: Paul A. Mitchell (Partner), Richard M. Scherer, Jr. (Partner), Alessandro A. Apolito (Partner) and Gregory T. Measer (Associate).

a.    Paul A. Mitchell

Mr. Mitchell is a partner of Lippes Mathias LLP with 35 years of experience as an attorney admitted to practice law. Mr. Mitchell is licensed in New York and Connecticut. Mr. Mitchell's practice is focused primarily on mergers and acquisitions, private equity and venture capital investments, fund formations, complex corporate transactions and technology licensing.  He assists venture capital firms with investments in young technology companies, including the negotiation and preparation of stock purchase agreements, certificates of incorporation, shareholder agreements and voting rights agreements. His practice also involves real estate work including counseling developers in forming partnerships or limited liability companies and negotiating private equity investments, real estate development and management agreements.

Mr. Mitchell worked on this matter for the limited purpose of facilitating client conversations, planning litigation strategy and reviewing specific court filings. Mr. Mitchell spent 10.20 hours working on this case from 2019 to 2020, for which aSquared seeks an award of fees. Mr. Mitchell's hourly rate in 2019 was $425.00 and thereafter increased to $480.00.

b.    Richard M. Scherer, Jr.

Richard M. Scherer, Jr. is a partner of Lippes Mathias LLP and has thirteen years of experience. Mr. Scherer is the Team Leader of the firm's Business and Commercial Litigation Practice Group. Mr. Scherer is admitted in New York and in federal courts across the country. Mr. Scherer's practice involves primarily state and federal business litigation matters where he advises a diverse client base covering a broad variety of industry sectors. Mr. Scherer defends and prosecutes matters in New York as well as in federal courts across the country in matters involving earn-out disputes, shareholder oppression claims, shareholder derivative actions and contractual indemnity claims. Mr. Scherer's practice also extends to defending creditors across the United

17

States against individual and claim claims alleging violations of the FDCPA, the TCPA, and the FCRA. Mr. Scherer spent 2.30 hours working on this matter in 2021 and 2022, for the purpose of advising colleagues on jurisdiction matters and reviewing and providing commentary on aSquared's motion for class certification. Mr. Scherer's hourly rate in 2021 was $350.00. Thereafter, Mr. Scherer's hourly rate in 2022 increased to $380.00.

           c.     *Alessandro A. Apolito*

Alessandro A. Apolito is a partner of Lippes Mathias LLP and has thirteen years of experience. Mr. Apolito is admitted to practice and in good standing in the United States District Courts for the Middle and Southern Districts of Florida. Mr. Apolito's practice is focused on probate, trust and guardianship litigation. Mr. Apolito spent 2.70 hours working on this matter I 2019 and 2020, acting as local counsel and appearing for court hearings. Mr. Apolito's hourly rate in 2019 was $300.00. Thereafter, Mr. Apolito's hourly rate increased to $320.00 for the month of January 2020 and remained at $310.00 for the remainder of 2020.

           d.     *Gregory T. Measer*

Gregory T. Measer is an associate with Lippes Mathias LLP. Mr. Measer has eight years of experience and is specialized in FDA regulatory matters and providing corporate and regulatory counsel to health care providers. Mr. Measer also has extensive experience assisting clients with health care technology and life science matters, including FDA regulatory compliance and public health law and policy as well as medical product research, development, manufacturing and distribution, and previously served as regulatory counsel for the FDA. Mr. Measer is admitted to practice in Arizona, the District of Columbia, and New York. Mr. Measer worked on this matter in 2021, spending only 5.90 hours and provided a specialized skill set that was necessary for the

litigation. Mr. Measer reviewed and analyzed FDA regulations and drafted a regulatory analysis. Mr. Measer's hourly rate for this work was $260.00.

    3.    <u>Associates</u>

    *a.*    *Brendan F. Conley*

Brendan F. Conley is an associate with Lippes Mathias LLP and has been practicing law for four years. Mr. Conley's practice is focused on commercial, business and general litigation as well as consumer finance law. Mr. Conley spent 20.20 hours working on this matter and researching various topics in support of aSquared's motions and court filings. Mr. Conley's rate in 2021 was $240.00 and thereafter increased to $260.00 in 2022.

    *b.*    *Carmen A. Vacco*

Carmen A. Vacco is an associate with Lippes Mathias LLP and has been practicing law for three years. Mr. Vacco's practice is focused on commercial and business litigation matters as well as governmental and corporate investigations and compliance work. Mr. Vacco spent 11.90 hours working on this matter, researching, and analyzing legal authority in support of aSquared's motions and court filings, and drafting letters to named Plaintiffs in response to deficient discovery responses. Mr. Vacco's rate in 2019 was $150.00 and thereafter increased to $215.00 in 2021.

    *c.*    *Hannah E. Cominsky*

Hannah E. Cominsky is an associate with Lippes Mathias LLP and was admitted to practice in New York in 2022. Ms. Cominsky's practice is focused on commercial and business litigation matters including contractual disputes and real property litigation. Ms. Cominsky's practice also involves a significant amount of time defending creditors across the United States against individual and claim claims alleging violations of the FDCPA, the TCPA, and the FCRA. Ms. Cominsky spent 22.40 hours working on this matter, researching and analyzing legal authority in

support of aSquared's motions and court filings, and drafting motion papers. Ms. Cominsky's hourly rate in 2022 was $235.00 and thereafter increased to $255.00.

       *b.*     *The number of hours reasonably expended is reasonable*

To determine whether the number of hours reasonably expended is reasonable, attorneys must exercise appropriate "billing judgment." *Tropical Paradise Resorts*, 2021 WL 2269822, at *10 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). To that end, attorneys must exclude "excessive, redundant or otherwise unnecessary hours," that are "unreasonable to bill to a client." *Id.* (citing *Norman v. Hous. Auth. Of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1998)). Here, the billing records reflect that the time requested is reasonable, although it is within the Court's discretion to determine the necessity and reasonableness of the time claimed. *Id.* As the billing records do not reflect any block billing, are specific enough to identify the exact time was spent on each task, and do not reflect any duplicative or unnecessary time entries, the requested time is objectively reasonable and does not warrant a reduction. *See id.* at *11.

       *c.*     *Asquared is entitled to is costs*

As detailed in the Declaration of Brendan H. Little, aSquared seeks reimbursement for various non-taxable expenses, including its expert witness, charges from its E-Discovery vendor, charges by the mediator, and travel expenses.

## CONCLUSION

Defendant aSquared Brands, LLC, as the prevailing party in this action involving a claim pursuant to FDUTPA, is entitled to an award of its reasonable attorneys' fees and costs.

Dated:  May 1, 2023

**LIPPES MATHIAS LLP**

s/ Alessandro Apolito
Alessandro A. Apolito, Esq.
Florida Bar Number: 0084864
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256
P: 904-660-0020
F: 904-660-0029
Primary E-Mail:  aaapolito@lippes.com

Brendan H. Little, Esq., *pro hac vice*
Sean M. O'Brien, Esq., *pro hac vice*
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com
E: sobrien@lippes.com

*Attorneys for aSquared Brands LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH THE LOCAL RULES</u>

ASquared's motion was filed in accordance with Local Rule 7.3(a). Final Judgment was entered in favor of aSquared on September 30, 2022. (Doc. 383). Plaintiffs filed a notice of appeal to the Eleventh Circuit Court of Appeals, which was dismissed on March 2, 2023.

A draft version of aSquared's motion was served on all counsel on April 3, 2023. Thereafter on April 20, 2023, counsel for all parties met and conferred in an attempt in good faith to agree on entitlement to and the amount of fees and expenses not taxable under 28 U.S.C. § 1920. No agreement was reached and counsel for Plaintiffs did not describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount requested.

As a result, ASquared's motion requesting attorneys' fees was filed and served accordance with the local rules.

Dated:  May 1, 2023

**LIPPES MATHIAS LLP**

s/ Alessandro Apolito
Alessandro A. Apolito, Esq.
Florida Bar Number: 0084864
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256
P: 904-660-0020
F: 904-660-0029
Primary E-Mail:  aaapolito@lippes.com

Brendan H. Little, Esq., *pro hac vice*
Sean M. O'Brien, Esq., *pro hac vice*
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com
E: sobrien@lippes.com

<u>VERIFICATION</u>

Adam Odrobina, first being duly sworn, deposes and states that he is the manager of AVAO Manager Relations, LLC, which is the manager of aSquared Brands LLC, a Defendant in the above-captioned action; that he has read the foregoing motion requesting attorneys' fees and knows the contents thereof; that the statements of fact above are true and accurate to the best of his knowledge except as to those matters alleged, upon information and belief, and that as to those, he believes them to be true.

<u>s/ Adam Odrobina</u>
Adam Odrobina